# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Dana Albrecht,** ) | |
| ) | |
| **Plaintiff** ) | |
| v. ) | Civil No. 1:23-cv-00381-JL-TSM |
| ) | |
| **Kathleen Sterneberg, et al.** ) | |
| ) | |
| **Defendants.** ) | |

---

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### OBJECTION TO KATHLEEN STERNENBERG'S MOTION TO DISMISS

---

By:    Dana Albrecht
*Plaintiff Pro Se*
131 D.W. Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................2
TABLE OF AUTHORITIES............................................................................3
   Cases..............................................................................................................3
   Statutes...........................................................................................................4
   Constitutional Provisions..............................................................................4
   Other Authorities..........................................................................................4
INTRODUCTION.............................................................................................5
STATEMENT OF FACTS................................................................................5
STANDARD OF REVIEW...............................................................................6
ARGUMENT.....................................................................................................6
   I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity...........7
   II. Court appointed *Guardian Ad Litems* should be afforded qualified, not absolute quasi-judicial immunity..................................................................8
   III. Defendant Sternenberg was improperly appointed in Plaintiff's family law matter..................................................................................................13
   IV. Defendant Sternenberg's actions were not "normal and routine" judicial acts................................................................................................................16
   V. The legal doctrines of "joint liability" and "reliance" apply both to Defendant Sternenberg and Defendant Introcaso......................................17
   VI. Plaintiff seeks *only* a declaratory judgment, has not requested equitable relief or any award of financial damages, and has sued Defendant Sternenberg in her official capacity.............................................................18
   VII. Plaintiff should be granted leave to amend his Complaint if "justice so requires."......................................................................................................18
CONCLUSION................................................................................................19
CERTIFICATE OF SERVICE......................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................................6

*Bob Jones Univ. v. United States*, 461 U.S. 574 (1983)...................................................12

*Brennan v. Township of Northville*, 78 F.3d 1152 (6th Cir. 1996).....................................12

*Brown v. Newberger*, 291 F. 3d 89 (1st Cir. 2002)..............................................11, 13, 15 ff.

*Buck v. Bell*, 274 U.S. 200 (1927)....................................................................................8

*Campbell v. Partello*, No. 659-2018-DM-00702.............................................................13

*Caperton v. AT Massey Coal Co., Inc.*, 556 U.S. 868 (2009).........................................13 ff.

*Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1 (1st Cir. 2005)...6

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)..............8

*Erickson v. Pardus*, 551 U.S. 89 (2007).........................................................................6

*Foman v. Davis*, 371 U.S. 178 (1963)...........................................................................18

*Gagliardi v. Sullivan*, 513 F.3d 301 (1st Cir. 2008).........................................................6

*Gundy v. United States*, 139 S. Ct. 2116 (2019)............................................................8 f.

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).....................................................17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)....................................................................12

*In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993)...............................................11

*Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022).............................................8

*Meyer v. Nebraska*, 262 U.S. 390 (1923)....................................................................10 f.

*New York State Rifle & Pistol Assn, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).............8

*Nystedt v. Nigro*, 700 F.3d 25 (1st Cir. 2012)................................................................16

*O'Connell v. Hyatt Hotels of P. R.*, 357 F.3d 152 (1st Cir. 2004).......................................18

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925).........................................................10 f.

*Pierson v. Ray*, 386 U.S. 547 (1967).............................................................................7 f.

*Rippo v. Baker*, 137 S. Ct. 905 (2017)..........................................................................14 f.

*Sobell v. Sobell*, No. 659-2013-DM-00348......................................................................17

*State of New Hampshire v. Julie A. Introcaso*, No. 226-2021-CR-00126..........5, 13

*Stump v. Sparkman*, 435 U.S. 349 (1978).....................................................................7 f.

*Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34 (1st Cir. 2010)................................6

*Troxel v. Granville*, 530 U.S. 57 (2000)..........................................................................8

*TWITTER, INC. v. TAAMNEH*, 143 S. Ct. 1206 (2023).................................17

*United States v. Isaacson*, No. 09-cv-332-JL (D.N.H. July 15, 2011)...................6

*Witte v. Justices of N.H. Superior Court*, 831 F. 2d 362 (1st Cir 1987).............14 f.

## Statutes

18 U.S.C. § 242.................................................................................................7
42 U.S.C. § 1983.........................................................................................5, 7pp.
Civil Rights Act of 1866...................................................................................7pp.
Ku Klux Klan Act of 1871................................................................................7pp.

## Constitutional Provisions

U.S. Const. amend. XIV.............................................................................5, 8, 13
U.S. Const. art. I...............................................................................................9
U.S. Const. art. II..............................................................................................9
U.S. Const. art. III.............................................................................................9

## Other Authorities

John Locke. *Second Treatise of Government*...................................9pp., 10pp.,
*Judicial Immunity at the (Second) Founding: A New Perspective on § 1983*.
    136 Harv. L. Rev. 1456. March 2023....................................................7
Robert Bunting. *Pierce v. Society of Sisters (1925)*. The Oregon Encyclopedia.....11
U.S. Commission on Civil Rights. *School Choice: The Blaine Amendments & Anti-Catholicism*. June 2007.....................................................................12

## INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking declaratory relief that the defendants' failure to disclose various conflicts of interest and other relevant materials to Plaintiff in a timely fashion during the course of Plaintiff's family law case violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

It seeks only a declaratory judgment in Plaintiff's favor.

In particular, Plaintiff has not sought any monetary damages.

## STATEMENT OF FACTS

While Defendant Sternenberg correctly summarizes many background facts in her *Memorandum of Law in Support of Motion to Dismiss* (Doc 5-1, §III), she conveniently omits many of the most relevant facts to Plaintiff's *Complaint*.

Specifically, as Defendant Introcaso herself stated:[1]

> **The GAL [Kathleen Sternenberg] has been a long-standing friend of this judge; she has vacationed with her, discussed personal matters in depth (including financial issues) and the GAL is the godparent to one of this judge's children.**

Moreover, Defendant Introcaso was ultimately criminally charged for Defendant Introcaso's behavior in a related judicial conduct investigation that began because of this conflict with Defendant Sternenberg.

As described by the State of New Hampshire's prosecutor during Defendant Introcaso's criminal plea and sentencing hearing:[2]

> **During the course of the Partello matter, Marital Master Bruce DalPra recommended the appointment of Attorney Kathleen Sternenberg as a *guardian ad litem*. Attorney Sternenberg was on the Defendant's [i.e. Julie Introcaso's] recusal list.**

---

1  *See* Exhibit 6 annexed to the original *Complaint*, that was also Exhibit 9 of Defendant Introcaso's February 8, 2021 deposition (Exhibit 22 annexed to the *Complaint*).
2  *See* transcript (at 11) of the November 15, 2021 hearing on plea and sentencing, in *State of New Hampshire v. Julie A. Introcaso*, No. 226-2021-CR-00126. *Attachment 4*.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In analyzing whether dismissal is appropriate, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor." *United States v. Isaacson*, No. 09-cv-332-JL, 2011 WL 2783993, at *1 (D.N.H. July 15, 2011) (Laplante, J.) (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). Under Rule 12(b)(6), this Court may consider "facts and documents that are part of or incorporated into the complaint," as well as "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted).

Dismissal is appropriate only if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Finally, Plaintiff appears *pro se*. Consequently, this "pleading[] should be construed so as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89 (2007).

