## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Dana Albrecht

      v.                               Civil No. 23-cv-381-JL-TSM

Kathleen Sternenberg, et al.

### REPORT AND RECOMMENDATION

Plaintiff Dana Albrecht, pro se, brought this civil rights suit under 42 U.S.C. § 1983 asserting claims against several defendants.  Defendant Kathleen Sternenberg moves to dismiss (doc. no. 5), arguing that she is entitled to judicial immunity as to all of Albrecht's claims against her.[1]  Albrecht objects.  For the following reasons, the court recommends that the district judge grant Sternenberg's motion to dismiss.

### Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges whether a complaint contains enough "factual matter" to show that the plaintiff has a plausible entitlement to relief under the prevailing law.  See Burt v. Bd. of Tr. of Univ. of R.I., 84 F.4th 42, 50 (1st Cir. 2023).  In evaluating whether the plaintiff has a plausible entitlement to relief, the court must accept the complaint's factual allegations as true, and it must draw all reasonable inferences in the plaintiff's favor.  Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Generally, the court may consider only the facts alleged in the complaint, exhibits attached to the complaint, and other materials that are fairly incorporated in the complaint or are subject to judicial notice such as matters of public record.  Lowe v. Mills, 68 F.4th 706, 713-14 (1st Cir. 2023); see Butler v. Balolia,

---

[1] The other defendants – Bruce DalPra, Julie Introcaso, Mark Derby, David King, and the "NH Judicial Branch" – have also filed motions to dismiss but they are presently unripe.

736 F.3d 609, 611 (1st Cir. 2013).   Finally, as a pro se litigant, Albrecht is entitled to a liberal

construction of his pleadings.   See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### Facts

Applying that standard, the relevant facts are as follows.   This suit arises out of a separate

proceeding in the New Hampshire Circuit Court, 9th Circuit, Family Division (the "family court").

The family court proceeding began after Albrecht's then-spouse, Katherine Albrecht, "obtained a

civil domestic violence order of protection" against Albrecht.   Doc. no. 1 ¶ 27.   Although that order

was "later dismissed," id., the family court proceeding developed into a multi-year divorce, child

custody, and parental rights battle.

At some point prior to or around October 2016, then-Judge Julie Introcaso began presiding

over the family court proceeding.   Introcaso appointed a marital master, defendant Bruce DalPra.

In turn, DalPra recommended that Introcaso appoint Sternenberg as guardian ad litem for the

Albrechts' four children.   Introcaso approved that recommendation, appointing Sternenberg as

guardian ad litem on October 13, 2016.   At the time and unknown to Albrecht, Sternenberg and

Introcaso were close friends.   In particular, Introcaso had named Sternenberg godmother to one of

her children, and they had vacationed together on more than one occasion.   There are no allegations

that DalPra had a personal relationship with Sternenberg or Introcaso, but Albrecht alleges that

DalPra learned about Sternenberg and Introcaso's relationship in 2014, and failed to disclose it to

Albrecht.

After Sternenberg's appointment, Albrecht's ex-spouse filed a motion in the family court

proceeding requesting permission to relocate three of their children to California.   On August 9,

2017, DalPra held a hearing on the motion at which Sternenberg "provided extensive testimony"

and recommended that the court grant the motion, which it did.   See id. ¶¶ 13, 31-33.

In 2019, Albrecht filed a motion in the family court to hold his ex-spouse in contempt for failing to comply with the family court's parenting plan.  On May 9, 2019, DalPra held a hearing on the motion.  After the hearing, DalPra recommended that Albrecht's motion be denied, see id. ¶¶ 39-42.  Introcaso ultimately approved that recommendation.  See id. ¶ 41.  Albrecht appealed the denial of his motion for contempt to the New Hampshire Supreme Court, which denied review.

In 2020, Sternenberg and Introcaso's friendship became public, and the New Hampshire Judicial Conduct Committee began investigating Sternenberg's guardian ad litem appointments in Introcaso's cases.   Introcaso ultimately admitted to serious judicial ethics violations and resigned her judgeship.  In re Julie Introcaso, Nos. JC-19-050-C & JC-20-010-C (N.H. Judicial Conduct Comm. Feb. 19, 2021).  Moreover, Introcaso was accused of tampering with court documents, a charge for which she was later convicted after an Alford plea.  See Todd Bookman, A former N.H. judge pleads guilty to tampering with case files; given a suspended sentence, N.H. Public Radio, Nov. 15, 2021, https://www.nhpr.org/nh-news/2021-11-15/julie-introcaso-wite-out-nh-circut-court (last visited Nov. 8, 2023).

