# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **Dana Albrecht,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **Civil No. 1:23-cv-00381-JL-TSM** |
| | ) | |
| **Kathleen Sterneberg, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DERBY, KING AND NH JUDICIAL BRANCH'S MOTION TO DISMISS

By:   Dana Albrecht
      *Plaintiff Pro Se*
      131 D.W. Hwy #235
      Nashua, NH 03060
      (603) 809-1097
      dana.albrecht@hushmail.com

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................2

TABLE OF AUTHORITIES..............................................................3

    Cases...............................................................................3

    Statutes...........................................................................5

    Constitutional Provisions..................................................5

    Other Authorities............................................................5

INTRODUCTION........................................................................6

STATEMENT OF CASE.................................................................6

    Procedural History of Related State Court Civil DV Case.............8

    Harm Suffered by Plaintiff................................................13

STANDARD OF REVIEW.............................................................14

ARGUMENT.............................................................................15

    I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.........15

    II. Judicial Immunity Does Not Extend to Non-Judicial Actions, Which Include Proven Findings of Misconduct.................................................16

    III. Retrospective Relief and Mootness.......................................17

    IV. The Eleventh Amendment Does Not Bar Plaintiff's Claims for Declaratory Relief...............................................................19

    V. The Rooker-Feldman Doctrine Does Not Apply......................21

    VI. The Court Should Exercise its Discretion to Grant Declaratory Relief........22

    VII. Because this Case is in the Public Interest, Failure by this Court to Exercise its Discretion to Grant Declaratory Relief would violate the Petition Clause.....24

    VIII. Plaintiff should be granted leave to amend his Complaint if "justice so requires."....................................................................26

CONCLUSION...........................................................................27

CERTIFICATE OF SERVICE..........................................................28

## TABLE OF AUTHORITIES

**Cases**

Allen v. DeBello, 861 F.3d 433 (3d Cir. 2017)...........................................21 f., 26

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997)..............................................24

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...........................................................14

BE & K Constr. Co. v. NLRB, 536 U.S. 516 (2002).......................................24 f.

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)...........................................14

Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000)................................................22

Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379 (2011)...........................24 f.

Brown v. Louisiana, 383 U.S. 131 (1966)........................................................25

Caperton v. AT Massey Coal Co., Inc., 556 U.S. 868 (2009)............................19

Carroll v. Princess Anne, 393 U. S. 175 (1968)...............................................17

Central Virginia Community College v. Katz, 546 U.S. 356 (2006)....................20

Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005). 14

Cok v. Cosentino, 876 F.2d 1 (1st Cir. 1989)...............................................16 f.

Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022)............18

Erickson v. Pardus, 551 U.S. 89 (2007)........................................................15

Ex parte Young, 209 U.S. 123 (1908)...........................................................19 f.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)............21

Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17 (1st Cir. 2005)................................................................21

Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)...................................................20

Foman v. Davis, 371 U.S. 178 (1963)...........................................................26

Forrester v. White, 484 U.S. 219 (1988)........................................................16

Gagliardi v. Sullivan, 513 F.3d 301 (1st Cir. 2008).........................................14

Gibson v. Goldston, No. 22-1757, (4th Cir. October 30, 2023)...........................16

Gonzalez-Gonzalez v. United States, 257 F.3d 31 (1st Cir. 2001)...................26 f.

Green v. Mansour, 474 U.S. 64 (1985)..........................................................19

Holzemer v. City of Memphis, 621 F.3d 512 (6th Cir. 2010)............................25

Justice Network Inc. v. Craighead Cnty., 931 F.3d 753 (8th Cir. 2019).....6, 22 f., 26

Lawrence v. Kuenhold, 271 Fed. Appx. 763 (10th Cir. 2008)..........................22

Mack v. Warden Loretto FCI, 839 F. 3d 286 (3d Cir. 2016).............................25

Magna Carta (1215)....................................................................................24

McDonald v. Smith, 472 U.S. 479 (1985).......................................................25

Milliken v. Bradley, 433 U.S. 267 (1977).......................................................20

Mitchum v. Foster, 407 U.S. 225 (1972)........................................................24

Moore v. Ogilvie, 394 U. S. 814 (1969).........................................................17

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982)................................25

Neitzke v. Williams, 490 U.S. 319 (1989).......................................................26

New York State Rifle & Pistol Assn, Inc. v. Bruen, 142 S. Ct. 2111 (2022)...........14

O'Connell v. Hyatt Hotels of P. R., 357 F.3d 152 (1st Cir. 2004).......................26

Petition of Right, 3 Car 1 c 1 (1628).............................................................24

Petition of Union Leader Corp., 147 N.H. 603 (2002)....................................20

Pierson v. Ray, 386 U.S. 547 (1967).......................................................15, 17

Pulliam v. Allen, 466 U.S. 522 (1984)...........................................................22

Rippo v. Baker, 137 S. Ct. 905 (2017)...........................................................19

Roe v. Wade, 410 U.S. 113 (1973)................................................................18

Samuels v. Mackell, 401 U.S. 66 (1971)........................................................23

Southern Pacific Terminal Co. v. ICC, 219 U. S. 498 (1911)............................17

Stump v. Sparkman, 435 U.S 349 (1978).......................................................17

Tapply v. Zukatis, 162 N.H. 285 (2011).........................................................19

Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34 (1st Cir. 2010)..............................14

The Bill of Rights 1689, 1 William & Mary Sess 2 c 2....................................24

Troxel v. Granville, 530 U.S. 57 (2000)....................................................13, 20

United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217 (1967)
.................................................................................................24

United States v. Cruikshank, 92 U.S. 542 (1875)............................................24

United States v. Isaacson, No. 09-cv-332-JL (D.N.H. July 15, 2011).................14

United States v. Rahimi, 61 F. 4th 443 (5th Cir. 2023)................................7, 14

United States v. W. T. Grant Co., 345 U. S. 629 (1953)..................................17

Van Deelen v. Johnson, 497 F.3d 1151 (10th Cir. 2007)..................................25

Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635
(2002)..........................................................................................20 f.

