**EXHIBIT 10**

THE STATE OF NEW HAMPSHIRE
Judicial Conduct Committee

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| STATE OF NEW HAMPSHIRE  * | |
| * | |
| V.  * | DOCKET JC-21-072-C |
| * | |
| MASTER BRUCE DALPRA  * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEPOSITION OF THE HONORABLE DAVID KING

August 26, 2022, 9:59 a.m.

The deposition took place at the Office of the Judicial Conduct Committee,
Concord, New Hampshire

---

**DEPOSITION TRANSCRIPTION VERBATIM**
Audio & Video Recording and Transcription Service
Paralegal, Notary Public, Medical Transcription

Jan-Robin Brown, CER-415 & CET-415
Weare, NH 03281

Telephone: **603.529.7212**
E-mail: AudioDepos@gsinet.net

MEMBER: AMERICAN ASSOCIATION OF ELECTRONIC REPORTERS & TRANSCRIBERS, INC.

## IN ATTENDANCE

FOR THE JUDICIAL COUNCIL:    Philip Waystack Esquire
                             Waystack Frizzell
                             251 Main Street
                             Colebrook, NH 03576
                             603.237.8322

FOR MASTER DALPRA:           Anthony Sculimbrene, Esquire
                             Leslie Gill, Esquire
                             Gill & Sculimbrene, PLLC
                             39 East Pearl Street
                             Nashua, NH 03060
                             603.889.5959

FOR JUDGE KING:              Mary Ann Dempsey, Esquire
                             1 Granite Place, Suite N400
                             Concord, NH 03301
                             603.415-0660

THE STATE OF NEW HAMPSHIRE
Judicial Conduct Committee

*******************************
STATE OF NEW HAMPSHIRE      *
                            *
V.                          *     DOCKET JC-21-072-C
                            *
MASTER BRUCE DALPRA         *
                            *
*******************************

## DEPOSITION OF THE HONORABLE DAVID KING

August 26, 2022, 9:59 a.m.

This deposition excerpt is relevant to the issues in this matter. The balance of the deposition transcript is not relevant to the issues and thus has been redacted by agreement of counsel.

1

2

3   Q

4

5

6   A

7

8

9

10

11

12

13

14



15   Q   How about this: When you are deciding what to do vis-

16       à-vis Bruce DalPra and sending this email, did you

17       have in your mind, guiding your actions in this

18       specific case, Rule 2.15?

19   A   Yes, I did.

20   Q   Okay. And did you have in mind the difference between

21       2.15(A) and 2.15(C)?

22   A   Yes.

23   Q   Okay. And at the time that you sent this email, in

24       your mind, did you believe that it rose to the level

```
 1         of a 2.15(A) mandatory report?
 2   A    I would say at the time I made the call, I hadn't
 3         decided that.  I mean, I needed to gather some more
 4         information.  I needed to talk to Master DalPra, find
 5         out what happened.  I was going on pretty limited
 6         information at that point.  So I would - You're asking
 7         me at a specific point in time.  I would say at that
 8         time, I didn't know if I had a 2.15(A) or (C), or none
 9         of the above.
10   Q    Okay.  And at some point, you did talk to Master
11         DalPra, correct?
12   A    I did.
13   Q    And did that conversation clarify what obligations you
14         had in this specific case vis-à-vis Rule 2.15?
15   A    Yes.
16   Q    Okay.  And so, in this case, - this leads me to my
17         next set of questions - did you believe that 2.15(A)
18         or 2.15(C) required you to provide this information to
19         the Judicial Conduct Committee?
20   A    So I, after speaking to Master DalPra and reviewing
21         the rule, concluded that "A" was not the applicable
22         section.  I did not have a belief, and don't have a
23         belief, as I sit here today, that the rule had been
24         violated raises a substantial question regarding his
```

```
 1     honesty.  He was pretty forthright with me about what
 2     had occurred.  His trustworthiness, I had no reason
 3     not to trust him at that point.  And when I think of
 4     fitness as a judge, I think that's a pretty high bar
 5     to meet.  And I didn't, at that time, have a concern
 6     about his fitness to serve as a judge.  I had already
 7     decided under "C," however, that this was something
 8     that, even though it was a set of facts that I had
 9     never seen before in my 30+ years as a judge, I felt
10     there was an obligation to let the Judicial Conduct
11     Committee know about it.
12  Q  Did you tell the Judicial Conduct Committee?
13  A  Did I tell the Judicial Conduct Committee what?
14  Q  About what you had found regarding the transcript in
15     the Albrecht case?
16  A  Yes.
17  Q  Okay.  Did you provide this email to the Judicial
18     Conduct Committee?
19  A  No.
20  Q  Okay.
21  A  And let me just be clear.  When I say "Judicial
22     Conduct Committee," I had a conversation with Robert
23     Mittelholzer after I spoke with Master DalPra about
24     this incident.  So I didn't have any communication
```

