EXHIBIT
**14**

# Attachments

1. NH Supreme Court Order, November 27, 2023
2. Questions Raised on Appeal, No. 2023-0602
3. NH Supreme Court Order, November 15, 2023
4. Trial court order (Judge Rauseo), August 16, 2023
5. Defendant's *Ex Parte* Motion to Vacate all Orders since 5/23/2022
6. Questions Raised on Appeal, No. 2023-0181
7. DV Extension until February 24, 2024 (Judge Rauseo), February 24, 2023
8. DV Extension of December 21, 2020 Order until February 25, 2023 (Judge Rauseo), February 24, 2023
9. Ms. Albrecht's Request for Extension, December 21, 2021
10. NH Supreme Court Order, December 16, 2021
11. Questions Raised on Appeal, No. 2021-0192
12. Correspondence from NH Judicial Conduct Committee, February 16, 2021
13. DV Extension of December 21, 2020 Order until December 29, 2021 (Judge Curran), December 21, 2020
14. November 13, 2020 Email from Judge David King
15. Excerpt from November 6, 2020 trial court hearing
16. NH Supreme Court Order, June 19, 2020
17. Trial Court Order (Judge Derby), January 27, 2020
18. Order on Motion to Consolidate for Hearing (Judge Derby), November 19, 2019
19. Order on Mr. Albrecht's Ex Parte Motion to Contempt and Compel, November 1, 2019
20. Sierra Madre Police Report, October 31, 2019
21. NH Supreme Court Order, October 25, 2019
22. NH Supreme Court Order, September 16, 2019

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0602, <u>K.A. v. D.A.</u>, the court on November 27, 2023, issued the following order:**

On October 20, 2023, this court issued an order in case no. 2023-0181, <u>K.A. v. D.A.</u>, remanding "for a hearing as required by RSA 173-B:5, VI."  On November 15, 2023, the court issued an order in the same appeal clarifying that "it retains jurisdiction over the appeal pending the trial court's decision following the RSA 173-B:5, VI hearing and any other proceedings that the trial court deems necessary to resolve the issues before it."

In light of the remand, this appeal is dismissed as moot.  The dismissal is without prejudice to the defendant raising any argument presented in this appeal through supplemental briefing in case no. 2023-0181, if any, and without prejudice to the plaintiff presenting any argument contained in her motion to dismiss in response to any supplemental brief filed by the defendant in case no. 2023-0181.

Accordingly, the plaintiff's motion to dismiss is moot.  The defendant's motion for partial summary judgment is denied.

<u>Appeal dismissed</u>.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2019-DV-00341
Honorable Kevin P. Rauseo
Mr. Dana Albrecht
Michael J. Fontaine, Esq.
Israel F. Piedra, Esq.
File

__RULE 7 NOTICE OF MANDATORY APPEAL__

13. LIST SPECIFIC QUESTIONS TO BE RAISED ON APPEAL, EXPRESSED IN TERMS AND CIRCUMSTANCES OF THE CASE, BUT WITHOUT UNNECESSARY DETAIL. STATE EACH QUESTION IN A SEPARATELY NUMBERED PARAGRAPH.

**1. Whether New Hampshire has any objective standard for the definition of "reasonable fear," and, if so, what is this definition?**

**2. Whether the Plaintiff has ever demonstrated "reasonable fear" for her safety?**

**3. Whether New Hampshire has objective standards for the issuance of or extension of a civil domestic violence order of protection; and, if so, what are these objective standards?**

**4. Was denying Defendant's Motion to Consolidate for Hearing (Doc #10) an unsustainable exercise of discretion?**

**5. Did the trial court err by not affording Defendant any hearing in this matter since 2/18/2022?**

**6. Did the trial court err by not vacating all trial court orders that it issued since 5/23/2022?**

**7. Did the trial court violate N.H. Const. pt. 1, art. 2?**
**8. Did the trial court violate N.H. Const. pt. 1, art. 10?**
**9. Did the trial court violate N.H. Const. pt. 1, art. 14?**
**10. Did the trial court violate N.H. Const. pt. 1, art. 15?**
**11. Did the trial court, or this Court, violate N.H. Const. pt. 1, art. 29?**
**12. Did the trial court, or this Court, violate N.H. Const. pt. 1, art. 33?**
**13. Did the trial court violate N.H. Const. pt. 1, art. 35?**
**14. Did the 10 meetings of the NHJB's domestic violence task violate N.H. Const. pt. 1, art. 37?**

**15. Is RSA 173-B:9 unconstitutional, either prima facie, or as-applied in this case?**

**16. Are any issues in this case capable of repetition, yet evading review?**

14. CERTIFICATIONS
    I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading. To the extent that an unpreserved issue is raised as plain error, I hereby certify that I have specifically identified that issue as plain error in section 13.

                                        __Dana Albrecht__
                                        Appealing Party or Counsel


    I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Supreme Court Rules 5(1) and 26(2) and with Rule 18 of the Supplemental Rules of the Supreme Court.

__10/20/2023__                          __Dana Albrecht__
Date                                    Appealing Party or Counsel

**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2023-0181, <u>K.A. v. D.A.</u>, the court on November 15, 2023, issued the following order:**

D.A.'s motion for clarification is granted, in part, as follows.  The court's October 20, 2023 final order remanded this case to the trial court "for a hearing as required by RSA 173-B:5, VI" to allow the creation of a fully-developed factual record, which would enable the court to address the issues raised on appeal within the context of this case.

The court hereby clarifies that it retains jurisdiction over the appeal pending the trial court's decision following the RSA 173-B:5, VI hearing and any other proceedings that the trial court deems necessary to resolve the issues before it.  Following the trial court's issuance of the post-hearing decision, the parties may file supplemental briefs to address any new issues that may arise from the hearing or any existing issues affected by the trial court's decision.  The parties may order a transcript of the remand hearing, <u>see</u> Rule 15, as needed.  The relief requested in D.A.'s motion for clarification is otherwise denied.

D.A.'s motion for late authority is granted.  D.A.'s motion for rehearing and reconsideration and his motion to "show cause" are denied without prejudice to his ability to raise any surviving issues in the subsequent appellate proceeding.

Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2019-DV-00341
Honorable Kevin P. Rauseo
Mr. Dana Albrecht
Michael J. Fontaine, Esq.
Israel F. Piedra, Esq.
File

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH  03060

Telephone:  1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## DV/STALKING NOTICE OF DECISION

**DANA ALBRECHT**
**131 D.W. HWY #235**
**NASHUA NH  03060**

Case Name:  **In the Matter of Katherine Albrecht v. Dana Albrecht**       PNO: **6591910341**
Case Number:  **659-2019-DV-00341** *659-2016-DM-00288*

Please be advised that on <u>August 16, 2023</u> Hon <u>Kevin P Rauseo</u> made the following order relative to:

☐ Petition   ☐ Final Order       ☒ Other   <u>Request for ex parte orders is denied. Please</u>
<u>see enclosed Order</u>

☐  Notice of Interstate Enforcement
and Compliance with VAWA for
Use with Final Order

August 16, 2023                          *Sherry L. Bisson*
                                                  Sherry L. Bisson, Clerk of Court

(888)

C:  Michael J. Fontaine, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
https://www.courts.nh.gov

Court Name:    9th Circuit - Family Division - Nashua

Case Name:    In the Matter of Katherine Albrecht v. Dana Albrecht

Case Number:    659-2019-DV-00341

## ORDER ON *EX PARTE* (EMERGENCY) MOTION

A motion for *ex parte* or emergency orders has been submitted. The Court has reviewed the motion.

☐ 1. **The Court issues the following orders**, which will remain in effect until further hearing:

   ☐ A. The ☐ Petitioner ☐ Respondent (check one) shall have temporary sole decision-making and residential responsibility for the minor child(ren).

   ☐ B. The ☐ Petitioner ☐ Respondent (check one) shall have temporary sole residential responsibility for the minor child(ren).

   ☐ C. The ☐ Petitioner ☐ Respondent (check one) shall not interfere in any way with the personal liberty or property of the other nor the household property used in the care of the minor child(ren), nor do any act to interfere with the other parent's decision-making and residential responsibilities for the minor child(ren).

   ☐ D. The ☐ Petitioner    ☐ Respondent (check one) is awarded temporary exclusive use of the parties' residence at _____ (residence address) and household furniture and furnishings therein.

   ☐ E. The ☐ Petitioner ☐ Respondent (check one) shall not enter the residence or property of the other.

   ☐ F. Each party is restrained and enjoined from transferring, encumbering, hypothecating, concealing or otherwise disposing of any property except in the ordinary course of business or for the necessities of life.

   ☐ G. Other:

_____

_____

☐ 2. **No *ex parte* or emergency orders are issued** - no showing of imminent danger of irreparable harm.
   ☐ The case shall be scheduled for a prompt hearing with Petitioner and Respondent present.

   ☐ The case shall be scheduled in the ordinary course.

☒ 3. **Request for ex parte orders is denied.** No hearing is required. The issue of the 2023 extension is before the New Hampshire Supreme Court.

**A hearing on the *ex parte* motion, and any orders issued, is scheduled for:**
_____ (date of hearing) at _____ (time of hearing)

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

August 16, 2023
_____
Date

_____
Signature of Judge

Hon. Kevin P. Rauseo
Printed Name of Judge

NHJB-2075-F (07/01/2013)        6

# THE STATE OF NEW HAMPSHIRE

9th Circuit – Family Division – Nashua

Katherine Albrecht and Dana Albrecht

659-2019-DV-00341

## Defendant's *Ex Parte* Motion to Vacate all Orders since 5/23/2022

NOW COMES the Defendant, Dana Albrecht, *pro se*, and respectfully requests this Honorable Court to vacate all trial court orders issued in this matter since 5/23/2022.

In support thereof it is stated:

1. This is a civil case. The equal protection provisions of our State Constitution require that both parties be afforded equal rights and protections when either requests *ex parte* relief. *Opinion of the Justices*, 144 N.H. 374 (1999), citing *State v. Pennoyer*, 65 N.H. 113 (1889).

2. By *Order* dated May 22, 2023, this Court observed that:

   **Recognizing that the appeal divested this Court of jurisdiction, <u>see</u> <u>Rautenberg v. Munnis</u>, 107 N.H. 446, 447 (1966), this Court issued an Order effectively staying proceedings pending appeal (Index #193).**

3. By this Court's own logic, it was therefore <u>also</u> divested of jurisdiction on 5/23/2022 as of the filing of the prior appeal, No. 2022-0284 (Index #156).

4. No mandate has yet issued in the prior appeal, No. 2022-0284.

5. Consequently, this Court did not have jurisdiction to issue any orders in this matter since 5/23/2022.

6. Consequently, all trial court orders in this matter issued since 5/23/2022 must now be vacated.

- 1 -

WHEREFORE, the Defendant respectfully request that this Honorable Court provide the following relief:

A) That this Court vacate all trial court orders issued in this matter since 5/23/2022; or,

B) In the alternative, that this Honorable Court set forth, in a written narrative order, the reasons for its decision; and,

C) For any other relief as this Honorable Court deems just and equitable.


Respectfully submitted,

_____

DANA ALBRECHT
     *Defendant Pro Se*
131 D.W. Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

August 14, 2023


### CERTIFICATE OF SERVICE

I, Dana Albrecht certify that this Motion has been served on Michael J. Fontaine, Esq., counsel for Katherine Albrecht, via email and U.S. Postal Mail on this 14th day of August 2023.

_____

DANA ALBRECHT

- 2 -

Case Name: Katherine Albrecht v. Dana Albrecht, No. 659-2019-DV-00341

RULE 7 NOTICE OF MANDATORY APPEAL

13. LIST SPECIFIC QUESTIONS TO BE RAISED ON APPEAL, EXPRESSED IN TERMS AND CIRCUMSTANCES OF THE CASE, BUT WITHOUT UNNECESSARY DETAIL. STATE EACH QUESTION IN A SEPARATELY NUMBERED PARAGRAPH.

**1. Whether, or under what circumstances, are the equal protection provisions of the New Hampshire Constitution violated when ex parte orders are issued in civil domestic violence cases?**

**2. Whether, or under what circumstances, do the equal protection provisions of the New Hampshire Constitution require uniform objective standards for whether events are too remote in time for consideration in domestic violence cases?**

**3. Was Defendant denied due process or equal protection under the New Hampshire Constitution when the trial court denied Defendant's discovery requests?**

**4. Does DV Protocol 6.11 either facially, or as applied, violate the equal protection provisions of the New Hampshire Constitution?**

**5. Was the trial court's granting of an additional one-year extension an unsustainable exercise of discretion?**

**6. Did the trial court violate the provision in RSA 173-B:5, VI requiring that "the court shall state in writing, at the respondent's request, its reasons or reasons for granting the extension," or, in the alternative, were its reasons unconstitutionally vague under the New Hampshire Constitution?**

**7. Is RSA 173-B:5, VI, either facially, or as-applied, unconstitutionally vague under the New Hampshire Constitution?**

**8. Is RSA 633:3-a, either facially, or as-applied, unconstitutionally vague under the New Hampshire Constitution?**

**9. Is RSA 633:3-a, either facially, or as-applied, unconstitutionally overbroad under the New Hampshire Constitution?**

14. CERTIFICATIONS

I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading. To the extent that an unpreserved issue is raised as plain error, I hereby certify that I have specifically identified that issue as plain error in section 13.

