# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0192, <u>Katherine Albrecht v. Dana Albrecht</u>, the court on December 16, 2021, issued the following order:**

Having considered the briefs, memorandum of law, and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The defendant appeals orders of the Circuit Court (<u>DalPra</u>, M., approved by <u>Leonard</u> and <u>Chabot</u>, JJ.), following a hearing, granting an extension of a domestic violence final order of protection to the plaintiff, <u>see</u> RSA 173-B:5, VI (Supp. 2021), and denying his motion for reconsideration.  On appeal, the defendant raises several challenges to the trial court's orders.  We vacate and remand.

One of the arguments advanced by the defendant is that he was denied due process of law under both Part I, Article 35 of the New Hampshire Constitution, and the Fourteenth Amendment to the United States Constitution, when the judicial officer who presided over this matter neither disqualified himself nor disclosed to the parties the basis for his potential disqualification.  <u>See</u> <u>In the Matter of Tapply & Zukatis</u>, 162 N.H. 285 (2011); <u>Blaisdell v. City of Rochester</u>, 135 N.H. 589 (1992); <u>Sup. Ct. R.</u> 38.

In support of his argument, the defendant provided this court with a copy of a letter from the judicial officer to the New Hampshire Judicial Conduct Committee (JCC), in which the judicial officer reported that he may have violated the New Hampshire Code of Judicial Conduct during a telephonic hearing held in a separate family division proceeding involving the parties.  In his letter, the judicial officer states, in part, that "[d]uring [defendant's] testimony he began speaking of issues that were not relevant to the issues to be decided-something he often did.  Under my breath I uttered a comment that contained a vulgar expression: 'who the f*** cares.'"  Thereafter, apparently without disclosing to the parties his comment, nor his decision to self-report it to the JCC, the judicial officer presided over the hearing in this matter, and subsequently recommended the dispositions set forth in the orders now on appeal.

The defendant states that he did not hear the judicial officer's comment during the family division hearing, and that he only learned of it after receiving a copy of the judicial officer's self-report letter pursuant to a request the defendant filed with the JCC.  Accordingly, the defendant argues that because he "was ignorant of [the judicial officer's] self-report at the time [the judicial officer]

conducted the most recent [domestic violence] hearing, Defendant was not given any opportunity to file a motion for recusal."

In light of the defendant's arguments, we exercised our supervisory jurisdiction, see RSA 490:4 (2010), and remanded for the limited purpose of allowing the trial court to determine whether the judicial officer was disqualified, under the circumstances of this case, from presiding over the plaintiff's request to extend the protective order.  Subsequently, the judicial officer issued an order on remand (DalPra, M., approved by Curran, J.), finding that there was no basis for his disqualification.  The judicial officer reasoned, in part, that he is not biased, and explained that the remark was made in response to testimony that "was not relevant to the issues to be decided in the family case," that it "was not intended to be heard," and that he only reported it to the JCC "[o]ut of an abundance of caution."  According to the judicial officer, the JCC has since dismissed the matter.

In light of the judicial officer's decision, we deemed the defendant's notice of appeal and brief to be challenging the determination that the judicial officer was not disqualified.  Because the transcript of the family division hearing at which the judicial officer made his remark was not part of the record on appeal, on November 30, 2021, we ordered the additional transcript.  Because the transcript did not contain the relevant remark, on December 10, 2021, we ordered the preparation of an amended transcript, which we received on December 14, 2021.  Accordingly, we now review the merits of the disqualification decision with this additional information.

"It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit."  N.H. CONST. pt. I, art. 35.  The New Hampshire Code of Judicial Conduct requires a judge to avoid even the appearance of impropriety, to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, and to disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to instances where the judge has a personal bias or prejudice concerning a party or a party's lawyer.  Tapply, 162 N.H. at 296, 302; Blaisdell, 135 N.H. at 593; Sup. Ct. R. 38, Canons 1, 2.

"The party claiming bias must show the existence of bias, the likelihood of bias, or an appearance of such bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of a party." Tapply, 162 N.H. at 297 (quotation omitted).  "The existence of an appearance of impropriety is determined by an objective standard, i.e., would a reasonable person, not the judge himself, question the impartiality of the court."  Id. at 302 (quotation omitted).  "The objective standard is required in the interests of ensuring justice in the individual case and maintaining public confidence in the integrity of the judicial process which depends on a belief in the impersonality of judicial decision making."  Id. (quotation omitted).  "The test for an appearance of

2

partiality is whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." Id. (quotation omitted).

"Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id. at 297 (quotation omitted). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. (quotation omitted). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id. (quotation omitted). However, "it is the judge's responsibility to disclose, sua sponte, all information of any potential conflict between himself and the parties or their attorneys when his impartiality might reasonably be questioned," and his "failure to disclose to the parties the basis for his or her disqualification under [the Code of Judicial Conduct] will result in a disqualification of the judge." Blaisdell, 135 N.H. at 593-94.

Here, the transcript reflects that the judicial officer was presiding over a hearing on cross-motions to modify the parties' parenting plan. The judicial officer made his remark in response to testimony of the defendant in which the defendant described his connection with the children, and the things they used to do together before the divorce that he hasn't been able to do with them since. Specifically, the defendant testified that, before the divorce, he used to make all of the family meals for the holidays, and noted that he heard from one of the children that "last year, they did get to go out and eat at a super nice place, so I think that's -- I'm glad they got to go out to eat at a super nice place. At the same time, that's not the traditional homecooked meal that I always make that they were used to. It's just sad for me. Again, just a basic, they probably miss the traditional one too." It was during this testimony that the judicial officer whispered: "Who gives a f***?"

Although "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," Tapply, 162 N.H. at 297 (quotation omitted), in this case, the judicial officer's remark is unlike those at issue in Tapply. Here, the remark — which was not intended to be heard — was not made in order to admonish the defendant for unreasonable behavior. See id. at 299-300. Nor can we construe it as the judicial officer "merely fulfilling his duty as the finder of fact," id. at 300, and expressing skepticism about the defendant's claims or his credibility. See id. Rather, according to the judicial officer's self-report letter to the JCC, his remark was "made out of complete frustration," because the defendant "began speaking of issues that were not relevant to the issues to be decided-something he often did." Based upon our review of the transcript, we cannot conclude that the defendant's testimony was irrelevant, nor

3

so far afield as to justify such a crude remark.  Although a judicial officer is not precluded from showing frustration, see id. at 299-300, here, the judicial officer's remark would cause an objective, reasonable person to question whether the judicial officer had reached the point of frustration where he, quite literally, no longer cared about the defendant's testimony, and could no longer keep an open mind and decide the case impartially.  See id. at 302 ("The existence of an appearance of impropriety is determined by an objective standard, i.e., would a reasonable person, not the judge himself, question the impartiality of the court." (quotation omitted)).

Our decision is bolstered by another remark the judicial officer made later in the same family division hearing.  The transcript reflects that, during the plaintiff's testimony about the maturity level of the children, counsel asked her whether the children "make wise, mature decisions in their daily lives relative to, for example, schoolwork," and whether they "help[] around the house."  During this questioning, the judicial officer whispered: "Of course not, they're a bunch of morons."  This additional remark further supports our determination that an objective, reasonable person would question whether the judicial officer could keep an open mind and decide the case impartially.

Under these circumstances, we conclude that it was error for the judicial officer to have presided over the hearing in this case.  Accordingly, we vacate the trial court's orders, and remand for a new hearing on the extension of the protective order before a different judicial officer of the circuit court.  We express no opinion as to the merits of the underlying motion to extend the protective order.  However, in light of the unique circumstances of this case, the protective order shall remain in place pending the outcome of the new hearing.

Given our decision, we need not address the parties' remaining arguments.  To the extent that either party requests an award of attorneys' fees with respect to this appeal, the request is denied.  See Sup. Ct. R. 23.

Vacated and remanded.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**

5

Distribution:
9th N.H. Circuit Court - Nashua Family Division, 659-2019-DV-00341
Honorable Kimberly A. Chabot
Honorable John A. Curran
Honorable Elizabeth M. Leonard
Marital Master Bruce F. DalPra
Honorable David D. King
Michael J. Fontaine, Esquire
Israel F. Piedra, Esquire
Mr. Dana Albrecht
Carolyn A. Koegler, Supreme Court
Lin Willis, Supreme Court
File