1

1          STATE OF NEW HAMPSHIRE

2             SUPREME COURT

3

UNION LEADER CORPORATION,      ) Supreme Court Case No.
4                              ) 2000-0621
              Petitioner,      )
5                              ) Concord, New Hampshire
        vs.                    ) January 17, 2002
6                              )
STATE OF NEW HAMPSHIRE,        )
7                              )
              Respondent.      )
8  _____ )

9

                    ORAL ARGUMENTS
10   BEFORE THE HONORABLE CHIEF JUSTICE JOHN T. BRODERICK, JR.
           HONORABLE CHIEF JUSTICE LINDA S. DALIANIS
11      HONORABLE ASSOCIATED JUSTICE JAMES E. DUGGAN
              JUSTICES OF THE SUPREME COURT
12
APPEARANCES:
13
For the Petitioner:          Gregory V. Sullivan, Esq.
14                           MALLOY & SULLIVAN
                             78 West Merrimack Street
15                           Manchester, NH 03101

16  For the Respondent:      Daniel Mullen, Esq.
                             ATTORNEY GENERAL'S OFFICE
17                           33 Capitol Street
                             Concord, NH 03301
18
Audio Operator:              Electronically Recorded
19                           **Not Monitored**

20  TRANSCRIPTION COMPANY:   eScribers, LLC
                             7227 N. 16th Street, Suite 207
21                           Phoenix, AZ 85020
                             (800) 257-0885
22                           www.escribers.net

23  Proceedings recorded by electronic sound recording; transcript
    produced by court-approved transcription service.
24

25



1          (Proceedings commenced)

2          JUSTICE BRODERICK:   (Audio begins mid-sentence) --

3    621, this is Union Leader Corporation.

4          Now, Chief Justice Ross' decision, it says that this

5    matter will participate in the (indiscernible) of the case.

6          MR. SULLIVAN:   Your Honor and to the Court,

7    (indiscernible) for the Union Leader Corporation.   I'm

8    grateful for the opportunity to present our likings on this to

9    the Court.   (Indiscernible) to briefly, the State of New

10   Hampshire, the issue seemed to be simplified to the question

11   of whether or not under the federal and state constitutions,

12   the meetings of the superior court justices are subject to

13   public access.   And if so, whether or not the reasonable

14   limitations placed on all other public records could be placed

15   on the records generated from the meetings of the superior

16   court justices.   And I submit to the Court that the simple

17   answer to that question is yes.

18         This is not an absolute right but rather a very

19   important constitutional right that is subject to review on a

20   case-by-case basis.   At minimum, the superior court, having

21   admitted that there were documents that were responsive to the

22   request to the Union Leader Corporation relative to a meeting

23   of the chief judges in 1987, should be required to submit

24   these records to this Court for an in-camera inspection.

25         The State has alleged that the records need not be



1   disclosed because they relate to pending personnel matters.

2   And I find that inconsistent with logic, that in calendar year

3   2001 they're suggesting the records generated in 1987 can be

4   withheld because they contained pending personnel matters.

5            If indeed there are materials within the records

6   that contain information that, if disclosed, would constitute

7   an unwarranted invasion of privacy, the Court is well aware of

8   the remedy of the redaction that's been utilized to make those

9   records appropriate for public disclosure.  All of the other

10  considerations that this Court has taken into account, any

11  public access in right-to-know cases can be taken into account

12  in these cases if there are trade secrets.  Of course, that

13  would not be the case here or matters of public safety or

14  matters of privacy, those matters can be culled and redacted,

15  and the remaining records disclosed to the public.

16           I can envision no set of circumstances where at

17  least Part 1, Article 8 of the New Hampshire Constitution

18  would not give the public the right to have the records

19  requested.  The facts of this case contain only two letters:

20  one from the Union Leader Corporation saying will you provide

21  us some copies of the agendas and the minutes of the meetings

22  of the superior court in 1987, and a letter coming back on the

23  same day from the legal counsel of the administrative office

24  of courts saying, the minutes -- strike that.  "The meetings

25  to which you refer are not public proceeding but are

1   governmental administrative meetings held for the purpose of

2   discussing the day-to-day business of the fundament of the

3   superior court."

4           JUSTICE DUGGAN:  Mr. Sullivan, are you aware of any

5   other appellate decisions that have dealt with access to

6   conferences among judges that did not relate to the

7   adjudication of cases, administrative conferences like this?

8   Is there any other appellate court that's ever dealt with

9   this?

