# Illinois Bar Journal

November 2007 • Volume 95 • Number 11 • Page 590

### Family Law
## Combating Orders-of-Protection Abuse in Divorce

By **Scott A. Lerner**

Differences in the order-of-protection process under the IMDMA and the Illinois Domestic Violence Act create an opportunity for petitioners to gain an unfair advantage in divorce, this author says. Find out what counsel for the respondent can do in such cases.

In order of protection (OP) can be used as a sword as well as a shield in divorce. There's no question that victims need protection from abusers. But not all parties to divorce are above using OPs not for their intended purpose but solely to gain advantage in a dissolution.

How? The petitioner can use an OP to restrict visitation, gain exclusive use of the home, and obtain custody in an expedited manner.

This article compares the OP process under the Illinois Marriage and Dissolution of Marriage Act (IMDMA) with the Illinois Domestic Violence Act (DVA). It explains how differences in the acts, and particularly the petitioner-friendly nature of the DVA, create an opportunity for OP abuse in divorce. It also presents ways to challenge these abuses in court.

**OPs are easy to get, use under the DVA**

Orders of protection are easy to file. The forms are available at any courthouse and can be completed by nonlawyers. In most counties, there are organizations to help complete the forms and appear in court with the alleged victim free of charge.

These nonattorney domestic abuse advocates are permitted by the legislature to sit at counsel table and give advice.[1] Indeed, conversations between the advocate and the petitioner are confidential and privileged.[2]

There are no filing or process-service fees for an order of protection[3] (though the respondent in some counties is required to pay a fee to the circuit clerk to respond to or deny a petition). As a result, it is far less expensive and easier to file a petition seeking an order of protection than to file documents seeking similar relief in a divorce proceeding

It is also easier to obtain the relief requested. An order of protection requires a finding by the preponderance of the evidence the petitioner was abused or harassed. If the order is granted and the petitioner requests exclusive possession of the home, it is presumed the balance of hardships favors the petitioner.[4] The statute reads as follows:

> The balance of hardships is presumed to favor possession by petitioner unless the presumption is rebutted by a preponderance of the evidence, showing that the hardships to respondent substantially outweigh the hardships to petitioner and any minor child or dependent adult in petitioner's care. The court, on the request of petitioner or on its own motion, may order respondent to provide suitable, accessible, alternate housing for petitioner instead of excluding respondent from a mutual residence or household.[5]

The DVA specifically states that "[t]he grant of exclusive possession of the residence shall not affect title to real property, nor shall the court be limited by the standard set forth in Section 701 of the Illinois Marriage and Dissolution of Marriage Act."[6]

For those seeking the same relief under the IMDMA there is no such presumption. Under section 701 of the IMDMA it states as follows:

> Where there is on file a verified complaint or verified petition seeking temporary eviction from the marital residence, the court may, during the pendency of the proceeding, only in cases where the physical or mental well being of either spouse or their children is jeopardized by occupancy of the marital residence by both spouses, and only upon due notice and full hearing, unless waived by the court on good cause shown, enter orders of injunction, mandatory or restraining, granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence, until the final determination of the cause.[7]

Although domestic abuse or harassment can certainly jeopardize the physical and mental well being of the occupants of the home, that might not be the case for a one-time incident. In *In re Marriage of Lima*, the second district reversed the trial court and held that a drop in blood sugar related to the wife's diabetes was not enough to conclude that the husband being in the home jeopardized her physical or mental well being. The wife also claimed that on a single occasion she felt "used" after sexual intercourse; the appellate court found that was not enough to conclude that the husband being in the home jeopardized her physical or mental well being.[8] Also, under the IMDMA notice and a full hearing are required prior to giving a party exclusive use of the home.

