UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Dana Albrecht**, ) | |
| ) | |
|     **Plaintiff** ) | |
|   v. ) | Civil No. 1:23-cv-00381-JL-TSM |
| ) | |
| **Kathleen Sternenberg, et al.** ) | |
| ) | |
|     **Defendants.** ) | |

---

PLAINTIFF'S OBJECTION TO
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
(ORAL ARGUMENT REQUESTED)

---

NOW COMES Dana Albrecht, *pro se*, and objects to the *Report and Recommendation* ([Doc 23](#)) of the Magistrate Judge; and, in support thereof, further states:

**(A) Summary of Facts Pled**

1. In a complex multi-state family law case involving child custody disputes and civil domestic violence allegations in Massachusetts, Kathleen Sternenberg played a crucial role as the *Guardian ad Litem*. The various related state court case(s), <u>Albrecht v. Albrecht</u>, span over seven years across four states (New Hampshire, Massachusetts, California, and Michigan).

2. Sternenberg's involvement is highly contentious due to her close friendship with former judge Julie Introcaso, who appointed her in at least nine New Hampshire family law cases, including the Plaintiff's, despite a known conflict of interest. This conflict was acknowledged by Sternenberg herself as

- 1 -

    early as 2014. Key figures like Marital Masters Bruce F. DalPra, Julie Introcaso, Judge Derby, and Judge King were all aware of this conflict before various crucial orders and hearings in the Plaintiff's case, but did not disclose it to the Plaintiff.

3. The New Hampshire Judicial Conduct Committee's investigation into Introcaso, detailed in its *Summary Report*, sheds light on the misconduct. Despite initially denying the allegations, Introcaso eventually pleaded *nolo contendere*, admitting to altering court documents and understating her relationship with Sternenberg. The report criticizes Introcaso for repeatedly appointing Sternenberg in multiple cases and for her breach of the Canons of Judicial Conduct. As a result of these proceedings, Introcaso resigned, agreed to reimburse legal fees, and faced no further sanctions.

4. By way of contrast, Kathleen Sternenberg has never been held accountable for her involvement in the illegal "cash for kids" scheme promulgated by *both* Ms. Introcaso and Ms. Sternenberg.

**(B) Plain Errors of Fact in Magistrate's Report**

1. Directly contrary to the Magistrate's *Report*, there is no evidence that Ms. Introcaso appointed defendant Bruce DalPra as a marital master. Any assignment of Master DalPra to the Plaintiff's family law case was more likely made by defendant Administrative Judge David King. Also directly contrary to the Magistrate's report, DalPra recommended that Introcaso appoint Sternenberg as Guardian ad Litem for the Albrechts' younger <u>three</u> children (C.A., S.A., and G.A.), who, at that time, were minors. The Albrechts' oldest adult child, P.A., was not involved.

**(C) Summary of Argument**

1. 42 U.S.C. § 1983 should be interpreted to eliminate judicial immunity, which argument Plaintiff acknowledges is currently foreclosed in this jurisdiction and is made solely for preservation. Citing the Harvard Law Review, the Plaintiff contends that the legislative history of 42 U.S.C. § 1983 and its comparison to 18 U.S.C. § 242 show that the Supreme Court's decision in

*Pierson v. Ray*, 386 U.S. 547 (1967), which upheld judicial immunity, was based on incorrect foundations.

2. Ms. Sternenberg is not entitled to quasi-judicial immunity, as this defense is inapplicable in an official-capacity lawsuit. Furthermore, Ms. Sternenberg, as a private practice attorney, doesn't qualify as a "public official" entitled to quasi-judicial immunity, which is reserved for public employees performing judge-like functions. A New Hampshire Guardian Ad Litem's (GAL) recommendations are advisory and not binding, as stated in *Richelson v. Richelson,* 130 N.H. 137 (1987). This is not a judge-like function. Rather, such a role aligns more closely with an expert witness. Further, Plaintiff had a contractual relationship with Ms. Sternenberg, who illegally overbilled, an administrative act, which further undermines her claim to quasi-judicial immunity. Cases from New Jersey and Vermont, like *Levine v. Wiss & Co.,* 478 A.2d 397 (N.J. 1984) and *Politi v. Tyler,* 751 A.2d 788 (Vt. 2000), indicate court-appointed experts can be held liable for negligence.

