# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Dana Albrecht, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Civil No. 1:23-cv-00381-JL-TSM |
| | ) | |
| Kathleen Sternenberg, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (ORAL ARGUMENT REQUESTED)

---

By:   Dana Albrecht
        *Plaintiff Pro Se*
        131 D.W. Hwy #235
        Nashua, NH 03060
        (603) 809-1097
        dana.albrecht@hushmail.com

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................2

TABLE OF AUTHORITIES...........................................................................3

    Cases........................................................................................................3

    Statutes....................................................................................................6

    Constitutional Provisions......................................................................6

    Other Authorities..................................................................................7

INTRODUCTION.........................................................................................7

OVERVIEW OF STATE COURT CASES.....................................................7

    Introcaso/Sternenberg conflict mutually acknowledged in open court in 2014....9

    Ms. Introcaso's statements about Plaintiff's case involving Ms. Sternenberg...10

    Overview of Judge King's role in Introcaso/Sternenberg investigation...........11

    Overview of Judge Derby's role in Introcaso/Sternenberg investigation.........13

    Summary Report of Proceedings, Findings and Recommendations of the New Hampshire Judicial Conduct Committee (JCC)...........................................15

BACKGROUND PROCEDURAL HISTORY OF STATE COURT CASES..............22

SUBSEQUENT PROCEDURAL HISTORY OF STATE COURT CASES..............23

    Harm suffered by Plaintiff and his three younger children............................29

STANDARD OF REVIEW.............................................................................30

    Review of Magistrate Judge's Recommendations.......................................30

    Motions to Dismiss...............................................................................30

ARGUMENT.................................................................................................31

    I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.........31

    II. Ms. Sternenberg is not entitled to quasi-judicial immunity.......................32

    III. Judicial immunity does not extend to non-judicial actions, which include proven findings of misconduct....................................................................34

    IV. Ms. Sternenberg violated NH GAL Rule 503.06 which either was not a judicial act; or, alternatively, an act taken in the absence of all jurisdiction.....36

    V. Retrospective relief and mootness.......................................................37

    VI. Plaintiff's lack of awareness of conflicts...............................................40

    VII. Inconsistent application of conflict of interest standards........................40

    VIII. The Court should exercise its discretion to grant declaratory relief........41

    IX. Because this case is in the public interest, failure by this Court to exercise its discretion to grant declaratory relief would violate the Petition Clause...........43

    X. Plaintiff should be granted leave to amend his Complaint if "justice so requires.".............................................................................................45

    XI. Prematurity of the Magistrate Judge's Recommendations.......................46

CONCLUSION..............................................................................................47

CERTIFICATE OF SERVICE.........................................................................50

# TABLE OF AUTHORITIES

## Cases

Al Shimari v. CACI Intern, Inc., 679 F.3d 205 (4th Cir. 2012)...........................34

Albrecht v. Metro. Pier & Exposition Auth., 338 F. Supp. 2d 914 (N.D. Ill. 2004). 29

Allen v. DeBello, 861 F.3d 433 (3d Cir. 2017)...........................................41, 46

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997).........................................43

Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993)................................33

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................30

BE & K Constr. Co. v. NLRB, 536 U.S. 516 (2002).....................................43 f.

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)...........................................30

Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000)............................................42

Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379 (2011).....................43 ff., 49

Briscoe v. LaHue, 460 U.S. 325 (1983)......................................................33

Brown v. Louisiana, 383 U.S. 131 (1966).....................................................44

Caperton v. AT Massey Coal Co., Inc., 556 U.S. 868 (2009)........................40, 48

Carroll v. Princess Anne, 393 U. S. 175 (1968).............................................38

Cegalis v. Trauma Inst. & Child Trauma Inst., Inc., 2:19-cv-00153 (D. Vt. May 5, 2023)..................................................................................................34

Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005). 31

Cok v. Cosentino, 876 F.2d 1 (1st Cir. 1989)...........................................34 ff.

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)..................33

Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022)............38

Erickson v. Pardus, 551 U.S. 89 (2007).......................................................30

Foman v. Davis, 371 U.S. 178 (1962).....................................................45, 49

Forrester v. White, 484 U.S. 219 (1988)......................................................34

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000).....38

Frye v. United States, 293 F. 1013 (D.C. Cir. 1923)........................................33

Gagliardi v. Sullivan, 513 F.3d 301 (1st Cir. 2008)......................................31

Gibson v. Goldston, No. 22-1757, (4th Cir. October 30, 2023).....................34, 47

Giragosian v. Ryan, 547 F.3d 59 (1st Cir. 2008)...........................................31

Gonzalez-Gonzalez v. United States, 257 F.3d 31 (1st Cir. 2001)..............45 f., 49

Harrison v. Owens, No. 8:11-2215-MGL, (D.S.C. March 28, 2014)....................32

Holzemer v. City of Memphis, 621 F.3d 512 (6th Cir. 2010)............................44

Honig v. Doe, 484 U.S. 305 (1988)..............................................................38

In re Coffey's Case, 157 N.H. 156 (2008)......................................................18

In re Mussman, 112 N.H. 99 (1972)..............................................................18

In re Petition of Judicial Conduct Comm., 151 N.H. 123 (2004).......................18

In re Thayer, 145 N.H. 177 (2000)...............................................................17

Ingram v. Township of Deptford, 858 F. Supp. 2d 386 (D.N.J. 2012).................33

Jackson Women's Health Organization v. Dobbs, 945 F. 3d 265 (5th Cir. 2019)....31

Justice Network Inc. v. Craighead Cnty., 931 F.3d 753 (8th Cir. 2019)...7, 30, 41 f., 46, 49

Kentucky v. Graham, 473 U.S. 159 (1985)....................................................32

Lawrence v. Kuenhold, 271 Fed. Appx. 763 (10th Cir. 2008)............................42

Levine v. Wiss & Co., 478 A.2d 397 (N.J. 1984)........................................34, 48

Mack v. Warden Loretto FCI, 839 F. 3d 286 (3d Cir. 2016)..............................44

McDonald v. Smith, 472 U.S. 479 (1985)......................................................44

Mitchum v. Foster, 407 U.S. 225 (1972)........................................................43

Moore v. Ogilvie, 394 U. S. 814 (1969)..........................................................38

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982)................................44

Neitzke v. Williams, 490 U.S. 319 (1989).......................................................45

O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152 (1st Cir. 2004)....................45, 49

Opinion of the Justices, 128 N.H. 17 (1986)....................................................20

Opinion of the Justices, 140 N.H. 297 (1995)..................................................18

Petition of Right, 3 Car 1 c 1 (1628)............................................................43

Petition of Union Leader Corp., 147 N.H. 603 (2002).....................................28

Pierson v. Ray, 386 U.S. 547 (1967)....................................................32, 36

Politi v. Tyler, 751 A.2d 788 (Vt. 2000)...............................................34, 48

Porter v. Clarke, 852 F. 3d 358 (4th Cir. 1987)............................................38

Pulliam v. Allen, 466 U.S. 522 (1984)......................................................41

Richelson v. Richelson, 130 N.H. 137 (1987)..........................................33, 48

Rippo v. Baker, 137 S. Ct. 905 (2017)...................................................40, 48

Roe v. Wade, 410 U.S. 113 (1973).........................................................38

Samuels v. Mackell, 401 U.S. 66 (1971)................................................43, 49

Southern Pacific Terminal Co. v. ICC, 219 U. S. 498 (1911)............................38

Steffel v. Thompson, 415 U.S. 452 (1974).................................................41

Stump v. Sparkman, 435 U.S 349 (1978)..................................................36

Tapply v. Zukatis, 162 N.H. 285 (2011)...............................................40, 48

Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34 (1st Cir. 2010)...............................31

Taylor v. Farrier, 910 F.2d 518 (8th Cir. 1990)............................................30

Telco Communications, Inc. v. Carbaugh, 885 F.2d 1225 (4th Cir. 1989).............38

The Bill of Rights 1689, 1 William & Mary Sess 2 c 2.....................................43

Troxel v. Granville, 530 U.S. 57 (2000)....................................................29

United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217 (1967)

.................................................................................................44

United States v. Cruikshank, 92 U.S. 542 (1875)..........................................44

United States v. Isaacson, No. 09-cv-332-JL (D.N.H. July 15, 2011)...................31

United States v. Rahimi, 61 F. 4th 443 (5th Cir. 2023)...........8, 22, 24 ff., 28 f., 42

United States v. W. T. Grant Co., 345 U. S. 629 (1953)...................................38

Van Deelen v. Johnson, 497 F.3d 1151 (10th Cir. 2007).................................44

Wilton v. Seven Falls Co., 515 U.S. 277 (1995)...........................................43

Witte v. Justices of New Hampshire, 831 F.2d 362 (1st Cir. 1987)...............11, 20

**Statutes**

18 U.S.C. § 242..............................................................................32
28 U.S.C. § 636(b)(1)......................................................................30
42 U.S.C. § 1983...............................7, 31, 32pp., 41pp., 42, 45
Civil Rights Act of 1866..............................................................32pp.
Ku Klux Klan Act of 1871............................................................32p.
NH GAL Rule 503.06.....................................................................36

**Constitutional Provisions**

N.H. Const. Pt. I, Art. 35.................................................................19
U.S. Const. amend. I...................................................................43pp.
U.S. Const. amend. XIV......................................7, 29, 39, 40pp., 48

**Other Authorities**

12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.2
(2d ed. 2017)....................................................................................30
Judicial Immunity at the (Second) Founding: A New Perspective on § 1983. 136
Harv. L. Rev. 1456. March 2023.....................................................31
Magna Carta (1215).........................................................................43
Ronald J. Krotoszynski, Jr., Reclaiming the Petition Clause............................43

**INTRODUCTION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking declaratory relief that the defendants' failure to disclose various conflicts of interest and other relevant materials to Plaintiff in a timely fashion during the course of Plaintiff's family law case violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

It seeks only a declaratory judgment in Plaintiff's favor.

In particular, Plaintiff has not sought any monetary damages.

Further, because of these past alleged injuries by the Defendants, Plaintiff's federal constitutional rights continue to be violated on a continuing, and ongoing basis, up to and including the present time.

Consequently Plaintiff's request for "[a] declaratory judgment [would also] define the legal rights and obligations of the parties in anticipation of some future conduct" in any related future state or federal court proceeding. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019).

Indeed, the related state court proceedings remain ongoing. The most recent state trial court hearings in the ongoing civil DV case were held on 11/15/2023 & 11/16/2023, wherein Ms. Sternenberg refused to attend as a witness after being issued a subpoena by Plaintiff. Related NH Supreme Court appeals No. 2023-0181 and No. 2023-0602 of these proceedings are also still pending.

**OVERVIEW OF STATE COURT CASES**

Plaintiff and his ex-wife have now been involved for over seven years in a multi-state diversity of citizenship family law case spanning events in four

different states (New Hampshire,[1] Massachusetts,[2] California,[3] and Michigan[4]) involving (A) an ongoing child custody dispute in a New Hampshire state court divorce proceeding, *Albrecht v. Albrecht*, No. 659-2016-DM-00288, and (B) allegations of "domestic violence" in two separate New Hampshire state court civil domestic violence proceedings, *Albrecht v. Albrecht*, 659-2016-DV-00120, No. 659-2019-DV-00341. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[5]

Concerning the ongoing child custody dispute, Plaintiff's family law case is one of at least nine New Hampshire Family law cases[6] wherein former judge Julie Introcaso appointed her close friend Kathleen Sternenberg as *Guardian ad Litem*, despite the conflict of interest.

