**STATE OF NEW HAMPSHIRE**
**JUDICIAL CONDUCT COMMITTEE**

**JC-19-050-C and JC-20-010-C**

**In RE: Honorable Julie A. Introcaso**

**STATEMENT OF FORMAL CHARGES PURSUANT TO**
**NEW HAMPSHIRE SUPREME COURT RULE 40 (9)**

The New Hampshire Supreme Court Committee on Judicial Conduct (the "Committee"), by its Committee Counsel, complains against Judge Julie A. Introcaso as follows:

**Introduction:**

1. The Committee is the duly authorized Committee on Judicial Conduct established by the New Hampshire Supreme Court pursuant to the Court's constitutional and statutory authority to provide for the orderly and efficient administration of the Code of Judicial Conduct (Rule 38 of the Rules of the New Hampshire Supreme Court.) See Rule 39.

2. The Committee is proceeding against Judge Introcaso pursuant to Rule 40 (7) (a) & (b), and this Statement of Formal Charges is issued pursuant to Rule 40 (9).

3. These formal charges are brought on the basis of two complaints.

    a. The first, (JC–19–050–C), arises out of a report filed by an individual named Robin Partello, who is a respondent in a parenting petition filed by David Campbell in the 9th Circuit Court, Hillsborough County – Family Division – Nashua, bearing docket number 659-2818-DM-0072 (hereinafter, the "Partello Report"). The Committee elevated the Partello Report to the level of a complaint on or about November 8, 2019.

    b. The second, (JC-20-010-C), is a Committee generated complaint based on the apparent alteration of the Court file. This Committee initiated inquiry was docketed as a complaint on or about April 6, 2020.

4. Judge Introcaso is a sitting Justice of the 9th Circuit Court, and a member of the New Hampshire Bar.

**Background and Facts Relating to the so-called Partello Complaint (JC-19-050-C)**

5. In Judge Introcaso's answer to complaint JC-19-050-C dated January 9, 2020, she states that Attorney Sternenberg is on her recusal list.

1

6. In the parenting petition mentioned above, <u>David Campbell v. Robin Partello</u>, Docket Number: 659-2818-DM-0072 (hereinafter "Parenting Petition"), Marital Master Bruce DalPra recommended the appointment of Attorney Sternenberg as the Guardian Ad Litem (GAL).

    a. On October 24, 2018, Judge Introcaso signed the Master's recommendation, entering an order approving the appointment of Attorney Sternenberg as the GAL in the Parenting Petition.

    b. In her answer to complaint JC-19-050-C dated January 9, 2020, Judge Introcaso states that she approved the Master's recommendation, likely without reading the order itself before signing. She states she "likely did so without ever looking to see who he had appointed on page one."

7. On the same day, October 24, 2018, Master DalPra drafted a two-page Interim Order, in which the Master summarized pertinent facts of the case, set forth an interim parenting-time schedule, appointed Attorney Sternenberg as a GAL, and appointed James Foster as a counselor.

    a. On October 24, 2018, Judge Introcaso signed the Master's Interim Order.

    b. In her answer dated January 9, 2020, Judge Introcaso states that she likely signed this order without first reading it. She states "I acknowledge, in retrospect, that I should have read both #11 and #12 in greater detail, and then I could have taken steps to assure that I would not be involved in more issues that arose in this matter. . . [T]here simply isn't enough time [to] read every order coming out of Nashua Family Division in detail. . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most diligent review."

8. On February 15, 2019, Master DalPra recommended denying a motion to reconsider that was filed by Ms. Partello. This motion asked the court to reconsider a change to an amended parenting schedule. On February 15, 2019, Judge Introcaso signed this order, approving the Master's recommendation to deny the motion to reconsider. The motion, and the order, did not reference GAL Sternenberg.