## ARGUMENT

*Note: Plaintiff acknowledges §I of his argument is foreclosed in this jurisdiction and is respectfully made here solely to preserve the issue for further review. Plaintiff further acknowledges that §II of his argument might also be foreclosed in this jurisdiction and is made here also primarily to preserve the issue for further review.*

**I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.**

As explained by a recent article in the Harvard Law Review:[3]

> There is consensus that after the Civil War, judicial immunity was eliminated in the criminal context under the Civil Rights Act of 1866. Given that the Ku Klux Klan Act of 1871 considered the Civil Rights Act of 1866 to the utmost degree when imposing civil liability for violations of people's constitutional rights, and given that the Ku Klux Klan Act of 1871 was meant to be even broader than the Civil Rights Act of 1866, 42 U.S.C. § 1983 should therefore be understood to also eliminate judicial immunity.

As the Harvard Law Review (*Id.*) further argues:

> A rereading of the history of 42 U.S.C. § 1983, including its legislative history, and a comparison of 42 U.S.C. § 1983 to 18 U.S.C. § 242 reveal that the [United States Supreme Court's] decision in [*Pierson v. Ray*, 386 U.S. 547 (1967)] rests on erroneous foundations.

If *Pierson* rests on erroneous historical foundations, it logically follows that *Pierson's* progeny do as well; e.g., *Stump v. Sparkman*, 435 U.S. 349 (1978). Indeed, Justice Byron White, writing for the majority in *Stump*, stated "that this doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U. S. C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle." *Stump* at 356, citing *Pierson*. However, Justice White's opinion does not comport with more recent historical research.[4]

Plaintiff further argues that the minority opinion in *Stump* got it right. As the dissent stated, "In sum, what Judge Stump did on July 9, 1971, was in no way an act 'normally performed by a judge,'" wherein "false illusions as to a judge's power can hardly convert a judge's response to those illusions into a judicial act." *Stump* at 367.

Plaintiff readily and respectfully acknowledges that such argument is foreclosed in this jurisdiction at this time. Nevertheless, our United States

---

3  *Judicial Immunity at the (Second) Founding: A New Perspective on § 1983*. 136 Harv. L. Rev. 1456. March 2023. *Attachment 2*.

4  *Id*.

Supreme Court has also recently recognized that when its own prior decisions are "egregiously wrong from the start," (*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2243 (2022)) an "abuse of judicial authority," (*Id.*) "deeply damaging," (*Dobbs* at 2265) and based on "nothing but 'raw judicial power,'" (*Id.*) they should be overturned. Plaintiff suggests *Dobbs* represents a major step forward in clarifying what are the limits of judicial power.

Consequently, Plaintiff respectfully wishes to preserve an argument here that a line of various prior United States Supreme Court decisions addressing immunity relevant to this instant case, such *Buck v. Bell*, 274 U.S. 200 (1927) (permitting compulsory sterilization of the allegedly unfit), *Pierson* (denying damages to a group of 15 Episcopal priests subjected to wrongful arrest), and *Stump* (providing no means of redress for *more* forced sterilization) – *as well as their subsequent progeny* – were *also* "egregiously wrong from the start, an "abuse of judicial authority," "deeply damaging," and based on "nothing but 'raw judicial power,'" within the meaning of *Dobbs* while simultaneously respectfully acknowledging that such argument is presently foreclosed in this jurisdiction.

## II. Court appointed *Guardian Ad Litems* should be afforded qualified, not absolute quasi-judicial immunity.

In what role, *precisely*, does a court appointed *Guardian Ad Litem* serve in "modern" family law proceedings?

Parenting is a fundamental natural right with deep historical roots in common law that is also protected by the Fourteenth Amendment. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57 (2000).

Our United States Supreme Court has also made clear that it is proper for the judiciary to make an inquiry into the historical underpinnings of fundamental rights. *See, e.g.*, *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022) and *New York State Rifle & Pistol Assn, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Concerning the historical underpinnings of the relationship between the State and the People, our United States Supreme Court in *Gundy v. United States*, 139 S. Ct. 2116 (2019) further explained (at 2133):

> Our founding document begins by declaring that "We the People … ordain and establish this Constitution." At the time, that was a radical claim, an assertion that sovereignty belongs not to a person or institution or class but to the whole of the people. From that premise, the Constitution proceeded to vest the authority to exercise different aspects of the people's sovereign power in distinct entities. In Article I, the Constitution entrusted all of the federal government's legislative power to Congress. In Article II, it assigned the executive power to the President. And in Article III, it gave independent judges the task of applying the laws to cases and controversies.