In this suit, Albrecht brings constitutional claims against Sternenberg, Introcaso, DalPra, two other New Hampshire state judges (Mark Derby and David King), and the "NH Judicial Branch."  Albrecht brings seven claims against Sternenberg.  In six of the seven claims, Albrecht alleges that Sternenberg violated his rights to procedural and substantive due process under the Fourteenth Amendment by failing to disclose her conflict of interest when Introcaso initially appointed her in October 2016 (Counts 1 and 2); when she testified at the August 9, 2017 hearing (Counts 7 and 8); and when she testified at the May 9, 2019 hearing (Counts 11 and 12).   In addition, Albrecht brings a claim (Count 40) that Sternenberg violated his First Amendment rights under the Free Exercise and Establishment Clauses.  In relation to that claim, Albrecht alleges that,

during her testimony at the August 9, 2017 hearing, Sternenberg described the works of Italian renaissance painter Sandro Botticelli as "naked paintings" and stated that one of Albrecht's children said that she had "real problems sleeping" after seeing some of Botticelli's works during a trip with Albrecht to the Boston Museum of Fine Arts.  Doc. no. 1 ¶ 204.

In his demand for relief, Albrecht seeks "declaratory judgment[s]" against Sternenberg "for all violations of procedural due process"; "all violations of substantive due process"; and for the violation of the First Amendment; as well as "all other relief as is just and reasonable."  Doc. no. 1 at 3-4.

### Discussion

Sternenberg moves to dismiss Albrecht's claims against her, arguing that she is entitled to absolute quasi-judicial immunity because Albrecht's claims relate to her service as a court-appointed guardian ad litem.  Albrecht objects.  Among other arguments, he contends that § 1983 abrogates judicial immunity; that Sternenberg's appointment as guardian ad litem was ineffective because Introcaso should have recused herself from presiding over the family court proceeding; and that declaratory relief is available against state judicial officers under § 1983.  The court recommends that the district court grant Sternenberg's motion on the basis of quasi-judicial immunity.

Judicial immunity generally precludes lawsuits brought against judges for acts taken as part of their judicial functions.  See, e.g., Verogna v. Johnstone, 583 F. Supp. 3d 331, 337-38 (D.N.H. 2022), aff'd, No. 22-1364, 2022 WL 19795808 (1st Cir. Nov. 14, 2022), cert. denied, No. 22-7607, 2023 WL 6378181 (Oct. 2, 2023); Dominic v. Goldman, 560 F. Supp. 3d 579, 586 (D.N.H. 2021).  Judicial immunity is absolute, and it is broad.  See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam).  That is, judicial immunity "applies no matter how erroneous the

act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." Id. (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Davis v. Campbell, 2014 WL 234722, at *8 (N.D.N.Y. Jan. 22, 2014) (citing Imbler v. Pachtman, 424 U.S. 409, 419 n.12 (1976)); see also Gibson v. Goldston, No. 22-1757, --- F.4th ---, 2023 WL 7118522, at *3 (4th Cir. 2023) (citing Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872)). "Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity." Cok, 876 F.2d at 2.

Further, judicial immunity extends to "those who perform tasks that are inextricably intertwined with the judicial function," a doctrine known as quasi-judicial immunity. Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012). Quasi-judicial immunity "is rooted in the wise idea that those who perform adjudicative functions 'require a full exemption from liability.'" Id. (quoting Butz v. Economou, 438 U.S. 478, 508 (1978)). And, to the extent they are appointed "to aid and inform the family court," guardians ad litem "are non-judicial persons fulfilling quasi-judicial functions" who are sufficiently involved in the adjudicative process to be entitled to quasi-judicial immunity. See Cok, 876 F.2d at 3.