Wilton v. Seven Falls Co., 515 U.S. 277 (1995)..............................................23

## Statutes

18 U.S.C. § 242...............................................................................15
42 U.S.C. § 1983..........................................................................6, 15pp.
Civil Rights Act of 1866....................................................................15p.
Ku Klux Klan Act of 1871.................................................................15p.

## Constitutional Provisions

U.S. Const. amend. I........................................................................24p.
U.S. Const. amend. XI.........................................................19pp., 20, 27
U.S. Const. amend. XIV........................................................................6

## Other Authorities

Judicial Immunity at the (Second) Founding: A New Perspective on § 1983. 136
Harv. L. Rev. 1456. March 2023...........................................................15
Ronald J. Krotoszynski, Jr., Reclaiming the Petition Clause...........................24

**INTRODUCTION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking declaratory relief that the defendants' failure to disclose various conflicts of interest and other relevant materials to Plaintiff in a timely fashion during the course of Plaintiff's family law case violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

It seeks only a declaratory judgment in Plaintiff's favor.

In particular, Plaintiff has not sought any monetary damages.

Further, because of these past alleged injuries by the Defendants, Plaintiff's federal constitutional rights continue to be violated on a continuing, and ongoing basis, up to and including the present time.

Consequently Plaintiff's request for "[a] declaratory judgment [would also] define the legal rights and obligations of the parties in anticipation of some future conduct" in any related future state or federal court proceeding. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019).

**STATEMENT OF CASE**

Plaintiff and his ex-wife have now been involved for over seven years in a multi-state diversity of citizenship family law case spanning events in four different states (New Hampshire, Massachusetts, California, and Michigan) involving (A) an ongoing child custody dispute in a New Hampshire state court divorce proceeding, *Albrecht v. Albrecht*, No. 659-2016-DM-00288, and (B) allegations of "domestic violence" in two separate New Hampshire state court civil domestic violence proceedings, *Albrecht v. Albrecht*, 659-2016-DV-00120, No. 659-2019-DV-00341.[1]

Concerning the ongoing child custody dispute, Plaintiff's family law case is one of at least nine New Hampshire Family law cases wherein former judge Julie Introcaso appointed her close friend Kathleen Sternenberg as *Guardian ad Litem*, despite the conflict of interest.

---

1    See Exhibit 15.

- 6 -

However New Hampshire has not provided equal protection to the various litigants in these nine cases. In at least one case, *Campbell v. Partello*, No. 659-2018-DM-00702, Ms. Introcaso recused herself based on the conflict of interest.

In Plaintiff's NH state family law case, however, Plaintiff was <u>unaware</u> of the conflict of interest, and thus <u>did not have any opportunity to file any motion for recusal based on this conflict</u>, until it was already "too late."

In yet another of these nine family law cases, *Loudermilk v. Montgomery*, No. 659-2015-DM-00185, Ms. Sternenberg continued to appear in hearings before Ms. Introcaso in open court, and <u>after</u> Ms. Introcaso's recusal order in *Campbell v. Partello*.

Consequently, with regard to the conflict between Ms. Introcaso and Ms. Sternenberg, various "similarly situated" individuals have been treated radically differently by the New Hampshire state court system, in violation of the equal protection provisions of the federal constitution.

Concerning the allegations of "domestic violence" in two separate but related New Hampshire state court civil domestic violence proceedings, *Albrecht v. Albrecht*, 659-2016-DV-00120, No. 659-2019-DV-00341, Plaintiff alleges, *inter alia*, that the related state court proceedings are a "textbook example" of what the Fifth Circuit Court of Appeals recently articulated in <u>*United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023)</u> (internal citations omitted; cleaned up) that:

> **Many divorce lawyers routinely recommend pursuing civil protection orders for clients in divorce proceedings as a tactical leverage device. This is because civil protective orders can help a party in a divorce proceeding to secure favorable rulings on critical issues such as marital and child support, exclusion from the marital residence, and property disposition. Protective orders can also be a powerful strategic tool in custody disputes.**

> **That makes civil protective orders a tempting target for abuse. Judges have expressed concern with the serious policy implications of permitting allegations of domestic violence to be used in divorce proceedings. And for good reason. Not all parties to divorce are above using protective orders not for their intended purpose but solely to gain advantage in a dissolution. Anyone who is willing to commit perjury can spend months or even years planning to file a domestic violence complaint at an**

**opportune moment to gain the upper hand in a divorce proceeding. So, a plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief.**

**Moreover, these concerns are exacerbated by the fact that judges are too often ill-equipped to prevent abuse. Family court judges may face enormous pressure to grant civil protective orders – and no incentive to deny them. For example, family court judges may receive mandatory training in which they're warned about the unfavorable publicity that could result if they deny requests for civil protective orders. As one judge has noted, a newspaper headline can be death to a municipal court judge's career. So, the prospect of an unfavorable newspaper headline is a frightening one. To quote another judge: "Your job is not to become concerned about all the constitutional rights of the defendant you're violating as you grant a restraining order. Throw him out on the street, give him the clothes on his back and tell him, See ya around." Yet another judge said, "If there is any doubt in your mind about what to do, you should issue the restraining order."**

**As a result, restraining orders are granted to virtually all who apply. So there's a tremendous risk that courts will enter protective orders automatically – despite the absence of any real threat of danger. In one case, for example, a family court judge granted a restraining order on the ground that the husband told his wife that he did not love her and was no longer attracted to her. There was no prior history of domestic violence, yet the judge issued the order anyway. Another judge issued a restraining order against celebrity David Letterman on the grounds that his presence on television harassed the plaintiff.**

However, concerning the related state civil domestic violence proceedings, Plaintiff alleges <u>specific</u> instances in Plaintiff's *Complaint* wherein Plaintiff's due process rights were violated.