| | | |
|---|---|---|
| 1 | | with the committee itself. I didn't send them |
| 2 | | anything. I had a phone conversation with Robert |
| 3 | | Mittelholzer. |
| 4 | Q | Did you - STRIKE THAT. Were you aware of the fact |
| 5 | | that Master DalPra had decided to self-report? |
| 6 | A | I was aware that Master DalPra was going to self- |
| 7 | | report. I had a conversation with him on Wednesday, |
| 8 | | November 18th. I had sent him the email on Friday. I |
| 9 | | think he was either - he either had a writing day that |
| 10 | | day or he was on vacation. I had tried to call him on |
| 11 | | his extension, which is typically how I try to reach a |
| 12 | | judge. I don't like to call the clerk's office and, |
| 13 | | you know, "The administrative judge is calling. |
| 14 | | What's going on?" So I'm usually pretty low key about |
| 15 | | these things. I was not able to get him. I tried a |
| 16 | | couple of times during the day on Friday. So I sent |
| 17 | | the email that's been marked as Exhibit 1. Didn't |
| 18 | | hear back from him, I think until Tuesday, the 17th. |
| 19 | | He said he had left his laptop at work and he'd been |
| 20 | | working from home - circumstances that he didn't see |
| 21 | | my email. So I think we spoke on Tuesday, or we |
| 22 | | exchanged emails on Tuesday, and we agreed to speak on |
| 23 | | Wednesday, the 18th at 12:30 during a break in his |
| 24 | | cases. |

Case 1:23-cv-00381-JL-TSM   Document 25-12   Filed 01/05/24   Page 8 of 11

28

```
 1   Q    Okay.  Two questions about what you just said.  For
 2        people who are unaware, what is a writing day for a
 3        judge?
 4   A    Rare.  But it's a day when the judge is scheduled to
 5        not have any scheduled cases so that they can catch up
 6        on writing orders for cases that they've already
 7        heard.
 8   Q    And then second, is it uncommon for judges to work
 9        outside the courtroom on a writing day?
10   A    Not during COVID-19, it wasn't.
11   Q    And for the record, this took place in November of
12        2020, which was during the pandemic?
13   A    Correct.
14   Q    Okay.  Did anything about the delay between when you
15        sent the email and when Master DalPra got back to you
16        indicate that he was trying to be deceptive or
17        concealing?  Did you have any reason to believe that?
18   A    No.
19   Q    Okay.  To this day, do you know whether or not the
20        committee has seen this email?
21   A    I have no idea.
22   Q    Okay.  To this day, are you aware of whether or not
23        the committee has accessed and listened to either of
24        the two audio files contained in this email?
```

```
 1  A    I don't.  I do know that in December of 2020, I
 2       provided those to Robert Mittelhozer.  It took me a
 3       couple of tries because I sent them the first time in
 4       a - probably use the wrong word here - but format that
 5       he couldn't open.  And so Kathy Yee was kind enough to
 6       help me re-send them in a different format so that he
 7       was able to open them.
 8  Q    Okay.  And the same goes for the - the same question
 9       for the two snippets.  To your knowledge, do you know
10       if they've seen these snippets as like set apart from
11       the rest of the transcript in the way that you did in
12       this email?
13  A    I do not.
14  Q    Okay.
```



Corrections

Page No. 9, Line No. 15
Correction: "Cosign" should be "cosigned"

Page No. 11, Line No. 3
Correction: "as" should be "has"

Page No. ___, Line No. ___
Correction: _____

Page No. ___, Line No. ___
Correction: _____

Page No. ___, Line No. ___
Correction: _____

Page No. ___, Line No. ___
Correction: _____

Page No. ___, Line No. ___
Correction: _____

Page No. ___, Line No. ___
Correction: _____

_____
Deponent

STATE OF NEW HAMPSHIRE
COUNTY OF ____Merrimack____

Subscribed and sworn to before me this $27$ day of ____September____ 2022.

_____
JUSTICE OF THE PEACE/NOTARY PUBLIC
My Commission Expires _____

PATRICIA M. COLE, Notary Public
State of New Hampshire
My Commission Expires October 3, 2023