_/s/ Dana Albrecht_
Appealing Party or Counsel

I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Supreme Court Rules 5(1) and 26(2) and with Rule 18 of the Supplemental Rules of the Supreme Court.

03/29/2023
Date

_/s/ Dana Albrecht_
Appealing Party or Counsel

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH  03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## ORDER ON FURTHER EXTENSION OF
## DOMESTIC VIOLENCE OR STALKING FINAL PROTECTIVE ORDER
### Pursuant to RSA 633:3-a or 173-B

Case Number:  **659-2019-DV-00341**                              PNO: **6591910341**

| Katherine Albrecht | ▉/1966 | V. Dana Albrecht | ▉/1971 |
|---|---|---|---|
| Plaintiff | Plf Date of Birth | Defendant | Def Date of Birth |

Pursuant to the provision of New Hampshire RSA 173-B:5, VI or RSA 633:3-a, III-c, the Plaintiff requests a further extension of the Final Protective Order issued on <u>December 30, 2019</u>, the Plaintiff having been originally granted a one-year extension.

☒ The Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order.  Accordingly, the Final Protective Order expires on <u>02/24/2024</u>. The Defendant shall be given notice of Plaintiff's request and this order.

If the Defendant objects to the extension, he/she shall file a written objection within 10 days of the date of the Clerk's Notice of Decision and a hearing shall be conducted within 30 days of this order.  At such hearing, the Court may either reaffirm, modify or vacate this extension order.  If a hearing is scheduled, both parties shall appear.

The Plaintiff must file any request to further extend the Order of Protection <u>before</u> the order expires.

☐ The Court finds, based upon the Plaintiff's representations, that good cause does not exist and the request to extend the order is denied.

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

*February 24, 2023*
_____
Date

_____
Signature of Judge

Kevin P. Rauseo

_____
Printed Name of Judge

NHJB-2100-DFS (05/02/2022)

177

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Court Name:

**9th Circuit - Family Division - Nashua**

Telephone: (603) 787-6626
RECEIVED/TDD Relay: (800) 735-2964
NH CIRCUIT C http://www.courts.state.nh.us
9TH CIRCUIT NASHUA

## REQUEST FOR EXTENSION OF DOMESTIC VIOLENCE
## OR STALKING FINAL PROTECTIVE ORDER

Case Number: **659-2019-DV-00341**                    **PNO** _____

| **Katherine Minges (fka Albrecht)**   0⬛/1966 | v. | **Dana Albrecht**   ⬛/1971 |
|---|---|---|
| Plaintiff        Plf Date of Birth | | Defendant        Def Date of Birth |

I have a Domestic Violence/Stalking Final Protective Order issued on **02/25/2022**
                                                                  (date)

The order will expire on **02/25/2023**
                          (date)

☐   I request a one year extension of this order for the following reasons:

_____

_____

_____

☒   Having received an initial  one year extension of the final protective order, I now request
a further extension of up to five years for the following reasons:

**Mr. Albrecht has demonstrated a pattern of harassing and stalking-like behavior and
actions that is well-documented with this Court not only in this matter, but also in numerous
pleadings filed and in the testimony of Ms. Minges and her witnesses at multiple hearings
ITMO Dana Albrecht and Katherine Albrecht, Docket No. 659-2016-DM-00288. Ms. Minges
asserts that she continues to be in fear for her safety based upon Mr. Albrecht's past actions
and based upon his continued actions after this Court's last extension including filing of pleadings clearly
intended to harass Ms. Minges.**

| 2/3/23 | _K. Minges_ |
|---|---|
| Date | Plaintiff Signature |

State of **Michigan** _____, County of __St. Clair_____

This instrument was acknowledged before me on  2-3-2023  by   Katherine Minges

My Commission Expires 2-3-2026

Affix Seal, if any                           Clerk of Court/Deputy Clerk/Justice of Peace/Notarial Officer

```
SARAH MARIE BREMERKAMP
Notary Public - State of Michigan
County of St Clair
My Commission Expires Feb 3, 2026
Acting in the County of St Clair
```

i 60

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## ORDER ON THE OBJECTION TO THE EXTENSION OF
## DOMESTIC VIOLENCE OR STALKING FINAL PROTECTIVE ORDER
### Pursuant to RSA 633:3-a or 173-B

Case Number: **659-2019-DV-00341**          PNO: **6591910341**

| Katherine Albrecht | 08/17/1966 | V. | Dana Albrecht | 08/01/1971 |
|---|---|---|---|---|
| Plaintiff | Plf Date of Birth | | Defendant | Def Date of Birth |

Pursuant to the provision of New Hampshire RSA 173-B:5, VI or RSA 633:3-a, III-c, the Plaintiff requested, and was granted, a ☒ one year ☐ five year Extension of the Final Protective Order issued on <u>December 21, 2020</u>.

The Defendant objected to the extension and requested a hearing on the extension order, pursuant to RSA 173-B:5, VI or RSA 633:3-a, III-c.  A hearing was held on <u>February 18, 2022</u>

☒ Based on the evidence presented at the hearing, the court finds that the Plaintiff showed good cause why the Extension Order is necessary, pursuant to RSA 173-B:5, VI or RSA 633:3-a, III-c. Accordingly, the Extension of the Final Protective Order remains in effect.  The Extension Order expires on <u>February 25, 2023</u>

☐ The Court finds, based upon the evidence presented at the hearing, that good cause does not exist to continue the Extension Order, therefore, the Extension Order is vacated.

☐ The Court makes the following finding and additional orders:

_____

☒ See attached narrative order.

**So Ordered:**

<u>February 25, 2022</u>
Date

Signature of Judge

<u>Hon. Kevin P. Rauseo</u>
Printed Name of Judge

140

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

Court Name:

**9th Circuit - Family Division - Nashua**

Telephone: (603) 787-6626
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## REQUEST FOR EXTENSION OF DOMESTIC VIOLENCE
## OR STALKING FINAL PROTECTIVE ORDER

Case Number: **659-2019-DV-00341**                PNO _____

**Katherine Minges (fka Albrecht)** ████        v.   **Dana Albrecht** ████
Plaintiff                          Plf Date of Birth        Defendant                       Def Date of Birth

I have a Domestic Violence/Stalking Final Protective Order issued on **12/21/2020** _____
                                                                        (date)

The order will expire on **12/30/2021** _____
                          (date)

☐   I request a one year extension of this order for the following reasons:

_____

_____

_____

☑   Having received an initial  one year extension of the final protective order, I now request
    a further extension of up to five years for the following reasons:

    **Mr. Albrecht has demonstrated a pattern of harassing and stalking-like behavior and
    actions that is well-documented with this Court not only in this matter, but also in numerous
    pleadings filed and in the testimony of Ms. Minges and her witnesses at multiple hearings
    ITMO Dana Albrecht and Katherine Albrecht, Docket No. 659-2016-DM-00288. Ms. Minges
    asserts that she continues to be in fear for her safety. See also the attached Addendum.**

_12/21/2021_____                          _____
Date                                         Plaintiff Signature

        State of _MICHIGAN_, County of _St. Clair_

This instrument was acknowledged before me on _12/21/21_ by _KATHERINE MINGES_

My Commission Expires _12-6-2024_          _____
Affix Seal, if any                          Clerk of Court/Deputy Clerk/Justice of Peace/Notarial Officer

COLLEEN DELONG
Notary Public - State of Michigan
County of St Clair
My Commission Expires Dec 6, 2024
Acting in the County of _St. Clair_

NHJB-2360-DF (07/01/2011)                    Page 1 of 1

13

## AIRBNB

BACKGROUND  - 5384 Orchard Drive, East China, MI
    In October of this year, I purchased a modest house two doors down from mine for my disabled sister so she could relocate to Michigan to be closer to us. My sister has cerebral palsy and is wheel-chair-bound, and she has been living alone with attendant care since our mother's death. Unfortunately, a few months back, she suffered a serious accident that fractured her spine, leaving her bedridden and unable to use her wheelchair. She is undergoing rehabilitation, and will not be relocating to Michigan at this time.

### THE HOUSE AND EXPENSES

    I bought the house "as-is" for $130,000 since it needs significant upgrades. I estimate these upgrades will cost at least $20,000 in addition to several thousands dollars I have already spent on improvements. In addition, I estimate that property taxes, homeowner's insurance, flood insurance, utilities, snow removal, lawn care, and general maintenance and upkeep will come to over $8,000 per year.

### AIRBNB RENTAL

    When I learned that the house would be vacant, in order to recoup some of my costs, I became a "host" on AirBNB and listed it as a short-term rental for $98 per night. Due to a scarcity of hotels in the area, it has turned out to be quite popular. Since I first listed it in October, it has been almost continuously booked, and by December 13, I had earned over $4,500 in rental income. In addition, I had confirmed future reservations through Christmas and New Years and was on track to earn an additional $1,200 by the end of the year.

### PAYOUTS

    AirBNB collects rental income for hosts, and keeps them in their AirBNB accounts until the host requests a payout. In late November, I created a new, local bank account to receive these funds., and intended to "cash out" close to $6,000 before the end of the year. I had planned to use this money to pay off credit card bills associated with improvements to the home and insurance, and to pay the property taxes bill, which is due now.

### MY AIRBNB ACCOUNT

    I first created an AirBNB account as a guest in 2018, and used it to stay in several AirBNB rental properties over the years, most recently in October of this year. The name on the account is Katherine Minges and AirBNB has a copy of my drivers license, as well as my social security number/ taxpayer ID on file. The email associated with the account is "Lightfoot@hushmail.com," and the phone number is my cell phone, (626) 325-4900.
    When I became a host in October 2021, I used my longstanding AirBNB guest account and added "Host status," which allows me to toggle into host mode to control my listing details, property photos, booking calendar,  accept or deny guest requests, and, of course, manage the money in the account.

### ACCOUNT ACCESS

    AirBNB provides two methods for a host to access their AirBNB account -- either through the website at www.airbnb.com, or through AirBNB's dedicated app. I installed the app on my iPhone and logged into it without any trouble using my credentials – lightfoot@hushmail.com, 626-325-4900, and my password, which I had memorized and had not changed in some time. I do not recall if I had already installed the app before becoming a host, or if I installed it when I decided to become a host,

but in either case, the app was installed on my phone and working in mid-October, 2021 when I used it to list the property.

The app worked well, and from October to November, I used it multiple times a day, every day, to manage the property -- responding to guests requests, texting guests with check-in instructions, monitoring the calendar, updating my listing and photos as I made improvements to the house, etc. I was always attentive to AirBNB alerts which I received as text messages, since AirBNB gives the highest ranking to hosts who respond "within the hour" to reservation requests. This caused me to be continually aware of my AirBNB app and account.

It is important to note that once a user has installed the AirBNB app on their phone and leaves it "logged in," the app opens instantly every time it is opened, and the user does not have to log in and enter a username and password. This is how I used my account.

## HACK OF THE ACCOUNT

I first became aware of unauthorized changes to my account on November 18$^{th.}$ That day, my iPhone was lying idle on a table. When I picked it up and skimmed the pop-up list of messages I had missed while it had been idle, I saw a text from AirBNB stating that my AirBNB validation/verification code was [random digits]. I was immediately on alert, since I had not requested a verification code, and I know that those codes are only sent in response to a password reset request ("I forgot my password") or as two-factor authentication to validate some other important account-related change.

## CHANGE OF MY EMAIL ADDRESS

I opened the AirBNB app and reviewed it, but saw nothing amiss until I navigated to the account information. There, I saw that the email address listed had been changed. Instead of "Lightfoot@hushmail.com," the email address had been changed to "albrechtfaith@gnail.com" (sic).

Seeing this address was chilling, because I had not used it in years, and I had actually forgotten all about it. In addition, literally no one but my daughters and I even knew that account had ever existed, and we had all forgotten about it. There is no way for anyone to know that was an address I had ever used, unless they had been observing/spying on me in 2017/2018.

Here is the background on that address: when I got my first iPhone several years ago at the Verizon store at the Santa Anita mall in Arcadia, CA, in either 2017 or 2018, the girls helped me set it up in the parking lot. In an event we all clearly remember, the phone setup requested a Google account, so the girls and I came up with the name "AlbrechtFaith@gmail.com." We used it to set up various things on the phone that day in the car, but I later had no real use for it, so I stopped using that gmail account, forgot the password, and literally did not remember that account had ever existed until just now when I saw it on my AirBNB account.

## GNAIL.COM

Note that there is a "typo" in the email domain, as it reads "gNail.com" rather than "gMail.com." I have since discovered that there is a registered domain of "gNail.com" where people can get email addresses. As I detail below, my AirBNB account has been changed to this address not once, but twice, with the gNail domain each time. This would make sense if a hacker (Mr. Albrecht) was trying to make it look like the email was one of my own accounts by choosing one I did indeed once own, albeit years ago, but made sure not to input it correctly so that any email sent to it would go to an address which he presumably controls, while at the same time making sure that I could not access any mail sent to it. I believe Mr. Albrecht, who is a very sophisticated computer user with a Master's Degree in Applied Mathematics from Harvard University, and has worked in the past as a QA engineer and a software engineer, is the hacker of my AirBNB account.