10          MR. SULLIVAN:  I believe in my brief, Your Honor, I

11  did cite a couple of cases that are at least analogous.  One

12  would be the Schweikert case from Ohio where the documents at

13  issue were called by the State the work product of the court

14  administrator and those documents were reported to be

15  disclosed.

16          JUSTICE DUGGAN:  Were they produced by judges, or

17  were they produced by something like the administrative

18  officer of the court?

19          MR. SULLIVAN:  Probably, and I'm not positive, but I

20  would suggest that the court did write they were the product

21  of the court administrator.  However, I would suggest that it

22  would be worth to (indiscernible) regularly with the justices

23  of that court.

24          JUSTICE BRODERICK:  Mr. Sullivan, in your petition

25  filed with the court, you cite only to Part 1, Article 8 of



1   the state constitution.  And your conclusion says, "The public

2   right of access to records of governmental proceeding".  So I

3   assume that's -- that's what we're looking at here, Part 1,

4   Article 8 of the state constitution.

5           MR. SULLIVAN:  I believe that the inquiries go no

6   further than that for the court to reach the appropriate

7   conclusion.

8           JUSTICE BRODERICK:  Now, let me ask you this.  What

9   about a meeting of judges in a nonadjudicatory sense, and not

10  leading to adjudicate cases, makes those meetings governmental

11  proceedings under the constitution?  Could you help me with

12  that?

13          MR. SULLIVAN:  I'm sorry.  You were asking me a

14  question?

15          JUSTICE BRODERICK:  We have judges who are meeting

16  for nonadjudicative purposes, you would agree with that.

17  They're not there to decide a case.

18          MR. SULLIVAN:  They're not there to decide a case.

19          JUSTICE BRODERICK:  All right.

20          MR. SULLIVAN:  I would agree with that.

21          JUSTICE BRODERICK:  Now, I'm curious what it is

22  about that meeting that would make it under your argument here

23  a governmental proceeding.

24          MR. SULLIVAN:  Well, I'm obviously arguing under the

25  handicap that I've never attended one of these meetings, but I



1  would suggest that the court and members of the court know

2  full well, I believe, exactly what those are in those

3  meetings.  But if the judges are talking about their job of

4  public business, they are then governmental proceedings.

5          JUSTICE DUGGAN:  How about in this court, the judges

6  are talking about pending legislation and what position

7  they're going to take on it or their views on it; is that an

8  open meeting?

9          MR. SULLIVAN:  Is that an open meeting?

10         JUSTICE DUGGAN:  Right.  Do they have to invite the

11  public to attend, and do they have to keep minutes and tell

12  people what happened at that meeting?

13         MR. SULLIVAN:  Well, you're asking me now whether or

14  not this case should be decided, I think, under the

15  right-to-know law.

16         JUSTICE DUGGAN:  No, I meant under the constitution.

17  Because we're restricted to Article 8 here, aren't we?  Part

18  1, Article 8?

19         MR. SULLIVAN:  No.  Well, you're asking me to take

20  these facts and apply those to the definitions under 91-A.  If

21  we leave it under the department of Article 8, which I think

22  is the appropriate focus --

23         JUSTICE DUGGAN:  Yup.

24         MR. SULLIVAN:  -- then to me, there's no question if

25  minutes -- if agendas are created and if minutes are created,



1  then, yes, there's no question about it, but that those

2  records should be accessible to the public.

3          JUSTICE BRODERICK:  Well, Part 1, Article 8 talks

4  about access to the governmental proceedings and records,

5  right?

6          MR. SULLIVAN:  Yes.

7          JUSTICE BRODERICK:  Now, I want to ask you, if the

8  governor of the state meets as she may from time to time with

9  her senior staff in her office to talk about the affairs of

10  the state, is that a governmental proceeding so that all

11  agendas and all minutes that the governor's staff might create

12  are open to the public review?

13          MR. SULLIVAN:  Yes.

14          JUSTICE BRODERICK:  And if it's a governmental

15  proceeding, I assume the public should be able to sit in on

16  those meetings in the governor's office or sit in at the

17  superior court or sit in at this court because they are

18  governmental proceedings which by the very nature should be

19  open.

20          MR. SULLIVAN:  I agree with you.

21          JUSTICE BRODERICK:  So the governor should hold her

22  staff meeting in a large room so that the public can attend?

23          MR. SULLIVAN:  Well, I think the law provides for if

24  indeed the effective argument and judiciary determines that

25  the proper functioning and discussion of those affairs should

1   be done in a private setting, then they can go into what I

2   will term to your question exactly says, and that --

3            JUSTICE BRODERICK:  So would the governor's meetings

4   with her senior staff, although a governmental proceeding, be

5   entitled to be held in an executive session?