**Custody: Advantage to petitioner under the DVA**

There are also differences between the IMDMA and the DVA when it comes to custody. Under the DVA, "there shall be a rebuttable presumption that awarding physical care to respondent would not be in the minor child's best interest."[9] The fourth district appellate court in *Mowen v Holland* points out that "[t]o protect a minor from abuse or neglect or to protect the well-being of the minor, the trial court may award the party filing the petition the physical care and 'possession' of the minor."[10]

According to the DVA, "If a court finds, after a hearing, that respondent has committed abuse (as defined in Section 103) of a minor child, there shall be a rebuttable presumption that awarding temporary legal custody to

respondent would not be in the child's best interest."[11] In *Sutherlin v Sutherlin*, the fifth district reversed the trial court's decision not to grant temporary custody to the petitioner after granting an order of protection.[12]

Under the IMDMA, before granting custody the court must consider the best interests of the child or children based on a number of factors.[13] The statute does, of course, allow the court in a custody hearing to consider abuse. The statute lists two factors specifically addressing abuse, "(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; [and] (7) the occurrence of ongoing or repeated abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986, whether directed against the child or directed against another person."[14]

The statute goes on to say as follows:

> Unless the court finds the occurrence of ongoing abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986, the court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child. There shall be no presumption in favor of or against joint custody.[15]

This, however, does not create the same "rebuttable presumption" in favor of one party.

**Expedited timetable under DVA favors petitioners**

On a practical level, the time frames set forth in the DVA further hamper a parent from presenting the same type of evidence in an order of protection hearing as in a divorce proceeding. Under the statute, a petition for an order of protection shall be treated as an expedited proceeding.[16] Thus a court may be making a decision without hearing all of the relevant evidence. Time is needed to obtain witnesses and to investigate claims of abuse.

There have been recent efforts to expedite matters of child custody proceedings under the IMDMA. Under Supreme Court Rule 922, all child custody proceedings shall be resolved within eighteen months from the date of service of the petition unless the court finds that good cause has been shown not to do so.[17]

Under the IMDMA, in any proceedings involving the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child, the court may, on its own motion or that of any party, appoint an attorney to represent the child's interests.[18] The court could further obtain the opinion of professional personnel or even obtain psychological evaluations of the people involved.[19]

Thus courts in dissolution cases when making decisions of custody and visitation tend to be more informed than courts hearing orders of protection. If a parent is willing to abuse the system, it is unlikely the trial court could discover their improper motives in an order of protection hearing. If a case involved parental alienation syndrome, mental illness, or drug use on the part of the petitioner that caused him or her to misinterpret events, it would be difficult for a court to discover the problem in an expedited proceeding under the DVA.

**Visitation: the greatest potential for OP abuse**

The greatest potential for abuse of the system is in visitation. It is far easier to restrict visitation via an order of protection then by seeking the same relief under the IMDMA. Under the IMDMA, "A parent not granted custody

of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health."[20]

In *Heldebrandt v Heldebrandt*[21] the fourth district reversed the trial court for restricting visitation based on the best interests of the child rather than the more stringent serious endangerment standard:

> A trial court must hold a hearing on the issue of restricted visitation and should grant restricted visitation only after making the extraordinary finding that visitation would seriously endanger the child's physical, mental, moral, or emotional health. The serious endangerment standard contained in section 607(c) of the Act is "onerous, stringent, and rigorous" to meet because liberal visitation is the rule and restricted visitation is the exception.[22]

In *Griffiths v Griffiths*,[23] the fourth district states as follows:

> The Illinois courts have held that where the proceeding is by a custodial parent to restrict or deny the visitation, the burden is upon the custodial parent to prove by a preponderance that the visitation then provided endangers the welfare of the children. [Cite]. However, where the non-custodial parent seeks to modify visitation rights which have been originally granted in the dissolution decree, the burden of proof is upon such parent to show that the modification is in the "best interest" of the child or children.[24]

Under the DVA, the order can protect not only the alleged victim but also "any minor child or dependent adult in the care of such person."[25] In the case of *In re Marriage of McCoy*,[26] the fourth district makes it clear the trial court in an order of protection hearing has wide discretion to restrict visitation:

> We do not read *Hazelwonder*[27] as circumscribing a court's power to restrict visitation through an order of protection until such time as the child or children are directly harmed. [Cite]. We reject any claim that evidence of abuse of the custodial spouse is an insufficient basis to support an order prohibiting unauthorized contact and potential abuse of the children in the custodian's care. The scope of the Act provides broad categories of abuse and prohibited conduct sufficient to impose an order of protection. (See 750 ILCS 60/214 (West Supp 1993).) Once one member of a household is abused, the court has maximum discretionary power to fashion the scope of an order of protection to include other household members or relatives who may be at risk of retaliatory acts by the abuser.[28]

The court in *McCoy* seems to find that the serious-endangerment standard does not apply to the restriction of visitation under an order of protection. This is an invitation for parents to use the DVA to circumvent the IMDMA.

**When "temporary custody" becomes permanent**

Courts are understandably wary of denying an order of protection. No one wants to put a parent or a child at risk. Yet as more parents become aware they can gain a substantial advantage in divorce by obtaining an order of protection, the risk of abuse of the process increases.

Children need stability. If one parent gets exclusive use of the marital home and temporary custody of the children while the other has restricted visitation, that latter parent is unlikely to win sole custody of the children. Children adapt to their environment, and it is harmful to move them.

The legislation seems to support this idea, requiring that "no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health."[29]

Courts have to address the difficulty of changing custody after a child has spent a lengthy stay with a temporary custodian. This issue was addressed by the third district in *Wurm v Howard:*[30]

> As already stated, the final decision on custody was a result of concern for the stability and continuity of the children's lives, and it would not have served their best interests for the court to have ignored the fact that they had been residing with their mother and step-father in Champaign for well over two years. It must be accepted that their residence in Champaign for that time was the result of the decision on temporary custody and the delay caused by the appeal. However, all factors which relate to the best interests of the children should be considered by the court. Contrary to the dire warnings of consequences if the court's decision is upheld, we perceive no basis for concluding, on the record in this case, that our decision will unfairly advantage the parent who first obtains custody in the determination of the best interests of the children.[31]

In *In re Marriage of Hefer,*[32] the fourth district specifically found that "[a] court may consider the period of time that a child has spent with a parent by virtue of a temporary custody order."[33] It is clear that it cannot be in a child's best interests to move him or her from a stable environment. Thus, the longer a parent is able to retain temporary custody, the greater their opportunity to later obtain permanent custody.

Appellate judges respond

The appellate court is hardly blind to the abuse of orders of protection.

In *Radke v Radke*, for example, the third district reversed the trial court that granted a plenary order of protection.[34]

The court concluded that

> [t]he Domestic Violence Act is not the appropriate vehicle for resolving such issues. We note that the order of protection did not restrict Ross's visitation or contact with Laine. The court narrowly drafted the order to prohibit physical abuse, harassment, interference with personal liberty or intimidation. Nevertheless, based on this record, we believe that Kathryn misused the Domestic Violence Act for the purpose of attempting to alter Ross's visitation with Laine. For that reason, and because we find that no harassment occurred, we reverse the judgment of the circuit court and vacate the order of protection.[35]

The court in *In re Marriage of Gordon* also addressed the problem of the misuse of the DVA to obtain orders of protection.[36] The court wrote as follows:

> Robert has not advanced any reason, nor can we find one, to justify his proceeding under the Domestic Violence Act rather than the Marriage Act. Whatever the relief he sought - extended visitation, injunction or custody - he could have received under section 610 of the Marriage Act. To approve the procedure

followed in this case would be an open invitation to parties disappointed in a custody dispute to file a separate action under the Domestic Violence Act and call it something other than a claim for custody.[37]

The *Gordon* court went on to say that "[i]n this case...the Domestic Violence Act was misused and was a subterfuge to circumvent the requirements of the Marriage Act."[38]

**What can you do to combat OP abuse?**

Judges, certainly, have a responsibility to act as gatekeepers by making sure they do not grant an order of protection except to protect the petitioner or the children. Lawyers, also, should take their ethical responsibility as officers of the court seriously and refuse to file an order of protection for any other reason.