3. Judicial immunity does not cover non-judicial actions, including non-actions, actions taken without jurisdiction or actions that constitute misconduct. In light of cases like *Gibson v. Goldston,* No. 22-1757 (4th Cir. 2023), and *Forrester v. White,* 484 U.S. 219 (1988), administrative decisions and actions violating the Code of Judicial Conduct are not protected by judicial immunity. It should also be emphasized that acts resulting in criminal prosecution, disbarment, or proven misconduct fall outside the scope of judicial immunity. Further, it is necessary to differentiate between hypothetical future actions and actual judicial acts, noting that non-actions, such as failing to disclose conflicts of interest, are not judicial acts.

4. Furthermore, Sternenberg broke New Hampshire GAL Rule 503.06 by not disclosing her relationship with Introcaso. Introcaso has faced some consequences for her conflict with Sternenberg, but Sternenberg remains utterly unaccountable for her part in a "cash for kids" scheme impacting multiple New Hampshire family law cases.

5. Related cases in the state courts are ongoing. The issues raised are "capable of repetition, yet evading review," which supports that Plaintiff's claims are not moot, nor solely retrospective. The Plaintiff seeks recognition from the

federal court that he was denied a fair legal process under both the New Hampshire State Constitution and the Fourteenth Amendment of the United States Constitution. This claim is supported by a precedent set by the New Hampshire Supreme Court, which recognized similar deprivations of fair legal process. The Plaintiff's request is for the federal court to extend the reasoning of a New Hampshire State Supreme Court decision in his case, acknowledging that he was denied a fair legal process due to a lack of crucial information that would have enabled him to file for recusal in state court proceedings.

As Plaintiff's case(s) in the state courts are ongoing, Plaintiff seeks to define the legal rights and obligations of the parties in anticipation of some future conduct in any related future state or federal court proceeding.

6. Plaintiff asserts that his federal claims are based on allegations of misconduct and nondisclosure by state officials, rather than a direct challenge to the decisions of state courts. The Plaintiff argues that these actions deprived him of a fair legal process. He highlights his lack of awareness of conflicts of interest involving certain individuals involved in his case, which he only discovered through external sources <u>after</u> crucial legal processes already had occurred. This lack of knowledge prevented him from effectively challenging the state court's decisions and filing necessary motions for recusal in a timely fashion.

   [*Tapply v. Zukatis*, 162 N.H. 285 (2011)](#), [*Caperton v. AT Massey Coal Co., Inc.*, 556 U.S. 868 (2009)](#), and [*Rippo v. Baker*, 137 S. Ct. 905 (2017)](#) are all relevant to this case, not because of their underlying facts *per se*, or the various lower court decisions from which they arose, but because they articulate relevant objective standards for judicial recusal under N.H. Const. pt. 1, art. 35 and the Fourteenth Amendment.

7. In a serious breach of judicial ethics in New Hampshire, Ms. Sternenberg, appointed by her close friend Ms. Introcaso as *Guardian ad Litem* in various family law cases including the Plaintiff's, was central to a scheme involving ethical violations and favoritism. This "cash for kids" operation, as revealed by a Judicial Conduct Committee investigation, not only compromised the integrity of multiple legal cases but also significantly eroded public trust in

- 4 -

the judiciary. Furthermore, the inconsistent enforcement of conflict of interest standards, particularly evident in Ms. Introcaso's <u>selective recusal</u> in cases like <u>Campbell v. Partello</u> compared to the Plaintiff's, highlights a grave violation of federal equal protection principles. This disparate treatment of similarly situated litigants underscores the critical importance of upholding equal protection in the legal system.

8. The Court should grant declaratory relief in this case, recognizing the significant role of Kathleen Sternenberg in multiple ongoing legal proceedings. While judicial immunity typically protects state judicial officers, declaratory judgments are crucial for defining legal rights and obligations for future actions, rather than only for past conduct (*Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019)). Here, the Plaintiff's request centers on Sternenberg's involvement, particularly in the context of the recent state court hearings on November 15 and 16, 2023. Sternenberg's very recent refusal, through her counsel, to testify about allegations related to the Plaintiff's ex-wife is pivotal. This refusal underscores the need for a declaratory judgment to clarify future conduct and legal responsibilities.