**Directly contrary to the Magistrate's report (Doc 23), there is no evidence that Ms. Introcaso appointed defendant Bruce DalPra as a marital master. Any assignment of Master DalPra to Plaintiff's family law case was more likely made by defendant Administrative Judge David King.**

**Also directly contrary to the Magistrate's report (Doc 23), DalPra recommended that Introcaso appoint Sternenberg as *guardian ad litem* for the Albrechts' younger <u>three</u> children (C.A., S.A., and G.A), who, at that time, were minors.**

At the time Plaintiff's state family law case commenced, the Albrechts' oldest child, P.A., was an adult, and not subject to and recommendations or orders made by the various defendants.

Plaintiff opines that this is the reason why, at the present time, Plaintiff enjoys a positive relationship with his oldest son, P.A., who has resided together

---

1   See Doc 27-29, 10/13/2022 Hearing on Jurisdiction, held *sua sponte* by Judge Kevin Rauseo.

2   See Doc 27-7, discussing Collinsville Bible Church located in Massachusetts, as well as the related NH state court DV action that arose entirely out of the events of November 3, 2019 that occurred solely in Massachusetts; e.g. Doc 25-17.

3   See Doc 27-7 discussing GAL's recommendations to relocate Plaintiff's minor children to California. See also transcript of 11/6/2020 state court hearing wherein Plaintiff's ex-wife testified (Tr. 79) that she "reside[ed] at 730 West Alegria Avenue in Sierra Madre, California."

4   *Supra*, Note 1, at pp. 50-52 discussing that Ms. Albrecht purchased her home in Michigan on October 15, 2020 and drove out from Michigan sometime in October 2020, and never came back. Cf. Ms. Albrecht's <u>conflicting</u> testimony at Note 3, *supra*.

5   Plaintiff's *Motion for Judicial Notice* of *United States v. Rahimi*, 61 F. 4th 443 (5th Cir. 2023) and related materials (Doc 35) are incorporated by reference herein, the same as if plead in full.

6   See Doc 27-4. See also Attachment 2.

with Plaintiff since Christmas 2018. By way of contrast, Plaintiff opines that his younger three children have suffered immense harm as a consequence of the actions of the various defendants in this matter, including, but not limited to, being relocated all over the United States multiple times, all so Ms. Sternenberg could earn over $10,000 in compensation from illegal fees charged to Plaintiff's family by Ms. Sternenberg, by way of orders issued by Ms. Introcaso, in a "cash for kids" scheme that was promulgated on multiple New Hampshire families.

**Introcaso/Sternenberg conflict mutually acknowledged in open court in 2014.**

Prior to the onset of this case, on May 1, 2014, Ms. Introcaso and Ms. Sternenberg both acknowledged their close friendship, on the record in open court, in a different case, wherein the following exchange occurred:

> **Ms. Introcaso:** *And I recognize Attorney Sternenberg's writing, I believe – maybe, maybe not – but her name. Counsel should know that Attorney Sternenberg and I are very good friends. Very good friends. I don't know if she shared that with you, or she did not. And I'm going to look at K. – who I refer to as K. I don't call her Kathleen or – K., are we very good friends?*

> **Ms. Sternenberg:** *Yeah, I think so.*

> **Ms. Introcaso:** *Yeah, we are very good friends. Very good friends like godparent of my child. We are very close.*

> *See* May 1, 2014 hearing in *Sobell v. Sobell*, No. 659-2013-DM-00348, at 2-3.[7]

Marital Master Bruce F. DalPra was also fully aware <u>since 2014</u>, of this conflict of interest between Ms. Introcaso and Ms. Sternenberg. As Ms. Introcaso testified in her February 8, 2021 sworn deposition (at 61:21), "Bruce [DalPra] has known that for seven years," i.e. since 2014.

However New Hampshire has not provided equal protection to the various litigants in these nine cases. In at least one case, *Campbell v. Partello*, No. 659-2018-DM-00702, Ms. Introcaso recused herself based on the conflict of interest.

---

7   See <u>Doc 27-4</u>. See also Attachment 3.

In Plaintiff's NH state family law case, however, Plaintiff was <u>unaware</u> of the conflict of interest, and thus <u>did not have any opportunity to file any motion for recusal based on this conflict</u>, until it was already "too late."

In yet another of these nine family law cases, *Loudermilk v. Montgomery*, No. 659-2015-DM-00185, Ms. Sternenberg continued to appear in hearings before Ms. Introcaso in open court,[8] and <u>after</u> Ms. Introcaso's recusal order in *Campbell v. Partello*.

Consequently, with regard to the conflict between Ms. Introcaso and Ms. Sternenberg, various "similarly situated" individuals have been treated radically differently by the New Hampshire state court system, in violation of the equal protection provisions of the federal constitution.

**Ms. Introcaso's statements about Plaintiff's case involving Ms. Sternenberg**

As set forth in the deposition of Ms. Julie Introcaso[9] taken February 8, 2021, the following exchange (at 164-166) occurred about Plaintiff's case:

> **Mr. Waystack:** *Okay. Let's go to Exhibit 17. This is a shorter exhibit again. This is an order on appointment of GAL. And the name of the case is <u>Albrecht</u>. Do you see that?*
>
> **Ms. Introcaso:** Yes.
>
> **Mr. Waystack:** *Now, this one -- if you look at the third page, Judge, third page, Exhibit 17, this one was recommended by Master Bruce DalPra, wasn't it?*
>
> **Ms. Introcaso:** *Yes.*
>
> **Mr. Waystack:** *Okay. And if you go back to page 1 of Exhibit 17, on paragraph 2, can you tell whose handwriting that is for Kathleen Sternenberg?*
>
> **Ms. Introcaso:** *This is a combination. Again, I am almost certain. This is a combination between Master DalPra's writing and -- for example, you will see "<u>Dana Albrecht</u>." That to me looks like Master DalPra's handwriting of that name. Below it appears to be the handwriting of Aline Chasseur, who is his courtroom clerk.*

---

8   See [Doc 27-25](#) and [Doc 27-26](#), testimony of Laura Montgomery.
9   See [Doc 27-18](#). See also Attachment 8.

**Mr. Waystack:** *Paragraph 2 of the appointment, it looks like there's a name initially put in there and then it's crossed out. Do you see that?*

**Ms. Introcaso:** *Yeah.*

**Ms. Introcaso:** *I have no idea. I never conducted a hearing or prepared any forms in this case.*

**Mr. Waystack:** *Okay.*

**Ms. Introcaso:** *Oddly, I am familiar with it. This is something of a notorious case. But all I know is the name Albrecht and Albrecht.[10]*

**Mr. Waystack:** *Is this a case where, because you respected Master DalPra and he usually made good judgments, you just looked at it quick and signed it?*

**Ms. Introcaso:** *Absolutely. Again, I – yes.*

**Mr. Waystack:** *Okay.*

**Ms. Introcaso:** *Appointment of a GAL form, I cosigned it.*


**Overview of Judge King's role in Introcaso/Sternenberg investigation**

Pursuant to the 2/8/2021 Deposition of Julie Introcaso,[11] Judge King was aware of the conflict of interest between Ms. Introcaso and Ms. Sternenberg as early as March 30. 2018.

**March 30, 2018:** Judge Introcaso sends an email[12] to Judge King acknowledging the receipt of materials related to her judicial review. She requests feedback from various court personnel and addresses the issue of Kathleen Sternenberg, a lawyer on her "conflicts" list due to their long-standing friendship and professional relationship. Judge Introcaso falsely alleges that she had appointed Sternenberg as a *Guardian ad Litem* (GAL) *only* in cases where parties specifically requested her services, and once as a mediator.

---

10  *See Witte v. Justices of New Hampshire, 831 F.2d 362 (1st Cir. 1987).*

11  See Doc 27-18.

12  See Doc 27-18, at pages 69-71 (Deposition Exhibit 1) that is an email exchange between Judge Introcaso and Judge King.

**April 27, 2018:** Judge Introcaso sends a follow-up email[13] to Judge King expressing concern about the judicial evaluation process. She highlights her sensitivity to the subject due to recent events and decisions regarding the evaluation process. In this email, she also mentions three other lawyers who might pose a conflict of interest: Kalie Lydon Esq. and Ed Richards Esq., who filed a Judicial Conduct Complaint against her, and Attorney Meredith Gregory-Gallant, whom she had referred for potential criminal conduct.

**April 27, 2018:** Judge King responds to Judge Introcaso's email,[14] apologizing for missing her earlier communication. He explains the process of judicial evaluations, mentioning that the names for evaluations are pulled randomly and that anyone can complete a survey online. He addresses the issue raised by Judge Introcaso about Kathleen Sternenberg and others, indicating that they are aware of attempts to manipulate evaluations (referencing Paul Moore's situation) and are reviewing their procedures. Judge King reassures Judge Introcaso that they generally do not have negative feedback about her and do not anticipate an unfavorable evaluation.

These exchanges provide insight into the judicial evaluation process, concerns about potential conflicts of interest, and the knowledge Judge King had as early as March 30, 2018 about the conflict of interest between Judge Introcaso and Kathleen Sternenberg.

Despite stating in an email that she appointed Sternenberg as a GAL only when parties specifically requested her services, Introcaso admitted there were instances where she appointed Sternenberg even when the parties had not requested her. This acknowledgment came during the deposition when she was questioned about her past practices. *See deposition transcript at pages 26-30.*

In the context of the situation involving Judge Introcaso's email[15] dated November 29, 2018, regarding the appointment of Kathleen Sternenberg as a Guardian ad Litem (GAL) in the case of *Loudermilk v. Montgomery*,[16] there is also a mention of Judge King. Judge King plays a significant role in this scenario as he is

---

13  *Id.*

14  *Id.*

15  See Exhibit 19 of Judge Introcaso's deposition, and Judge Introcaso's testimony about this email at pages 48-60 of her deposition.

16  *Supra* Note 8.

the one who _allegedly_ referred the _Loudermilk v. Montgomery_ matter to the Judicial Conduct Committee.

The deposition indicates Judge Introcaso's actions in appointing Sternenberg as GAL in _Loudermilk v. Montgomery_, were later scrutinized, _allegedly_ leading to Judge King's involvement. He _allegedly_ referred the matter to the Judicial Conduct Committee, suggesting that there were concerns about Judge Introcaso's conduct in this appointment.

Judge Introcaso's email and her subsequent appointment of Sternenberg raise questions about the impartiality and thoroughness of the GAL selection process. Her personal connection with Sternenberg and the hurried nature of the appointment, as indicated in her email, are central to these concerns.

The fact that Judge King _allegedly_ referred this matter to the Judicial Conduct Committee highlights the seriousness of the situation and suggests that Judge Introcaso's actions were seen as potentially violating judicial conduct standards.

However, given that the Judicial Conduct Committee apparently never investigated _Loudermilk v. Montgomery_,[17] this calls into question whether Judge King _actually_ referred Judge Introcaso's actions to the Judicial Conduct Committee in this case.