9. On February 7, 2019, GAL Sternenberg filed a Motion for Instruction, alleging that Ms. Partello was not cooperating with the GAL. This motion asked the court to order Ms. Partello to cooperate in scheduling a home visit.

    a. On February 15, 2019, Master DalPra recommended granting the motion, ordering Ms. Partello to cooperate with the GAL. In so doing, Master DalPra handwrote that "failure to do so may result in sanctions . . ."

    b. On the same day, Judge Introcaso approved and signed this order. In her answer to JC-19-050-C, the Judge states "there was no doubt I was aware of Attorney Sternenberg's role in this case at that time." Therefore, she admits to knowingly signing an order relating to an attorney who was on her recusal list.

    c. In her answer to complaint JC-19-050-C, Judge Introcaso also explains that, at the time, she felt this was permissible because "this was not a 'substantive order' in the case, and did not resolve any specific legal issue in the case itself."

10. On February 28, 2019, the GAL filed a motion asking the Court for instruction regarding the method of payment from respondent Ms. Partello. Essentially, Ms. Partello had insisted on paying the GAL's retainer using Apple Pay, but the GAL refused to accept Apple Pay. In this motion the GAL asked the court to "Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order." Ms. Partello objected to this motion (hereinafter "Apple Pay Motion").

11. Also, on February 28, 2019, the GAL filed a second motion asking the Court to allow the GAL to exceed the fee cap. Ms. Partello also objected to this motion (hereinafter "Fee Cap Motion").

12. On March 12, 2019, Judge Introcaso issued an Order on the Apple Pay Motion (hereinafter "Apple Pay Order").

    a. She handwrote on the GAL's motion "Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY."

    b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

13. Also, on March 12, 2019, Judge Introcaso issued an Order on the Fee Cap Motion (hereinafter "Fee Cap Order").

    a. She again handwrote on the GAL's pleading "Motion granted over the Respondent's objection at #36."

    b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

14. Shortly after Judge Introcaso issued the above-listed orders, she then asked court staff to schedule a status conference with the parties. The Court scheduled a status conference for March 19, 2019.

15. The petitioner, David Campbell, filed a motion to continue the status conference, and in his motion, he asked for clarification regarding the purpose of said conference.

16. On March 15, 2019 Judge Introcaso issued an Order granting the petitioner's motion to continue and the March 19, 2019 status conference was canceled.

17. On March 15, 2019, Judge Introcaso issued a three-page hand-written Order, in which she, among other things, recused herself from this case (hereinafter "Recusal Order"). Specifically, in this order, the Judge:

    a. Explained that after the Marital Master originally assigned to this case was reassigned to another court, "numerous substantive motions [in this Parenting Petition] were presented to this judge for review. In doing so, this judge has determined that she is unable to address these motions, particularly as some relate directly to the payment and performance of the GAL."

    b. Explained in great detail the nature of her conflict of interest, which, in summary, is that the Judge and the GAL have a long-standing close friendship.

    c. Stated that "The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived."

    d. Concluded that "the wisest course for this judge, and in an attempt to provide the parties with the most unbiased and fair hearing, is to simply withdraw as the presiding justice in this matter with regret as to the delay this may cause to the parties."

    e. Ordered (1) Judge Introcaso shall have no further involvement in this matter; (2) the Clerk shall reassign this matter, resolve the pending motions, and schedule this matter for any further hearing; and (3) no status conference will occur on March 19, 2019.

18. On September 12, 2019, Ms. Partello filed a report against Judge Introcaso with the Judicial Conduct Committee alleging judicial misconduct. This report, among other things, focuses on Judge Introcaso's conflict of interest with the GAL, and that, despite this conflict, Judge Introcaso ruled on several motions filed by, or relating to, the GAL.

**Judge Introcaso's Response to the so-called Partello Complaint (JC-19-050-C)**

19. The Partello Complaint alleges, in pertinent part, that Judge Introcaso ruled on several motions filed by, or relating to, the GAL, who was on her recusal list.

20. In her response, Judge Introcaso admits to ruling on these motions with the knowledge of this GAL's involvement.

21. In the beginning, Judge Introcaso maintains that she did not know of the GAL's involvement, because she sometimes did not read the orders that she was co-signing for Master DalPra.

22. Later, when she was aware of the GAL's involvement, Judge Introcaso explains that she believed her actions were permissible because she was issuing (what she believed were) non-substantive orders that did not resolve any specific legal issues in the case itself. This statement is inconsistent with her March 15, 2019 order which specifically described

4

the orders as "substantive . . . particularly as some relate directly to the payment and performance of the GAL."