As *Gundy* further explained (at 2133-34), "John Locke, one of the thinkers who most influenced the framers' understanding of the separation of powers, [also] described it :

> The legislative cannot transfer the power of making laws to any other hands; for it being but a delegated power from the people, they who have it cannot pass it over to others. The people alone can appoint the form of the commonwealth, which is by constituting the legislative, and appointing in whose hands that shall be. And when the people have said we will submit to rules, and be governed by laws made by such men, and in such forms, nobody else can say other men shall make laws for them; nor can the people be bound by any laws but such as are enacted by those whom they have chosen and authorised to make laws for them."[5]

Consequently, concerning the "delegation of powers" between the State and the People, Locke's *Second Treatise* appears to reflect much of the common law understanding held by the framers of our United States Constitution.

This would *also* necessarily include any proper role of the State to act as *parens patriae* for children at the time of the founding, as well as the framers' understanding of parental rights and responsibilities.

Locke's *Second Treatise* discusses parental rights and responsibilities in depth. Locke first articulates equality between father and mother, stating, "when the old are apt to lead men into mistakes, as this of paternal power probably has done, which seems so to place the power of parents over their children wholly in the

---

5   Locke, *Second Treatise* § 141.

father, as if the mother had no share in it; whereas, if we consult reason or revelation, we shall find, she hath an equal title. This may give one reason to ask, whether this might not be more properly called parental power? for whatever obligation nature and the right of generation lays on children, it must certainly bind them equal to both the concurrent causes of it." ([§52](#))

Locke then articulates parental rights and responsibilities, stating, "all parents were, by the law of nature, under an obligation to preserve, nourish, and educate the children they had begotten; not as their own workmanship, but the workmanship of their own maker, the Almighty, to whom they were to be accountable for them." ([§56](#)) Moreover, "the power, then, that parents have over their children, arises from that duty which is incumbent on them, to take care of their off-spring, during the imperfect state of childhood. To inform the mind, and govern the actions of their yet ignorant nonage, till reason shall take its place, and ease them of that trouble, is what the children want, and the parents are bound to." ([§58](#))

Most importantly, Locke states "God having made the parents instruments in his great design of continuing the race of mankind, and the occasions of life to their children; as he hath laid on them an obligation to nourish, preserve, and bring up their offspring; so he has laid on the children a perpetual obligation of honouring their parents, which containing in it an inward esteem and reverence to be shewn by all outward expressions, ties up the child from any thing that may ever injure or affront, disturb or endanger, the happiness or life of those from whom he received his; and engages him in all actions of defence, relief, assistance and comfort of those, by whose means he entered into being, and has been made capable of any enjoyments of life: from this obligation <u>no state</u> [emphasis added], no freedom can absolve children." ([§66](#))

Consequently, recognition of the relationship between children and parents has deep roots in common law, as does any proper role of the State in this relationship.

In 1923 and 1925, the United States Supreme Court codified these principles in [*Meyer v. Nebraska*, 262 U.S. 390 (1923)](#) and [*Pierce v. Society of Sisters*, 268 U.S. 510 (1925)](#).

*Meyer* resulted when "War Fever" during World War I exacerbated suspicions against German immigrants, and Robert T. Meyer was tried and convicted for teaching reading in the German language in a local parochial school.

*Pierce* arose when nativist sentiment and patriotic fervor in the 1910s led to a revival of the Ku Klux Klan. In Oregon the group became sufficiently powerful to have members elected to the legislature in 1922 and to help elect the governor.[6] In the same election, the voters adopted an initiative that required all children to attend public school. The initiative was intended to eliminate Catholic schools. It was unique to Oregon and went further than either the state Blaine amendments[7] or the Nebraska anti-language law to restrict parental control. Consequently, *Pierce* made even more clear that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce* at 535.