Sternenberg is entitled to absolute quasi-judicial immunity as to Albrecht's claims against her in this case. The family court appointed Sternenberg to serve as a guardian ad litem in the family court proceeding. Consistent with that appointment, Sternenberg undertook the precise functions – gathering information, preparing a report, and making a recommendation to the court – that entitle a guardian ad litem to quasi-judicial immunity. See id. (holding that court-appointed guardian ad litem was entitled to quasi-judicial immunity where plaintiff's due process claims amounted to "negligent performance or dereliction of duty"); Marr v. Me. Dept. of Hum. Servs.,

215 F. Supp. 2d 261, 268-69 (D. Me. July 9, 2002) ("Judicial immunity has been extended to protect the [guardian ad litem's] acts of investigating, meeting with children, making reports and recommendations to the court, and testifying in court."); Puiia v. Cross, No. 12-cv-54-PB, 2012 WL 3257824, at *2 (D.N.H. Aug. 8, 2012) (finding that guardian ad litem appointed in New Hampshire family court to "carry out certain functions related to custody proceedings" was entitled to absolute quasi-judicial immunity).  Albrecht has not alleged that he suffered any harm in relation to any acts taken by Sternenberg that were either outside her jurisdiction or beyond her quasi-judicial functions.  Compare Gibson, 2023 WL 7118522, at *5 (holding that state judge who searched a litigant's home was not entitled to judicial immunity for claims based on that act because searching a litigant's home is an executive rather than judicial function).  Accordingly, Sternenberg is entitled to absolute quasi-judicial immunity.

None of Albrecht's arguments persuade the court otherwise.  As an initial matter, Albrecht contends that § 1983 abrogates absolute judicial immunity and that qualified immunity, rather than absolute immunity, should apply in these circumstances.  But, as Albrecht acknowledges, the Supreme Court has long held that judicial immunity (and by extension, quasi-judicial immunity) applies in actions under § 1983.  E.g., Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).[2]

Albrecht also argues that Sternenberg was never properly appointed in the family court proceeding, so her actions during the family court proceeding cannot be considered judicial acts. More specifically, Albrecht asserts that Introcaso's failure to recuse herself from the family-court proceeding was itself a due process violation so any acts taken after the time Introcaso should have recused herself – including Sternenberg's appointment – are, in effect, void.  In support, Albrecht

---

[2] In acknowledging that his argument is foreclosed by binding precedent, Albrecht contends that the Supreme Court's decisions on judicial immunity were wrongly decided and that he wishes to preserve the issue for appeal.

points to Caperton v. AT Massey Coal Co., Inc., 556 U.S. 868 (2009), and Brown v. Newberger, 291 F.3d 89 (1st Cir. 2002).  Neither case, however, supports Albrecht's arguments.

To start, the First Circuit rejected Albrecht's reasoning in Brown v. Newberger.  In Brown, the plaintiffs argued that two court-appointed sexual abuse evaluators were not entitled to quasi-judicial immunity because they were never properly appointed by the court.  291 F.3d at 94.  But the court declined to examine whether any defect existed in the defendants' appointments, stating instead that "[t]he essential fact is that both defendants were operating at the request of the court." Id.  The court reasoned that "[w]ere collateral and retrospective attacks on technical defects of court appointments permitted, the court's work in an already difficult litigation field would often be undone, with consequent uncertainty, delay, and frustration."  Id.  The court thus held that both defendants were entitled to quasi-judicial immunity, notwithstanding the plaintiffs' attack on the validity of their appointments.  See id. at 94-95.  Similarly, here, even if Introcaso should not have appointed Sternenberg for one reason or another, the "essential fact" remains that Sternenberg acted at the state court's request.  Albrecht's after-the-fact, collateral challenges to Sternenberg's appointment cannot undermine her entitlement to quasi-judicial immunity.  See id.

The Supreme Court's decision in Caperton also does not help Albrecht.  In Caperton, the Supreme Court reversed, on federal due process grounds, a West Virginia Supreme Court justice's refusal to recuse himself from a case where he had received large campaign contributions from a litigant.  556 U.S. at 884-87.  Because the justice should have recused himself, the Supreme Court vacated the West Virginia Supreme Court's decision on its merits and remanded the matter for rehearing.  See id. at 872, 889-90.  Importantly, however, the Supreme Court's decision in Caperton came on direct appeal from the matter in which the petitioner's motion to recuse had

been denied, not, as here, in a collateral civil rights lawsuit where the judicial officers themselves are named as defendants.[3]