## Procedural History of Related State Court Civil DV Case.

1. On 9/16/2019, the NH Supreme Court declined review in a discretionary appeal (requiring *certiorari*), No. 2019-0436, of two trial court orders dated 5/30/2019 (Judge Introcaso) and 6/30/2019 (Judge Derby) wherein Plaintiff

requested the trial court enforce the trial court's parenting plan, but the trial court declined to do so.[2]

2. On 10/25/3029, the NH Supreme Court denied a motion for rehearing and reconsideration of its 9/16/2019 *Order*, No. 2019-0436.[3]

3. On 10/31/2019, Plaintiff's ex-wife filed a false police report wherein she advised the Sierra Madera, CA police that "she has full custody of the children" when in reality the NH trial court had provided for joint decision making authority and substantive parenting time for Plaintiff in its parenting plan.[4]

4. On 11/1/2019, Plaintiff filed an *Ex Parte Motion to Contempt and Compel*, in the related parenting matter, seeking parenting time with his minor children while they were on vacation from California to New England.[5]

5. On 11/19/2019, Judge Derby denied Plaintiff's *Motion to Consolidate* for Hearing, requesting that his parenting motion be heard at the same time as Plaintiff's ex-wife's civil DV petition.[6]

6. On 1/27/2020, Judge Derby issued an order determining that his original civil DV order of protection was rooted "particularly in [Mr. Albrecht's] answers, deflections and evasive non-answers to the questioning on Pages 71-79 of the December 20, 2019 transcript," further noting that "the only incident the court considered for the purposes of finding abuse was the November 3, 2019 incident," wherein Mr. Albrecht attempted peacefully to attend a public church service in Massachusetts in an attempt to see his two minor children and one adult child, and finding against Mr. Albrecht because he "did not have scheduled parenting time with the children on November 3."[7]

7. On 11/6/2020, both parties were present during a telephonic hearing in the parties' family law case, *ITMO Dana Albrecht and Katherine Albrecht*, No. 659-2016-DM-00288, in the 9th Circuit Court, Family Division, Nashua, NH.

---

2  See Exhibit 14.

3  Id.

4  Id.

5  Id.

6  Id.

7  Id.

8. During the 11/6/2020 hearing, the presiding judicial officer, Marital Master Bruce F. DalPra, committed proven judicial misconduct,[8] but the parties were unaware of it at the time of the hearing.

9. On 11/6/2020, after the hearing, Mr. Albecht placed an order for an official transcript of the proceedings, with a three-day turnaround time, from eScribers, LLC., which has an exclusive contract with the New Hampshire Judicial Branch (NHJB), but has offices in Arizona and New York.[9]

10. On 11/12/2020, eScribers, LLC sent an email to the New Hampshire Judicial Branch (NHJB) stating "of course we are not going to transcribe that," referring to Master DalPra's misconduct.[10]

11. On 11/13/2020, NH Circuit Court Administrative Judge David King[11] sent an email[12] to Master DalPra about the misconduct that was deliberately left out of the first version[13] of the 11/6/2020 trial court transcript.

12. On 12/21/2020 the state trial court (Judge Curran) issued a one-year extension of Judge Derby's original DV order of protection until 12/29/2021.

13. On appeal of Judge Curran's initial one year extension, No. 2021-0192, Mr. Albrecht raised the issue, *inter alia*. that "more recently, the trial court was provided with Judge Introcaso's arrest warrant and information about her relationship with Kathleen Sternenberg, but did not take this into account when extending the domestic violence order," but the N.H. Supreme Court never addressed this issue.[14]

14. On 2/16/2021, the NH Judicial Conduct Committee (JCC), *only having access to the first version* of the 11/6/2020 transcript[15], determined there was "no reasonable likelihood of a finding of judicial misconduct" by Master DalPra, and so informed Judge David King.[16]

---

8   See Exhibit 11.
9   See Exhibit 2.
10  See Exhibit 1.
11  See Exhibit 13 for background information.
12  See Exhibit 3.
13  See Exhibit 5.
14  See Exhibit 14.
15  See Exhibit 5.
16  See Exhibit 4.

15. On 12/10/2021, in appeal No 2021-0192, the NH Supreme Court ordered[17] that a second version[18] of the 11/6/2020 trial court transcript be prepared, after it could not find Master DalPra's misconduct in the first version.[19]

16. On 12/17/2021, the New Hampshire Union Leader ran a front page news story titled _Foul-mouth family court master ordered off all cases_. The article explained that "David King, the chief justice of the District Court, ordered that [Master] DalPra will no longer hear cases, effective immediately, according to a statement issued by the court system."

17. Judge David King apparently made every effort to "cover up" Master DalPra's misconduct, _prior_ to front-page news coverage by the New Hampshire Union Leader, and _then_ immediately fired Master DalPra, _possibly_ to deflect attention away from Judge King himself.

18. Subsequently, in a local police report dated 2/15/2022, Nashua Police Officer Robert Dunn stated that he "spoke with Michele Lilley at eScribers. She informed me [Ofc. Dunn] that the original transcribers did not hear the offending lines as they were whispered. She also explained that the missing lines were not put into the body of the text as this is a New Hampshire policy"[20]

19. By April 2022, Mr. Albrecht was still unaware that Judge King was responsible for the falsified 11/6/2020 transcript, and Mr. Albrecht still wrongly suspected that Master DalPra was to blame.

20. On 4/22/2022, the Public Integrity Unit (PIU) of the New Hampshire Department of Justice concluded[21] that "there is no evidence to suggest that Master DalPra or any person at his direction altered the original transcript of the hearing by intentionally omitting the two inappropriate comments;" however, the PIU did not investigate Judge King, nor did the NH PIU have access to Judge King's subsequent 8/26/2022 deposition[22], since that deposition _had not yet been taken_.