15

## CHANGE OF MY PASSWORD

I highlighted and deleted the unauthorized email address and typed in my own address, Lightfoot@hushmail.com, but when I went to save the change, the app prompted me to enter my password. I entered the same password I had had on AirBNB for ages, but an error message popped up telling me the password was incorrect.

At this point I realized that I was now technically locked out of my account, and that I could only see my account because I had installed the app, which remained logged in despite the changes. I knew that if for any reason I was logged out of the app, I would be unable to get back in to see my calendar, know when guests were arriving, accept new reservation requests, or cash the money out of my account.

## AIRBNB RESPONSE

At this point (11/18) I called AirBNB support to report an unauthorized change to my account. The AirBNB rep assured me they would escalate this to a security team who would contact me shortly. When I later called back to ask why I had not heard from anyone, I was told they had sent an email to the account on file. It turns out that email went to albrechtfaith@gnail.com (sic)., not to me, and I was never sent a copy.

Fortunately, I could still access my account through the app, but I was unable to change the password or email address back, meaning that someone else had control over my account. I called AirBNB several times over the next few days, and each time I was told that someone would get back to me, but the issue was not resolved.

Finally, on November 25, a full week after I first reported the unauthorized access to my account, AirBNB contacted me and made it possible for me to reset my password and change the email address back to Lightfoot@hushmail.com, which I did. I asked AirBNB to have their security team investigate what had happened to my account, and to provide details about the unauthorized access. I was assured that someone would follow up with me.

I then went back to using my account as usual, taking reservations, hosting guests, and managing the property listing, and went back to business as usual.

## SECOND HACK AND ACCOUNT SUSPENSION

Everything seemed fine for several weeks. Then, on the evening of Monday, December 13, I called AirBNB about a different issue (to request a refund for a guest). After the issue was resolved, the agent asked if I had any other concerns. I said that actually I did, because I had never heard back from their security team about the email and password change. The agent said he would re-open the ticket and someone would follow up with me.

Meanwhile, I had texted an upcoming guest from my phone and gave her instructions to book my place through the AirBNB app. The following morning, Tuesday, December 14, I got a text from her that read,

*Good morning, Katherine, thank you setting up terms through Airbnb. I went into Airbnb this morning and was not able to access it. It says "This message has been hidden because this person no longer has access to Airbnb."*

I then got a call from a former guest who has stayed at my place three times. She called to tell me that AirBNB had contacted her to tell her that Air BNB was refunding all of the money she had already paid to stay at my place due to "fraud." She said that when she tried to book the house for a future visit, it was no longer listed on the site.

## AIRBNB RESPONSE

I immediately called AirBNB customer service. The representative who answered asked for my email address to pull up my account. When I told him "lightfoot@hushmail.com," he said there was no account associated with that email. He then asked for my phone number and was able to get into the account that way. He informed me that my account had been suspended due to "unauthorized activity," that all future bookings had been canceled, and that the email address on the account was "alrechtfaith@gmail.com." I then learned that all of the money I had earned had been refunded to the guests who had stayed at my place, leaving my account balance at $0.00. In addition, my upcoming Christmas and New Years guests were deleted, and my calendar was completely blank both from November through January, and the October calendar was no longer even there. In a panic, I asked the representative to make the issue as urgent, and he assured me he would and that someone would contact me shortly.

Now, three days later, AIRBNB has apparently "unsuspended" my account, but they have still not resolved this issue or returned my money. When I called today, I was told that no ticket was even opened about this incident. Needless to say, I've asked for another ticket to be opened and for them to respond as soon as possible.

## PRIOR UNAUTHORIZED ACCESS

This is not the first time that I believe Mr. Albrecht has surreptitiously accessed my accounts. As was testified to at the Temporary Hearing/Domestic Violence Hearing and the Final Hearing in our divorce matter (ITMO Dana Albrecht and Katherine Albrecht, No.: 659-2016-DM-00288), in early 2016, I discovered that Mr. Albrecht had secretly surveilled me in our home via illegal means through at least part of 2015 and into 2016 before I found out and filed for a restraining order. See Domestic Violence Petition previously filed by me dated April 8, 2016 incorporated herein by reference. I subsequently learned from my expert, Andre Pierre, that Mr. Albrecht had installed an undetectable "master password" on my computer and used it to remotely read my email and copy my files. Mr. Pierre testified to this at the our Temporary Hearing/Domestic Violence Hearing on September 9, 2016. Mr. Albrecht testified at the Temporary Hearing/Domestic Violence Hearing on September 9, 2016 that he in fact did access and delete some of my accounts, claiming that he had authority to do so under his role as IT Manager. However, I had terminated Mr. Albrecht from this position prior to that time. I also discovered that Mr. Albrecht had modified my radio sound board and used my studio microphone to listen to me in my locked office through our Sonos music speaker system, even when the microphone was turned off. This was supported by my sound board expert, Michael Clark, who testified to this at the Temporary Hearing/Domestic Violence Hearing on September 9, 2016. Mr. Clark testified that he discovered evidence that someone had rewired my landline desk phone so that all calls were routed through the sound board and out through the same Sonos audio channel. Mr. Albrecht would have had the ability to intercept my confidential telephone conversations in this way. This included discussions I had with domestic abuse counselors, my attorney, my doctors, my social worker, and my mother and friends.

This Court found in its Temporary Order dated October 4, 2016 that "there was reliable evidence to show that an electronic device was installed and 're-routed' in such a way that was not usual for such a device. The configuration was to enable a third party to tap into or listen to private conversations. Evidence also disclosed that the 'mute' button was also tampered with so that a third party could listen to conversations that did not go over the air…" and that Mr. Albrecht's "testimony regarding having no knowledge of the 'tampering' with the Sonos box is not credible" (see attached).

OTHER INAPPROPRIATE BEHAVIORS

     This Court issued an Order dated January 20, 2021, ordering that the children be enrolled in counseling with a counselor to be selected by myself and ordered that Mr. Albrecht was to "take no steps to contact the counselor unless the counselor requests that he do so." Despite this Order, Mr. Albrecht has repeatedly tried to contact G███'s counselor, Emilee Skinner of Renewal Christian Counseling Center, by email, telephone, and during the court-ordered bi-weekly Zoom sessions that Grace has with Mr. Albrecht (per the Court's Order dated September 27, 2021). Although these Zoom sessions are to be between Mr. Albrecht and G███ with a third party allowed to be present at G███'s request, the third party is to "make no comments and take no action to interfere with the communication." Yet Mr. Albrecht repeatedly tries to get G███'s counselor to engage with him during his sessions with G███. This does not even include Mr. Albrecht's numerous calls and e-mails to other staff at Renewal Christian Counseling Center.

     Mr. Albrecht also recently sent an email to my attorney, Michael Fontaine, in response to a letter sent to Mr. Albrecht by Attorney Fontaine in response to an email from Mr. Albrecht about the definition of "bi-weekly". Mr. Albrecht copied the email to 25 people including Emilee Skinner, Renewal Counseling Center, our daughter's two previous counselors Denise Ballnik and Cherylynne Berger, the NH JCC, the NH DOJ, various Court employees including Judge David D. King, the NH Office of Professional Licensure and Certification, various NH state representatives, and various other unknown individuals. This is further evidence of Mr. Albrecht's ongoing efforts to try to intimidate myself and others. See Respondent's Verified Motion to Modify Parenting Plan (see attached) for an outline of some of the other intimidation tactics employed by Mr. Albrecht.

     As noted in my last request for an extension of the DV Order, Mr. Albrecht will pounce on anything he can find to create drama and chaos. He remains unemployed despite us having been divorced for several years now as his obsession with constant litigation and his efforts (both covert and overt) to cause me and our children emotional and psychological harm is his full time occupation.

     I, together with my daughters S███ and G███, continue to be in fear for our safety and believe that Mr. Albrecht's past conduct and history together with his more recent actions continues to demonstrate an immediate and present danger of abuse. As such, I ask this Court to further extend the existing restraining order.

# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2021-0192, <u>Katherine Albrecht v. Dana Albrecht</u>, the court on December 16, 2021, issued the following order:

Having considered the briefs, memorandum of law, and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The defendant appeals orders of the Circuit Court (<u>DalPra</u>, M., approved by <u>Leonard</u> and <u>Chabot</u>, JJ.), following a hearing, granting an extension of a domestic violence final order of protection to the plaintiff, <u>see</u> RSA 173-B:5, VI (Supp. 2021), and denying his motion for reconsideration.  On appeal, the defendant raises several challenges to the trial court's orders.  We vacate and remand.

One of the arguments advanced by the defendant is that he was denied due process of law under both Part I, Article 35 of the New Hampshire Constitution, and the Fourteenth Amendment to the United States Constitution, when the judicial officer who presided over this matter neither disqualified himself nor disclosed to the parties the basis for his potential disqualification.  <u>See</u> <u>In the Matter of Tapply & Zukatis</u>, 162 N.H. 285 (2011); <u>Blaisdell v. City of Rochester</u>, 135 N.H. 589 (1992); <u>Sup. Ct. R.</u> 38.

In support of his argument, the defendant provided this court with a copy of a letter from the judicial officer to the New Hampshire Judicial Conduct Committee (JCC), in which the judicial officer reported that he may have violated the New Hampshire Code of Judicial Conduct during a telephonic hearing held in a separate family division proceeding involving the parties.  In his letter, the judicial officer states, in part, that "[d]uring [defendant's] testimony he began speaking of issues that were not relevant to the issues to be decided-something he often did.  Under my breath I uttered a comment that contained a vulgar expression: 'who the f*** cares.'"  Thereafter, apparently without disclosing to the parties his comment, nor his decision to self-report it to the JCC, the judicial officer presided over the hearing in this matter, and subsequently recommended the dispositions set forth in the orders now on appeal.

The defendant states that he did not hear the judicial officer's comment during the family division hearing, and that he only learned of it after receiving a copy of the judicial officer's self-report letter pursuant to a request the defendant filed with the JCC.  Accordingly, the defendant argues that because he "was ignorant of [the judicial officer's] self-report at the time [the judicial officer]

conducted the most recent [domestic violence] hearing, Defendant was not given any opportunity to file a motion for recusal."

In light of the defendant's arguments, we exercised our supervisory jurisdiction, see RSA 490:4 (2010), and remanded for the limited purpose of allowing the trial court to determine whether the judicial officer was disqualified, under the circumstances of this case, from presiding over the plaintiff's request to extend the protective order.  Subsequently, the judicial officer issued an order on remand (DalPra, M., approved by Curran, J.), finding that there was no basis for his disqualification.  The judicial officer reasoned, in part, that he is not biased, and explained that the remark was made in response to testimony that "was not relevant to the issues to be decided in the family case," that it "was not intended to be heard," and that he only reported it to the JCC "[o]ut of an abundance of caution."  According to the judicial officer, the JCC has since dismissed the matter.

In light of the judicial officer's decision, we deemed the defendant's notice of appeal and brief to be challenging the determination that the judicial officer was not disqualified.  Because the transcript of the family division hearing at which the judicial officer made his remark was not part of the record on appeal, on November 30, 2021, we ordered the additional transcript.  Because the transcript did not contain the relevant remark, on December 10, 2021, we ordered the preparation of an amended transcript, which we received on December 14, 2021.  Accordingly, we now review the merits of the disqualification decision with this additional information.

"It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit."  N.H. CONST. pt. I, art. 35.  The New Hampshire Code of Judicial Conduct requires a judge to avoid even the appearance of impropriety, to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, and to disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to instances where the judge has a personal bias or prejudice concerning a party or a party's lawyer.  Tapply, 162 N.H. at 296, 302; Blaisdell, 135 N.H. at 593; Sup. Ct. R. 38, Canons 1, 2.

"The party claiming bias must show the existence of bias, the likelihood of bias, or an appearance of such bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of a party."  Tapply, 162 N.H. at 297 (quotation omitted).  "The existence of an appearance of impropriety is determined by an objective standard, i.e., would a reasonable person, not the judge himself, question the impartiality of the court."  Id. at 302 (quotation omitted).  "The objective standard is required in the interests of ensuring justice in the individual case and maintaining public confidence in the integrity of the judicial process which depends on a belief in the impersonality of judicial decision making."  Id. (quotation omitted).  "The test for an appearance of

partiality is whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." Id. (quotation omitted).

"Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id. at 297 (quotation omitted). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. (quotation omitted). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id. (quotation omitted). However, "it is the judge's responsibility to disclose, sua sponte, all information of any potential conflict between himself and the parties or their attorneys when his impartiality might reasonably be questioned," and his "failure to disclose to the parties the basis for his or her disqualification under [the Code of Judicial Conduct] will result in a disqualification of the judge." Blaisdell, 135 N.H. at 593-94.