6            MR. SULLIVAN:  Yes.

7            JUSTICE BRODERICK:  Why?

8            MR. SULLIVAN:  If -- if indeed --

9            JUSTICE BRODERICK:  It's a governmental proceeding.

10           MR. SULLIVAN:  Right.  But if they are formulating

11   flawlessly, we feel that the open and frank exchange of ideas

12   between the executives and the staff would be fostered by

13   excluding the public from those discussions.  That's what

14   meeting executive sessions are designed to --

15           JUSTICE BRODERICK:  Well, if you --

16           MR. SULLIVAN:  -- accomplish.

17           JUSTICE BRODERICK:  If you use that test, the

18   legislature will have to lock its doors because that's what

19   they do over there.  They discuss policy and public

20   proceedings and governmental proceedings.  They're open.

21           MR. SULLIVAN:  If you --

22           JUSTICE BRODERICK:  If you take the test you just

23   applied, they'll put a padlock on the door.

24           MR. SULLIVAN:  I'm -- I'm in favor of, obviously,

25   open government.  What I'm suggesting is if the governor or if

1   the members of a particular judicial body determine that

2   because of the nature of a particular discussion it needs to

3   be done in private, they're discussing, for example, a

4   particular transaction or the hiring and firing of a

5   particular individual, matters that require frank and open

6   discussion that would impinge on some other employee,

7   governmental interest such as the privacy --

8            JUSTICE BRODERICK:  What if three judges get

9   together at lunch to talk about the court system and the

10  policies the court systems have?  Is that a governmental

11  proceeding?

12           MR. SULLIVAN:  No, I think that you're entitled to

13  have lunch.

14           JUSTICE BRODERICK:  No, I didn't ask you that.

15           MR. SULLIVAN:  When you --

16           JUSTICE BRODERICK:  Let's -- for the sake of my

17  question, we won't have lunch.  We just decide to get together

18  at 10:00 one morning, the three judges on this court before

19  you, to talk about policy issues, legislative issues, a number

20  of issues.  And Judge Dalianis decides to take notes.  Is that

21  a governmental proceeding?  And if not, why not?

22           MR. SULLIVAN:  I say it is.

23           JUSTICE BRODERICK:  So any meetings of any members

24  of any branch of government, however large or small, however

25  official or unofficial, are governmental proceedings by the



1  mere fact that those people serve in government?

2        MR. SULLIVAN:  The cases talk about casual meetings

3  not convened, and they also -- and in 91-A in my analogy talks

4  about quorums, and I think that may be a relevant factor for

5  when courts are deciding this case on a case-by-case basis.

6  Is it a casual informal meeting, or was it like the meeting

7  we're talking about here, convened formally and constituting

8  not merely a quorum, but the vast majority of the judges of a

9  particular body?

10        JUSTICE BRODERICK:  If the three judges in front of

11  you get together every Tuesday over coffee to talk about the

12  court, the policies of the court, the reaction and

13  inter-relationship among and between the branches of

14  government, should we notice that meeting so that people could

15  come if they'd like?  If it's a governmental proceeding, it

16  should be open, shouldn't it?

17        MR. SULLIVAN:  If it's a governmental proceeding, it

18  should be open.

19        JUSTICE BRODERICK:  So how would we notice that?  Or

20  should we not meet, I guess?  How would we --

21        MR. SULLIVAN:  You should meet.  I don't think

22  notice is required.  You're trying to pigeonhole the facts of

23  that meeting to the right-to-know law.

24        JUSTICE BRODERICK:  No, I'm not.  I'm trying to deal

25  with Part 1, Article 8 of the constitution, how this will

1   work.  So that if, for instance, you were to call the court

2   every day saying when are the judges getting together over

3   coffee because I'd like to come up and sit in, you would say

4   that we would have to say, sure, this is the time we're

5   meeting; happy to have you sit in.

6         MR. SULLIVAN:  I'm not saying that.  I'm saying that

7   if you have that meeting and you have an agenda and you have

8   minutes and I request the agenda and the minutes, those should

9   be disclosed.

10        JUSTICE BRODERICK:  So you're -- I'm sorry.

11        JUSTICE DUGGAN:  Is it your view that the

12   restrictions or rather the exclusions in the right-to-know law

13   apply to Part 1, Article 8?