Still, abuse will happen. What can you do as counsel for the respondent?

**Be ready to spend time and money.** An order of protection is a high-stakes matter. The OP hearing could produce a result that will irrevocably affect the divorce and the lives of children. Violating an order of protection is a crime, and your client can be jailed for doing so. If you need an expert witness, don't hesitate to hire one.

Often, courts set multiple plenary orders of protection, leaving only *15 or 20* minutes for each case. Don't let your case be rushed. The judge may get angry, but you owe your client the best representation possible, even if it crowds the schedule.

**Bring a motion to modify or dismiss.** If you represent the respondent in a case where the OP is being used inappropriately, you should bring a motion to modify the emergency order of protection or a motion to dismiss the order of protection and apprise the court that the petitioner is trying to use the DVA to circumvent the IMDMA. You should also file a motion to consolidate the OP and divorce cases.

*Scott Lerner is a 1992 graduate from the University of Illinois College of Law and is currently an associate at the Lerner Law Office.*

1. 750 ILCS 60/205(b)(1).
2. 750 ILCS 60/227.
3. 750 ILCS 60/202(b).
4. 750 ILCS 60/214(b)(2)(A).
5. 750 ILCS 60/214(b)(2)(B).
6. 750 ILCS 60/214(b)(2).
7. 750 ILCS 5/701.
8. *265 Ill App 3d 753*, *638 NE2d 1186* (2d D 1994).
9. 750 ILCS 60/214(b)(5).
10. *336 Ill App 3d 368*, 374, *783 NE2d 180*, 185 (4th D 2003), quoting 750 ILCS 60/214(b)(5).
11. 750 ILCS 60/214-2(B)6.
12. *363 Ill App 3d 691*, *843 NE2d 398* (5th D 2006).

13. 750 ILCS 5/602.

14. 750 ILCS 5/602(a)(6) and (7).

15. 750 ILCS 5/602(a)(9)(c).

16. 750 ILCS 60/212(a).

17. SCR 922

18. 750 ILCS 5/506.

19. 750 ILCS 5/604; 750 ILCS 5/604.5

20. 750 ILCS 5/607(a).

21. *251 Ill App 3d 950*, *623 NE2d 780* (4th D 1993).

22. Id at 957, 623 NE2d at 784-85, quoting *In re Marriage of Diehl*, *221 Ill App 3d 410*, 429, *582 NE2d 281*, 294 (2d D 1991).

23. *127 Ill App 3d 126*, *468 NE2d 482* (4th D 1984).

24. Id at 129, 468 NE2d at 485.

25. 750 ILCS 60/201(a)(iii).

26. *253 Ill App 3d 958*, *625 NE2d 883* (4th D 1993).

27. *People v Hazelwonder*, *138 Ill App 3d 213*, *485 NE2d 1211* (4th D 1985).

28. *McCoy* at 963, 625 NE2d at 886.

29. 750 ILCS 5/610(a).

30. *82 Ill App 3d 116*, *402 NE2d 407* (3d D 1980).

31. Id at 122, 402 NE2d at 411-12.

32. *282 Ill App 3d 73*, *667 NE2d 1094* (4th D 1996).

33. Id at 78, 667 NE2d at 1098.

34. *349 Ill App 3d 264*, *812 NE2d 9* (3d D 2004).

35. Id at 269, 812 NE2d at 13.

36. *233 Ill App 3d 617*, *599 NE2d 1151* (1st D 1992).

37. Id at 648, 599 NE2d at 1172.

38. Id.