   Furthermore, the Court's discretion in issuing declaratory judgments, as guided by principles of equity and public interest (*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)), supports addressing the issues related to Sternenberg's actions. This case presents critical public questions of judicial transparency and accountability, especially considering Sternenberg's influence on the legal proceedings. The Supreme Court's emphasis on the role of declaratory judgments in clarifying legal relationships for future conduct, as stated in *Samuels v. Mackell*, 401 U.S. 66 (1971), is particularly relevant. Granting declaratory relief here would not only adhere to precedents like *Mitchum v. Foster*, 407 U.S. 225 (1972), but also serve to illuminate the roles and responsibilities of key figures like Sternenberg within the judiciary.

9. The Petition Clause further mandates the Court to exercise its discretion in granting declaratory relief. The historical and legal precedence of the right to petition, enshrined in English common law and affirmed by the U.S. Supreme Court in more recent cases like *Borough of Duryea, Pa. v. Guarnieri,*

564 U.S. 379 (2011), necessitates the Court's intervention in this matter. This right, heralded as one of the most fundamental liberties by the Bill of Rights, empowers citizens to bring their grievances before any government department, including the judiciary. The Petition Clause's unique role allows citizens not just to express personal grievances, but to engage in the broader discourse of political and social issues, thereby fostering a participatory democracy.

In the context of this case, the Plaintiff's request for a declaratory judgment transcends personal redress; it embodies the essence of the Petition Clause by challenging alleged state official misconduct and nondisclosure. The extensive media attention drawn by these issues signifies a public interest that extends far beyond the Plaintiff's individual case. As such, the Court's denial of declaratory relief would not only violate the Plaintiff's rights under the Petition Clause but would also neglect its duty to uphold a fundamental democratic principle. The Petition Clause, in this regard, obliges the Court to grant declaratory relief, ensuring that both the Plaintiff's concerns and broader societal interests are duly considered and addressed.

10. First Circuit guidelines support amendments for justice (O'Connell v. Hyatt Hotels of P.R; Foman v. Davis). Sternenberg's defense focuses solely on quasi-judicial immunity, but she hasn't addressed the potential for declaratory relief. The Magistrate Judge's dismissal approach, possibly *sua sponte*, warrants allowing the Plaintiff to amend the complaint (Gonzalez-Gonzalez v. United States).

11. Finally, dismissing the claims against Sternenberg alone is premature and selective, especially considering her role in the "cash for kids" scandal and its impact on multiple cases. Dismissing Sternenberg's claims while ignoring Introcaso's conduct overlooks their interconnected actions.

Consequently, it would be premature to dismiss any claims at this time against only Ms. Sternenberg for any declaratory judgment that may still be available, without first also adjudicating the related claims against Ms. Introcaso, Master DalPra, Judge Derby, and Judge King.

**(D) Fully Developed Argument**

1. Plaintiff incorporates by reference herein, all pleadings, facts, arguments, and evidence previously presented to this Honorable Court.

2. In particular, however, Plaintiff incorporates by reference herein the accompanying *Memorandum of Law in Support of Objection to Magistrate Judge's Report and Recommendations*, the same as if plead in full.

WHEREFORE Plaintiff Dana Albrecht respectfully requests that the Court:

A) Conduct a *de novo* review; and,

B) Reject the *Report and Recommendations* of the Magistrate and,

C) Deny Ms. Sternenberg's *Motion to Dismiss*; or,

D) Hold a hearing for Oral Argument; and,

E) For all other such relief as is just and equitable.

Respectfully submitted,

_____
DANA ALBRECHT
  *Plaintiff Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

January 25, 2024.

- 8 -

## **CERTIFICATE OF SERVICE**

I, Dana Albrecht, hereby certify that a copy of this *Objection* shall be served to all the parties and/or counsel of record through the ECF system.

_____<br>
DANA ALBRECHT

January 25, 2024