**Overview of Judge Derby's role in Introcaso/Sternenberg investigation**

Judge Derby was aware of the conflict of interest between Ms. Introcaso and Ms. Sternenberg since at least April 26, 2019. Indeed, on this date, Judge Derby issued the following handwritten[18] order (index #47) in _Campbell v. Partello_:

---

17 _Id._

**THE STATE OF NEW HAMPSHIRE**

**ITMO David Campbell and Robin Partello**

**Docket No. 659-2018-DM-702**

**ORDER on #41, Motion to remove GAL**

**Prior to ruling on the motion to remove GAL, the undersigned officer reviewed the October 24, 2018 Order Appointing GAL, the February 15, 2019 Order approving the Master's recommendation on the GAL's motion for instruction, the February 15, 2019 order approving the Master's recommendation on the Motion to Strike and the March 12, 2019 orders re the GAL's fee cap and GAL payment method, as well as the relevant motions and objections.**

**Reviewing all of those matters <u>de</u> <u>novo</u>, the undersigned officer would have issued the same orders, though the respondent may pay the GAL by personal check (in addition to the other methods) though the respondent does not use personal checks.**

**Substantively, the motion to dismiss/remove GAL is denied. The respondent's allegations do not form a sufficient basis to terminate the GAL and start over, which would cost significant funds and waste judicial resources. The GAL's sole mission is to investigate and advocate for [B.C.], and this may cause friction with the parents. That is a normal part of the process.**

**Motion denied.**

**Date: 4-26-2019**                    **/s/ Mark S. Derby, Judge**
                                       **Ninth Circuit Court**

In Judge Derby's order, *supra*, the "Master" refers to Marital Master Bruce F. DalPra, and the "GAL" refers to Ms. Kathleen Sternenberg.

---

18  A typed version is provided here. The reader may refer to Exhibit 10 of Judge Introcaso's deposition for the original handwritten version. See also Doc 27-9.

Consequently, <mark>prior to the 5/9/2019 hearing in Plaintiff's own family law case</mark>, Marital Master Bruce F. DalPra, Julie Introcaso, Judge Derby, and Judge King were <u>all aware</u> of the conflict between Ms. Introcaso and Ms. Sternenberg.

## Summary Report of Proceedings, Findings and Recommendations of the New Hampshire Judicial Conduct Committee (JCC)

The New Hampshire Judicial Conduct Committee offered the following *Summary Report of Proceedings, Findings and Recommendations[19]* pursuant to Supreme Court Rule 40(12)(d)[20] as follows:

On or about February 16, 2021, former Judge Julie Introcaso (Introcaso) offered, and the Committee elected, to resolve this matter by way of a *Stipulation and Agreement* thereby terminating these judicial conduct proceedings without a hearing. Ms. Introcaso entered into this *Stipulation and Agreement*, with the advice of counsel, and entered the following pleas and waivers.

Introcaso acknowledged receipt of the *Statement of Formal Charges[21]* dated October 14, 2020. Introcaso acknowledged that she understood that she had a right to a public hearing to contest the charges in the *Statement of Formal Charges* pursuant to New Hampshire Supreme Court Rule 40(9), (10) and (11) and acknowledged that she further understood that a hearing had been scheduled for February 17, 2021 on the *Statement of Formal Charges*. Introcaso signed the *Stipulation and Agreement* in lieu of this public hearing; waived her right to this public hearing under Rule 40; and agreed that the *Stipulation and Agreement* would serve as part of the official record of these proceedings.

---

19 See Doc 27-19. See also Attachment 10.

20 New Hampshire Supreme Court Rule 40(12)(d), *Dispositions Following Hearing*, provides in relevant part that: *Violation Warranting Formal Discipline*. If the Committee determines, by the affirmative vote of at least seven of its members, that the judge complained against has violated the Code of Judicial Conduct and that the violation is of a serious nature so as to warrant formal disciplinary action by the Supreme Court, the Committee shall prepare a summary report of the proceeding and of its findings which shall be filed in the public docket of the Committee. Such report shall include the recommendations of the Committee (if any) concerning the sanctions to be imposed. Any member who dissents from the determination of the Committee may prepare a minority opinion which shall be appended to the report of the Committee. A copy of the decision shall be sent to the judge and Committee's Hearing Counsel, and the Committee shall also notify the Supreme Court that a decision finding serious judicial misconduct has been docketed.

21 See Doc 27-15. See also Attachment 7.

Introcaso pleaded *nolo contendere* to the charges that she violated the following provisions of the Code of Judicial Conduct (Supreme Court Rule 38) as alleged in the *Statement of Formal Charges* as follows:

a. Julie Introcaso, in violation of Canon 1, Rule 1.1, failed to comply with the law, including the Code of Judicial Conduct.

b. Julie Introcaso, in violation of Canon 1, Rule 1.2, failed to act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

c. Julie Introcaso, in violation of Canon 1, Rule 1.2, failed to avoid impropriety and the appearance of impropriety.

d. Julie Introcaso, in violation of Canon 2, Rule 2.5(A), failed to perform judicial responsibilities competently and diligently.

e. Julie Introcaso, in violation of Canon 2, Rule 2.5(B), failed to cooperate with other judges and court officials in the administration of court business.

f. Julie Introcaso, in violation of Canon 2, Rule 2.11, failed to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.

g. Julie Introcaso, in violation of Canon 2, Rule 2.16(A), failed to cooperate with judicial disciplinary agencies.

h. Julie Introcaso, in violation of Canon 2, Rule 2.16(A), failed to cooperate and be candid with the judicial disciplinary authority.

Introcaso resigned her judicial appointment as a justice of the New Hampshire Circuit Court, effective as of February 16, 2021. Introcaso acknowledged that she understood and has agreed that she is responsible to reimburse the Administrative Office of the Courts (AOC) for the attorney's fees and expenses which the JCC incurred in the investigation, charging, and prosecutorial stages of this case pursuant to New Hampshire Supreme Court Rule 40(13-A), *Expenses Relating to Discipline Enforcement*.

Introcaso also acknowledged that she understood that as a result of her stipulation and agreement and the terms of the executed *Stipulation and Agreement*, the Committee would enter the finding, by clear and convincing evidence, that she had violated the provisions of the Code of Judicial Conduct as

stated above and that the Committee would prepare a summary report of this proceeding and of its findings and recommendations (if any) concerning the sanctions to be imposed which would be filed in the public docket of the Committee and forwarded to the New Hampshire Supreme Court as required by New Hampshire Supreme Court Rule 40(12)(d).

Introcaso further agreed to waive any rights which she had to a *de novo* hearing in connection with this matter and acknowledged that the Committee's findings and disposition would be final pursuant to New Hampshire Supreme Court Rule 40(12)(d)(1) and (2).

Introcaso acknowledged that she has had the advice of counsel in connection with the preparation and execution of the *Stipulation and Agreement* and acknowledged that she understood both the terms and effect of such *Stipulation and Agreement* and that she executed the *Stipulation and Agreement* of her own free will.

Introcaso agreed that the documents scanned to a compact disc prepared by Hearing Counsel are authentic, are what they purport to be, are relevant to the issues in this matter, and may be admitted to the record as a full exhibit.

The Committee and Introcaso agreed that upon execution of the *Stipulation and Agreement*, the Committee would enter a finding of violations of the Code of Judicial Conduct as stated therein by clear and convincing evidence, that the hearing then set for February 17, 2021 would be canceled and that, due to the factual circumstances, the Committee would refer this matter to the New Hampshire Supreme Court for consideration of the imposition of formal discipline under Supreme Court Rule 40(12)(d).

The *Statement of Formal Charges* accuses Introcaso of multiple serious violations of the Code of Judicial Conduct that are fundamentally at odds with the impartial administration of justice. The JCC is acutely mindful of the importance of public accountability for judges who hold a special position of responsibility and trust in our constitutional system of government. The New Hampshire Supreme Court has observed that there is significant value in the airing of official misconduct in a public proceeding. "When members of the public are informed as to judicial misconduct, they are better able to recognize, report, and otherwise protect themselves against future instances of similar misconduct." *In re Thayer*, 145 N.H.

177, 181 (2000). Indeed, Part I, Article 8 of the New Hampshire Constitution enshrines this principle:

> **All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted. The public also has a right to an orderly, lawful, and accountable government.**

Resolving this case by *Stipulation and Agreement*, the public is deprived of the full scope of transparency that would accompany an adversarial hearing. However, all legal settlements and plea agreements involve the balancing of competing interests. The JCC decided that conclusion of this case without a public hearing served the best interests of justice. In reaching that decision the JCC relied on two points in particular.

First, Introcaso does not contest any of the allegations, including the factual allegations, contained in the *Statement of Formal Charges*. Pursuant to the terms of the *Stipulation*, the JCC enters a finding that there is clear and convincing evidence that Introcaso violated each of the Canons of the Code of Judicial Conduct set forth in the *Statement of Formal Charges*. In the view of the JCC, this fulfilled the constitutional mandate that "all magistrates" be "at all times accountable to [the people]."

Second, and perhaps more importantly, by entering into the *Stipulation* Introcaso agreed to resign her commission as a judge effective immediately. It is the Committee's understanding that a judge may only be removed from office through impeachment in the New Hampshire Legislature or by the combined actions of the legislative and executive branches through the process of address. *See, e.g.*, N.H. Const. pt. II, arts. 17, 38, 73; *In re Mussman*, 112 N.H. 99, 100-101 (1972); *see generally In re Petition of Judicial Conduct Comm.*, 151 N.H. 123, 127 (2004). Thus, the harshest sanction the Supreme Court itself may impose is suspension without pay. *See generally Opinion of the Justices*, 140 N.H. 297, 302 (1995). Even then, it remains unclear whether the Supreme Court has "the authority to effectively remove a judge by unconditionally suspending her for an indefinite period of time." *In re Coffey's Case*, 157 N.H. 156, 188 (2008).

As a result, even if this case had resulted in findings against Introcaso on all charges after a public hearing, the JCC could not have recommended the immediate termination of Introcaso's judicial commission as a sanction to be imposed by the Supreme Court. Indeed, it may have been many months before the New Hampshire Legislature would have acted on this, had it chosen to do so. Part I, Article 35 of the New Hampshire Constitution provides: "It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit."

The JCC determined that if Introcaso were allowed to retain her judicial commission, even while suspended, it would run counter to these important constitutional principles. Thus, the certainty that she would no longer hold a position of public trust was of paramount concern to the JCC.[22]

This being said, the JCC is particularly troubled by certain aspects of Introcaso's misdeeds. The Committee feels some of these misdeeds must be addressed explicitly. In her formal answer to the *Partello* complaint, Introcaso claimed that her initial approval of her "longstanding friend" as a guardian ad litem ("GAL") was merely an oversight because she approved the marital master's recommendation "likely… without ever looking to see who he had appointed on page one." *See Judicial Conduct Committee's (JCC) Exhibit List Exhibit 18*. She acknowledged that "[b]asic orders" recommended by a master or referee "were usually signed without the most diligent review." *Id.* She asserted that "there simply isn't enough time [to] read every order coming out of Nashua Family Division in detail." *Id.*

Throughout her answer, Introcaso downplayed the significance of her approval of the recommendations made by the marital master in the case. For example, when Introcaso approved a recommendation from the marital master that Partello's failure to cooperate with the GAL may result in sanctions, Introcaso answered the complaint by writing "[t]hose are not my words and that was not my decision, it was the Master's decision recommended to me." *Id.*

Introcaso's response betrays a fundamental misunderstanding about the roles and responsibilities of a judge in approving recommendations of a marital master or

---

22 Notably the JCC did *not* address Ms. Sternenberg's role in this ongoing "cash for kids" scheme.

referee. The New Hampshire Supreme Court has observed that marital masters do not exercise any independent judicial authority. Rather, the Court observed that the "final authority may be exercised only by an officer appointed in accordance with the State Constitution and invested with the constitutional incidents of judicial office." *Opinion of the Justices*, 128 N.H. 17, 19 (1986). The United States Court of Appeals for the First Circuit has rejected the notion that "reports of marital masters are not subject to any significant judicial review, but rather are routinely rubber stamped by the judge without reviewing the record." *Witte v. Justices of New Hampshire Superior Court*, 831 F.2d 362, 363 n.2 (1st Cir. 1987). Introcaso's cavalier attitude toward her constitutional responsibility was deeply disturbing and undermines the public confidence in the judicial process where masters and referees are involved.