23. Ultimately, Judge Introcaso admits that she should not have ruled on the above-listed motions. She wrote: "I acknowledge [that] my order of March 15, 2019 [recusing myself from this case] should have been issued back in October 2018; it simply wasn't. . . . <u>I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some impropriety on my behalf occurred</u>."

**Facts Relating to the Second Complaint- JC-20-010-C  (Committee Generated Complaint)**

24. On or around October 7, 2019, Judge Introcaso took leave from her judicial duties.

25. As mentioned above, on November 8, 2019, the Committee elevated Ms. Partello's report to the level of a complaint (JC–19–050–C) (the so-called "Partello Complaint"). Judge Introcaso's answer was due on or before December 12, 2019, pursuant to the Committee's Executive Secretary's letter to Judge Introcaso dated November 12, 2019.

26. On or around December 12, 2019, while still on leave, Judge Introcaso emailed a partial answer to the <u>Partello</u> Complaint to the Committee, and essentially requested an extension. An extension was granted to January 16, 2020.

27. Judge Introcaso returned to work on December 16, 2019.

28. January 2, 2020, at Judge Introcaso's request, her courtroom clerk Julianne Lodes brought volume one (1) of this two-part Parenting Petition case file to Judge Introcaso's office. This file contained the original versions of the above-referenced Orders and Motions.

29. Clerk Sherry Bisson testified, in her examination under oath (EUO), that on January 6, 2020, she met with Judge Introcaso in her chambers to discuss her writing days. Clerk Bisson testified that during this meeting, Judge Introcaso stated that "she had the Judicial Conduct Complaint response that she needed to write . . . . [Judge Introcaso] proceeded to open the <u>Partello</u> case file [to] the Apple Pay order and pointed – talked to me about that order."

30. Clerk Bisson testified that she has a clear recollection of seeing Judge Introcaso's original hand writing on this Apple Pay order on January 6, 2020.

    a. Specifically, Clerk Bisson states that the Judge "opened the file to the Apple Pay order and explained to me why she didn't agree that it was an issue, that it wasn't considered a substantive order, and she opened to, on the exhibit, to the writing part of the order, she took her finger and read across the lines in front of me and said that she could write that order [because it was not substantive]."

    b. Clerk Bisson further states "She pointed to that in my presence. Not only pointed to it but she took her finger and read the order as her finger was moving across the text."

5

31. Contrary to Clerk Bisson's July 22, 2020 EUO testimony described above, Judge Introcaso's January 9, 2020 answer states that she had not opened the file before January 9, 2020.

32. According to Judge Introcaso, the following events occurred on January 9, 2020:

    a. When reviewing the court's file to answer the Partello Complaint, Judge Introcaso discovered that the handwritten portion of her Apple Pay and Fee Cap Orders had been completely obscured with white-out correction tape (hereinafter "Whited-Out Orders").

    b. Judge Introcaso then explains that "I immediately considered who could have obscured the Whited-Out Orders and for what purpose, and I made several inquiries to determine what had happened." This included:

        i. Questioning two members of the court staff, Julianne Lodes and Nancy Dabilis, if they had altered these orders;

        ii. Emailing judicial officers and other clerks asking them if they had any contact with the file (without disclosing that the file had been altered); and

        iii. Reviewing the "sign out sheets" to determine if Ms. Partello or any other individual had physical access to the file. (The sign out sheets did not record any member of the public having contact with the file.)

    c. Judge Introcaso states that she then decided to provide the original whited-out copies as exhibits with her Answer to the Partello complaint. Judge Introcaso then removed the originals from the file and replaced whited-out orders with substitute photocopies. In her answer, Judge Introcaso explains:

        i. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file. . . . I asked Ms. Lodes to label the replacement photocopies in the file as a "Copy." I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

        ii. "[U]pon further reflection I changed my mind, and I eventually elected to leave the original White-Out Orders in the case record."

        iii. "After returning the White-Out Orders to the case file, the hand-written entries that we had inserted previously in the bottom margin/footer – indicating that the originals had been submitted to the Committee – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed 'Stricken' above the stricken entries to designate them as such."