By way of contrast, the *present* role that "court appointed *guardian ad litems*" *now* play for minor children in divorce and parenting cases is a relatively modern invention. *See, e.g. In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), wherein the West Virginia Supreme Court noted that it had "not previously adopted guidelines for *guardians ad litem*" (*Id.* at 176), analyzed "why there [was] concern about the performance of *guardians ad litem* in child abuse and neglect cases." (*Id.* at 174) concluding "that there should be 'greater accountability in the performance of individual attorneys, … systematic and continuing evaluations of program outcomes, and … enhanced efforts geared toward implementing and testing new approaches to representing children in protection proceedings.'" (*Id.* at 175).

Plaintiff respectfully further argues that *some* recent case law such as *Brown v. Newberger*, 291 F. 3d 89 (1st Cir. 2002) moreover represents an inappropriate departure from the long-standing principle that "the child is not the mere creature of the State" *Pierce* at 535.

The right to parent one's child is a fundamental right. Consequently, it is subject to strict scrutiny review, and any power by the State to act as *parens patriae* must be shown to serve a compelling State interest using the least restrictive means possible.

---

6   *See, e.g.*, Robert Bunting. *Pierce v. Society of Sisters (1925)*. The Oregon Encyclopedia.
7   *See, e.g.*, U.S. Commission on Civil Rights. *School Choice: The Blaine Amendments & Anti-Catholicism*. June 2007. Available at: https://www.usccr.gov/files/pubs/docs/BlaineReport.pdf

While there might be a compelling State interest in affording a court appointed *guardian ad litem* some kind of immunity in the performance of his or her official duties, the notion that such duties ought to confer *absolute* quasi-judicial immunity is repugnant to our United States Constitution, inconsistent with long-standing principles of common law dating back centuries, and inconsistent with other recent United States Supreme Court precedent.

Plaintiff therefore respectfully argues that any court appointed *guardian ad litem* ought (*a priori*) to be afforded *qualified*,[8] rather than *absolute* quasi-judicial immunity even if such argument might be foreclosed in the First Circuit.

Indeed, this approach is also consistent with that previously taken by our United States Supreme Court. To obtain absolute immunity from suit, a government official must "first show that the responsibilities of his office embraced a function so sensitive as to require a total shield from liability. [S]he must then demonstrate that [s]he was discharging the protected function when performing the act for which liability is asserted." *Harlow v. Fitzgerald*, 457 U.S. 800, 812-13 (1982). Otherwise, qualified immunity should apply. *Harlow* at 813-815.

Defendant Sternenberg has made no such showing pursuant to the standard set forth in *Harlow*, which serves as controlling authority for the entire nation.[9]

Rather, Defendant Sternenberg (Count XL) instead engaged in bald-faced religious prejudice favoring one parent's "Independent Fundamentalist Baptist" religious views[10] over another parent's Christian views,[11] creating (as an agent of the State) her own mini "Blaine Amendment" intended "to target for special disadvantage the faiths of immigrants, especially Catholicism"[12] by even going so far as to testify that a historic work of Catholic religious art by Botticelli was a "naked painting" that allegedly gave Plaintiff's children nightmares.

---

8  When analyzing a qualified immunity issue, the first step is to determine whether plaintiff has shown a violation of a constitutionally protected right. If the answer is yes, then the second step is to determine whether the right is so "clearly established" that a "reasonable official would understand that what he is doing violates that right." *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996) (cleaned up).

9  See *Attachment 3* for the complete text of this opinion.

10 See, e.g., *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983) that describes these views.

11 As background only, there was substantial conflict in the underlying family law matter wherein Plaintiff wished to enroll his children in private Catholic schools, while Defendant Sternenberg supported their ongoing enrollment in private "Independent Fundamentalist Baptist" schools.

12 *Supra* note 7, at page 7.