Next, Albrecht asserts that judicial immunity does not apply because he seeks declaratory relief in this case rather than money damages.  It is true that declaratory relief may be available against a state judicial officer notwithstanding judicial immunity.  See Justice Network Inc. v. Craighead Cnty., 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983" that generally bars injunctive relief "does not bar declaratory relief against judges."); Allen v. DeBello, 861 F.3d 433, 442 (3d Cir. 2017) (discussing circumstances when declaratory relief may be available against judges in § 1983 suits).[4]  But "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act."  Justice Network Inc., 931 F.3d at 764 (quoting Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008)).  Therefore, a statement that a state judge's prior actions violated federal law does not "satisfy the definition of 'declaratory judgment.'"  See id.; Lawrence, 271 Fed. Appx. at 766 ("What [plaintiffs] are seeking is a declaration of past liability, not future rights between them and Judge Kuenhold. A declaratory judgment would serve no purpose here and thus, is not available."); Davis, 2014 WL 234722, at

---

[3] Albrecht also cites Rippo v. Baker, 580 U.S. 285 (2017), which vacated a Nevada Supreme Court judgment on the ground that it applied the wrong legal standard to a due process claim based on a judge's failure to recuse himself.  Like Caperton, Rippo came in the context of a direct appeal to the Supreme Court from the state court matter as opposed to a separate lawsuit against the judicial officers themselves.  Id.

[4] In 1984, the Supreme Court held that judicial immunity does not prohibit suits against state court judges under § 1983 for prospective injunctive relief.  Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).  Congress, however, abrogated Pulliam by amending § 1983 to state that injunctive relief "shall not be granted" in any action "brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; see Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000).

*9 (finding that request for declaratory judgment that "past actions that occurred in the context of the Family Court proceedings violated [the plaintiff's] constitutional rights" was a retrospective rather than prospective request, even though framed in "future terms"); see also Green v. Mansour, 474 U.S. 64, 73 (1985) (holding that declaratory judgment was unavailable where "[t]here is no claimed continuing violation of federal law" and no "threat of state officials violating" the challenged law in the future). Indeed, the First Circuit has indicated that such a declaratory judgment would typically be an impermissible advisory opinion. ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013) ("With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory.").

At most, Albrecht requests declaratory judgments against Sternenberg that would state that her past actions violated his rights under the First and Fourteenth Amendments.[5] That kind of judgment would merely declare Sternenberg's "liability for a past act." See Justice Network, 931 F.3d at 763. So, even though Albrecht characterizes the relief that he seeks as declaratory, what he seeks does not "satisfy the definition of declaratory judgment" in function. See id. For that reason, the exception to judicial immunity for certain claims seeking declaratory relief does not apply.

Lastly, Albrecht argues that the court cannot dismiss the claims against Sternenberg "without having first formed any opinion about the claims against" Introcaso. Doc. no. 12-1 at 17. For the reasons already explained, however, Sternenberg is entitled to absolute quasi-judicial immunity here regardless of how Albrecht's claims against Introcaso are resolved.

---

[5] Albrecht's complaint is unclear about the precise declaratory judgment he seeks, as he only asks the court to "[i]ssue declaratory judgment in favor of Plaintiff for all violations" of the constitution alleged. Doc. no. 1 at 31-32.

In his objection, Albrecht also asks for an opportunity to amend his complaint. Sternenberg's motion to dismiss, however, gave Albrecht notice of the defects in his complaint, and Albrecht could have amended the complaint at that time instead of resting on the complaint as presented.  See Fed. R. Civ. P. 15(a)(1)(B); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36-37 (1st Cir. 2001) (observing that a motion to dismiss generally provides pro se litigants reasonable notice of potential dismissal and an opportunity to respond by either objecting or amending the complaint as of right).  Furthermore, Albrecht did not indicate what he would add or change in an amended pleading that would affect the outcome considering the breadth of absolute quasi-judicial immunity.  Cf. LR 15.1(a) (requiring any party who moves to amend to file a proposed amended complaint to the motion to amend).

## Conclusion

For the foregoing reasons, the district judge should grant Sternenberg's motion to dismiss (doc. no. 5).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The objection period may be extended upon motion.  Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

December 11, 2023
cc:     Dana Albrecht, pro se
        Counsel of Record