---

17 See Exhibit 6.
18 See Exhibit 7.
19 See Exhibit 5.
20 See Exhibit 8.
21 See Exhibit 9.
22 See Exhibit 10.

21. On 8/26/2022, the deposition of Judge King was finally taken.[23] Judge King
    likely lied, under oath, about telling the NH Judicial Conduct Committee (*Tr.
    26:12-16*) what "he had found regarding the transcript in the <u>Albrecht</u> case,"
    referring to the 11/6/2020 transcript:

    ```
    12  Q   Did you tell the Judicial Conduct Committee?

    13  A   Did I tell the Judicial Conduct Committee what?

    14  A   About what you had found regarding the transcript in

    15      the Albrecht case?

    16  A   Yes.
    ```

22. Had Judge King *actually* been forthright to the NH JCC about what he "had
    found regarding the transcript," it is unlikely the JCC would have initially
    determined on 2/16/2021 there was "no reasonable likelihood of a finding of
    judicial misconduct" by Master DalPra.

23. On 11/10/2022, the NH Supreme Court finally issued an order correctly
    finding that Master DalPra had committed judicial misconduct, but it did not
    realize that Judge King was responsible for the inaccuracies in the 11/6/2020
    transcript, nor that Judge King had (initially) made every effort to "cover
    up" Master DalPra's misconduct.

24. On 12/20/2022, a <u>third</u> version of the 11/6/2020 transcript (144 pages in
    length)[24] was finally docketed by the NH Supreme Court, in a subsequent
    appeal of the underlying family law matter.

25. This was <u>over two years later</u>, after Mr. Albrecht had originally requested a
    transcript of the 11/6/2020 proceedings with a <u>three-day</u> turnaround time.[25]

26. The civil DV case continues to be ongoing,[26] with two additional state court
    appeals, No. 2023-0181, No. 2023-0602, still pending, and the most recent
    state trial court hearings having been recently held on 11/15/2023[27] and
    11/16/2023,[28] <u>after</u> the filing of Plaintiff's original *Complaint* in this
    matter.

---

23  See Exhibit 10.
24  See Exhibit 12.
25  See Exhibit 2.
26  See Exhibit 15.
27  See Exhibit 16.
28  See Exhibit 17.

**Harm Suffered by Plaintiff**

First, and foremost, the crux of Plaintiff's federal claims are *not* direct challenges to state court decisions but rather allegations of misconduct and nondisclosure by state officials, which deprived the Plaintiff of a fair legal process.

Because of this misconduct and these nondisclosures, Plaintiff was denied any opportunity during the state court proceedings to take any corrective active in the state court, because Plaintiff (largely) did not know *prior to* relevant state court decisions, about various conflicts of interest and other information not disclosed to Plaintiff.

Consequently, Plaintiff was denied the opportunity to take various corrective actions including, but not necessarily limited to, filing motions for recusal in the state court.

As a result, Mr. Albrecht has had a grand total of roughly 30-40 days of parenting time total with his two daughters in nearly seven years, after Ms. Albrecht's 9/1/2017 relocation to California and subsequent 10/15/2020 relocation to Michigan. This is directly contrary to the parenting rights protected by the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57 (2000).

Mr. Albrecht, for years, has been subject to a civil domestic violence order of protection, based primarily on a finding that he "did not have scheduled parenting time on November 3, 2019"[29] wherein the state court also restrained Mr. Albrecht from traveling withing 2,000 feet of Collinsville Bible Church, located in Dracut, Masssachusetts, despite that Ms. Albrecht was a resident of Calfornia, and subsequently Michigan.

The New Hampshire state court found that Mr. Albrecht's "First Amendment argument [was] a wholly manufactured controversy. For starters, the court's 2,000 foot restriction is remedial in nature, only applies to the defendant and was based on the [Mr. Albrecht's] specific conduct as part of a finding of domestic violence after a trial. Beyond that, the court has carefully considered this matter and is satisfied that, in light of [Mr. Albrecht's] testimony, there is no less restrictive means available by which to protect the plaintiff from the defendant's harassment

---

29  See Exhibit 14.

when she visits the east coast and wants to exercise her constitutional free exercise and associational rights."

Consequently, for years, Mr. Albrecht has been unable to travel, *for any reason*, within 2,000 feet of Collinsville Bible Church, *or at any time*, all while Ms. Albrecht resides thousands of miles away in another state.

Despite having never committed a violent act in his entire life, Mr. Albrecht has also been deprived of his Second Amendment rights. *See, e.g. New York State Rifle & Pistol Assn, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); and, more recently, *United States v. Rahimi*, 61 F. 4th 443 (5th Cir. 2023).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In analyzing whether dismissal is appropriate, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor." *United States v. Isaacson*, No. 09-cv-332-JL, 2011 WL 2783993, at *1 (D.N.H. July 15, 2011) (Laplante, J.) (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). Under Rule 12(b)(6), this Court may consider "facts and documents that are part of or incorporated into the complaint," as well as "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted).

Dismissal is appropriate only if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Finally, Plaintiff appears *pro se.* Consequently, this "pleading[] should be construed so as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89 (2007).

## ARGUMENT

*Note: Plaintiff acknowledges §I of his argument is foreclosed in this jurisdiction and is respectfully made here solely to preserve the issue for further review.*

### I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.

As explained by a recent article in the Harvard Law Review:[30]

> There is consensus that after the Civil War, judicial immunity was eliminated in the criminal context under the Civil Rights Act of 1866. Given that the Ku Klux Klan Act of 1871 considered the Civil Rights Act of 1866 to the utmost degree when imposing civil liability for violations of people's constitutional rights, and given that the Ku Klux Klan Act of 1871 was meant to be even broader than the Civil Rights Act of 1866, 42 U.S.C. § 1983 should therefore be understood to also eliminate judicial immunity.

As the Harvard Law Review (*Id.*) further argues:

> A rereading of the history of 42 U.S.C. § 1983, including its legislative history, and a comparison of 42 U.S.C. § 1983 to 18 U.S.C. § 242 reveal that the [United States Supreme Court's] decision in [*Pierson v. Ray*, 386 U.S. 547 (1967)] rests on erroneous foundations.