Here, the transcript reflects that the judicial officer was presiding over a hearing on cross-motions to modify the parties' parenting plan. The judicial officer made his remark in response to testimony of the defendant in which the defendant described his connection with the children, and the things they used to do together before the divorce that he hasn't been able to do with them since. Specifically, the defendant testified that, before the divorce, he used to make all of the family meals for the holidays, and noted that he heard from one of the children that "last year, they did get to go out and eat at a super nice place, so I think that's -- I'm glad they got to go out to eat at a super nice place. At the same time, that's not the traditional homecooked meal that I always make that they were used to. It's just sad for me. Again, just a basic, they probably miss the traditional one too." It was during this testimony that the judicial officer whispered: "Who gives a f***?"

Although "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," Tapply, 162 N.H. at 297 (quotation omitted), in this case, the judicial officer's remark is unlike those at issue in Tapply. Here, the remark — which was not intended to be heard — was not made in order to admonish the defendant for unreasonable behavior. See id. at 299-300. Nor can we construe it as the judicial officer "merely fulfilling his duty as the finder of fact," id. at 300, and expressing skepticism about the defendant's claims or his credibility. See id. Rather, according to the judicial officer's self-report letter to the JCC, his remark was "made out of complete frustration," because the defendant "began speaking of issues that were not relevant to the issues to be decided-something he often did." Based upon our review of the transcript, we cannot conclude that the defendant's testimony was irrelevant, nor

so far afield as to justify such a crude remark.  Although a judicial officer is not precluded from showing frustration, see id. at 299-300, here, the judicial officer's remark would cause an objective, reasonable person to question whether the judicial officer had reached the point of frustration where he, quite literally, no longer cared about the defendant's testimony, and could no longer keep an open mind and decide the case impartially.  See id. at 302 ("The existence of an appearance of impropriety is determined by an objective standard, i.e., would a reasonable person, not the judge himself, question the impartiality of the court." (quotation omitted)).

Our decision is bolstered by another remark the judicial officer made later in the same family division hearing.  The transcript reflects that, during the plaintiff's testimony about the maturity level of the children, counsel asked her whether the children "make wise, mature decisions in their daily lives relative to, for example, schoolwork," and whether they "help[] around the house."  During this questioning, the judicial officer whispered: "Of course not, they're a bunch of morons."  This additional remark further supports our determination that an objective, reasonable person would question whether the judicial officer could keep an open mind and decide the case impartially.

Under these circumstances, we conclude that it was error for the judicial officer to have presided over the hearing in this case.  Accordingly, we vacate the trial court's orders, and remand for a new hearing on the extension of the protective order before a different judicial officer of the circuit court.  We express no opinion as to the merits of the underlying motion to extend the protective order.  However, in light of the unique circumstances of this case, the protective order shall remain in place pending the outcome of the new hearing.

Given our decision, we need not address the parties' remaining arguments.  To the extent that either party requests an award of attorneys' fees with respect to this appeal, the request is denied.  See Sup. Ct. R. 23.

Vacated and remanded.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2019-DV-00341
Honorable Kimberly A. Chabot
Honorable John A. Curran
Honorable Elizabeth M. Leonard
Marital Master Bruce F. DalPra
Honorable David D. King
Michael J. Fontaine, Esquire
Israel F. Piedra, Esquire
Mr. Dana Albrecht
Carolyn A. Koegler, Supreme Court
Lin Willis, Supreme Court
File

Case Name: In the Matter of Katherine Albrecht and Dana Albrecht 659-2019-DV-00341
RULE 7 NOTICE OF MANDATORY APPEAL

## 13. QUESTIONS TO BE RAISED ON APPEAL

**1.** The Defendant has never committed a violent act. There has been no direct contact of any kind between the parties in this case for over two years and the Defendant has never violated any restraining order. The trial court found that this was "good cause" to extend the order because "the order has worked effectively."

**The question presented is: Does this constitute an unsustainable exercise of discretion?**

**2.** The trial court was asked to describe, with specificity, which which "2 or more acts" committed by the Defendant on November 3, 2019 pursuant to RSA 633:3-a, II(a) were neither "constitutionally protected activity" nor "conduct that was necessary to accomplish a legitimate purpose" when reviewing the circumstances of the original stalking. It declined to do so.

**The question presented is: Did the trial court err by failing to individually describe, with specificity, the "2 or more acts" the Defendant committed that violated RSA 633:3-a, II(a)?**

**3.** This Court's prior order, Case No. 2020-0118, dated June 19, 2020, describes (at 3) that "the police began to physically drag him [Defendant] out of the church." This contradicts the description in the police report, further

Case Name: In the Matter of Katherine Albrecht and Dana Albrecht 659-2019-DV-00341
RULE 7 NOTICE OF MANDATORY APPEAL

stipulated to by both parties, that the Defendant "was compliant with the escort and at no time became resistant or uncooperative during the escort."

**The question presented is: Did this Court commit plain error by describing that "the police began to physically drag him [Defendant] out of the church" in its prior order?**

**4.** The trial court based its original order of protection on a parenting order dated May 30, 2019, issued by Judge Julie Introcaso, who also appointed GAL Kathleen Sternenberg in the related divorce case. The trial court originally found that there was nothing "legitimate" about the Defendant's activities because "he did not have scheduled parenting time." More recently, the trial court was provided with Judge Introcaso's arrest warrant and information about her relationship with Kathleen Sternenberg, but did not take this into account when extending the domestic violence order.

**The question presented is: Did the trial court violate Part 1, Article 35 of the New Hampshire State Constitution or the Due Process Clause of the U.S. Constitution?**

# STATE OF NEW HAMPSHIRE
## JUDICIAL CONDUCT COMMITTEE

Mary E. Collins, Chair
Attorney Jaye L. Rancourt, Vice Chair
Judge James H. Leary
Ernest Goodno
Alan K. Blake
Judge Neals-Erik William ("Will") Delker
Judge Susan B. Carbon
Joelle Martin
Thomas R. Eaton
W. Michael Scanlon, Esq.
Larry Gilpin



Robert T. Mittelholzer, Esq.
Executive Secretary
132 Chapel Street
Portsmouth, New Hampshire 03801

Phone: (603) 427-9295
Fax: (603) 427-9297
Email: rmittelholzer@nhjcc.com

February 16, 2021

Marital Master Bruce F. DalPra
NH Circuit Court Administrative Offices
One Granite Place, Suite 400 North
Concord, NH 03301

Re: JC-20-062-G

Master DalPra:

      Enclosed herewith please find a copy of your self-report which was most recently reviewed by the Judicial Conduct Committee at its meeting of February 12, 2021.

      Following discussion, the Judicial Conduct Committee voted to dismiss this report for the lack of any showing of judicial misconduct with no reasonable likelihood of a finding of judicial misconduct. *

Very truly yours,

/s/ *Robert T. Mittelholzer*

Robert T. Mittelholzer

RTM
Enc.

cc: The Honorable David D. King

* Judge Leary did not participate in the discussion of this matter.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## ORDER ON INITIAL EXTENSION OF
## DOMESTIC VIOLENCE OR STALKING FINAL PROTECTIVE ORDER
### Pursuant to RSA 633:3-a or 173-B

Case Number: **659-2019-DV-00341**                    PNO: **6591910341**

| Katherine Albrecht | ▅▅/1966 | V. | Dana Albrecht | ▅▅/1971 |
|---|---|---|---|---|
| Plaintiff | Plf Date of Birth | | Defendant | Def Date of Birth |

Pursuant to the provision of New Hampshire RSA 173-B:5, VI or RSA 633:3-a, III-c, the Plaintiff requests an initial extension of the Final Protective Order issued on <u>December 30, 2019</u>.

☑ The Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order. Accordingly, the Final Protective Order is hereby extended to 12/29/21 The Defendant shall be given notice of Plaintiff's request and this order. If the Defendant objects to the extension, he/she shall file a written objection within 10 days of the date of the Clerk's Notice of Decision and a hearing shall be conducted within 30 days of this order. At such hearing, the Court may either reaffirm, modify or vacate this extension order. If a hearing is scheduled, both parties shall appear.

☐ The Court finds, based upon the Plaintiff's representations, that good cause does not exist and the request to extend the order is denied.

**Recommended:**

_____          _____
Date                                                      Signature of Marital Master

                                                           _____
                                                           Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_____12/21/2020_____          _____
Date                                                      Signature of Judge   John A. Curran

                                                           _____
                                                           Printed Name of Judge

**THE STATE OF NEW HAMPSHIRE**
**JUDICIAL BRANCH**
http://www.courts.state.nh.us

9th Circuit – Family Division - Nashua

Katherine Albrecht v. Dana Albrecht
Docket Number: 659-2019-DV-00341

## PLAINTIFF'S VERIFIED MOTION FOR EXTENSION OF DOMESTIC VIOLENCE FINAL ORDER OF PROTECTION

NOW COMES the Plaintiff, Katherine Albrecht, by and through her attorneys, Welts, White & Fontaine, P.C., and pursuant to NH RSA 173-B:5, VI requests that the Court extend the Protective Orders and, in support thereof, states as follows:

1.      On December 30, 2019, this Court entered a Domestic Violence Final Order of Protection which Order will expire on December 29, 2020.

2.      Mr. Albrecht has demonstrated a pattern of harassing and stalking behavior and actions that is well-documented with this Court both in pleadings and evidence and testimony presented to this Court in this domestic violence matter and in the divorce matter, *In the Matter of Dana Albrecht and Katherine Albrecht*, Docket No. 659-2016-DM-00288.

3.      As such, Ms. Albrecht continues to be in fear for her safety and therefore requests a one-year extension of the Protective Order. If this Domestic Violence Protective Order is not extended as requested herein, Ms. Albrecht is convinced that Mr. Albrecht's violative behavior will not only continue but will escalate given his past well-documented behaviors toward Plaintiff and her children.

WHEREFORE, the Plaintiff, Katherine Albrecht respectfully requests that this Court:

A.      Grant the Plaintiff's Verified Motion for Extension of Domestic Violence Final Order of Protection for one additional year from December 30, 2020 to December 29, 2021; and



ITMO: Albrecht and Albrecht
Docket No.: 659-2016-DM-00288

B.      Grant such other and further relief as is just and equitable.

Respectfully submitted,

Date: December 18, 2020              /s/ Katherine Minges
                                     Katherine Minges, Respondent
                                     By Her Attorneys,

                                     WELTS, WHITE & FONTAINE, P.C.

Date: December 18, 2020      By:
                                     Michael J. Fontaine, Esquire
                                     29 Factory Street; P.O. Box 507
                                     Nashua, NH 03061
                                     (603) 883-0797
                                     NH BAR ID #832

Paragraph 14 of the Twelfth Renewed & Amended Order Suspending In-Person Court Proceedings
Related to N.H. Circuit Court & Restricting Public Access to Courthouses states: "All courts will
accept electronic signatures on pleadings and will allow litigants' signatures to be electronically
signed by attorneys and/or bail commissioners with a statement that they have communicated with
the litigant who has authorized them to do so." Katherine Minges has authorized Welts, White &
Fontaine, P.C. to affix her electronic signature to this document in accordance with this Supreme
Court Order.

## CERTIFICATE OF SERVICE

I certify that I have this day furnished the within pleading, by delivering a copy of same by
email and first-class mail, postage prepaid, to Joseph Caulfield, Esq., attorney for Petitioner.

Date: December 18, 2020
                                     Michael J. Fontaine, Esq.

MOTION GRANTED.
See Accompanying order
on inital exmion oF DVorder.
So Ordered.

                                     John A. Curran
                                     12/21/2020

2

29

**phil@waystackfrizzell.com**

| | |
|---|---|
| **From:** | Hon. David D. King <DKing@courts.state.nh.us> |
| **Sent:** | Tuesday, July 26, 2022 5:19 PM |
| **To:** | Richard W. Head |
| **Subject:** | FW: Albrecht hearing November 6, 2020 |
| **Attachments:** | Nashua CC CR5_20201106-1227_01d6b43829be0cfc.trm; Nashua CC CR5_20201106-1344_01d6b443031dc438.trm |

**From:** Hon. David D. King
**Sent:** Friday, November 13, 2020 4:22 PM
**To:** Master Bruce F. Dalpra <BDalPra@courts.state.nh.us>
**Subject:** Albrecht hearing November 6, 2020

**EXHIBIT 3**

Bruce:

I am sorry to have to be writing this email but I'm sure you will understand that I have an obligation under the Code to deal with these situations.  On November 6, 2020 you had what I believe was a telephonic hearing in what is obviously a very difficult matter, Albrecht and Albrecht.  One of the parties requested a copy of the audio recordings from the hearing, which was provided, and subsequently ordered a transcript.

When the transcriptionist from escribers was preparing the transcript, she brought to her supervisor's attention comments that "the judge" made during the proceedings.  The supervisor in turn reached out to court administration.  I am attaching two examples that were sent to my attention, both email excerpts from escribers staff as well as snippets of the actual audio.   The audio is difficult, but not impossible, to hear on our equipment but apparently very clear on the more sophisticated equipment used by escribers.  Obviously I do not know anything about this case, other than the fact that it has a very large number of docket entries, which in and of itself is an indication that it involves difficult issues, and probably difficult parties.  For that reason it isn't clear whether your comments indicate a bias against one of the parties or are just comments made in frustration.  I think we can both agree that they do not demonstrate the patience or dignity expected of judicial officers under Rule 2.8.