14        MR. SULLIVAN:  When you say, apply to Part 1,

15   Article 8 --

16        JUSTICE DUGGAN:  Well, it's -- Part 1, Article 8

17   says, "Public right of access to governmental proceedings and

18   records shall not be unreasonably restricted."

19        MR. SULLIVAN:  Yeah.

20        JUSTICE DUGGAN:  So it may fall upon us to determine

21   what's unreasonable.  Can we look to the exclusions of the

22   right-to-know law, that's the legislature to come to maybe as

23   an interpretation of Part 1, Article 8 say, Part 1, Article 8

24   applies and these exclusions apply constitution -- not just

25   statutorily but constitutionally as well?

1           MR. SULLIVAN:  Yes.

2           JUSTICE BRODERICK:  Do you think that's between

3    meeting of people in government and governmental proceedings?

4    And if so, what is the distinction?

5           MR. SULLIVAN:  Well, I think there are informal,

6    casual meetings that if the governor bumps into a mayor at a

7    social function and they talk, I don't consider that to be a

8    governmental proceeding.

9           JUSTICE BRODERICK:  But if the governor -- go back

10   to my question, because I want to find out where you stand on

11   this.  If the governor meets with her senior staff behind

12   closed doors to discuss political issues, policy issues,

13   governmental issues, the time of day and agendas are prepared

14   and minutes are kept for their internal use, those are

15   immediately available or should be to the general public?

16          MR. SULLIVAN:  Yes.

17          JUSTICE BRODERICK:  And if that's true, how long do

18   you think those meetings will go on?

19          MR. SULLIVAN:  Forever, I hope.

20          JUSTICE DUGGAN:  I asked you earlier about case law,

21   appellate courts that may have dealt with this issue.  Are you

22   aware of any state that has any statute or rules regarding

23   access to nonadjudicative meetings among judges?

24          MR. SULLIVAN:  No.

25          JUSTICE DUGGAN:  The federal statute under the



1    Freedom of Information Act would exclude it; is that right?

2            MR. SULLIVAN:  That's right.

3            JUSTICE DUGGAN:  And are there a lot of states that

4    have adopted that exclusion as a matter of state law?

5            MR. SULLIVAN:  I didn't find a lot of states.  I did

6    find that the State of New York did do that.  And that they

7    excluded -- just like federal statute, they excluded from

8    their right-to-know statute, but that's not to say they do or

9    do not have the constitutional strength that we in New

10   Hampshire have under Part 1, Article 8.

11           JUSTICE DUGGAN:  Is our constitutional provision

12   unique?

13           MR. SULLIVAN:  I don't think it's unique, but I

14   think it's -- it shows the commitment that the founders and

15   subsequent leaders of the government in New Hampshire have

16   made to make the government accessible to the public.

17           I'd like to leave the Court with a thought in re

18   Snow's Case.  This Court quoted Thomas Jefferson saying,

19   bottom line, "A man cannot be trusted with the government of

20   himself."

21           JUSTICE BRODERICK:  Counsel, let me ask you one

22   question, maybe two before you sit down.  Would you define for

23   me what a governmental proceeding is?  Give me a working

24   definition that you would like us to adopt.

25           MR. SULLIVAN:  For the purposes of this case, I

1     would say when a quorum of superior court justices or a

2     greater number than a quorum of the superior court justices

3     get together to discuss governmental business, that's a public

4     proceeding.

5           JUSTICE BRODERICK:  And under that definition and in

6     this case, would it also be your view that absent

7     extraordinary circumstances any member of the public should be

8     welcome to sit in in those meetings?

9           MR. SULLIVAN:  Yes.

10          JUSTICE BRODERICK:  Thank you.

11          MR. SULLIVAN:  The Court -- what I want to leave the

12    Court with is not a court law but from Jefferson in the Snow's

13    Case, but rather I think a later and more enlightened quote

14    from Jefferson is on point for this case.  He said,

15          "I know of no safe depository of the ultimate powers

16          of the society but people themselves.  And if we

17          think them not enlightened enough to exercise their

18          control with a wholesome discretion, the remedy is

19          not to take it from them, but to inform their

20          discretion by education."

21          Do I think the public should be privy to discussions

22    of the support court justices?  By all means, Your Honor.

23    Thank you.

24          JUSTICE BRODERICK:  Thank you.

25          MR. MULLEN:  Good morning, Your Honor.  May it



1  please the Court, my name is Daniel Mullen, and I am here on

2  behalf of the State of New Hampshire in this matter.  The

3  issues in this case are whether or not the public has a right

4  to access in the -- any records that are kept of what I'll

5  term staff meetings of the superior court judges that are held

6  on a regular basis.