Introcaso's lack of candor and cooperation with the JCC is also profoundly troubling. **In her further answer to the *Partello* complaint, Introcaso minimized her relationship with Kathleen Sternenberg and asserted that "Attorney Sternenberg has served as a GAL in one, perhaps two cases of my own, only after the parties have requested her appointment and I made full disclosures on the record." *JCC Ex. 18*.** In her formal *Answer and Defenses to Statement of Formal Charges Pursuant to New Hampshire Supreme Court Rule 40(9) and Request for a Hearing* (hereinafter "*Answer and Defenses*"), Introcaso asserted that her misconduct "is isolated to one case" and "[t]he alleged misconduct did not involve a pattern of misconduct and did not occur over a significant period of time." *JCC Ex. 22 ¶¶72, 73*. **The exhibits submitted by the JCC hearing counsel and stipulated to by Introcaso now show that between 2013 and 2018 Introcaso appointed (or approved marital master recommendations to appoint) Sternenberg in at least eight cases prior to the *Partello* matter. *JCC Ex. 37*.**[23]

More troubling, however, is Introcaso's dishonesty with respect to the alteration of the so-called "Apple Pay Order" and the "Fee Cap Order." *See Statement of Formal Charges ¶¶12-13*. When Introcaso submitted her Answer to the *Partello* complaint to the JCC on January 10, 2020, Introcaso knew full well that white out had been applied to these two Orders in the original court file. She made no mention of this alteration of the file in her January 10 Response to the *Partello* Complaint. When the JCC initiated an inquiry into the alteration of the court file,

---

23  See Attachment 9.

Introcaso answered by stating unequivocally, "I did not apply white out correction tape to cover up or obscure two court orders that I had issued on March 12, 2019." *JCC Ex. 20* at 1. She went on to state, "I did not know how or when the March 12 Orders became obscured by white out correction tape." *Id.* Further, she asserted, "But I reiterate that I had nothing to do with my March 12 Orders being whited-out or obscured." *Id.* at 2. In the *Statement of Formal Charges* the JCC alleged that "[t]here is no evidence that anyone other than Judge Introcaso had whited out the Apple Pay or Fee Cap Order." *See Statement of Formal Charges* ¶44(e). In her *Answer and Defenses*, Introcaso denied that allegation. *Answer and Defenses* ¶44.

Only on the eve of the evidentiary hearing did Introcaso finally enter into a Stipulation that "she does not contest and thus pleads *nolo contendere* to the allegations in the [*Statement of Formal Charges*]." *Stipulation and Agreement* ¶1. Despite Introcaso's early unequivocal denials, she does not now contest that the evidence outlined in and supporting the *Statement of Formal Charges* established by clear and convincing evidence that she was responsible for applying white out to the original Apple Pay Order and Fee Cap Order. *Id.* ¶¶4(g),(h),6. Rather than accepting responsibility for her actions, Introcaso had instead consistently cast blame for the altered file on two wholly-innocent, long-time, dedicated court employees.

**By highlighting these aspects of the case, the JCC does not mean to downplay Introcaso's other serious violations of the Canons of Judicial Conduct as set forth in the Statement of Formal Charges.**

In spite of Introcaso's numerous acts of malfeasance, the JCC feels that it has protected the public to the maximum extent of its ability by entering into the *Stipulation and Agreement*, which secured the immediate removal of Introcaso from office. With her acknowledgment of wrongdoing, the Committee further believes she is being held accountable to the public.[24]

Introcaso has removed herself from judicial office by resigning on or about February 16, 2021, and has agreed to reimburse the Administrative Office of the Courts (AOC) for the attorney's fees and expenses which the JCC incurred in the investigation, charging, and prosecutorial stages of this case pursuant to New

---

[24] Neither Ms. Introcaso or Ms. Sternenberg have ever been held accountable in Plaintiff's case, further underscoring the unequal treatment of litigants in at least nine NH family law cases wherein there was a conflict of interest.

Hampshire Supreme Court Rule 40 (13-A), *Expenses Relating to Discipline Enforcement.* The Committee accordingly makes no additional recommendations to the Supreme Court with respect to sanctions.

## **BACKGROUND PROCEDURAL HISTORY OF STATE COURT CASES.**

1. 5/1/2014: Hearing in *Sobell v. Sobell*, No. 659-2013-DM-00348, wherein Ms. Sternenberg and Ms. Introcaso mutually acknowledged their conflict in open court.[25]

2. 10/29/2015: Judge Introcaso approves fee increases for her friend, Ms. Sternenberg, in *Covart v. Covart*.[26]

3. 4/8/2016: Initial civil domestic violence Order (Judge Paul S. Moore), *Albrecht v. Albrecht.* Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[27]

4. 10/13/2016: Order of appointment of GAL Sternenberg, *Albrecht v. Albrecht*.[28]

5. 1/25/2017: Judge Introcaso approves fee increases for her friend, Ms. Sternenberg, in *Albrecht v. Albrecht*.[29]

6. 8/9/2017: GAL Sternenberg testimony, *Albrecht v. Albrecht*.[30]

7. 3/30/2018: Judge Introcaso emailed Judge King to acknowledge receipt of materials for her judicial review. She sought feedback from court personnel and discussed her professional relationship with lawyer Kathleen Sternenberg, who she listed as a conflict due to their friendship. Introcaso claimed that she appointed Sternenberg as a *Guardian ad Litem* (GAL) only upon specific requests by parties and once as a mediator.[31]

---

25  See Complaint, Exhibit 1. See also Doc 27-5. See also Attachment 3.
26  See Doc 15-5.
27  See Complaint, Exhibit 2.
28  See Complaint, Exhibit 3. See also Doc 27-6. See also Attachment 4.
29  See Doc 15-6.
30  See Complaint, Exhibit 4. See also Doc 27-7. See also Attachment 5.
31  See Doc 27-18, at pages 69-17 (Introcaso Deposition Exhibit 1) that is an email exchange between Judge Introcaso and Judge King.

8. 4/27/2018: Judge Introcaso followed up with Judge King, expressing concerns about the judicial evaluation process. She was sensitive to the topic due to recent developments and mentioned other potential conflicts of interest with three lawyers: Kalie Lydon Esq. and Ed Richards Esq., who filed a complaint against her, and Attorney Meredith Gregory-Gallant, referred for possible criminal conduct.[32]

9. 4/27/2018: Judge King responded to Judge Introcaso, apologizing for overlooking her earlier email. He clarified the judicial evaluation process, stating that evaluations are randomly selected and open for online completion. **King addressed the conflicts mentioned by Introcaso, particularly the Kathleen Sternenberg issue**, acknowledging the awareness of manipulation attempts in evaluations (citing Paul Moore's case) and affirming that they were reviewing procedures. He assured Introcaso of generally positive feedback and unlikely negative evaluation outcomes.[33]

10. 7/5/2018: Former Judge Paul S. Moore disbarment.[34]

11. 3/12/2019: Judge Introcaso approves fee increases for her friend, Ms. Sternenberg, in *Campbell v. Partello*.[35]

12. 3/15/2019: Judge Introcaso recusal order in *Campbell v. Partello*.[36]

13. 4/23/2019: Judge Introcaso approves fee increases for her friend, Ms. Sternenberg, in *Loudermilk v. Montgomery*.[37]

14. 4/26/2019: Judge Derby Order re: Kathleen Sternenberg, *Campbell v. Partello*.[38]

## SUBSEQUENT PROCEDURAL HISTORY OF STATE COURT CASES.

1. As previously set forth, prior to the 10/13/2016 *Order of appointment* of GAL Sternenberg and the 8/9/2017 hearing in Plaintiff's own family law case, Marital Master Bruce F. DalPra and Julie Introcaso were both aware of

---

32  *Id.*
33  *Id.*
34  See Complaint, Exhibit 5.
35  See Doc 15-7.
36  See Complaint, Exhibit 6. See also Doc 27-8. See also Attachment 6.
37  See Doc 15-8.
38  See Complaint, Exhibit 7. See also Doc 27-9.

conflict between Ms. Introcaso and Ms. Sternenberg, that even Ms. Sternenberg acknowledged in open court as early as 2014.

2. ==As previously set forth, prior to the 5/9/2019 hearing in Plaintiff's own family law case, Marital Master Bruce F. DalPra, Julie Introcaso, Judge Derby, and Judge King were all aware of the conflict between Ms. Introcaso and Ms. Sternenberg.==

3. 5/9/2019: Trial court hearing in parenting matter No. 659-2016-DM-00288, presided over by Marital Master Bruce F. DalPra.[39]

4. ==5/30/2019: Judge Derby approves fee increases for Ms. Introcaso's friend, Ms. Sternenberg, in *Ausiaikova v. Meckel*, despite being aware of their conflict.[40]==

5. 9/16/2019: NH Supreme Court declined review in discretionary appeal No. 2019-0436, related to trial court orders dated 5/30/2019 (Judge Introcaso) and 6/30/2019 (Judge Derby) from the 5/9/2019 hearing.[41]

6. 10/25/3029: NH Supreme Court denied motion for rehearing and reconsideration of its 9/16/2019 *Order*, No. 2019-0436.[42]

7. 10/31/2019: Plaintiff's ex-wife filed a false police report in Sierra Madre, CA, misrepresenting custody status.[43]

8. 11/1/2019: Plaintiff filed an *Ex Parte Motion to Contempt and Compel* for parenting time with minor children.[44]

9. 11/12/2019: Plaintiff's ex-wife files a new civil DV petition, launching a second civil DV case, *Albrecht v. Albrecht*, No. 659-2019-DV-00341. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[45]

---

39  See Complaint, Exhibit 8. See also Doc 27-10.
40  See Doc 15-9.
41  See Complaint, Exhibits 9-11. See also Doc 27-11; Doc 27-12; Doc 27-13.
42  See Complaint, Exhibit 12. See also Doc 27-14.
43  See Doc 25-16 at p. 63.
44  See Doc 25-16 at pp. 59-62.
45  See Doc 15-17.