6

33. Julianne Lodes testified to the following facts in her EUO:

    a. On January 2, 2020, Ms. Lodes handed Judge Introcaso the Partello file at Judge Introcaso's request so that Judge Introcaso could respond to a JCC complaint.

    b. To Ms. Lodes' knowledge the Partello file remained in Judge Introcaso's chambers between January 2 and 9, 2020.

    c. On January 9, 2020, Julianne Lodes met with Judge Introcaso in Judge Introcaso's chambers. At that time, Judge Introcaso showed Ms. Lodes "an order where everything was whited out, okay, with whiteout. And she said to me, did you do this to protect me?" Ms. Lodes responded "no, I didn't do that to protect you, I wouldn't do that."

    d. During their chambers' conversation on January 9, 2020, after denying whiting out the March 12th Orders, Ms. Lodes asked the judge if it was possible that Robin Partello whited out the Orders. Then Ms. Lodes reviewed the "sign-out" sheets that litigants or members of the public must sign to gain physical access to the Court files. It did not appear that Ms. Partello ever looked at the Court file or had it in her possession.

    e. Also, on January 9th, 2020, Judge Introcaso asked Ms. Lodes to make copies of the March 12th, 2019 Orders and then to stamp the original Order and the copy. Judge Introcaso, while in the process of answering the JCC complaint was typing, with her back to Ms. Lodes, and stated that she was typing an affidavit for Ms. Lodes to sign, including the information about when Ms. Lodes brought the file to her.

    f. Ms. Lodes thought to herself that she was not going to sign any affidavit and stated, "But at one point, after doing these copies and writing original and sign your name and putting my initials, I'm thinking, something is not right here. I just got up and left."

    g. But before leaving chambers, Ms. Lodes responded to Judge Introcaso's concern about the whited-out March 12th, 2019 Orders and stated to her ". . . I don't think that you have to worry about this because everything is on my Notice of Decision. It's all spelled out. So it's there."

34. On January 9, 2020, the same day that Judge Introcaso claims she discovered the whited-out orders and took the above-described steps, she completed drafting her answer to the Partello Complaint and sent it to the Committee. This answer is summarized above, where the Judge acknowledges ruling on motions in a case that she should have recused herself in, due to her conflict with the GAL.

7

35. On January 14, 2020, two members of the court staff, Julianne Lodes and Nancy Dabilis, met with Judge Leary to report that, during the prior week on January 9, 2020, Judge Introcaso had asked them if they had whited out her two March 12, 2019 orders. Ms. Lodes and Ms. Dabilis then met with Clerk Sherry Bisson, to report the same.

36. When Ms. Lodes and Ms. Dabilis told Clerk Bisson that the handwritten portion of the Apple Pay order was obscured by white-out tape, Clerk Bisson remembered seeing the un-altered Apple Pay Order eight days before, when the judge was showing it to her in her chambers on January 6, 2020.

37. Clerk Bisson believes the order was obscured between January 6, 2020 and January 9, 2020, during the time that the file was in Judge Introcaso's chambers.

38. The above-listed facts were reported to the Judicial Conduct Committee, which forms the basis of the second complaint, (JC-20-010-C), which is a Committee Generated Complaint.

### Judge Introcaso's Response to the Committee Generated Complaint

39. Judge Introcaso denies whiting-out her March 12, 2019 Apple Pay and Fee Cap Orders.

    a. As mentioned above, Judge Introcaso's January 9, 2020 answer to complaint JC-19-050-C states that she had not opened the file before January 9, 2020.

    b. She admits altering the orders by stamping/initialing them, but she denies altering the orders by whiting-out her handwriting.

    c. She further notes that while she was reviewing the case record, she also had "unaltered versions of the March 12 Orders [with her] because copies of the unaltered March 12 Orders were included as attachments to Ms. Partello's Judicial Conduct Complaint."

        i. The fact that Judge Introcaso had copies of the unaltered versions of the March 12 Orders with her during the time in question (between January 6 and January 9, 2020) is consistent with her December 12, 2019 email to the JCC. In that email she stated "[i]n reviewing what I have been given [referenced above as the Partello Report and attachments], it is obvious I issued two orders on motions from the general 'signing pile' in the Clerk's office, dated March 2019."