### III. Defendant Sternenberg was improperly appointed in Plaintiff's family law matter.

*Arguendo*, the analysis performed by the First Circuit in <u>Brown v. Newberger, 291 F. 3d 89 (1st Cir. 2002)</u> requires that a court appointed *guardian ad litem* be duly and properly appointed.

In Plaintiff's family law matter, however, Defendant Sternenberg <u>was never properly appointed in the first place!</u>

Indeed, the appointment of Defendant Sternenberg by Defendant Introcaso in a different family law matter[13] eventually led <u>to the criminal prosecution of Defendant Introcaso</u>.

As described by the State of New Hampshire's prosecutor during Defendant Introcaso's <u>criminal</u> plea and sentencing hearing:[14]

> **During the course of the Partello matter, Marital Master Bruce DalPra recommended the appointment of Attorney Kathleen Sternenberg as a** *guardian ad litem*. **Attorney Sternenberg was on the Defendant's [**i.e. Julie Introcaso's**] recusal list.**

Consequently, any appointment of Defendant Sternenberg by Defendant Introcaso in Plaintiff's family law case was a violation of federal due process in the first place. Indeed, Defendant Introcaso ought to have recused herself, rather than have appointed Defendant Sternenberg in Plaintiff's family law case.

Our United States Supreme Court has made clear such recusal ought to have been required. As set forth in <u>Caperton v. AT Massey Coal Co., Inc., 556 U.S. 868 (2009)</u>, "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias" <u>Caperton at 883-84</u>. Rather, the standard for recusal is "whether under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." <u>Id.</u> (quotation omitted). In Plaintiff's family law case, "considering all the circumstances alleged, the risk of bias [was too] high to be constitutionally

---

13 *Campbell v. Partello*, No. 659-2018-DM-00702.
14 *Supra* note 2.

tolerable." *Rippo v. Baker*, 137 S. Ct. 905 (2017) (vacating a judgment of the Nevada Supreme Court when it applied the wrong legal standard).

*Arguendo*, despite that Defendant Introcaso's signature appears on the *Order of Appointment*[15] of Defendant Sternenberg in Plaintiff's family law matter, the appointment was also improper because Defendant Introcaso did not properly carry out her judicial duties in reviewing it. *Witte v. Justices of New Hampshire Superior Court*, 831 F. 2d 362 (1st Cir 1987).

Indeed, as set forth in Defendant Introcaso's February 8, 2021 deposition[16] (at 164-166):

> **Mr. Waystack:** *Okay. Let's go to Exhibit 17. This is a shorter exhibit again. This is an order on appointment of GAL. And the name of the case is* Albrecht. *Do you see that?*
>
> **Ms. Introcaso:** *Yes.*
>
> **Mr. Waystack:** *Now, this one -- if you look at the third page, Judge, third page, Exhibit 17, this one was recommended by Master Bruce DalPra, wasn't it?*
>
> **Ms. Introcaso:** *Yes.*
>
> **Mr. Waystack:** *Okay. And if you go back to page 1 of Exhibit 17, on paragraph 2, can you tell whose handwriting that is for Kathleen Sternenberg?*
>
> **Ms. Introcaso:** *This is a combination. Again, I am almost certain. This is a combination between Master DalPra's writing and -- for example, you will see "Dana Albrecht." That to me looks like Master DalPra's handwriting of that name. Below it appears to be the handwriting of Aline Chasseur, who is his courtroom clerk.*
>
> **Mr. Waystack:** *Paragraph 2 of the appointment, it looks like there's a name initially put in there and then it's crossed out. Do you see that?*
>
> **Ms. Introcaso:** *Yeah.*

---

15  *See* Exhibit 3 annexed to the original *Complaint*.
16  *See* Exhibit 22 annexed to the original *Complaint*.