The more developed argument set forth in §I of *Plaintiff's Memorandum of Law in Support of Objection to Kathleen Sternenberg's Motion to Dismiss* (Doc 12-1) is incorporated here by reference herein, the same as if plead in full.

Consequently, Plaintiff respectfully wishes to preserve an argument that various prior United States Supreme Court decisions on judicial immunity were wrongly decided.

---

30 *Judicial Immunity at the (Second) Founding: A New Perspective on § 1983*. 136 Harv. L. Rev. 1456. March 2023.

## II. Judicial Immunity Does Not Extend to Non-Judicial Actions, Which Include Proven Findings of Misconduct

Judicial immunity does not extend to non-judicial actions. *See*, e.g. *Gibson v. Goldston*, No. 22-1757, (4th Cir. October 30, 2023). Neither does it extend to "actions taken in the clear absence of all jurisdiction." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989).

Moreover, as our United States Supreme Court has observed, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988).

Similarly, proven judicial misconduct is not a "judicial act" because it is an act taken in the clear absence of all jurisdiction. *Cok* at 2. By way of example, a judicial officer lacks jurisdiction deliberately to falsify evidence, or to commit any other action for which the officer may later be criminally prosecuted.

Furthermore, willful and deliberate violations of any applicable "Code of Judicial Conduct" are also "acts taken in the clear absence of all jurisdiction" (*Cok* at 2) because a judge lacks jurisdiction deliberately to violate any Code of Judicial Conduct that is binding on him or her.

Similarly, any action taken by an officer of the court later resulting in disbarment as a direct consequence, must by logical necessity either fail to be a "judicial act" or be an "act taken in the clear absence of all jurisdiction" or both.

*Arguendo*, if immunity applied to acts directly resulting in a finding of proven judicial misconduct, acts directly resulting in a later criminal conviction, or acts directly resulting in disbarment, then an officer of the court could never, under any circumstances, be subject to misconduct investigations, be criminally prosecuted, or be disbarred, by virtue of a claim to "immunity."

Finally, *any* non-action, i.e., any *hypothetical* action *never taken by a judge in the first place*, cannot by definition be a "judicial action." Indeed, it is not an action at all!

By way of example, some *hypothetical future* "act" of this Honorable Court *later* deciding pleadings *not yet even filed* would not, *at the present time*, be a

"judicial act." It becomes a "judicial act" only *when* the court *actually* acts. Prior to any such action, it cannot a "judicial act" by virtue of it failing to be <u>any kind of act</u> in the first place.

Consequently, the <u>failure</u> of a judicial officer to disclose a conflict of interest is not a judicial act, because it is, in the first instance, <u>a non-action</u>. It it something that never happened. It cannot be a judicial act, because it was not an act at all!

*Arguendo*, the failure of a judicial officer to disclose a conflict of interest is not a judicial act, because it would be, in the second instance, a violation of the applicable Code of Judicial Conduct, and consequently would be undertaken in the "clear absence of all jurisdiction." *Cok* at 2.

Indeed, this case is easily distinguishable from *Pierson v. Ray*, 386 U.S. 547 (1967)] , *Stump v. Sparkman*, 435 U.S 349 (1978), and their various progeny, such as *Cok*.

There was never any proven finding of judicial misconduct (i.e. violations of the relevant Code of Judicial Conduct) for <u>any</u> of the judicial officers presiding over any of these other cases, *supra*.

However, in *this* instant case, distinct from the others, there have been proven findings of judicial misconduct!

## III. Retrospective Relief and Mootness

The crux of Plaintiff's federal claims are *not* challenges to state court decisions but rather allegations of misconduct and nondisclosure by state officials, which deprived the Plaintiff of a fair legal process.

Such allegations are fundamentally different from seeking a review of any state court's decision in and of itself. The Plaintiff argues that due to various undisclosed conflicts of interest, he was not in a position to challenge the state court's decisions effectively, <u>as he was unaware of crucial information</u>.

First, none of Plaintiff's claims are moot because they all constitute issues that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911). *See Moore v. Ogilvie*, 394 U. S. 814, 816 (1969); *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968); *United States v. W. T.*

*Grant Co.*, 345 U. S. 629, 632-633 (1953). *See also Roe v. Wade*, 410 U.S. 113, 125 (1973) (abrogated on other grounds by *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)).

Second, the New Hampshire Supreme Court has already recognized that Plaintiff was deprived of a fair legal process under Article 35 of the New Hampshire State Constitution for nearly identical reasons Plaintiff now argues to the federal court (except under analogous provisions of the United States Constitution) that he was deprived of a fair legal process; namely, *because he was unaware of crucial information, he had no opportunity to file a motion for recusal*.

Consequently, Plaintiff is *not* requesting that the federal court reverse any state court decision; rather, Plaintiff is requesting, *inter alia*, that the federal court <u>recognize</u> a New Hampshire State Supreme Court decision, <u>affirm</u> certain reasoning in that decision, and <u>extend</u> such reasoning; issuing declaratory relief, *inter alia*, that Plaintiff *also* was denied a fair legal process under the Fourteenth Amendment.

As described by the New Hampshire Supreme Court's December 16, 2020 Order in *Albrecht v. Albrecht*, No. 2021-0192:

> **[Mr. Albrecht] states that he did not hear the judicial officer's comment[31] during the family division hearing [on November 6, 2020], and that he only learned of it <u>after</u> receiving a copy of the judicial officer's self-report letter pursuant to a request the defendant filed with the JCC. Accordingly, the defendant argues that because he "<u>was ignorant</u> of [the judicial officer's] self-report at the time [the judicial officer] conducted the most recent [domestic violence] hearing, [Mr. Albrecht] <u>was not given any opportunity to file a motion for recusal</u>."**

Article 35 of the New Hampshire State Constitution requires:

> **[Art.] 35. [The Judiciary; Tenure of Office, etc.]** It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit. It is therefore not only the best policy, but for the security of the rights of the people, that the Judges of the

---

[31] Concerning Mr. Albrecht's testimony in one state trial court proceeding, the presiding judicial officer, Marital Master Bruce F. DalPra, stated "who gives a fuck" and also called Mr. Albrecht's two daughters "a bunch of morons" during a telephonic hearing on parenting held November 6, 2020. See Exhibit 14.