I am hoping that we can speak about this next week after you have a chance to review what I have attached.  (The 2 notes pasted below are from the emails received from escribers.)

David

David D. King
Administrative Judge
New Hampshire Circuit Court
1 Granite Place, Suite N400
Concord, N.H. 03301
Telephone (603) 271-6418

I thought you should be aware, per our transcriber regarding the above order:

So everyone is on Zoom/telephonic for this hearing, other than the judge.  The mic is right next to the judge and I can hear everything.  He talks to his clerk and himself a lot and makes some pretty bad remarks about the parties and the commentary the parties make.

For instance, he whispers to himself, right in the mic, "who gives a fuck" when the witness is answering a question, or calls them all a bunch or morons, and so much.  It actually creates it to where I can't hear what the witness is saying because he's talking into the mic, I think, completely unaware of what he's doing.

Here are a few examples of time stamps where you can clearly hear the
Court:

"Who gives a fuck?" - **12:28:16

"Of course not, they're a bunch of morons." - **1:45:59

1

```
 1                      STATE OF NEW HAMPSHIRE

 2          9TH CIRCUIT COURT - FAMILY DIVISION - NASHUA

 3   IN THE MATTER OF:          ) Family Division Case No.
                                ) 659-2016-DM-00288
 4   DANA ALBRECHT,             )
                                )
 5            Petitioner,       )
                                ) Nashua, New Hampshire
 6          and                 ) November 6, 2020
                                ) 11:37 a.m.
 7   KATHERINE ALBRECHT,        )
                                )
 8            Respondent.       )
     _____ )
 9
                        HEARING ON MOTIONS
10            BEFORE THE HONORABLE BRUCE DALPRA
        MARITAL MASTER OF THE CIRCUIT COURT - FAMILY DIVISION
11
             REVISED - UNABRIDGED FINAL WITH TIMESTAMPS
12
     APPEARANCES (All present by video or telephone):
13
     For the Petitioner:        Joseph Caulfield, Esq.
14                              CAULFIELD LAW AND MEDIATION
                                OFFICE
15                              126 Perham Corner Rd
                                Lyndeborough, NH 03082
16
     For the Respondent:        Michael J. Fontaine, Esq.
17                              WELTS, WHITE & FONTAINE, P.C.
                                P.O. Box 507
18                              Nashua, NH 03061

19   Also Present:             Kathleen Sternenberg
                                GAL
20
     Audio Operator:           Electronically Recorded
21                              **Not Monitored**

22   TRANSCRIPTION COMPANY:     eScribers, LLC
                                7227 N. 16th Street, Suite 207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24                              www.escribers.net
     Proceedings recorded by electronic sound recording; transcript
25   produced by court-approved transcription service.
```

eScribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

2

                          I N D E X

WITNESS(ES)        DIRECT      CROSS      REDIRECT     RECROSS

FOR THE PETITIONER:

Dana Albrecht         4          40          66

Dana Albrecht        126
(rebuttal)


WITNESS(ES)        DIRECT      CROSS      REDIRECT     RECROSS

FOR THE RESPONDENT:

Katherine Albrecht  78         126


MISCELLANEOUS                                    PAGE

Petitioner Rests                                  74

Respondent's Opening Statement                    74

Respondent Rests                                 137

Matter Taken Under Advisement                    130


EXHIBITS                                    ID    EVD

NONE

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

3

1       (Proceedings commence at 11:37 a.m.)

2           THE COURT:  Good morning, Atty. Caulfield?

3           MR. CAULFIELD:  Yes.

4           THE COURT:  Atty. Fontaine?

5           MR. FONTAINE:  Good morning, Judge.

6           THE COURT:  My name is DalPra.  You folks are

7  connected to the courtroom, and we're here on four pleadings.

8  And they both are pretty much -- the first two pleadings filed

9  by Mr. Albrecht regarding a modification of the parenting

10  plan, and the second two pleadings filed by Mrs. Albrecht with

11  pretty much the same requests, modification of the parenting

12  plan.

13           I'll tell you at the outset that the several hundred

14  pages of exhibits have not been reviewed to date.  And for the

15  record, all the exhibits will be marked for identification,

16  and I will make a determination following the hearing as to

17  which documents should be submitted as full exhibits and which

18  aren't.  So we won't have any argument on those at this point.

19           Mr. Caulfield, these are your motions; you may

20  proceed.

21           MR. CAULFIELD:  Yes, Your Honor.  I -- I just want

22  to point out that that doesn't clear up the docket as they set

23  forth in Petitioner's --

24           THE COURT:  I don't care whether it clears the

25  docket up or not, counsel.  The order that went out said that

33

1  for Christmas 2018.  If we --

2      Q  Do you have any photographs of that?

3      A  Yes.  One moment, please.  I would direct the Judge to

4  -- Exhibit would be -- there's two sets of photographs.

5  Exhibit 47 is the first batch taken from 12/23 through 12/27.

6  And Exhibit 48 is just an email from Dr. Albrecht's is in the

7  middle chronologically, just to be chronological.  And then

8  the next set of photographs is Exhibit 49, which were taken on

9  the 31st, where I'm opening the last presents they gave me,

10 and we're altogether at the airport.  And G███ is hanging out

11 watching TV at my dad's house.  And that's the last I've ever

12 been able to see them.

13      And again, that's when P███ also came back with me

14 and moved to New Hampshire after that.  So he's been okay for

15 those two years, but it's the other kids.  And there's

16 pictures of the dinner there, if anybody cares, but the point

17 is, is I'm always the one that made it.

18      I heard from G███ that last year, they did get to go

19 out and eat at a super nice place, so I think that's what --

20 I'm glad they got to go out to eat at a super nice place.  At

21 the same time, that's not the traditional homecooked meal that

22 I always make --

23      THE COURT:  *[Whispered] Who gives a fuck?*

24      A  -- that they were used to.  So it's just sad for

25 me.  Again, just a basic, they probably miss the traditional

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

65

1      A   Dated July 2nd.  Excuse me while I look through these

2   17 pages for this letter.

3          THE COURT:   *[Laughter]*

4      A   You said -- what was the date again?

5   BY MR. FONTAINE:

6      Q   July 2nd, 2019.

7          THE COURT:   *[Whispered] And while you're looking*

8   *through that, I'm gonna go pee.*

9          *Can you imagine if this was in person?*

10         UNIDENTIFIED SPEAKER:   *Oh, my God.  I don't know if*

11  *I (indiscernible).*

12     A   So I don't know.  Yes, it does say the vaccinations on

13  schedule agreed to.  I don't know how we could do that if we

14  don't have a copy of the schedule, but I would be amenable, if

15  we have a copy of the schedule, to anyone administering the

16  vaccines.

17  BY MR. FONTAINE:

18     Q   Okay.  So let me ask you this.  After this, there was

19  an appointment scheduled for Dr. -- but you --

20     A   Yeah, with --

21     Q   You canceled it, didn't you?

22     A   There was a prior appointment scheduled with

23  Dr. Greenberg that was canceled.

24         THE COURT:   *[Laughs].*

25     A   So yes, if she's canceling the appointment that we

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

Commented [DF15]: 1:12:33

66

1  agreed to, I will cancel the appointment that we did not agree

2  to.

3          THE COURT:  *[Laughs]*.

4  BY MR. FONTAINE:

5      Q  So you canceled the appointment with Dr. Hanif,

6  correct?

7      A  Yes.  It's the only appointment in the entire history

8  of this case I have ever canceled.

9      Q  And --

10     A  I can't say the same for Katherine.

11         UNIDENTIFIED SPEAKER:  *[Whispered] Stupid.*

12         MR. FONTAINE:  I have no further questions, Your

13  Honor, for this witness.

14         THE COURT:  Any redirect, Mr. Caulfield?

15         MR. CAULFIELD:  Yes, Your Honor.  One moment,

16  please.

17                    REDIRECT EXAMINATION

18  BY MR. CAULFIELD:

19     Q  Atty. Fontaine asked you about your relationship with

20  C███ deteriorating since Christmas 2018, and you said that

21  that's not correct, and you were trying to refer to some

22  exhibit?

23     A  The --

24         THE COURT:  *[Whispered] No, (indiscernible).*          Commented [DF16]: 1:14:13

25     A  -- apology for C███?  Or the relationship since then?

67

```
 1     Q  Well, my notes say that Atty. Fontaine asked you about
 2  the relationship with C███ deteriorating since Christmas
 3  2018, and I see that I have an asterisk --
 4     A  Yes.  Yes.  That was the weekend -- so I have shown
 5  these texts to get some advice from my therapist because I'm
 6  concerned he's mentally ill.
 7        THE COURT:  [Laughs]
 8     A  So October 5th, from a different number I'm not
 9  familiar, he asked me, how long does it take to hack into a
10  black phone, do you know?  I need to know how often I need to
11  replace it.  I have no idea why he thinks he needs to replace
12  his phones.  He says he's got to throw his phone out soon.
13        THE COURT:  Hopeless.  Heartless.
14        UNIDENTIFIED SPEAKER:  No, he did.
15        THE COURT:  He was concerned; he said he was
16  hopeless.  (Indiscernible).
17     A  I can read this in-depth, his own words, but they're
18  quite incoherent.  So long, rambling emails.
19  BY MR. CAULFIELD:
20     Q  That was after this incident?  Mr. Albrecht, that was
21  after the incident that Atty. Fontaine asked you about?
22     A  This is most recently, if we go to the incident at
23  church, that's more relevant because he's much saner at that
24  point where he just apologizes for not getting in touch with
25  me.
```

Commented [DF17]: 1:14:23

Commented [DF18]: 1:15:17

68

1        THE COURT:  *(Indiscernible)*.                    Commented [DF19]: 1:15:48

2   BY MR. CAULFIELD:

3      Q  So after the incident in which you have these -- which

4   the DV is outstanding, he apologized to you?

5        THE COURT:  *[Laughs]*

6      A  Correct.  No.

7        THE COURT:  *[Laughs]*

8   BY MR. CAULFIELD:

9      Q  But -- but -- but during your cross-examination, you

10  were challenged with, did you do this this way, did you do

11  that way; what did you say in your apology letter; why didn't

12  you say this in your apology letter.

13       THE COURT:  *(Indiscernible) so what?*          Commented [DF20]: 1:16:17

14       UNIDENTIFIED SPEAKER:  *(Indiscernible)*.

15  BY MR. CAULFIELD:

16     Q  If for some reason you found out that over your

17  lifetime as a parent, you didn't make the right choice every

18  single blessed time, would you accept that?

19       THE COURT:  *[Laughs]*

20     A  Yes.

21  BY MR. CAULFIELD:

22     Q  Right.  And -- and if somebody -- and if you did the

23  best you could in writing a letter and consulted with your own

24  therapist as how you should write the letter --

25       THE COURT:  *[Whispered] The apology (indiscernible)*   Commented [DF21]: 1:16:45

69

1 *to have a (indiscernible) relationship.  He doesn't think his*

2 *son's (indiscernible).*

3 BY MR. CAULFIELD:

4     Q  -- if someone else thinks that it should be written

5 differently, is that really neither here nor there,

6 Mr. Albrecht?

7     A  Only in the sense that a professional therapist,

8 professional opinion, I would think, would be better than

9 somebody who's not similarly trained.

10     Q  Okay.  Now, if Master DalPra orders this fractured

11 family to go to -- for some sort of reunification therapy --

12         THE COURT:  *He lives on the East Coast.  They live*

13 *on the West Coast.  They're going to go there (indiscernible).*

14         UNIDENTIFIED SPEAKER:  *[Laughs].*

15 BY MR. CAULFIELD:

16     Q  -- would you do what the therapist tells you to do?

17     A  Absolutely, in a heartbeat.  I would love that.

18     Q  Would -- would you send the letter the way the

19 therapist says you should do it?

20     A  Absolutely, in a heartbeat, sir.

21     Q  Okay.  Now, there was some discussion about some

22 examination about Judge -- Judge DalPra -- Master DalPra's

23 order regarding insurance, and you were saying that you -- you

24 didn't understand it --

25         THE COURT:  *[Laughs]*

Commented [DF22]: 1:17:18

70

1  BY MR. CAULFIELD:

2      Q  -- and you -- you started to try to reference it and

3  then we moved on.  Is there something about that order you

4  wanted to discuss?

5      A  Yes, if you could just briefly give me one moment to

6  bring it up.

7      Q  And while you're getting it up, assuming you can

8  multi-process, sir, if it turns out that somewhere along the

9  line in your lifetime as a parent you had made some mistake,

10  you didn't say the right thing in a letter, you held the kids

11  two more days during parenting, would it make any sense that

12  you should be punished and the children should be punished by

13  never seeing their dad again?

14      A  Yeah.

15      Q  Okay.  That would -- that would really be mentally ill

16  to think that way, wouldn't it?