7          The Petitioner in this case, Union Leader, has made

8  three arguments as to why the public should be granted access.

9  I will go through two of them quickly because I think the

10  third one is the other part (indiscernible) in detail.

11          The first argument made by the Petitioner is that if

12  the person has the right to access -- be entitled to these

13  records.  We argued in our brief, and it's fairly simple that

14  the First Amendment only provides public access to

15  adjudicative court proceedings, and this does not fall under

16  that or anything -- argument regarding (indiscernible) and

17  shouldn't be considered by the Court.

18          The second argument made by Union Leader is that our

19  opinion 91-A applies to these types of proceedings.  First of

20  all, as Justice Broderick pointed out, we believe that they

21  only appealed on the basis of Part 1, Article 8 in a way

22  regarding (indiscernible).

23          Secondly, we believe that the definition of a public

24  law-abiding body in RSA 91-A does not include the branch of

25  government very specifically, including the appellate court,

1  it includes the ward of state governments, and include the

2  commissioning boards of (indiscernible) what is governing the

3  state.  It specifically does not mention the legal branch at

4  all.  And that means the legal branch is not subject in any

5  way and that any analysis of that activity is brought forth.

6          Which brings me to the third argument, which is

7  whether or not these records are records of governmental

8  proceedings that the public should have action to in court.

9  It's not been briefed in (indiscernible).  Our argument is

10  that they are not records.  First of all, that they are not

11  government proceedings, I agree with the Court

12  (indiscernible).

13          JUSTICE DALIANIS:  Why not?

14          MR. MULLEN:  We believe that governmental

15  proceedings are -- and I look to guidance, Your Honor, in

16  91-A, the definition of public review in 91-A and 1-A, one of

17  those two, I cited it in the beginning notes of our brief.  We

18  believe that has the provision that may affect the public.

19  Here, the -- are not a transaction of this; they are

20  discussions of issues.  But the superior court judges sitting

21  together and meeting have no ability as superior court judges

22  to make decisions or to transact business that would affect

23  the public.

24          JUSTICE DALIANIS:  How do you know?

25          JUSTICE DUGGAN:  How about if they --



1          JUSTICE DALIANIS:  How do you know?

2          MR. MULLEN:  Based upon my quick review of the

3  minutes that I read at the time, Your Honor.

4          JUSTICE DALIANIS:  Never mind, I sat through those

5  meetings for 20 years.

6          MR. MULLEN:  I understand, you probably have a much

7  better perspective on them than I do.  I looked very briefly.

8          JUSTICE DALIANIS:  They were mostly just boring,

9  but --

10          MR. MULLEN:  But --

11          JUSTICE DALIANIS:  -- that aside.

12          MR. MULLEN:  -- very quickly I looked at the minutes

13  of the meetings and I did not -- they were in frank open

14  discussions of issues that may be of interest to the chief

15  administrative judge.

16          JUSTICE DUGGAN:  What if they discuss a rule?

17          MR. MULLEN:  They may discuss a rule, but a court --

18  the judges themselves have no ability to redact or make a

19  final decision on the ruling.

20          JUSTICE DUGGAN:  But that --

21          MR. MULLEN:  They have the ability to recommend to

22  this court that a certain rule might be adopted.

23          JUSTICE DUGGAN:  But can it be a proceeding without

24  reaching a decision?  I mean, proceeding doesn't necessarily

25  mean it has to be a decision --

1          MR. MULLEN:  I --

2          JUSTICE DUGGAN:  -- at the end of the conversation.

3          MR. MULLEN:  I agree with you.  I agree with you.

4          JUSTICE DUGGAN:  So if they discuss a rule, it's a

5   proceeding.

6          MR. MULLEN:  I don't know if I -- I don't know about

7   transactions, Your Honor.  I mean --

8          JUSTICE DALIANIS:  Suppose the court in the midst of

9   one of these meetings decided that, in an effort to approach

10  uniformity concerning a particular procedure, came up with a

11  policy to do that and put it in place here in the superior

12  court location.  Wouldn't that be a business that could affect

13  the public or not?

14         MR. MULLEN:  That could affect the public, but I

15  don't think the court and judges getting together or not.

16  Again, I don't know.  I mean, I've never attended a meeting

17  where you do that.  I think they get together, and in my

18  opinion, approach that meeting for a decision on an

19  administrative judge and perhaps come up with rules and

20  recommend it to the Supreme Court.