10. **11/19/2019:** Judge Derby denied *Plaintiff's Motion to Consolidate* for hearing with ex-wife's civil DV petition. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[46]

11. **12/9/2019; 12/11/2019; 12/20/2019:** Judge Derby holds a three-day trial in *Albrecht v. Albrecht*, No. 659-2019-DV-00341. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[47]

12. **12/30/2019:** Judge Derby issued a civil DV order of protection against Mr. Albrecht based on Mr. Albrecht's responses in the December 20, 2019 DV hearing, focusing on the November 3, 2019 incident at Collinsville Bible Church in Dracut, Massachusetts, finding against Plaintiff because "**Mr. Albrecht did not have scheduled parenting time.**" Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[48]

13. **01/27/2020:** Judge Derby denied Plaintiff's *Motion to Modify* the civil DV order of protection in an order on post-trial motions. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[49]

14. **2/3/2020:** Judge King's correspondence to the JCC that includes NHJB General Counsel Mary Ann Dempsey's factual investigation report dated January 26, 2020 re: Julie Introcaso and Mark Derby.[50]

15. **10/14/2020:** NH JCC issued *Statement of Formal Charges* against Judge Introcaso.[51]

16. **10/15/2020:** Plaintiff's ex-wife purchases her present residence in East China, Michigan.[52]

17. **10/22/2020** Former NH Supreme Court Justice Gary Hicks writes to then Attorney General Gordon MacDonald, who is presently Chief Justice of the N.H. Supreme Court, concerning Ms. Introcaso.[53]

---

46 See Doc 25-16 at pp. 55-56.
47 See Doc 25-17.
48 *Id.*
49 See Doc 25-16 at pp. 52-54.
50 See Complaint, Exhibit 14.
51 See Doc 27-15. See also Attachment 7.
52 See Complaint, Exhibit 15.
53 See Complaint, Exhibit 16.

18. 10/23/2020: Plaintiff <u>first</u> learned about conflicts via New Hampshire Union Leader article.[54]

19. 11/6/2020: Telephonic hearing in family law case ITMO Dana Albrecht and Katherine Albrecht, with Master DalPra committing proven judicial misconduct. Ms. Albrecht also testifies that she resides in California, despite having already permanently relocated to Michigan.[55]

20. 11/6/2020: Post-hearing, Mr. Albrecht ordered transcript from eScribers, LLC.[56]

21. 11/12/2020: eScribers, LLC informed NHJB of refusal to transcribe Master DalPra's misconduct.[57]

22. 11/13/2020: Judge David King emailed Master DalPra regarding omitted misconduct in the 11/6/2020 transcript.[58]

23. 12/21/2020: Judge Curran extended Judge Derby's 12/30/2019 civil DV order of protection until 12/29/2021 based upon **evidence and testimony in the parenting case,** most recently the 11/6/2020 hearing. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[59]

24. 1/18/2021: Depositions of Judge Derby and Master DalPra taken regarding conflicts between Ms. Introcaso and Ms. Sternenberg.[60]

25. 2/8/2021: Deposition of Ms. Introcaso, revealing Master DalPra's awareness of conflict between Ms. Introcaso and Ms. Sternenberg since 2014.[61]

26. 2/10/2021: JCC Exhibits, JC-19-050-C and JC-20-010-C, In RE: Honorable Julie A. Introcaso.[62]

---

54  See Complaint, Exhibit 17. See also Doc 27-16.
55  See Doc 25-14.
56  See Doc 25-4.
57  See Doc 25-3.
58  See Complaint, Exhibit 20. See also Doc 25-5.
59  See Doc 25-16 at pp. 27-29.
60  See Doc 27-17 and Doc 26-6. See also Attachment 8.
61  See Complaint, Exhibit 22. See also Doc 27-18.
62  See Attachment 9.

27. 2/16/2021: NH Judicial Conduct Committee found no misconduct by Master DalPra based on the first version of the 11/6/2020 transcript.[63]

28. 2/19/2021: NH JCC issued *Summary Report* against Judge Introcaso, JC-19-050-C and JC-20-010-C.[64]

29. 2/22/2021: Julie Introcaso wrote a resignation letter.[65]

30. 3/23/2021: NH Supreme Court found Ms. Introcaso committed proven judicial misconduct.[66]

31. 5/28/2021: NHJB General Counsel Mary Ann Dempsey denied Plaintiff access to key depositions.[67]

32. 7/15/2021: UCCJEA hearing in Michigan in Plaintiff's family law case.[68]

33. 11/15/2021: Ms. Introcaso criminally sentenced via an Alford plea.[69]

34. 12/10/2021: NH Supreme Court ordered a second version of the 11/6/2020 transcript in appeal No. 2021-0192.[70]

35. 12/16/2021: NH Supreme Court found Plaintiff's due process rights were violated, **because he did not have the opportunity to file a motion for recusal, because he lacked key information about his case.**[71]

36. 12/17/2021: News story on Master DalPra's misconduct; he was subsequently removed from all NH family law cases.[72]

---

63 See Doc 26-8.
64 See Doc 27-19. See also Attachment 10.
65 See Doc 27-20.
66 See Complaint, Exhibit 24. See also Doc 27-21.
67 See Complaint, Exhibit 25. See also Doc 27-22.
68 See Complaint, Exhibit 26. See also Doc 27-23.
69 See Doc 27-24.
70 See Doc 25-8 and Doc 25-9.
71 See Doc 26-10. See also Attachment 11.
72 See, e.g. Hayward, Mark. *Foul-mouth family court master ordered off all cases*. New Hampshire Union Leader, December 17, 2021. Available at: https://www.unionleader.com/news/courts/foul-mouth-family-court-master-ordered-off-all-cases/article_702de15b-8680-5e0a-bc06-aabb6c8f3f8c.html

37. 1/18/2022: Testimony by Ms. Laura Montgomery before NH House Children and Family Law Committee.[73]

38. 2/15/2022: Nashua Police Officer Dunn's report on the transcript issues.[74]

39. 2/25/2022: Email from Ms. Introcaso to Plaintiff.[75]

40. 2/25/2022: Ms. Introcaso disbarred.[76]

41. 4/22/2022: NH Department of Justice's PIU concluded there was no evidence of transcript alteration by Master DalPra, but did not address the role of Judge King.[77]

42. 8/26/2022: Deposition of Judge King.[78]

43. 10/3/2022: NH Judicial Conduct Committee prepared exhibits for investigation of Master DalPra.[79]

44. 10/13/2022: Hearing before Judge Kevin Rauseo on jurisdiction.[80]

45. 11/10/2022: NH Supreme Court found Master DalPra committed proven judicial misconduct.[81]

46. 12/20/2022: Third version of the 11/6/2020 transcript docketed by NH Supreme Court.[82]

47. 11/13/2023: Correspondence from current NHJB General Counsel Erin Creegan, declining to provide Plaintiff with requested copies of training materials for New Hampshire judicial officers. Cf. *Petition of Union Leader Corp.*, 147 N.H. 603 (2002). Cf. *also United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[83]

---

73  See Doc 27-25 and Doc 27-26.
74  See Doc 25-10.
75  See Complaint Exhibit 27. See also Doc 27-27.
76  See Complaint Exhibit 28. See also Doc 27-28.
77  See Doc 25-11.
78  See Complaint Exhibit 29. See also Doc 25-12.
79  See Doc 26-11.
80  See Doc 27-29.
81  See Complaint, Exhibit 30. See also Doc 26-12.
82  See Doc 25-14.
83  See Attachment 13. See also Doc 26-13 and Doc 26-14.

48. 11/15/2023 & 11/16/2023: Most recent state trial court hearings in the ongoing *Albrecht* civil DV case, with state appeals No. 2023-0181 and No. 2023-0602 **still pending.** Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).[84]

49. 12/11/2023: Plaintiff's ex-wife files her most recent pleading in the ongoing state civil DV case, highlighting an underlying and ongoing dispute concerning when, where, and under what circumstances Plaintiff and/or his ex-wife (who is a public figure) may exercise their respective First Amendment rights, and whether the exercise of any such First Amendment rights is a legitimate basis for Plaintiff's ex-wife's "fear." Cf. *Albrecht v. Metro. Pier & Exposition Auth.*, 338 F. Supp. 2d 914 (N.D. Ill. 2004).[85]

**Harm suffered by Plaintiff and his three younger children**

First, and foremost, the crux of Plaintiff's federal claims are *not* direct challenges to state court decisions but rather allegations of misconduct and nondisclosure by state officials, which deprived the Plaintiff of a fair legal process.

Because of this misconduct and these nondisclosures, Plaintiff was denied any opportunity during the state court proceedings to take any corrective active in the state court, because Plaintiff (largely) did not know *prior to* relevant state court decisions, about various conflicts of interest and other information not disclosed to Plaintiff.

Consequently, Plaintiff was denied the opportunity to take various corrective actions including, but not necessarily limited to, filing motions for recusal in the state court.

As a result, Mr. Albrecht has had a grand total of roughly 30-40 days of parenting time total with his two daughters in nearly seven years, after Ms. Albrecht's 9/1/2017 relocation to California and subsequent 10/15/2020 relocation to Michigan. This is directly contrary to the parenting rights protected by the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57 (2000).

The underlying multi-state diversity of citizenship family law case has been further complicated by "jurisdiction issues" in light of Ms. Albrecht's 10/15/2020 relocation to Michigan, after which Ms. Albrecht then testified under oath at the

---

84  See Doc 25-18 and Doc 25-19. See also Attachment 14.
85  See Attachments 15-17.

11/6/2020 telephonic hearing that she resided in California, followed by the 10/13/2022 hearing on jurisdiction that was ordered, *sua sponte*, by NH state trial court judge Kevin Rauseo, *not* at the request of either party, and wherein neither party requested a change in jurisdiction.

As these jurisdiction issues remain ongoing, Plaintiff's request for "[a] declaratory judgment [would also] define the legal rights and obligations of the parties in anticipation of some future conduct" in any related <u>future</u> state or federal court proceeding. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019).

## STANDARD OF REVIEW

### Review of Magistrate Judge's Recommendations

A district court reviews *de novo* all portions of a magistrate judge's recommendation to which a party has properly objected. *See* Fed. R. Civ. P. 72. The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," or may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). "De novo review of those portions of the magistrate's report and findings to which a party timely objects is mandated by statute . . . and was crucial to the constitutionality of the Federal Magistrate Act, as amended." *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990); *see also* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.2 (2d ed. 2017) (district judge "must not . . . rubber stamp" magistrate's facts and legal conclusions when conducting de novo review). Finally, Plaintiff appears *pro se.* without any formal training in the law. Consequently, Plaintiff's "pleading[s] should be construed so as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89 (2007).

### Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing whether dismissal is appropriate, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor." *United States v. Isaacson*, No. 09-cv-332-JL, 2011 WL 2783993, at *1 (D.N.H. July 15, 2011) (Laplante, J.) (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). Under Rule 12(b)(6), this Court may consider "facts and documents that are part of or incorporated into the complaint," as well as "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted).

Dismissal is appropriate only if the complaint fails to set forth "factual allegations, either direct <u>or inferential</u> [emphasis added], respecting each material element necessary to sustain recovery under *some* [emphasis added] actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## ARGUMENT

*Note: Plaintiff acknowledges §I of his argument is foreclosed in this jurisdiction and is respectfully made here solely to preserve the issue for further review.*[86]

## I. 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.

As explained by a recent article in the Harvard Law Review:[87]

---

86   If it is so inclined, however, this Court *may*, nevertheless, still issue a *judgment*, rather than an *opinion*, that "a good faith reading of [relevant] precedents requires it to affirm" *Pierson* and its progeny, while at the same time articulating profound respect for alternative viewpoints. *See*, e.g. *Jackson Women's Health Organization v. Dobbs*, 945 F. 3d 265,277-286 (5th Cir. 2019) ("chastising the district court for its 'alarming disrespect for … millions of Americans' who did not agree with prior binding United States Supreme Court precedent and concurring *only* in the judgment").

87   *Judicial Immunity at the (Second) Founding: A New Perspective on § 1983*. 136 Harv. L. Rev. 1456. March 2023.