40. Judge Introcaso admits her actions on January 9, 2020, including asking court staff members if they whited-out court orders, caused serious anxiety.

    a. In her answer, she wrote: "I now appreciate that my handling of this case record on January 9, 2020 created serious concern and anxiety with clerks and employees."

8

41. Judge Introcaso admits to altering files by stamping and initialing them, and further to directing her courtroom clerk to assist her with these alterations.

    a. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file."

    b. "I asked Ms. Lodes to label the replacement photocopies in the file as a 'Copy.' I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

    c. After changing her mind about submitting the originals to the JCC, the notations "indicating that the originals had been submitted to the JCC – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed "Stricken" above the stricken entries to designate them as such."

42. Judge Introcaso admits her actions in initialing/stamping original orders in a court file raised several concerns.

    a. "I acknowledge that my responses resulted in the creation of confusing hand-written notations being logged into and subsequently stricken from this case record."

    b. "To the extent that my handling of this unusual situation . . . has made this Committee's work and the Judicial Branch's investigation of this situation more difficult, I am deeply remorseful and apologetic for my actions."

43. Judge Introcaso contends that she discovered that court files had been altered on January 9, 2020, yet never reported the alterations to her supervisors or the Court Clerk.

    a. "In retrospect, I wish I had consulted with my superior judge or Clerk of Court immediately."

    b. Judge Introcaso claims she discovered the white-out alterations on January 9, 2020. Ms. Lodes and Ms. Dabilis reported this to Judge Leary on January 14, 2020, which is six days later. Judge Introcaso had not reported the alterations to any supervisors during this time.

44. The facts set forth above establish compelling circumstantial evidence that Judge Introcaso whited out the Apple Pay Order and Fee Cap Order some time between January 6 and January 9, 2020. At the time she knew that there was an ongoing investigation by the Committee with respect to her rulings on this order. This alleged alteration of the order could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6. It is possible that Judge Introcaso may have whited out the Apple Pay Order and Fee Cap Order at some other time, possibly as early as March 15, 2019. In such case the alleged alteration could constitute the misdemeanor of Tampering with Public Records or Information in violation of RSA 641:6 (I) or (II). In summary the following facts support this conclusion:

9

a. The evidence demonstrates that Julianne Lodes brought Volume 1 of the Partello file to Judge Introcaso's chambers on January 2, 2020, at Judge Introcaso's request so that Judge Introcaso could respond to Partello complaint.

b. On January 6, 2020, Judge Introcaso discussed the Apple Pay Order with Clerk Bisson and actually showed Clerk Bisson Judge Introcaso's own handwritten margin order in the Partello file.

c. There is no evidence that Volume 1 of the Partello file left Judge Introcaso's chambers between January 6 and January 9, 2020, or that anyone other than Judge Introcaso accessed that file.

d. On January 9, 2020, Judge Introcaso showed Julianne Lodes the Apple Pay Order that had been whited out.

e. There is no evidence that anyone other than Judge Introcaso had whited out the Apple Pay Order or Fee Cap Order.

f. Judge Introcaso confronted Julianne Lodes about whether Ms. Lodes had whited out the Apple Pay Order to protect Judge Introcaso.

g. Julianne Lodes denies applying any white out to any orders.

h. This evidence strongly supports one of the following conclusions: (1) either Judge Introcaso altered or concealed the Whited-Out Orders "with a purpose to impair its verity or availability" to the Committee investigating; or (2) Judge Introcaso presented the Whited-Out Orders, which she had altered "with a purpose to deceive a public servant who is or may be engaged in such proceeding or investigation." This conduct, if found to be true, could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6, I or II.

### **Violations of the Code**

45. Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." The facts suggest that Judge Introcaso may have committed a crime by whiting out the Apple Pay Order and Fee Cap Order knowing that the Committee was investigating whether Judge Introcaso violated the Code of Judicial Conduct for issuing those Orders and that she did so with the purpose to the verity or availability of the order to the Committee or with the purpose of deceiving the Committee into thinking someone else altered the orders.

46. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court

Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." Judge Introcaso issued an order or approved recommendations from the marital master which benefited her friend Kathleen Sternenberg by appointing Attorney Sternenberg as GAL and approving orders relating her the payment of Attorney Sternenberg's fees. By not recusing herself in this situation, Judge Introcaso created both an appearance of impropriety and an actual impropriety by favoring her friend over the objection of Robin Partello.

47. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it undermines the public confidence in the judiciary, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

48. Canon 2, Rule 2.5 (*Competence, Diligence and Cooperation*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall perform judicial and administrative duties, competently and *diligently*." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it is a failure to perform judicial responsibilities competently and diligently, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

49. Additionally, ruling on motions without first disclosing a conflict of interest, "creates the appearance of *impropriety*", also in violation of Canon 1, Rule 1.2 and Canon 2, Rule 2.11. See Judge Introcaso's Answer ("I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some *impropriety* on my behalf occurred.").

50. Canon 2, Rule 2.5(B) (*Competence, Diligence and Cooperation*) states that: "A judge shall cooperate with other judges and court officials in the administration of court business." Questioning court employees about whether they whited-out court orders, and requesting their assistance with further alterations of court orders by copying, stamping, and making notations in the margins, in addition to the other actions described above, violates this rule because it does not promote cooperation with court officials in the administration of court business. As Judge Introcaso admitted, instead of promoting the cooperative administration of court business, she "created serious concern and anxiety with clerks and employees." This further violates Canon 1, Rule 1.2 by "creating the appearance of impropriety."

51. Lastly, Judge Introcaso's failure to report the discovery of the white-out alterations implicates several rules of judicial conduct.

    a. Given that these were the two orders at issue in the pending Partello complaint (JC-19-050-C), failing to report that these orders were completely concealed by white-out violates Canon 2, Rule 2.16, which states that "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies." Failing to report an alteration to a file at issue in a pending complaint is not candid, open, and honest, behavior.

    b. Her failure to report their alteration, in combination with the other facts and circumstances in this case, fails to promote confidence in the judiciary, in violation of Canon 1, Rule 1.2, by "creating the appearance of impropriety."

    c. The failure to report the alteration of court files violates Canon 2, Rule 2.5 because it does not promote the cooperation with other judges and court officials in the administration of court business.

52. Based on the apparent facts of this case, Judge Introcaso engaged in conduct which she knew or should have known was a violation of Canon 1, Rule 1.1 and Rule 1.2, Canon 2, Rule 2.5, 2.11 and Rule 2.16. Acting in a manner that violates the Code does not promote public confidence in the integrity of the judiciary, which also gives rise to the appearance of impropriety as a further violation of the code.

### Formal Charges

53. Based on the foregoing, there is clear and convincing evidence of violation of the following provisions of the Code of Judicial Conduct:

    d. Judge Introcaso, in violation of Canon 1, Rule 1.1, failed to comply with the law, including the Code of Judicial Conduct.

    e. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

    f. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to avoid impropriety and the appearance of impropriety.

    g. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to perform judicial responsibilities competently and diligently.

    h. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to cooperate with other judges and court officials in the administration of court business.

    i. Judge Introcaso, in violation of Canon 2, Rule 2.11, failed to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.

    j.   Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate with judicial disciplinary agencies.

    k.   Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate and be candid and honest with judicial agencies.

Within thirty (30) days of receipt of this Formal Statement of Charges, the Respondent shall file an Answer with the Executive Secretary of the Committee on Judicial Conduct in accordance with Supreme Court Rule 40(9)(F), setting forth all denials, affirmative defenses, mitigating circumstances, and other matters which Judge Introcaso intends to raise at the hearing.

                                            Respectfully submitted,

                                            Judicial Conduct Committee

                                            By its Committee Counsel,

                                            By: /s/ Philip R. Waystack
                                                  Philip R. Waystack, Esquire

                                            JUDICIAL CONDUCT COMMITTEE

Dated: October 14, 2020                By: /s/ Mary E. Collins
                                                  Mary E. Collins, Chair