> **Ms. Introcaso:** *I have no idea. I never conducted a hearing or prepared any forms in this case.*
>
> **Mr. Waystack:** *Okay.*
>
> **Ms. Introcaso:** *Oddly, I am familiar with it. This is something of a notorious case. But all I know is the name <u>Albrecht and Albrecht</u>.*
>
> **Mr. Waystack:** *Is this a case where, because you respected Master DalPra and he usually made good judgments, you just looked at it quick and signed it?*
>
> **Ms. Introcaso:** *Absolutely. Again, I – yes.*
>
> **Mr. Waystack:** *Okay.*
>
> **Ms. Introcaso:** *Appointment of a GAL form, I cosigned it.*

More recently, as set forth in Defendant Introcaso's February 25, 2022 email[17] to the Plaintiff, Ms. Introcaso further stated:

> **With respect to any Appointment of Guardian ad litem order issued in your case, I suspect I was a "co-signer". I have no recollection of you personally, any facts of your case, or having co-signed many orders, given the nature and volume of my judicial work. I clearly recall being asked about the appointment of Attorney Sternenberg <u>in another case</u> - again, a decision that I did not make substantively, but rather I provided a certification and approval of a master's deliberated recommendation.**

However, "under the marital master system, it is a judge, not a master, which determines the case." *Witte* at 363.

Consequently, this case is easily distinguishable from *Brown v. Newberger* in that Defendant Sternenberg was never properly appointed; or, in the alternative, her very appointment itself was a violation of federal due process pursuant to the standards set forth in *Caperton* and *Rippo*.

---

17  *See* Exhibit 27 annexed to the original *Complaint*.

- 15 -

**IV. Defendant Sternenberg's actions were not "normal and routine" judicial acts.**

Plaintiff incorporates by reference here all argument previously set forth, the same as if plead in full.

In the first instance, if Defendant Sternenberg was never properly appointed in the first place, or her appointment violated federal due process, then it logically follows that all of her subsequent actions in Plaintiff's family law matter were not "normal and routine" judicial acts, within the meaning of *Brown*.

Moreover, at issue in this case, are a number of actions by Defendant Sternenberg that *also* were not normal and routine "judicial acts" and that Defendant Sternenberg did not disclose to Plaintiff.

More specifically, these include, but might not be limited to:

- Defendant Sternenberg was godmother to one of former Judge Introcaso's children, and this is not a normal and routine judicial act concerning Plaintiff's family law matter.

- Defendant Sternenberg took multiple vacations with Defendant Introcaso to see some plays at Niagra on the Lake with Defendant Introcaso, and these were not normal and routine judicial acts concerning Plaintiff's family law matter.

Specifically, as Defendant Introcaso herself stated:[18]

> **The GAL [Kathleen Sternenberg] has been a long-standing friend of this judge; she has vacationed with her, discussed personal matters in depth (including financial issues) and the GAL is the godparent to one of this judge's children.**

None of these actions by Defendant Sternenberg "fell with the purview of the adjudication of disputes" in Plaintiff's family law matter. *Nystedt v. Nigro*, 700 F.3d 25, 31 (1st Cir. 2012).

Moreover, Defendant Introcaso's approval of over $10,000 in fee increases to her close friend Defendant Sternenberg in Plaintiff's family law case, also was not "a normal judicial act." *Brown* at 94.

---

18  *See* Exhibit 6 annexed to the original *Complaint*, that was also Exhibit 9 of Defendant Introcaso's February 8, 2021 deposition (Exhibit 22 annexed to the *Complaint*).

Indeed, as far back as 2014, Defendant Sternenberg herself acknowledged her relationship with Defendant Introcaso in open court in the following exchange:[19]

**Ms. Introcaso:** *And I recognize Attorney Sternenberg's writing, I believe – maybe, maybe not – but her name. Counsel should know that Attorney Sternenberg and I are very good friends. Very good friends. I don't know if she shared that with you, or she did not. And I'm going to look at K. – who I refer to as K. I don't call her Kathleen or – K., are we very good friends?*

**Ms. Sternenberg:** *Yeah, I think so.*

**Ms. Introcaso:** *Yeah, we are very good friends. Very good friends like godparent of my child. We are very close.*

Consequently, Defendant Sternenberg does not enjoy immunity for many of her actions within the meaning of *Brown*, because they were not normal and routine judicial acts.