Supreme Judicial Court should hold their offices so long as they behave well; subject, however, to such limitations, on account of age, as may be provided by the Constitution of the State; and that they should have honorable salaries, ascertained and established by standing laws.

June 2, 1784

Amended 1792 to provide for age limitation as provided by the constitution.

Under the N.H. State Constitution, "The test for an appearance of partiality is whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Tapply v. Zukatis*, 162 N.H. 285, 297 (2011).

Under the Fourteenth Amendment, proof of actual bias is not required. Rather, the objective standard is "under a realistic appraisal of psychological tendencies and human weakness, [some] interest poses such a <u>risk</u> of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. AT Massey Coal Co.*, Inc., 556 U.S. 868, 883-84 (2009) (internal citations omitted, emphasis added). Cf. *Rippo v. Baker*, 137 S. Ct. 905 (2017).

*Tapply*, *Caperton*, and *Rippo* are all relevant to this case, not because of their underlying facts *per se*, or the various lower court decisions from which they arose, but because they articulate relevant objective standards for judicial recusal under N.H. Const. pt. 1, art. 35 and the Fourteenth Amendment.

## IV. The Eleventh Amendment Does Not Bar Plaintiff's Claims for Declaratory Relief

The Plaintiff argues that the Eleventh Amendment does not bar this action for declaratory relief. In *Green v. Mansour*, 474 U.S. 64 (1985), the United States Supreme Court established retrospective relief was barred under the Eleventh Amendment in that instant case because "changes in federal law rendered moot the claims for prospective relief" (*Green* at 67).

The Plaintiff's case, however, seeks to address continuous and ongoing violations of federal due process rights due to past actions, aligning with the principles outlined in *Ex parte Young*, 209 U.S. 123 (1908), which permits suits against state officials for ongoing violations of federal law.

Plaintiff has very recently had a civil "domestic violence" order extended *again*, and <u>after</u> the filing of this federal action, because his ex-wife alleges she is in fear for her safety and well being, primarily *because* Plaintiff might exercise his First Amendment rights to further distribute appellate court pleadings, that are <u>already public records</u>. *See, e.g.*, N.H. Const. Pt. 1, arts 8, 22; see also *Petition of Union Leader Corp.*, 147 N.H. 603 (2002).

Indeed, because of these past actions by the Defendants, Plaintiff's federal constitutional rights continue to be violated. For example, Plaintiff continues to be unable to have any contact with his minor daughter G.A., an <u>ongoing</u> violation of the Fourteenth Amendment. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57 (2000).

Further, in *Milliken v. Bradley*, 433 U.S. 267 (1977), the United States Supreme Court elucidated the distinction between prospective and retrospective relief. This precedent supports the argument that while the Plaintiff seeks a declaratory judgment related to past events, and in particular <u>allegations of misconduct and nondisclosure by state officials</u>, the nature of the sought relief has prospective implications aimed at preventing future similar violations. Thus, it aligns with the purpose of prospective relief under *Ex parte Young*.

Moreover, the United States Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), and *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), indicated that state sovereignty is not absolute, especially in cases of serious constitutional violations. Such precedent further rulings support the notion that the Eleventh Amendment should not serve as an insurmountable barrier in cases where actions by state officials have contravened federal constitutional rights.

Finally, the United States Supreme Court decision in *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002), broadens the interpretation of ongoing violations of federal law. While *Verizon* addressed the relationship between the alleged past violations of federal law in and the ongoing residual effects revolving around ensuring consistent application of federal telecommunications law across states, similar principles apply here.

At issue in this case are allegations of misconduct and nondisclosure by state officials, which deprived the Plaintiff of a fair legal process; and, in particular, instances of proven judicial misconduct. Just as there should consistent application of federal telecommunications law across states, there should also be consistent

application of standards for judicial recusal or disqualification of judicial officers in cases where there is a conflict of interest, and consistent application of any requirements for disclosure of conflicts. *See Verizon*.

## V. The Rooker-Feldman Doctrine Does Not Apply.

The Rooker-Feldman doctrine, established in cases like *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) and *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005), typically stops lower federal courts from acting as appellate courts for state-court decisions. However, it doesn't always prevent federal court jurisdiction in cases connected to state court proceedings.

In *Exxon Mobil Corp.*, the Supreme Court specified that the Rooker-Feldman doctrine is narrowly applied. It only applies when a federal plaintiff seeks to overturn a state court judgment. Here, the Plaintiff isn't seeking to overturn the state court's decision but requests a declaratory judgment on issues missed in state court due to state officials' nondisclosure.

The Plaintiff's case centers on alleged misconduct and nondisclosure by state officials, not any direct challenge to a state court's decision. This misconduct prevented a fair legal process. Federal courts can hear cases alleging state officials' misconduct or information withholding, even if connected to state court proceedings. The federal court would address procedural issues, not reevaluate the state court's decision.

The Rooker-Feldman doctrine prevents federal courts from acting as appellate bodies for state decisions but doesn't exclude federal involvement where state officials' conduct outside their judicial role is questioned. Cases like *Federacion de Maestros de P.R.* underline this, focusing on direct challenges to state decisions, not on separate legal wrongs.