17      A  Yes.

18      Q  Yes.  Okay.

19      A  Okay.  So I found the order.

20          THE COURT:  *[Laughs].*

21      A  So I think the issue here is the uniform support order

22  that Judge Introcaso signed in paragraph 16 says, see decree

23  providing coverage under Blue Shield of California.  So the

24  order from the judge is to look at the decree for providing

25  Blue Shield coverage.  But when I look at the divorce decree

41

71

1    for providing coverage under Blue Shield, I can't find it

2    anywhere in there.

3           So it's unclear how I -- I -- I accept that by the

4    time we get to the order where judge -- I accepted Judge

5    Introcaso found me in contempt of that.  But again, to this

6    point, I'm not sure why, because he told me to look at the

7    decree and I can't find it in the decree.

8           MR. CAULFIELD:  Okay.  I have -- I have no further

9    questions.

10          THE COURT:  Any recross, Mr. Fontaine?

11          MR. FONTAINE:  No, I'm all set, Your Honor.  Thank

12   you.

13          THE COURT:  Very well.  At this point we're going to

14   take about a 15-minute recess.  I am going to keep my line

15   open here; you can stay on the line, or you can call back in

16   15 minutes.  Okay?

17          MR. CAULFIELD:  Thank you, Your Honor.

18          MR. FONTAINE:  Thank you.

19          THE COURT:  Very well.

20          We're going to take, like, about a three-minute

21   break because I have to --

22          UNIDENTIFIED SPEAKER:  You're absolutely right; it

23   sounds like Gilbert Godfrey.

24       (Recess at 1:20 p.m., recommencing at 1:33 p.m.)

25          MR. CAULFIELD: (Audio begins mid-sentence) yes, Your

72

1  Honor.

2        THE COURT:  Are your clients back?  Ms. Albrecht?

3        Katherine Albrecht, are you back on the line?

4        Dana Albrecht, are you back on the line?

5        THE PETITIONER: I'm here, Your Honor.

6        THE COURT:  Very well; we'll wait a few more

7  minutes.

8        MR. CAULFIELD:  (Indiscernible) now, Judge.

9        THE COURT:  *[Whispered] She's probably having a hot*

10 *dog.  [Laughter]*

11        So Alex Corey is back.

12        UNIDENTIFIED SPEAKER:  Yup.

13        THE COURT:  I wonder if they're going to do anything

14 with the other guy with a thing like the guy from New

15 Hampshire.  Fold (phonetic)?

16        UNIDENTIFIED SPEAKER:  Oh, it's not -- what's his

17 name?  The guy that was the manager this year who was the

18 bench coach, he's not coming back.

19        THE COURT:  No.

20        UNIDENTIFIED SPEAKER:  Did they -- the first base

21 coach and third base coach, was those new coaches?

22        THE COURT:  They're back.

23        UNIDENTIFIED SPEAKER:  Were they the ones that

24 worked on this (indiscernible) previously?

25        THE COURT:  Yeah, they were.  I think they're both

**Commented [DF23]:** 1:33:59

73
```
 1  back.  Febles and the other guy, I think they're both back.
 2         UNIDENTIFIED SPEAKER:  I'll be curious to see what
 3  they do to improve the team, if they even try.
 4         THE COURT:  I don't know.  I don't -- I don't mind
 5  John Henry as an owner, but I don't like Werner at all.
 6         UNIDENTIFIED SPEAKER:  Oh, yeah.
 7         THE COURT:  He's too --
 8         UNIDENTIFIED SPEAKER:  What do you think of this new
 9  GM they have?
10         THE COURT:  It's hard -- it's hard to say over the
11  first --
12         UNIDENTIFIED SPEAKER:  Yeah, because of the --
13         THE COURT:  -- first year with what went on.
14         UNIDENTIFIED SPEAKER:  -- the way the end of the
15  season was.
16         THE COURT:  I mean, they -- they basically told him
17  to trade Betts (phonetic), and I don't think Betts was going
18  to stay anyway.  Didn't sound like he wanted to be in the --
19  the Boston.
20         UNIDENTIFIED SPEAKER:  Ken Nuke (phonetic) can
21  pitch.
22         [Laughter]
23         THE COURT:  All right.
24         I must have these exhibits somewhere.  Forgot to
25  check them.
```

79

1      Q   For the record, state your full name.

2      A   My name is Katherine Michelle Mingus, and was

3   previously Albrecht.

4      Q   Okay.  And where do you reside?

5      A   I reside at 730 West Alegria Avenue in Sierra Madre,

6   California.

7      Q   And who lives with you at that location?

8      A   My son C███, my daughters S███ and G███, and most

9   recently, my sister Laura.

10     Q   Okay.  And your sister Laura, does -- is -- does she

11  need assistance?

12     A   She is -- she has cerebral palsy.  She's in a

13  wheelchair.  She has attendant care 24 hours, and my mother

14  was her primary caregiver until she passed away last year.

15  And now I'm --

16     Q   Okay.

17     A   I'm not the primary caregiver.  She has an attendant,

18  but I'm supporting her and helping her out.

19     Q   Have you had an opportunity to discuss with the girls

20  whether they want to see their father?

21     A   Yes.

22     Q   And has that been recent?

23     A   Yes.

24     Q   And have they changed their prior position that you

25  testified to at the motion hearing a little over a year ago?

80

1      A  No.

2      Q  Have they indicated any desire to have any contact

3  with him?

4      A  No.

5      Q  Have you continued, on occasion, to encourage them to

6  reach out to him?

7      A  Yes.

8      Q  And what has their response been?

9      A  Their response has consistently been no.

10     Q  Do you believe that they're mature minors?

11     A  Yes.

12     Q  How do they do in school?

13     A  They have very good grades.

14     Q  Have they had any problems with their conduct in

15  school or outside of school?

16     A  Never, never.

17     Q  Do they make wise, mature decisions in their daily

18  lives relative to, for example, schoolwork?

19         THE COURT:  *[Whispered] Of course not; they're a*

20  *bunch of morons.*

21     A  Yes.

22  BY MR. CAULFIELD:

23     Q  Helping around the house?

24     A  Yes.

25     Q  Do they have chores?

144

<u>CERTIFICATE</u>

I, Dena Farbman, a court-approved proofreader, do hereby

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter, to the best of my professional skills

and abilities.

Karen Raile, CDLT-105, Transcriptionist
Erin Perkins, CET-601, Proofreader



Dena Farbman

Digitally signed
by Dena Farbman
Date: 2022.04.07
15:07:43 -04'00'

DENA FARBMAN, CET-629                    April 6, 2022
Proofreader/Quality Control Manager


**Original transcript signed on November 12, 2020**

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2020-0118, <u>Katherine Albrecht v. Dana Albrecht</u>, the court on June 19, 2020, issued the following order:

Having considered the brief, memorandum of law, reply brief, and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendant, Dana Albrecht, appeals an order of the Circuit Court (<u>Derby</u>, J.), following a three-day hearing, granting a domestic violence final order of protection to the plaintiff, Katherine Albrecht.  <u>See</u> RSA 173-B:5 (Supp. 2019).  The defendant raises numerous challenges to the trial court's order.

We first address the defendant's argument that he received inadequate notice of the allegations being made against him.  "[T]he notice provisions within RSA 173-B:3 . . . require that a [defendant] in a civil domestic violence proceeding be supplied with the factual allegations against him in advance of the hearing on the petition."  <u>South v. McCabe</u>, 156 N.H. 797, 799 (2008).  In this case, the plaintiff attached to her domestic violence petition a typewritten, five-page, single-spaced document clearly stating the allegations supporting her petition, which formed the basis for the court's protective order.  The defendant asserts that the petition contained a false allegation regarding the plaintiff's arrival time at the church where the incidents occurred.  The trial court noted that there was a discrepancy as to whether the plaintiff arrived at the church before or after the defendant, but did not find this discrepancy to be material.  The defendant has not identified any unnoticed allegations upon which the trial court relied.  Accordingly, we conclude that the defendant received adequate notice of the allegations being made against him.  <u>See</u> <u>id</u>.

We next address the defendant's argument that the trial court lacked subject matter and territorial jurisdiction because the incidents alleged in the petition occurred in Massachusetts.  We have held that RSA 490-D:2, IV grants subject matter jurisdiction to the circuit court over domestic violence cases, and that RSA chapter 173-B does not incorporate the territorial jurisdiction limitations of the criminal code.  <u>Hemenway v. Hemenway</u>, 159 N.H. 680, 684-85 (2010).  Accordingly, we reject the defendant's jurisdiction arguments.

We next address the defendant's argument that the trial judge erred in stating that he had "no knowledge of the divorce case," given that the judge previously had approved recommendations from the marital master in the

divorce.  See RSA 490-D:9 (Supp. 2019) (noting that the signing judge must certify that he "has read the recommendations and agrees that the marital master has applied the correct legal standard to the facts determined by the marital master.").  The defendant asserts that, in this case, the judge "was influenced by unproven allegations in the divorce case."  The judge explained that he could not recall any facts from the divorce given the passage of time, and that he had not presided over the hearing.  Moreover, we have held that "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." In the Matter of Tapply & Zukatis, 162 N.H. 285, 297 (2011) (citation omitted). The defendant has made no such showing in this case.

We next address the defendant's challenge to the sufficiency of the evidence.  We review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or erroneous as a matter of law.  Achille v. Achille, 167 N.H. 706, 715 (2015).  "The trial court, as the trier of fact, is in the best position to assess and weigh the evidence before it."  In re Deven O., 165 N.H. 685, 690 (2013).  "It has the benefit of observing the parties and their witnesses, and its discretion necessarily extends to assessing the credibility and demeanor of those witnesses."  Id.  Thus, conflicts in testimony, witness credibility, and the weight to be assigned to testimony are matters for the trial court to resolve.  Id.  We view the evidence in the light most favorable to the prevailing party.  Smith v. Pesa, 168 N.H. 541, 544 (2016).[1]

To obtain relief under RSA chapter 173-B, the plaintiff must show "abuse" by a preponderance of the evidence.  Achille, 167 N.H. at 716. "Abuse" means the commission or attempted commission of one or more of several criminal acts constituting a credible present threat to the plaintiff's safety, including stalking as defined in RSA 633:3-a (2016).  See RSA 173-B:1 (Supp. 2019).  The defendant argues that the evidence was insufficient to support the court's finding that his conduct constituted stalking.

A person commits the crime of stalking if he "[p]urposely or knowingly engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in fear for his or her personal safety or the safety of a member of that individual's immediate family."  RSA 633:3-a, I(b).

---

[1]   We have considered the arguments in the defendant's brief and conclude that there is no need to clarify our standard of review.  We reject his argument that our standard of review violates his due process rights.  See Buchholz v. Waterville Estates Assoc., 156 N.H. 172, 177 (2007) ("[P]assing reference to 'due process,' without more, is not a substitute for valid constitutional argument." (Quotation omitted.)).

"Course of conduct" is defined as two or more acts over a period of time, however short, which evidences a continuity of purpose.  RSA 633:3-a, II(a).  A course of conduct may include "[t]hreatening the safety of the targeted person or an immediate family member," "[f]ollowing, approaching, or confronting that person, or a member of that person's family," or "[a]ppearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found."  RSA 633:3-a, II(a)(1)–(3).

The record shows that the plaintiff and defendant are divorced parents of four children, including two minors.  The court found that the "parties' divorce and post-divorce co-parenting relationship [has been] contentious and high-conflict."  The plaintiff lives with the three youngest children in California.  The defendant accessed records from the youngest child's school to determine that they would be on vacation in Massachusetts in early November 2019, and he surmised that they would attend services at their former church on November 3.  The defendant did not have scheduled parenting time with the children on November 3, and he is no longer a member of the church.

The defendant nevertheless appeared at the church prior to services.  The plaintiff and the children were informed of the defendant's presence and tried to avoid him.  When the pastor asked the defendant to leave, he refused.  A church leader called the police, and when officers arrived, the defendant refused to leave until they used physical force.  The defendant then remained in the church parking lot until approximately 3:30 p.m., long after the church's activities had ended, and after staff had left for the day.  The plaintiff and the children left the church through another door and drove away in a rental car.

The trial court concluded that the defendant, "[b]y using his access to the children's school records to learn about the vacation, and then tracking the plaintiff and the children to [the church] on November 3, disrupting the Sunday activities by refusing polite lawful requests from [church] leadership to leave, pressing his refusal to leave right up to the point where the police began to physically drag him out of the church, and then standing in the parking lot between the church and the attendees' cars until 3:30 PM," committed the crime of stalking.  The court found that the defendant appeared at the church for no legitimate or constitutionally protected purpose but rather to intimidate the plaintiff and the children.  We conclude that the record supports the court's findings.  See Achille, 167 N.H. at 715.

The defendant argues that the evidence was insufficient to support the court's protective order because there was no evidence of physical violence or contact of any kind.  We have held, however, that "the statutory definition of 'abuse' does not require the defendant to have committed a violent act."  In the Matter of McArdle & McArdle, 162 N.H. 482, 487 (2011).  The court found that the defendant intended to show the plaintiff "that he will track her and the children down and try to confront them wherever they are.  Once he has done

that, he will not respect lawful requests from authority figures and he will push his claims up to the point of a physical confrontation with the police." The court found that the defendant knew that his conduct would cause the plaintiff to fear for her safety and that of the parties' children. Based upon our review of the record, we conclude that the evidence was sufficient to support the court's order. See Achille, 167 N.H. at 715.