21         JUSTICE DALIANIS:  No, I'm talking about a different

22  scenario.  I agree, but as to the rule the superior court can

23  be used to make a recommendation.  But the superior court

24  could say, for example, there will be a particular information

25  sheet set out at the clerk's office in every superior court to

1   explain a particular procedure so as to make sure that it's

2   uniformly applied, and it was.

3          Well, they can do that without asking anybody else's

4   permission, and it seems to me that that might well be the

5   transaction business that affects the public.  No?

6          MR. MULLEN:  My understanding of it, and I could be

7   wrong, is that the judges themselves wouldn't do that.  I do

8   not know.  I think the chief administrative judge sitting in

9   can get input from the judges, contemplated and then decide,

10  yes, that's a good idea.  I was talking to all the superior

11  court judges.  I, as the chief administrative judge, am going

12  to institute this rule on behalf of the superior court.  It is

13  not the judges sitting as a body, one body through that

14  business.  It's the chief administrative judge keeping invoice

15  from the rest of the superior court judges sitting here.

16         JUSTICE DUGGAN:  What difference does it make how

17  many -- who decides it at the end of the meeting?  As long as

18  they're discussing something that has the impact on the

19  public.

20         MR. MULLEN:  I (indiscernible) to the governor of

21  this new statute.  The governor makes the decisions, not

22  the staff.  The governor seeks the input from them and

23  contemplates that (indiscernible).

24         JUSTICE DUGGAN:  If --

25         MR. MULLEN:  And says, okay, this is mine and says,



1    yes, I'm going to (indiscernible) and go another way.  I now

2    have the chief administrative judge in the superior court

3    doing the same thing, I mean (indiscernible) that's the issue.

4                  JUSTICE DUGGAN:  What if you -- I'm sorry.

5                  MR. MULLEN:  As a result he makes the judges -- the

6    chief administrative judge makes the decision based upon

7    input, but it's not -- not -- there's no veto power of the

8    superior court judges.  All 16 of them may attend a meeting,

9    maybe they can't make it a policy without the administrative

10   judge for whatever reason, it's a good policy.  He couldn't

11   (indiscernible) --

12                 JUSTICE BRODERICK:  Mr. Sullivan --

13                 MR. MULLEN:  -- that policy as a rule.

14                 JUSTICE BRODERICK:  Mr. Sullivan told me that in his

15   view a meeting of a governor and a senior staff, if they have

16   minutes and agendas, would be governmental proceedings.  And

17   start with that assumption under Part 1, Article 8.  Would you

18   agree with me that under the right-to-know law, those meetings

19   would not be public?

20                 MR. MULLEN:  I agree with you, Your Honor,

21   because --

22                 JUSTICE BRODERICK:  All right.  And if that's a

23   correct statement under the law, 91-A, in fact what the

24   legislature did is to enact the law that's more restrictive

25   than the constitution would allow.



1          MR. MULLEN:  If you accept Mr. Sullivan's --

2          JUSTICE BRODERICK:  I accept Mr. Sullivan.  The

3    legislative has decided to put behind a curtain that which

4    Part 1, Article 8 says should be a public or governmental

5    proceeding.

6          MR. MULLEN:  Then you have to (indiscernible) --

7          JUSTICE BRODERICK:  Now, let me ask you this.  When

8    the attorney general of this state meets with his senior

9    staff, which I assume he does, to talk about issues of policy

10   and procedure, do you view those as -- where decisions are

11   presumably made about how that office should be run and how

12   people should comport themselves, and what policies they want

13   to adopt, he does that in his office every Tuesday morning in

14   my hypothetical.  Do you view those as governmental

15   proceedings under Part 1, Article 8?

16         MR. MULLEN:  I do not.  I agree with

17   (indiscernible).

18         JUSTICE BRODERICK:  And would you agree with me if

19   they were, we should invite the public?  I mean, governmental

20   proceedings with rare exception are open to the public.

21         MR. MULLEN:  That you --

22         JUSTICE BRODERICK:  That the attorney general should

23   hold those meetings in a large room?

24         MR. MULLEN:  If they are governmental proceedings, I

25   agree that they wouldn't fall under 9 -- not only under Part

1 | 1, Article 8, I think they would fall under 91-A and we would

2 | have to notice them and probably have a bigger room on some

3 | occasions, and provide an agenda for the (indiscernible).

4 | JUSTICE BRODERICK:  Governmental proceedings,

5 | whatever it means, has to mean something more than transacting

6 | business.  It has to be bigger than that because business is

7 | transacted every day in the speaker's office, in the

8 | governor's office, in the attorney general's office, in the

9 | clerk's office, in the chambers of the court.