There is consensus that after the Civil War, judicial immunity was eliminated in the criminal context under the Civil Rights Act of 1866. Given that the Ku Klux Klan Act of 1871 considered the Civil Rights Act of 1866 to the utmost degree when imposing civil liability for violations of people's constitutional rights, and given that the Ku Klux Klan Act of 1871 was meant to be even broader than the Civil Rights Act of 1866, 42 U.S.C. § 1983 should therefore be understood to also eliminate judicial immunity.

As the Harvard Law Review (*Id.*) further argues:

A rereading of the history of 42 U.S.C. § 1983, including its legislative history, and a comparison of 42 U.S.C. § 1983 to 18 U.S.C. § 242 reveal that the [United States Supreme Court's] decision in [*Pierson v. Ray*, 386 U.S. 547 (1967)] rests on erroneous foundations.

The more developed argument set forth in §I of *Plaintiff's Memorandum of Law in Support of Objection to Kathleen Sternenberg's Motion to Dismiss* (Doc 12-1) is incorporated here by reference herein, the same as if plead in full.

Consequently, Plaintiff respectfully wishes to preserve an argument that various prior United States Supreme Court decisions on judicial immunity were wrongly decided.

## II. Ms. Sternenberg is not entitled to quasi-judicial immunity.

Plaintiff disputes all portions of the Magistrate's report that afford Ms. Sternenberg absolute quasi-judicial immunity.

In the first instance, a defendant cannot use immunity defenses to shield herself from a lawsuit brought against her in her official capacity. See *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("An official in a personal-capacity action may . . . be able to assert personal immunity defenses" but "[i]n an official-capacity action, these defenses are unavailable.") *See also Harrison v. Owens*, No. 8:11-2215-MGL, at *4 n.2 (D.S.C. March 28, 2014) ("[I]mmunity, either absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities.").

*Arguendo*, Ms. Sternenberg (in her individual capacity) is an attorney in private practice, not a "public official." Plaintiff acknowledges that "[a]s a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity." *Ingram v. Township of Deptford*, 858 F. Supp. 2d 386, 390 (D.N.J. 2012). However, "Quasi-judicial immunity is given <u>only</u> to <u>public employees</u> [emphasis added] who perform judge-like functions and attaches when a <u>public official's</u> [emphasis added] role is <u>functionally comparable</u> [emphasis added] to that of a judge." *Id.* at 390. "Absolute immunity does not apply in every action against a judge or court personnel." *Id.* "[T]he touchstone for the applicability of the doctrine of judicial immunity is 'the performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* "The [United States] Supreme Court has stated that judicial immunity does not protect the 'administrative, legislative, or executive' acts performed by judges." *Id.* at 391. "Therefore, it [is] the nature of the function performed, not the identity of the actor who performed it, that informs [] [an] immunity analysis." *Id.*

Plaintiff <u>disputes</u> that Ms. Sternenberg's role is "<u>functionally comparable</u> to that of a judge." As the United States Supreme Court has observed "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993).

However, a NH GAL's recommendations are <u>not</u> binding on the trial court, and consequently <u>not</u> functionally comparable to that of a judge. "The recommendations of the *guardian ad litem* do not, and should not, carry any greater presumptive weight than the other evidence in the case. The *guardian ad litem* is appointed to represent the best interests of the child, not to make a conclusive or presumptive determination; <u>that is the province of the court or master</u> [emphasis added]." *Richelson v. Richelson*, 130 N.H. 137, 536 A.2d 176, 180 (1987).

Indeed, a NH GAL is nothing more than an expert witness. Cf. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Insofar as any sort of immunity ought to apply, it would some form of witness immunity, rather than any form of quasi-judicial immunity. Cf. *Briscoe v. LaHue*, 460 U.S. 325 (1983). Furthermore, at least two

states (New Jersey and Vermont) have ruled that court-appointed or neutral experts can be found liable for negligence. *See Levine v. Wiss & Co.*, 478 A.2d 397 (N.J. 1984); *Politi v. Tyler*, 751 A.2d 788 (Vt. 2000).

Further, there was a contractual relationship between Ms. Sternenberg and <u>both</u> Plaintiff and Plaintiff's ex-wife. Indeed, Ms. Sternenberg even inappropriately <u>overbilled</u> (an "administrative function") both parties[88] in the related state court case for "services," as part of the "cash for kids" scheme promulgated by Ms. Sternenberg and Ms. Introcaso. Cf. *Cegalis v. Trauma Inst. & Child Trauma Inst., Inc.*, 2:19-cv-00153 (D. Vt. May 5, 2023) ("finding no contractual privity between plaintiff and defendants, in contrast to *Politi*").

Rather, the matter should proceed to discovery. *See Al Shimari v. CACI Intern, Inc.*, 679 F.3d 205, 220 (4th Cir. 2012) ("[D]isputed questions that arise with respect to claims of immunity are not the exception . . . fundamentally, a court is entitled to have before it a proper record, sufficiently developed through discovery proceedings, to accurately assess any claim, including one of immunity. And even a party whose assertion of immunity proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule.").

## III. Judicial immunity does not extend to non-judicial actions, which include proven findings of misconduct

Judicial immunity does not extend to non-judicial actions. *See*, e.g. *Gibson v. Goldston*, No. 22-1757, (4th Cir. October 30, 2023). Neither does it extend to "actions taken in the clear absence of all jurisdiction." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989).

Moreover, as our United States Supreme Court has observed, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988).

Similarly, proven judicial misconduct is not a "judicial act" because it is an act taken in the clear absence of all jurisdiction. *Cok* at 2. By way of example, a judicial

---

[88] See Doc 15-6 wherein Ms. Introcaso granted an increase in the fee cap to $4,000 for Ms. Introcaso. However, Ms. Sternenberg ultimately billed Plaintiff and his ex-wife for more than $10,000 in "services."

officer lacks jurisdiction deliberately to falsify evidence, or to commit any other action for which the officer may later be criminally prosecuted.

Furthermore, willful and deliberate violations of any applicable "Code of Judicial Conduct" (or other code of professional conduct) are also "acts taken in the clear absence of all jurisdiction" ( *Cok* at 2) because a judge lacks jurisdiction deliberately to violate any Code of Judicial Conduct (or other code of professional conduct)that is binding on him or her.

Similarly, any action taken by an officer of the court later resulting in disbarment as a direct consequence, must by logical necessity either fail to be a "judicial act" or be an "act taken in the clear absence of all jurisdiction" or both.

*Arguendo*, if immunity applied to acts directly resulting in a finding of proven judicial misconduct, acts directly resulting in a later criminal conviction, or acts directly resulting in disbarment, then an officer of the court could never, under any circumstances, be subject to misconduct investigations, be criminally prosecuted, or be disbarred, by virtue of a claim to "immunity."

Finally, *any* non-action, i.e., any *hypothetical* action *never taken by a judge in the first place*, cannot by definition be a "judicial action." Indeed, it is not an action at all!

By way of example, some *hypothetical future* "act" of this Honorable Court *later* deciding pleadings *not yet even filed* would not, *at the present time*, be a "judicial act." It becomes a "judicial act" only *when* the court *actually* acts. Prior to any such action, it cannot a "judicial act" by virtue of it failing to be any kind of act in the first place.

Consequently, the failure of a judicial officer to disclose a conflict of interest is not a judicial act, because it is, in the first instance, a non-action. It it something that never happened. It cannot be a judicial act, because it was not an act at all!

*Arguendo*, the failure of a judicial officer to disclose a conflict of interest is not a judicial act, because it would be, in the second instance, a violation of the applicable Code of Judicial Conduct, and consequently would be undertaken in the "clear absence of all jurisdiction." *Cok* at 2.

Indeed, this case is distinguishable from other cases addressed by *Pierson v. Ray*, 386 U.S. 547 (1967)], *Stump v. Sparkman*, 435 U.S 349 (1978), and their various progeny, such as *Cok*.

There was never any proven finding of judicial misconduct (i.e. violations of the relevant Code of Judicial Conduct) for <u>any</u> of the judicial officers presiding over the lower court proceedings that were addressed by these cases, *supra*.

However, in *this* instant case, distinct from the others, there have been multiple proven findings of judicial misconduct!

## IV. Ms. Sternenberg violated NH GAL Rule 503.06 which either was not a judicial act; or, alternatively, an act taken in the absence of all jurisdiction.

NH GAL Rule 503.06 (Disclosures, Conflicts of Interest and Appearances of Impropriety) requires, in part, that:

(a) A guardian ad litem who is aware that he or she possesses a prior acquaintance of any type, including but not limited to a professional, personal, or financial relationship, with any party in a case, shall:

    (1) At or before the time of appointment, disclose such fact to the parties and the appointing court, either orally or in writing; and

    (2) If such an acquaintance becomes known only after appointment, immediately disclose such fact to the parties and the appointing court, either orally or in writing.

(b) A guardian ad litem shall:

    (1) Seek to decline appointment in a proceeding where he or she has a present or prior personal, professional, business, or legal relationship with any party involved in the proceeding that the guardian reasonably believes would adversely impact upon his or her ability to perform the functions of a guardian ad litem in accordance with these rules and in accordance with any requirements of the appointing court; and

    (2) If a relationship described in (a)(1) above arises after appointment, advise the court of the existence of such a relationship and seek an order regarding whether or not he or she must withdraw.

(c) If it is alleged by a party to any proceeding in which a guardian ad litem is
appointed that the guardian ad litem has failed to disclose any present or
prior acquaintance of any type that impacts upon his or her objectivity, or
upon his or her ability to perform the functions of a guardian ad litem in
accordance with these rules or in accordance with requirements of the
appointing court, the guardian ad litem shall:

(1) Inform the appointing court that the allegation has been made; and

(2) Respond either orally or in writing to the appointing court and to all
parties regarding the nature of the present or prior acquaintance, if any.

However, while Ms. Introcaso has been held at least partially accountable for
her actions regarding her conflict with Ms. Sternenberg, Ms. Sternenberg has never
been held accountable in any manner for Ms. Sternenberg's role in the "cash for
kids" scheme promulgated across multiple New Hampshire family law cases.

## V. Retrospective relief and mootness

The crux of Plaintiff's federal claims are *not* challenges to state court
decisions but rather allegations of misconduct and nondisclosure by state officials,
which deprived the Plaintiff of a fair legal process.

Such allegations are fundamentally different from seeking a review of any
state court's decision in and of itself. The Plaintiff argues that due to various
undisclosed conflicts of interest, he was not in a position to challenge the state
court's decisions effectively, as he was unaware of crucial information.

**In particular, Plaintiff was unaware of the conflict of interest between Ms.
Introcaso and Ms. Sternenberg until he read about it in the New Hampshire Union
Leader on 10/23/2021.**

**Plaintiff was denied access to relevant depositions on 5/28/2021 by the
NHJB,[89] and did not learn that Master DalPra was also aware of this conflict until
substantially after this date, when Plaintiff managed to obtain the depositions
through a third party.**

---

89  See Doc 27-22. Cf. Doc 26-13 and Doc 26-14. See also Attachment 11.

**Plaintiff should have been informed of these conflicts prior to the 10/13/2016 appointment of Kathleen Sternenberg, so as to have been given the opportunity to take appropriate action in the state court; e.g., filing motion(s) for recusal.**

First, none of Plaintiff's claims are moot because they all constitute issues that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911). *See Moore v. Ogilvie*, 394 U. S. 814, 816 (1969); *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968); *United States v. W. T. Grant Co.*, 345 U. S. 629, 632-633 (1953). *See also Roe v. Wade*, 410 U.S. 113, 125 (1973) (abrogated on other grounds by *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)).