### V. The legal doctrines of "joint liability" and "reliance" apply both to Defendant Sternenberg and Defendant Introcaso.

As previously set forth, Defendant Sternenberg's alleged misconduct is intertwined with or predicated upon the actions of other defendants, and specifically Defendant Introcaso.

Consequently, it would be premature for this Court to dismiss the claims against Defendant Sternenberg without having first formed any opinion about the claims against Defendant Introcaso.

While Plaintiff does not allege any sort of "grand conspiracy" in this matter, our United States Supreme Court's opinion in *TWITTER, INC. v. TAAMNEH*, 143 S. Ct. 1206 (2023) is nevertheless *in pari materia* helpful. Citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), the U.S. Supreme Court explained that "*Halberstam's* legal framework, viewed in context of the common-law tradition from which it arose, confirms that 'aids and abets' … refers to a conscious, voluntary, and culpable participation in another's wrongdoing." *TWITTER* at 1210-11.

---

19  *See* Exhibit 1 annexed to original *Complaint*; i.e. the May 1, 2014 hearing transcript (at 2-3) in *Sobell v. Sobell*, No. 659-2013-DM-00348.

- 17 -

**VI. Plaintiff seeks *only* a declaratory judgment, has not requested equitable relief or any award of financial damages, and has sued Defendant Sternenberg in her official capacity.**

Finally, and not withstanding any of the above, Plaintiff's complaint seeks only a declaratory judgment that various actions (and inactions!) by the various Defendants, including Defendant Sternenberg, were in violation of the United States Constitution.

Because Plaintiff has not sought any damages in this action, this case is easily distinguishable from those cases cited by Defendant Sternenberg that might provide some form of immunity to liability for damages.

However, in this action, Defendant Sternenberg has been sued in her professional capacity, and Plaintiff has not sought damages. Consequently, any immunity doctrine that would shield Defendant Sternenberg from damages or other equitable relief, is, strictly speaking, not relevant to this matter, unless Defendant Sternenberg can *also* show that it would shield her *even from any purely declaratory judgment in her official capacity*.

**VII. Plaintiff should be granted leave to amend his Complaint if "justice so requires."**

The First Circuit has set forth standards for the filing of an amended Complaint. *See, e.g.*, *O'Connell v. Hyatt Hotels of P. R.*, 357 F.3d 152 (1st Cir. 2004), citing *Foman v. Davis*, 371 U.S. 178 (1963).

"Such approval is 'freely given when justice so requires.'" *O'Connell* at 154.

## **CONCLUSION**

Kathleen Sternenberg is not absolutely immune from suit because Plaintiff's complaint against Sternenberg is not barred by the doctrine of absolute quasi-judicial immunity.

Defendant Sternenberg was never properly appointed in the first place; or, in the alternative, her appointment violated federal due process. Moreover, many of her actions that were not disclosed to Plaintiff did not occur within the scope of Sternenberg's official duties as a GAL, and it would be premature for this Court to address Sternenberg's argument without first forming any opinion about the claims against her close friend, former judge Julie Introcaso.

In particular, Defendant Introcaso was subsequently criminally charged arising out of Defendant Introcaso's behavior in a different matter involving Defendant Sternenberg.

Consequently, for the foregoing reasons, dismissal of any of Plaintiff's claims against Defendant Sternenberg as a matter of law at this stage in these proceedings is completely unwarranted.

Respectfully submitted,

_____
DANA ALBRECHT
*Plaintiff Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

October 12, 2023.

## CERTIFICATE OF SERVICE

I, Dana Albrecht, hereby certify that a copy of this *Memorandum* shall be served to all the parties and/or counsel of record through the ECF system.

_____
DANA ALBRECHT

October 12, 2023