Indeed, "Four requirements must be met in order for Rooker-Feldman to bar suit: '(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" *Allen v. DeBello*, 861 F.3d 433, 438 (3d

Cir. 2017). Indeed, "the doctrine has narrow applicability. Rooker-Feldman does not bar suits that challenge actions or injuries underlying state court decisions — and especially those that predate entry of a state court decision — rather than the decisions themselves." *Id.*

In this instant case, all (or nearly all) of the alleged injuries – that is, allegations of misconduct and nondisclosure by state officials – predated the entry of any potentially related state court decision.

Given these points and legal precedents, the Rooker-Feldman doctrine doesn't bar the Plaintiff's federal court claims. The Plaintiff seeks a declaratory judgment on misconduct and nondisclosure by state officials, a distinct issue within federal jurisdiction. Thus, the Plaintiff's complaint shouldn't be dismissed based on the Rooker-Feldman doctrine.

## VI. The Court Should Exercise its Discretion to Grant Declaratory Relief

Declaratory relief may be available against a state judicial officer notwithstanding judicial immunity. See *Justice Network Inc. v. Craighead Cnty., 931 F.3d 753, 763 (8th Cir. 2019)* ("Currently, most courts hold that the amendment to § 1983" that generally bars injunctive relief "does not bar declaratory relief against judges."); *Allen v. DeBello, 861 F.3d 433, 442 (3d Cir. 2017)* (discussing circumstances when declaratory relief may be available against judges in § 1983 suits).[32] But "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc., 931 F.3d at 764* (quoting *Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008)*).

In this instant case, however, related state proceedings remain ongoing.

Indeed, Plaintiff specifically requested this Honorable Court for declaratory judgment that Administrative Judge David King violated Plaintiff's procedural and

---

[32] In 1984, the United States Supreme Court held that judicial immunity does not prohibit suits against state court judges under § 1983 for prospective injunctive relief. *Pulliam v. Allen, 466 U.S. 522,541-42 (1984)*. Congress, however, abrogated *Pulliam* by amending § 1983 to state that injunctive relief "shall not be granted" in any action "brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; see *Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000)*.

substantive due process rights by failing to tell Plaintiff what Judge King allegedly told the Judicial Conduct Committee.

Furthermore, Plaintiff specifically requested this Honorable Court for declaratory judgment that Administrative Judge David King violated Plaintiff's procedural and substantive due process rights by failing to tell Plaintiff what Judge King allegedly told the Judicial Conduct Committee.

Not only has Judge King <u>continued to fail to do so</u>, but some of these very same issues have arisen in related state court hearings, that were held <u>after</u> the filing of this federal action. See, e.g. the state trial court's most recently held hearings on November 15, 2023[33] and November 16, 2023.[34]

Consequently, the declaratory judgment sought is <u>very much</u> "meant to define the legal rights and obligations of the parties in anticipation of some future conduct, *not* simply to proclaim liability for a past act." <u>*Justice Network Inc.*, 931 F.3d at 764</u>.

Indeed, the various defendants themselves have recognized that while "Plaintiff does not directly ask this Court to overturn [state court] orders, Plaintiff's request for a declaratory judgment would call these orders into question," thereby laying bare that <u>even the defendants</u> acknowledge that the declaratory judgment sought is <u>very much</u> "meant to define the legal rights and obligations of the parties in anticipation of ... future [litigation]."

Moreover, defendants' <u>further</u> recognition that "Plaintiff does <u>not</u> directly ask this Court to overturn [state court] orders" also lays bare that even the defendants themselves acknowledge that <u>the most basic element</u> required to dismiss this suit under the Rooker-Feldman doctrine is utterly non-existent in Plaintiff's request for a declaratory judgment.

Moreover, while this Court might have discretion in issuing declaratory judgments, as noted in <u>*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)</u>, this discretion should be guided by principles of equity and public interest. The Plaintiff's case presents an important issue of judicial transparency and accountability. In <u>*Samuels v. Mackell*, 401 U.S. 66 (1971)</u>, the United States Supreme Court emphasized the role of declaratory judgments in clarifying legal

---

33  See Exhibit 16.
34  See Exhibit 17.

relationships where necessary to guide future conduct. Granting declaratory relief here would reinforce ethical standards in the judiciary and align with the equitable principles discussed in *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).

**VII. Because this Case is in the Public Interest, Failure by this Court to Exercise its Discretion to Grant Declaratory Relief would violate the Petition Clause.**

The "Right of Petition" has deep historical roots in English law in *The Bill of Rights 1689*, 1 William & Mary Sess 2 c 2, the *Petition of Right*, 3 Car 1 c 1 (1628), and the *Magna Carta* (1215).

More recently, in *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011), the United States Supreme Court recently renewed its Petition Clause jurisprudence, with a focus on the historical underpinnings of the right. 564 U.S. at 387-97, 131 S.Ct. 2488; see also Ronald J. Krotoszynski, Jr., *Reclaiming the Petition Clause* 104-28 (2012) (chronicling the history of petitioning in the United States, including its importance in the abolitionist movement). The United States Supreme Court described the "special concerns" of the Petition Clause, as compared to the Speech Clause, as follows: "The right to petition allows citizens to express their ideas, hopes, and concerns *to their government and their elected representatives*, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs." *Id.* at 388, 131 S.Ct. 2488 (emphasis added).

A petition may be directed towards any department of government, including the courts. *Guarnieri*, 564 U.S. at 387, 131 S.Ct. 2488; *BE & K Constr.*, 536 U.S. at 525, 122 S.Ct. 2390; see also *Anderson v. Davila*, 125 F.3d at 162-63 (holding that the right to petition includes actions taken in anticipation of litigation).

Further, the right to petition the government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1875). Petitioning serves

numerous, fundamental interests of petitioners and the government alike. It is "essential to freedom," liberty and self-government. *Guarnieri, at 382, 394*; see also *McDonald v. Smith, 472 U.S. 479, 483, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985)*. Petitions contribute to the "public airing" of disputes, the "evolution of the law," and the use of government as an "alternative to force." *BE & K Constr., 536 U.S. at 532, 122 S.Ct. 2390*.