Finally, the defendant argues that the trial court violated RSA 461-A:4-a, which requires any motion for contempt or enforcement of an order regarding an approved parenting plan to be reviewed by the court within 30 days. The defendant filed his motion in the parties' divorce case, under a different docket number. The motion has no bearing on the court's issuance of a protective order. We conclude that this issue is beyond the scope of this appeal.

The defendant's remaining arguments are inadequately developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), not preserved, see Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250-51 (2004), and warrant no further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993). We do not consider new issues raised for the first time on appeal in a reply brief. Harrington v. Metropolis Property Management Group, 162 N.H. 476, 481 (2011).

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2019-DV-00341
Honorable Mark S. Derby
Honorable David D. King
Mr. Dana Albrecht
Michael J. Fontaine, Esq.
Israel F. Piedra, Esq.
Carolyn A. Koegler, Supreme Court
Lin Willis, Supreme Court
File

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Hillsborough County                                        9th Circuit – Family Division – Nashua

## In the Matter of Katherine Albrecht and Dana Albrecht

### 659-2019-DV-00341

### ORDER ON POST-TRIAL MOTIONS (#28, #29)

Before the court are the defendant's two post-trial motions; (1) ex parte motion to modify (#28); and (2) motion to reconsider (#29).  The court has reviewed the plaintiff's objections and all of the defendant's replications to those objections.

The ex parte motion to modify (#28) is denied for the reasons set forth in the plaintiff's objections.  The court gave careful consideration to the decision to restrain the defendant from coming within 2,000 feet of the Collinsville Bible Church.  The Court believes that the restriction is narrowly tailored to the unique and specific facts of this case, and is necessary to prevent future incidents of stalking by the defendant.  This order is rooted in the findings of stalking and the present credible threat that the defendant poses to the plaintiff's safety, and particularly in the defendant's answers, deflections and evasive non-answers to the questioning on Pages 71-79 of the December 20, 2019 transcript.  In that line of questioning, the defendant made it clear that without a specific restraining order in place, he would keep inserting himself into the plaintiff's parenting time with the children, regardless of their wishes or anything else.  He believes that he did nothing wrong and gave every indication that he would do it again given the chance.

The court agrees with the plaintiff that the defendant's First Amendment argument is a wholly manufactured controversy.  For starters, the court's 2,000 foot restriction is remedial in nature, only applies to the defendant and was based on the defendant's specific conduct as part of a finding of domestic violence after a trial.  Beyond that, the court has carefully considered this matter and is satisfied that, in light of the defendant's testimony, there is no less restrictive means available by which to protect the plaintiff from the defendant's harassment when she visits the east coast and wants to exercise her constitutional free exercise and associational rights.

Turning to the motion to reconsider (#29), that is also denied for the reasons set forth in the plaintiff's objection.  The court acknowledges that the docket in 659-2016-

DM-00288 shows that on or about June 30, 2019 the undersigned judicial officer approved the recommendation of marital Master Bruce Dalpra to deny the defendant's motion for reconsideration of a substantive May 30, 2019 order (co-signed by a different judicial officer).

More than five months later on December 9, 2019, at the beginning of the DV case, the court disclosed to the parties' counsel as they were arguing about which material from the divorce case should be reviewed as part of the DV case, that the court had no knowledge of the divorce case. The phrase "no knowledge" was shorthand for the lack of factual background that a judge would have when the judge had actually heard parts of a related case and drafted substantive orders based on those hearings. The court did not want the parties' counsel to assume that because the undersigned judicial officer's name approved recommendations on prior orders, the court had any working knowledge of the facts of the divorce case. It lacked that knowledge because anything the court would have seen in late June 2019 by reviewing and approving Master Dalpra's recommendation was long forgotten by early December.

During the domestic relations trial, both parties actually re-litigated the events on and after winter vacation 2018. The plaintiff re-litigated those matters as past incidents under RSA 173-B:1, I ("[t]he court may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the petitioner to fear for his or her safety or well-being"), and the defendant re-litigated those events in defense of his actions on November 3, 2019. The defendant argued that the plaintiff's alleged wrongful conduct and parental alienation over at least the last year left him desperate to see his children and with no alternative. Therefore, the court began the DV hearing with no knowledge of the facts of the divorce case, but by the end of the DV hearing, the parties had presented significant evidence of the events on and after winter vacation 2018, which led up to November 3, 2019. The final DV order was based only on the testimony and documents presented at the DV trial.

As to Paragraphs 6-21 and 26-29, the only incident the court considered for the purposes of finding abuse was the November 3, 2019 incident. The components of the stalking are set forth in detail in the narrative portion of the order. The discussion of the other incidents leading up to November 3, 2019 were considered pursuant to RSA 173-B:1, I as evidence in support of the second prong of the DV analysis, i.e., whether, notwithstanding the finding of an event of abuse, the defendant still posed a credible present threat to the plaintiff's safety. The court found that he did.

As to Paragraphs 34-43 of the motion for reconsideration, the facts supporting a criminal trespass finding (in addition to stalking) were set forth in the plaintiff's domestic violence petition, and the defendant unequivocally testified to the elements of the offence.  The defendant testified that he refused to leave and remained in the church after multiple orders to leave communicated to him by authorized representatives of the church (Mr. Cooper, a lay leader, and Pastor Smith) and then the Dracut Police. Plaintiffs in their domestic violence petitions are not required to identify by name and citation which crimes in RSA 173-B:1 the defendant has committed.  The defendant and the court discern it from the facts that the plaintiff pleads, and that is what happened here.  Also, RSA 173-B:5, I states that the evidentiary standard is preponderance of the evidence, even though RSA 173-B:1 cites criminal acts as examples of domestic violence.

As to Paragraph 54 of the motion for reconsideration, the court's choice of the word "approached" referred to the defendant's reactive e-mail communication to the camp asking for a broad range of information that was disproportionate to the amount of time the children actually spent at the camp.  If the record shows that the defendant did not *physically* approach the camp (there was testimony that an order in the divorce case prohibited him from doing so), the court so finds.

Finally, and turning to the broader issue of the plaintiff's fear, RSA 633:3-a, I contains both an objective standard (RSA 633:3-a, I(a)) and a subjective standard (RSA 633:3-a, I(b)).  Therefore, even if a reasonable person at the church on November 3, 2019 would not have felt in fear of his or her safety, if the defendant knew that his conduct would cause the plaintiff or the children to be in fear of their safety, that is sufficient to constitute stalking.  Regardless of whether or not that fear is the result of a mental health experience, the court finds that the plaintiff clearly knew that tracking of the plaintiff and the children to the church, refusing multiple lawful orders to leave, and then watching the church from the parking lot for the bulk of the day, would cause the petitioner to fear for her safety.

Motions denied.

January 27, 2020
Date

Signature of Judge

Mark S. Derby
Printed Name of Judge



RECEIVED
NOV 19 2019
BY:

## STATE OF NEW HAMPSHIRE

9th Circuit-Family Division-Nashua

In the Matter of Katherine Albrecht and Dana Albrecht

659-2019-DV-00341

### Defendant's Motion to Consolidate For Hearing

Now comes Dana Albrecht, Defendant, by and through his attorney, and states:

1. On October 31, 2019, Defendant Dana Albrecht learned that Petitioner Katherine Albrecht had, yet again, traveled from Sierra Madre, California to the New England area with their children. In violation of the court's parenting plan, Dr. Albrecht had not permitted Mr. Albrecht to see their children in over 10 months, and has even refused to provide any phone number their children customarily use so Mr. Albrecht could talk to them.

2. On November 1, 2019, Mr Albrecht filed Petitioner's *Ex Parte* Motion for Contempt and to Compel, seeking to visit with their children while they were in the New England area. The court denied *ex parte* relief, ordering that "the case shall be scheduled in the ordinary course."

3. On November 3, 2019, Mr. Albrecht attended Collinsville Bible Church in Dracut, Massachusetts on the chance that his children might be there so he could see them. Dr. Albrecht caused the police to be called on Mr. Albrecht, yet again, to prevent Mr. Albrecht from exercising his rights under the court's parenting plan.

4. On November 12, 2019, Dr. Albrecht filed a DV petition, yet again, to punish Mr. Albrecht, yet again, and to "trample him to the ground" for daring to try to see their children. The court has scheduled this DV petition for December 9, 2019 at 8:30 am, resulting in the DV being heard before the *ex parte*.

5. In fairness and judicial economy, as well as in consideration of the parties' expenses and convenience, these two pleadings should be heard together. They contain similar and related issues of law and fact, similar testimony will be evinced at their hearings, and it is anticipated the same witnesses will testify.

6. A similar motion is being filed in both cases.

10

WHEREFORE, the Defendant prays this Honorable Court for relief as follows:

A. To consolidate for hearing Petitioner's *Ex Parte* Motion for Contempt and to Compel, No 659-2016-DM-00288, and Domestic Violence Petition, No 659-2019-DV-00341, on December 9, 2019 at 8:30 am.

B. To set forth the reasons for its decision in a written order; and,

C. For such other relief as this Court deems just and reasonable.

Respectfully submitted,

November 19, 2019

Dana Albrecht
by his attorney

Joseph Caulfield, Esq.
NH Bar #262
Caulfield Law & Mediation Office
126 Perham Corner Rd.
Lyndeborough, NH  03082
603-505-8749

State of New Hampshire
Hillsborough, SS

Now comes Dana Albrecht and swears to the foregoing is true to the best of his knowledge and belief.

November 19, 2019

11/06/2024

Certification

I sent this date a copy of this Motion to Atty. Fontaine.

Joseph Caulfield, Esq.

Motion denial. Parties cautioned that 12-9-19 hearing is Scheduled for 30 minutes & double-booked with another DV case, and should plan accordingly.

MARK S. DERBY

DEC - 4 2019

56

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH  03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

*Dana Albrecht*
**FILE COPY**

Case Name:     **In the Matter of Dana Albrecht and Katherine Albrecht**
Case Number:   **659-2016-DM-00288**

Please be advised that on  the Court made the following Order relative to:

> **Motion for Ex Parte Relief; DENIED.**
> **"No ex parte or emergency orders are issued no showing of**
> **imminent danger of irreparable harm.The case shall be**
> **scheduled in the ordinary course."**

**Dalpra, MM./ Leary, J.**

November 01, 2019

Sherry L. Bisson
Clerk of Court

(1032)

C:  Michael J. Fontaine, ESQ; Joseph Caulfield, ESQ

NHJB-2208-DF (07/01/2011)

57

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

**Court Name:** 9th Circuit-Family Division Nashua

**Case Name:** In the Matter of Dana Albrecht and Katherine Albrecht

**Case Number:** 659-2019-DM-00288

## ORDER ON *EX PARTE* (EMERGENCY) MOTION

A motion for *ex parte* or emergency orders has been submitted. The Court has reviewed the motion.

☐ 1. **The Court issues the following orders,** which will remain in effect until further hearing:

    ☐ A. The ☐ Petitioner ☐ Respondent **(check one)** shall have temporary sole decision-making and residential responsibility for the minor child(ren).

    ☐ B. The ☐ Petitioner ☐ Respondent **(check one)** shall have temporary sole residential responsibility for the minor child(ren).

    ☐ C. The ☐ Petitioner ☐ Respondent **(check one)** shall not interfere in any way with the personal liberty or property of the other nor the household property used in the care of the minor child(ren), nor do any act to interfere with the other parent's decision-making and residential responsibilities for the minor child(ren).

    ☐ D. The ☐ Petitioner ☐ Respondent **(check one)** is awarded temporary exclusive use of the parties' residence at _____ (residence address) and household furniture and furnishings therein.

    ☐ E. The ☐ Petitioner ☐ Respondent **(check one)** shall not enter the residence or property of the other.

    ☐ F. Each party is restrained and enjoined from transferring, encumbering, hypothecating, concealing or otherwise disposing of any property except in the ordinary course of business or for the necessities of life.

    ☐ G. Other:

    _____

    _____

☑ 2. **No *ex parte* or emergency orders are issued** - no showing of imminent danger of irreparable harm.

    ☐ The case shall be scheduled for a prompt hearing with Petitioner and Respondent present.

    ☑ The case shall be scheduled in the ordinary course.

☐ 3. **Request for ex parte orders is denied.** No hearing is required.

**A hearing on the *ex parte* motion, and any orders issued, is scheduled for:**

_____ (date of hearing) at _____ (time of hearing)

**Recommended:**

_____ 11/1/19 _____

Date

Signature of Marital Master: *Bruce F. Dal...*

Printed Name of Marital Master: *DALPRA*

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_____ 11/1/19 _____

Date

Signature of Judge: *[signature]*

Printed Name of Judge

**STATE OF NEW HAMPSHIRE**

9th Circuit-Family Division-Nashua

Dana Albrecht and Katherine Albrecht

659-2016-DM-00288

RECEIVED
NH CIRCUIT COURT
9TH CIRCUIT NASHUA

2019 NOV -1 AM 9: 00

### Petitioner's *Ex Parte* Motion for Contempt and to Compel

Now comes Dana Albrecht, Petitioner, by and through his attorney, and states:

1. RSA 461-A:2 requires that "Because children do best when both parents have a stable and meaningful involvement in their lives, it is the policy of this state, unless it is clearly shown that in a particular case it is detrimental to a child, to support frequent and continuing contact between each child and both parents."