10 | MR. MULLEN:  I -- I agree with you, Your Honor.  And

11 | I think, again, using 91-A as guidance, the definition of

12 | transaction of business affects the public by, and then it

13 | goes on, public law which is then further defined.  And it's

14 | those public laws are orders and issues, the governor with the

15 | counsel or legislator.

16 | JUSTICE BRODERICK:  10 or 12 members of the superior

17 | court do not constitute a public body.

18 | MR. MULLEN:  I agree.

19 | JUSTICE BRODERICK:  They constitute 10 or 12 people

20 | who serve in government.

21 | MR. MULLEN:  Just -- just as the senior staff of the

22 | attorney general's office constitutes roughly five or six

23 | members of the government meeting with the attorney general.

24 | They are not in and of themselves a public body that

25 | creates -- I agree with you.  They do those transaction

 1    everyday, Your Honor, all three branches.

 2            JUSTICE DALIANIS:  So can a principal distinction be

 3    made then between an administrative meeting and a public

 4    proceeding even if a straight meeting is conducted by a person

 5    in government?

 6            MR. MULLEN:  I think there can be, and it should be.

 7    A public proceeding is something where the public can attend,

 8    may very well have input on several occasions where the

 9    administrative, they'll facilitate (indiscernible) of

10    government.

11            JUSTICE DUGGAN:  Are you aware of any cases that

12    deal with administrative meetings of judges or meetings

13    between governor and senior staff, attorney general and senior

14    staff?  Are there any -- is there any -- are there any

15    appellate cases on this?

16            MR. MULLEN:  I've spent the last two days, Your

17    Honor, trying to find another jurisdiction dealing

18    specifically with staff meetings --

19            JUSTICE DUGGAN:  Right.

20            MR. MULLEN:  -- executive briefings, and there were

21    no cases, and I wasn't able to find any.

22            JUSTICE DUGGAN:  One way or the other.

23            MR. MULLEN:  One way or the other.

24            JUSTICE DUGGAN:  What do you view is the

25    relationship between the exclusions in the 91-A and the

1  unreasonableness clause of the Part 1, Article 8?

2         MR. MULLEN:  I think the exclusions are the life

3  blood of this judgment as to what is reasonable on access to

4  the government opportunities.

5         JUSTICE DUGGAN:  How should we use those exclusions

6  if we reach the issue as what is an unreasonable restriction

7  under Part 1, Article 8?  What should those -- should those --

8  should those exclusions be guidance or binding on us as a

9  matter of interpretation of that section of the constitution?

10         MR. MULLEN:  I think they can be guidance.  I

11  wouldn't say binding on.  As a matter of fact, I would argue

12  that there are more reasonable restrictions in Article 18 in

13  91-A that this Court could use.  For instance, basically the

14  Court is taking a good (indiscernible) and comment and a grasp

15  as a blanket exception to not -- should not be excluded under

16  the Federal Freedom of Information Act of this specific

17  provision.

18         They can -- I do not think that the Court decides

19  that would be an unreasonable restriction, not to contain

20  91-A, but other jurisdictions that very well could be

21  (indiscernible) in Article 8.  So I think the exclusion

22  contained in 91-A could lead this Court for guidance on -- not

23  necessarily restrictions to be bound only by those, but they

24  could be (indiscernible).

25         JUSTICE BRODERICK:  I want to ask you this.  Under



1   Part 1, Article 8, you would agree that's the only issue

2   that's before us?

3           MR. MULLEN:   I agree, Your Honor.   I think the other

4   two articles are not.

5           JUSTICE BRODERICK:   It talks about access to

6   governmental proceedings and records.   And my question is, is

7   records broader than governmental proceedings?   In other

8   words, are the records that are referred to in the

9   constitution only records of governmental proceedings?   Or are

10  they records that could not pertain to governmental

11  proceedings but had been generated by somebody in government,

12  therefore making it a governmental record?

13          MR. MULLEN:   I think it could, Your Honor, but I

14  think we have guidance on that.   I think it could be broader

15  just as there are records of briefs that are not generated as

16  a result of the public (indiscernible) but certainly call the

17  documents that have been produced in 91-A.

18          JUSTICE BRODERICK:   To go back, if the attorney

19  general meets with his senior staff and there's an agenda and

20  there are minutes kept, you say to me the staff meeting is not

21  a governmental proceeding.   But my question is with regard to

22  Mr. Sullivan's concern, why aren't the agendas and the

23  minutes, however, governmental records --

24          MR. MULLEN:   We --

25          JUSTICE BRODERICK:   -- that can be disbursed to the

1  public?