Further, "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1230 (4th Cir. 1989). "There is, however, [an additional] well-recognized exception to the mootness doctrine holding that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017). This "exception 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Id*. To assert voluntary cessation, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000); see also *Telco*, 885 F.2d at 1231 (recognizing that "[j]urisdiction, however, may abate if there is no reasonable expectation that the alleged violation will recur and 'interim events have completely and irrevocably eradicated the effects of the alleged violation")). A case is also not moot "if there is a reasonable likelihood that [a plaintiff] will again suffer the deprivation of . . . rights that gave rise to [the] suit." *Honig v. Doe*, 484 U.S. 305, 318 (1988).

In addition, the New Hampshire Supreme Court has already recognized that Plaintiff was deprived of a fair legal process under Article 35 of the New Hampshire State Constitution for nearly identical reasons Plaintiff now argues to the federal court (except under analogous provisions of the United States Constitution) that he

was deprived of a fair legal process; namely, *because he was unaware of crucial information, he had no opportunity to file a motion for recusal*.

In other words, Plaintiff is *not* requesting that the federal court reverse any state court decision; rather, Plaintiff is requesting, *inter alia*, that the federal court <u>recognize</u> a New Hampshire State Supreme Court decision (December 16, 2021 Order[90] in *Albrecht v. Albrecht*, No. 2021-0192), <u>affirm</u> certain reasoning in that decision, and <u>extend</u> such reasoning; issuing declaratory relief, *inter alia*, that Plaintiff *also* was denied a fair legal process under the Fourteenth Amendment for similar reasons and <u>on several other occasions</u>, because he lacked key knowledge necessary to file any appropriate motion for recusal in the state court proceedings.

As described by the New Hampshire Supreme Court's December 16, 2021 Order[91] in *Albrecht v. Albrecht*, No. 2021-0192:

> **[Mr. Albrecht] states that he did not hear the judicial officer's comment[92] during the family division hearing [on November 6, 2020], and that he only learned of it <u>after</u> receiving a copy of the judicial officer's self-report letter pursuant to a request the defendant filed with the JCC. Accordingly, the defendant argues that because he "<u>was ignorant</u> of [the judicial officer's] self-report at the time [the judicial officer] conducted the most recent [domestic violence] hearing, [Mr. Albrecht] <u>was not given any opportunity to file a motion for recusal</u>."**

Article 35 of the New Hampshire State Constitution requires:

> **[Art.] 35. [The Judiciary; Tenure of Office, etc.]** It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit. It is therefore not only the best policy, but for the security of the rights of the people, that the Judges of the Supreme Judicial Court should hold their offices so long as they behave well; subject, however, to such limitations, on account of age, as may be provided by the Constitution of the State; and that they should have honorable salaries, ascertained and established by standing laws.
>
> June 2, 1784
>
> Amended 1792 to provide for age limitation as provided by the constitution.

---

90  See [Doc 26-10](#).

91  See [Doc 26-10.](#)

92  Concerning Mr. Albrecht's testimony in one state trial court proceeding, the presiding judicial officer, Marital Master Bruce F. DalPra, stated "who gives a fuck" and also called Mr. Albrecht's two daughters "a bunch of morons" during a telephonic hearing on parenting held November 6, 2020. See [Doc 26-11](#).

Under the N.H. State Constitution, "The test for an appearance of partiality is whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Tapply v. Zukatis*, 162 N.H. 285, 297 (2011).

Under the Fourteenth Amendment, proof of actual bias is not required. Rather, the objective standard is "under a realistic appraisal of psychological tendencies and human weakness, [some] interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. AT Massey Coal Co.*, Inc., 556 U.S. 868, 883-84 (2009) (internal citations omitted, emphasis added). Cf. *Rippo v. Baker*, 137 S. Ct. 905 (2017).

*Tapply*, *Caperton*, and *Rippo* are all relevant to this case, not because of their underlying facts *per se*, or the various lower court decisions from which they arose, but because they articulate relevant objective legal standards for judicial recusal under N.H. Const. pt. 1, art. 35 and the Fourteenth Amendment.

## VI. Plaintiff's lack of awareness of conflicts

Marital Master Bruce F. DalPra, Judge Julie Introcaso and Kathleen Sternenberg were all aware of the conflict of interest between Ms. Sternenberg and Ms. Introcaso since 2014.

Before key hearings in the Plaintiff's case on 8/9/2017 and 5/9/2019, judicial officers including DalPra, Introcaso, Judge Derby, and Judge King, were all aware of the conflict between Introcaso and Sternenberg but still did not disclose this conflict to Plaintiff.

Consequently, the Plaintiff was unaware of these various conflicts until October 23, 2020, hindering his ability to take timely legal action, such as filing motions for recusal in the state court system, in violation of his federal due process rights under the Fourteenth Amendment.

## VII. Inconsistent application of conflict of interest standards

Ms. Introcaso appointed her close friend Ms. Sternenberg as GAL in at least nine different New Hampshire family law cases, including Plaintiff's.

A subsequent investigation by the Judicial Conduct Committee, revealed multiple ethical violations, favoritism, and a "cash for kids scheme" involving Ms. Sternenberg.

Such actions wherein <u>both</u> Ms. Sternenberg and Ms. Introcaso were fully complicit have undermined the legal rights of multiple New Hampshire litigants and eroded public trust in the judiciary.

Moreover, there has been unequal treatment in applying conflict of interest standards in New Hampshire courts. In particular, there has been <u>selective</u> recusal by Ms. Introcaso in some matters (e.g. *Campbell v. Partello*) but not others, such as the Plaintiff's case.

As "similarly situated" litigants in the various nine state court cases previously described (involving an Introcaso/Sternenberg conflict) have been treated *radically differently*, this is a violation of federal equal protection principles.

### VIII. The Court should exercise its discretion to grant declaratory relief

Neither § 1983 nor the doctrine of judicial immunity bar claims against judges, even in their individual capacity, for declaratory relief. *See Pulliam v. Allen*, 466 U.S. 522, 533–35 (1984) (judicial immunity does not apply to declaratory relief claims); FCIA (amending § 1983 to limit injunctive relief against judges, but leaving declaratory relief available). The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, created declaratory relief "as an alternative to the strong medicine of the injunction …." *Steffel v. Thompson*, 415 U.S. 452, 466 (1974).

Consequently, declaratory relief may be available against a state judicial officer notwithstanding judicial immunity. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983" that generally bars injunctive relief "does not bar declaratory relief against judges."); *Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017) (discussing circumstances when declaratory relief may be available against judges in § 1983 suits).[93] It is true that "[a] declaratory judgment is meant to define

---

[93] In 1984, the United States Supreme Court held that judicial immunity does not prohibit suits against state court judges under § 1983 for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Congress, however, later amended § 1983 to state that injunctive relief

the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc.*, 931 F.3d at 764 (quoting *Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 (10th Cir. 2008)).

In this instant case, however, related state proceedings remain ongoing.

Indeed, Plaintiff specifically requested this Honorable Court for declaratory judgment that Administrative Judge David King violated Plaintiff's procedural and substantive due process rights by failing to tell Plaintiff what Judge King allegedly told the Judicial Conduct Committee.

Not only has Judge King continued to fail to do so, but some of these very same issues have arisen in related state court hearings, that were held after the filing of this federal action. See, e.g. the state trial court's most recently held hearings on November 15, 2023 and November 16, 2023. Cf. *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).

**In particular, the recent November 15, 2023 hearing[94] reflects Plaintiff's desire that Ms. Sternenberg testify about his ex-wife's alleged "fear," which, through Ms. Sternenberg's counsel, Ms. Sternenberg declined to do.**

Consequently, the declaratory judgment sought is very much "meant to define the legal rights and obligations of the parties in anticipation of some future conduct, *not* simply to proclaim liability for a past act." *Justice Network Inc.*, 931 F.3d at 764.

Indeed, the various defendants themselves have recognized that while "Plaintiff does not directly ask this Court to overturn [state court] orders, Plaintiff's request for a declaratory judgment would call these orders into question," thereby laying bare that even the defendants acknowledge that the declaratory judgment sought is very much "meant to define the legal rights and obligations of the parties in anticipation of ... future [litigation]."

---

"shall not be granted" in any action "brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; see *Bolin v. Story*, 225 F.3d 1234, 1240 (11th Cir. 2000).

94  See Doc 25-18. See also Attachment 14.

Moreover, while this Court might have discretion in issuing declaratory judgments, as noted in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), this discretion should be guided by principles of equity and public interest. The Plaintiff's case presents an important issue of judicial transparency and accountability. In *Samuels v. Mackell*, 401 U.S. 66 (1971), the United States Supreme Court emphasized the role of declaratory judgments in clarifying legal relationships where necessary to guide future conduct. Granting declaratory relief here would reinforce ethical standards in the judiciary and align with the equitable principles discussed in *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).

## IX. Because this case is in the public interest, failure by this Court to exercise its discretion to grant declaratory relief would violate the Petition Clause.

The "Right of Petition" has deep historical roots in English law in *The Bill of Rights 1689*, 1 William & Mary Sess 2 c 2, the *Petition of Right*, 3 Car 1 c 1 (1628), and the *Magna Carta* (1215).

More recently, in *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011), the United States Supreme Court recently renewed its Petition Clause jurisprudence, with a focus on the historical underpinnings of the right. 564 U.S. at 387-97, 131 S.Ct. 2488; see also Ronald J. Krotoszynski, Jr., *Reclaiming the Petition Clause* 104-28 (2012) (chronicling the history of petitioning in the United States, including its importance in the abolitionist movement). The United States Supreme Court described the "special concerns" of the Petition Clause, as compared to the Speech Clause, as follows: "The right to petition allows citizens to express their ideas, hopes, and concerns *to their government and their elected representatives*, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs." *Id.* at 388, 131 S.Ct. 2488 (emphasis added).

A petition may be directed towards any department of government, including the courts. *Guarnieri*, 564 U.S. at 387, 131 S.Ct. 2488; *BE & K Constr.*, 536 U.S. at 525, 122 S.Ct. 2390; see also *Anderson v. Davila*, 125 F.3d at 162-63 (holding that the right to petition includes actions taken in anticipation of litigation).

Further, the right to petition the government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536

U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1875). Petitioning serves numerous, fundamental interests of petitioners and the government alike. It is "essential to freedom," liberty and self-government. *Guarnieri*, at 382, 394; see also *McDonald v. Smith*, 472 U.S. 479, 483, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). Petitions contribute to the "public airing" of disputes, the "evolution of the law," and the use of government as an "alternative to force." *BE & K Constr.*, 536 U.S. at 532, 122 S.Ct. 2390.

A petition may "undoubtedly" consist of a "personal grievance addressed to the government." *Guarnieri at 394, 131 S.Ct. 2488*. But "[p]etitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Id. at 395, 131 S.Ct. 2488*. A petition need not "take[] a specific form," and may include an oral grievance. *Mack, 839 F.3d at 299* (citation omitted).