A petition may "undoubtedly" consist of a "personal grievance addressed to the government." *Guarnieri at 394, 131 S.Ct. 2488*. But "[p]etitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Id. at 395, 131 S.Ct. 2488*. A petition need not "take[] a specific form," and may include an oral grievance. *Mack, 839 F.3d at 299* (citation omitted).

A petition enjoys constitutional protection whether it is addressed, as here, to this Honorable Court, or to a state or national government. See, e.g., *NAACP v. Claiborne Hardware Co., 458 U.S. 886, 889, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)* (petition and boycott directed at county officials); *Brown v. Louisiana, 383 U.S. 131, 142, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966)* (protest of segregated public library); *Holzemer v. City of Memphis, 621 F.3d 512, 519 (6th Cir. 2010)* (oral request to city councilperson); *Van Deelen v. Johnson, 497 F.3d 1151, 1158 (10th Cir. 2007)* (appeal of county property tax assessment).

Multiple issues raised in this case have received extensive state, national, and international media news coverage wherein the behavior of many of the defendants was specifically described to the public as a whole; and, moreover, directly in the context of Plaintiff's related family law case in the state court.

Consequently, Plaintiff's request for a declaratory judgment that fully adjudicates, on the merits, whether Plaintiff's allegations of misconduct and nondisclosure by state officials deprived the Plaintiff of a fair legal process, would further "seek to advance political, social, or other ideas of interest to the community as a whole." *Guarnieri at 394, 131 S.Ct. 2488*.

## VIII. Plaintiff should be granted leave to amend his Complaint if "justice so requires."

The First Circuit has set forth standards for the filing of an amended Complaint. *See, e.g.*, *O'Connell v. Hyatt Hotels of P. R.*, 357 F.3d 152 (1st Cir. 2004), citing *Foman v. Davis*, 371 U.S. 178 (1963).

"Such approval is 'freely given when justice so requires.'" *O'Connell* at 154.

Granted, "If a defendant files a motion to dismiss for <u>failure to state a claim</u>, … the plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the complaint as of right." *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 36-37 (1st Cir. 2001).

By way of contrast, however, if "a court jettisons an action *sua sponte*, the dismissal deprives the plaintiff of these core protections. Thus, the standard for upholding such a *sua sponte* dismissal is more rigorous than the 'failure to state a claim' standard of Rule 12(b)(6). Cf. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (explaining that *sua sponte* dismissal under 28 U.S.C. § 1915 is warranted only if a complaint is 'based on an indisputably meritless legal theory' or is 'clearly baseless')." *Gonzalez-Gonzalez*.

Plaintiff readily acknowledges that amending his complaint cannot "salvage" claims that are foreclosed in this jurisdiction, such as a dismissal of his allegations against Ms. Sternenberg <u>based solely on the doctrine of absolute quasi-judicial immunity</u>.

Ms. Sternenberg, however, <u>did not make any argument</u> concerning the availability of declaratory relief against a state judicial officer *notwithstanding* judicial immunity. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983" that generally bars injunctive relief "does not bar declaratory relief against judges."); *Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017) (discussing circumstances when declaratory relief may be available against judges in § 1983 suits).

To the contrary, Ms. Sternenberg argued that <u>any</u> attempt at declaratory relief "is insufficient to avoid the preclusive effects of the absolute quasi-judicial immunity," thereby basing her argument for dismissal <u>solely</u> on the doctrine of absolute quasi-judicial immunity.

Consequently, <u>all</u> reasons given by the Magistrate Judge for dismissal of the action against Ms. Sterneberg, *except* those founded directly on the doctrine of absolute quasi-judicial immunity amount, in effect, <u>to a *sua sponte* dismissal</u> at the hands of the Magistrate Judge. This "is warranted only if a complaint is 'based on an indisputably meritless legal theory' or is 'clearly baseless')." *<u>Gonzalez-Gonzalez</u>*.

In light of the Magistrate Judge's recommendations, it is only natural that justice would require that Plaintiff be allowed to file an amended complaint, to remedy any reason for dismissal arrived at *sua sponte* by the Magistrate Judge, and *not* fully articulated in Ms. Sternenberg's pleadings.

## <u>CONCLUSION</u>

Judicial immunity is limited and does not cover actions outside a judge's official duties, such as misconduct, code of conduct violations, or decisions made beyond their legal authority. It's essential for federal courts to acknowledge and rectify any denial of fair legal process caused by undisclosed information or undisclosed conflicts. Notably, the Eleventh Amendment doesn't prevent federal courts from intervening in cases where state officials are accused of constitutional violations. The Rooker-Feldman doctrine, preventing federal courts from acting as appellate courts for state decisions, is irrelevant in this context. Rather, Plaintiff alleges misconduct and nondisclosure by state officials. These allegations predate various state court rulings and are not restricted by the Rooker-Feldman doctrine.

Declaratory relief should be awarded against state judicial officers despite any judicial immunity. Such relief aims to clarify future legal rights and obligations, especially regarding alleged violations of procedural and substantive due process rights by judges. This emphasizes the need for fairness, judicial transparency, and the public interest. Additionally, not providing declaratory relief could undermine the Petition Clause, vital for democratic governance and individual liberty.

Furthermore, amendments to the plaintiff's complaint should be permitted if it serves justice. Courts should apply stricter criteria when dismissing cases *sua sponte* and not based on any party's argument. Plaintiffs must have the chance to revise their complaint to address arguments independently created by the court, without influence from defendants' arguments.

Respectfully submitted,

_____
DANA ALBRECHT
*Plaintiff Pro Se*
**131 Daniel Webster Hwy #235**
Nashua, NH 03060
**(603) 809-1097**
dana.albrecht@hushmail.com

January 5, 2024.

<u>**CERTIFICATE OF SERVICE**</u>

I, Dana Albrecht, hereby certify that a copy of this *Memorandum* shall be served to all the parties and/or counsel of record through the ECF system.

_____
DANA ALBRECHT

January 5, 2024