2. RSA 461-A:4-a requires that "Any motion for contempt or enforcement of an order regarding an approved parenting plan under this chapter, if filed by a parent, shall be reviewed by the court within 30 days."

3. Mr. Albrecht has not seen the parties' daughters S■■■ (now age 15) and G■■■ (now age 12) since December 2018. The children reside with their mother Dr. Albrecht in Sierra Madre, California.

4. Pursuant to this court's parenting plan, Mr. Albrecht last arranged to have summer parenting time with their daughters S■■■ and G■■■ from July 31, 2019 through August 14, 2019 in California and provided more than 10 days' written notice on July 18, 2019.

5. However, on July 31, 2019, and while in southern California to see their daughters, Mr. Albrecht learned for the first time from the Sierra Madre Police that Dr. Albrecht had instead sent S■■■ and G■■■ to "The Wilds of New England" camp in Deering, New Hampshire in order to prevent Mr. Albrecht from seeing their children.

6. Most recently, and without consulting with or even notifying Mr. Albrecht, Dr. Albrecht made arrangements with each of their daughters' schools to remove both S■■■ and G■■■ from school for an unscheduled "vacation" from October 28, 2019 through November 4, 2019 on the east coast.

7. Consequently, Dr. Albrecht is in contempt of this court's parenting plan requiring joint decision making authority.

8. Mr. Albrecht believes that on or before Tuesday, October 29, 2019, Dr. Albrecht again flew across the country from California to the east coast with their minor children.

59

9. Dr. Albrecht made every effort to keep this present east coast "vacation" a secret from Mr. Albrecht. She has likely caused both of their adult sons' emotional distress by threatening retribution or punishment for discussing this "vacation" with Mr. Albrecht

10. . Mr. Albrecht's counsel has sought the present location of the children from Dr. Albrecht's counsel, receiving only:

   *I have passed your email on to Katherine and await her response. Mike would like to know what information Dana has that would lead him to believe that Katherine and the girls are on the East coast.*

11. This is now the <u>third</u> time Dr. Albrecht has transported their children across the country from California to the east coast and attempted to keep the trip secret from Mr. Albrecht. The first was in July 2018; the second was in July 2019, already described in paragraphs 4-5.

12. The court's parenting plan requires that:

   **Each parent shall promote a healthy and beneficial relationship between the children and the other parent.**

13. Dr. Albrecht's most recent actions have caused further damage to Mr. Albrecht's relationship with their daughters. Consequently, Dr. Albrecht is also in contempt of this provision of the court's parenting plan.

14. Further, Dr. Albrecht has refused to provide the telephone number(s) that their minor daughters S█ and G█ now customarily use to make and receive calls; consequently, Mr. Albrecht is unable to place telephone calls to his daughters.

15. The most common cause of parental alienation is one parent wishing to exclude the other parent from the life of their child, though family members or friends, as well as professionals involved with the family, including psychologists, lawyers and judges.

16. Parental alienation often leads to the long-term, or even lifelong, estrangement of a child from one parent and other family members, and, as a significant adverse childhood experience and form of childhood trauma, results in significantly increased lifetime risks of both mental and physical illness.

17. Nevertheless, Mr. Albrecht has made every effort to encourage Dr. Albrecht to have their daughters see a licensed therapist for counseling; however, Dr. Albrecht has refused to cooperate with Mr. Albrecht. For over three and half years, none of the parties' children have ever received regular counseling sessions.

18. Consequently, Mr. Albrecht is also requesting this court now compel Dr. Albrecht's cooperation in commencing immediately individual therapy for these children and commencing immediately reunification therapy for these children and Mr. Albrecht to repair the parent-child relationships which has been disrupted during high conflict divorce.

19. Since it is anticipated that Dr. Albrecht will continue her disingenuous "defense" that she encourages the children to obey the court orders but that she just can't control these children, that the court also order these children to attend this therapy.

20. The court's next explicitly ordered parenting time for Mr. Albrecht is from December 27, 2019 through December 31, 2019, which is nearly two months away and is only five days long.

21. Because Dr. Albrecht has caused Mr. Albrecht to be unable to see their daughters for the past ten months, Mr. Albrecht is requesting this court now compel Dr. Albrecht to provide immediate parenting time for Mr. Albrecht to see their children while they are on the east coast and before they return to California for school on Tuesday, November 5, 2019.

22. Otherwise, there would be an immediate risk of further childhood trauma and significantly increased lifetime risks of both mental and physical illness for their minor children resulting from further parental alienation caused by Dr. Albrecht's most recent actions.


WHEREFORE, the Petitioner prays this Honorable Court for relief as follows:

A) Grant Petitioner's *Ex Parte* Motion for Contempt and to Compel; and,

B) Find Respondent Katherine Albrecht in contempt of the court's parenting plan requiring joint decision making authority; and,

C) Find Respondent Katherine Albrecht in contempt of the court's parenting plan requiring each parent to promote a healthy and beneficial relationship between each child and the other parent; and,

D) Compel Dr. Albrecht's cooperation in commencing immediately individual therapy for these children with duly licensed and qualified therapists and commencing immediately reunification therapy for these children and Mr. Albrecht with a duly licensed and qualified therapist to repair the parent-child relationships which has been disrupted during high conflict divorce.

E) Compel the parties' minor children S███ and Gr███ to attend regular counseling sessions for individual therapy and reunification therapy; and,

F) Compel Respondent Katherine Albrecht to disclose the precise location of their minor children; and,

G) Compel Respondent Katherine Albrecht to disclose all telephone number(s) their minor children customarily use to make and receive calls; and,

H) Order that Petitioner Dana Albrecht have parenting time with their minor children on the east coast prior to the children's return to California on November 5, 2019; and,

I) Award Petitioner his reasonable attorney's fees and court costs occasioned by Respondent's contempt; and,

J) For such other relief as this court deems just and reasonable.

Respectfully submitted,

November 1, 2019

Dana Albrecht
by his attorney

Joseph Caulfield, Esq.
NH Bar #2
Caulfield Law & Mediation Office
126 Perham Corner Rd.
Lyndeborough, NH  03082
603-505-8749

State of New Hampshire
Hillsborough, SS

Now comes Dana Albrecht and swears that the foregoing is true to the best of his knowledge and belief.

November 1, 2019

Joseph Caulfield
NH Justice of the Peace
Comm. expires Dec. 3, 2019

Certification

I emailed this date a copy of this Motion to Atty. Fontaine. Because of the nature of this emergency, the history of this case, and my inability even to learn the present location of the children, no concurrence was sought.

Joseph Caulfield, Esq.



**SIERRA MADRE**
**POLICE DEPARTMENT**
242 WEST SIERRA MADRE BOULEVARD
SIERRA MADRE, CA 910242395
1-626-355-1414

| CFS EVENT DETAIL |
|---|
| CAD EVENT NUMBER |
| 1910310022 |
| CALL TYPE |
| WELFARE |

## CALLS FOR SERVICE INFORMATION

| AGENCY | CAD EVENT NUMBER | CASE NUMBER | AGENCY NUMBER | DATE AND TIME | CALL TYPE | CALL TYPE EXPLAINED | | FINAL CALL TYPE |
|---|---|---|---|---|---|---|---|---|
| SMPD | 1910310022 | | | 10/31/2019 10:21 | WELFARE | WELFARE CHECK | | |

| LOCATION | | APT/SUITE/BOX | CITY | | RESPONSE ZONE | RESPONSE AREA |
|---|---|---|---|---|---|---|
| 730 W ALEGRIA AVE | | | SM | | | |

| CALL SOURCE | LOCATION COMMENT |
|---|---|
| P | |

**COMMENTS**

RP IS CONCERNED FOR THE WELFARE OF HIS CHILDREN ███████ AND ████████ WHO HAVE NOT BEEN TO SCHOOL FOR 3 DAYS. RP IS UNABLE TO CONTACT HIS CHILDREN OR THE ATTORNEY FOR THE MOTHER.

█████████ ATTENDS GOODEN SCHOOL IN THE CITY. ATTEMPTED TO CONTACT HOWEVER NO ANSWER AT THE SCHOOL.

RP IS ADVISING HE HAS CONTACTED ██████████ IN PASADENA FOR DAUGHTER ████ AND THEY ADVISED SHE HAS NOT BEEN TO SCHOOL AND HAD AN EXCUSED ABSENCE BY THE MOTHER

MOTHER'S NAME IS ███████████████████ , █████
CELL PHONE# ███████████████

RP LAST SPOKE TO MOM THROUGH ATTRONEYS LAST FRIDAY.
----------------[CAD1/10920  10/31/19 10:33:44]
10-21 PROVIDED GOES TO VOICEMAIL
----------------[CAD1/10920  10/31/19 10:53:30]
MADE CONTACT WITH GOODEN SCHOOL AND THEY ADVISED THE CHILD HAS NOT BEEN IN SCHOOL HOWEVER THERE ARE NO SUSPICIOUS CIRCUMTANCES TO FURTHER INVESTIGATE
----------------[CAD1/10920  10/31/19 10:55:35]
<mark>THE MOTHER OF THE CHILDREN CALLED AND ADVISED SHE IS ON VACATION WITH HER CHILDREN AND IS NOT HOME. SHE ALSO ADVISED HER ATTORNEYS ADVISED HER EX HUSBAND THAT THEY ARE ON VACATION AND HE IS ONLY CALLING TO DISTURB THEM. SHE ADVISED SHE HAS FULL CUSTODY OF THE CHILDREN.</mark>

| REPORTING PARTY | | AREA CODE | PHONE NUMBER |
|---|---|---|---|
| DANA ALBRECHT | | | |

| REPORTING ADDRESS |
|---|
| NEW HAMPSHIRE |

| PRIMARY UNIT | DISPOSITION | DISPOSITION COMMENTS |
|---|---|---|
| P2 | | |

| E-911 | DISPATCH | ARRIVED | CLEARED | CLOSED |
|---|---|---|---|---|
| | 10:20:35 | 10:28:29 | 10:52:48 | 10:52:48 |

## UNITS STATUS RECORDSxxx

| TIME | UNIT | S | COMMENT | LOCATION | DISPO |
|---|---|---|---|---|---|
| 10/31/2019 10:20:35 AM | P2 | | | ███████ | |
| 10/31/2019 10:23:44 AM | L1 | D | | ███████ | |
| 10/31/2019 10:28:29 AM | P2 | AR | | ███████ | |
| 10/31/2019 10:28:29 AM | L1 | AR | | ███████ | |
| 10/31/2019 10:41:13 AM | P2 | C4 | | ███████ | |
| 10/31/2019 10:48:00 AM | L1 | C | CLEARED BY CAD1 | | ASST |
| 10/31/2019 10:52:48 AM | P2 | C | CLEARED BY CAD1 | | UNF |

## LINKED NAMES

| UNIT | REASON | NAME ( OR DL) | DOB |
|---|---|---|---|
| | RP | ALBRECHT, DANA | |

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2019-0436, <u>In the Matter of Dana Albrecht and Katherine Albrecht</u>, the court on October 25, 2019, issued the following order:**

Supreme Court Rule 22(2) provides that a party filing a motion for rehearing or reconsideration shall state with particularity the points of law or fact that he claims the court has overlooked or misapprehended.

We have reviewed the claims made in the petitioner's motion for reconsideration and conclude that no points of law or fact were overlooked or misapprehended in the decision to decline the petitioner's appeal. Accordingly, upon reconsideration, we affirm the September 16, 2019 decision and deny the relief requested in the motion.

Respondent's request for attorney's fees is denied.

<u>Relief requested in motion for reconsideration denied</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2016-DM-00288
Honorable Mark S. Derby
Honorable Julie A. Introcaso
Marital Master Bruce F. DalPra
Mr. Dana Albrecht
Michael J. Fontaine, Esquire
Israel F. Piedra, Esquire
Kathleen A. Sternenberg, Esquire
Allison R. Cook, Supreme Court
File

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2019-0436, <u>In the Matter of Dana Albrecht and Katherine Albrecht</u>, the court on September 16, 2019, issued the following order:**

Notice of appeal is declined.  <u>See</u> Rule 7(1)(B).

Under Supreme Court Rule 7(1)(B), the supreme court may decline to accept a notice of discretionary appeal from the superior or circuit court.  No appeal, however, is declined except by unanimous vote of the court with at least three justices participating.

This matter was considered by each justice whose name appears below.  If any justice who considered this matter believed the appeal should have been accepted, this case would have been accepted and scheduled for briefing.

Katherine Albrecht's motion for summary affirmance is therefore moot.  Her request for attorney's fees is denied.

<u>Declined</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2016-DM-00288
Honorable Mark S. Derby
Honorable Julie A. Introcaso
Marital Master Bruce F. DalPra
Mr. Dana Albrecht
Michael J. Fontaine, Esquire
Israel F. Piedra, Esquire
Kathleen A. Sternenberg, Esquire
File