2          MR. MULLEN:  We -- I'll take a broad definition.  I

3  think any records -- the definition could be any records

4  generated by persons working in government could be considered

5  governmental records, as a broad base.  Then the question is

6  whether or not -- and I mean, we assumed in our brief for

7  purposes of this argument that the records generated by the

8  superior court judges, records that were governmental records.

9  Then we want to argue that they were reasonable on access.  I

10  don't think that the government -- the term governmental

11  records becomes a broader --

12          JUSTICE BRODERICK:  Okay.  To go to my hypothetical

13  now, what restriction would we impose to say the attorney

14  general's senior staff agendas and minutes should not be made

15  available to the Union Leader?

16          MR. MULLEN:  As a general proposition as we

17  discussed in our brief, I'll refer to withdrawing a

18  governmental privilege.  There is verified the executive

19  privilege and information privilege.  I believe it goes to the

20  deliberate process and encourages frankly unfettered

21  discussion among governmental workers so that the

22  decision-makers can make informed decisions on policy matters.

23  Because of that, those records should be made public records.

24          JUSTICE BRODERICK:  So you would --

25          MR. MULLEN:  As to broad, broad.  Now, there are



1    other exceptions that these records also generate.  For

2    instance, the more common one is (indiscernible).

3            JUSTICE BRODERICK:  Well, he says just redact it.

4            MR. MULLEN:  That's why I started out with the first

5    one that says, governmental privilege, executive privilege,

6    special information, or whatever the privilege is you want to

7    call it.  The common law privilege that we believe applies

8    overall in these types of meetings, the meetings and records

9    generated by them.

10           JUSTICE BRODERICK:  Would you -- and I have a

11    question and I'll close with this.  If we decide that the

12    meetings of the superior court are open, by analogy, we would

13    be deciding that the senior staff meetings of the attorney

14    general's office and the senior staff meetings of the

15    governor's office are also open.

16           MR. MULLEN:  I agree with that.  And if you decide

17    that the meetings are not necessarily are open but the

18    records --

19           JUSTICE BRODERICK:  Yes.

20           MR. MULLEN:  -- should be produced to the public to

21    have access to them.  I think that as a policy matter, that

22    would be a hindering effect the (indiscernible) government.

23    You would not -- you would not -- he would find a way not to

24    produce records, or you would have to have a chilling effect

25    on people discussing in a frank and open manner in these

1  meetings, very aside from policy because they knew that they

2  were recorded and their views might be produced

3  (indiscernible) like a policy matter, I don't think would be

4  (indiscernible).

5          JUSTICE DUGGAN:  Just so I'm clear, you believe we

6  should decide this case based on the unreasonableness of the

7  restriction and not on the definition of governmental

8  proceedings and records?

9          MR. MULLEN:  I believe so, Your Honor.  Because as I

10  said, I firmly believe that the term governmental records is

11  broader than some records generated by governmental

12  proceedings.  And that comes from 91-A, the document of the

13  executive branches that aren't part of the public proceeding

14  are still the public documents.

15          JUSTICE BRODERICK:  I just want to be clear because

16  I think Justice Duggan asked you a broader question.  Is it

17  your view that the meeting of the superior court judges,

18  however many there were in the room, was not a governmental

19  proceeding?

20          MR. MULLEN:  Our view is that's not a governmental

21  proceeding.

22          JUSTICE BRODERICK:  All right.  It may, however --

23  the paperwork generated prior to and at or subsequent to may

24  constitute a governmental record, but you would not turn those

25  over because reasonable restrictions can be placed on it.



1            MR. MULLEN:  That is our argument.

2            JUSTICE BRODERICK:  All right.

3            MR. MULLEN:  Thank you, Your Honor.

4            JUSTICE BRODERICK:  Thank you.

5            Case submitted?  Thank you.

6            Court will be in recess.

7            THE CLERK:  All rise.

8        (Proceedings concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



<u>CERTIFICATE</u>

I, Brooke Buford, a court-approved proofreader, do hereby

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter, to the best of my professional skills

and abilities.

TRANSCRIPTIONIST(S):   Debra Price, CER-985

Brooke Buford  Digitally signed by Brooke Buford Date: 2021.11.16 11:56:37 -05'00'

BROOKE BUFORD, CDLT-183              November 16, 2021
Proofreader