A petition enjoys constitutional protection whether it is addressed, as here, to this Honorable Court, or to a state or national government. See, e.g., *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (petition and boycott directed at county officials); *Brown v. Louisiana*, 383 U.S. 131, 142, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (protest of segregated public library); *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010) (oral request to city councilperson); *Van Deelen v. Johnson*, 497 F.3d 1151, 1158 (10th Cir. 2007) (appeal of county property tax assessment).

Multiple issues raised in this case have received extensive state, national, and international media news coverage[95] wherein the behavior of many of the defendants

---

95  *See, e.g.*, Giordano, Alice. *New Hampshire Family Courts Likened to the Mafia*. The Epoch Times. February 25, 2022. Available at: https://www.theepochtimes.com/us/new-hampshire-family-courts-likened-to-the-mafia-4302920, wherein numerous individuals, including several NH state lawmakers, told The Epoch Times that the ultimate problem is that judges have absolute immunity and are, therefore, free to ignore the law.

was specifically described to the public as a whole; and, moreover, <u>directly discussed</u>, *inter alia*, Plaintiff's related family law case in the state court.[96]

Consequently, Plaintiff's request for a declaratory judgment that <u>fully adjudicates</u>, on the merits, whether Plaintiff's allegations of misconduct and nondisclosure by state officials deprived the Plaintiff of a fair legal process, would further "seek to advance political, social, or other ideas of interest to the community as a whole." *Guarnieri* at 394, 131 S.Ct. 2488.

## X. Plaintiff should be granted leave to amend his Complaint if "justice so requires."

The First Circuit has set forth standards for the filing of an amended Complaint. *See, e.g.*, *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152 (1st Cir. 2004), citing *Foman v. Davis*, 371 U.S. 178 (1962).

"Such approval is 'freely given when justice so requires.'" *O'Connell* at 154.

Granted, "If a defendant files a motion to dismiss for <u>failure to state a claim</u>, ... the plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the complaint as of right." *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 36-37 (1st Cir. 2001).

By way of contrast, however, if "a court jettisons an action *sua sponte*, the dismissal deprives the plaintiff of these core protections. Thus, the standard for upholding such a *sua sponte* dismissal is more rigorous than the 'failure to state a claim' standard of Rule 12(b)(6). Cf. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (explaining that *sua sponte* dismissal under 28 U.S.C. § 1915 is warranted only if a complaint is 'based on an indisputably meritless legal theory' or is 'clearly baseless')." *Gonzalez-Gonzalez*.

Plaintiff readily acknowledges that amending his complaint cannot "salvage" claims that are foreclosed in this jurisdiction, such his argument (at §I) that 42 U.S.C. § 1983 should be understood to eliminate judicial immunity.

Nevertheless, Ms. Sternenberg <u>did not make any argument</u> concerning the availability of declaratory relief against a state judicial officer *notwithstanding*

---

[96] Hayward, Mark. *City Matters: When love goes bad ... welcome to high conflict family court. New Hampshire Union Leader*. February 14, 2022. Available at: https://www.unionleader.com/voices/city_matters/city-matters-when-love-goes-bad-welcome-to-high-conflict-family-court/article_b08782d1-3946-5d37-8b37-14a33d21c46c.html

judicial immunity. See *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) ("Currently, most courts hold that the amendment to § 1983" that generally bars injunctive relief "does not bar declaratory relief against judges."); *Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017) (discussing circumstances when declaratory relief may be available against judges in § 1983 suits).

To the contrary, Ms. Sternenberg argued that any attempt at declaratory relief "is insufficient to avoid the preclusive effects of the absolute quasi-judicial immunity," thereby basing her argument for dismissal solely on the doctrine of absolute quasi-judicial immunity.

Consequently, all reasons given by the Magistrate Judge for dismissal of the action against Ms. Sterneberg, *except* those founded directly on the doctrine of absolute quasi-judicial immunity amount, in effect, to a *sua sponte* dismissal at the hands of the Magistrate Judge. This "is warranted only if a complaint is 'based on an indisputably meritless legal theory' or is 'clearly baseless')." *Gonzalez-Gonzalez*.

In light of the Magistrate Judge's recommendations, it is only natural that justice would require that Plaintiff be allowed to file an amended complaint, to remedy any reason for dismissal arrived at *sua sponte* by the Magistrate Judge, and *not* fully articulated in Ms. Sternenberg's pleadings.

## XI. Prematurity of the Magistrate Judge's Recommendations

Finally, the Magistrate Judge's Recommendations are premature. Plaintiff acknowledges that a dismissal in this jurisdiction at this time of any claims against Ms. Sternenberg that cannot survive the doctrine of absolute quasi-judicial immunity might be appropriate.

However, the dismissal of any claims *at this time* against *only* Ms. Sternenberg for any declaratory judgment that may still be available *notwithstanding judicial immunity*, is utterly inappropriate, and premature.

Indeed, because both Ms. Sternenberg and Ms. Introcaso were fully complicit in the "cash for kids" scheme involving at least nine New Hampshire Family Law cases, including Plaintiff's, it would (at minimum) be premature to adjudicate such claims against Ms. Sternenberg, without (at minimum) also adjudicating the related claims against Ms. Introcaso.

Furthermore, before key hearings in the Plaintiff's case on 8/9/2017 and 5/9/2019, judicial officers including DalPra, Introcaso, Judge Derby, and Judge King, were <u>all</u> aware of the conflict between Introcaso and Sternenberg but still did not disclose this conflict to Plaintiff.

Consequently, it would also be premature to dismiss any claims *at this time* against *only* Ms. Sternenberg for any declaratory judgment that may still be available, without first *also* adjudicating the related claims against Master DalPra, Judge Derby, and Judge King.

## CONCLUSION

The Magistrate's report incorrectly claims that Introcaso appointed DalPra as marital master. Instead, it is more likely that Judge King did. DalPra suggested that Introcaso appoint Sternenberg as *Guardian ad Litem* (GAL) for the Albrechts' <u>three</u> minor children (C.A., S.A., and G.A.). Their oldest adult child, P.A., was not involved.

In *Albrecht v. Albrecht*, Sternenberg's role as GAL in a complex family law case spanning multiple states, involving child custody and <u>ongoing</u> civil domestic violence allegations, warrants increased scrutiny. DalPra, Introcaso, and Sternenberg all knew about the conflict of interest between Sternenberg and Introcaso since 2014.

Nevertheless, before key hearings on August 9, 2017, and May 9, 2019 in Plaintiff's case, DalPra, Introcaso, Judge Derby, and Judge King were all aware of the conflict but did not disclose it to the Plaintiff.

In any event, 42 U.S.C. § 1983 should be interpreted to remove judicial immunity, which argument Plaintiff acknowledges is foreclosed in this jurisdiction but is restated here for purposes of preservation.

Nevertheless judicial immunity does not extend to non-judicial acts, actions in the absence of  jurisdiction, or misconduct. Cases like *Gibson v. Goldston* and *Forrester v. White* show that administrative decisions and conduct violating judicial conduct codes are not immune. Acts leading to criminal charges, disbarment, or proven misconduct are also not protected. It's important to distinguish between

potential future acts and actual judicial acts. Non-actions, like failing to disclose conflicts of interest, are not judicial acts.

Ms. Sternenberg is not entitled to quasi-judicial immunity, as this defense is inapplicable in an official-capacity lawsuit. Furthermore, Ms. Sternenberg, as a private practice attorney, doesn't qualify as a "public official" entitled to quasi-judicial immunity, which is reserved for public employees performing judge-like functions. A New Hampshire Guardian Ad Litem's (GAL) recommendations are advisory and not binding, as stated in *Richelson v. Richelson*. This is not a judge-like function. Rather, such a role aligns more with an expert witness. Further, Plaintiff had a contractual relationship with Ms. Sternenberg, who illegally overbilled, an administrative act, which further undermines her claim to quasi-judicial immunity. Cases from New Jersey and Vermont, like *Levine v. Wiss & Co.* and *Politi v. Tyler*, indicate court-appointed experts can be held liable for negligence.

Furthermore, Sternenberg broke New Hampshire GAL Rule 503.06 by not disclosing her relationship with Introcaso. Introcaso has faced some consequences for her conflict with Sternenberg, but Sternenberg remains utterly unaccountable for her part in a "cash for kids" scheme impacting multiple New Hampshire family law cases.

Plaintiff again emphasizes that his federal claims are about state officials' misconduct and nondisclosure, rather than a direct challenge to any state court decisions. He was unaware of conflicts involving key individuals until after crucial legal processes, preventing him from filing for recusal.

Cases like *Tapply v. Zukatis*, *Caperton v. AT Massey Coal Co.*, and *Rippo v. Baker* are highly relevant, not for their facts or lower court decisions, but for describing objective legal standards for judicial recusal under the N.H. Constitution and the Fourteenth Amendment.

Moreover, the issues here are "capable of repetition, yet evading review," making the Plaintiff's claims neither moot nor purely retrospective. The Plaintiff seeks federal recognition of a denial of due process under the U.S. Constitution, extending the New Hampshire Supreme Court's similar reasoning made under the N.H. Constitution. This same reasoning articulating the denial of a fair process due

to undisclosed conflicts, and Plaintiff's inability to file motions for recusal, also applies at the federal level.

DalPra, Introcaso, and Sternenberg were all aware of the conflict of interest since 2014. Before hearings in 2017 and 2019, they knew of the conflict but didn't inform Plaintiff, preventing Plaintiff from being able to take appropriate action; again, such as filing motions for recusal.

Sternenberg's appointment as *Guardian ad Litem* in various cases, including the Plaintiff's, was part of a "cash for kids" scheme. This ethical breach, alongside Introcaso's underline recusal in *some* affected cases, but not others, highlights a violation of equal protection principles.

The Court should grant declaratory relief, focusing on Sternenberg's involvement and the need for future conduct clarification (*Justice Network Inc. v. Craighead Cnty.*). Indeed, Sternenberg's recent refusal to testify about the Plaintiff's ex-wife's allegations in an underline ongoing case further highlights the need for this judgment.

The Court should also grant a declaratory judgment to address issues of judicial transparency and accountability (*Samuels v. Mackell*). Granting relief aligns with precedents and clarifies roles within the judiciary.

Furthermore the Petition Clause mandates that the Court should grant declaratory relief. The Plaintiff's request contributes to broader political and social discourse, making intervention essential (*Borough of Duryea, Pa. v. Guarnieri*).

In addition, First Circuit guidelines support amendments for justice (*O'Connell v. Hyatt Hotels of P.R.*; *Foman v. Davis*). Sternenberg's defense focuses solely on quasi-judicial immunity, but she hasn't addressed the potential for declaratory relief. The Magistrate Judge's dismissal approach, possibly *sua sponte*, warrants allowing the Plaintiff to amend the complaint (*Gonzalez-Gonzalez v. United States*).

Finally, dismissing the claims against Sternenberg alone is premature and selective, especially considering her role in the "cash for kids" scandal and its impact on multiple cases. Dismissing Sternenberg's claims while ignoring Introcaso's conduct overlooks their interconnected actions. Rather, this matter should proceed to discovery.

Respectfully submitted,

_____

**DANA ALBRECHT**
*Plaintiff Pro Se*
**131 Daniel Webster Hwy #235**
**Nashua, NH 03060**
**(603) 809-1097**

January 25, 2024.

## CERTIFICATE OF SERVICE

I, Dana Albrecht, hereby certify that a copy of this *Memorandum* shall be served to all the parties and/or counsel of record through the ECF system.

_____

**DANA ALBRECHT**

January 25, 2024