REDACTED

**STATE OF NEW HAMPSHIRE**

**JUDICIAL CONDUCT COMMITTEE**

**JC-19-050-C and JC-20-010-C**

**In RE: Honorable Julie A. Introcaso**

## JUDICIAL CONDUCT COMMITTEE'S (JCC) EXHIBIT LIST

| Index # | Exhibit # | |
|---|---|---|
| | | **Pleadings and Court Orders** |
| | 1 | Odyssey Case Summary Case #659-2018-DM-00702 (10/12/18 – 11/1/19) |
| 11 | 2 | 10/25/18 NOD & Order Appointing GAL-KS-Partello (DalPra/Introcaso) |
| 32 | 3 | 2/5/19 GAL Motion for Instruction |
| | 4 | 3/4/19 Partello's Obj. to GAL Motion for Instruction |
| 32 | 5 | 2/21/19 NOD on GAL Motion for Instruction (DalPra/Introcaso) |
| 34 | 6 | 2/28/19 GAL Motion to Exceed Fee Cap |
| 36 | 7 | 3/4/19 Partello's Obj. to GAL Motion to Exceed Fee Cap |
| 34 | 8 | 3/12/19 NOD & Order on GAL Motion to Exceed Fee Cap (Introcaso) (w/margin order) [copy] |
| 34 | 9 | 3/12/19 NOD & Order on GAL Motion to Exceed Fee Cap (Introcaso) (w/out margin order) [copy] |
| 35 | 10 | 2/28/19 GAL Further Motion for Instruction on GAL fees |
| 37 | 11 | 3/4/19 Partello's Obj. to GAL Motion for Instr. on GAL fees |
| 35 | 12 | 3/12/19 NOD & Order granting GAL Further Motion for Instr. on GAL fees (Apple Pay Order) (Introcaso) (w/margin order) [copy] |
| 35 | 13 | 3/12/19 NOD & Order granting GAL Further Motion for Instr. on GAL fees (Apple Pay Order) (Introcaso) (w/out margin order) [copy] |

| | | |
|---|---|---|
| 38 | 14 | 3/15/19 Petitioner's Motion to Continue 3/19/19 Status Conference |
| 38 | 15 | 3/15/19 NOD & Order – handwritten *sua sponte* recusal order (Introcaso) |
| 47 | 16 | 4/29/19 NOD & Order on Motion to Remove GAL, "de novo" (Derby) |

**JCC Pleadings and Responses**

17 9/12/19 Robin Partello Complaint filed with JCC (JC-19-050-G)

18 1/9/20 Judge Introcaso's Response to Partello complaint (JC-19-050-G)

19 2/17/20 Letter from JCC to Judge Introcaso with questions (JC-20-010-CII)

20 4/3/20 Response from Judge Introcaso to JCC letter (JC-20-010-CII)

21 10/14/20 JCC Statement of Formal Charges (JC-19-050-C and JC-20-010-C)

22 11/18/20 Judge Introcaso's Response to Statement of Formal Charges (JC-19-050-C and JC-20-010-C)

**Other Exhibits**

23 Timeline

24 Photo(s) of Judge Introcaso's chambers

25 3/12/19 (Whited-out) NOD & Order granting Apple Pay Order (original document)

26 3/12/19 (Whited-out) NOD & Order allowing GAL to exceed fee cap (original doc.)

27 **Original** Court File – Volume I

28 Photo of original and whited-out version of Apple Pay order, side by side

29 3/30/18 and 4/27/18 emails from Judge Introcaso to Judge King

30 11/29/18 email from Judge Introcaso re: GAL appointment of Kathleen Sternenberg

31 10/11/19 email from R. Mittelholzer to Sherry Bisson re: report of Judge Introcaso

32 1/06/20 email exchange between Judge Introcaso and Sherry Bisson

33 1/09/20 email from Judge Introcaso to judges and staff

34 1/09/20 Judge Introcaso's draft answer to JCC

35 Statement of Formal Charges with Judge Derby's notations

36 December 2019 and January 2020 calendar(s)

**<u>Orders on Appointment of GAL Kathleen Sternenberg by Judge Introcaso</u>**

37 9/5/13 Order on Appt. of GAL – KS Merrifield (Introcaso)

1/30/14 Order on Appt. of GAL – KS Sobell (Introcaso)

5/12/15 Order on Appt. of GAL – KS Crawford (Introcaso)

8/20/15 Order on Appt. of GAL – KS Covart (Introcaso)

10/13/16 Order on Appt. of GAL – KS Albrecht (Introcaso)

2/22/17 Order on Appt. of GAL – KS Yiatras (Introcaso)

11/29/18 Order on Appt. of GAL- KS-Loudermilk (Introcaso)

12/12/18 Order on Appt. of GAL- KS-Ausiaikova (DalPra/Introcaso)

38 Any exhibits listed by the Respondent.

Dated: February 10, 2021

Respectfully submitted,
Judicial Conduct Committee
By its Hearing Counsel,

By: <u>/s/ Philip R. Waystack</u>
Philip R. Waystack, Esquire

**<u>Certification</u>**

I certify that I have provided the Judicial Conduct Committee's Exhibit List to all parties of record electronically.

By: <u>/s/ Philip R. Waystack</u>
Philip R. Waystack, Esquire



DEPOSITION EXHIBIT
INTROCASO
2

9TH CIRCUIT - FAMILY DIVISION - NASHUA

# CASE SUMMARY

## CASE NO. 659-2018-DM-00702

In the Matter of David Campbell and Robin Partello §§§§§ Location: 9th Circuit - Family Division - Nashua
Filed on: 10/12/2018

**CASE INFORMATION**

Case Type: Individual Parenting Petition

Case Status: 10/12/2018 Pending

PLAINTIFF'S EXHIBIT 1

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment** |
| | Case Number: 659-2018-DM-00702 |
| | Court: 9th Circuit - Family Division - Nashua |
| | Date Assigned: 10/12/2018 |

**PARTY INFORMATION**

**Petitioner** — **Campbell, David**
*10 East Dunstable Road*
*Nashua, NH 03060*

*Attorneys*
**Cote, Tracey G., ESQ**
*Retained*
603-225-5112(F)
603-225-7262(W)
*Shaheen & Gordon PA*
*107 Storrs Street*
*PO Box 2703*
*Concord, NH 03302-2703*
tcote@shaheengordon.com

**Manganaro, Jeffrey Leo, ESQ**
*Retained*
603-225-5112(F)
603-225-7262(W)
*Shaheen & Gordon PA*
*107 Storrs St*
*PO Box 2703*
*Concord, NH 03302-2703*
jmanganaro@shaheengordon.com

**Respondent** — **Partello, Robin**
*97 East Broadway*
*Apt. 7*
*Derry, NH 03038*

**Child** — [redacted]

**Guardian ad Litem** — **Sternenberg, Kathleen A.**
*Law Office of Kathleen Sternenberg*
*PO Box 2288*
*Concord, NH 03302*

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 10/12/2018 | Individual Parenting Petition | *Index #1* |
| 10/12/2018 | Motion for Ex Parte Relief<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ | *Index #2* |

JA000001

*Printed on 10/29/2019 at 1:50 PM*



9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

| | | |
|---|---|---|
| 10/12/2018 | Affidavit<br>*of Notice* | *Index #3* |
| 10/12/2018 | Ex Parte Order (Judicial Officer: DalPra, Bruce F )<br>*"No ex parte orders are issued; The case shall be scheduled for a prompt hearing."* | *Index #4* |
| 10/12/2018 | Objection<br>Party: Respondent Partello, Robin<br>*to Ex Parte Motion (RSP)* | *Index #5* |
| 10/12/2018 | Orders of Notice | *Index #6* |
| 10/12/2018 | Instruction for Service | *Index #7* |
| 10/23/2018 | CIP Certificate - Petitioner | *Index #8* |
| 10/24/2018 | Ex Parte Hearing (Judicial Officer: DalPra, Bruce F) | |
| 10/24/2018 | Return of Service<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ; Petitioner Campbell, David<br>*David Campbell* | *Index #9* |
| 10/24/2018 | Proposed Order<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ; Petitioner Campbell, David<br>*David Campbell* | *Index #10* |
| 10/24/2018 | Order Issued (Judicial Officer: Introcaso, Julie A ) | |
| 10/24/2018 | Order Appointing GAL (Judicial Officer: DalPra, Bruce F )<br>*Kathleen Sternenberg* | *Index #11* |
| 10/24/2018 | Order (Judicial Officer: DalPra, Bruce F )<br>*Interim Order* | *Index #12* |
| 11/05/2018 | Motion to Reconsider<br>Party: Petitioner Campbell, David<br>*ptr* | *Index #14* |
| 11/14/2018 | Granted<br>*"as to D, E and F. Denied as to other requests. The parties are free to alter or modify parenting time by written agreement" (DalPra, MM/Introcaso, J)* | |
| 11/13/2018 | CIP Certificate - Petitioner | *Index #15* |
| 11/13/2018 | Objection<br>*to motion to reconsider-Robin Partello* | *Index #16* |
| 11/14/2018 | Motion<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*PTR Expedited Motion to the holiday parenting schedul to accommodate annual family celebration-Attorney Campbell for PTR* | *Index #17* |
| 11/28/2018 | Granted<br>*"Petitioner shall return the child no later than December 3, 2018 at 4:00 P.M. (DalPra, MM/Quigley, J)* | |
| 11/26/2018 | Motion<br>Party: Respondent Partello, Robin<br>*Objection to Ruling on motion to reconsider-Robin Partello* | *Index #18* |



9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

| | | |
|---|---|---|
| 11/26/2018 | Motion<br>Party: Respondent Partello, Robin<br>*OBJ to ruling on motion to reconsider-Robin Partello* | *Index #19* |
| 12/06/2018 | Response<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*Petitioner's Response To Respondents Objection To Ruling On Motion To Reconsider* | *Index #20* |
| 12/12/2018 | Appearance<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*Kathleen Sternenberg, GAL for Minor* | *Index #21* |
| 12/12/2018 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*for Approval (GAL)* | *Index #22* |
| 12/12/2018 | Guardian Ad Litem Stipulation<br>Party: Guardian ad Litem Sternenberg, Kathleen A. | *Index #23* |
| 12/12/2018 | Motion for Instruction<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL* | *Index #24* |
| 12/31/2018 | Order Issued (Judicial Officer: Derby, Mark S )<br>*Respondent did not file a timely objection. Motion granted as follows: Respondent will execute the Authorization as drafted. At least 7 days prior to using the Authorization to obtain information about the Respondent, GAL shall notify respondent of intended use of the Authorization. It Respondent does not file appropriate pleading/motion/objection in court during the 7-day period, GAL may use the Authorization as planned.If filed, Court will address Respondent's pleading/motion/objection in an expedited manner.* | |
| 12/12/2018 | Motion<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*PTR's Expedited Motion to Establish Christmas and New Years Holiday Parenting Schedule* | *Index #25* |
| 12/21/2018 | Approved (Judicial Officer: Derby, Mark S )<br>*Approved, Granted & So Ordered.* | |
| 12/21/2018 | *CANCELED* Hearing on Motion(s)<br>*Motion #25 Petitioner's expedited motion to establish christmas and new Year's holiday parenting schedule* | |
| 01/10/2019 | Further Hearing (Judicial Officer: DalPra, Bruce F)<br>*Temp and Structuring* | |
| 01/10/2019 | Parenting Plan<br>Party: Respondent Partello, Robin<br>*Robin Partello* | *Index #26* |
| 01/10/2019 | Parenting Plan (Judicial Officer: DalPra, Bruce F )<br>*with addendum (Temporary)* | *Index #27* |
| 01/11/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |
| 01/10/2019 | Scheduling Order (Judicial Officer: DalPra, Bruce F )<br>*Temporary Hearing/Scheduling Conference Order* | *Index #28* |
| 01/11/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |

9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

| | | |
|---|---|---|
| 01/28/2019 | Motion to Reconsider<br>Party: Respondent Partello, Robin<br>*Robin Partello* | *Index #29* |
| 02/15/2019 | Denied (Judicial Officer: DalPra, Bruce F ) | |
| 01/29/2019 | Motion for Contempt<br>Party: Attorney Cote, Tracey G., ESQ<br>*and to Enforce Nightly Telephone Calls (PTR)* | *Index #30* |
| 05/10/2019 | Order Issued (Judicial Officer: Derby, Mark S )<br>*see order #55* | |
| 01/29/2019 | Motion for Contempt<br>Party: Attorney Cote, Tracey G., ESQ<br>*PTR* | *Index #31* |
| 05/10/2019 | Order Issued (Judicial Officer: Derby, Mark S )<br>*see order #55* | |
| 02/07/2019 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*for Instruction* | *Index #32* |
| 02/15/2019 | Granted in Part (Judicial Officer: DalPra, Bruce F ) | |
| 02/08/2019 | Motion<br>Party: Attorney Cote, Tracey G., ESQ; Petitioner Campbell, David<br>*to Strike RSP's Motion for Reconsideration as Untimely - PTR* | *Index #33* |
| 02/15/2019 | Denied (Judicial Officer: DalPra, Bruce F ) | |
| 03/01/2019 | Motion to Exceed Fees<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL* | *Index #34* |
| 03/12/2019 | Granted (Judicial Officer: Introcaso, Julie A )<br>*over the respondent's objection #36* | |
| 03/01/2019 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL - for instruction regarding GAL supplemental retainer payment by Robin Partello* | *Index #35* |
| 03/12/2019 | Order Issued (Judicial Officer: Introcaso, Julie A )<br>*Legal fees/GAL fees to be paid in CASH, by money order or bank check ONLY. So ordered* | |
| 03/04/2019 | Obj-Motion to Exceed Fees<br>Party: Respondent Partello, Robin<br>*Robin Partello* | *Index #36* |
| 03/04/2019 | Objection<br>Party: Respondent Partello, Robin<br>*Robin Partello -to GAL's Motion for Instruction* | *Index #37* |
| 03/15/2019 | Motion to Continue<br>Party: Attorney Cote, Tracey G., ESQ<br>*March 19, 2019 Status Conference and Motion to Clarify Subject of Hearing - Atty Cote for David Campbell* | *Index #38* |

03/15/2019 Granted (Judicial Officer: Introcaso, Julie A )
*see narrative order*

03/15/2019 Order Issued (Judicial Officer: Introcaso, Julie A )

03/19/2019 *CANCELED* Status Conference
*GAL may appear telephonically*

03/27/2019 Assent — Index #39
Party: Guardian ad Litem Sternenberg, Kathleen A.
*Partially assented to motion to extend time to file final Guardian ad Litem report-Attorney Sternberg*

04/08/2019 Granted (Judicial Officer: Derby, Mark S )
*"Prayer A."*

04/05/2019 Objection — Index #40
Party: Respondent Partello, Robin
*(rsp) to GAL's motion to extend time*

04/05/2019 Motion — Index #41
Party: Respondent Partello, Robin
*(rsp) to remove Kathleen Sternenberg as GAL*

04/26/2019 Denied (Judicial Officer: Derby, Mark S )

04/26/2019 Order Issued (Judicial Officer: Derby, Mark S )
*see #47*

04/11/2019 *CANCELED* Final Hearing
*Day 1 of 2*

04/12/2019 *CANCELED* Final Hearing
*Day 2 of 2*

04/16/2019 Objection — Index #42
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*PET*

04/22/2019 Motion for Contempt — Index #43
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*PTR Motion for Contempt and to Compel Compliance with orders governing communication between the parties and the Parenting Plan-Attorney Manganaro*

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S )
*See order #55*

05/31/2019 Denied (Judicial Officer: Derby, Mark S )
*as moot see doc. #65*

04/26/2019 Motion — Index #44
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*for the psychological examination of the respondent*

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S )
*see order #55*

04/26/2019 Motion to Seal — Index #45



9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

Party: Attorney Manganaro, Jeffrey Leo, ESQ

| | | |
|---|---|---|
| 05/10/2019 | Denied (Judicial Officer: Derby, Mark S ) *see order #55* | |
| 04/26/2019 | Motion<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*to enjoin respondent's communication to unnecessary third parties* | *Index #46* |
| 05/10/2019 | Order Issued (Judicial Officer: Derby, Mark S ) *see order #55* | |
| 05/31/2019 | Denied (Judicial Officer: Derby, Mark S ) *as moot see doc. #65* | |
| 04/26/2019 | Order (Judicial Officer: Derby, Mark S ) *on #41* | *Index #47* |
| 05/01/2019 | Guardian Ad Litem Report<br>Party: Guardian ad Litem Stonenburg, Kathleen A. | *Index #48* |
| 05/02/2019 | Objection<br>Party: Respondent Partello, Robin<br>*for Contempt and to Compel Compliance with Orders Governing Communication Between the Parties and the Parenting Plan* | *Index #49* |
| 05/06/2019 | Motion to Continue<br>*5/22 & 5/24/19 Final Hrg - PTR* | *Index #50* |
| 05/06/2019 | Objection<br>*to Psych Eval - RSP* | *Index #51* |
| 05/06/2019 | Obj-Motion to Seal<br>Party: Respondent Partello, Robin<br>*RSP* | *Index #52* |
| 05/06/2019 | Objection<br>Party: Respondent Partello, Robin<br>*to Motion to Enjoin - RSP* | *Index #53* |
| 05/09/2019 | CIP Certificate - Respondent | *Index #54* |
| 05/10/2019 | Order (Judicial Officer: Derby, Mark S )<br>*On Pending Motions* | *Index #55* |
| 05/14/2019 | Motion<br>Party: Respondent Partello, Robin<br>*(rsp) partially assent to motion to continue* | *Index #56* |
| 05/14/2019 | Motion<br>Party: Respondent Partello, Robin<br>*to transfer venue to Derry Family Division* | *Index #57* |
| 05/31/2019 | Denied (Judicial Officer: Derby, Mark S ) *see order doc. #65* | |
| 05/14/2019 | Other<br>Party: Petitioner Campbell, David<br>*(ptr) Petitioner's reply to Respondent's May 6, 2019 objection* | *Index #58* |

JAI000006

| | | |
|---|---|---|
| 05/20/2019 | Motion to Reconsider<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*(ptr) Denial of motion to continue final hearing* | *Index #59* |
| 05/20/2019 | Motion to Reconsider<br>Party: Petitioner Campbell, David<br>*(ptr) Denial of motion for psychological examination of respondent* | *Index #60* |
| 05/20/2019 | Order (Judicial Officer: Derby, Mark S )<br>*Further Order on Continuance (#50)* | *Index #61* |
| 05/20/2019 | Order Issued | |
| 05/20/2019 | Motion to Exceed Fees<br>Party: Guardian ad Litem Stonenburg, Kathleen A.<br>*GAL's 2nd Motion to Exceed Fee Cap.* | *Index #63* |
| 05/31/2019 | Granted (Judicial Officer: Derby, Mark S )<br>*see order doc. #65* | |
| 05/22/2019 | *CANCELED* Final Hearing | |
| 05/24/2019 | *CANCELED* Final Hearing | |
| 05/24/2019 | Status Conference (Judicial Officer: Derby, Mark S)<br>*and Motion Hearing* | |
| 05/24/2019 | Order (Judicial Officer: Derby, Mark S )<br>*On Pending Motions* | *Index #62* |
| 05/24/2019 | Order Issued | |
| 05/24/2019 | Objection<br>Party: Petitioner Campbell, David<br>*PTR's Objection to RSP's Motion to Transfer to Derry Family.* | *Index #64* |
| 05/31/2019 | Order (Judicial Officer: Derby, Mark S )<br>*on pending motions (#43, #46 (prayer E), #57, #63)* | *Index #65* |
| 06/03/2019 | Objection<br>*to Court's Ordered Psych Evaluation.* | *Index #66* |
| 06/10/2019 | Objection<br>*Motion for Contempt and to Enforce Routine Schedule of Parenting Time. Motion for Contempt addressed in Order of 3/10 and 3/31, no pending Motion for Contempt.* | *Index #67* |
| 06/10/2019 | Objection<br>*to Motion for Contempt and to Enforce Nightly Phone Calls. Motion for Contempt addressed in Order of 3/10 and 3/31, no pending Motion for Contempt.* | *Index #68* |
| 06/12/2019 | Objection<br>Party: Petitioner Campbell, David<br>*(ptr) to respondent's June 2, 2019 objection to Court ordered Psych Evaluation* | *Index #69* |
| 06/17/2019 | Order (Judicial Officer: Derby, Mark S )<br>*on pending motions (#36, #31 and #66)* | *Index #70* |
| 06/17/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |



9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00782

| | | |
|---|---|---|
| 07/01/2019 | Motion to Reconsider<br>Party: Respondent Portello, Robin<br>*and Clarify (RSP)* | *Index #71* |
| 07/12/2019 | Denied (Judicial Officer: Derby, Mark S ) | |
| 07/10/2019 | Obj to Motion to Reconsider<br>Party: Petitioner Campbell, David<br>*(ptr) and clarify* | *Index #72* |
| 07/26/2019 | Motion for Contempt<br>Party: Respondent Portello, Robin<br>*rsp* | *Index #73* |
| 08/14/2019 | Denied (Judicial Officer: Derby, Mark S ) | |
| 08/05/2019 | Objection<br>*to Motion for Contempt-Attorney Tracey Goyette Cote for David Campbell* | *Index #74* |
| 08/05/2019 | Motion to Exceed Fees<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL* | *Index #75* |
| 08/30/2019 | Granted (Judicial Officer: Derby, Mark S ) | |
| 08/05/2019 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*Seeking Court Instruction that the GAL be copied on all filing-GAL* | *Index #76* |
| 08/30/2019 | Granted (Judicial Officer: Derby, Mark S ) | |
| 08/05/2019 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*for further instruction regarding court ordered forensic psychological evaluation* | *Index #77* |
| 08/30/2019 | Order Issued (Judicial Officer: Derby, Mark S )<br>*Ms. Portello shall act with all deliberate speed so that the psychological evaluation can be completed by October 1, 2019. Failure to comply immediately may result in findings of contempt and/or default status. Ms. Portello shall file a report on the status of her compliance, i.e, date and number of appointments/sessions attended and scheduled on or before September 16, 2019.* | |
| 08/13/2019 | Other<br>*response to OBJ to Motion for Contempt-Robin Portello* | *Index #78* |
| 08/13/2019 | Objection<br>Party: Respondent Portello, Robin<br>*to GAL's request to exceed fee cap-Robin Portello* | *Index #79* |
| 08/30/2019 | Motion to Compel<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*Payment of GAL and request to Schedule Show Cause-Attorney Kathleen Sternenberg* | *Index #80* |
| 09/11/2019 | Order Issued (Judicial Officer: Derby, Mark S )<br>*"No timely written objection having been filed and it appearing appropriate, clerk will schedule 30 minute show cause hearing on GAL fees* | |
| 09/16/2019 | Motion | *Index #81* |



9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

| | | |
|---|---|---|
| | Party: Respondent Partello, Robin<br>*(rsp) to inform the court* | |
| 09/17/2019 | Motion<br>Party: Respondent Partello, Robin<br>*(rsp) Second motion to inform the court* | *Index #82* |
| 09/25/2019 | Motion to Continue<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*October 7, 2019 Show Cause Hearing-Attorney Manganaro for David Campbell* | *Index #83* |
| 09/25/2019 | Assent<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*Petitioner's Partially Assented-to-Motion to Continue October 25 and 30 Trial Dates-Attorney Manganaro for David Campbell* | *Index #84* |
| 10/07/2019 | Granted (Judicial Officer: Derby, Mark S )<br>*Ms. Partello assented assented in Court. 10/25 and 10/30 dates will not be released until further order of the Court.* | |
| 10/04/2019 | Motion to Withdraw<br>Party: Petitioner Campbell, David<br>*(ptr) motion to continue 10/7/19 hearing* | *Index #85* |
| 10/07/2019 | Show Cause Hearing (Judicial Officer: Introcaso, Julie A) | |
| 10/07/2019 | Order (Judicial Officer: Derby, Mark S ) | *Index #86* |
| 10/07/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |
| 10/17/2019 | Motion for Clarification<br>Party: Respondent Partello, Robin<br>*Robin Partello* | *Index #87* |
| 10/18/2019 | Motion for Conditional Default<br>Party: Petitioner Campbell, David | *Index #88* |
| 10/21/2019 | Assent<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL's Assent to PTR's Motion for Conditional Default and Request for Final Hearing.* | *Index #89* |
| 10/21/2019 | Motion to Exceed Fees<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL's Fourth Motion to Exceed Fee Cap.* | *Index #90* |
| 10/21/2019 | Invoice<br>*GAL's Invoice (kept in confidential red folder).* | *Index #91* |
| 10/25/2019 | *CANCELED* Final Hearing<br>*DAY 1 OF 2* | |
| 10/25/2019 | Obj to Motion to Clarify<br>Party: Petitioner Campbell, David<br>*ptr* | *Index #92* |
| 10/28/2019 | Obj to Mot for Conditional Default<br>Party: Respondent Partello, Robin | *Index #93* |
| 10/29/2019 | Other | *Index #94* |



9TH CIRCUIT - FAMILY DIVISION - NASHUA

CASE SUMMARY

CASE NO. 659-2018-DM-00702

Party: Guardian ad Litem Sternenberg, Kathleen A.
*The Guardian Ad Litems Reply to Robin Partello's Motion for Clarification*

10/30/2019 Final Hearing (Judicial Officer: Derby, Mark S)
*DAY 2 OF 2*

| TARGET DATE | TIME STANDARDS |
| --- | --- |
| 11/01/2019 | Obj - Motion to Exceed Fees |

| DATE | FINANCIAL INFORMATION | |
| --- | --- | --- |
| | Petitioner Campbell, David | |
| | Total Charges | 277.00 |
| | Total Payments and Credits | 277.00 |
| | Balance Due as of 10/29/2019 | 0.00 |
| | Respondent Partello, Robin | |
| | Total Charges | 12.00 |
| | Total Payments and Credits | 12.00 |
| | Balance Due as of 10/29/2019 | 0.00 |



EXHIBIT 2
Judge I.
2/8/2021

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

PLAINTIFF'S
EXHIBIT
2

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated October 24, 2018 relative to:

**Interim Order**
**Order on Appointment of Guardian ad litem**

**DalPra, MM / Introcaso, J.**

October 25, 2018

Sherry L. Bisson
Clerk of Court

(579)
C: Jeffrey Leo Manganaro, ESQ; Robin Partello; Kathleen A. Sternenberg



# THE STATE OF NEW HAMPSHIRE

**JUDICIAL BRANCH**

Ninth Circuit-Family Division-Nashua

Docket No. 659-2018-DM-00702

In the Matter of: David Campbell and Robin Partello

**INTERIM ORDER**

This matter came before the court with regard to Petitioner's motion for ex parte orders. He had counsel. Respondent was self-represented. The parties are parents of a four year old son. The evidence disclosed that the child apparently told a paternal aunt that his rectum hurt. Upon examination, the aunt began to interrogate the child. The child made some disclosures that someone had inserted a pen in his butt. The aunt informed Petitioner, who was away for the weekend, when he returned home. He also began questioning the child, naming names for the child to consider. Petitioner informed Respondent who took the child for a medical examination. The child was referred for further examination. The child made a similar disclosure, naming Petitioner as the alleged perpetrator. He then almost immediately recanted; shortly after, he named his father again. The physical examination did not reveal any evidence of abuse.

The medical provider reported the disclosure to DCYF. Derry police also became involved. The child submitted to a CAC interview and made no disclosures. Throughout all the interviews the child was subjected to (aunt; father; medical personnel; and the CAC interview) the child made references to a swamp creature; am friend and his father who may have allegedly inserted an object "in his butt".

The court finds no credible evidence at this time that anyone has abused the child. The court finds that Petitioner's sister and Petitioner's interrogation of the child was certainly not in the child's best interests. Respondent has not allowed any contact between the Petitioner and child for a few weeks. The Petitioner also has not seen the child for nearly a month. The evidence does not support continued non-contact. The evidence does suggest that the child should participate in counseling. The court shall also require the assistance of a guardian ad litem to represent the child's interests.

RECOMMENDED:

1. The parties are awarded joint decision-making responsibility for the minor child.

2. Petitioner shall have parenting time each Wednesday from 4:00 pm to 7:30 pm; alternate weekends from Friday at 4:00 pm to Sunday at 7:00 pm. Petitioner shall provide all transportation. Respondent shall have parenting time at all other times not otherwise reserved for the Petitioner.

3. The parties shall agree upon an equitable holiday parenting schedule.

4. Kathleen Sternenberg is appointed Guardian ad Litem to represent the interests of the minor child. See accompanying GAL Order.

5. The child shall immediately be enrolled in counseling with James Foster, unless the parties agree upon another counselor.

6. Neither Petitioner, Respondent or any other family member or friend shall question the child with regard to the incidents described in the Petitioner's motion. That is the area for the counselor and GAL to explore-if deemed in the child's best interests.

7. The Clerk shall schedule a further temporary hearing and scheduling conference in 60 days as the docket permits.

10/24/18
Date

Bruce F. DalPra, Master

I hereby certify that I have read the recommendation and agree that, to the extent that the marital master has made factual findings, he has applied the correct legal standard to the facts determined by the marital master.

So ordered:

10/24/16
Date

Judge

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Ninth Circuit-Nashua

Case Name: David Campbell and Robin Partello

Case Number: 659-2016-DM-00702
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*
## (Divorce/Parenting)

| | |
|---|---|
| David Campbell<br>Petitioner's Name D.O.B. | Robin Partello<br>Respondent's Name D.O.B. |
| 10 East Dunstable Road<br>Street Address | 97 East Broadway Apt. 7<br>Street Address |
| Nashua, NH 03060<br>City, State, Zip | Derry, NH<br>City, State, Zip |
| Telephone E-Mail Address | Telephone E-Mail Address |

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen Sternenberg Telephone: 601-1048

   Address: PO Box 2288 Concord, NH 03302

   is appointed Guardian *ad Litem* of the child(ren):

   [redacted] D.O.B. [redacted]

   D.O.B.

   D.O.B.

   *** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:

   ☐ Decision-making responsibilities

   X Residential responsibilities

   X Parenting time

   Special needs of the child(ren) (specify):

   X Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren)

   ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

   X Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties

   ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties

Case Name: Error! Reference source not found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN AD LITEM (Divorce/Parenting)

- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ______
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☐ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- X Assessment of bond between child and each parent and/or between siblings
- X Other issues which the GAL deems relevant based upon the investigation
- X Other (specify):
  What is the basis for the child's disclosures; monitor the child's progress in counseling.

4. The Court sets the maximum fee in this case at $ $3,500.00. The fee may only be exceeded with prior approval of the Court and notice to all parties. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

   A. Percentage of payment:

   X The Petitioner shall pay 65% of the Guardian *ad Litem* fees.

   X The Respondent shall pay 35% of the Guardian *ad Litem* fees.

   B. Payment Orders:

   ☐ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ ________. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.

   X Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $2,500.00 shall be paid to the Guardian *ad Litem* by no later than 11/29/2018 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.

   ☐ Other Payment Orders:

5. Other provisions:
   Clerk shall be scheduling a further temporary hearing.

6. Guardian *ad Litem* Stipulations to be filed by: 12/19/2018

7. Preliminary Report to be filed by: 02/28/2019

JA1000300

NHJB-2070-F (09/30/2014) Page 2 of 4

Case Name: Error! Reference source not found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

8. Final Report to be filed by: TBD

**Recommended:**

10/24/2018
Date

Signature of Marital Master

Bruce F. DalPra
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

10/24/18
Date

Signature of Judge

INTROCASO
Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and the maximum fee established by the court in this case;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

2. GUARDIAN *AD LITEM* FEES:

NHJB-2070-F (09/30/2014) Page 3 of 4 JAI000301

Case Name: Error! Reference source not found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN AD LITEM (Divorce/Parenting)

a. The Guardian ad Litem shall be compensated at the rate of $_____ per hour. The maximum fee set by the court (including costs) shall not exceed $_________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $______ per hour rate and the maximum fee set by the court may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and, unless otherwise ordered, on receipt of payment of the retainer in full, and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

JA000302

NHJB-2070-F (09/30/2014) Page 4 of 4

Introcaso 203

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

NH CIRCUIT COURT 9TH CIRCUIT NASHUA RECEIVED 2019 FEB -1 A 11:0

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO,

MOTION FOR INSTRUCTION

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court instruct her as to how to proceed with her court appointed investigation and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for ████ █████ █████, DOB █████.

2. In a temporary hearing order, the Court ordered the GAL to file her report by March 29, 2019. The GAL requires assistance from this Court as she has been unable to continue with her investigation.

3. The Guardian ad Litem has repeatedly tried to arrange for a home visit with Robin Partello and ████. The GAL sent emails on 1/9/2019, 1/18/2019, 1/21/2019, 1/24/2019, 1/25/2019 and 1/27/2019, 1/28/2019 and 1/30/2019. Ms. Partello indicated that she was free the week of January 28, 29, 30, 31. The GAL proposed a visit on Wednesday, January 30, 2019 at 11:30 am, but she did not hear back to confirm this date and time and no visit was made.

4. The Guardian ad Litem also requested that the parties replenish their retainer as the original retainer was expended. David Campbell has provided a second retainer of $650, but Robin Partello has not paid the $350 retainer she owes.

5. The GAL requires Ms. Partello's cooperation in order to complete her investigation.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to cooperate with the GAL to schedule a home visit with ████ and herself at her residence within 7 days of this Court's order; and

B. Order Robin Partello to pay the GAL the second retainer amount of $350 within 7 days of this Court's order; and

C. Grant such other relief as may be fair and just.

3a

Respectfully submitted,

Dated: February 5, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg
Kathleen A. Sternenberg

MASTER RECOMMENDS: A + B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a final Parenting Plan.

2/15/19
Date

Bruce F. DalPra, Master

So Ordered.
I hereby certify that I have [illegible] the recommendation and agree that to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

2/15/19
Date

Signature of Judge
Julie A. Introcaso

 


DEPOSITION EXHIBIT
INTROCASO
10

STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
http://www.courts.state.nh.us

NASHUA
2019 MAR -4 P 2:11

9th Circuit – Family Division - Nashua

In the Matter of: David Campbell and Robin Partello
Docket No.: 659-2018-DM-00702

PLAINTIFF'S
EXHIBIT
4

OBJECTION TO GAL'S MOTION FOR INSTRUCTION

NOW COMES Robin Partello, Respondent in the above-captioned matter, and submits the following Motion and states the following:

1. On February 21, 2019 The Court ordered that Robin Partello pay the GAL $350 within seven days.
2. On Tuesday, February 26, 2019, Robin Partello sent Kathleen Sternenberg the $350 via Apple Pay. (see Exhibit A)
3. Apple Pay is the most secure way to send funds to a person who has an Apple phone. The funds are treated as cash and once the funds are sent, they are immediately available as cash to the recipient and the transaction can not be reversed. (see exhibit B)
4. Kathleen was notified by Apple Pay that the funds were sent to her. Kathleen then texted Robin and said "I do not accept Apple Pay".
5. Robin was confused as it is the most commonly used way to send money so that the recipient has the cash immediately.
6. Kathleen informed Robin that she would rather a money order. Robin informed her it is not safe to mail a money order because it's treated as cash and the banks do not advise that they get mailed. Kathleen said to put tracking on it.

 

7. Robin was at a loss because she wanted to comply with the court order. Robin sent the money exactly as the Court ordered within the time frame provided by the Court.

8. Kathleen informed Robin to drop off cash or a money order to the NH Bar Association as Kathleen does not have an office. Robin informed her the NH Bar Association wouldn't sign as a witness last time she was there meeting Kathleen and told Robin that they do not work for Kathleen or get involved in any matter not involving the NH Bar.

9. Robin does not have checks but if Kathleen would like, Robin can give her parents $350 and have them mail Kathleen a check.

10. Robin's bank statement shows that on February 27, 2019 the $350 Apple Pay payment was withdrawn from her account. Kathleen currently has the $350. She can also just use that money and deposit it into her IOLTA. That is probably the easiest course of action to remedy this problem.

11. Kathleen's statement in her motion to the Court that Robin has refused to send a check or money order is a completely false statement. At the time she filed the motion, Kathleen had been notified by Apple Pay that the funds were available to her.

12. To choose circus over solution and create a problem when one does not exist is problematic. The funds were and are available. If Kathleen insists on refusing to take that form of payment, Robin requests that Kathleen reimburse her the $350 Apple payment and Robin will have her parents send a check.

 

WHEREFORE: Robin Partello respectfully requests that this Honorable Court provide the following relief:

A. Order that Kathleen Sternenberg use the Apple pay funds and deposit it into her IOLTA or return the $350 Apple pay funds to Robin;

B. Order that if the funds are returned, Robin shall immediately mail a check;

C. Order that the GAL correct her pleadings regarding the blatant falsehood of the statement that Robin refused to cooperate with the Court's order;

D. Order that the GAL is removed from this case;

E. Provide any other relief which this court deems fair and equitable.

Respectfully submitted,

Date: March 4, 2019

Robin A. Partello
97 East Broadway Unit 7
Derry, NH 03038
(603) 417-9003

CERTIFICATION OF COMPLIANCE

I hereby certify that one copy of Motion was mailed this date to counsel for David Campbell

Date: March 4, 2019

Robin A. Partello

Ex. A

T-Mobile
1:15 PM
46
KS
Kathleen >

iMessage
Tuesday 9:08 AM

$350

Read

Tuesday 2:26 PM

I do not accept Apple Pay.

iMessage

00186

EX: B

($350.00)

Feb 27

Auth. Date Feb 27

| | |
|---|---|
| Description | APPLE PAY - SENT MONEY 877-233-8552 CA › |
| Original Desc | APPLE PAY - SENT MONEY 877-233-8552 CA |
| Category | Other Expenses › |
| Details | DEBIT CARD PURCHASE |

Dispute Transaction

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

PLAINTIFF'S
EXHIBIT
5

FILE COPY

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Motion for Instruction; A and B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a final Parenting Plan.**

**(MM. DalPra/J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

NASHUA
2019 MAR -1 A 11:12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

**WHEREFORE**, the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

---

[1]The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

ORIGINAL

34

the parties to pay the GAL the additional percentage of the retainer within fourteen days of this order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

Kathleen A. Sternenberg

ORIGINAL



DEPOSITION EXHIBIT
INTROCASO
6

STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
http://www.courts.state.nh.us

COURT
NASHUA
2019 MAR -4 P 2:11
PLAINTIFF'S
EXHIBIT
7

9th Circuit – Family Division - Nashua

In the Matter of: David Campbell and Robin Partello
Docket No.: 659-2018-DM-00702

OBJECTION TO GAL'S MOTION TO EXCEED FEE CAP

NOW COMES Robin Partello, Respondent in the above-captioned matter, and submits the following Motion and states the following:

1. The Guardian ad Litem has acted improperly in this matter. On several occasions, she has overstepped her boundaries as ordered by this Court.
2. Prior to her date of appointment as GAL, Kathleen had several phone conversations with David and his counsel. Kathleen then called the child's therapist and informed the therapist that he needs to conduct counseling with David because he has 50/50 parenting rights and that is how counseling works best. (See exhibit A).
3. The counselor was taken aback by this, as was Robin. Kathleen confused her role as a Guardian ad Litem with that of a Guardian. As a GAL, Kathleen is to observe and investigate and report to the Court. Kathleen is without authority to instruct a therapist on how she wants the counseling handled.
4. This demand also shows bias on Kathleen's part as she is the child's advocate and not an advocate for David Campbell.
5. When Kathleen met with Robin, Kathleen said "you're not really employed by Northeast Rehab" as a nurse. Robin informed Kathleen that she was employed by

JA1000169

Northeast Rehab Hospital in the home care division. Robin Informed her that homecare is a field of nursing and the patients have a nurse go to their home.

6. Kathleen asked Robin who her patients were- to which Robin informed her that she took care of an elderly husband and wife in their home. Kathleen asked where they lived. Robin said she's not supposed to release any personal details. Kathleen demanded to know. Robin told her the city and state of her patient's homes. Kathleen then demanded to know the names of Robin's patients. Robin instructed Kathleen that as a nurse, the names of her patients are private and part of the Health Insurance Portability and Accountability Act (HIPAA). Kathleen told Robin that she did not have a choice and had to tell Kathleen the patient's names. This is a clear violation of federal law that Kathleen demanded. It is unconscionable for a GAL to put a Mother in a position to decide between violating HIPAA or potentially hurting an investigation regarding her four-year-old son. see exhibit B

7. Kathleen informed Robin during the first visit that she (Kathleen) had never talked to David. Robin asked how Kathleen would know that David didn't think the Wednesday schedule is working and Kathleen said "I read his motions". After demanding an invoice of services, Robin saw that Kathleen had in fact talked to David prior to that meeting and had lied to Robin.

8. Further, Robin emailed Kathleen about scheduling a home visit. Kathleen immediately responded and said "I just drafted a motion but it's already in the mail". The next day, Kathleen filed a motion with the Court stating that Robin was ignoring her and failed to respond about a home visit. Kathleen was dishonest



with the Court when she said the first time that Robin was refusing to comply with the GAL. Kathleen did complete the home visit at Robin's house and stayed for an hour and a half. See exhibit C

9. Kathleen filed a second motion for instruction regarding the $350 retainer. Robin sent the retainer via Apple Pay and the funds were withdrawn from her account. Two days later, Kathleen filed a second motion with the Court that Robin was refusing to comply. Kathleen apparently doesn't accept electronic payments that are the equivalent as cash. Kathleen wants cash or money orders.
10. Kathleen sent Robin a list of questions that she attached to her motion. These questions were drafted by David but sent to Robin by Kathleen.
11. It is clear from her behavior and actions that Kathleen is not able to stay neutral and conduct an unbiased investigation.
12. For example, the day that the home visit was scheduled with Robin, the minor had a 102 degree temperature and was not feeling well. Robin called Kathleen to tell her and ask if she could schedule something for the following day to give the minor child a chance to get better. Kathleen said she was not available but scheduled it a couple of days later. See exhibit D
13. Robin immediately received an email from Kathleen stating that she wanted to confirm that Robin had canceled the home visit because Robin said her son was sick. Kathleen cc'ed David and his attorney. Robin replied and confirmed that she did cancel and that her son is her priority. Robin also informed Kathleen that she found it odd that Kathleen did not once say "I hope ███ is feeling better".

 

14. Further, during the initial meeting Kathleen stated to Robin "even if Dave did something inappropriate to your son, so what? What are you going to do about it? You'll never be able to prove it". Robin found that troubling.

15. Kathleen does not provide invoices on a regular basis. Robin had to ask several times to get an invoice. Robin's concern was that there was no way to know how much they had and how to budget. Kathleen just randomly emailed and said I need for you to replenish the retainer. Dave then responded to her immediately and said Hey Kay, I pay 65% and Robin pays 35%. Kathleen forwarded that email to me and it struck me as odd that David started the email with "Hey Kay". Nicknames are what friends use. [See exhibit E]

16. Now, Kathleen is requesting to exceed the initial retainer and again, I do not have a current invoice despite asking for one.

17. Kathleen is not able to conduct an unbiased investigation and she needs to be removed from this matter.

WHEREFORE: Robin Partello respectfully requests that this Honorable Court provide the following relief:

A. Deny the GAL's motion;

B. Order that the GAL is removed from this matter;

C. Provide any other relief which this court deems fair and equitable.

Respectfully submitted,

Date: March 4, 2019

Robin A. Partello
97 East Broadway Unit 7
Derry, NH 03038
(603) 417-9003

CERTIFICATION OF COMPLIANCE

I hereby certify that one copy of Motion was mailed this date to counsel for David Campbell

Date: March 4, 2019

Robin A. Partello

exhibit A

Law Office of Kathleen Sternenberg
P.O. Box 2268
Concord, NH 03302-2268

Invoice submitted to:
David Campbell
10 East Dunstable Road
Nashua, NH 03060

January 09, 2019

Invoice # 19719

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/29/2018 | Receive and review court order on appointment | 0.20<br>120.00/hr | 24.00 |
| 11/2/2018 | Phone call with Tracey Cote | 0.20<br>120.00/hr | 24.00 |
| 11/7/2018 | Phone call with Tracey Cote; phone call James Foster,scan Mr. Campbell's info to Tracey Cote; prepare and mail paperwork to open GAL file | 1.33<br>120.00/hr | 160.00 |
| 11/9/2018 | Receive and review email Attorney Cote regarding David's contact with counselor | 0.10<br>120.00/hr | 12.00 |
| 11/10/2018 | Receive and review/print court order on weekend visit out of state from David's attorney | 0.10<br>120.00/hr | 12.00 |
| 11/12/2018 | Receive and review/reply to Robin Partello; phone call Attorney Cote; letter to James Foster with order/releases | 0.50<br>120.00/hr | 60.00 |
| 11/15/2018 | Phone call with James Foster | 0.25<br>120.00/hr | 30.00 |
| 11/16/2018 | Receive and review Motion regarding holiday request for schedule expansion; phone call Tracey Cote regarding Brody/statement regarding mom's acquaintance | 0.25<br>120.00/hr | 30.00 |
| 11/21/2018 | Receive and review court Order | 0.10<br>120.00/hr | 12.00 |
| 11/28/2018 | Receive and review emails from Robin Partello | 0.10<br>120.00/hr | 12.00 |

David Campbell

Page

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/27/2018 | Phone call David Campbell x 2 | 0.30<br>120.00/hr | 36.00 |
| 11/29/2018 | Receive and review copies of pleadings from Robin Partello | 0.20<br>120.00/hr | 24.00 |
| 11/30/2018 | Brief meeting with Robin Partello to get retainer (cash) and paperwork | 0.50<br>120.00/hr | 60.00 |
| 12/2/2018 | Follow up with Robin Partello regarding need for general release for police, DCYF, school and other collateral contacts and GAL's use of this general release in practice; scan and send general release to Ms. Partello via attachment to email with request that she sign the release so that the GAL can proceed. | 0.20<br>120.00/hr | 24.00 |
| 12/5/2018 | Send e-mail follow up with parties; receive/review pleadings filed by David's counsel | 0.25<br>120.00/hr | 30.00 |
| 12/6/2018 | Receive and review/reply Robin Partello's refusal to sign release | 0.10<br>120.00/hr | 12.00 |
| 12/7/2018 | Meeting with David to collect information/documents questionnaires, etc. receive/review email Robin confirming Friday interview | 0.50<br>120.00/hr | 60.00 |
| 12/9/2018 | Prepare/draft Motion to Approve with Stip, Appearance; Motion for Instruction and cover letter to court | 1.00<br>120.00/hr | 120.00 |
| 12/10/2018 | Receive and review email Attorney Cote regarding David's contact with counselor | 0.10<br>120.00/hr | 12.00 |
| | Review documents to prepare for interviews; receive/review email David regarding Christmas planning, receive/review/print/file Nashua Pediatrics notes | 1.50<br>120.00/hr | 180.00 |
| | For professional services rendered | 7.75 | $934.00 |
| 11/30/2018 | Payment on Retainer - Robin Partello - Thank you. | | ($875.00) |
| 12/12/2018 | Payment - retainer - David Campbell - thank you. | | ($1,625.00) |
| | Total payments and adjustments | | ($2,500.00) |
| | Balance remaining | | $1,566.00 |

cc: Robin Partello
97 East Broadway Apt. 7
Derry, NH 03038-2028

JAI000174

LAW OFFICE OF KATHLEEN A. STERNENBERG

KATHLEEN A. STERNENBERG*

ALSO ADMITTED IN VT*

POST OFFICE BOX 2288
CONCORD, NEW HAMPSHIRE 03302
TELEPHONE 603-641-1048
kas@sternenberglaw.com

January 7, 2019

Robin Partello
97 East Broadway, Apt. 7
Derry, NH 03038-2028

Re: In the Matter of David Campbell and Robin Partello, Case Number 659-2018-DM-00702; Braydon Campbell, DOB 06/19/2014

Dear Ms. Partello:

I understand from your emails of Sunday, January 6, 2019 at 6:02 pm and 6:36 pm (see attached) that you intend to file a complaint against me for asking you for your employer's name when you feel that you should not have provided it as you are a licensed practical nurse and have a duty of confidentiality. I am sorry if this information was something you should not have disclosed as a licensed practical nurse for HIPAA reasons. It is information that is relevant to my investigation. As I told you, I have been a certified Guardian ad Litem in New Hampshire since 1993 and I have a process and procedure that I use in all of my GAL cases. It is my procedure to obtain information from all parties about their employment and to ask for and obtain the employer's contact information. In GAL cases, it is often relevant to know the work hours and history of work hours for a parent in order to investigate and make recommendations in the best interest of the child. As a certified GAL yourself, I believe you understand this.

It is my recollection that we first met on or about the end of November, 2018, at the New Hampshire Bar Association so that you could bring me cash for your portion of the retainer. At that time, you had not completed the paperwork I had requested and you sat with me in a conference room where I was working for a few minutes and went through the questionnaire in my presence. You told me that you worked as a private duty nurse and I asked you to tell me your employer's information. You told me that you worked at a residence in Andover, MA for a couple in their 80's. This is the extent of information you provided to me.

After this initial meeting, we met for a interview of about an hour and fifteen minutes. During this interview, you told me your employers' last name and that while you work in the home of your employer, you are paid through their business, Northeast Rehabilitation Hospital. It is not necessary for me to use the last name of your employer as I can use the Northeast Rehabilitation Hospital information. Out of concern for your position and license, I will redact any reference in my notes to a last name for the couple you care for and I will not use the name in any report I make to the court.

Please understand that I have not used this information for any purpose to date except to try to obtain information from you regarding your current work history. In your email you state that "any future communication with my employer needs to go through Human Resources." I have not contacted your employer to date. You further state "at this juncture, you are jeopardizing my employment. I do not believe I have done any such thing as I have not been in contact with your employer or human resources department. The only contact I have made is at your request. I sent a letter and GAL reference questionnaire to a woman you identified as your work supervisor. I have, at this time, not received a reply.

I hope that this will resolve your concerns about the confidentiality of your employer's personal information, namely their last name.

Sincerely,

Kathleen A. Sternenberg

Kathleen A. Sternenberg

cc: Tracey Cote Goyette, Esq.
Jeffery Manganaro, Esq.

 Mail body: Fwd: Home visit

Sent from my iPhone

Begin forwarded message:

> **From:** Kathleen Sternenberg <kas@Sternenberglaw.com>
> **Date:** February 5, 2019 at 2:14:28 PM EST
> **To:** Robin Partello <robinpartello@yahoo.com>
> **Subject:** RE: Home visit
>
> I filed a motion today. Unfortunately, it is in the mail. Please send your retainer of $350.
>
> Kathleen A. Sternenberg, Esq., NH Bar #8840
> Law Office of Kathleen A. Sternenberg
> P.O. Box 2288
> Concord, NH 03302
> (603)641-1048 phone
> kas@sternenberglaw.com
>
> -----Original Message-----
> From: Robin Partello [mailto:robinpartello@yahoo.com]
> Sent: Tuesday, February 05, 2019 2:10 PM
> To: Kathleen Sternenberg
> Subject: Home visit
>
> I'm available for a home visit next Monday the 11th or Wednesday the 13th anytime after 10am and before 4pm.
>
> Sent from my iPhone



Mail body: Fwd: Home Visit cancelled for today.

Sent from my iPhone

Begin forwarded message:

> **From:** Kathleen Sternenberg <kas@Sternenberglaw.com>
> **Date:** February 13, 2019 at 9:46:05 AM EST
> **To:** 'tobinpertelo@yahoo.com' <tobinpertelo@yahoo.com>
> **Cc:** "kcote@shaheengordon.com" <kcote@shaheengordon.com>, "campbelldavidh@comcast.net" <campbelldavidh@comcast.net>
> **Subject:** Home Visit cancelled for today.
>
> This is to confirm that you called a few minutes ago to tell me that [redacted] has 102 fever and is sick with a cold. I have rescheduled the home visit to Monday, February 18, 2019 at 11:00 am.
>
> Kathleen A. Sternenberg, Esq., NH Bar #8640
> Law Office of Kathleen A. Sternenberg
> P.O. Box 2288
> Concord, NH 03302
> (603)841-1048 phone
> kas@sternenberglaw.com

 

Mail body: Fwd: Guardian ad Litem investigation

Sent from my iPhone

Begin forwarded message:

From: Kathleen Sternenberg <kas@Sternenberglaw.com>
Date: January 25, 2019 at 12:51 PM EST
To: 'robinpartello@yahoo.com' <robinpartello@yahoo.com>
Subject: FW: Guardian ad Litem Investigation

1/25/2019

Dear Ms. Partello:

Last week, on Friday, I sent out an email to you and to Mr. Campbell requesting that the second part of the retainer be paid so that I may continue my investigation and prepare a report as ordered by the court. I have since received Mr. Campbell's payment of $650 and I would appreciate your payment of $350. I have sent you several emails about trying to arrange for a home visit with you and ████. I need to have your cooperation to schedule this visit. Would you kindly let me know what days and times would work for you in the next week? I look forward to your reply. I am still waiting to receive your references' questionnaires as well. Have you contacted them? I would appreciate your assistance with getting me this information. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2268
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com

From: Kathleen Sternenberg
Sent: Friday, January 18, 2019 7:13 AM
To: robinpartello@yahoo.com; campbelldavidb@comcast.net
Subject: FW: Guardian ad Litem Investigation

Yes, I apologize. Didn't have the file in front of me. Robin, please forward $350 and David, please forward $650. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2268
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com

From: campbelldavidb@comcast.net [mailto:campbelldavidb@comcast.net]
Sent: Friday, January 18, 2019 7:06 AM
To: Kathleen Sternenberg
Subject: Re: Guardian ad Litem Investigation

Hi Kay... I believe I need to pay a higher percentage of the $1,000 per the initial order, 65%. So it's 650 from me and 350 from Robin.
I will mail a check today.
Thank you!
David

David B. Campbell
Office: 603-883-1100
Mobile: 603-591-0651

-----Original Message-----

From: kas@Sternenberglaw.com
To: robinpartello@yahoo.com, campbelldavidb@comcast.net
Cc: lcote@shaheengordon.com, lmanganaro@shaheengordon.com

Sent: 2019-01-19 6:34:22 AM
Subject: Guardian ad Litem Investigation

1/18/2019

Dear Ms. Partello and Mr. Campbell:

I have reviewed the court's order of January 16, 2019 from the Review Hearing and I am ordered to file a final report by March 29, 2019. I have provided you both with copies of my invoices to date (1/12/2019). The initial retainer has been expended. In order to continue with my investigation, it is necessary for me to ask each of you for an additional retainer of $500. As you are aware, the initial retainer was $2,500 and the court established a cap of $3,500 for my services. Would you each kindly send me a check in the amount of $500?

Additionally, I will need to reschedule a home visit with Robin and [redacted] as soon as possible and Robin, I need to hear from your reference. I have received your parent's questionnaire and your paternal aunt's questionnaire, but I have not heard from your supervisor. Would you kindly ask her to get the requested questionnaire filled out and back to me?

Thank you for your earliest reply.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2258
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com

  

EXHIBIT 6
Judge 1.
2/8/2021

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

PLAINTIFF'S
EXHIBIT
8

## NOTICE OF DECISION

FILE COPY

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Motion to Exceed Fee Cap**
**"Motion granted over the Respondent's objection at #36".**

Introcaso, J.

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

1-9-2020
originals have been submitted @ JCC

COPY

JDK

JAI000194

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

COURT NASHUA 2019 MAR -1 A 11:12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted] DOB [redacted].

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

[1]The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

34

JA1000195



the parties to [illegible] AL [illegible] percentage of the retainer within fourteen days [illegible] order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg, Esq., NHB#8860
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Mangamaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

Motion Granted /Denied
3-12-19
Date
Judge Julie A. Introcaso

over the Respondent's objection at #36

JA1000196

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
NH CIRCUIT COURT

1/10/… STRICKEN

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

COPY

# NOTICE OF DECISION

FILE COPY

EXHIBIT 7
Judge I.
2/8/2021

PLAINTIFF'S EXHIBIT 9

Case Name: In the Matter of David Campbell and Robin Partello
Case Number: 659-2018-DM-00702

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Motion to Exceed Fee Cap**
**"Motion granted over the Respondent's objection at #36".**

Introcaso, J.

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

ORIGINAL

JA000188

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

RECEIVED NH CIRCUIT COURT 9TH CIRCUIT NASHUA 2019 MAR -1 A 11:12

9th CIRCUIT - FAMILY DIVISION - NASHUA

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted] [redacted] [redacted], DOB [redacted].

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

**WHEREFORE**, the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

---

[1]The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

ORIGINAL

JA1000189

34

the parties to pay the GAL the additional percentage of the retainer within fourteen days of this order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

DEPOSITION EXHIBIT
INTROCASO
9

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

9TH CIRCUIT COURT NASHUA
2019 MAR -1 A 11:12

CASE NO: 659-2018-DM-00702

PLAINTIFF'S EXHIBIT 10

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

FURTHER MOTION FOR INSTRUCTION REGARDING GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

NOW COMES Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

WHEREFORE, the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.




Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

**Kathleen Sternenberg**

**From:** Robin Partello <robinpartello@yahoo.com>
**Sent:** Tuesday, February 26, 2019 5:16 PM
**To:** Kathleen Sternenberg
**Subject:** Re: I do not accept Apple Pay

NH CIRCUIT COURT
9TH CIRCUIT NASHUA
2019 MAR -1 A 11: 12

Yes, I fully understand. Everyone is set up for Apple Pay is you have an Apple phone.

You take the funds that I sent you and deposit it into your IOLTA.

Quite honestly, you are the first attorney that I've ever met that doesn't take electronic payments and does not have an office.

I did my part. I sent the money. You have it available. It's not my obligation to drive to Concord NH to drop off cash when you may not be there. The office staff at the N.H. Bar Association already refused to sign a statement as a witness. They said they don't work for you. You're putting me in a tough spot.

I'll just file with the Court for instruction.

Sent from my iPhone

> On Feb 26, 2019, at 4:52 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>
> Ms. Partello,
>
> Please arrange to bring me $350 cash at the NH Bar Association. I can not accept Apple Pay. I do not have it set up. This money is deposited in to my Client Trust account. It is not my money, as you know. I would appreciate your understanding.
>
> Kathleen A. Sternenberg, Esq., #8840
> Law Office of Kathleen A. Sternenberg
> P. O. Box 2288
> Concord, NH 03302-2288
> (603)641-1048
> kas@sternenberglaw.com
>
>> On Feb 26, 2019, at 4:45 PM, Robin Partello <robinpartello@yahoo.com> wrote:
>>
>> Apple Pay is the most secure source of electronic payment. I sent the exact amount of money that you requested and it was available to you instantaneously.
>>
>> Kathleen, honestly, you asked for a $350, I sent it and it was immediately available. Instead, you email me and tell me to go to a bank, get a money order, go to a Post Office and mail it with "tracking".
>>
>> As I told you before, you don't have a business office, I can't drop off cash like I did the last time when we met at the N.H. Bar Association conference room. Mailing a money order is like mailing cash, it's never a good idea.
>>

>> I sent you the exact amount that you requested. You have the $350. I will file a motion with the Court for instruction as it seems ludicrous that you won't accept such a secure form of payment. You are essentially tying my hands behind my back. I don't use checks. You don't have an office & you don't accept electronic payments.
>>
>> I'll file a Motion to Inform the Court.
>>
>> Sent from my iPhone
>>
>>> On Feb 26, 2019, at 2:24 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>>>
>>> Please go to the post office, purchase a money order and mail it to me. If you would like, you can send it with tracking. I do not, and will not, accept Apple Pay for retainer deposits.
>>>
>>> Kathleen A. Sternenberg, Esq., #8840 Law Office of Kathleen A.
>>> Sternenberg P. O. Box 2288 Concord, NH 03302-2288
>>> (603)641-1048
>>> kas@sternenberglaw.com

ORIGINAL

**Kathleen Sternenberg**

**From:** Robin Partello <robinpartello@yahoo.com>
**Sent:** Tuesday, February 26, 2019 9:12 AM
**To:** Kathleen Sternenberg
**Subject:** Re: Following up with you.

I sent it electronically. Honestly, you only accept checks, which I don't use and haven't for years. I can get a money order but I don't want to mail it as it's the same as cash. You don't have an office so I couldn't even drop off the money order or cash.

Additionally, I'd prefer to have a record of my payment. Further, have you sent a recent invoice? I have not received it.

Sent from my iPhone

On Feb 26, 2019, at 8:08 AM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:

Robin,

You told me that you would send me the $350 retainer. I have not received your payment. Is this something you have sent?

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com

---

**From:** Robin Partello [mailto:robinpartello@yahoo.com]
**Sent:** Tuesday, February 26, 2019 7:24 AM
**To:** Kathleen Sternenberg
**Subject:** Re: Following up with you.

Kathleen:

I am in the process of obtaining an attorney. Although I would love to answer your questions, I await for my counsel to advise.

Due to the voluminous case file, it will take three to five business days for the attorney(s) to review.

I DO NOT assent to your motion to exceed the cap.

Sent from my iPhone

On Feb 25, 2019, at 1:04 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:

2/25/2019

Hi, Robin,

I have not received your retainer check.






I have a couple of things that I would like to hear directly from you about. I would ask that you respond to these questions in writing, please.

1. When we originally sat down, I believe you told me that you had never been married. I would like to have you confirm this as when I asked your parents, they said you had been married to a man named Jeff. Please provide Jeff's full name and the dates of your marriage and how the marriage ended and date of separation and divorce. I would like to understand from you what the circumstances of the divorce were.

2. Also, when we met, I believe you told me that you moved from your parents' home to your Derry condo. You told me that you did not live anywhere in between. It is my understanding that there were several months between when you left your parents' home and when you were able to move in to your Derry condo after the tenant's vacated. Could you please tell me where you lived between June and September? It is important to me to know and understand where ████ has lived.

3. Would you also clarify for me if you have had any boyfriends, companions or significant others during ████y's lifetime? I had asked you about the nature of the relationship with Russ, your neighbor, and I believe that you said that Russ was just someone who allowed you and ████ to use his bathroom while he was at work. However, I have information that ████y may have been around Russ and Russ may have disciplined him and that Russ may have provided you transportation. I would like to better understand the nature of this relationship and any other relationship where the man has been in contact with your son for any length of time and has gotten to know him. I understand from David that there was someone who used to go to the sports activities with you to watch ████?

4. Could you also provide me with your work schedule for the past several months? I would like to confirm exactly what your hours are and what days and times during each 7 day period.

5. I would like to better understand where ████ stays during your work hours. I know that your parents have mentioned that he is sometimes with them. I know that ████ spends some time with David. Before this current court order, where was ████ when you were working? Please tell me any and all places where he would have been watched. I would like to better understand where ████ has stayed throughout this case.

Thank you for your answers to these specific questions.

Finally, it is clear to me that it will be necessary for me to exceed the fee cap in order to prepare my report and to testify at the final hearing. I will be filing a motion to exceed and would very much appreciate your assent. Please let me know if you assent to this filing. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2286
Concord, NH 03302

 



STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
http://www.courts.state.nh.us

2019 MAR -4 P 2:11

9th Circuit – Family Division - Nashua

In the Matter of: David Campbell and Robin Partello
Docket No.: 659-2018-DM-00702

OBJECTION TO GAL'S MOTION TO EXCEED FEE CAP

NOW COMES Robin Partello, Respondent in the above-captioned matter, and submits the following Motion and states the following:

1. The Guardian ad Litem has acted improperly in this matter. On several occasions, she has overstepped her boundaries as ordered by this Court.
2. Prior to her date of appointment as GAL, Kathleen had several phone conversations with David and his counsel. Kathleen then called the child's therapist and informed the therapist that he needs to conduct counseling with David because he has 50/50 parenting rights and that is how counseling works best. (See exhibit A).
3. The counselor was taken aback by this, as was Robin. Kathleen confused her role as a Guardian ad Litem with that of a Guardian. As a GAL, Kathleen is to observe and investigate and report to the Court. Kathleen is without authority to instruct a therapist on how she wants the counseling handled.
4. This demand also shows bias on Kathleen's part as she is the child's advocate and not an advocate for David Campbell.
5. When Kathleen met with Robin, Kathleen said "you're not really employed by Northeast Rehab" as a nurse. Robin informed Kathleen that she was employed by

 

JA001169

Northeast Rehab Hospital in the home care division. Robin informed her that homecare is a field of nursing and the patients have a nurse go to their home.

6. Kathleen asked Robin who her patients were- to which Robin informed her that she took care of an elderly husband and wife in their home. Kathleen asked where they lived. Robin said she's not supposed to release any personal details. Kathleen demanded to know. Robin told her the city and state of her patient's homes. Kathleen then demanded to know the names of Robin's patients. Robin instructed Kathleen that as a nurse, the names of her patients are private and part of the Health Insurance Portability and Accountability Act (HIPAA). Kathleen told Robin that she did not have a choice and had to tell Kathleen the patient's names. This is a clear violation of federal law that Kathleen demanded. It is unconscionable for a GAL to put a Mother in a position to decide between violating HIPAA or potentially hurting an investigation regarding her four-year-old son. See exhibit B

7. Kathleen informed Robin during the first visit that she (Kathleen) had never talked to David. Robin asked how Kathleen would know that David didn't think the Wednesday schedule is working and Kathleen said "I read his motions". After demanding an invoice of services, Robin saw that Kathleen had in fact talked to David prior to that meeting and had lied to Robin.

8. Further, Robin emailed Kathleen about scheduling a home visit. Kathleen immediately responded and said "I just drafted a motion but it's already in the mail". The next day, Kathleen filed a motion with the Court stating that Robin was ignoring her and failed to respond about a home visit. Kathleen was dishonest

with the Court when she said the first time that Robin was refusing to comply with the GAL. Kathleen did complete the home visit at Robin's house and stayed for an hour and a half. See exhibit C

9. Kathleen filed a second motion for instruction regarding the $350 retainer. Robin sent the retainer via Apple Pay and the funds were withdrawn from her account. Two days later, Kathleen filed a second motion with the Court that Robin was refusing to comply. Kathleen apparently doesn't accept electronic payments that are the equivalent as cash. Kathleen wants cash or money orders.
10. Kathleen sent Robin a list of questions that she attached to her motion. These questions were drafted by David but sent to Robin by Kathleen.
11. It is clear from her behavior and actions that Kathleen is not able to stay neutral and conduct an unbiased investigation.
12. For example, the day that the home visit was scheduled with Robin, the minor had a 102 degree temperature and was not feeling well. Robin called Kathleen to tell her and ask if she could schedule something for the following day to give the minor child a chance to get better. Kathleen said she was not available but scheduled it a couple of days later. See exhibit D
13. Robin immediately received an email from Kathleen stating that she wanted to confirm that Robin had canceled the home visit because Robin said her son was sick. Kathleen cc'ed David and his attorney. Robin replied and confirmed that she did cancel and that her son is her priority. Robin also informed Kathleen that she found it odd that Kathleen did not once say "I hope [redacted] is feeling better".




14. Further, during the initial meeting Kathleen stated to Robin "even if Dave did something inappropriate to your son, so what? What are you going to do about it? You'll never be able to prove it". Robin found that troubling.

15. Kathleen does not provide invoices on a regular basis. Robin had to ask several times to get an invoice. Robin's concern was that there was no way to know how much they had and how to budget. Kathleen just randomly emailed and said I need for you to replenish the retainer. Dave then responded to her immediately and said ~~Hey~~ Hi Kay, I pay 65% and Robin pays 35%. Kathleen forwarded that email to me and it struck me as odd that David started the email with "~~Hey~~ Hi Kay". Nicknames are what friends use. See exhibit E

16. Now, Kathleen is requesting to exceed the initial retainer and again, I do not have a current invoice despite asking for one.

17. Kathleen is not able to conduct an unbiased investigation and she needs to be removed from this matter.

WHEREFORE: Robin Partello respectfully requests that this Honorable Court provide the following relief:

A. Deny the GAL's motion;

B. Order that the GAL is removed from this matter;

C. Provide any other relief which this court deems fair and equitable.

Respectfully submitted,



Date: March 4, 2019

Robin A. Partello
97 East Broadway Unit 7
Derry, NH 03038
(603) 417-9003

CERTIFICATION OF COMPLIANCE

I hereby certify that one copy of Motion was mailed this date to counsel for David Campbell

Date: March 4, 2019

Robin A. Partello

exhibit A

Law Office of Kathleen Sternenberg
P.O. Box 2288
Concord, NH 03302-2288

Invoice submitted to:
David Campbell
10 East Dunstable Road
Nashua, NH 03060

January 09, 2019

Invoice # 19719

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/29/2018 | Receive and review court order on appointment | 0.20<br>120.00/hr | 24.00 |
| 11/2/2018 | Phone call with Tracey Cote | 0.20<br>120.00/hr | 24.00 |
| 11/7/2018 | Phone call with Tracey Cote; phone call James Foster,scan Mr. Campbell's info to Tracey Cote; prepare and mail paperwork to open GAL file | 1.33<br>120.00/hr | 160.00 |
| 11/9/2018 | Receive and review email Attorney Cote regarding David's contact with counselor | 0.10<br>120.00/hr | 12.00 |
| 11/10/2018 | Receive and review/print court order on weekend visit out of state from David's attorney | 0.10<br>120.00/hr | 12.00 |
| 11/12/2018 | Receive and review/reply to Robin Partello; phone call Attorney Cote; letter to James Foster with order/releases | 0.50<br>120.00/hr | 60.00 |
| 11/15/2018 | Phone call with James Foster | 0.25<br>120.00/hr | 30.00 |
| 11/16/2018 | Receive and review Motion regarding holiday request for schedule expansion; phone call Tracey Cote regarding Brody'statement regarding mom;s acquaintance | 0.25<br>120.00/hr | 30.00 |
| 11/21/2018 | Receive and review court Order | 0.10<br>120.00/hr | 12.00 |
| 11/26/2018 | Receive and review emails from Robin Partello | 0.10<br>120.00/hr | 12.00 |

David Campbell

Page

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/27/2018 | Phone call David Campbell x 2 | 0.30<br>120.00/hr | 36.00 |
| 11/29/2018 | Receive and review copies of pleadings from Robin Partello | 0.20<br>120.00/hr | 24.00 |
| 11/30/2018 | Brief meeting with Robin Partello to get retainer (cash) and paperwork | 0.50<br>120.00/hr | 60.00 |
| 12/2/2018 | .Follow up with Robin Partello regarding need for general release for police, DCYF, school and other collateral contacts and GAL's use of this general release in practice; scan and send general release to Ms. Partello via attachment to email with request that she sign the release so that the GAL can proceed. | 0.20<br>120.00/hr | 24.00 |
| 12/5/2018 | Send e-mail follow up with parties; receive/review pleadings filed by David's counsel | 0.25<br>120.00/hr | 30.00 |
| 12/6/2018 | Receive and review/reply Robin Partello's refusal to sign release | 0.10<br>120.00/hr | 12.00 |
| 12/7/2018 | Meeting with David to collect information/documents questionnaires, etc. receive/review email Robin confirming Friday interview | 0.50<br>120.00/hr | 60.00 |
| 12/8/2018 | Prepare/draft Motion to Approve with Stip, Appearance; Motion for Instruction and cover letter to court | 1.00<br>120.00/hr | 120.00 |
| 12/10/2018 | Receive and review email Attorney Cote regarding David's contact with counselor | 0.10<br>120.00/hr | 12.00 |
| | Review documents to prepare for interviews; receive/review email David regarding Christmas planning, receive/review/print/file Nashua Pediatrics notes | 1.50<br>120.00/hr | 180.00 |
| | For professional services rendered | 7.78 | $934.00 |
| 11/30/2018 | Payment on Retainer - Robin Partello - Thank you. | | ($875.00) |
| 12/12/2018 | Payment - retainer - David Campbell - thank you. | | ($1,625.00) |
| | Total payments and adjustments | | ($2,500.00) |
| | Balance remaining | | $1,566.00 |

cc: Robin Partello
97 East Broadway Apt. 7
Derry, NH 03038-2028

JAI000174

Exhibit B

LAW OFFICE OF KATHLEEN A. STERNENBERG

KATHLEEN A. STERNENBERG*

ALSO ADMITTED IN VT*

POST OFFICE BOX 2288
CONCORD, NEW HAMPSHIRE 03302
TELEPHONE 603-641-1048
kas@sternenberglaw.com

January 7, 2019

Robin Partello
97 East Broadway, Apt. 7
Derry, NH 03038-2028

Re: In the Matter of David Campbell and Robin Partello, Case Number 659-2018-DM-00702; Braydon Campbell, DOB 06/19/2014

Dear Ms. Partello:

I understand from your emails of Sunday, January 6, 2019 at 6:02 pm and 6:36 pm (see attached) that you intend to file a complaint against me for asking you for your employer's name when you feel that you should not have provided it as you are a licensed practical nurse and have a duty of confidentiality. I am sorry if this information was something you should not have disclosed as a licensed practical nurse for HIPAA reasons. It is information that is relevant to my investigation. As I told you, I have been a certified Guardian ad Litem in New Hampshire since 1993 and I have a process and procedure that I use in all of my GAL cases. It is my procedure to obtain information from all parties about their employment and to ask for and obtain the employer's contact information. In GAL cases, it is often relevant to know the work hours and history of work hours for a parent in order to investigate and make recommendations in the best interest of the child. As a certified GAL yourself, I believe you understand this.

It is my recollection that we first met on or about the end of November, 2018, at the New Hampshire Bar Association so that you could bring me cash for your portion of the retainer. At that time, you had not completed the paperwork I had requested and you sat with me in a conference room where I was working for a few minutes and went through the questionnaire in my presence. You told me that you worked as a private duty nurse and I asked you to tell me your employer's information. You told me that you worked at a residence in Andover, MA for a couple in their 80's. This is the extent of information you provided to me.

After this initial meeting, we met for a interview of about an hour and fifteen minutes. During this interview, you told me your employers' last name and that while you work in the home of your employer, you are paid through their business, Northeast Rehabilitation Hospital. It is not necessary for me to use the last name of your employer as I can use the Northeast Rehabilitation Hospital information. Out of concern for your position and license, I will redact any reference in my notes to a last name for the couple you care for and I will not use the name in any report I make to the court.

Please understand that I have not used this information for any purpose to date except to try to obtain information from you regarding your current work history. In your email you state that "any future communication with my employer needs to go through Human Resources." I have not contacted your employer to date. You further state "at this juncture, you are jeopardizing my employment. I do not believe I have done any such thing as I have not been in contact with your employer or human resources department. The only contact I have made is at your request. I sent a letter and GAL reference questionnaire to a woman you identified as your work supervisor. I have, at this time, not received a reply.

I hope that this will resolve your concerns about the confidentiality of your employer's personal information, namely their last name.

Sincerely,

Kathleen A. Sternenberg

Kathleen A. Sternenberg

cc: Tracey Cote Goyette, Esq.
Jeffery Manganaro, Esq.



Mail body: Fwd: Home visit

Sent from my iPhone

Begin forwarded message:

From: Kathleen Sternenberg <kas@Sternenberglaw.com>
Date: February 5, 2019 at 2:14:28 PM EST
To: Robin Partello <robinpartello@yahoo.com>
Subject: RE: Home visit

I filed a motion today. Unfortunately, it is in the mail. Please send your retainer of $350.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com

-----Original Message-----
From: Robin Partello [mailto:robinpartello@yahoo.com]
Sent: Tuesday, February 05, 2019 2:10 PM
To: Kathleen Sternenberg
Subject: Home visit

I'm available for a home visit next Monday the 11th or Wednesday the 13th anytime after 10am and before 4pm

Sent from my iPhone

 

**Mail body: Fwd: Home Visit cancelled for today.**

Sent from my iPhone

Begin forwarded message:

> **From:** Kathleen Sternenberg <kas@Sternenberglaw.com>
> **Date:** February 13, 2019 at 9:46:05 AM EST
> **To:** 'tobinpartello@yahoo.com' <tobinpartello@yahoo.com>
> **Cc:** "tcote@shaheengordon.com" <tcote@shaheengordon.com>, "campbelldavidb@comcast.net" <campbelldavidb@comcast.net>
> **Subject:** Home Visit cancelled for today.
>
> This is to confirm that you called a few minutes ago to tell me that ████ has 102 fever and is sick with a cold. I have rescheduled the home visit to Monday, February 18, 2019, at 11:30 am.
>
> Kathleen A. Sternenberg, Esq., NH Bar #8840
> Law Office of Kathleen A. Sternenberg
> P.O. Box 2288
> Concord, NH 03302
> (603)641-1048 phone
> kas@sternenberglaw.com

 

Mail body: Fwd: Guardian ad Litem investigation

Sent from my iPhone

Begin forwarded message:

**From:** Kathleen Sternenberg <kas@Sternenberglaw.com>
**Date:** January 25, 2019 at 1:21:51 PM EST
**To:** 'robinpartello@yahoo.com' <robinpartello@yahoo.com>
**Subject:** FW: Guardian ad Litem investigation

1/25/2019

Dear Ms. Partello:

Last week, on Friday, I sent out an email to you and to Mr. Campbell requesting that the second part of the retainer be paid so that I may continue my investigation and prepare a report as ordered by the court. I have since received Mr. Campbell's payment of $650 and I would appreciate your payment of $350. I have sent you several emails about trying to arrange for a home visit with you and ████. I need to have your cooperation to schedule this visit. Would you kindly let me know what days and times would work for you in the next week? I look forward to your reply. I am still waiting to receive your references' questionnaires as well. Have you contacted them? I would appreciate your assistance with getting me this information. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302
(603)841-1048 phone
kas@sternenberglaw.com

---

**From:** Kathleen Sternenberg
**Sent:** Friday, January 18, 2019 7:13 AM
**To:** robinpartello@yahoo.com; campbelldavidb@comcast.net
**Subject:** FW: Guardian ad Litem Investigation

Yes, I apologize. Didn't have the file in front of me. Robin, please forward $350 and David, please forward $650. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302
(603)841-1048 phone
kas@sternenberglaw.com

**From:** campbelldavidb@comcast.net [mailto:campbelldavidb@comcast.net]
**Sent:** Friday, January 18, 2019 7:06 AM
**To:** Kathleen Sternenberg
**Subject:** Re: Guardian ad Litem Investigation

Hi Kay... I believe I need to pay a higher percentage of the $1,000 per the initial order. 65%. So it's 650 from me and 350 from Robin.
I will mail a check today.
Thank you!
David

David B. Campbell
Office: 603-883-1100
Mobile: 603-531-0831

-----Original Message-----

From: kas@Sternenberglaw.com
To: robinpartello@yahoo.com, campbelldavidb@comcast.net
Cc: jcote@shaheengordon.com, lmaganaro@shaheengordon.com



Sent: 2019-01-18 6:34:22 AM
Subject: Guardian ad Litem Investigation

1/18/2019

Dear Ms. Partello and Mr. Campbell:

I have reviewed the court's order of January 16, 2019 from the Review Hearing and I am ordered to file a final report by March 29, 2019. I have provided you both with copies of my invoices to date (1/12/2019). The initial retainer has been expended. In order to continue with my investigation, it is necessary for me to ask each of you for an additional retainer of $500. As you are aware, the initial retainer was $2,500 and the court established a cap of $3,500 for my services. Would you each kindly send me a check in the amount of $500?

Additionally, I will need to reschedule a home visit with Robin and Brady as soon as possible and Robin, I need to hear from your reference. I have received your parent's questionnaire and your paternal aunt's questionnaire, but I have not heard from your supervisor. Would you kindly ask her to get the requested questionnaire filled out and back to me?

Thank you for your earliest reply.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302
(603)641-1048 phone
kas@sternenberglaw.com



PLAINTIFF'S EXHIBIT 12

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

ROBIN PARTELLO
97 EAST BROADWAY
APT 7
DERRY NH 03038

Case Name: In the Matter of David Campbell and Robin Partello
Case Number: 659-2018-DM-00702

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Further Motion for Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello**
**"Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY".**

So Ordered

Introcaso, J.

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ



THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CIRCUIT COURT NASHUA
2019 MAR -1 A 11: 12

CASE NO: 659-2018-DM-00782

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

FURTHER MOTION FOR INSTRUCTION REGARDING
GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted]

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

WHEREFORE, the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.

35

Respectfully submitted,

Dated: February 28, 2019

*Kathleen A. Sternenberg*

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

*Kathleen A. Sternenberg*

Kathleen A. Sternenberg

3/12/19

Legal fees / GAL fees to be paid in cash by money order or bank check, ONLY.

So Ordered.

Julie A. Introcaso

**Kathleen Sternenberg**

**From:** Robin Partello <robinpartello@yahoo.com>
**Sent:** Tuesday, February 26, 2019 5:16 PM
**To:** Kathleen Sternenberg
**Subject:** Re: I do not accept Apple Pay

RECEIVED
NH CIRCUIT COURT
9TH CIRCUIT NASHUA
2019 MAR -1 A 11: 12

Yes, I fully understand. Everyone is set up for Apple Pay is you have an Apple phone.

You take the funds that I sent you and deposit it into your IOLTA.

Quite honestly, you are the first attorney that I've ever met that doesn't take electronic payments and does not have an office.

I did my part. I sent the money. You have it available. It's not my obligation to drive to Concord NH to drop off cash when you may not be there. The office staff at the N.H. Bar Association already refused to sign a statement as a witness. They said they don't work for you. You're putting me in a tough spot.

I'll just file with the Court for instruction.

Sent from my iPhone

> On Feb 26, 2019, at 4:52 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>
> Ms. Partello,
>
> Please arrange to bring me $350 cash at the NH Bar Association. I can not accept Apple Pay. I do not have it set up. This money is deposited in to my Client Trust account. It is not my money, as you know. I would appreciate your understanding.
>
> Kathleen A. Sternenberg, Esq., #8840
> Law Office of Kathleen A. Sternenberg
> P. O. Box 2288
> Concord, NH 03302-2288
> (603)641-1048
> kas@sternenberglaw.com
>
>> On Feb 26, 2019, at 4:45 PM, Robin Partello <robinpartello@yahoo.com> wrote:
>>
>> Apple Pay is the most secure source of electronic payment. I sent the exact amount of money that you requested and it was available to you instantaneously.
>>
>> Kathleen, honestly, you asked for a $350, I sent it and it was immediately available. Instead, you email me and tell me to go to a bank, get a money order, go to a Post Office and mail it with "tracking".
>>
>> As I told you before, you don't have a business office, I can't drop off cash like I did the last time when we met at the N.H. Bar Association conference room. Mailing a money order is like mailing cash, it's never a good idea.
>

>> I sent you the exact amount that you requested. You have the $350. I will file a motion with the Court for Instruction as it seems ludicrous that you won't accept such a secure form of payment. You are essentially tying my hands behind my back. I don't use checks. You don't have an office & you don't accept electronic payments.
>>
>> I'll file a Motion to Inform the Court.
>>
>> Sent from my iPhone
>>
>>> On Feb 26, 2019, at 2:24 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>>>
>>> Please go to the post office, purchase a money order and mail it to me. If you would like, you can send it with tracking. I do not, and will not, accept Apple Pay for retainer deposits.
>>>
>>> Kathleen A. Sternenberg, Esq., #8840 Law Office of Kathleen A.
>>> Sternenberg P. O. Box 2288 Concord, NH 03302-2288
>>> (603)641-1048
>>> kas@sternenberglaw.com

ORIGINAL

**Kathleen Sternenberg**

| | |
|---|---|
| **From:** | Robin Partello <robinpartello@yahoo.com> |
| **Sent:** | Tuesday, February 26, 2019 9:12 AM |
| **To:** | Kathleen Sternenberg |
| **Subject:** | Re: Following up with you. |

I sent it electronically. Honestly, you only accept checks, which I don't use and haven't for years. I can get a money order but I don't want to mail it as it's the same as cash. You don't have an office so I couldn't even drop off the money order or cash.

Additionally, I'd prefer to have a record of my payment. Further, have you sent a recent invoice? I have not received it.

Sent from my iPhone

On Feb 26, 2019, at 8:08 AM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:

> Robin,
>
> You told me that you would send me the $350 retainer. I have not received your payment. Is this something you have sent?
>
> Kathleen A. Sternenberg, Esq., NH Bar #8840
> Law Office of Kathleen A. Sternenberg
> P.O. Box 2288
> Concord, NH 03302
> (603)641-1048 phone
> kas@sternenberglaw.com
>
> ---
>
> **From:** Robin Partello [mailto:robinpartello@yahoo.com]
> **Sent:** Tuesday, February 26, 2019 7:24 AM
> **To:** Kathleen Sternenberg
> **Subject:** Re: Following up with you.
>
> Kathleen:
>
> I am in the process of obtaining an attorney. Although I would love to answer your questions, I await for my counsel to advise.
>
> Due to the voluminous case file, it will take three to five business days for the attorney(s) to review.
>
> I DO NOT assent to your motion to exceed the cap.
>
> Sent from my iPhone
>
> On Feb 25, 2019, at 1:04 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>
> > 2/25/2019
> >
> > Hi, Robin,
> >
> > I have not received your retainer check.



I have a couple of things that I would like to hear directly from you about. I would ask that you respond to these questions in writing, please.

1. When we originally sat down, I believe you told me that you had never been married. I would like to have you confirm this as when I asked your parents, they said you had been married to a man named Jeff. Please provide Jeff's full name and the dates of your marriage and how the marriage ended and date of separation and divorce. I would like to understand from you what the circumstances of the divorce were.

2. Also, when we met, I believe you told me that you moved from your parents' home to your Derry condo. You told me that you did not live anywhere in between. It is my understanding that there were several months between when you left your parents' home and when you were able to move in to your Derry condo after the tenant's vacated. Could you please tell me where you lived between June and September? It is important to me to know and understand where ████ has lived.

3. Would you also clarify for me if you have had any boyfriends, companions or significant others during ████'s lifetime? I had asked you about the nature of the relationship with Russ, your neighbor, and I believe that you said that Russ was just someone who allowed you and ████ to use his bathroom while he was at work. However, I have information that ████ may have been around Russ and Russ may have disciplined him and that Russ may have provided you transportation. I would like to better understand the nature of this relationship and any other relationship where the man has been in contact with your son for any length of time and has gotten to know him. I understand from David that there was someone who used to go to the sports activities with you to watch ████

4. Could you also provide me with your work schedule for the past several months? I would like to confirm exactly what your hours are and what days and times during each 7 day period.

5. I would like to better understand where ████ stays during your work hours. I know that your parents have mentioned that he is sometimes with them. I know that ████ spends some time with David. Before this current court order, where was ████ when you were working? Please tell me any and all places where he would have been watched. I would like to better understand where ████ has stayed throughout this case.

Thank you for your answers to these specific questions.

Finally, it is clear to me that it will be necessary for me to exceed the fee cap in order to prepare my report and to testify at the final hearing. I will be filing a motion to exceed and would very much appreciate your assent. Please let me know if you assent to this filing. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

STRICKEN
1/10/20

## NOTICE OF DECISION

FILE COPY

COPY

EXHIBIT 8
Judge I.
2/8/2021

Case Name: In the Matter of David Campbell and Robin Partello
Case Number: 659-2018-DM-00702

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

Further Motion for Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello
"Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY".

PLAINTIFF'S EXHIBIT 13

So Ordered

Introcaso, J.

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

ORIGINAL

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9TH CIRCUIT COURT
9TH CIRCUIT NASHUA
2019 MAR -1 A 11: 12

9th CIRCUIT - FAMILY DIVISION - NASHUA

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

FURTHER MOTION FOR INSTRUCTION REGARDING
GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.

35



Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

Kathleen A. Sternenberg



PLAINTIFF'S
EXHIBIT
14

STATE OF NEW HAMPSHIRE

9TH CIRCUIT – FAMILY DIVISION – NASHUA

9TH CIRCUIT NASHUA
2019 MAR 15 A 11: 12

IN THE MATTER OF:

DAVID B. CAMPBELL AND ROBIN A. PARTELLO

DOCKET NO. 659-2018-DM-00702

**PETITIONER'S EXPEDITED MOTION TO CONTINUE MARCH 19, 2019 STATUS CONFERENCE AND MOTION TO CLARIFY SUBJECT OF HEARING**

Now comes the Petitioner, David B. Campbell, by and through his counsel, Shaheen & Gordon, P.A., and respectfully moves the Court to reschedule the March 19, 2019 Status Conference and clarify the subject of the hearing. In support, Petitioner states as follows:

1. By Notice of Hearing dated March 12, 2019, this Court scheduled a one-hour Status Conference for March 19, 2019.

2. Counsel for the Petitioner is unavailable to appear on March 19 due to a conflict with previously scheduled hearings.

3. Counsel for the Petitioner is available for a Status Conference on Monday, March 25 or in the afternoon of March 28.

4. Petitioner further requests that the Court clarify the subject of the Status Conference as it remains unclear why the Court scheduled same.

5. The parties are scheduled for trial on April 11 and 12, 2019. Petitioner is in the process of preparing for same.

6. The Guardian *Ad Litem's* report is anticipated to be completed by the end of March.

7. There are two pending Motions for Contempt that Petitioner has filed.

8. The Petitioner is in the process of preparing for trial and completing discovery.

9. Since Petitioner had to file this Motion quickly, counsel has not contacted the Respondent or the GAL for their assent to the relief sought herein.

10. By email on March 14, 2019 at 9:16 pm, Respondent assented to the relief requested herein.

WHEREFORE, Petitioner respectfully requests that this Court:

A. Allow the within Motion;

B. Waive the ten day waiting period since there will not be ten days between the Court's Notice of Hearing and the Status Conference;

C. Reschedule the Status Conference to either March 25 or the afternoon of March 28;

D. Clarify the subject of the hearing; and

E. Grant such other relief as may be just and equitable.

By and through his attorneys,
Shaheen & Gordon, P.A.

Tracey Goyette Cote, NH Bar # 17449
Jeffrey Manganaro, NH Bar # 266613
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
603-225-7262

Certificate of Service

I, undersigned counsel, hereby certify that I served the within Motion upon the Respondent, Robin Partello, *pro se*, by email and mailing a copy of same to her listed address by U.S. Mail, along with a copy to the Guardian *Ad Litem*.

Jeffrey Manganaro, Esq.



COPY

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

EXHIBIT 9
Judge I.
2/8/2021

PLAINTIFF'S EXHIBIT 15

Case Name: In the Matter of David Campbell and Robin Partello
Case Number: 659-2018-DM-00702

Enclosed please find a copy of the Court's Order dated March 15, 2019 relative to:

Petitioner's Expedited Motion to Continue March 19, 2019 Status Conference and Motion to Clarify Subject of Hearing - Granted

Introcaso, J.

March 15, 2019

Sherry L. Bisson
Clerk of Court

(659304)
C: David Campbell; Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

DEPOSITION EXHIBIT
INTROCASO
14

DAVID CAMPBELL
AND
ROBIN PARTELLO

659-2018-DM-702

On 3-15-19, the Petitioner filed a motion to continue a Status Conf. scheduled by this judge. The motion (#38) is GRANTED.
In filing the motion, the Petitioner inquired as to the purpose of the hearing. The undersigned judge scheduled the hearing to disclose her conflict with the Court-appointed GAL in the case.
Although this judge has made no substantive rulings in this matter, it has approved substantive orders issued by the marital master that had previously handled this litigation.
The marital master has been reassigned to another court location, so numerous substantive motions were presented to this judge for review.
In doing so, this judge

pg 2.

has determined that she is unable to address these motions, particularly as some relate directly to the payment and performance of the GAL.

The GAL has been a long-standing friend of this judge; she has vacationed with her, discussed personal matters in depth (including financial issues) and the GAL is the godparent to one of this judge's children.

The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived.

The Court hoped to put this matter on the record and set this matter for trial before another judge; however, even that may be seen as inappropriate given the conflict over the GAL specifically.

The wisest course for this judge, and in an attempt to

pg 3. provide the parties with the most unbiased and fair hearing, is to simply withdraw as the presiding justice in this matter with regret as to the delay this may cause to the parties.

ORDER:

1. Judge Julie Introcaso shall have no further involvement in this matter.

2. The Clerk shall expeditiously work with the parties to reassign this matter, resolve the pending motions, and schedule this matter for any further hearing.

3. No status conference will occur on March 19, 2019.

So Ordered.

3/15/19

Julie A. Introcaso




EXHIBIT 10
Judge 1.
2/8/2021

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

Case Name: In the Matter of David Campbell and Robin Partello
Case Number: 659-2018-DM-00702

Enclosed please find a copy of the Court's Order dated April 26, 2019 relative to:

Order on Motion to remove GAL

Derby, M.

April 29, 2019

Sherry L. Bisson
Clerk of Court

(659304)
C: Jeffrey Leo Manganaro, ESQ; Robin Partello; Kathleen A. Sternenberg

DEPOSITION EXHIBIT
INTROCASO
17

The State of New Hampshire

Hillsborough County

Ninth Circuit Court ~ Family Division ~ Nashua ~ Merrimack

*In the matter of:* David Campbell *and* Robin Partello

Docket No. 659-2018-DM-702

**ORDER** on #41, Motion to Remove GAL

Prior to ruling on the motion to remove GAL, the undersigned officer reviewed the October 24, 2018 Order Appointing GAL, the February 15, 2019 Order approving the Master's recommendation on the GAL's motion for instruction, the February 15, 2019 order approving the Master's recommendation on the Motion to Strike, and the two March 12, 2019 orders re the GAL's fee cap and GAL payment method, as well as the relevant motions and objections. Reviewing all of these matters de novo, the undersigned officer would have issued the same orders, though the respondent may pay the GAL by personal check (in addition to the other methods), though the respondent does not use personal checks.

Substantively, the motion to dismiss/remove GAL is denied. The respondent's allegations do not form a sufficient basis to terminate the GAL and start over, which would cost significant funds and waste judicial resources. The GAL's sole mission is to investigate and advocate for [redacted] and this may cause friction with the parents. That is a normal part of the process. Motion denied.

Date: 4-26, 2019

Mark S. Derby, Judge
Ninth Circuit Court

The State of New Hampshire Judicial Conduct Committee

603-427-9295

PLAINTIFF'S
EXHIBIT
17

SEP 13 2019

COVER SHEET
Docket No. JC- 19-050-G

(PLEASE PRINT CLEARLY)

Reporter's (Your) Name: ROBIN PARTELLO

Mailing Address 97 E BROADWAY #7 DERRY NH 03038

Name of Person or Persons you are complaining against (Judge, Master, Clerk or other Official):

JUDGE JULIE INTROCASO

Court in which alleged judicial misconduct occurred 9th Circuit Family - Nashua

Date(s) on which the alleged judicial misconduct occurred: Sept 2018 - March 2019

Names of parties in underlying action or suit (including Docket No(s).

David Campbell and Robin Partello Dock# 659-2018-DM-00702

Did you witness the alleged judicial misconduct? X Yes ____ No

If not, state briefly how you are affected by it. Judge Introcaso presided over my family law matter.

Having read the letter that accompanies this form, please describe briefly the nature of the judicial conduct about which you are complaining and summarize the supporting evidence. List the provisions of the Code of Judicial Conduct which you feel have been violated. (use a separate page if necessary).

See attached

I hereby swear or affirm under the pains and penalties of perjury that the information contained in this cover sheet; the accompanying report is true to the best of my knowledge; and, that I have read Supreme Court Rule 40 (3) and will abide by its provisions respecting confidentiality.

Sept 12, 2019
Date

Robin Partello
Signature of Reporter

Please mail to: NH Judicial Conduct Committee
132 Chapel Street, Portsmouth, NH 03801

Judicial Conduct Committee Complaint Form

9th Circuit Family Court—Nashua

In the Matter of David Campbell and Robin Partello

Case number: 659-2018-DM-00702

Name of Judge: Julie (Johnson) Introcaso

1. This matter came before the Nashua Family Division relative to the parties then four-year-old son, ███ (hereinafter referred to as ███).
2. In September 2018, ███ reported to the Elliot Urgent Care Department that David Campbell had been sexually abusing him. ███ also informed his Mother that David Campbell had been sticking things in his butt. ███ also relayed that informed to the Child Advocacy Center—that his bad Dad had been putting things in his butt.
3. After the investigation started, the DCYF report David telling the social worker "who do I need to call? I know the police commissioner".
4. After DCYF recommended that David Campbell have no contact with the minor child, David, through his attorneys, Shaheen & Gordon, filed an Ex-parte motion.
5. The matter was initially assigned to Marital Master Bruce Dalpra, and MM Dalpra ordered that the minor child enter into counseling because David had interrogated the minor child, while recording it, with statements like "who touched your butt? Was it mommies neighbor? Was it Leto? Was it Leto's Dad? Was it someone that lives in mommies building?" ███ answered yes to all of this because he was interrogated in this manner for ten minutes by David.
6. Ultimately, ███ disclosed to medical providers, his Mother and the Child Advocacy Center that it was David Campbell that was sexually abusing him.
7. After the first hearing, MM Daplra and Judge Introcaso assigned Kathleen Sternenberg as the Guardian ad Litem. The GAL abruptly started her investigation early, spoke with David and Shaheen and Gordon and asked for a blank release to speak with the minor child's therapist. The GAL then called the therapist and told him that she was appointed by the Court and that the therapist had to do therapy with both parents because David had 50/50 parenting rights. The counselor had never had a Guardian Ad Litem call and demand that counseling be conducted in a specific manner. In addition, ███ needed counseling because of the possible sexual abuse.
8. Robin filed motions with the Court describing this inappropriate behavior by the GAL and Judge Introcaso ordered that Robin had to fully cooperate with the GAL and failure to do so would result in sanctions and may be taken into consideration regarding the final issuance of a parenting plan. (See attached)
9. Judge Introcaso went on to rule on several motions pertaining to the GAL. The rulings were always in the GAL's favor and repeatedly granted motions to exceed the fee cap.
10. On March 15, 2019, Judge Introcaso scheduled an abrupt status conference for March 19th (four days away). Every party objected due to the fact that it was only four days

away and Judge Introcaso issued a written order, stating that she had to recuse herself because the GAL is her best friend, they travel together, they discuss finances, the GAL is a Godparent to her children, etc. (See attached order)

11. Judge Introcaso waited six months to disclose this and in her motion she said she never ruled on any substantive motions.

12. Judge Introcaso threatened to sanction me if I did not cooperate fully with her friend-- that is substantive.

13. Further, Judge Introcaso replaced Marital Master Dalpra with Judge Mark Derby.

14. Mark Derby served in the NH House of Representatives with David Campbell.

15. Judge Introcaso also donates to Jean Shaheen's campaign, whose husband's law firm represents David Campbell.

16. Currently, Judge Mark Derby sua sponte ordered that Robin Partello get a psych evaluation with Dr. Douglas Johnson in Manchester NH.

17. The reason for the psych evaluation was that Robin said mean things to David and the GAL, i.e. she called David old and said he looks like Dr. Phil.

18. Granted these are not the best choice of words, but it is certainly not enough for a psych evaluation with no arrest record, no history of mental illness, gainfully employed as a nurse, homeowner, veteran of the Air Force.

19. Judge Julie Introcaso has a maiden name of Johnson and is from Manchester NH. Robin is being sent to a Doctor Johnson in Manchester NH. This Doctor was suggested by the GAL, who is Julie Introcaso's best friend. The appearance of impropriety is overwhelming in this matter. It appears as those this is not a Court of Equity but rather a business for profit for the friends and family of Julie Introcaso. To date, the GAL has charged us about $9000 and we had to send Dr. Johnson a $3500 retainer and the psych eval may go upward to $10000.00.

Judicial Conduct Committee Complaint Form

9th Circuit Family Court—Nashua

In the Matter of David Campbell and Robin Partello

Case number: 659-2018-DM-00702

Name of Judge: Julie (Johnson) Introcaso

Code of Judicial Conduct violations

## CANON 1

*A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.*

**RULE 1.1** **Compliance with the Law**

**RULE 1.2** **Promoting Confidence in the Judiciary**

**RULE 1.3** Avoiding Abuse of the Prestige of Judicial Office

## CANON 2

*A judge shall perform the duties of judicial office impartially, competently, and diligently.*

RULE 2.1 Giving Precedence to the Duties of Judicial Office

RULE 2.2 Impartiality and Fairness

RULE 2.3 Bias, Prejudice and Harassment

RULE 2.4 External Influences on Judicial Conduct

RULE 2.5 Competence, Diligence, and Cooperation

RULE 2.6 Ensuring the Right to Be Heard

RULE 2.7 Responsibility to Decide

RULE 2.8 Decorum, Demeanor, and Communication with Jurors

RULE 2.9 Ex Parte Communications

RULE 2.10 Judicial Statements on Pending and Impending Cases

RULE 2.11 Disqualification

RULE 2.12 Supervisory Duties

RULE 2.13 Administrative Appointments

## CANON 3

*A judge shall conduct the judge's personal and extrajudicial activities to minimize the risk of conflict with the obligations of judicial office.*

RULE 3.1 Extrajudicial Activities in General

RULE 3.5 Use of Nonpublic Information

RULE 3.7 Participation in Educational, Religious, Charitable, Fraternal, or Civic Organizations and Activities

RULE 3.8 Appointments to Fiduciary Positions

RULE 3.11 Financial, Business, or Remunerative Activities

RULE 3.12 Compensation for Extrajudicial Activities

RULE 3.13 Acceptance and Reporting of Gifts, Loans, Bequests, Benefits, or Other Things of Value

RULE 3.14 Reimbursement of Expenses and Waivers of Fees or Charges

RULE 3.15 Reporting Requirements

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Motion for Instruction; A and B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a final Parenting Plan.**

**(MM. DalPra/J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Motion for Reconsideration; Denied.**

**(MM. DalPra/J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Petitioner's Motion to Strike Respondent's Motion for Reconsideration as Untimely; Denied as to A.**

**(MM. DalPra/ J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF HEARING

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

The above referenced case(s) has/have been scheduled for:

**Status Conference**

GAL may appear telephonically

**Date: March 19, 2019** **30 Spring Street**
**Time: 3:00 PM** **Nashua, NH 03060**
**Time Allotted: 1 Hour** **Courtroom 5 - 9th Circuit Court - Nashua**

Please advise immediately if this is not sufficient.

If you are unable to appear at this scheduled hearing, you must request a continuance from the Court in writing which, except for good cause shown, shall be filed within ten (10) days from the date of the mailing of the notice of a hearing. You must also send a copy of the request to the opposing party, unless restricted from doing so. Motions to continue filed fewer than 10 days in advance of hearing will only be granted if the Court finds that an emergency or exceptional circumstance exists. You must appear on the scheduled date unless you receive notification from the Court that a request to continue the hearing has been granted. There are no child care facilities at the courthouse, so you should make appropriate child care arrangements.

Should you fail to appear at the hearing, all issues raised by the pleadings may be decided by the court without your participation.

If you will need an interpreter or other accommodations for this hearing, please contact the court immediately.

Please be advised (and/or advise clients, witnesses, and others) that it is a Class B felony to carry a firearm or other deadly weapon as defined in RSA 625.11, V in a courtroom or area used by a court.

BY ORDER OF THE COURT

March 12, 2019

Sherry L. Bisson
Clerk of Court

579
C: Kathleen A. Sternenberg; Jeffrey Leo Manganaro, ESQ; Tracey G. Cote, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Further Motion for Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello**
**"Legal fees/GAL fees to be paid In Cash, by Money Order or Bank Check, ONLY".**

**So Ordered**

**Introcaso, J.**

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CIRCUIT COURT NASHUA
2019 MAR -1 A 11: 12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

FURTHER MOTION FOR INSTRUCTION REGARDING
GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for ████ █████ █████, DOB ██/████.

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.

35

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg
Kathleen A. Sternenberg

3/12/19 – Legal fees / GAL fees to be paid in Cash, by money order or bank check, ONLY.

So Ordered.

Julie A. Introcaso

**Kathleen Sternenberg**

---

**From:** Robin Partello <robinpartello@yahoo.com>
**Sent:** Tuesday, February 26, 2019 5:16 PM
**To:** Kathleen Sternenberg
**Subject:** Re: I do not accept Apple Pay

NASHUA
2019 MAR -1 A 11: 12

Yes, I fully understand. Everyone is set up for Apple Pay is you have an Apple phone.

You take the funds that I sent you and deposit it into your IOLTA.

Quite honestly, you are the first attorney that I've ever met that doesn't take electronic payments and does not have an office.

I did my part. I sent the money. You have it available. It's not my obligation to drive to Concord NH to drop off cash when you may not be there. The office staff at the N.H. Bar Association already refused to sign a statement as a witness. They said they don't work for you. You're putting me in a tough spot.

I'll just file with the Court for Instruction.

Sent from my iPhone

> On Feb 26, 2019, at 4:52 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>
> Ms. Partello,
>
> Please arrange to bring me $350 cash at the NH Bar Association. I can not accept Apple Pay. I do not have it set up. This money is deposited in to my Client Trust account. It is not my money, as you know. I would appreciate your understanding.
>
Kathleen A. Sternenberg, Esq., #8840
> Law Office of Kathleen A. Sternenberg
> P. O. Box 2288
> Concord, NH 03302-2288
> (603)641-1048
> kas@sternenberglaw.com
>
>> On Feb 26, 2019, at 4:45 PM, Robin Partello <robinpartello@yahoo.com> wrote:
>>
>> Apple Pay is the most secure source of electronic payment. I sent the exact amount of money that you requested and it was available to you instantaneously.
>>
>> Kathleen, honestly, you asked for a $350, I sent it and it was immediately available. Instead, you email me and tell me to go to a bank, get a money order, go to a Post Office and mail it with "tracking".
>>
>> As I told you before, you don't have a business office, I can't drop off cash like I did the last time when we met at the N.H. Bar Association conference room. Mailing a money order is like mailing cash, it's never a good idea.
>>

>> I sent you the exact amount that you requested. You have the $350. I will file a motion with the Court for instruction as it seems ludicrous that you won't accept such a secure form of payment. You are essentially tying my hands behind my back. I don't use checks. You don't have an office & you don't accept electronic payments.
>>
>> I'll file a Motion to Inform the Court.
>>
>> Sent from my iPhone
>>
>>> On Feb 26, 2019, at 2:24 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>>>
>>> Please go to the post office, purchase a money order and mail it to me. If you would like, you can send it with tracking. I do not, and will not, accept Apple Pay for retainer deposits.
>>>
>>> Kathleen A. Sternenberg, Esq., #8840 Law Office of Kathleen A.
>>> Sternenberg P. O. Box 2288 Concord, NH 03302-2288
>>> (603)641-1048
>>> kas@sternenberglaw.com

**Kathleen Sternenberg**

---

**From:** Robin Partello <robinpartello@yahoo.com>
**Sent:** Tuesday, February 26, 2019 9:12 AM
**To:** Kathleen Sternenberg
**Subject:** Re: Following up with you.

I sent it electronically. Honestly, you only accept checks, which I don't use and haven't for years. I can get a money order but I don't want to mail it as it's the same as cash. You don't have an office so I couldn't even drop off the money order or cash.

Additionally, I'd prefer to have a record of my payment. Further, have you sent a recent invoice? I have not received it.

Sent from my iPhone

On Feb 26, 2019, at 8:08 AM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:

> Robin,
>
> You told me that you would send me the $350 retainer. I have not received your payment. Is this something you have sent?
>
> Kathleen A. Sternenberg, Esq., NH Bar #8840
> Law Office of Kathleen A. Sternenberg
> P.O. Box 2288
> Concord, NH 03302
> (603)641-1048 phone
> kas@sternenberglaw.com
>
> ---
>
> **From:** Robin Partello [mailto:robinpartello@yahoo.com]
> **Sent:** Tuesday, February 26, 2019 7:24 AM
> **To:** Kathleen Sternenberg
> **Subject:** Re: Following up with you.
>
> Kathleen:
>
> I am in the process of obtaining an attorney. Although I would love to answer your questions, I await for my counsel to advise.
>
> Due to the voluminous case file, it will take three to five business days for the attorney(s) to review.
>
> I DO NOT assent to your motion to exceed the cap.
>
> Sent from my iPhone
>
> On Feb 25, 2019, at 1:04 PM, Kathleen Sternenberg <kas@sternenberglaw.com> wrote:
>
>> 2/25/2019
>>
>> Hi, Robin,
>>
>> I have not received your retainer check.

I have a couple of things that I would like to hear directly from you about. I would ask that you respond to these questions in writing, please.

1. When we originally sat down, I believe you told me that you had never been married. I would like to have you confirm this as when I asked your parents, they said you had been married to a man named Jeff. Please provide Jeff's full name and the dates of your marriage and how the marriage ended and date of separation and divorce. I would like to understand from you what the circumstances of the divorce were.

2. Also, when we met, I believe you told me that you moved from your parents' home to your Derry condo. You told me that you did not live anywhere in between. It is my understanding that there were several months between when you left your parents' home and when you were able to move in to your Derry condo after the tenant's vacated. Could you please tell me where you lived between June and September? It is important to me to know and understand where ███ has lived.

3. Would you also clarify for me if you have had any boyfriends, companions or significant others during ███ lifetime? I had asked you about the nature of the relationship with Russ, your neighbor, and I believe that you said that Russ was just someone who allowed you and ███ to use his bathroom while he was at work. However, I have information that ███ may have been around Russ and Russ may have disciplined him and that Russ may have provided you transportation. I would like to better understand the nature of this relationship and any other relationship where the man has been in contact with your son for any length of time and has gotten to know him. I understand from David that there was someone who used to go to the sports activities with you to watch ███?

4. Could you also provide me with your work schedule for the past several months? I would like to confirm exactly what your hours are and what days and times during each 7 day period.

5. I would like to better understand where ███ stays during your work hours. I know that your parents have mentioned that he is sometimes with them. I know that ███ spends some time with David. Before this current court order, where was ███ when you were working? Please tell me any and all places where he would have been watched. I would like to better understand where ███ has stayed throughout this case.

Thank you for your answers to these specific questions.

Finally, it is clear to me that it will be necessary for me to exceed the fee cap in order to prepare my report and to testify at the final hearing. I will be filing a motion to exceed and would very much appreciate your assent. Please let me know if you assent to this filing. Thank you.

Kathleen A. Sternenberg, Esq., NH Bar #8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**ROBIN PARTELLO**
**97 EAST BROADWAY**
**APT 7**
**DERRY NH 03038**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Motion to Exceed Fee Cap**
**"Motion granted over the Respondent's objection at #36".**

**Introcaso, J.**

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Kathleen A. Sternenberg; Tracey G. Cote, ESQ

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CIRCUIT NASHUA 2019 MAR -1 A 11: 12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

[1] The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

34



the parties to [illegible] GAL [illegible] percentage of the retainer within fourteen days [illegible] order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

Kathleen A. Sternenberg

Motion Granted / ~~Denied~~

3-12-19

Date

Judge Julie A. Introcaso

over the Respondent's objection at #36

AUG 13 2019

BY:

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit - Family Division - Nashua

Case Name: ITMO Campbell and Partello

Case Number: 659-2018-DM-00702
(if known)

MOTION: Objection to GAL's request to exceed the cap

I, Robin Partello state the following facts and request the following relief:

(1) I do not have the money to pay the GAL.

(2) in terms of the psych evaluation that the GAL is anxious about, I intend on filing an interlocutory appeal on that issue.

(3) In terms of pleadings, I mail a copy of all of my pleadings to the Shaheen + Gordon firm and the GAL. Maybe the GAL's copy got lost in the mail.

Aug 13, 2019
Date

Signature [signature]

603-417-9003
Telephone

97 E Broadway #7 Derry NH 03038
Address

I certify that on this date I provided a copy of this document to Amy Cole (other party's attorney) by: ☐ Hand-delivery OR ☒ US Mail OR (other party) or to ☐ E-mail (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order).

Aug 13, 2019
Date

Signature [signature]

**ORDER**

☐ Motion granted. ☐ Motion denied.

**Recommended:**

Date

Signature of Marital Master/Referee

Printed Name of Marital Master/Referee

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

Date

Signature of Judge

Printed Name of Judge

PLAINTIFF'S EXHIBIT 18

1/10/2020

Attorney Mittelholzer -

I apologize for the clunky attachments, I assumed it would be easier to copy with clips.

Thank you again for your patience and courtesy in my response to this matter.

Best to you,

Julie

Julie A. Introcaso

New Hampshire Judicial Conduct Committee
c/o Robert T. Mittelholzer, Esq.
Executive Secretary
132 Chapel Street
Portsmouth, NH 03801

January 9, 2020

RE: JC-19-050-C

To the Honorable Committee:

As an introductory matter, I would first like to state that I don't consider myself as ever having "presided over" this case as Ms. Partello suggests on her Cover Sheet.[1] I am not a Supervisory Justice and do not have any authority to assign cases.[2] Few cases are ever actually "assigned" to any particular judge, and when they are – the judge is almost always informed of such. I have never conducted a hearing involving the opposing parties in this case.

Prior to her suspension from the practice of law, Ms. Partello had acted as counsel on a number of cases in which I was involved; less than 10, and in most of those matters I signed agreements without any hearing. She acted as counsel in one highly contested matter before me. I believe my last involvement with any case where she had entered an appearance as counsel was in 2013.

I recently had an opportunity to review the entire court file in 659-2018-DM-702 through the date of Ms. Partello's complaint (dated September 13, 2019). This review started on January 2, after my return from medical leave on December 16th, 2019, and I appreciate the additional time this Committee has given me to respond to her complaint.

In reviewing what I have been given, it is obvious I personally issued three orders on motions which were in the general "signing pile" for marital and parenting case; two dated March 12, 2019 (#34 and #35), and one handwritten order dated March 15, 2019 (#38). Notices of Decision were issued the same day in which I signed the documents. The Case Summary, in pertinent part, has been provided for your review (See Exh. A; Case Summary as of October 29, 2019)

With respect to the other Orders referenced by Ms. Partello, those were orders issued upon the recommendation of Marital Master Bruce DalPra (#4, #11, #12, #29, #32 and #33). (attached as Exhs. B-G)

---

[1] Please see Exh. K, wherein I regrettably used the term "presiding judge" on page 3 after it became clear the Master Bruce Dalpra would be unable to complete the case due to his reassignment and the file was frequently presented to me for signing; I was concerned I was now seen as the judge who would handle and try the case.

[2] Again, see Exh. K, wherein I make clear in my Order at #2 that the Clerk is in charge of assigning cases for hearings and trials, and I ordered the Clerk to do so.

#4 – I co-signed a recommendation on an ex parte emergency order prior to the involvement of Kathleen Sternenberg, GAL, the person with whom I have acknowledged I have a conflict of interest. See Exh. B.

#11 – On October 24, 2018, Master DalPra recommended the appointment of a GAL in this matter. He chose the GAL without any consultation with me, and it would be unusual for him to do so. He is more experienced than I, and has a past history which allows him to select a Guardian *ad litem* whom he believes would be appropriate for any particular case. I co-signed the third page of the Order on Appointment of Guardian *ad litem*, recognizing the content of page three as part of an appointment order, and likely did so without ever looking to see who he had appointed on page one. My "judicial signing" often includes co-signing responsibilities. It is the routine practice of the clerk's office to place a "SIGN HERE" sticker where they would like my signature. I comfortably co-signed a recommendation on a GAL appointment by Master DalPra stating:

> I hereby certify that I have read the recommendations and agree that, to the extent the marital master/referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/referee/hearing officer.

Ms. Partello is correct is asserting that I co-signed the Order on Appointment, appointing Kathleen A. Sternenberg as GAL in this divorce case. However, I did not make the decision to appoint her, and at the time it appeared that Master Dalpra would continue to hear the substantive matters in this case. Further, the Court usually doesn't make "factual findings," *per se* in appointing a GAL. See Exh. C.

#12 – On that same date, I co-signed a narrative order written by Master DalPra which included factual findings, including his appointment of GAL Sternenberg. I acknowledge, in retrospect, that I should have read both #11 and #12 in greater detail, and then I could have taken steps to assure that I would not be involved in more issues that arose in this matter. I was the only full-time marital and parenting judge in Nashua at the time. I had a master and referee also issuing orders, virtually all of which passed through me, and there simply isn't enough time read every order coming out of Nashua Family Division in detail. Basic orders recommended by Master DalPra or Referee Thorn, whose judgment I not only trust, but rely upon often, were usually signed without the most diligent review. Unfamiliar with this case, it appeared to me that Master DalPra would likely continue to be the trier of fact in the case, and I would have no direct contact with the parties, GAL Sternenberg or make any substantive rulings in the case. See Exh. D.

Then, Master DalPra was reassigned to the Salem Family Court. That transition took some time as a new judge had been assigned to sit in Nashua late in 2018, namely Judge Mark Derby. Judge Derby would be walking into the cases and caseload left behind by Master DalPra. Judge Derby began making all of the direct rulings and orders in this case.

#29 – A Motion to Reconsider was filed by Ms. Partello on January 28, 2019. Sometime on February 15, 2019, Master DalPra denied the motion. I had three hours open on my afternoon docket

and likely went to work on the signing pile. Judge Derby had been sitting in Merrimack Circuit Court both February 14 and 15, 2019, so in an attempt to help reduce the number of cases piling up, I approved Master DalPra' s denial, again, believing he knows the standard for accepting or denying a Motion to Reconsider. I did not have any recollection or see any indication of GAL Sternenberg's involvement in the case at that point. In fact, the page upon which I co-signed, the certificate of service does not indicate that the motion was sent to Attorney Sternenberg, her name was not in the motion and nothing caught my eye. I co-signed Master Dalpra's recommendation. See Exh. E.

#32 – A motion for instruction was filed by GAL Sternenberg on February 7, the substance of which I glanced through. There was no doubt I was aware of Attorney Sternberg's role in this case at that time. More particularly, I read Master DalPra's recommended ruling dated February 15 stating, "A+B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a Final Parenting Plan." I co-signed, generally holding the same position as Master DalPra with respect to having party cooperate with Guardians *ad litem* appointed by the Court. Although it speaks of the possibility of sanctions, his recommendation did not impose any. With respect to the GAL, the recommendation merely ordered the Respondent to comply with earlier orders for payment of the retainer. This was not a "substantive order" in the case, and did not resolve any specific legal issue in the case itself.

#33 – On February 8, 2019, the Respondent filed a motion to strike Ms. Partello's Motion to Reconsider filed in January. Master DalPra recommended a denial (also on February 15, 2019). I co-signed his denial. See Exh G.

(I don't believe Ms. Partello noticed or took issue with my signatures on #29, #32 and #33). I included them as I noticed them in my review of the court's file.)

Then, on March 12, 2019, two motions were placed into the signing pile for a judge's review, #34 and #35. Again, Judge Derby was in Merrimack District Court on that day, and Master DalPra was in Jaffrey Family Division. As usual, I addressed all of the Divorce and Parenting signing that day.

#34 – On March 1, 2019, GAL Sternenberg filed a Motion to Exceed Fees. The requested relief asked for an additional retainer from both parties. The volume of the case itself already indicated it was highly a contested matter. On March 12, 2019, I granted the motion to exceed fees (over the Respondent's objection) which would apply equally to each party. See Exh. H

#35 – On March 1, 2019, the GAL Sternenberg also filed another Motion for Instruction regarding the payment of her fees. Apparently, Ms. Partello had asked the GAL to accept payment through ApplePay. GAL Sternenberg represented in her motion that she could not accept ApplePay. I issued an order simply stating, "Legal fees/GAL fees to be paid in cash, by money order or bank check only." Again, I didn't write this order specifically directed to Ms. Partello or with any concern that it would impact the outcome of this case; rather, I was simply stating what I believed was a generally accepted practice of payment. The Court itself does not accept ApplePay, Bitcoin, Venmo or other alternate forms of tender. Notices of Decision were issued that day to both parties indicating that I had made such rulings. See Exh. I.

After issuing these orders, #34 and #35, rather than just co-signing orders of the Master, I became uncomfortable addressing any issues in this case, and asked the Clerk to schedule a Status Conference in this case **for the purpose of disclosing to the parties that Master DalPra would likely be unavailable for trial (due to his new assignments in other courts) and that I, also, would not be able to handle this matter** because it apparent by that time that the parties were not fighting over the role and work of the GAL, what she should be paid, etc. It was also a possibility (I hoped) that after that hearing wherein I would voluntarily disclose the nature of the conflict, that the parties could have expressed, on the record, that they had no concern over previous orders in the case.

The Notice of Hearing for the Status conference issued on March 12, 2019, along with my decisions on #34 and #35. I did not ask the Clerk to hold my decisions, because I was going to offer the parties to ask me to formally recuse myself and vacate my prior orders at the Status Conference.

#38 – On March 15, 2019, the Petitioner filed a Motion to Continue the Status Conference and to Clarify the purpose of the Conference. See Exh. J. Apparently counsel had a scheduling conflict but I also realized that I should not even hold the conference being aware of the potential conflict, and recognizing that the recent orders were still subject to reconsideration, etc. I decided to simply explain to BOTH parties that I needed to recuse myself at this point.

Of my own volition, I issued an Order dated March 15, 2019, addressing #38. I ask that it be read in its entirety. Again, to the best of my knowledge, no party had questioned my co-signing or orders until well after that handwritten order issued. See Exhibit K.

Within that order I indicated that "[The motion (#38) is GRANTED]. I probably shouldn't have even done that (and stated so in the order), but I did explain to the parties why I had scheduled the conference in some detail, while issuing and order recusing myself, asking the clerk to reassign the matter, and cancelling the status conference I had scheduled. The motion was granted not for the benefit of the Petitioner, but in recognition of this Respondent's own decision to recuse herself. No motion to recuse me from co-signing or issuing any orders was ever filed at that point.

The Notice of Decision indicating #38 was GRANTED, along with a copy of my handwritten order. Also, on that same day the head clerk in our Family Division scheduled the trial in this matter before Judge Derby (on non-consecutive days as he worked in two different courts as I stated earlier). See Exh L. I personally marked the file with a bold, Sharpie pen, "NO JAY" so that I would hopefully see that before ever opening a file to the page marked "Sign here." Sometimes the staff takes care of that by checking our conflicts list we provide to them.[3] It wasn't done here by myself or the staff after GAL Sternenberg was appointed, leading to various other matters being given to me for signatures.

---

[3] My conflicts list has 3 attorneys on it. After 7 plus years on the bench assigned to Nashua only, one of them has never come to Nashua, a second has come less and less as she heads towards retirement and none of her appearances have been before me. Attorney Sternenberg has served as a GAL in one, perhaps two cases of my own, only after the parties have requested her appointment and I made full disclosures on the record. We have spoken to one another very few times in the past seven years, and rarely with respect to my work, obviously never

After my handwritten order, Ms. Partello moved to recuse the GAL. The Petitioner objected and stated, through counsel,

> *[the] only contact the GAL has had with this Court has been through motions for further instruction and to exceed the fee cap. This matter was assigned to Master DalPra who has entered orders on substantive pleadings. As the Court pointed out in its March 15, 2019 Order, no substantive motions were directly ruled upon by Judge Introcaso. Many orders were approved by Judge Derby. When Judge Introcaso became involved, the Court identified the conflict of interest before any substantive decisions were made directly by her, thereby stopping any alleged bias from trickling down to the GAL or the parties."* Again, See Exh. J.

To some extent, I appreciate the recognition of what is, essentially, my general defense to Ms. Partello's complaint. However, I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some impropriety on my behalf occurred, although I do not believe I committed any knowing or intentional violation of the Code.

The Court's signing pile most often includes administrative or procedural matters that require any judge's review and signature. Some are motions without objections, some are agreements, some are requests for waivers of court fees, many of them are orders issued by the Master or referees, etc. . Orders needed by a particular judge are put in a designated pile for that court official.

I do not know any of the underlying facts of this case, again I have held no hearings in this case. The issues I became involved were limited in scope, not substantive in nature, and I didn't hesitate to co-sign the recommendations of Master Dalpra. I saw this case every few months in a signing pile which had largely become my responsibility having no Family Division judges assigned to Nashua on a daily basis, other than myself. I co-signed in 2019 for a nearly full-time master, a child support referee, senior justices, and all other general matters. It was not until Judge Derby became settled in Nashua and proficient in early 2019 that he shared that responsibility with me on the days he was in Nashua.

I confess error in not being more attentive to who was being appointed, etc. in this file. I tried to be helpful and efficient to my own detriment. ("No good deed goes unpunished.") I acknowledge my order of March 15, 2019, should have been issued back in October 2018; it simply wasn't, and no requests by the staff for co-signing or a ruling was of such a nature that made me concerned. Only after my orders on #34 and #35 were issued did I realized I needed to take affirmative action on the case, recusing myself, concerned that Master DalPra's reassignment would lead to more and more occasions wherein I would be asked to become involved. I hoped I could remain available to assist by disclosing my conflict and obtaining waivers on the record. I took the prudent steps I could on March 15, 2019, and haven't been involved in this case since.

---

with respect to this case or any other in which she became involved. I suspect the staff has simply stopped checking for my conflicts as it has never been an issue or problem in my caseload.

*Post Script:* In reviewing the file, even beyond March 15, 2019, it is clear that the question of the propriety of my actions was raised in a subsequent hearing on the removal of the GAL. Kindly, and without any knowledge of MS. Partello's eventual complaint, Judge Derby issued an order stating:

> *Prior to ruling on the motion to remove GAL, the undersigned officer reviewed the October 24, 2018 Order appointing GAL, the February 15, 2019 order approving the Master's recommendation on the GAL's motion for instruction, the February 15 2019 order approving the Motion to Strike, and the two March 12, 2019 orders re GAL's fee cap and GAL payment method, as well as the relevant motions and objections. Reviewing all of the matters de novo, the undersigned officer would have issued the same orders...*

Again, I don't intend to suggest that this constitutes exoneration, but it reflects the reality of this case. I may have made rulings which appear to Ms. Partello, or any person, to be improper due to a conflict of interest; but there was no act on my part that resulted in any bias towards either party or prejudiced the outcome of this case. Further, I did nothing which benefitted GAL Sternenberg or acted in any manner inconsistent with what I believe is routinely done in these high conflict cases. See Exh. M.

IN DIRECT ANSWER TO THE ALLEGATIONS:

1. – 6. I have no knowledge of the facts of this case.

7. As stated above, Master DalPra recommended the appointment of a GAL in this matter. He chose the GAL without any consultation with me, and it would be unusual for him to do so. He is more experienced than I, and has a past history which allows him to select a Guardian *ad litem* whom he believes would be appropriate for any particular case. I co-signed the third page of the Order on Appointment of Guardian *ad litem* (likely tabbed "Sign Here"), perhaps without ever looking to see who he had appointed.

8. Again, my Order with respect to this allegation was an approval of the recommendation of Master DalPra of whom I am confident has the expertise to make such orders and to do so only when they are appropriate and necessary.

9. I did, indeed, go on to sign two orders as a matter of routine signing. However, I such ruling were made "in favor" of the GAL. They were routine, frequently filed motions, and the Court generally is supportive of the GAL's work and attempts to assure they are paid fairly in accordance with their ethics and the terms of their GAL Stipulation.

With respect to the March 12, 2019, my order on pleading #34, the Court received this motion in the routine signing pile. It was an impartial assessment, affecting each party equally. On #35, I ordered that payment of the GAL fees must be made in the form of cash, bank check or money order. I honestly found no reason to withhold issuing the order that I did as it was not about Attorney Sternenberg, Ms. Partello, or any other individual. No one stood to be enriched or advantaged by my

ruling. It was intended as a general statement of this Court consistent with every other order I issue with regard to payments. It was not, in content, addressed to Ms. Partello.

10. The allegations with respect to my March 15, 2019, order I'd respectfully note that this order was not included in the complaint I received (despite the language in Complainant's para. 10 stating "See Order attached.") However, when the issue of the appropriate amount of fees Attorney Sternenberg could charge in the case became an issue, I acted immediately to indicate I should no longer make any rulings in this case. The status conference was intended to speak to counsel and the parties directly and move the case forward with another, unbiased, judge avoiding any substantive rulings. If they wished to challenge my rulings to date, they would have the ability to do so.

The Committee can see I never used the term "best friend" in my Order of March 15, 2019. GAL Sternenberg and I have known each other for many years, but talk very rarely at this point – yearly? Approximately 18 years ago, we attended an out-of-town theater festival on two or three occasions; we have discussed personal matters in depth, including financial issues. We were walking buddies in the late 1990s, and mostly discussed our own personal struggles with husbands, kids and the struggles of practicing in a small firm. I asked GAL Sternenberg and her husband to act as godparents to my daughter, Catherine, in 1998, as she was one of the only practicing Catholics with whom I associated during that time. I included GAL Sternenberg on my conflict list in 2012, with a never-ending hope that we will resume a closer friendship at some point, particularly now that our parenting schedules are empty. Regrettably, this job has proven to be too time consuming for many friendships at all. I haven't even seen the GAL's "new home" in Hopkinton since it was built nearly 12-15 years ago.

11. I had no opportunity to "disclose" the fact that I have had a personal relationship with Attorney Sternenberg, but for perhaps marking the file "NO JAI" sooner than I did. The case was opened sometime in the fall of 2018. To state I waited six months to disclose is misleading as I had no

12. I co-signed Master DalPra's order that stated"...Failure to do so may result in sanctions...." Those are not my words and that was not my decision, it was the Master's decision recommended to me. He heard the facts and made that statement. Understandably, it is ultimately my "Order", but again my co-signing merely states that "I hereby certify that I have read the recommendations and agree that, to the extent the marital master has made factual findings, he has applied the correct legal standard to the facts determined by the marital master..."

13. Denied. I have no such authority. Master DalPra was reassigned by Judge King to sit in Derry District Court for most of 2019. Judge Derby picked up nearly all of the cases Master DalPra was handling in Nashua. No judge or clerk ever consulted with me about the "assignment" of this case.

14. I have no knowledge of this fact.

15. Denied and misleading. I made a one-time, rather paltry, donation to Gov. Shaheen's senatorial campaign while attending a house party given for her support. I don't know if that was in 2002 or 2008, but it was many years before I became a judge or judicial candidate for this position (2012). I do not

recuse myself from Shaheen and Gordon cases as I do not consider that donation as having created a any conflict of interest.

16. I have no knowledge of the facts of this case.

17. I have no knowledge of the facts of this case.

18. Argumentative; I can't confirm or deny the facts asserted.

19. I am familiar with Dr. Doug Johnson's work, and I have appointed him for a specific purpose in my one of own former family law cases. Yes, my maiden name is Julie Ann Johnson. Needless to say, the fact that the doctor's last name is Johnson is a baseless stretch of the imagination. I have no knowledge of any familial connection nor do I have any personal relationship with Dr. Johnson. Johnson is the second most common surname in the US.

I submit that I have committed no violations of the Judicial Code of Conduct despite Ms. Partello's beliefs.

RESPECTFULLY, I ask this Committee to accept this Response for the purposes of Supreme Court Rule 40(7).

---

I hereby swear or affirm under pains and penalties of perjury that the information contained in this Response, along with the accompanying attachments, are true statements and accurate copies to the best of my knowledge.

Date: January 10, 2020

Judge Julie A. Introcaso

This instrument was acknowledged before me on January 10, 2020 by Judge Julie A. Introcaso
My Commission Expires 2/20/2024 Suzan M. Brindle
Notary

9TH CIRCUIT - FAMILY DIVISION - NASHUA

# CASE SUMMARY

CASE NO. 659-2018-DM-00702

In the Matter of David Campbell and Robin Partello § § § §

Location: 9th Circuit - Family Division - Nashua
Filed on: 10/12/2018

## CASE INFORMATION

Case Type: Individual Parenting Petition

Case Status: 10/12/2018 Pending

| DATE | CASE ASSIGNMENT | |
|---|---|---|
| | **Current Case Assignment** | |
| | Case Number | 659-2018-DM-00702 |
| | Court | 9th Circuit - Family Division - Nashua |
| | Date Assigned | 10/12/2018 |

## PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Petitioner** | **Campbell, David**<br>*10 East Dunstable Road*<br>*Nashua, NH 03060* | **Cote, Tracey G., ESQ**<br>*Retained*<br>603-225-5112(F)<br>603-225-7262(W)<br>*Shaheen & Gordon PA*<br>*107 Storrs Street*<br>*PO Box 2703*<br>*Concord, NH 03302-2703*<br>tcote@shaheengordon.com<br><br>**Manganaro, Jeffrey Leo, ESQ**<br>*Retained*<br>603-225-5112(F)<br>603-225-7262(W)<br>*Shaheen & Gordon PA*<br>*107 Storrs St*<br>*PO Box 2703*<br>*Concord, NH 03302-2703*<br>jmanganaro@shaheengordon.com |
| **Respondent** | **Partello, Robin**<br>*97 East Broadway*<br>*Apt. 7*<br>*Derry, NH 03038* | |
| **Child** | [redacted] | |
| **Guardian ad Litem** | **Sternenberg, Kathleen A.**<br>*Law Office of Kathleen Sternenberg*<br>*PO Box 2288*<br>*Concord, NH 03302* | |

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 10/12/2018 | Individual Parenting Petition | *Index #1* |
| 10/12/2018 | Motion for Ex Parte Relief<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ | *Index #2* |

| | | |
|---|---|---|
| 10/12/2018 | Affidavit<br>*of Notice* | *Index #3* |
| 10/12/2018 | Ex Parte Order (Judicial Officer: DalPra, Bruce F )<br>*"No ex parte orders are issued; The case shall be scheduled for a prompt hearing."* | *Index #4* |
| 10/12/2018 | Objection<br>Party: Respondent Partello, Robin<br>*to Ex Parte Motion (RSP)* | *Index #5* |
| 10/12/2018 | Orders of Notice | *Index #6* |
| 10/12/2018 | Instruction for Service | *Index #7* |
| 10/23/2018 | CIP Certificate - Petitioner | *Index #8* |
| 10/24/2018 | Ex Parte Hearing (Judicial Officer: DalPra, Bruce F) | |
| 10/24/2018 | Return of Service<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ; Petitioner Campbell, David<br>*David Campbell* | *Index #9* |
| 10/24/2018 | Proposed Order<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ; Petitioner Campbell, David<br>*David Campbell* | *Index #10* |
| 10/24/2018 | Order Issued (Judicial Officer: Introcaso, Julie A ) | |
| 10/24/2018 | Order Appointing GAL (Judicial Officer: DalPra, Bruce F )<br>*Kathleen Sternenberg* | *Index #11* |
| 10/24/2018 | Order (Judicial Officer: DalPra, Bruce F )<br>*Interim Order* | *Index #12* |
| 11/05/2018 | Motion to Reconsider<br>Party: Petitioner Campbell, David<br>*ptr* | *Index #14* |
| 11/14/2018 | Granted<br>*"as to D, E and F. Denied as to other requests. The parties are free to alter or modify parenting time by written agreement" (DalPra, MM/Introcaso, J)* | |
| 11/13/2018 | CIP Certificate - Petitioner | *Index #15* |
| 11/13/2018 | Objection<br>*to motion to reconsider-Robin Partello* | *Index #16* |
| 11/14/2018 | Motion<br>Party: Attorney Manganaro, Jeffrey Leo, ESQ<br>*PTR Expedited Motion to the holiday parenting schedul to accommodate annual family celebration-Attorney Campbell for PTR* | *Index #17* |
| 11/28/2018 | Granted<br>*"Petitioner shall return the child no later than December 3, 2018 at 4:00 P.M. (DalPra, MM/Quigley, J)* | |
| 11/26/2018 | Motion<br>Party: Respondent Partello, Robin<br>*Objection to Ruling on motion to reconsider-Robin Partello* | *Index #18* |

9TH CIRCUIT - FAMILY DIVISION - NASHUA

# CASE SUMMARY

CASE NO. 659-2018-DM-00702

| Date | Event | Index |
|---|---|---|
| 11/26/2018 | Motion<br>Party: Respondent Partello, Robin<br>*OBJ to ruling on motion to reconsider-Robin Partello* | *Index #19* |
| 12/06/2018 | Response<br>Party: Attorney Mangamaro, Jeffrey Leo, ESQ<br>*Petitioner's Response To Respondents Objection To Ruling On Motion To Reconsider* | *Index #20* |
| 12/12/2018 | Appearance<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*Kathleen Sternenberg, GAL for Minor* [redacted] | *Index #21* |
| 12/12/2018 | Motion<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*for Approval (GAL)* | *Index #22* |
| 12/12/2018 | Guardian Ad Litem Stipulation<br>Party: Guardian ad Litem Sternenberg, Kathleen A. | *Index #23* |
| 12/12/2018 | Motion for Instruction<br>Party: Guardian ad Litem Sternenberg, Kathleen A.<br>*GAL* | *Index #24* |
| 12/31/2018 | Order Issued (Judicial Officer: Derby, Mark S )<br>*Respondent did not file a timely objection. Motion granted as follows: Respondent will execute the Authorization as drafted. At least 7 days prior to using the Authorization to obtain information about the Respondent, GAL shall notify respondent of intended use of the Authorization. If Respondent does not file appropriate pleading/motion/objection in court during the 7-day period, GAL may use the Authorization as planned. If filed, Court will address Respondent's pleading/motion/objection in an expedited manner.* | |
| 12/12/2018 | Motion<br>Party: Attorney Mangamaro, Jeffrey Leo, ESQ<br>*PTR's Expedited Motion to Establish Christmas and New Years Holiday Parenting Schedule* | *Index #25* |
| 12/21/2018 | Approved (Judicial Officer: Derby, Mark S )<br>*Approved, Granted & So Ordered.* | |
| 12/21/2018 | *CANCELED* **Hearing on Motion(s)**<br>*Motion #25 Petitioner's expedited motion to establish christmas and new Year's holiday parenting schedule* | |
| 01/10/2019 | Further Hearing (Judicial Officer: DalPra, Bruce F)<br>*Temp and Structuring* | |
| 01/10/2019 | Parenting Plan<br>Party: Respondent Partello, Robin<br>*Robin Partello* | *Index #26* |
| 01/10/2019 | Parenting Plan (Judicial Officer: DalPra, Bruce F )<br>*with addendum (Temporary)* | *Index #27* |
| 01/11/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |
| 01/10/2019 | Scheduling Order (Judicial Officer: DalPra, Bruce F )<br>*Temporary Hearing/Scheduling Conference Order* | *Index #28* |
| 01/11/2019 | Order Issued (Judicial Officer: Derby, Mark S ) | |

01/28/2019 Motion to Reconsider
Party: Respondent Partello, Robin
*Robin Partello*
Index #29

02/15/2019 Denied (Judicial Officer: DalPra, Bruce F )

01/29/2019 Motion for Contempt
Party: Attorney Cote, Tracey G., ESQ
*and to Enforce Nightly Telephone Calls (PTR)*
Index #30

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S )
*see order #55*

01/29/2019 Motion for Contempt
Party: Attorney Cote, Tracey G., ESQ
*PTR*
Index #31

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S )
*see order #55*

02/07/2019 Motion
Party: Guardian ad Litem Sternenberg, Kathleen A.
*for Instruction*
Index #32

02/15/2019 Granted in Part (Judicial Officer: DalPra, Bruce F )

02/08/2019 Motion
Party: Attorney Cote, Tracey G., ESQ; Petitioner Campbell, David
*to Strike RSP's Motion for Reconsideration as Untimely - PTR*
Index #33

02/15/2019 Denied (Judicial Officer: DalPra, Bruce F )

03/01/2019 Motion to Exceed Fees
Party: Guardian ad Litem Sternenberg, Kathleen A.
*GAL*
Index #34

03/12/2019 Granted (Judicial Officer: Introcaso, Julie A )
*over the respondent's objection #36*

03/01/2019 Motion
Party: Guardian ad Litem Sternenberg, Kathleen A.
*GAL - for instruction regarding GAL supplemental retainer payment by Robin Partello*
Index #35

03/12/2019 Order Issued (Judicial Officer: Introcaso, Julie A )
*Legal fees/GAL fees to be paid in CASH, by money order or bank check ONLY. So ordered*

03/04/2019 Obj-Motion to Exceed Fees
Party: Respondent Partello, Robin
*Robin Partello*
Index #36

03/04/2019 Objection
Party: Respondent Partello, Robin
*Robin Partello -to GAL's Motion for Instruction*
Index #37

03/15/2019 Motion to Continue
Party: Attorney Cote, Tracey G., ESQ
*March 19, 2019 Status Conference and Motion to Clarify Subject of Hearing - Atty Cote for David Campbell*
Index #38

9TH CIRCUIT - FAMILY DIVISION - NASHUA
CASE SUMMARY
CASE NO. 659-2018-DM-00702

03/15/2019 Granted (Judicial Officer: Introcaso, Julie A.)
*see narrative order*

03/15/2019 Order Issued (Judicial Officer: Introcaso, Julie A.)

03/19/2019 *CANCELED* **Status Conference**
*GAL may appear telephonically*

03/27/2019 **Assent** — Index #39
Party: Guardian ad Litem Sternenberg, Kathleen A.
*Partially assented to motion to extend time to file final Guardian ad Litem report-Attorney Sternberg*

04/08/2019 Granted (Judicial Officer: Derby, Mark S.)
*"Prayer A."*

04/05/2019 **Objection** — Index #40
Party: Respondent Partello, Robin
*(rsp) to GAL's motion to extend time*

04/05/2019 **Motion** — Index #41
Party: Respondent Partello, Robin
*(rsp) to remove Kathleen Sternenberg as GAL*

04/26/2019 Denied (Judicial Officer: Derby, Mark S.)

04/26/2019 Order Issued (Judicial Officer: Derby, Mark S.)
*see #47*

04/11/2019 *CANCELED* **Final Hearing**
*Day 1 of 2*

04/12/2019 *CANCELED* **Final Hearing**
*Day 2 of 2*

04/16/2019 **Objection** — Index #42
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*PET*

04/22/2019 **Motion for Contempt** — Index #43
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*PTR Motion for Contempt and to Compel Compliance with orders governing communication between the parties and the Parenting Plan-Attorney Manganaro*

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S.)
*See order #55*

05/31/2019 Denied (Judicial Officer: Derby, Mark S.)
*as moot see doc. #65*

04/26/2019 **Motion** — Index #44
Party: Attorney Manganaro, Jeffrey Leo, ESQ
*for the psychological examination of the respondent*

05/10/2019 Order Issued (Judicial Officer: Derby, Mark S.)
*see order #55*

04/26/2019 **Motion to Seal** — Index #45

(B)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit-Family Division Nashua

Case Name: In the Matter of David Campbell and Robin Partello

Case Number: 659-2018-DM-702

## ORDER ON *EX PARTE* (EMERGENCY) MOTION

A motion for *ex parte* or emergency orders has been submitted. The Court has reviewed the motion.

☐ 1. **The Court issues the following orders**, which will remain in effect until further hearing:

☐ A. The ☐ Petitioner ☐ Respondent (check one) shall have temporary sole decision-making and residential responsibility for the minor child(ren).

☐ B. The ☐ Petitioner ☐ Respondent (check one) shall have temporary sole residential responsibility for the minor child(ren).

☐ C. The ☐ Petitioner ☐ Respondent (check one) shall not interfere in any way with the personal liberty or property of the other nor the household property used in the care of the minor child(ren), nor do any act to interfere with the other parent's decision-making and residential responsibilities for the minor child(ren).

☐ D. The ☐ Petitioner ☐ Respondent (check one) is awarded temporary exclusive use of the parties' residence at ______________________ (residence address) and household furniture and furnishings therein.

☐ E. The ☐ Petitioner ☐ Respondent (check one) shall not enter the residence or property of the other.

☐ F. Each party is restrained and enjoined from transferring, encumbering, hypothecating, concealing or otherwise disposing of any property except in the ordinary course of business or for the necessities of life.

☐ G. Other:

______________________

______________________

☑ 2. **No *ex parte* or emergency orders are issued** – no showing of imminent danger of irreparable harm.

☑ The case shall be scheduled for a prompt hearing with Petitioner and Respondent present.

☐ The case shall be scheduled in the ordinary course.

☐ 3. **Request for ex parte orders is denied.** No hearing is required.

**A hearing on the *ex parte* motion, and any orders issued, is scheduled for:**

__________ (date of hearing) at __________ (time of hearing)

**Recommended:**

10/12/18

Date

Bruce F. DalPra

Signature of Marital Master

BRUCE F. DALPRA
MARITAL MASTER

Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

10/12/18

Date

[signature]

Signature of Judge

LUTROCA SO

Printed Name of Judge

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Ninth Circuit-Nashua

Case Name: David Campbell and Robin Pattello

Case Number: 659-2016-DM-00702
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN AD LITEM
### (Divorce/Parenting)

| | |
|---|---|
| David Campbell | Robin Pattello |
| Petitioner's Name D.O.B. | Respondent's Name D.O.B. |
| 10 East Dunstable Road | 97 East Broadway Apt 7 |
| Street Address | Street Address |
| Nashua, NH 03060 | Derry, NH |
| City, State, Zip | City, State, Zip |
| Telephone E-Mail Address | Telephone E-Mail Address |

The following orders shall be entered:

1. The attached Standing Order Relative to Guardian ad Litem Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.

2. Name: Kathleen Sternenberg Telephone: [illegible]

   Address: PO Box 2288 Concord, NH 03302

   is appointed Guardian ad Litem of the child(ren):

   [redacted] D.O.B. [redacted]

   D.O.B.

   D.O.B.

   * If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and [illegible].

3. The Guardian ad Litem shall investigate the following issues and make recommendations to the court thereon:

   ☐ Decision-making responsibilities

   X Residential responsibilities

   X Parenting time

   Special needs of the child(ren) (specify):

   X Counseling for family/individual counseling for ☐ Petitioner ☒ Respondent ☐ child(ren)

   ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

   X Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties

   ☐ Appropriateness of the home environment of ☐ Petitioner ☒ Respondent ☐ both parties

Case Name: Email Reference found ... 'd found.
Case Number: Email Reference found ... found.

☐ Substance abuse ☐ alcohol ☐ drugs ☐ both ☐ other
☐ Violence, physical abuse, emotional abuse
☐ Sexual abuse of
☐ Supervision of parenting time
☐ Rights of grandparents to visit
☐ Influence of companions of either party on child(ren)
☐ Maturity of child(ren) stating a preference
☐ Travel arrangements
☐ Time, place and manner of exchange for parenting time
☒ Assessment of appropriateness and each party's current living...
☒ Other issues which the GAL deems relevant such as...
☒ Other, specify:
    What is the basis for the child's disclosures ... monitor the child's progress in counseling.

[illegible redacted paragraphs]

A. Retainer and fees ...

B. [illegible]

☐ [illegible]

☒ [illegible]

☐ Other Payment Orders.

5. Other provisions:
   [illegible] scheduling, conference or appearance hearing

6. Guardian ad Litem Stipulations to be filed by: 12/07/2018

7. Preliminary Report to be filed by: 02/28/2019

Case Name: Error! Reference sourc[illegible]ot found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN AD LITEM (Divorce/Parenting)

8. Final Report to be filed by: TBD

**Recommended:**

10/24/2018
Date

[signature]
Signature of Marital Master

Bruce F. DalPra
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

10/24/18
Date

[signature]
Signature of Judge

[illegible]
Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN AD LITEM APPOINTMENT**

This order applies to all Guardian ad Litem appointments [illegible] unless [illegible] by an order entered in a specific case. Any changes in the order [illegible] filed with the court.

1. GUARDIAN AD LITEM STIPULATION

In every case in which a Guardian ad Litem is appointed, [illegible] the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian ad Litem will be reimbursed;
b. Guardian ad Litem hourly billing rate and the maximum fee [illegible] for the complete case;
c. Frequency of billing, terms of payment, and payment of retainer;
d. The names of the individuals [illegible] importance. The Guardian ad Litem shall [illegible] interview.
e. Manner in which the Guardian ad Litem will communicate with [illegible] office conference, telephone call, letter;
f. Action(s) the Guardian ad Litem will take if unable to contact a reference;
g. Whether the Guardian ad Litem will visit each party's home;
h. Whether conversations between the Guardian ad Litem and the children will be confidential;
i. Other orders necessary to protect confidentiality; and
j. Dates by which parties will execute authorizations for reports. [illegible]

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian ad Litem, the court shall schedule an immediate enforcement hearing at the request of the Guardian ad Litem or either party.

2. GUARDIAN AD LITEM [illegible]

Case Name: Error! Reference source not found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN AD LITEM [illegible]

a. The Guardian ad Litem shall be compensated at the rate of $_____ per hour. The maximum fee set by the court (including costs) shall not exceed $________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian ad Litem present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $_____ per hour rate and the maximum fee set by the court may be [illegible] by written agreement of the parties and counsel which shall be filed with the court and [illegible] court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for these may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon the request of any party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT OF [illegible] WORK

The Guardian ad Litem [illegible]

A party [illegible] work in that case [illegible] the motion has been granted.

4. PLEADINGS AND STIPULATIONS

Each party shall certify on every pleading that she/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree [illegible] Guardian *ad Litem* [illegible] within ten days from the date of mailing or delivery.

NHJB-2070-F ([illegible])
Page 4 of 4

D

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

Ninth Circuit-Family Division-Nashua

Docket No. 659-2016-DM-00702

In the Matter of: David Campbell and Robin Partello

## INTERIM ORDER

This matter came before the court with regard to Petitioner's motion for [illegible] orders. He had counsel. [illegible] The evidence disclosed [illegible] examination [illegible] someone had inserted [illegible] when he returned home. [illegible] referred for further [illegible] perpetrator. [illegible] The physical examination did not reveal any evidence of abuse.

The medical provider [illegible]. The child [illegible] the child was [illegible] references to a [illegible] "in his butt".

The court [illegible] best interests [illegible] weeks. [illegible] The court shall also [illegible].

RECOMMENDED:

1. The parties are awarded joint decision making responsibility for the minor child.

2. Petitioner shall have parenting time with [illegible] weekends from Friday [illegible] to Sunday [illegible]. [illegible] transportation. Respondent shall have parenting time at all other times not otherwise reserved for the Petitioner.

3. The parties shall agree upon an equitable holiday parenting schedule.

4. Kathleen Sternenberg is appointed Guardian ad Litem to represent the interests of the minor child. See accompanying GAL Order.

5. The child shall immediately be enrolled in counseling with James Foster, unless the parties agree upon another counselor.

6. Neither Petitioner, Respondent or any other family member or friend shall question the child with regard to the incidents described in the Petitioner's motion. That is the area for the counselor and GAL to explore if deemed in the child's best interests.

7. The Clerk shall schedule a further temporary hearing and scheduling conference in 60 days as the docket permits.

[illegible]
Date

Bruce F. DalPra, Master

I hereby certify that I have read the recommendation and agree that, to the extent the marital master has made factual findings, he has applied the correct legal standard to the facts determined by the marital master.

So ordered:

[illegible]
Date

Judge



STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
http://www.courts.state.nh.us

9th Circuit – Family Division - Nashua

In the Matter of: David Campbell and Robin Partello
Docket No.: 659-2018-DM-00702

**MOTION FOR RECONSIDERATION**

**NOW COMES** Robin Partello, Respondent in the above-captioned matter, and submits the following Motion relative this Court's Temporary Parenting Plan and in furtherance, states the following:

1. The Court granted David's requested parenting plan which states that the David shall have parenting time every Thursday at 4pm until Monday at 9am on week one and Sunday at noon on week two.
2. This plan is not in the best interests of the minor child (hereinafter referred to as ███).
3. David works on Fridays. Robin works as a nurse on Friday and Saturday nights from 7pm to 7am. Robin does not work on Friday days and allocates this day to take ███ on playdates with his friends.
4. It's in the best interest of ███ to be with his Mother rather than whoever David will use for a babysitter. Further, ███ loves these playdates and David doesn't know any of ███s friends nor does he do child activities with ███
5. David has had a lengthy history of extremely disturbing actions. David was investigated by the Attorney General of New Hampshire. That report showed that David is dishonest and used collusive tactics with respect to a Nashua Police

investigation after David consumed several alcohol beverages then drove the wrong way on a one-way street, ran over and killed five ducks, got into a fight with a Marine pilot and left the scene of the accident.

6. Further, at the time of this incident, Robin was four months pregnant, which David asked her to get an abortion and that the pregnancy would ruin his life.

7. Most recently, in September while at David's house, [redacted] made a disclosure that someone had sexually abused him. David did not inform Robin for two days, and instead David and his sister spent the weekend repeatedly interrogating [redacted]- going so far as recording these interrogations.

8. When Robin was informed two days later, she immediately picked up [redacted] from David's house and drove him to Elliott Urgent Care.

9. [redacted] disclosed to the doctor that it was his Dad (David Campbell) that put things in his butt.

10. Robin instructed [redacted] to tell the truth as she didn't believe that such a heinous thing could ever happen. She went back and told the Doctor that she had a talk about telling the truth and that [redacted] would like to tell the truth.

11. When the Doctor came back in the room, [redacted] again stated that David had put things in his butt. [redacted] never recanted his statement.

12. [redacted] suffered emotional distress from what he believes that David did to him and also the weekend long interrogation. [redacted] often states that his Dad will never do it again and that's the bad Dad and he's dead now.

13. ▇▇▇ is in counseling, which David initially resisted and refused to sign the consent to treat form and then filed motions with the Court to cause confusion and unnecessary delay.

14. David's pattern of behavior of not seeking any medical treatment for ▇▇▇ after some abuse occurred and refusing to sign a consent form to enter ▇▇▇ into therapy are not in ▇▇▇'s best interests.

15. David's only goal is to engage in a vicious smear campaign against Robin. David called the Derry Police Department and made false allegations about Robin's neighbors, friends, and acquaintances. David has made numerous false allegations to this Court, none of which have ever been substantiated.

16. It is not in Braden's best interest to spend every weekend with David.

WHEREFORE: Robin Partello respectfully requests that this Honorable Court provide the following relief:

A. Order that the parties revert to the interim parenting plan in which David shall have parenting time every Wednesday from 4pm to 7pm and every other weekend from Friday at 4pm until Sunday at 7pm;

B. Order that David's sister be present for any overnight visits;

C. Or in the alternative, amend the order so that parenting time with David shall begin Friday at 4pm until Sunday at 7pm;

D. Grant the Respondent's Motion for Reconsideration;

E. Provide any other relief which this court deems fair and equitable.

Respectfully submitted,

Date: January 26, 2019

Robin A. Partello
97 East Broadway Unit 7
Derry, NH 03038
(603) 417-9003

**CERTIFICATION OF COMPLIANCE**

I hereby certify that one copy of Motion was mailed this date to counsel for David Campbell

Date: January 26, 2019

Robin A. Partello

MASTER RECOMMENDS: Denied

2/5/19
Date

Bruce [illegible]DalPra, Master

So Ordered [illegible]
I hereby certify that I have read the recommendation(s) and agree that to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

2/15/19
Date

Signature of Judge
Julie A. [illegible]

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

2019 FEB 1 A 11:

MOTION FOR INSTRUCTION

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court instruct her as to how to proceed with her court appointed investigation and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. In a temporary hearing order, the Court ordered the GAL to file her report by March 29, 2019. The GAL requires assistance from this Court as she has been unable to continue with her investigation.

3. The Guardian ad Litem has repeatedly tried to arrange for a home visit with Robin Partello and [redacted]. The GAL sent emails on 1/9/2019, 1/18/2019, 1/21/2019, 1/24/2019, 1/25/2019 and 1/27/2019, 1/28/2019 and 1/30/2019. Ms. Partello indicated that she was free the week of January 28, 29, 30, 31. The GAL proposed a visit on Wednesday, January 30, 2019 at 11:30 am, but she did not hear back to confirm this date and time and no visit was made.

4. The Guardian ad Litem also requested that the parties replenish their retainer as the original retainer was expended. David Campbell has provided a second retainer of $650, but Robin Partello has not paid the $350 retainer she owes.

5. The GAL requires Ms. Partello's cooperation in order to complete her investigation.

**WHEREFORE**, the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to cooperate with the GAL to schedule a home visit with [redacted] and herself at her residence within 7 days of this Court's order; and

B. Order Robin Partello to pay the GAL the second retainer amount of $350 within 7 days of this Court's order; and

C. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 5, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg
Kathleen A. Sternenberg

MASTER RECOMMENDS:

A + B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a final Parenting Plan.

2/15/19
Date

Bruce F. DalPra, Master

So Ordered.
I hereby certify that I have read the recommendation(s) and agree that to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

2/15/19
Date

Signature of Judge
[illegible]

9

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Petitioner's Motion to Strike Respondent's Motion for Reconsideration as Untimely; Denied as to A.**

**(MM. DalPra/ J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ



# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Motion to Exceed Fee Cap**
**"Motion granted over the Respondent's objection at #36".**

**Introcaso, J.**

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

~~1/9/2020~~ 1/9/2020 [signature] Julie A. Introcaso

~~Digitally signed [illegible] @ JCC~~

COPY

STRICKEN. This is a copy. Not the original.

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

COURT NASHUA 2019 MAR -1 A 11: 12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for Braden ("Brady") Campbell, DOB 06/19/2014.

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

---

[1]The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

34



the parties to [illegible] AL, [illegible] percentage of the retainer within fourteen days [illegible] order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg
Kathleen A. Sternenberg

Motion Granted / ~~Denied~~
3-12-19
Date
Judge Julie A. Introcaso

over the Respondent's objection at #36

I

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Further Motion for Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello**
**"Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY".**

**So Ordered**

**Introcaso, J.**

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

STRICKEN 1/9/2020

~~1-9-2020 Documents have been submitted to FCC~~

THIS IS A COPY

COPY

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CIRCUIT COURT NASHUA
2019 MAR -1 A 11: 12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

## FURTHER MOTION FOR INSTRUCTION REGARDING GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [redacted], DOB [redacted].

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

**WHEREFORE,** the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.

STRICKEN 1/9/2020

~~1-9-2020~~ THIS IS A COPY

~~[illegible handwritten text]~~

COPY

35

Respectfully submitted,

Dated: February 28, 2019

*Kathleen A. Sternenberg*

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

*Kathleen A. Sternenberg*

Kathleen A. Sternenberg

3/12/19 – Legal fees / GAL fees to be paid in cash, by money order or bank check, ONLY.

So Ordered.

Julie A. Introcaso

J

2019 MAR 15 A 11: 12

STATE OF NEW HAMPSHIRE

9TH CIRCUIT – FAMILY DIVISION – NASHUA

IN THE MATTER OF:

DAVID B. CAMPBELL AND ROBIN A. PARTELLO

DOCKET NO. 659-2018-DM-00702

**PETITIONER'S EXPEDITED MOTION TO CONTINUE MARCH 19, 2019 STATUS CONFERENCE AND MOTION TO CLARIFY SUBJECT OF HEARING**

Now comes the Petitioner, David B. Campbell, by and through his counsel, Shaheen & Gordon, P.A., and respectfully moves the Court to reschedule the March 19, 2019 Status Conference and clarify the subject of the hearing. In support, Petitioner states as follows:

1. By Notice of Hearing dated March 12, 2019, this Court scheduled a one-hour Status Conference for March 19, 2019.

2. Counsel for the Petitioner is unavailable to appear on March 19 due to a conflict with previously scheduled hearings.

3. Counsel for the Petitioner is available for a Status Conference on Monday, March 25 or in the afternoon of March 28.

4. Petitioner further requests that the Court clarify the subject of the Status Conference as it remains unclear why the Court scheduled same.

5. The parties are scheduled for trial on April 11 and 12, 2019. Petitioner is in the process of preparing for same.

6. The Guardian *Ad Litem's* report is anticipated to be completed by the end of March.

7. There are two pending Motions for Contempt that Petitioner has filed.

8. The Petitioner is in the process of preparing for trial and completing discovery.

9. Since Petitioner had to file this Motion quickly, counsel has not contacted the Respondent or the GAL for their assent to the relief sought herein.

10. By email on March 14, 2019 at 8:16 pm, Respondent assented to the relief requested herein.

WHEREFORE, Petitioner respectfully requests that this Court:

A. Allow the within Motion;

B. Waive the ten day waiting period since there will not be ten days between the Court's Notice of Hearing and the Status Conference;

C. Reschedule the Status Conference to either March 25 or the afternoon of March 28;

D. Clarify the subject of the hearing; and

E. Grant such other relief as may be just and equitable.

By and through his attorneys,
Shaheen & Gordon, P.A.

Tracey Goyette Cote, NH Bar # 17449
Jeffrey Manganaro, NH Bar # 266613
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
603-225-7262

Certificate of Service

I, undersigned counsel, hereby certify that I served the within Motion upon the Respondent, Robin Partello, *pro se*, by email and mailing a copy of same to her listed address by U.S. Mail, along with a copy to the Guardian *Ad Litem*.

Jeffrey Manganaro, Esq.

1-9-2020

COPY

(K)

DAVID CAMPBELL
AND
ROBIN PARTELLO

659-2018-DM-702

On 3-15-19, the Petitioner filed a motion to continue a Status Conf. Scheduled by this judge. The motion (#38) is GRANTED.

In filing the motion, the Petitioner inquired as to the purpose of the hearing. The undersigned judge Scheduled the hearing to disclose her conflict with the Court-appointed GAL in the case.

Although this judge has made no substantive rulings in this matter, it has approved substantu-tative orders issued by the marital master that had previously handled this litigation.

The marital master has been reassigned to another court location so numerous substantive motions were presented to this judge for review.

In doing so, this judge

1-4-202

COPY

pg 2.

has determined that she is unable to address these motions, particularly as some relate directly to the payment and performance of the GAL.

The GAL has been a long-standing friend of this judge; she has vacationed with her, discussed personal matters in depth (including financial issues) and the GAL is the godparent to one of this judge's children.

The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived.

The Court hoped to put this matter on the record and set this matter for trial before another judge; however, even that may be seen as inappropriate given the conflict over the GAL specifically.

The wisest course for this judge, and in an attempt to

1-9-2026

COPY

pg 3. provide the parties with the most unbiased and fair hearing, is to simply withdraw as the presiding justice in this matter with regret as to the delay this may cause to the parties.

ORDER:

1. Judge Julie Introcaso shall have no further involvement in this matter.

2. The Clerk shall expeditiously work with the parties to reassign this matter, resolve the pending motions, and schedule this matter for any further hearing.

3. No status conference will occur on March 19, 2019.

So Ordered.

3/15/19

Julie A. Introcaso

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 15, 2019 relative to:

**Petitioner's Expedited Motion to Continue March 19, 2019 Status Conference and Motion to Clarify Subject of Hearing - GRANTED**

**Introcaso, J.**

March 15, 2019

Sherry L. Bisson
Clerk of Court

(659304)
C: Jeffrey Leo Manganaro, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 15, 2019 relative to:

**Petitioner's Expedited Motion to Continue March 19, 2019 Status Conference and Motion to Clarify Subject of Hearing - Granted**

**Introcaso, J.**

March 15, 2019

Sherry L. Bisson
Clerk of Court

(659304)
C: David Campbell; Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

NHJB-2207-DF (07/01/2011)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF HEARING

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

The above referenced case(s) has/have been scheduled for:

**Final Hearing**

**Date: May 22, 2019**
**Time: 10:00 AM**
**Time Allotted: 5 Hours**

**30 Spring Street**
**Nashua, NH 03060**
**Courtroom 5 - 9th Circuit Court - Nashua**

Please advise immediately if this is not sufficient.

If you are unable to appear at this scheduled hearing, you must request a continuance from the Court in writing which, except for good cause shown, shall be filed within ten (10) days from the date of the mailing of the notice of a hearing. You must also send a copy of the request to the opposing party, unless restricted from doing so. Motions to continue filed fewer than 10 days in advance of hearing will only be granted if the Court finds that an emergency or exceptional circumstance exists. You must appear on the scheduled date unless you receive notification from the Court that a request to continue the hearing has been granted. There are no child care facilities at the courthouse, so you should make appropriate child care arrangements.

Should you fail to appear at the hearing, all issues raised by the pleadings may be decided by the court without your participation.

If you will need an interpreter or other accommodations for this hearing, please contact the court immediately.

Please be advised (and/or advise clients, witnesses, and others) that it is a Class B felony to carry a firearm or other deadly weapon as defined in RSA 625.11, V in a courtroom or area used by a court.

BY ORDER OF THE COURT

March 15, 2019

Sherry L. Bisson
Clerk of Court

659304
C: Kathleen A. Sternenberg; Robin Partello; Jeffrey Leo Manganaro, ESQ; Tracey G. Cote, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF HEARING

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

The above referenced case(s) has/have been scheduled for:

**Final Hearing**

**Date: May 24, 2019**
**Time: 9:00 AM**
**Time Allotted: 6 Hours**

**30 Spring Street**
**Nashua, NH 03060**
**Courtroom 2 - 9th Circuit Court - Nashua**

Please advise immediately if this is not sufficient.

If you are unable to appear at this scheduled hearing, you must request a continuance from the Court in writing which, except for good cause shown, shall be filed within ten (10) days from the date of the mailing of the notice of a hearing. You must also send a copy of the request to the opposing party, unless restricted from doing so. Motions to continue filed fewer than 10 days in advance of hearing will only be granted if the Court finds that an emergency or exceptional circumstance exists. You must appear on the scheduled date unless you receive notification from the Court that a request to continue the hearing has been granted. There are no child care facilities at the courthouse, so you should make appropriate child care arrangements.

Should you fail to appear at the hearing, all issues raised by the pleadings may be decided by the court without your participation.

If you will need an interpreter or other accommodations for this hearing, please contact the court immediately.

Please be advised (and/or advise clients, witnesses, and others) that it is a Class B felony to carry a firearm or other deadly weapon as defined in RSA 625.11, V in a courtroom or area used by a court.

BY ORDER OF THE COURT

March 15, 2019

Sherry L. Bisson
Clerk of Court

659304
C: Kathleen A. Sternenberg; Robin Partello; Jeffrey Leo Manganaro, ESQ; Tracey G. Cote, ESQ

m

# The State of New Hampshire

Hillsborough County

Ninth Circuit Court – Family Division – Nashua – Merrimack

*In the matter of:* David Campbell *and* Robin Partello

Docket No. 659-2018-DM-702

**ORDER** on #41, Motion to Remove GAL

Prior to ruling on the motion to remove GAL, the undersigned officer reviewed the October 24, 2018 Order Appointing GAL, the February 15, 2019 Order approving the Master's recommendation on the GAL's motion for instruction, the February 15, 2019 Order approving the Master's recommendation on the Motion to Strike, and the two March 12, 2019 orders re the GAL's fee cap and GAL payment method, as well as the relevant motions and objections. Reviewing all of these matters de novo, the undersigned officer would have issued the same orders, though the respondent may pay the GAL by personal check (in addition to the other methods), though the respondent does not use personal checks.

Substantively, the motion to dismiss/remove GAL is denied. The respondent's allegations do not form a sufficient basis to terminate the GAL and start over, which would cost significant funds and waste judicial resources. The GAL's sole mission is to investigate and advocate for [redacted] and this may cause friction with the parents. That is a normal part of the process. Motion denied.

Date: 4-26, 2019

Mark S. Derby, Judge
Ninth Circuit Court

F

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Please be advised that on February 15, 2019 the Court made the following Order relative to:

**Motion for Instruction; A and B are granted. Respondent shall fully cooperate with the GAL. Failure to do so may result in sanctions and may be taken into consideration regarding the issuance of a final Parenting Plan.**

**(MM. DalPra/J. Introcaso)**

February 21, 2019

Sherry L. Bisson
Clerk of Court

(948)

C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

PLAINTIFF'S
EXHIBIT
19

STATE OF NEW HAMPSHIRE
JUDICIAL CONDUCT COMMITTEE

Mary E. Collins, Chair
Attorney Jaye L. Rancourt, Vice Chair
Judge James H. Leary
Ernest Goodno
Alan K. Blake
Judge Neals-Erik William Delker
Judge Lucinda V. Sadler
Stephen L'Heureux
Thomas R. Eaton
Larry Gilpin
W. Michael Scanlon, Esq.

Robert T. Mittelholzer, Esquire
Executive Secretary
132 Chapel Street
Portsmouth, New Hampshire 03801

Phone: (603) 427-9295
Fax: (603) 427-9297
Email: rmittelholzer@nhjcc.com

February 17, 2020

The Honorable Julie A. Introcaso
NH Circuit Court Administrative Offices
One Granite Place, Suite 400 North
Concord, NH 03301

Re: JC-20-010-CII

Judge Introcaso:

I am writing to advise you that the Committee at its meeting of February 14, 2020 determined to open a Committee initiated inquiry pursuant to New Hampshire Supreme Court Rule 40 (6) with respect to the discovery of altered and missing documents in the case record pertaining to Case Number: 659-2008-DM-00702, In the Matter of David Campbell and Robin Partello.

New Hampshire Supreme Court Rule 40 (6), *Inquiries Initiated by Committee*, provides in relevant part that:

> The Committee may initiate an inquiry concerning the conduct of any judge on its own motion, without a signed written report of alleged misconduct, upon any reasonable factual basis. No such inquiry shall be initiated by the Committee except upon the affirmative vote of six or more members of the Committee taken at a meeting thereof. Notice of the initiation of an inquiry by the Committee on its own motion shall be given to the judge by the Committee at such time as it deems appropriate. The Committee may delay giving such notice to the judge to avoid possible compromise of the inquiry and any resulting investigation or for other good reason. Unless the Committee votes to docket a complaint against a judge in accordance with section (7)(b), all records of a Committee-initiated inquiry shall be confidential.

Enclosed herewith are a letter to the Committee from Judge King of February 3, 2020 and a memorandum containing relevant portions of the summaries of a number of interviews which were recently conducted as part of an investigation into this matter.

Specifically, the Committee requests that you provide the following information with respect to the investigation of the altered and missing documents at issue:

- Did you alter and/or remove the documents from the Campbell/Partello case record as alleged?

- If so, for what purpose?

- Did you request any member of the court staff to alter and/or remove the documents from the Campbell/Partello case record as alleged on your behalf? And,

- If so, for what purpose?

Because this inquiry concerns the potential alteration of a public file which could implicate criminal statutes, including statutes relating to public officials, the Committee reminds you of your right against self-incrimination and that you may avail yourself of the right to counsel under the Constitution and pursuant to Supreme Court Rule 40 at any time.

Finally, the Committee requests that you respond to this inquiry in advance of the Committee's next scheduled meeting on March 13, 2020.

Thank you for your attention to this matter.

Yours truly,

Robert T. Mittelholzer
Executive Secretary

RTM

Enc.: Letter from Judge King of February 3, 2020
Memorandum of Confidential Factual Investigation of January 26, 2020

April 3, 2020

Robert T. Mittelholzer, Esq.
Executive Secretary
State of New Hampshire
Judicial Conduct Committee

Re: JC-20-010-CII

Dear Members of the Judicial Conduct Committee,

Please accept the following response to the Committee initiated inquiry opened pursuant to Supreme Court Rule 40 (6) with respect to the discovery of altered and missing documents in the case record pertaining to Case Number: 659-2008-DM-00702, In the Matter of David Campbell and Robin Partello. The Committee asked me to provide information responsive to the following questions:

1. Did you alter and/or remove the documents from the Campbell/Partello case record as alleged? If so, for what purpose?

*A. Alteration of Documents*

I did not alter any documents in the case record, with the exception of making notations and initialing certain explanatory, hand-written entries discussed more fully below. Specifically, I did not apply white out correction tape to cover up or obscure two court orders that I had issued on March 12, 2019. The Orders related to a Motion to Exceed Fee Cap (Index #34) and Further Motion For Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello (Index # 35) (collectively, the "March 12 Orders"). I do not know how or when the March 12 Orders became obscured by white out correction tape.

I discovered the obscured March 12 Orders (the "Whited-Out Orders") in the case file on January 9, 2020, while I searched the case file in my chambers to complete my Answer to Ms. Partello's Judicial Conduct Complaint in Case JC-19-050-C. When reading the case record attempting to find an order referred to in Ms. Partello's Complaint, I first observed that white out correction tape had been applied to my March 12 Orders. As I reviewed the case record, please note that I also had before me copies of the unaltered versions of the March 12 Orders because copies of the unaltered March 12 Orders were included as attachments to Ms. Partello's Judicial Conduct Complaint. On December 16, 2019, when I had returned to the courthouse after a leave of absence, I brought a copy of Ms. Partello's Complaint with me. I asked for the case file to Answer the Complaint, and I agree the case file arrived in my office on January 2, 2020. The case file was placed on my desk, and I did not open the case file between January 2 and January 9.

On January 9, I was most concerned when discovering the existence of the Whited-Out Orders because my March 12 Orders were material to the Committee's review of Case JC-19-050-C. I immediately considered who could have obscured the Whited-Out Orders and for what purpose, and I made several inquiries to determine what had happened. I questioned Julianne Lodes and Nancy Dabilis to ascertain if any clerks or employees had applied white out tape to my March 12 Orders. I emailed judicial officers and other clerks asking them to contact me if they had any contact with the file. I also asked for the original "sign out sheets" to determine if Ms. Partello or any other individual had physical access to the file. I was unable to determine what had happened based on this outreach.

*B. Removal of Documents and Related Entries in Case Record*

As I will explain in more detail below, I made an initial decision to send the Whited-Out Orders to the Committee with my Answer for review and consideration. But upon further reflection I changed my mind, and I eventually elected to leave the original Whited-Out Orders in the case record. First and foremost, and having carefully reviewed and reflected upon the Judicial Branch's Confidential Factual Investigation Report, I now appreciate that my handling of this case record on January 9 created serious concern and anxiety with clerks and employees. It was never my intention to do so. I recognize that my immediate reaction to the discovery of the Whited-Our Orders was hurried, and I also vacillated in my decision-making regarding how to respond to this most unusual discovery of alterations in the case file. In retrospect, I wish I had consulted with my superior judge or Clerk of Court immediately. However well-intentioned my actions may have been, I acknowledge that my responses resulted in the creation of confusing hand-written notations being logged into and subsequently stricken from this case record. To the extent that my handling of this unusual situation was not well-executed, and has made this Committee's work and the Judicial Branch's investigation of this situation more difficult, I am deeply remorseful and apologetic for my actions. But I reiterate that I had nothing to do with my March 12 Orders being whited-out or obscured.

Initially, I proceeded to remove the original Whited-Out Orders from the file for the purpose of sending the Whited-Out Orders to the Committee with my Answer. I believed that the Committee should receive the originals and be made aware of the unexplained alterations to this case file, so I replaced the Whited-Out Orders in the case record with substitute photocopies of my unaltered March 12 Orders. When doing so, I took steps to document my substitution of the originals for copies in the file. More specifically, I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file. I inserted these photocopies in the file to preserve the full case record and to generate placeholders for the original Whited-Out Orders that I had removed from the file to send to the Committee. In order to transparently document what I was doing, I asked Ms. Lodes to label the replacement photocopies in the file as a "Copy." I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC. My purpose in making these entries was two-fold: (1) to create a transparent record in the file documenting the substitution for the Whited-Out Orders; and (2) to maintain a complete record of the case file in the courthouse with all applicable Orders available in the case record.

As we completed this task on the morning of January 9, I continued to work on my Final Answer to Ms. Partello's Complaint in my office. I began working that day from the Partial Answer I had submitted to this Committee in early December 2019. Given my discovery of the Whited-Out Orders that morning, I felt I should inform the Committee about the Whited-Out Orders and subsequent notations located in the file. While I finished writing my initial draft about the discovery of the Whited Out Orders, I was uncertain about my need to raise this issue with the Committee. I determined my Answer to Ms. Partello's Complaint should be limited to addressing the underlying allegations in the Complaint. I reconsidered the appropriateness of raising new and unresolved issues in my Answer about puzzling white outs of the March 12 Orders pending further internal review, particularly where I lacked personal knowledge to explain what had happened to the file. In the end, I decided not to send the Whited-Out Orders to the Committee with my Answer to the Complaint. Instead, I returned the original Whited-Out Orders to the case file and deleted the paragraphs in my draft Answer about the Whited-Out Orders. After returning the Whited-Out Orders to the case file, the hand-written entries that we had inserted previously in the bottom margin/footer - indicating that the originals had been submitted to the JCC - were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed "Stricken" above the stricken entries to designate them as such. I then requested the assistance of Ms. Lodes to re-assemble and re-organize the case file, and I do not know if she did so.

In addition to the March 12 Orders, Administrative Judge King's letter to the Committee dated February 3, 2020 references other "missing original documents" in the file. He does not identify what other missing original documents were not located in the file. I do not believe I removed any other documents from this case file, and I have no specific recollection of doing so for any reason.

2. Did you request any member of the court staff to alter and/or remove the documents from the Campbell/Partello case record as alleged on your behalf. If so, for what purpose?

I requested Ms. Lodes to assist me with the removal of the Whited-Out Orders from the case file, photocopying of those orders as well as my initial, unobscured orders, and making notations and stamping the documents as described in Section 1, B "Removal of Documents and Related Entries in Case Record" above. To the best of my knowledge and belief, I made no other requests of court staff to alter and/or remove documents on my behalf.

3. Additional Information for the Committee's Consideration

I respectfully disagree with many of the Investigative Impressions and opinions set forth in the Judicial Branch's Confidential Factual Investigation Report. I will make myself available to review that report in detail with the Committee at any time. In the interim, there is one Investigative Impression or personal opinion addressed in the Investigative Report that I would like to address with the Committee.

I respectfully disagree with the Judicial Branch's Investigative Impression, or personal opinion, that I am the only person with any motivation to alter the file. To the contrary, I had every motivation to ensure that the case record was not altered during the JCC's review of the

Partello Complaint. In my preliminary response to this Committee dated December 12, 2019 in Case JC-19-050-C, I acknowledged that I had issued the March 12 Orders, and I discussed them in some detail. *See Preliminary Answer of Julie Introcaso* dated December 12, 2019, pp. 2-3.

Some of the Investigative Impressions set forth in the conclusory section of the Investigative Report amount to nothing more than pure speculation about why I might have done something that I did not do. And while I have respect for the process that needed to occur and the people involved in that process, I am genuinely surprised that a Judicial Branch Investigation Report postulates utterly speculative and personal suppositions about what my motivations may have been.

I ask the Committee to carefully consider whether the Judicial Branch Investigative Report contains conscious or unconscious biases that may have been held against me during this process.

Respectfully submitted,

Hon. Julie Introcaso

STATE OF NEW HAMPSHIRE
JUDICIAL CONDUCT COMMITTEE

JC-19-050-C and JC-20-010-C

In RE: Honorable Julie A. Introcaso

## STATEMENT OF FORMAL CHARGES PURSUANT TO NEW HAMPSHIRE SUPREME COURT RULE 40 (9)

The New Hampshire Supreme Court Committee on Judicial Conduct (the "Committee"), by its Committee Counsel, complains against Judge Julie A. Introcaso as follows:

### Introduction:

1. The Committee is the duly authorized Committee on Judicial Conduct established by the New Hampshire Supreme Court pursuant to the Court's constitutional and statutory authority to provide for the orderly and efficient administration of the Code of Judicial Conduct (Rule 38 of the Rules of the New Hampshire Supreme Court.) See Rule 39.

2. The Committee is proceeding against Judge Introcaso pursuant to Rule 40 (7) (a) & (b), and this Statement of Formal Charges is issued pursuant to Rule 40 (9).

3. These formal charges are brought on the basis of two complaints.

   a. The first, (JC–19–050–C), arises out of a report filed by an individual named Robin Partello, who is a respondent in a parenting petition filed by David Campbell in the 9th Circuit Court, Hillsborough County – Family Division – Nashua, bearing docket number 659-2818-DM-0072 (hereinafter, the "Partello Report"). The Committee elevated the Partello Report to the level of a complaint on or about November 8, 2019.

   b. The second, (JC-20-010-C), is a Committee generated complaint based on the apparent alteration of the Court file. This Committee initiated inquiry was docketed as a complaint on or about April 6, 2020.

4. Judge Introcaso is a sitting Justice of the 9th Circuit Court, and a member of the New Hampshire Bar.

### Background and Facts Relating to the so-called Partello Complaint (JC-19-050-C)

5. In Judge Introcaso's answer to complaint JC-19-050-C dated January 9, 2020, she states that Attorney Sternenberg is on her recusal list.

6. In the parenting petition mentioned above, David Campbell v. Robin Partello, Docket Number: 659-2818-DM-0072 (hereinafter "Parenting Petition"), Marital Master Bruce DalPra recommended the appointment of Attorney Sternenberg as the Guardian Ad Litem (GAL).

    a. On October 24, 2018, Judge Introcaso signed the Master's recommendation, entering an order approving the appointment of Attorney Sternenberg as the GAL in the Parenting Petition.

    b. In her answer to complaint JC-19-050-C dated January 9, 2020, Judge Introcaso states that she approved the Master's recommendation, likely without reading the order itself before signing. She states she "likely did so without ever looking to see who he had appointed on page one."

7. On the same day, October 24, 2018, Master DalPra drafted a two-page Interim Order, in which the Master summarized pertinent facts of the case, set forth an interim parenting-time schedule, appointed Attorney Sternenberg as a GAL, and appointed James Foster as a counselor.

    a. On October 24, 2018, Judge Introcaso signed the Master's Interim Order.

    b. In her answer dated January 9, 2020, Judge Introcaso states that she likely signed this order without first reading it. She states "I acknowledge, in retrospect, that I should have read both #11 and #12 in greater detail, and then I could have taken steps to assure that I would not be involved in more issues that arose in this matter. . . [T]here simply isn't enough time [to] read every order coming out of Nashua Family Division in detail. . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most diligent review."

8. On February 15, 2019, Master DalPra recommended denying a motion to reconsider that was filed by Ms. Partello. This motion asked the court to reconsider a change to an amended parenting schedule. On February 15, 2019, Judge Introcaso signed this order, approving the Master's recommendation to deny the motion to reconsider. The motion, and the order, did not reference GAL Sternenberg.

9. On February 7, 2019, GAL Sternenberg filed a Motion for Instruction, alleging that Ms. Partello was not cooperating with the GAL. This motion asked the court to order Ms. Partello to cooperate in scheduling a home visit.

    a. On February 15, 2019, Master DalPra recommended granting the motion, ordering Ms. Partello to cooperate with the GAL. In so doing, Master DalPra handwrote that "failure to do so may result in sanctions . . ."

    b. On the same day, Judge Introcaso approved and signed this order. In her answer to JC-19-050-C, the Judge states "there was no doubt I was aware of Attorney Sternenberg's role in this case at that time." Therefore, she admits to knowingly signing an order relating to an attorney who was on her recusal list.

    c. In her answer to complaint JC-19-050-C, Judge Introcaso also explains that, at the time, she felt this was permissible because "this was not a 'substantive order' in the case, and did not resolve any specific legal issue in the case itself."

10. On February 28, 2019, the GAL filed a motion asking the Court for instruction regarding the method of payment from respondent Ms. Partello. Essentially, Ms. Partello had insisted on paying the GAL's retainer using Apple Pay, but the GAL refused to accept Apple Pay. In this motion the GAL asked the court to "Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order." Ms. Partello objected to this motion (hereinafter "Apple Pay Motion").

11. Also, on February 28, 2019, the GAL filed a second motion asking the Court to allow the GAL to exceed the fee cap. Ms. Partello also objected to this motion (hereinafter "Fee Cap Motion").

12. On March 12, 2019, Judge Introcaso issued an Order on the Apple Pay Motion (hereinafter "Apple Pay Order").

   a. She handwrote on the GAL's motion "Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY."

   b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

13. Also, on March 12, 2019, Judge Introcaso issued an Order on the Fee Cap Motion (hereinafter "Fee Cap Order").

   a. She again handwrote on the GAL's pleading "Motion granted over the Respondent's objection at #36."

   b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

14. Shortly after Judge Introcaso issued the above-listed orders, she then asked court staff to schedule a status conference with the parties. The Court scheduled a status conference for March 19, 2019.

15. The petitioner, David Campbell, filed a motion to continue the status conference, and in his motion, he asked for clarification regarding the purpose of said conference.

16. On March 15, 2019 Judge Introcaso issued an Order granting the petitioner's motion to continue and the March 19, 2019 status conference was canceled.

17. On March 15, 2019, Judge Introcaso issued a three-page hand-written Order, in which she, among other things, recused herself from this case (hereinafter "Recusal Order"). Specifically, in this order, the Judge:

    a. Explained that after the Marital Master originally assigned to this case was reassigned to another court, "numerous substantive motions [in this Parenting Petition] were presented to this judge for review. In doing so, this judge has determined that she is unable to address these motions, particularly as some relate directly to the payment and performance of the GAL."

    b. Explained in great detail the nature of her conflict of interest, which, in summary, is that the Judge and the GAL have a long-standing close friendship.

    c. Stated that "The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived."

    d. Concluded that "the wisest course for this judge, and in an attempt to provide the parties with the most unbiased and fair hearing, is to simply withdraw as the presiding justice in this matter with regret as to the delay this may cause to the parties."

    e. Ordered (1) Judge Introcaso shall have no further involvement in this matter; (2) the Clerk shall reassign this matter, resolve the pending motions, and schedule this matter for any further hearing; and (3) no status conference will occur on March 19, 2019.

18. On September 12, 2019, Ms. Partello filed a report against Judge Introcaso with the Judicial Conduct Committee alleging judicial misconduct. This report, among other things, focuses on Judge Introcaso's conflict of interest with the GAL, and that, despite this conflict, Judge Introcaso ruled on several motions filed by, or relating to, the GAL.

**<u>Judge Introcaso's Response to the so-called Partello Complaint (JC-19-050-C)</u>**

19. The <u>Partello</u> Complaint alleges, in pertinent part, that Judge Introcaso ruled on several motions filed by, or relating to, the GAL, who was on her recusal list.

20. In her response, Judge Introcaso admits to ruling on these motions with the knowledge of this GAL's involvement.

21. In the beginning, Judge Introcaso maintains that she did not know of the GAL's involvement, because she sometimes did not read the orders that she was co-signing for Master DalPra.

22. Later, when she was aware of the GAL's involvement, Judge Introcaso explains that she believed her actions were permissible because she was issuing (what she believed were) non-substantive orders that did not resolve any specific legal issues in the case itself. This statement is inconsistent with her March 15, 2019 order which specifically described

the orders as "substantive . . . particularly as some relate directly to the payment and performance of the GAL."

23. Ultimately, Judge Introcaso admits that she should not have ruled on the above-listed motions. She wrote: "I acknowledge [that] my order of March 15, 2019 [recusing myself from this case] should have been issued back in October 2018; it simply wasn't. . . . I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some impropriety on my behalf occurred."

**Facts Relating to the Second Complaint- JC-20-010-C (Committee Generated Complaint)**

24. On or around October 7, 2019, Judge Introcaso took leave from her judicial duties.

25. As mentioned above, on November 8, 2019, the Committee elevated Ms. Partello's report to the level of a complaint (JC–19–050–C) (the so-called "Partello Complaint"). Judge Introcaso's answer was due on or before December 12, 2019, pursuant to the Committee's Executive Secretary's letter to Judge Introcaso dated November 12, 2019.

26. On or around December 12, 2019, while still on leave, Judge Introcaso emailed a partial answer to the Partello Complaint to the Committee, and essentially requested an extension. An extension was granted to January 16, 2020.

27. Judge Introcaso returned to work on December 16, 2019.

28. January 2, 2020, at Judge Introcaso's request, her courtroom clerk Julianne Lodes brought volume one (1) of this two-part Parenting Petition case file to Judge Introcaso's office. This file contained the original versions of the above-referenced Orders and Motions.

29. Clerk Sherry Bisson testified, in her examination under oath (EUO), that on January 6, 2020, she met with Judge Introcaso in her chambers to discuss her writing days. Clerk Bisson testified that during this meeting, Judge Introcaso stated that "she had the Judicial Conduct Complaint response that she needed to write . . . . [Judge Introcaso] proceeded to open the Partello case file [to] the Apple Pay order and pointed – talked to me about that order."

30. Clerk Bisson testified that she has a clear recollection of seeing Judge Introcaso's original hand writing on this Apple Pay order on January 6, 2020.

    a. Specifically, Clerk Bisson states that the Judge "opened the file to the Apple Pay order and explained to me why she didn't agree that it was an issue, that it wasn't considered a substantive order, and she opened to, on the exhibit, to the writing part of the order, she took her finger and read across the lines in front of me and said that she could write that order [because it was not substantive]."

    b. Clerk Bisson further states "She pointed to that in my presence. Not only pointed to it but she took her finger and read the order as her finger was moving across the text."

31. Contrary to Clerk Bisson's July 22, 2020 EUO testimony described above, Judge Introcaso's January 9, 2020 answer states that she had not opened the file before January 9, 2020.

32. According to Judge Introcaso, the following events occurred on January 9, 2020:

   a. When reviewing the court's file to answer the Partello Complaint, Judge Introcaso discovered that the handwritten portion of her Apple Pay and Fee Cap Orders had been completely obscured with white-out correction tape (hereinafter "Whited-Out Orders").

   b. Judge Introcaso then explains that "I immediately considered who could have obscured the Whited-Out Orders and for what purpose, and I made several inquiries to determine what had happened." This included:

      i. Questioning two members of the court staff, Julianne Lodes and Nancy Dabilis, if they had altered these orders;

      ii. Emailing judicial officers and other clerks asking them if they had any contact with the file (without disclosing that the file had been altered); and

      iii. Reviewing the "sign out sheets" to determine if Ms. Partello or any other individual had physical access to the file. (The sign out sheets did not record any member of the public having contact with the file.)

   c. Judge Introcaso states that she then decided to provide the original whited-out copies as exhibits with her Answer to the Partello complaint. Judge Introcaso then removed the originals from the file and replaced whited-out orders with substitute photocopies. In her answer, Judge Introcaso explains:

      i. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file. . . . I asked Ms. Lodes to label the replacement photocopies in the file as a "Copy." I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

      ii. "[U]pon further reflection I changed my mind, and I eventually elected to leave the original White-Out Orders in the case record."

      iii. "After returning the White-Out Orders to the case file, the hand-written entries that we had inserted previously in the bottom margin/footer – indicating that the originals had been submitted to the Committee – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed 'Stricken' above the stricken entries to designate them as such."

33. Julianne Lodes testified to the following facts in her EUO:

a. On January 2, 2020, Ms. Lodes handed Judge Introcaso the Partello file at Judge Introcaso's request so that Judge Introcaso could respond to a JCC complaint.

b. To Ms. Lodes' knowledge the Partello file remained in Judge Introcaso's chambers between January 2 and 9, 2020.

c. On January 9, 2020, Julianne Lodes met with Judge Introcaso in Judge Introcaso's chambers. At that time, Judge Introcaso showed Ms. Lodes "an order where everything was whited out, okay, with whiteout. And she said to me, did you do this to protect me?" Ms. Lodes responded "no, I didn't do that to protect you, I wouldn't do that."

d. During their chambers' conversation on January 9, 2020, after denying whiting out the March 12th Orders, Ms. Lodes asked the judge if it was possible that Robin Partello whited out the Orders. Then Ms. Lodes reviewed the "sign-out" sheets that litigants or members of the public must sign to gain physical access to the Court files. It did not appear that Ms. Partello ever looked at the Court file or had it in her possession.

e. Also, on January 9th, 2020, Judge Introcaso asked Ms. Lodes to make copies of the March 12th, 2019 Orders and then to stamp the original Order and the copy. Judge Introcaso, while in the process of answering the JCC complaint was typing, with her back to Ms. Lodes, and stated that she was typing an affidavit for Ms. Lodes to sign, including the information about when Ms. Lodes brought the file to her.

f. Ms. Lodes thought to herself that she was not going to sign any affidavit and stated, "But at one point, after doing these copies and writing original and sign your name and putting my initials, I'm thinking, something is not right here. I just got up and left."

g. But before leaving chambers, Ms. Lodes responded to Judge Introcaso's concern about the whited-out March 12th, 2019 Orders and stated to her ". . . I don't think that you have to worry about this because everything is on my Notice of Decision. It's all spelled out. So it's there."

34. On January 9, 2020, the same day that Judge Introcaso claims she discovered the whited-out orders and took the above-described steps, she completed drafting her answer to the Partello Complaint and sent it to the Committee. This answer is summarized above, where the Judge acknowledges ruling on motions in a case that she should have recused herself in, due to her conflict with the GAL.

35. On January 14, 2020, two members of the court staff, Julianne Lodes and Nancy Dabilis, met with Judge Leary to report that, during the prior week on January 9, 2020, Judge Introcaso had asked them if they had whited out her two March 12, 2019 orders. Ms. Lodes and Ms. Dabilis then met with Clerk Sherry Bisson, to report the same.

36. When Ms. Lodes and Ms. Dabilis told Clerk Bisson that the handwritten portion of the Apple Pay order was obscured by white-out tape, Clerk Bisson remembered seeing the un-altered Apple Pay Order eight days before, when the judge was showing it to her in her chambers on January 6, 2020.

37. Clerk Bisson believes the order was obscured between January 6, 2020 and January 9, 2020, during the time that the file was in Judge Introcaso's chambers.

38. The above-listed facts were reported to the Judicial Conduct Committee, which forms the basis of the second complaint, (JC-20-010-C), which is a Committee Generated Complaint.

**Judge Introcaso's Response to the Committee Generated Complaint**

39. Judge Introcaso denies whiting-out her March 12, 2019 Apple Pay and Fee Cap Orders.

    a. As mentioned above, Judge Introcaso's January 9, 2020 answer to complaint JC-19-050-C states that she had not opened the file before January 9, 2020.

    b. She admits altering the orders by stamping/initialing them, but she denies altering the orders by whiting-out her handwriting.

    c. She further notes that while she was reviewing the case record, she also had "unaltered versions of the March 12 Orders [with her] because copies of the unaltered March 12 Orders were included as attachments to Ms. Partello's Judicial Conduct Complaint."

        i. The fact that Judge Introcaso had copies of the unaltered versions of the March 12 Orders with her during the time in question (between January 6 and January 9, 2020) is consistent with her December 12, 2019 email to the JCC. In that email she stated "[i]n reviewing what I have been given [referenced above as the Partello Report and attachments], it is obvious I issued two orders on motions from the general 'signing pile' in the Clerk's office, dated March 2019."

40. Judge Introcaso admits her actions on January 9, 2020, including asking court staff members if they whited-out court orders, caused serious anxiety.

    a. In her answer, she wrote: "I now appreciate that my handling of this case record on January 9, 2020 created serious concern and anxiety with clerks and employees."

41. Judge Introcaso admits to altering files by stamping and initialing them, and further to directing her courtroom clerk to assist her with these alterations.

    a. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file."

    b. "I asked Ms. Lodes to label the replacement photocopies in the file as a 'Copy.' I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

    c. After changing her mind about submitting the originals to the JCC, the notations "indicating that the originals had been submitted to the JCC – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed "Stricken" above the stricken entries to designate them as such."

42. Judge Introcaso admits her actions in initialing/stamping original orders in a court file raised several concerns.

    a. "I acknowledge that my responses resulted in the creation of confusing hand-written notations being logged into and subsequently stricken from this case record."

    b. "To the extent that my handling of this unusual situation . . . has made this Committee's work and the Judicial Branch's investigation of this situation more difficult, I am deeply remorseful and apologetic for my actions."

43. Judge Introcaso contends that she discovered that court files had been altered on January 9, 2020, yet never reported the alterations to her supervisors or the Court Clerk.

    a. "In retrospect, I wish I had consulted with my superior judge or Clerk of Court immediately."

    b. Judge Introcaso claims she discovered the white-out alterations on January 9, 2020. Ms. Lodes and Ms. Dabilis reported this to Judge Leary on January 14, 2020, which is six days later. Judge Introcaso had not reported the alterations to any supervisors during this time.

44. The facts set forth above establish compelling circumstantial evidence that Judge Introcaso whited out the Apple Pay Order and Fee Cap Order some time between January 6 and January 9, 2020. At the time she knew that there was an ongoing investigation by the Committee with respect to her rulings on this order. This alleged alteration of the order could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6. It is possible that Judge Introcaso may have whited out the Apple Pay Order and Fee Cap Order at some other time, possibly as early as March 15, 2019. In such case the alleged alteration could constitute the misdemeanor of Tampering with Public Records or Information in violation of RSA 641:6 (I) or (II). In summary the following facts support this conclusion:

a. The evidence demonstrates that Julianne Lodes brought Volume 1 of the Partello file to Judge Introcaso's chambers on January 2, 2020, at Judge Introcaso's request so that Judge Introcaso could respond to Partello complaint.

b. On January 6, 2020, Judge Introcaso discussed the Apple Pay Order with Clerk Bisson and actually showed Clerk Bisson Judge Introcaso's own handwritten margin order in the Partello file.

c. There is no evidence that Volume 1 of the Partello file left Judge Introcaso's chambers between January 6 and January 9, 2020, or that anyone other than Judge Introcaso accessed that file.

d. On January 9, 2020, Judge Introcaso showed Julianne Lodes the Apple Pay Order that had been whited out.

e. There is no evidence that anyone other than Judge Introcaso had whited out the Apple Pay Order or Fee Cap Order.

f. Judge Introcaso confronted Julianne Lodes about whether Ms. Lodes had whited out the Apple Pay Order to protect Judge Introcaso.

g. Julianne Lodes denies applying any white out to any orders.

h. This evidence strongly supports one of the following conclusions: (1) either Judge Introcaso altered or concealed the Whited-Out Orders "with a purpose to impair its verity or availability" to the Committee investigating; or (2) Judge Introcaso presented the Whited-Out Orders, which she had altered "with a purpose to deceive a public servant who is or may be engaged in such proceeding or investigation." This conduct, if found to be true, could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6, I or II.

**Violations of the Code**

45. Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." The facts suggest that Judge Introcaso may have committed a crime by whiting out the Apple Pay Order and Fee Cap Order knowing that the Committee was investigating whether Judge Introcaso violated the Code of Judicial Conduct for issuing those Orders and that she did so with the purpose to the verity or availability of the order to the Committee or with the purpose of deceiving the Committee into thinking someone else altered the orders.

46. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court

Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." Judge Introcaso issued an order or approved recommendations from the marital master which benefited her friend Kathleen Sternenberg by appointing Attorney Sternenberg as GAL and approving orders relating her the payment of Attorney Sternenberg's fees. By not recusing herself in this situation, Judge Introcaso created both an appearance of impropriety and an actual impropriety by favoring her friend over the objection of Robin Partello.

47. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary)* of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it undermines the public confidence in the judiciary, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

48. Canon 2, Rule 2.5 (*Competence, Diligence and Cooperation)* of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall perform judicial and administrative duties, competently and *diligently*." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it is a failure to perform judicial responsibilities competently and diligently, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

49. Additionally, ruling on motions without first disclosing a conflict of interest, "creates the appearance of *impropriety*", also in violation of Canon 1, Rule 1.2 and Canon 2, Rule 2.11. See Judge Introcaso's Answer ("I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some *impropriety* on my behalf occurred.").

50. Canon 2, Rule 2.5(B) (*Competence, Diligence and Cooperation)* states that: "A judge shall cooperate with other judges and court officials in the administration of court business." Questioning court employees about whether they whited-out court orders, and requesting their assistance with further alterations of court orders by copying, stamping, and making notations in the margins, in addition to the other actions described above, violates this rule because it does not promote cooperation with court officials in the administration of court business. As Judge Introcaso admitted, instead of promoting the cooperative administration of court business, she "created serious concern and anxiety with clerks and employees." This further violates Canon 1, Rule 1.2 by "creating the appearance of impropriety."

51. Lastly, Judge Introcaso's failure to report the discovery of the white-out alterations implicates several rules of judicial conduct.

    a. Given that these were the two orders at issue in the pending Partello complaint (JC-19-050-C), failing to report that these orders were completely concealed by white-out violates Canon 2, Rule 2.16, which states that "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies." Failing to report an alteration to a file at issue in a pending complaint is not candid, open, and honest, behavior.

    b. Her failure to report their alteration, in combination with the other facts and circumstances in this case, fails to promote confidence in the judiciary, in violation of Canon 1, Rule 1.2, by "creating the appearance of impropriety."

    c. The failure to report the alteration of court files violates Canon 2, Rule 2.5 because it does not promote the cooperation with other judges and court officials in the administration of court business.

52. Based on the apparent facts of this case, Judge Introcaso engaged in conduct which she knew or should have known was a violation of Canon 1, Rule 1.1 and Rule 1.2, Canon 2, Rule 2.5, 2.11 and Rule 2.16. Acting in a manner that violates the Code does not promote public confidence in the integrity of the judiciary, which also gives rise to the appearance of impropriety as a further violation of the code.

**Formal Charges**

53. Based on the foregoing, there is clear and convincing evidence of violation of the following provisions of the Code of Judicial Conduct:

    d. Judge Introcaso, in violation of Canon 1, Rule 1.1, failed to comply with the law, including the Code of Judicial Conduct.

    e. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

    f. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to avoid impropriety and the appearance of impropriety.

    g. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to perform judicial responsibilities competently and diligently.

    h. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to cooperate with other judges and court officials in the administration of court business.

    i. Judge Introcaso, in violation of Canon 2, Rule 2.11, failed to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.

j. Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate with judicial disciplinary agencies.

k. Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate and be candid and honest with judicial agencies.

Within thirty (30) days of receipt of this Formal Statement of Charges, the Respondent shall file an Answer with the Executive Secretary of the Committee on Judicial Conduct in accordance with Supreme Court Rule 40(9)(F), setting forth all denials, affirmative defenses, mitigating circumstances, and other matters which Judge Introcaso intends to raise at the hearing.

Respectfully submitted,

Judicial Conduct Committee

By its Committee Counsel,

By: /s/ Philip R. Waystack
Philip R. Waystack, Esquire

JUDICIAL CONDUCT COMMITTEE

Dated: October 14, 2020

By: /s/ Mary E. Collins
Mary E. Collins, Chair

STATE OF NEW HAMPSHIRE
JUDICIAL CONDUCT COMMITTEE

JC-19-050-C and JC-20-010-C

In RE: Honorable Julie A. Introcaso

**JUDGE JULIE A. INTROCASO'S ANSWER AND DEFENSES TO STATEMENT OF FORMAL CHARGES PURSUANT TO NEW HAMPSHIRE SUPREME COURT RULE 40 (9) AND REQUEST FOR A HEARING**

Judge Julie A. Introcaso ("Judge Introcaso"), by and through counsel, McLane Middleton, Professional Association, answers the Statement of Formal Charges brought by the New Hampshire Supreme Court Committee on Judicial Conduct (the "Committee") as follows:

**Introduction**

1. Admitted.

2. Paragraph 2 states conclusions of law to which no response is required.

3. Admitted that the formal charges are brought on the basis of the two complaints described in subparagraphs (a) and (b).

4. Admitted.

**Background and Facts Relating to the so-called Partello Complaint (JC-19-050-C)**

5. Admitted.

6. The allegations in paragraph 6, including the allegations in subparagraphs (a) and (b), are admitted.

7. The allegations in paragraph 7, including the allegations in subparagraphs (a) and (b), are admitted.

8. Admitted.

9. The allegations in paragraph 9, including the allegations in subparagraphs (a), (b), and (c), are admitted.

10. Admitted.

11. Admitted.

12. The allegations in paragraph 12, including the allegations in subparagraphs (a) and (b), are admitted.

13. The allegations in subparagraph 13 (a) are admitted. Judge Introcaso is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegation in subparagraph (b) concerning what date the Court actually "sent" a photo-copy of the handwritten order and Notice of Decision to the parties, and therefore denies the allegation. Judge Introcaso is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegation in subparagraph (b) that Julianne Lodes was the only clerk that processed the Fee Cap Order, and therefore denies the allegation.

14. Judge Introcaso admits the allegation in paragraph 14 that she asked court staff to schedule a status conference with the parties, and that the Court scheduled a status conference for March 19, 2019. Judge Introcaso denies the allegations of paragraph 14 to the extent paragraph 14 alleges a specific sequence of the timing between her issuance of the "above-listed" orders and her request to court staff to schedule a status conference with the parties.

15. Admitted.

16. Admitted.

17. Judge Introcaso admits the allegation in paragraph 17 that she issued a three-page, handwritten Recusal Order on March 15, 2019 in which she recused herself from the case and provided a detailed explanation for why she was doing so. Because subparagraphs (a), (b), (c), (d), and (e) at times attempt to paraphrase portions of the Recusal Order using certain adjectives not contained in the Recusal Order (e.g. "close"), and because the subparagraphs at times contain

only selected quotes from the Recusal Order, Judge Introcaso denies that the subparagraphs fully or accurately capture the entirety of her Recusal Order, and she states that the Recusal Order speaks for itself.

18. Admitted, and by way of further answer, Judge Introcaso states that Ms. Partello's complaint did not allege that Judge Introcaso had ruled on any motions filed by, or relating to, the GAL after March 15, 2019, the date upon which Judge Introcaso had recused herself from the case. Rather, Ms. Partello's complaint addressed rulings by Judge Introcaso that Judge Introcaso had disclosed to the parties in her Recusal Order dated March 15, 2019 that had been subsequently and independently reviewed and re-affirmed by Judge Derby on April 26, 2019.

**Judge Introcaso's Response to the so-called Partello Complaint (JC-19-050-C)**

19. Admitted.

20. Judge Introcaso admits that she filed a response to the Partello Complaint and answers that her response to the Partello Complaint speaks for itself.

21. Judge Introcaso admits that she filed a response to the Partello Complaint and answers that her response to the Partello Complaint speaks for itself.

22. Judge Introcaso admits that she filed a response to the Partello Complaint and answers that her response to the Partello Complaint speaks for itself.

23. Judge Introcaso admits that she filed a response to the Partello Complaint and answers that her response to the Partello Complaint speaks for itself.

**Facts Relating to the Second Complaint – JC-20-010-C (Committee Generated Complaint)**

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Judge Introcaso admits a portion of the first sentence of paragraph 28 that her courtroom clerk Julianne Lodes brought volume one of the Parenting Petition case file to Judge Introcaso's office on January 2, 2020. Judge Introcaso denies the remaining portion of the first sentence of paragraph 28 that alleges Judge Introcaso made that request on January 2, 2020. Judge Introcaso is without sufficient knowledge or information to form a belief as to the truth of the allegation in the second sentence of Paragraph 28, and therefore denies the allegation.

29. Judge Introcaso denies the allegations in Paragraph 29 that are attributed to Clerk's Bisson's testimony. Judge Introcaso is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Clerk Bisson testified to, and therefore she denies the allegations concerning the attributions to Clerk Bisson's testimony.

30. Judge Introcaso denies the allegations in Paragraph 30. Judge Introcaso is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Clerk Bisson testified to, and therefore she denies the allegations concerning the attributions to Clerk Bisson's testimony.

31. Judge Introcaso admits that her January 9, 2020 answer states that she had not opened the file before January 9, 2020, and she denies the allegation that she had opened the file on January 6, 2020.

32. Judge Introcaso admits that, on April 3, 2020, she provided a written response to the JCC's preliminary request for information concerning matter JC-20-010-C, which later was adopted as her answer to the Committee-generated complaint, and that her written response to the JCC's request for information speaks for itself. By way of further answer, Judge Introcaso notes that Paragraph 32 is the only paragraph in the Statement of Formal Charges that omits proper citation or sourcing of the quotations contained therein. By comparison, Paragraph 31

quotes and cites to Clerk's Bisson's examination under oath, and Paragraph 33 quotes and cites to Clerk Lodes examination under oath. In contrast, Paragraph 32 is not referencing or quoting any examination under oath of Judge Introcaso. That is because Judge Introcaso was not afforded an opportunity to be examined under oath by the JCC before the Statement of Charges was issued. The sequencing of paragraphs 31, 32, and 33, as well as the use of selected quotations in Paragraph 32 without citation or sourcing, is easily misconstrued to infer that Judge Introcaso was similarly afforded an opportunity to be examined under oath, but she was not.

33. Judge Introcaso is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Clerk Lodes testified to, and therefore she denies the allegations concerning the attributions to Clerk Lodes' testimony.

34. Judge Introcaso admits the allegations in the first sentence of Paragraph 34 concerning when she discovered the whited-out orders and when she drafted her answer to the Partello complaint, with the exception of her initial answer dated December 12, 2019. Judge Introcaso denies the allegation in the first sentence of Paragraph 34 that she sent her answer to the Committee on January 9. Judge Introcaso denies the second sentence of Paragraph 34 to the extent it suggests her answer is fully summarized above in the Statement of Formal Charges, and she states that her answer to the Partello complaint speaks for itself.

35. Judge Introcaso is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Statement of Formal Charges and, therefore, denies them.

36. Judge Introcaso is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Statement of Formal Charges and, therefore, denies them.

37. Judge Introcaso is without knowledge or information sufficient to form a belief as to what Clerk Bisson believes, and therefore denies the allegations in paragraph 37. By way of further answer, Judge Introcaso states that the Statement of Formal Charges should not rely on the beliefs or the assertions of beliefs of Clerk Bisson. This allegation should be inadmissible as evidence, is prejudicial to Judge Introcaso, and members of the JCC who are laypersons should be provided with curative instructions.

38. Judge Introcaso answers that the Committee-generated Complaint speaks for itself, and other than the specific factual allegations contained in that Complaint, she is without knowledge or information sufficient to form a belief as to the truth of the general allegation about what particular facts may have formed the basis of that Complaint.

**Judge Introcaso's Response to the Committee-Generated Complaint**

39. Judge Introcaso answers that her response to the Committee-generated Complaint speaks for itself. By way of further answer, in response to subparagraph (a), when Judge Introcaso indicated "that she had not opened the file before January 9, 2020," she was referencing the time period between January 2, 2020 (the date when the file was delivered to her office) and January 9, 2020. She was not suggesting that she had not opened the file at other times prior to January 2, 2020. In response to subparagraph (b), Judge Introcaso denies that she admitted to altering any orders. Judge Introcaso specifically denied altering the orders in her response, but she also noted exceptions to this characterization of "altering" when she discussed her notations and initialing of certain explanatory, handwritten entries in the case file. Judge Introcaso denies that she ever admitted to altering orders by stamping them or initialing them, though Judge Introcaso did admit to initialing orders without characterizing her actions as an alteration, as described in her response.

40. Judge Introcaso answers that her response to the Committee-generated Complaint speaks for itself. By way of further answer, a more complete description of Judge Introcaso's statement summarized in Paragraph 40 is as follows: "First and foremost, and having carefully reviewed and reflected upon the Judicial Branch's Confidential Factual Investigation Report, I now appreciate that my handling of this case record on January 9 created serious concern and anxiety with clerks and employees. It was never my intention to do so."

41. Judge Introcaso answers that her response to the Committee-generated Complaint speaks for itself. By way of further answer, Judge Introcaso denies that she admitted to altering any orders. In her response, Judge Introcaso specifically denied altering the orders, but she also noted exceptions to this characterization of "altering" when she discussed her notations and initialing of certain explanatory, handwritten entries in the case file. Judge Introcaso denies that she ever admitted to altering orders by stamping them or initialing them. Judge Introcaso admits that she initialed orders as described in her response. Judge Introcaso denies that she admitted to stamping the orders in her response.

42. Judge Introcaso answers that her response to the Committee-generated Complaint speaks for itself. By way of further answer, Judge Introcaso denies that she ever admitted to stamping orders in her response.

43. Judge Introcaso answers that her response to the Committee-generated Complaint speaks for itself. By way of further answer, while Judge Introcaso admits in her answer that she wished she had consulted with her superior judge or Clerk of Court immediately, Judge Introcaso denies that her answer included a contention that she never reported the alterations to her supervisors or the Court Clerk. Judge Introcaso is without knowledge or information sufficient

to form a belief as to whether and when Clerk Lodes and Ms. Dabilis reported the alterations to Judge Leary, and on that basis, denies the allegation.

44. Judge Introcaso denies the allegations that she whited out the Order between January 6 and January 9, 2020. Judge Introcaso denies that allegations of "possible" violations of RSA 641:6. The Statement of Formal Charges sets forth no facts supporting the sweeping, alternative allegation that Judge Introcaso may have whited out the orders "at some other time, possibly as early as March 15, 2019," and the assertion of "other possibilities" lacks any factual grounding, clarity, or particularity so as to warrant further response. The allegations in subparagraphs (a), (b), (c), (d), (e), (f), (g), and (h) are denied.

**Violations of the Code**

45. The allegations in paragraph 45 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 45 are denied.

46. The allegations in paragraph 46 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 46 are denied.

47. The allegations in paragraph 47 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 47 are denied.

48. The allegations in paragraph 48 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 48 are denied.

49. The allegations in paragraph 49 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 49 are denied.

50. The allegations in paragraph 50 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 50 are denied.

51. The allegations in paragraph 51 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 51, including the allegations in subparagraphs (a), (b), and (c), are denied.

52. The allegations in paragraph 52 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 52 are denied.

53. The allegations in paragraph 53 are legal conclusions to which Judge Introcaso is not required to respond with an admission or denial. To the extent a response is required, the allegations in paragraph 53, including the allegations in subparagraphs (d), (e), (f), (g), (h), (i), (j), and (k), are denied.

**Mitigating Factors**

54. At all times, Judge Introcaso faithfully discharged the duties of her office.

55. Judge Introcaso made timely and good faith efforts to rectify the consequences of having signed certain orders in the Partello case involving a guardian ad litem on her recusal list by (a) issuing a detailed, three-page Recusal Order disclosing her conflict of interest; (b) notifying the parties of her conflict of interest; (c) notifying the Clerk's Office of her conflict of interest and providing instructions to the Clerk's Office to stop sending her the Partello file; (d)

documenting her recusal in the Partello file; (e) scheduling a status conference with the parties to review her disclosed conflict of interest, which status conference was subsequently cancelled after one of the parties had raised questions about the scheduling of the status conference; and (f) after her recusal, ensuring that another judge reviewed and reaffirmed the orders she had issued in the case.

56. Judge Introcaso's corrective action was prompt. After she signed the Apple Pay and Fee Cap orders, she promptly notified the Clerk's Office of her conflict and she promptly scheduled a status conference with the parties to discuss the matter.

57. Any appearance of impropriety that may have been created when Judge Introcaso signed orders in the Partello case was substantially cured by her Recusal Order, her detailed disclosure of the nature of her conflict, and the reassignment of the case to another judge who reaffirmed the orders at issue.

58. At the time Judge Introcaso signed the Apple Pay and Fee Cap orders, she was experiencing work-related stress caused by her demanding judicial workload and her expanding judicial signing duties associated with the recent transition of marital masters and judges at the 9th Circuit Court in Nashua.

59. Judge Introcaso acknowledged signing the Apple Pay and Fee Cap orders, and she accepted responsibility for her conflict of interest in doing so, when she filed her answers to the Partello complaint (JC-19-050-C) on December 12, 2019 and January 9, 2020 respectively.

60. Judge Introcaso fully cooperated with the Judicial Conduct Committee in responding to the Partello complaint (JC-19-050-C). Her response was timely, and her request for an extension of time to more fully answer the Partello complaint was reasonable given that

she did not have access to the Partello case file in the courthouse when she filed her initial answer on December 12, 2019.

61. Judge Introcaso's conduct in issuing orders in the Partello case did not involve any behavior or conduct on the bench towards litigants, but rather pertained to her judicial duties outside of the courtroom in issuing orders from the signing table at the 9th Circuit Court in Nashua.

62. Judge Introcaso's conduct in issuing orders in the Partello case did not involve any economic detriment to the litigants or public.

63. Judge Introcaso has expressed remorse for having issued orders in the Partello case.

64. The 9th Circuit Court in Nashua lacked adequate policies, procedures, and protocols regarding the assignment of case files to judges at the signing table, and it lacked adequate policies, procedures, and protocols regarding the identification of judicial recusals on court files.

65. When Judge Introcaso discovered the whited-out orders on January 9, 2020, she did not keep the matter secret, but rather, she promptly engaged her clerks and fellow judges in an effort to address the matter and determine what had happened.

66. Judge Introcaso did not engage in any willful misconduct in office.

67. Judge Introcaso did not violate any laws of the State of New Hampshire.

68. Judge Introcaso lacked any selfish or dishonest motives related to all allegations set forth in the Statement of Formal Charges.

69. Judge Introcaso fully cooperated with the Judicial Branch Confidential Investigation concerning the whited-out orders.

70. Judge Introcaso fully cooperated with the Judicial Conduct Committee's preliminary investigation concerning the whited-out orders.

71. Judge Introcaso had denied that she whited out the orders as alleged between January 6 – 9, 2020. In doing so, she has acknowledged and accepted responsibility for her shortcomings in addressing the matter on January 9, 2020. She has expressed remorse for the anxiety and distress experienced by clerks in addressing the matter with her on January 9, 2020.

72. The alleged misconduct is isolated to one case.

73. The alleged misconduct did not involve a pattern of misconduct and did not occur over a significant period of time.

74. Judge Introcaso has suffered other serious repercussions for the alleged misconduct, including, but not limited to, being placed on involuntary leave from her judicial assignments for ten (10) months and extending at least until a hearing is concluded.

75. Judge Introcaso has made positive contributions as a judge, a court clerk, and an attorney to the court and her community.

76. Judge Introcaso is of good character and reputation.

77. Judge Introcaso has never been sanctioned by any disciplinary board.

**Other Defenses**

**First Defense – General Denial**

Judge Introcaso denies each and every allegation in the Statement of Formal Charges not specifically admitted or otherwise specifically responded to herein. Judge Introcaso denies that she has violated any Canons of the Code of Judicial Conduct or laws.

**Second Defense – No Clear and Convincing Evidence**

Clear and convincing evidence establishes "a factual conclusion to be highly probable, rather than merely more probable than not." N.H. Civil Jury Instruction 5.2 (2020) (emphasis added). The evidence in this case, including circumstantial evidence, reviewed under the clear and convincing evidence standard, is not highly probable. This standard cannot be met here.

**Third Defense – Circumstantial Evidence Does Not Exclude All Rational Conclusions Other Than Guilt**

The Statement of Formal Charges relies exclusively on circumstantial evidence to allege, among other things, that Judge Introcaso whited out orders and "may have committed a crime," including the assertion of the culpable mental state of purposeful conduct. Where the Statement of Formal Charges alleges a mens rea and potential criminal conduct supported by circumstantial evidence, as a basis for establishing a violation of both criminal law and judicial canons, and Judge Introcaso is required to defend herself against circumstantial allegations of potential criminal conduct, the circumstantial evidence presented must exclude all rational conclusions other than guilt, even under a clear and convincing standard, and the circumstantial evidence in this matter is insufficient to exclude all rational conclusions other than guilt.

**Fourth Defense**
**Alternative Theories Lack Particularity**

The Statement of Formal Charges alleges insufficient facts to support the alternative theory that Judge Introcaso whited out the Apple Pay Order and Fee Cap Order "at some other time" "as early as March 15, 2019." *See* Statement of Formal Charges, ¶ 44. The Statement of Formal Charges provides Judge Introcaso with insufficient notice of the charges being brought against her. The Statement of Formal Charges does not contain any particulars supporting this allegation, it does not identify any other specific dates when the conduct may have occurred, does not allow Judge Introcaso to be meaningfully informed of the allegations against her, does not prevent her from being taken by surprise based on the generality of the assertion, and does not meaningfully allow her to defend against the allegations.

**Reservation of Rights**

Discovery in this matter is outstanding, and Judge Introcaso reserves the right to supplement or amend this Answer and the Defenses.

**Request for a Hearing**

Judge Introcaso requests that a hearing taking place concerning the allegations in the Statement of Formal Charges.

**Conclusion**

Judge Introcaso respectfully requests that the Statement of Formal Charges be dismissed.

Respectfully submitted,

JULIE A. INTROCASO

By its attorneys,

McLANE MIDDLETON, PROFESSIONAL ASSOCIATION

Dated: November 18, 2020

By: /s/ Michael A. Delaney
Michael A. Delaney, Bar No. 10504
michael.delaney@mclane.com
900 Elm Street, P.O. Box 326
Manchester, NH 03105
(603) 625-6464

**Certificate of Service**

I certify that, on November 18, 2020, I served the foregoing Answer on Philip Waystack, Committee Counsel via email.

/s/ Michael A. Delaney
Michael A. Delaney, N.H. Bar No. 10504

**JCC Timeline**

10/24/18 – Order appointing GAL signed by J. Introcaso

02/15/19 – Notice of Decision (NOD) (Dalpa/Introcaso) Respondent to cooperate w/GAL or sanctions in parenting plan.

03/12/19 - NOD – Introcaso – GAL fees in cash, money order or bank check only

03/12/19 - NOD – Introcaso – GAL Motion to Exceed Fee Cap

03/15/19 – NOD and *Sua Sponte* Order by Judge Introcaso

09/12/19 - Robin Partello files JCC Complaint vs. Judge Introcaso



PLAINTIFF'S
EXHIBIT
24

FLAGSHIP
RECYCLED
FLAGSHIP
RECYCLED
WHO BUT
W.B.MASO

B
STRICKEN
1/10/20

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

EXHIBIT 7
DERBY
1/18/2021

PLAINTIFF'S EXHIBIT
25

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Further Motion for Instruction Regarding GAL Supplemental Retainer Payment by Robin Partello**
**"Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY".**

So Ordered

Introcaso, J.

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

ORIGINAL

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

9TH CIRCUIT COURT NASHUA
2019 MAR -1 A 11:12

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

FURTHER MOTION FOR INSTRUCTION REGARDING
GAL SUPPLEMENTAL RETAINER PAYMENT BY ROBIN PARTELLO

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue a further order to instruct Robin Partello to pay the GAL via check, money order or cash payment immediately and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for [REDACTED], DOB [REDACTED].

2. Although this court ordered that Robin Partello pay the Guardian ad Litem within seven days of its recent order, the Guardian ad Litem has not received the $350 second retainer amount in a form acceptable to the GAL.

3. Robin Partello has apparently sent electronic funds to Apple Pay and insists that the GAL accept these funds.

4. The GAL does not accept Apple Pay and does not have Apple Pay connected to her client trust account.

5. The GAL has repeatedly informed Robin Partello that she does not accept electronic payments for retainers.

6. The GAL has informed Robin Partello that she needs to either send a check or money order or arrange a time to meet the GAL to give her cash.

7. Robin Partello has refused to do so.

**WHEREFORE**, the Guardian ad Litem respectfully requests that this Court:

A. Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order and to either mail the check or money order to the GAL's business address or to arrange to meet the GAL at the NH Bar Association offices with a cash payment; and

B. Grant such other relief as may be fair and just.

35



Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg

Kathleen A. Sternenberg



THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
NH CIRCUIT COURT

1/10/18. STRICKEN

9th Circuit - Family Division - Nashua
30 Spring Street, Suite 102
Nashua NH 03060

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

PLAINTIFF'S
EXHIBIT
26

Case Name: **In the Matter of David Campbell and Robin Partello**
Case Number: **659-2018-DM-00702**

Enclosed please find a copy of the Court's Order dated March 12, 2019 relative to:

**Motion to Exceed Fee Cap**
**"Motion granted over the Respondent's objection at #38".**

**Introcaso, J.**

March 12, 2019

Sherry L. Bisson
Clerk of Court

(579)
C: Robin Partello; Kathleen A. Sternenberg; Tracey G. Cote, ESQ

ORIGINAL



DEPOSITION EXHIBIT
INTROCASO
5

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

RECEIVED
9TH CIRCUIT COURT
NASHUA
2019 MAR -1 A 11: 12

9th CIRCUIT - FAMILY DIVISION - NASHUA

CASE NO: 659-2018-DM-00702

IN THE MATTER OF DAVID B. CAMPBELL AND ROBIN A. PARTELLO

MOTION TO EXCEED FEE CAP

NOW COMES Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court issue allow the Guardian ad Litem to exceed the fee cap by an additional $1,000 and in support thereof states as follows:

1. On October 25, 2018, Kathleen A. Sternenberg, was appointed to act as Guardian ad Litem for ████ ██████ ██████, DOB ███████.

2. This matter has involved allegations of inappropriate contact with the child and a police investigation and DCYF investigation.

3. The GAL has filed multiple pleadings, prepared for and attended hearings, and has received and replied to ongoing daily email exchanges, phone calls, arranged and attended in person meetings, home visits at both homes, had multiple contacts with the child's school, pediatricians, therapist; and has received police, DCYF and medical records and met with police and had contacts with DCYF.

4. The GAL has used the initial retainer and supplemental retainer[1] as of her billing this week.

5. The GAL anticipates that within a month, she will need to write and file a comprehensive report and to testify at the upcoming contested hearing.

6. The GAL has informed both parties of her intent to file this motion.

7. David Campbell has assented to this motion.

8. Robin Partello objects to this motion.

WHEREFORE, the Guardian ad Litem respectfully requests that this Court:

A. Allow the GAL's motion to exceed the fee cap in the amount of $1,000 and order

---

[1]The GAL has not received Robin Partello's portion of the supplemental retainer as of this writing.

ORIGINAL

34

the parties to pay the GAL the additional percentage of the retainer within fourteen days of this order; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: February 28, 2019

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
P.O. Box 2288
Concord, NH 03302-2288
(603)641-1048 phone
(603)215-7570 fax
kas@sternenberglaw.com

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this motion to Jeffrey Manganaro, Esq./Tracey Goyette Cote, Esq., counsel for David B. Campbell and to Robin A. Partello, pro se.

Kathleen A. Sternenberg



STATE OF NEW HAMPSHIRE

JUDICIAL CONDUCT COMMITTEE

JC-19-050-C and JC-20-010-C

In RE:  Honorable Julie A. Introcaso

# Volume I – Partello file #1 – 355

# Original Court File

Kathleen A. Sternenberg

3/12/19 –

Legal fees / GAL fees to be paid in Cash, by money order or bank check, ONLY.

So Ordered.

Julia A. Introcaso

-2-

**From:** Hon. David D. King
**Sent:** Friday, April 27, 2018 12:47 PM
**To:** Hon. Julie Introcaso
**Subject:** RE: 2018 Evaluation

Hi Julie: I apologize for somehow missing this the first time around. Yes, we are all a little sensitive about judicial evaluations these days. The names that were sent to you by Kathy Yee are all pulled randomly from parties/counsel who have actually appeared in front of you at least twice in the last two years. That must mean, for example, that Attorney Sternenberg had an appearance in at least 2 of your cases to make the list. We also send the letter to the prosecutors and public defender offices, DCYF local offices, probation etc. for every court. I assume you also understand that anyone can go online and complete a survey, whether they receive a letter from us or not—put another way, even if we were to not send the evaluation letter to someone you have concerns about, they may well complete an evaluation anyway. For reasons that have recently come to light, we are looking closely at our procedures and will likely not allow/request judges to suggest additions/deletions from the list. As you know, one of the things that Paul Moore attempted to do was "stuff the ballot box" with people he knew would submit favorable responses. We have been criticized for even offering that opportunity.

Every judge, probably more in the family division, is apt to have one or more persons who will try and railroad the judge through the evaluation process. We can generally spot those evaluations easily through the comments and discount those responses. While I appreciate you raising these issues, I don't see anything out of the ordinary. Finally, I will say what I have said publically a few times lately, that NH is a very small state, Ed and I are pretty visible and accessible, and it is rare that we are surprised when we see the results of a judges' evaluation. If there is a problem with a judge, we generally don't have to wait the 3 years to read about it. We have not had negative feedback about you and don't have a concern that you will have an unfavorable evaluation.

Call me if you have further questions or issues. Have a great weekend.

David

**From:** Hon. Julie Introcaso
**Sent:** Friday, April 27, 2018 11:52 AM
**To:** Hon. David D. King
**Subject:** FW: 2018 Evaluation

Good Morning Judge King,

I apologize for taking your time up over this matter, but I hope you can understand my sensitivity around this topic given recent events and announcements regarding the evaluation process. The first time through, I didn't say or do much, but I suppose it was something of a mystery at the time.

As you can see in my earlier email below, I felt compelled to tell you that "a friend" of mine appear on the list of attorneys. A friend who, I have no doubt, would be honest in her evaluation - - nonetheless, I did what I believed I should and pointed that fact out.

Assuming an illegitimate evaluation, either positive or negative, would likely be minimized in the process of averaging. I recognized I was being unfair to myself for only reporting those names who I had reason to believe

might be seen as unfairly skewing their opinion on the positive side. I also think I should note the three names who appear on the list who may well pose a problem on the negative side, due to a current conflict of interest. I know you will do whatever, if anything, is necessary or appropriate.

Kalie Lydon, Esq. and Ed Richards, Esq. – law partners in Nashua who currently have filed a Judicial Conduct Complaint against me (on behalf of a client they represented in the underlying litigation) as well as a Supreme Court appeal based on my "unfair and biased treatment" of their client. I understand that a judge's ethical issues is a most valuable subject for review, but at this time they appear to have a vested interest in promoting a narrative that suggests I'm unethical and unfair in a case that remains pending.

Attorney Meredith Gregory Gallant – I recently referred a case involving Attorney Gallant to the Hillsborough County attorney's office as I believe she may have knowingly committed or allowed her staff member to commit a crime on her behalf. Needless to say, I suggest she may not be capable of assessing my actions fairly under her current circumstances.

Again, I appreciate your time, particularly allowing me the opportunity to be heard on this issue. I truly value this process, and hope I'm not making it more difficult than it need be.

All the best,
Julie Introcaso

**From:** Hon. Julie Introcaso
**Sent:** Friday, March 30, 2018 1:55 PM
**To:** Hon. David D. King
**Cc:** LCammett@courts.state.nh.us
**Subject:** 2018 Evaluation

Good afternoon,

Thanks for sending along the materials related to my judicial review. I did look at the sample survey last evening. I will complete the self-evaluation as quickly as possible; I'm in a more severe time crunch than usual right now. However, so as not to hold up your end of this effort, I want to make two comments:

1. I would appreciate feedback from Interpreters, Court Security Officers, Victim Advocates and the local prosecutors. Recently, I have been doing some limited work in the District Division (with the kind support of my colleagues who have allowed me to branch out beyond the marital docket at times). I'm reluctant to suggest names, you could always as a clerk; but Alexandra Baer is our lead interpreter from the Language Bank. John Dube, is our OIC for the CSOs, and he could surely tell you who might be able to give you the most meaningful review of my work from the CSO perspective, and our local DV advocates are at Bridges, 33 E. Pearl Street, Nashua. (I don't know their names and it's my policy to simply acknowledge them as "an advocate".) The Nashua prosecutor is Attorney Don Topham, for Hudson it would be Attorney Tessier, both of whom should be in our system or in the Bar Directory.

   I understand "Court Staff" is a category listed on the survey, but most of these folks don't easily fit into those areas, but they are really critical to how smoothly this rather busy operation runs.

2. I need to mention that one of the lawyers on the list you prepared, Kathleen Sternenberg, is one of four people on my "conflicts" list. That is, we have been friends and colleagues for many years. I have not heard any cases where she is counsel for a litigant. I have, however, after disclosures, appointed her as a GAL, only when the parties have specifically requested her services. On one occasion, I believe, I suggested her as a

possible GAL to counsel, recognizing her particular strengths and experience in dealing with children with disabilities - again with appropriate disclosures. I do not appoint her otherwise because of the financial complications. I suspect she is on your list because she has handled a number of cases before me as GAL only.

Obviously, I don't know if she will choose to fill out a survey or not. (Honestly, Kay is the epitome of the old adage "Sometimes our closest friends can be our harshest critics" – God bless, her. She's a tough nut.) I just thought I should give you my input on that point and inform you of the limited nature in which she appears in my cases. Do with it what you will.

I hope this email addresses your correspondence. Should you require a more formal response, just let me know.

Have a lovely Easter weekend.

JI

PLAINTIFF'S EXHIBIT 30

**From:** Hon. Julie Introcaso <JIntrocaso@courts.state.nh.us>
**Sent:** Thursday, November 29, 2018 3:34 PM
**To:** Timothy C. Coughlin <TCoughlin@nhtrialattorneys.com>; Andrew J. Piela <ajp@hamker.com>
**Cc:** Kathleen Sternenberg <kas@Sternenberglaw.com>
**Subject:** GAL Appointment

Counsel,

After calling several GALs (most of whom don't pick up the phone, Attorney Sternenberg and I spoke briefly about the case basics, particularly the need to work expeditiously on the matter given the holidays and the short time between appointment and NCE.
I need to state that having practiced law in Manchester for about 12 years prior to working for the Court beginning in 2000, Attorney Sternenberg and I became good friends and cooperative colleagues in the marital bar. She has an excellent reputation as a GAL in Manchester and rarely comes to Nashua. As I sit in Nashua each day, I don't see her often, although I still consider her a friend.

One of the reasons for that is my deep respect for her work ethic and professionalism. I think she will do a great job, she will do it with diligence, and I hope to assure you that I have before, and likely will again, disagree and argue with her about a variety of matters.

I don't believe I would have any problem looking at her recommendation objectively and, perhaps deciding a case differently from any recommendation she might make, should this case go to trial.

If you have any concerns about the appointment, let me know in the next 27 minutes if possible. Otherwise, I will head out, certain that you will hear from her and move forward in the near future.

Judge I.

PS – Absent an objection, a hard copy of the order attached will go out in tomorrow's mail along with a Notice of Decision

**Sherry Bisson**

PLAINTIFF'S EXHIBIT 31

| | |
|---|---|
| **From:** | Robert Mittelholzer <rmittelholzer@nhjcc.com> |
| **Sent:** | Friday, October 11, 2019 3:02 PM |
| **To:** | Sherry Bisson |
| **Cc:** | 'Diana Dowd-Werry' |
| **Subject:** | RE: In the matter of David Campbell and Robin Partello, Case Number: 659-2018-DM-00702 |

Clerk Bisson:

Good afternoon.

The Judicial Conduct Committee has received a report relative to a matter purportedly heard before Judge Introcaso in the 9th Circuit Court – Hillsborough County – Family Division – Nashua entitled, In the Matter of David Campbell and Robin Partello, Case Number: 659-2018-DM-00702. The Committee has requested that I obtain a copy of the Odyssey Case Summary for this matter as well as a copy of the sound recording of a status hearing conducted before Judge Introcaso on or about March 19, 2019 and Judge Introcaso's Order following this hearing regarding her recusal together with all pleadings and orders referencing Judge Introcaso's recusal, the appointment of the Guardian ad Litem and any and all orders of Marital Master DalPra and Judge Derby in the underlying action relative to the Guardian ad Litem.

If at all possible, I would like to receive a copy of the case summary, orders and pleadings and the sound recording of this hearing on or before Tuesday, October 22, 2019 so that this material may be reviewed and disseminated prior to the Committee's next scheduled meeting.

As always, I would ask that you please send me the Odyssey Case Summary, orders and pleadings and the sound recording of this hearing by way of email attachment(s) if at all possible as this makes dissemination much easier on this end. If this is not possible, or otherwise proves to be an onerous request, and you choose to send these materials by regular mail, please do not staple any pages together and please be certain to record the hearing(s) in an non-encrypted format (such as on Windows Media Player WMA) so that the sound recording(s) may be copied and shared with Committee members on our file sharing software. (Please do not record using *The Record Player*.)

Thanks, as always, for your cooperation in this matter and please let me know if you require a letterhead request sent through the mail. If so, I will be happy to oblige.

RTM

Sherry Bisson

From: Hon. Julie Introcaso
Sent: Monday, January 06, 2020 11:50 AM
To: Sherry Bisson
Subject: RE: Writing Day

I appreciate that. That'll be a big help.
J

From: Sherry Bisson
Sent: Monday, January 06, 2020 10:41 AM
To: Hon. Julie Introcaso
Subject: RE: Writing Day

I spoke with Judge Ashley this morning and for some reason we didn't schedule a docket for you this Thursday or Friday, you will have both days to write.

From: Hon. Julie Introcaso
Sent: Monday, January 06, 2020 8:49 AM
To: Sherry Bisson
Subject: Writing Day

I spoke to Judge Ashley on Friday afternoon. She said she would try to find me some writing time this month if I needed it. I am almost caught up on the OLD stuff, but I also have some recent matters and a JCC complaint to address before the 15th.
Since I don't seem to have anything scheduled for the 10th (?) could you enter that as my writing day for this month?

JI

CONFIDENTIAL

Introcaso 437

PLAINTIFF'S EXHIBIT 33

**Sherry Bisson**

| | |
|---|---|
| **From:** | Hon. Julie Introcaso |
| **Sent:** | Thursday, January 09, 2020 10:12 AM |
| **To:** | Nancy Dabilis; Kimberly Silva; Aline Chasseur; Emily Redwood; Kimberly Nunez; Julianne Lodes |
| **Cc:** | Master Bruce F. Dalpra; Hon. Mark S. Derby; Hon. Patricia Quigley; Kimberly Bonenfant; Sherry Bisson |
| **Subject:** | David Campbell and David Partello - Divorce Case |
| **Importance:** | High |

Good Morning folks,

I know some you may recognize this case, it is unresolved and consists of two jackets of pleadings. I also learned that Ms. Partello has come to the counter at times for various reasons.
If you have had any contact with this file, could you please contact me TODAY at ext. 0930. I have a few questions about the file.

Thanks.

DEPOSITION EXHIBIT
INTROCASO
22

EXHIBIT 20
Judge I.
2/8/2021

NHJB 280

New Hampshire Judicial Conduct Committee
c/o Robert T. Mittelholzer, Esq.
Executive Secretary
132 Chapel Street
Portsmouth, NH 03801

January 9, 2020

RE: JC-19-050-C

To the Honorable Committee:

As an introductory matter, I would first like to state that I don't consider myself as ever having "presided over" this case as Ms. Partello suggests on her Cover Sheet. I am not a Supervisory Justice and do not have any authority to assign cases. Few cases are ever actually "assigned" to any particular judge, and when they are – the judge is informed of such. I have also never conducted a hearing involving the opposing parties in this case. She has acted as counsel on a number of cases in which I was involved; less than 10, and in most of those matters I signed agreements without any hearing. I believe my last involvement with a case where she appeared as counsel was in 2013.

I recently had an opportunity to review the file and the record in this case upon my return from medical leave on December 16th, 2019, and I appreciate the time this Committee has given me to do so.

In reviewing what I have been given, it is obvious I issued two rulings on a motion from the general "signing pile" in the Clerk's office, dated March 12, 2019. I will discuss those in detail below.

Notices of Decision were issued by the Clerk's office that day. (Clerk ID: 579)[1] Clerk ID: 597 is the number assigned to clerk Julianne Lodes, the same clerk who brought me this file to physically review on or after January 2, 2019. I looked through each page of the file on January 9, 2020, my first opportunity to address this matter.

In reviewing the specific orders at #34 (Motion to Exceed Fees – *See* Exh. A) and #35 (Motion for Instruction *See* Exh. B)), I noticed that the orders that I had handwritten have been whited out – gone. You can read my orders underneath the white out, and there is a Notice of Decision on both of my orders. Those <u>original</u> orders, along with the Notices of Decision, which repeat the language of my orders, have been forwarded to this Committee and, on a temporary basis, the Clerk has placed the duplicates in the file until such time as the Committee has reviewed the originals. This tampering with original court documents only came to my attention January 9, 2020. Why anything of this nature occurred is unknown to me as it has no effect – given the presence of the Notices of Decision; it only

---

[1] Every clerk who processes orders or Notices of Hearing through our Odyssey Case Management System is assigned an ID so that the clerk can track which member of the staff processed and documents that goes into the system or is printed for distribution for the parties and counsel.

makes it appear as though I may have done so in an attempt to avoid responsibility for these orders. I did no such thing. THIS IS EXTREMELY TROUBLING.

I went on leave as of October 7, 2019, returning to the Court once with my sister on Saturday, October 12, 2019. I did not enter the Clerk's office, but only retrieved some personal belongings from my office knowing I would be on extended leave until December 16, 2019. I never again entered the courthouse until my return.

I received Ms. Partello's complaint *via* Judge King whose office received the complaint and knew of my leave. He forwarded it to me at home November 19, 2019. (*See* Exh. C) I had no indication that such a complaint was forthcoming.

On January 9, 2020, I issued an email to anyone who may have been involved in processing orders or conducting hearings in this case in an attempt to determine who may have whited out my orders. (*See* Exh. A) I did not mention the issue I was to ask about so as not to deter someone from replying to my email. The staff has also reviewed the rather imperfect sign-out sheets to see who may have taken the file into their possession after the March 12, 2019, orders issued.

Ms. Partello received copies of my orders on March 12, 2019, which clearly show the orders I issued, both in my hand on the original document and on the Notices of Decision.

On March 15, 2019, I was again presented with a Motion to Continue a Status Conference Hearing. IT WAS AT THAT TIME THAT I ISSUED A HANDWRITTEN ORDER RECUSING MYSEL FROM THE CASE. A Notice of this Decision was also issued to the parties and counsel with respect to this handwritten order. (Clerk ID:659304)

Within that order I indicated that "

[illegible]

The Notices of Decision were issued on The signing pile most often includes administrative or procedural matters that require any Judge's review and signature. Some are motions without objections, some are agreements, some are requests for waivers of court fees, many of them are orders issued by the Master or referees, etc.

With respect to this case, I see that I approved the appointment of the GAL in this case, a recommendation made wholly by Master Bruce DalPra without consultation with me, a recommendation to deny a Motion to Reconsider and a recommendation to deny a Motion to Strike (February 21, 2019 – three orders).

I do not know the facts of this case, I have held no hearings in this case, and again, the issues I became aware of as a result of those motions were limited in scope to the point I never hesitated to co-sign without a review of the entire file.

IN DIRECT ANSWER TO THE ALLEGATIONS:

1. – 6. I have no knowledge of the facts of this case.

7. As stated above, Master DalPra appointed a GAL in this matter. He chose the GAL without any consultation with me, and it would be unusual for him to do so. He is more experienced than I, and has a past history which allows him to select a Guardian ad litem whom he believes would be appropriate for any particular case. I co-signed the fourth page of the Order on Appointment of Guardian ad litem, recognizing the content of page four, and likely without every looking to see who he had appointed. My "judicial signing" is nearly always prepared by the staff after their review, of the in my capacity as a judge certifying that I believe .....

8. Again, my Order with respect to this allegation was an approval of the recommendation of Master DalPra of whom I am confident has the expertise to make such orders and to do so only when they are appropriate and necessary. I have no idea if his order was the result of an agreement to select a GAL, a contested matter, etc.

9. I did, indeed, go on to co-sign a few of Master DalPra's orders as a matter of routine signing. However, I deny I ever ordered (or granted) a motion to exceed. I likely co-signed a recommendation of the Master who was handling the case; I trust his judgment in those matters.

With respect to the March 12, 2019, order on pleading #34, the Court received this motion in the routine signing pile and the volume of the case itself indicated it was likely a contested matter. A GAL had been appointed and the parties were already arguing over her fees and there was an allegation by the GAL of non-payment of part of the retainer (and #35 was available for my review, making it clear

that this was most certainly a highly-contested case going forward). Based upon my past experience, and understanding that a modest retainer of $1000. was likely insufficient, I granted the motion knowing that the payment of GAL fees and the reapportionment of those fees could be reviewed and revised by the trial judge at any time. I agree that my ruling on #34 could appear to be an attempt on my part to enrich Attorney Sternenberg, but it was an impartial assessment, affecting each party equally. > I NEED TO READ THE ORDER I WROTE.

With respect to the March 12, 2019, order on Pleading #35, (handwritten by the undersigned judge), I ordered, in response to a motion from Attorney Sternenberg regarding payment of her retainer, that payment of the GAL fees must be made in the form of cash, bank check or money order. I noticed the motion was from Attorney Sternenberg, but I honestly found no reason to withhold issuing the order that I did as it was not about Attorney Sternenberg, Ms. Partello, or any other individual. No one stood to be enriched or advantaged by my ruling. It was intended as a general statement of this Court consistent with every other order I issue with regard to payments.

Frankly, I don't use or understand Applepay. I have never heard of a party or an attorney satisfying a legal obligation with Applepay, but that was not my motivation either. I found Ms. Partello's position, as set forth in Attorney Sternenberg's motion, to be untenable. I could not conceive of ordering any party to accept payment in a form they cannot negotiate or don't know how to negotiate. I have no idea if Attorney Sternenberg uses Apple products, if Applepay costs money or fees to the sender or recipient, etc. I just made a simple order to pay in a generally acceptable form of currency.

10.    The allegations with respect to a March 15, 2019, order will require a supplemental answer on my part. This order is not included in the complaint (despite the language in para. 10 stating "See Order attached.") which I received; however, I do not doubt that when the issue of the appropriate amount of fees Attorney Sternenberg could charge in the case became an issue, I almost certainly would have written something in the file to indicate I should no longer make any rulings in this case. I never appoint Attorney Sternenberg to my cases without a full disclosure, on the record. I don't know what hearing is being referred to, and I don't generally request that the clerk schedule hearings in cases other than my own. I will attempt to clarify this point upon my return, anticipated to be December 16, 2019.

11. Not only would I have had no opportunity to "disclose" the fact that I have had a personal relationship with Attorney Sternenberg, but the first time I appear to have touched the file was in cosigning an order of February 21, 2019. The case was opened sometime in the fall of 2018. To state I waited six months to disclose is patently false as I had no involvement in the case prior to February 2019 when I co-signed Master DalPra's order that stated"...Failure to do so may result in sanctions...." Those are not my words and that was not my decision, substantive or otherwise.

12.  Denied.

13.  Denied. I have no such authority. Master DalPra was reassigned to sit in Derry District Court for most of 2019. Judge Derby picked up most of the cases he was handling in Nashua. No judge or clerk ever consulted with me about the "assignment" of this case.

14. I have no knowledge of this fact.

15. I made a one-time, rather paltry, donation to Gov. Shaheen's first senatorial campaign while attending a house party given for her support. I don't know if that was in 2002 or 2004, but it was many years before I became a judge or judicial candidate. I do not recuse myself from Shaheen and Gordon cases as I do not consider that donation as having created a conflict of interest.

16. I have no knowledge as to the factrs of this case.

17. I have no knowledge of the facts of this case.

18. Argumentative; I can't confirm or deny the facts asserted.

19. I am familiar with Dr. Doug Johnson's work and I have employed him for specific purposes in my own family law cases. Needless to say, the fact that his last name is Johnson is a ridiculous stretch of the imagination; I have no knowledge of any close relation with Dr. Johnson. Yes, my maiden name is Johnson. Kay Sternenberg's husband's last name is also Johnson. I have no knowledge of any familial relationship with him, either. He's an architect. I have no reason to believe Attorney Sternenberg's husband, David Johnson, knows Dr. Douglas Johnson either. Johnson is a common surname (citations omitted.)

As stated, I have been on leave since October 7, 2019. I thank Judge David King for sending this along so that I could meet the committee's deadline. Upon my return to work on December 16, 2019, I will get a hold of the file any try to provide a more enlighteneing answer to the allegations made aboiut "scheduling a status hearing" and what that entailed.

For now, I submit that I have committed no violations of the Judicial Code of Conduct despite Ms. Partello's beliefs.

RESPECTFULLY, I ask this Committee to accept this partial Answer for the purposes of Supreme Court Rule 40(7). Also, I ask for an extension to December 30 to investigate the remaining matter cited in allegation #10.



STATE OF NEW HAMPSHIRE
JUDICIAL CONDUCT COMMITTEE

JC-19-050-C and JC-20-010-C

In RE: Honorable Julie A. Introcaso

# STATEMENT OF FORMAL CHARGES PURSUANT TO NEW HAMPSHIRE SUPREME COURT RULE 40 (9)

The New Hampshire Supreme Court Committee on Judicial Conduct (the "Committee"), by its Committee Counsel, complains against Judge Julie A. Introcaso as follows:

## Introduction:

1. The Committee is the duly authorized Committee on Judicial Conduct established by the New Hampshire Supreme Court pursuant to the Court's constitutional and statutory authority to provide for the orderly and efficient administration of the Code of Judicial Conduct (Rule 38 of the Rules of the New Hampshire Supreme Court.) See Rule 39.

2. The Committee is proceeding against Judge Introcaso pursuant to Rule 40 (7) (a) & (b), and this Statement of Formal Charges is issued pursuant to Rule 40 (9).

3. These formal charges are brought on the basis of two complaints.

   a. The first, (JC–19–050–C), arises out of a report filed by an individual named Robin Partello, who is a respondent in a parenting petition filed by David Campbell in the 9th Circuit Court, Hillsborough County – Family Division – Nashua, bearing docket number 659-2818-DM-0072 (hereinafter, the "Partello Report"). The Committee elevated the Partello Report to the level of a complaint on or about November 8, 2019.

   b. The second, (JC-20-010-C), is a Committee generated complaint based on the apparent alteration of the Court file. This Committee initiated inquiry was docketed as a complaint on or about April 6, 2020.

4. Judge Introcaso is a sitting Justice of the 9th Circuit Court, and a member of the New Hampshire Bar.

## Background and Facts Relating to the so-called Partello Complaint (JC-19-050-C)

5. In Judge Introcaso's answer to complaint JC-19-050-C dated January 9, 2020, she states that Attorney Sternenberg is on her recusal list.

6. In the parenting petition mentioned above, David Campbell v. Robin Partello, Docket Number: 659-2818-DM-0072 (hereinafter "Parenting Petition"), Marital Master Bruce DalPra recommended the appointment of Attorney Sternenberg as the Guardian Ad Litem (GAL).

   a. On October 24, 2018, Judge Introcaso signed the Master's recommendation, entering an order approving the appointment of Attorney Sternenberg as the GAL in the Parenting Petition.

   b. In her answer to complaint JC-19-050-C dated January 9, 2020, Judge Introcaso states that she approved the Master's recommendation, likely without reading the order itself before signing. She states she "likely did so without ever looking to see who he had appointed on page one."

7. On the same day, October 24, 2018, Master DalPra drafted a two-page Interim Order, in which the Master summarized pertinent facts of the case, set forth an interim parenting-time schedule, appointed Attorney Sternenberg as a GAL, and appointed James Foster as a counselor.

   a. On October 24, 2018, Judge Introcaso signed the Master's Interim Order.

   b. In her answer dated January 9, 2020, Judge Introcaso states that she likely signed this order without first reading it. She states "I acknowledge, in retrospect, that I should have read both #11 and #12 in greater detail, and then I could have taken steps to assure that I would not be involved in more issues that arose in this matter. . . [T]here simply isn't enough time [to] read every order coming out of Nashua Family Division in detail. . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most diligent review."

8. On February 15, 2019, Master DalPra recommended denying a motion to reconsider that was filed by Ms. Partello. This motion asked the court to reconsider a change to an amended parenting schedule. On February 15, 2019, Judge Introcaso signed this order, approving the Master's recommendation to deny the motion to reconsider. The motion, and the order, did not reference GAL Sternenberg.

9. On February 7, 2019, GAL Sternenberg filed a Motion for Instruction, alleging that Ms. Partello was not cooperating with the GAL. This motion asked the court to order Ms. Partello to cooperate in scheduling a home visit.

   a. On February 15, 2019, Master DalPra recommended granting the motion, ordering Ms. Partello to cooperate with the GAL. In so doing, Master DalPra handwrote that "failure to do so may result in sanctions . . ."

   b. On the same day, Judge Introcaso approved and signed this order. In her answer to JC-19-050-C, the Judge states "there was no doubt I was aware of Attorney Sternenberg's role in this case at that time." Therefore, she admits to knowingly signing an order relating to an attorney who was on her recusal list.

c. In her answer to complaint JC-19-050-C, Judge Introcaso also explains that, at the time, she felt this was permissible because "this was not a 'substantive order' in the case, and did not resolve any specific legal issue in the case itself."

10. On February 28, 2019, the GAL filed a motion asking the Court for instruction regarding the method of payment from respondent Ms. Partello. Essentially, Ms. Partello had insisted on paying the GAL's retainer using Apple Pay, but the GAL refused to accept Apple Pay. In this motion the GAL asked the court to "Order Robin Partello to pay the GAL retainer in the amount of $350 by cash, by check or by money order." Ms. Partello objected to this motion (hereinafter "Apple Pay Motion").

11. Also, on February 28, 2019, the GAL filed a second motion asking the Court to allow the GAL to exceed the fee cap. Ms. Partello also objected to this motion (hereinafter "Fee Cap Motion").

12. On March 12, 2019, Judge Introcaso issued an Order on the Apple Pay Motion (hereinafter "Apple Pay Order").

    a. She handwrote on the GAL's motion "Legal fees/GAL fees to be paid in Cash, by Money Order or Bank Check, ONLY."

    b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

13. Also, on March 12, 2019, Judge Introcaso issued an Order on the Fee Cap Motion (hereinafter "Fee Cap Order").

    a. She again handwrote on the GAL's pleading "Motion granted over the Respondent's objection at #36."

    b. On the same day, the Court sent a photo-copy of this handwritten order, and a Notice of Decision (which also included a type-written quote including the full text of the Judge's hand-written decision) to the parties. The clerk that processed this order is Julianne Lodes.

14. Shortly after Judge Introcaso issued the above-listed orders, she then asked court staff to schedule a status conference with the parties. The Court scheduled a status conference for March 19, 2019.

15. The petitioner, David Campbell, filed a motion to continue the status conference, and in his motion, he asked for clarification regarding the purpose of said conference.

16. On March 15, 2019 Judge Introcaso issued an Order granting the petitioner's motion to continue and the March 19, 2019 status conference was canceled.

17. On March 15, 2019, Judge Introcaso issued a three-page hand-written Order, in which she, among other things, recused herself from this case (hereinafter "Recusal Order"). Specifically, in this order, the Judge:

    a. Explained that after the Marital Master originally assigned to this case was reassigned to another court, "numerous substantive motions [in this Parenting Petition] were presented to this judge for review. In doing so, this judge has determined that she is unable to address these motions, particularly as some relate directly to the payment and performance of the GAL."

    b. Explained in great detail the nature of her conflict of interest, which, in summary, is that the Judge and the GAL have a long-standing close friendship.

    c. Stated that "The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived."

    d. Concluded that "the wisest course for this judge, and in an attempt to provide the parties with the most unbiased and fair hearing, is to simply withdraw as the presiding justice in this matter with regret as to the delay this may cause to the parties."

    e. Ordered (1) Judge Introcaso shall have no further involvement in this matter; (2) the Clerk shall reassign this matter, resolve the pending motions, and schedule this matter for any further hearing; and (3) no status conference will occur on March 19, 2019.

18. On September 12, 2019, Ms. Partello filed a report against Judge Introcaso with the Judicial Conduct Committee alleging judicial misconduct. This report, among other things, focuses on Judge Introcaso's conflict of interest with the GAL, and that, despite this conflict, Judge Introcaso ruled on several motions filed by, or relating to, the GAL.

**Judge Introcaso's Response to the so-called Partello Complaint (JC-19-050-C)**

19. The Partello Complaint alleges, in pertinent part, that Judge Introcaso ruled on several motions filed by, or relating to, the GAL, who was on her recusal list.

20. In her response, Judge Introcaso admits to ruling on these motions with the knowledge of this GAL's involvement.

21. In the beginning, Judge Introcaso maintains that she did not know of the GAL's involvement, because she sometimes did not read the orders that she was co-signing for Master DalPra.

22. Later, when she was aware of the GAL's involvement, Judge Introcaso explains that she believed her actions were permissible because she was issuing (what she believed were) non-substantive orders that did not resolve any specific legal issues in the case itself. This statement is inconsistent with her March 15, 2019 order which specifically described

the orders as "substantive . . . particularly as some relate directly to the payment and performance of the GAL."

23. Ultimately, Judge Introcaso admits that she should not have ruled on the above-listed motions. She wrote: "I acknowledge [that] my order of March 15, 2019 [recusing myself from this case] should have been issued back in October 2018; it simply wasn't. . . . I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some impropriety on my behalf occurred."

**Facts Relating to the Second Complaint- JC-20-010-C (Committee Generated Complaint)**

24. On or around October 7, 2019, Judge Introcaso took leave from her judicial duties.

25. As mentioned above, on November 8, 2019, the Committee elevated Ms. Partello's report to the level of a complaint (JC-19-050-C) (the so-called "Partello Complaint"). Judge Introcaso's answer was due on or before December 12, 2019, pursuant to the Committee's Executive Secretary's letter to Judge Introcaso dated November 12, 2019.

26. On or around December 12, 2019, while still on leave, Judge Introcaso emailed a partial answer to the Partello Complaint to the Committee, and essentially requested an extension. An extension was granted to January 16, 2020.

27. Judge Introcaso returned to work on December 16, 2019.

28. January 2, 2020, at Judge Introcaso's request, her courtroom clerk Julianne Lodes brought volume one (1) of this two-part Parenting Petition case file to Judge Introcaso's office. This file contained the original versions of the above-referenced Orders and Motions.

29. Clerk Sherry Bisson testified, in her examination under oath (EUO), that on January 6, 2020, she met with Judge Introcaso in her chambers to discuss her writing days. Clerk Bisson testified that during this meeting, Judge Introcaso stated that "she had the Judicial Conduct Complaint response that she needed to write . . . . [Judge Introcaso] proceeded to open the Partello case file [to] the Apple Pay order and pointed – talked to me about that order."

30. Clerk Bisson testified that she has a clear recollection of seeing Judge Introcaso's original hand writing on this Apple Pay order on January 6, 2020.

   a. Specifically, Clerk Bisson states that the Judge "opened the file to the Apple Pay order and explained to me why she didn't agree that it was an issue, that it wasn't considered a substantive order, and she opened to, on the exhibit, to the writing part of the order, she took her finger and read across the lines in front of me and said that she could write that order [because it was not substantive]."

   b. Clerk Bisson further states "She pointed to that in my presence. Not only pointed to it but she took her finger and read the order as her finger was moving across the text."

Redacted

TO JC complaint

Redacted

31. Contrary to Clerk Bisson's July 22, 2020 EUO testimony described above, Judge Introcaso's January 9, 2020 answer states that she had not opened the file before January 9, 2020.

32. According to Judge Introcaso, the following events occurred on January 9, 2020:

   a. When reviewing the court's file to answer the Partello Complaint, Judge Introcaso discovered that the handwritten portion of her Apple Pay and Fee Cap Orders had been completely obscured with white-out correction tape (hereinafter "Whited-Out Orders").

   b. Judge Introcaso then explains that "I immediately considered who could have obscured the Whited-Out Orders and for what purpose, and I made several inquiries to determine what had happened." This included;

      i. Questioning two members of the court staff, Julianne Lodes and Nancy Dabilis, if they had altered these orders;

      ii. Emailing judicial officers and other clerks asking them if they had any contact with the file (without disclosing that the file had been altered); and

      iii. Reviewing the "sign out sheets" to determine if Ms. Partello or any other individual had physical access to the file. (The sign out sheets did not record any member of the public having contact with the file.)

   c. Judge Introcaso states that she then decided to provide the original whited-out copies as exhibits with her Answer to the Partello complaint. Judge Introcaso then removed the originals from the file and replaced whited-out orders with substitute photocopies. In her answer, Judge Introcaso explains:

      i. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file. . . . I asked Ms. Lodes to label the replacement photocopies in the file as a "Copy." I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

      ii. "[U]pon further reflection I changed my mind, and I eventually elected to leave the original White-Out Orders in the case record."

      iii. "After returning the White-Out Orders to the case file, the hand-written entries that we had inserted previously in the bottom margin/footer – indicating that the originals had been submitted to the Committee – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed 'Stricken' above the stricken entries to designate them as such."

33. Julianne Lodes testified to the following facts in her EUO:

a. On January 2, 2020, Ms. Lodes handed Judge Introcaso the Partello file at Judge Introcaso's request so that Judge Introcaso could respond to a JCC complaint.

b. To Ms. Lodes' knowledge the Partello file remained in Judge Introcaso's chambers between January 2 and 9, 2020.

c. On January 9, 2020, Julianne Lodes met with Judge Introcaso in Judge Introcaso's chambers. At that time, Judge Introcaso showed Ms. Lodes "an order where everything was whited out, okay, with whiteout. And she said to me, did you do this to protect me?" Ms. Lodes responded "no, I didn't do that to protect you, I wouldn't do that."

d. During their chambers' conversation on January 9, 2020, after denying whiting out the March 12th Orders, Ms. Lodes asked the judge if it was possible that Robin Partello whited out the Orders. Then Ms. Lodes reviewed the "sign-out" sheets that litigants or members of the public must sign to gain physical access to the Court files. It did not appear that Ms. Partello ever looked at the Court file or had it in her possession.

e. Also, on January 9th, 2020, Judge Introcaso asked Ms. Lodes to make copies of the March 12th, 2019 Orders and then to stamp the original Order and the copy. Judge Introcaso, while in the process of answering the JCC complaint was typing, with her back to Ms. Lodes, and stated that she was typing an affidavit for Ms. Lodes to sign, including the information about when Ms. Lodes brought the file to her.

f. Ms. Lodes thought to herself that she was not going to sign any affidavit and stated, "But at one point, after doing these copies and writing original and sign your name and putting my initials, I'm thinking, something is not right here. I just got up and left."

g. But before leaving chambers, Ms. Lodes responded to Judge Introcaso's concern about the whited-out March 12th, 2019 Orders and stated to her ". . . I don't think that you have to worry about this because everything is on my Notice of Decision. It's all spelled out. So it's there."

34. On January 9, 2020, the same day that Judge Introcaso claims she discovered the whited-out orders and took the above-described steps, she completed drafting her answer to the Partello Complaint and sent it to the Committee. This answer is summarized above, where the Judge acknowledges ruling on motions in a case that she should have recused herself in, due to her conflict with the GAL.

35. On January 14, 2020, two members of the court staff, Julianne Lodes and Nancy Dabilis, met with Judge Leary to report that, during the prior week on January 9, 2020, Judge Introcaso had asked them if they had whited out her two March 12, 2019 orders. Ms. Lodes and Ms. Dabilis then met with Clerk Sherry Bisson, to report the same.

36. When Ms. Lodes and Ms. Dabilis told Clerk Bisson that the handwritten portion of the Apple Pay order was obscured by white-out tape, Clerk Bisson remembered seeing the un-altered Apple Pay Order eight days before, when the judge was showing it to her in her chambers on January 6, 2020.

37. Clerk Bisson believes the order was obscured between January 6, 2020 and January 9, 2020, during the time that the file was in Judge Introcaso's chambers.

38. The above-listed facts were reported to the Judicial Conduct Committee, which forms the basis of the second complaint, (JC-20-010-C), which is a Committee Generated Complaint.

**Judge Introcaso's Response to the Committee Generated Complaint**

39. Judge Introcaso denies whiting-out her March 12, 2019 Apple Pay and Fee Cap Orders.

    a. As mentioned above, Judge Introcaso's January 9, 2020 answer to complaint JC-19-050-C states that she had not opened the file before January 9, 2020.

    b. She admits altering the orders by stamping/initialing them, but she denies altering the orders by whiting-out her handwriting.

    c. She further notes that while she was reviewing the case record, she also had "unaltered versions of the March 12 Orders [with her] because copies of the unaltered March 12 Orders were included as attachments to Ms. Partello's Judicial Conduct Complaint."

        i. The fact that Judge Introcaso had copies of the unaltered versions of the March 12 Orders with her during the time in question (between January 6 and January 9, 2020) is consistent with her December 12, 2019 email to the JCC. In that email she stated "[i]n reviewing what I have been given [referenced above as the Partello Report and attachments], it is obvious I issued two orders on motions from the general 'signing pile' in the Clerk's office, dated March 2019."

40. Judge Introcaso admits her actions on January 9, 2020, including asking court staff members if they whited-out court orders, caused serious anxiety.

    a. In her answer, she wrote: "I now appreciate that my handling of this case record on January 9, 2020 created serious concern and anxiety with clerks and employees."

41. Judge Introcaso admits to altering files by stamping and initialing them, and further to directing her courtroom clerk to assist her with these alterations.

   a. "I asked my Courtroom Clerk Julianne Lodes to make photocopies of my initial, unobscured March 12th Orders to serve as temporary substitute Orders to be placed in the file."

   b. "I asked Ms. Lodes to label the replacement photocopies in the file as a 'Copy.' I also asked her to make a simple notation at the bottom/footer of the documents indicating that the originals had been submitted to the JCC."

   c. After changing her mind about submitting the originals to the JCC, the notations "indicating that the originals had been submitted to the JCC – were no longer accurate. So, I crossed out those hand-written entries in pen, and I wrote and initialed "Stricken" above the stricken entries to designate them as such."

42. Judge Introcaso admits her actions in initialing/stamping original orders in a court file raised several concerns.

   a. "I acknowledge that my responses resulted in the creation of confusing hand-written notations being logged into and subsequently stricken from this case record."

   b. "To the extent that my handling of this unusual situation . . . has made this Committee's work and the Judicial Branch's investigation of this situation more difficult, I am deeply remorseful and apologetic for my actions."

43. Judge Introcaso contends that she discovered that court files had been altered on January 9, 2020, yet never reported the alterations to her supervisors or the Court Clerk.

   a. "In retrospect, I wish I had consulted with my superior judge or Clerk of Court immediately."

   b. Judge Introcaso claims she discovered the white-out alterations on January 9, 2020. Ms. Lodes and Ms. Dabilis reported this to Judge Leary on January 14, 2020, which is six days later. Judge Introcaso had not reported the alterations to any supervisors during this time.

44. The facts set forth above establish compelling circumstantial evidence that Judge Introcaso whited out the Apple Pay Order and Fee Cap Order some time between January 6 and January 9, 2020. At the time she knew that there was an ongoing investigation by the Committee with respect to her rulings on this order. This alleged alteration of the order could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6. It is possible that Judge Introcaso may have whited out the Apple Pay Order and Fee Cap Order at some other time, possibly as early as March 15, 2019. In such case the alleged alteration could constitute the misdemeanor of Tampering with Public Records or Information in violation of RSA 641:6 (I) or (II). In summary the following facts support this conclusion:

a. The evidence demonstrates that Julianne Lodes brought Volume 1 of the Partello file to Judge Introcaso's chambers on January 2, 2020, at Judge Introcaso's request so that Judge Introcaso could respond to Partello complaint.

b. On January 6, 2020, Judge Introcaso discussed the Apple Pay Order with Clerk Bisson and actually showed Clerk Bisson Judge Introcaso's own handwritten margin order in the Partello file.

c. There is no evidence that Volume 1 of the Partello file left Judge Introcaso's chambers between January 6 and January 9, 2020, or that anyone other than Judge Introcaso accessed that file.

Was it from Partello's Exhibit or the original order!

d. On January 9, 2020, Judge Introcaso showed Julianne Lodes the Apple Pay Order that had been whited out.

e. There is no evidence that anyone other than Judge Introcaso had whited out the Apple Pay Order or Fee Cap Order.

f. Judge Introcaso confronted Julianne Lodes about whether Ms. Lodes had whited out the Apple Pay Order to protect Judge Introcaso.

g. Julianne Lodes denies applying any white out to any orders.

h. This evidence strongly supports one of the following conclusions: (1) either Judge Introcaso altered or concealed the Whited-Out Orders "with a purpose to impair its verity or availability" to the Committee investigating; or (2) Judge Introcaso presented the Whited-Out Orders, which she had altered "with a purpose to deceive a public servant who is or may be engaged in such proceeding or investigation." This conduct, if found to be true, could constitute a felony of Falsifying Physical Evidence in violation of RSA 641:6, I or II.

**Violations of the Code**

45. Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." The facts suggest that Judge Introcaso may have committed a crime by whiting out the Apple Pay Order and Fee Cap Order knowing that the Committee was investigating whether Judge Introcaso violated the Code of Judicial Conduct for issuing those Orders and that she did so with the purpose to the verity or availability of the order to the Committee or with the purpose of deceiving the Committee into thinking someone else altered the orders.

46. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Canon 1, Rule 1.1 (*Compliance with the Law*) of the Code of Judicial Conduct (Supreme Court

Rule 38) provides that: "A judge shall comply with the law, including the Code of Judicial Conduct." Judge Introcaso issued an order or approved recommendations from the marital master which benefited her friend Kathleen Sternenberg by appointing Attorney Sternenberg as GAL and approving orders relating her the payment of Attorney Sternenberg's fees. By not recusing herself in this situation, Judge Introcaso created both an appearance of impropriety and an actual impropriety by favoring her friend over the objection of Robin Partello.

47. Canon 1, Rule 1.2 (*Promoting Confidence in the Judiciary*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it undermines the public confidence in the judiciary, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

48. Canon 2, Rule 2.5 (*Competence, Diligence and Cooperation*) of the Code of Judicial Conduct (Supreme Court Rule 38) provides that: "A judge shall perform judicial and administrative duties, competently and *diligently*." Signing orders without reading them, and without checking for any conflicts of interest, violates this rule because it is a failure to perform judicial responsibilities competently and diligently, as Judge Introcaso admits. ("I should have read both #11 and #12 in greater detail . . . Basic orders recommended by Master DalPra or Referee Thorn, . . . were usually signed without the most *diligent* review.")

49. Additionally, ruling on motions without first disclosing a conflict of interest, "creates the appearance of *impropriety*", also in violation of Canon 1, Rule 1.2 and Canon 2, Rule 2.11. See Judge Introcaso's Answer ("I cannot deny that, in retrospect, my rulings and signatures may have created an impression with Ms. Partello that some *impropriety* on my behalf occurred.").

50. Canon 2, Rule 2.5(B) (*Competence, Diligence and Cooperation*) states that: "A judge shall cooperate with other judges and court officials in the administration of court business." Questioning court employees about whether they whited-out court orders, and requesting their assistance with further alterations of court orders by copying, stamping, and making notations in the margins, in addition to the other actions described above, violates this rule because it does not promote cooperation with court officials in the administration of court business. As Judge Introcaso admitted, instead of promoting the cooperative administration of court business, she "created serious concern and anxiety with clerks and employees." This further violates Canon 1, Rule 1.2 by "creating the appearance of impropriety."

51. Lastly, Judge Introcaso's failure to report the discovery of the white-out alterations implicates several rules of judicial conduct.

    a. Given that these were the two orders at issue in the pending Partello complaint (JC-19-050-C), failing to report that these orders were completely concealed by white-out violates Canon 2, Rule 2.16, which states that "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies." Failing to report an alteration to a file at issue in a pending complaint is not candid, open, and honest, behavior.

    b. Her failure to report their alteration, in combination with the other facts and circumstances in this case, fails to promote confidence in the judiciary, in violation of Canon 1, Rule 1.2, by "creating the appearance of impropriety."

    c. The failure to report the alteration of court files violates Canon 2, Rule 2.5 because it does not promote the cooperation with other judges and court officials in the administration of court business.

52. Based on the apparent facts of this case, Judge Introcaso engaged in conduct which she knew or should have known was a violation of Canon 1, Rule 1.1 and Rule 1.2, Canon 2, Rule 2.5, 2.11 and Rule 2.16. Acting in a manner that violates the Code does not promote public confidence in the integrity of the judiciary, which also gives rise to the appearance of impropriety as a further violation of the code.

**Formal Charges**

53. Based on the foregoing, there is clear and convincing evidence of violation of the following provisions of the Code of Judicial Conduct:

    d. Judge Introcaso, in violation of Canon 1, Rule 1.1, failed to comply with the law, including the Code of Judicial Conduct.

    e. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

    f. Judge Introcaso, in violation of Canon 1, Rule 1.2, failed to avoid impropriety and the appearance of impropriety.

    g. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to perform judicial responsibilities competently and diligently.

    h. Judge Introcaso, in violation of Canon 2, Rule 2.5, failed to cooperate with other judges and court officials in the administration of court business.

    i. Judge Introcaso, in violation of Canon 2, Rule 2.11, failed to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.

   j. Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate with judicial disciplinary agencies.

k. Judge Introcaso, in violation of Canon 2, Rule 2.16, failed to cooperate and be candid and honest with judicial agencies.

Within thirty (30) days of receipt of this Formal Statement of Charges, the Respondent shall file an Answer with the Executive Secretary of the Committee on Judicial Conduct in accordance with Supreme Court Rule 40(9)(F), setting forth all denials, affirmative defenses, mitigating circumstances, and other matters which Judge Introcaso intends to raise at the hearing.

Respectfully submitted,

Judicial Conduct Committee

By its Committee Counsel,

By: /s/ Philip R. Waystack
Philip R. Waystack, Esquire

JUDICIAL CONDUCT COMMITTEE

Dated: October 14, 2020

By: /s/ Mary E. Collins
Mary E. Collins, Chair

PLAINTIFF'S EXHIBIT 36

2019 DECEMBER

CALENDAR YEAR CALENDAR MONTH

SUNDAY
FIRST DAY OF WEEK

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 |
| 08 | 09 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 Christmas Eve | 25 Christmas Day | 26 | 27 | 28 |

2020 JANUARY

CALENDAR YEAR CALENDAR MONTH

SUNDAY
FIRST DAY OF WEEK

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 New Year's Eve | 01 New Year's Day | 02 | 03 | 04 |
| 05 | 06 | 07 | 08 | 09 | 10 | |
| 12 | 13 | 14 | 15 | 16 | 17 | |


PLAINTIFF'S
EXHIBIT
37

THE STATE OF NEW HAMPSHIRE 2013 SEP -3 A 10: 18
9TH CIRCUIT – FAMILY DIVISION – NASHUA

HILLSBOROUGH, SS. AUGUST, 2013

IN THE MATTER OF
REGAN MERRIFIELD AND AARON COX

Docket No. 657-2011-DM-00565

**ORDER ON APPOINTMENT OF GUARDIAN AD LITEM**
(RSA 458:17-A, as amended, effective May 12, 1992)

The Master recommends the following order be entered:

1. The Standing Order Relative to Guardian ad Litem Appointment (hereinafter referred to as the "Standing Order") attached hereto is made a part hereof.

2. Name: **Attorney Kathleen A. Sternenberg**
Law Office of Kathleen A. Sternenberg
27 Webster Street
Manchester NH 03104-2547
(603) 641-1048

Is appointed Guardian ad Litem of the children:

Declan Cox 02/27/2010

3. The Guardian ad Litem shall investigate the following issues and make recommendations to the court thereon:

X **Joint decision making responsibilities**
X **Residential parenting responsibility/parenting time**
Special needs of the child(ren)
(SPECIFY):
Counseling for family/mother/father/child(ren) as recommended by the Guardian ad litem
______ Psychological evaluations of mother/father/child(ren) as recommended by the Guardian ad Litem
Parenting skills of mother/father/both
Appropriateness of home environment of mother/father/both
Substance abuse: alcohol/drugs/both/other
Violence, physical abuse, emotional abuse

Sexual abuse of
Supervision of parent-child contact
Rights of grandparents to visit
Influence of companions of either party on child(ren)
Maturity of child(ren) stating a preference
Travel arrangements
Time, place and manner of exchange for visits
_____ Assessment of bond between child(ren) and each parent and/or between siblings
X Other (SPECIFY): **Educational attendance of child/legal residence**

4. Payment of the costs and fees of the Guardian ad Litem shall be made as follows, in the first instance:

X **Petitioner** shall pay the entire GAL expense
Petitioner shall pay %
Respondent shall pay %
Payment of Petitioner's/Respondent's share shall be made from the Court Fund

The Court orders Petitioner/Respondent/both to contact the Office of Cost Containment (OCC) within ten (10) days so that it may determine whether, and if so upon what terms reimbursement of GAL expenses is to be made to the Fund. The responsible party or parties shall comply with the terms for any reimbursement as established by OCC, subject to review by the terms for reimbursement. As long as an Order for Reimbursement is outstanding, the party responsible shall keep the Court and OCC informed at all times of their current mailing address. The address/telephone number of OCC is:

OCC/GAL
State House Annex Room 400
25 Capital Street
Concord NH 03301
(603) 271-7098

The maximum hourly billing rate is set forth in the Standing Order.

5. Other Provisions: **GAL indicates rate $100 per hour with $1500 retainer**

6. Guardian ad Litem Stipulations to be filed within 30 days of appointment.

7. Preliminary Report to be filed by:

8. Final Report to be filed by: **January 15, 2014**

Petitioner/Attorney for Petitioner

Respondent/Attorney for Respondent

Aaron Cox

So ordered:

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

9/6/13 — Date

Julie A. Introcaso — Printed Name of Judge

Signature of Judge

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Nashua Family Division

Case Name: IMO Thomas Sobell and Patricia Sobell

Case Number: (if known) 659-2013-DM-00348

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

Thomas Sobell
Petitioner's Name D.O.B.

66 Bartemus Tr
Street Address

Nashua, NH 03063
City, State, Zip

603 718 9532
Telephone E-Mail Address

Patricia Sobell
Respondent's Name D.O.B.

66 Bartemus Tr.
Street Address

Nashua, NH 03063
City, State, Zip

Telephone E-Mail Address

2013 DEC 20 11:15

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen Sternberg Telephone: 603-641-1048
   Address: 27 Webster Street, Manchester, N.H. 03104-2547
   is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   D.O.B.
   D.O.B.

*** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:

☑ Decision-making responsibilities
☑ Residential responsibilities
☑ Parenting time
☑ Special needs of the child(ren) (specify): ADHD, eating disorder, anxiety, hypervigilance of mother & grandparent regarding feeding & sleeping arrangements
☐ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren) of Ethan
☐ Psychological evaluations of ☐ Petitioner ☑ Respondent ☐ child(ren)

35

Case Name: ___

Case Number: ___

ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☑ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☑ both parties
- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ___
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☐ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☑ Assessment of bond between child and each parent and/or between siblings
- ☑ Other issues which the GAL deems relevant based upon the investigation
- ☐ Other (specify):

___

4. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

**A. Percentage of payment:**

- ☑ The Petitioner shall pay 100 % of the Guardian *ad Litem* fees.
- ☐ The Respondent shall pay ___ % of the Guardian *ad Litem* fees.

**B. Payment Orders:**

- ☐ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $___. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.
- ☐ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $___ shall be paid to the Guardian *ad Litem* by no later than_in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.
- ☐ Other Payment Orders:

___

___

5. Other provisions:

___

6. Guardian *ad Litem* Stipulations to be filed by: ___

Case Name: ______
Case Number: ______
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

7. Preliminary Report to be filed by: ______

8. Final Report to be filed by: ______

**Recommended:**

______ Date

______ Signature of Marital Master

______ Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

1/30/14
Date

Signature of Judge

JULIE A. INTROCASO
Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and maximum fee;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian *ad Litem* shall be compensated at the rate of $60.00 per hour. The maximum fee (including costs) shall not exceed $1,000.00 for any case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $60.00 per hour rate and the $1,000.00 maximum fee may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem*'s work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit-Family Division Nashua

Case Name: In the Matter of John Crawford and Berniece Crawford

Case Number: 226-2008-DM-525
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*
## (Divorce/Parenting)

John Crawford — Petitioner's Name — D.O.B. [redacted]

20 Withces Spring Rd — Street Address

Hollis, NH 03049 — City, State, Zip

978-768-3789 — Telephone — E-Mail Address

Berniece Crawford — Respondent's Name — D.O.B. [redacted]

15 Iron Horse Drive E-304 — Street Address

Bedford, NH 03110 — City, State, Zip

Telephone — E-Mail Address

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name. Kathleen Sternenberg Telephone: 641-1048
   Address: 27 Webster Street Manchester, N.H. 03104-2524
   Is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   D.O.B.
   D.O.B.

*** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:
   - ☐ Decision-making responsibilities
   - ☐ Residential responsibilities
   - ☐ Parenting time
   - ☐ Special needs of the child(ren) (specify):
   - ☐ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren)
   - ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

AMENDED GIVEN IN HAND AND SENT TO ATT. STERNENBERG ON 6-22-15 JL.

36

**Case Name:** Error! Reference source not found.
**Case Number:** Error! Reference source not found.
**ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)**

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ______
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☒ Maturity of child(ren) stating a preference
- ☐ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☐ Assessment of bond between child and each parent and/or between siblings
- ☐ Other issues which the GAL deems relevant based upon the investigation
- ☐ Other (specify): ______

4. The Court sets the maximum fee in this case at $______. The fee may only be exceeded with prior approval of the Court and notice to all parties. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

**A. Percentage of payment:**

- ☑ The Petitioner shall pay 50 % of the Guardian *ad Litem* fees.
- ☑ The Respondent shall pay 50 % of the Guardian *ad Litem* fees.

**B. Payment Orders:**

- ☑ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ 75. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.
- ☑ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ 500 shall be paid to the Guardian *ad Litem* by no later than 21 days the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.
- ☐ Other Payment Orders: ______

5. Other provisions: ______

6. Guardian *ad Litem* Stipulations to be filed by: 7/15/15

NHJB-2070-F (09/30/2014) Page 2 of 4

Case Name: Error! Reference source not found.
Case Number: Error! Reference source not found.
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

7. Preliminary Report to be filed by: ______________________________
8. Final Report to be filed by: 8/7/15

**Recommended:**

______________________ Date

______________________ Signature of Marital Master

______________________ Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

5/12/15
Date

amended 6/22/15

______________________ Signature of Judge

Julie A. Introcaso
Printed Name of Judge

## STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and the maximum fee established by the court in this case;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

NHJB-2070-F (09/30/2014) Page 3 of 4

Case Name: Error! Reference source not found.

Case Number: Error! Reference source not found.

ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian ad Litem shall be compensated at the rate of $______ per hour. The maximum fee set by the court (including costs) shall not exceed $__________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $_______ per hour rate and the maximum fee set by the court may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and, unless otherwise ordered, on receipt of payment of the retainer in full, and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

NHJB-2070-F (09/30/2014) Page 4 of 4

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit-Family Division Nashua

Case Name: In the Matter of Nicole Covart and Frank Covart

Case Number: 659-2015-DM-00463
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*
## (Divorce/Parenting)

| | |
|---|---|
| Frank Covart — Petitioner's Name; D.O.B. [redacted] | Nicole Covart — Respondent's Name; D.O.B. [redacted] |
| 15 Jefferson Road — Street Address | 19 Melissa Drive — Street Address |
| Bedford NH 03110 — City, State, Zip | Nashua, NH 03062 — City, State, Zip |
| Telephone / E-Mail Address | Telephone / E-Mail Address |

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen A. Sternenberg, Esq. Telephone: 603 641-1048

   Address: 27 Webster Street, Manchester, NH 03104

   is appointed Guardian *ad Litem* of the child(ren):

   [redacted] D.O.B. [redacted]

   [redacted] D.O.B. [redacted]

   D.O.B.

   *** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:

   - ☐ Decision-making responsibilities
   - ☒ Residential responsibilities
   - ☒ Parenting time
   - ☐ Special needs of the child(ren) (specify): [redacted] is an [redacted]
   - ☒ Counseling for family/individual counseling for ☒ Petitioner ☒ Respondent ☐ child(ren)
   - ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

Case Name: In the Matter of Nicole Covart and Frank Covart
Case Number: 659-2015-DM-00463
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties
- ☒ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other issue regarding respondent's excess use of pornography
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☒ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☐ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☐ Assessment of bond between child and each parent and/or between siblings
- ☐ Other issues which the GAL deems relevant based upon the investigation
- ☒ Other (specify): Respondent's risk-taking (re: possible use of pornography at work)

4. The Court sets the maximum fee in this case at $1500.00. The fee may only be exceeded with prior approval of the Court and notice to all parties. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

A. **Percentage of payment:**

☐ The Petitioner shall pay ______ % of the Guardian *ad Litem* fees.

☑ The Respondent shall pay 100 % of the Guardian *ad Litem* fees. (Retainer)

B. **Payment Orders:**

☒ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ 100.00. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.

☐ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ 1500 shall be paid to the Guardian *ad Litem* by no later than 8/28 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.

☐ Other Payment Orders:

5. Other provisions:

6. Guardian *ad Litem* Stipulations to be filed by: ______

NHJB-2070-F (09/30/2014) Page 2 of 4

Case Name: In the Matter of Nicole ~~vart and Frank Covart
Case Number: 659-2015-DM-00463
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

7. Preliminary Report to be filed by: 11/1

8. Final Report to be filed by: 2/1

**Recommended:**

Date

Signature of Marital Master

Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

August 20, 2015
Date

Signature of Judge

Julie A. Introcaso
Printed Name of Judge

## STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and the maximum fee established by the court in this case;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

Case Name: In the Matter of Nicole Covart and Frank Covart
Case Number: 659-2015-DM-00463
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian ad Litem shall be compensated at the rate of $_____ per hour. The maximum fee set by the court (including costs) shall not exceed $_________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $______ per hour rate and the maximum fee set by the court may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and, unless otherwise ordered, on receipt of payment of the retainer in full, and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

NHJB-2070-F (09/30/2014) Page 4 of 4

THE STATE OF NEW HAMPSHIRE
JUDICIAL BRANCH
CIRCUIT COURT

9th CIRCUIT - FAMILY DIVISION - NASHUA

CASE NO: 659-2015-DM-0046

IN THE MATTER OF NICOLE COVART AND FRANK COVART

**ASSENTED TO MOTION TO EXTEND DATE FOR FILING OF GAL FINAL REPORT**

**NOW COMES** Kathleen A. Sternenberg, Guardian ad Litem, in the above-referenced case, and she respectfully requests that this Court extend the time to file the Guardian ad Litem Report and in support thereof states as follows:

1. On August 20, 2015, Kathleen A. Sternenberg was appointed to act as Guardian ad Litem for [redacted], DOB [redacted] and [redacted], DOB [redacted] in this matter.

2. On January 14, 2016 at the Pre-Trial Conference, the court ordered the GAL to file her final report on February 1st, 2016.

3. Counsel for the parties agreed that the GAL will file a final report on February 15, 2016 if needed after continued mediation.

**WHEREFORE**, the Guardian ad Litem respectfully requests that this Court:

A. Grant this Assented Motion to Extend Date for Filing of GAL Final Report; and

B. Grant such other relief as may be fair and just.

Respectfully submitted,

Dated: January 14, 2016

Kathleen A. Sternenberg, Esq., NHB#8840
Law Office of Kathleen A. Sternenberg
27 Webster Street
Manchester, NH 03104-2547
(603)641-1048

Motion Granted / ~~Denied~~
Date 1/20/16
Judge Julie A. Introcaso

55

Certificate of Service

I, Kathleen A. Sternenberg, hereby certify that I have, this day, mailed a copy of this Motion to Kempton P. Giggey, Esq., and Andrew M. Gallagher, counsel for the parties.

Kathleen A. Sternenberg

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

NH CIRCUIT COURT 9TH CIRCUIT NASHUA RECEIVED 2015 DEC 14 PM 1:1

Court Name: 9th Circuit - District Division - Nashua

Case Name: In the Matter of Nicole Covart and Frank Covart

Case Number: 659-2015-DM-00463
(if known)

## MOTION TO EXCEED GUARDIAN *AD LITEM* FEE CAP – Divorce/Parenting

1. This Motion to Exceed Fee Cap pertains to a Motion to Exceed *Guardian ad Litem* fee cap of $ 1,500.00 in the above divorce/parenting case:
2. RSA 461-A:16, IV requires that the maximum fee established by the court may only be exceeded with the prior approval of the presiding judge and when all parties to the case have been notified. Please state the reasons you are seeking to exceed the maximum fee established by the court. (Attach additional pages if necessary):

   **The GAL will need to perform additional investigation, prepare for/and attend Pre-Trial Conference, speak with pediatrician, obtain medical records, file her final report, and attend final hearing.**

3. ☑ I have not exceeded the fee cap before the filing of this Motion.
4. ☑ I have attached the original Order of Appointment.
5. ☐ I have attached the original petition(s).
6. I am requesting approval to exceed the fee cap by an additional amount of $ 1,500.00 in anticipation of future bills. (Attach copy of most recent bill)
7. The total of my bills in this case $ 1,430.00 (Attach copies of itemized invoices)

I represent that the foregoing is a true and reasonable bill for the services I rendered and for the costs incurred. I certify that I have not and will not receive any other compensation for the services or costs specified on the attached itemization.

I certify that on this date I provided this document(s) to the parties who have filed an appearance for this case or who are otherwise interested parties by: ☐ Hand-delivery OR ☑ US Mail OR ☐ Email (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order).

12/10/2015
Date

Kathleen A. Sternenberg
Provider Signature

(603) 641-1048
Telephone

27 Webster St., Manchester, NH 03229-2215
Address

**IMPORTANT REQUIREMENTS**
**for filing statement with court**

A Motion to Exceed Attorney or Guardian *ad Litem* Fee Caps must be submitted to the court prior to exceeding the fee cap.

The motion must include the following

1. A copy of the order of appointment or order authorizing services, if applicable.
2. Itemization of all charges, including the date, amount of time and rate.
3. Itemization of all expenses, including a description of each expense and the cost of each expense.
4. A copy of the order or notice of decision, if any, granting a motion to exceed the fee cap related to the case.

Motion Granted / ~~Denied~~

12/29/15
Date

[signature]
Judge Julie A. Introcaso

NHJB-2913-F (09/30/2014)

37

Law Office of Kathleen Sternenberg
27 Webster Street
Manchester, NH 03104-2547

Invoice submitted to:
Nicole Covart
19 Melissa Drive
Nashua NH 03062

December 01, 2015

Invoice # 18873

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/2/2015 | Prepare and finalize GAL report and send to court | 0.25<br>100.00/hr | 25.00 |
| 11/11/2015 | Receive and review GAL questionnaire from Elizabeth Covart, Frank's sister and Tim Wilde, Frank's brother- in- law | 0.50<br>100.00/hr | 50.00 |
| | For professional services rendered | 0.75 | $75.00 |
| | Previous balance | | ($145.00) |
| | Credit balance | | ($70.00) |

cc: Frank Covart
15 Jefferson Road
Bedford, NH 03110

Law Office of Kathleen Sternenberg
27 Webster Street
Manchester, NH 03104-2547

Invoice submitted to:
Nicole Covart
19 Melissa Drive
Nashua NH 03062

November 03, 2015

Invoice # 18660

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/27/2015 | Receive and review/print GAL questionnaire from Jodi Longden | 0.25<br>100.00/hr | 25.00 |
| 10/28/2015 | Receive and review GAL questionnaires from Jean/Alena Gregoire | 0.50<br>100.00/hr | 50.00 |
| 11/1/2015 | Review file; draft Preliminary Report | 3.00<br>100.00/hr | 300.00 |
| | For professional services rendered | 3.75 | $375.00 |
| | Previous balance | | ($520.00) |
| | Credit balance | | ($145.00) |

cc: Frank Covart
16 Jefferson Road
Bedford, NH 03110

Law Office of Kathleen Sternenberg
27 Webster Street
Manchester, NH 03104-2547

Invoice submitted to:
Nicole Covart
19 Melissa Drive
Nashua NH 03062

October 26, 2015

Invoice # 18840

Professional Services

| Date | Description | Hrs/Rate | Amount |
|---|---|---|---|
| 8/24/2015 | Receive and review Order on Appointment of GAL | 0.25<br>100.00/hr | 25.00 |
| 9/3/2015 | Receive and review email Andrew Gallagher regarding payment; reply | 0.25<br>100.00/hr | 25.00 |
| 9/17/2015 | Receive and review Frank Covart's questionnaire and documents (releases) | 0.50<br>100.00/hr | 50.00 |
| 9/24/2015 | Receive and review Stipulation; receive/review/print GAL questionnaire, Nicole Covart | 0.30<br>100.00/hr | 30.00 |
| 10/5/2015 | Initial consult/interview Nicole Covart and initial contact/interview Frank Covart | 3.00<br>100.00/hr | 300.00 |
| 10/15/2015 | Receive and review GAL questionnaire from Kristina Dean | 0.25<br>100.00/hr | 25.00 |
| 10/16/2015 | Receive and review GAL questionnaire from Lauren Hall | 0.25<br>100.00/hr | 25.00 |
| 10/19/2015 | Meeting with Penny at daycare; meet [redacted]; home visit with Nicole and children | 2.50<br>100.00/hr | 250.00 |
| 10/20/2015 | Receive and review notes from Nicole | 0.25<br>100.00/hr | 25.00 |
| 10/21/2015 | Receive and review GAL questionnaire from Beth Philorantz | 0.25<br>100.00/hr | 25.00 |

Nicole Covart

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/21/2015 | Home visit with Frank Covart | 1.50<br>100.00/hr | 150.00 |
| 10/22/2015 | Research sexual addiction effect on children | 0.50<br>100.00/hr | 50.00 |
| | For professional services rendered | 9.80 | $980.00 |
| 8/27/2015 | Payment - retainer from Frank Covart - thank you. | | ($1,500.00) |
| | Total payments and adjustments | | ($1,500.00) |
| | Credit balance | | ($520.00) |

cc: Frank Covart
15 Jefferson Road
Bedford, NH 03110

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
## NH CIRCUIT COURT

HILLSBOROUGH COUNTY — 9TH CIRCUIT – FAMILY DIVISION -NASHUA

In the Matter of:
Nicole Covart Petitioner and Frank Covart, Respondent
Case No: 659-2015-DM-00463

**INTERIM ORDER**

On August 20, 2015, the Court held a temporary hearing on the above-captioned Petition for Divorce at the request of the parties. Both parties appeared with counsel.

The parties are the parents of two minor children, [redacted], age [redacted] [redacted]., and [redacted], age [redacted] The Respondent has not seen the children since late June.

**Beginning August 22, 2105, the Respondent shall have parenting time with the children on Saturdays and Sundays from 9 a.m. to 4 p.m. on the condition that a paternal grandparents are present at all times during the Respondent's parenting time, including transportation. The children will be picked up and dropped off at the marital residence.**

The Petitioner shall provide necessary items for the baby's care to the Respondent, if needed.

So Ordered.

August 20, 2015
Date

Judge Julie A. Introcaso

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit – Family Division at Nashua

Case Name: In The Matter Of Nicole Covert and Frank Covert

Case Number: 659-2015-DM-00463

## SCHEDULING CONFERENCE ORDER

1. Conference relating to:
   - ☒ Petition for Divorce/Legal Separation/Civil Union Dissolution
   - ☐ Parenting Petition
   - ☐ Establish Paternity/Support
   - ☐ UIFSA
   - ☐ Other: ______
   - ☐ Modification of:
     - ☐ Parenting Plan
     - ☐ Support/Alimony

2. Present were:
   - ☒ Petitioner
   - ☒ Respondent
   - ☐ Guardian *ad Litem*
   - ☒ Petitioner's Attorney: Kempton Giggey
   - ☒ Respondent's Attorney: Andrew Gallagher
   - ☐ Other: ______

3. Issues:
   - ☒ Parenting Rights and Responsibilities:
     - ☐ Decision-Making
     - ☐ Residential
   - ☐ Grounds
   - ☒ Child Support
   - ☐ Alimony
   - ☒ Tax Exemptions
   - ☒ Other: ______
   - ☒ Property Distribution:
     - ☒ Real Estate
     - ☒ Personal
     - ☒ Pensions
     - ☐ Business Interest
   - ☒ Distribution of Debts
   - ☒ ~~Health Insurance~~

4. Discovery completed? ☐ Yes ☒ No, to be completed by 90 Day unless specifically modified by court order.

   Family Division Only: Has the Petitioner complied with Rule 1.25-A? ☒ Yes ☐ No

   Family Division Only: Has the Respondent complied with Rule 1.25-A? ☒ Yes ☐ No

   Interrogatories to be sent by 45 Days Depositions to be completed by 60

   Exchange of documents by 45 Day Disclosure of experts on/by PTC

   Exchange appraisals by 45 Days Exchange pensions, etc. by 45 Day

   Other: ______

5a. Has the Petitioner attended CIP? ☐ Yes ☒ No ☐ N/A

5b. Has the Respondent attended CIP? ☒ Yes ☐ No ☐ N/A

84

Case Name: ______
Case Number: ______
SCHEDULING CONFERENCE ORDER

6. Have the Parties Attempted Mediation or other ADR? ☐ Yes ☒ No
If no, why not? Would like mediation / 30 to 45 Days

7. Mediation ordered? ☒ Yes, see attached Order on Appointment of Mediator ☐ No
Req: J Durkin.

8. Guardian *ad Litem* to be Appointed? ☐ Yes ☐ No
(If yes, see attached Order on Appointment of Guardian *ad Litem*.)
GAL report to be filed by TBD

9. Miscellaneous: ______

10. Next Conference/Date and Time:
☒ Pretrial: 1-14-16 @ 9:30
☐ Motion: ______
☒ Final Hearing: 2-22-16 @ 9:00
☐ Other: ______

11. Amount of Time Requested: 1/2 to 1 Day

12. Likelihood of Settlement: Unknown but hopeful

13. Monitor Requested? ☐ Yes ☐ No

14: Other:

So Ordered:
August 20, 2015
Date

Signature - Hon. Julie A. Introcaso

**NOTE**

This is a court order. The court intends to enforce the discovery deadlines and provisions described in this order. A party must request enforcement of this order by motion in a timely manner. If you settle the case before the next hearing date, or if the amount of time requested has been reduced due to partial agreements, please notify the court as soon as possible.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit-Family Division Nashua

Case Name: Dana Albrecht and Katherine Albrecht

Case Number: (if known) 659-2016-DM-00288

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

Dana Albrecht [redacted]
Petitioner's Name D.O.B.

38 E NASHUA ROAD
Street Address

WINDHAM, NH 03087-1139
City, State, Zip

(603) 809-1097
Telephone E-Mail Address

Katherine Albrecht [redacted]
Respondent's Name D.O.B.

214 Worcester Rd.
Street Address

Hollis, NH 03049
City, State, Zip

(626) 484-4042
Telephone E-Mail Address

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen Sternenberg Telephone: 644-1048
   Address: 27 Webster St Manchester, NH
   is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]

   *** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:
   - [x] Decision-making responsibilities
   - [x] Residential responsibilities
   - [ ] Parenting time
   - [ ] Special needs of the child(ren) (specify):
   - [x] Counseling for family/individual counseling for [ ] Petitioner [ ] Respondent [x] child(ren)
   - [ ] Psychological evaluations of [ ] Petitioner [ ] Respondent [ ] child(ren)

51

- [x] Parenting skills of [ ] Petitioner [ ] Respondent [x] both parties
- [x] Appropriateness of the home environment of [ ] Petitioner [ ] Respondent [x] both parties
- [ ] Substance abuse: [ ] alcohol [ ] drugs [ ] both [ ] other ______
- [x] Violence, physical abuse, emotional abuse
- [ ] Sexual abuse of
- [ ] Supervision of parenting time
- [ ] Rights of grandparents to visit
- [ ] Influence of companions of either party on child(ren)
- [x] Maturity of child(ren) stating a preference
- [ ] Travel arrangements
- [ ] Time, place and manner of exchange for parenting time
- [x] Assessment of bond between child and each parent and/or between siblings
- [x] Other issues which the GAL deems relevant based upon the investigation
- [ ] Other (specify): ______

4. The Court sets the maximum fee in this case at $4,000-. The fee may only be exceeded with prior approval of the Court and notice to all parties. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

A. **Percentage of payment:**

- [x] The Petitioner shall pay 50 % of the Guardian *ad Litem* fees.
- [x] The Respondent shall pay 60 % of the Guardian *ad Litem* fees.

B. **Payment Orders:**

- [ ] Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ ______. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.
- [x] Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $3,000- shall be paid to the Guardian *ad Litem* by no later than 11/3/16 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.
- [ ] Other Payment Orders: ______

5. Other provisions: ______

6. Guardian *ad Litem* Stipulations to be filed by: 11/9/16

7. Preliminary Report to be filed by: 1/20/17
8. Final Report to be filed by: TBD

**Recommended:**

10/13/16
Date

Bruce F. Dalpra
Signature of Marital Master

BRUCE F. DALPRA
MARITAL MASTER
Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

10/13/16
Date

[signature]
Signature of Judge

JULIE A. INTROCASO
Printed Name of Judge

## STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

   In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

   a. Expenses for which the Guardian *ad Litem* will be reimbursed;

   b. Guardian *ad Litem* hourly billing rate and the maximum fee established by the court in this case;

   c. Frequency of billing, terms of payment, and payment of retainer;

   d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

   e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

   f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

   g. Whether the Guardian *ad Litem* will visit each party's home;

   h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

   i. Other orders necessary to protect confidentiality; and

   j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

   If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian ad Litem shall be compensated at the rate of $______ per hour. The maximum fee set by the court (including costs) shall not exceed $__________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $_______ per hour rate and the maximum fee set by the court may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and, unless otherwise ordered, on receipt of payment of the retainer in full, and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit – Family Division – Nashua

Case Name: In the Matter of Cheryl Yiatras and Mark Yiatras

Case Number: (if known) 659-2016-DM-00322

[~~RESPONDENT'S PROPOSED~~]
## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

2017 FEB 1 ... 9TH CIRCUIT

Cheryl Yiatras — Petitioner's Name — D.O.B. [redacted]
28 Roy Drive — Street Address
Hudson, NH 03051 — City, State, Zip
Telephone — E-Mail Address

Mark Yiatras — Respondent's Name — D.O.B. [redacted]
43 Central St. Apt #B — Street Address
Hudson, NH 03051 — City, State, Zip
Telephone — E-Mail Address

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen A. Sternenberg, Esq. ~~Courtney Curran Vore~~ Telephone: ~~(603) 883-0797~~
   Address: ~~Wells, White & Fontaine, P.C. 29 Factory Street, Nashua, NH 03061~~
   is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]

*** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:
   - ☐ Decision-making responsibilities
   - ☒ Residential responsibilities
   - ☒ Parenting time
   - ☐ Special needs of the child(ren) (specify):
   - ☐ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren)
   - ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

Case Name: In the Matter of Cheryl Yiatras and Mark Yiatras
Case Number: 659-2016-DM-00322
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ______
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☒ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☐ Assessment of bond between child and each parent and/or between siblings
- ☒ Other issues which the GAL deems relevant based upon the investigation
- ☐ Other (specify): ______

4. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows, in the first instance:

A. **Percentage of payment:**

☒ The Petitioner shall pay 50 % of the Guardian *ad Litem* fees.

☒ The Respondent shall pay 50 % of the Guardian *ad Litem* fees.

[signature] 2/22/17

B. **Payment Orders:**

☒ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ 100. All parties must cooperate with the Guardian *ad Litem* reasonable requests for payment.

☒ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ 1,500 shall be paid to the Guardian *ad Litem* by no later than 3/10/17 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.

☐ Other Payment Orders: ______

5. Other provisions: ______

NHJB-2070-FS (11/01/2011) Page 2 of 4 TurboLaw (800) 518-8726

Case Name: In the Matter of Cheryl Yiatras and K Yiatras
Case Number: 659-2016-DM-00322
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

7. Preliminary Report to be filed by: N/A

8. Final Report to be filed by: May 1, 2017

**Recommended:**

Date

Signature of Marital Master

Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

Date 2/22/17

Signature of Judge

Julie A. Introcaso
Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. <u>GUARDIAN *AD LITEM* STIPULATION:</u>

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and maximum fee;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

NHJB-2070-FS (11/01/2011) Page 3 of 4 TurboLaw (800) 516-8726

**Case Name:** In the Matter of Cheryl Yiatras and M. Yiatras
**Case Number:** 659-2016-DM-00322
**ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM***

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian *ad Litem* shall be compensated at the rate of $60.00 per hour. The maximum fee (including costs) shall not exceed $1,000.00 for any case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $60.00 per hour rate and the $1,000.00 maximum fee may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

NHJB-2070-FS (11/01/2011) Page 4 of 4 TurboLaw (800) 518-9726

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit – Family Division – Nashua

Case Name: In the Matter of Cheryl Yiatras and Mark Yiatras

Case Number: (if known) 659-2016-DM-00322

Petitioner's Proposed
## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

| | |
|---|---|
| Cheryl Yiatras — Petitioner's Name — D.O.B. [redacted] | Mark Yiatras — Respondent's Name — D.O.B. [redacted] |
| 28 Roy Drive — Street Address | 43 Central St, Apt #B — Street Address |
| Hudson, NH 03051 — City, State, Zip | Hudson, NH 03051 — City, State, Zip |
| Telephone — E-Mail Address | Telephone — E-Mail Address |

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.

2. Name: George R. LaBorgue, Jr. Telephone: (603) 579-5400
   Address: 46 Central Street, Hudson, NH 03051
   is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]

*** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:

☐ Decision-making responsibilities

☒ Residential responsibilities

☒ Parenting time

☐ Special needs of the child(ren) (specify): ______

2017 FEB 17 AM 11:42

☐ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren)

☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

47

Case Name: In the Matter of Cheryl Yiatras and Mark Yiatras
Case Number: 659-2016-DM-00322
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ______
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☒ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☐ Assessment of bond between child and each parent and/or between siblings
- ☒ Other issues which the GAL deems relevant based upon the investigation
- ☐ Other (specify): ______

4. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows, in the first instance:

A. **Percentage of payment:**

☒ The Petitioner shall pay 50 % of the Guardian *ad Litem* fees.

☒ The Respondent shall pay 50 % of the Guardian *ad Litem* fees.

B. **Payment Orders:**

☒ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ 100 . All parties must cooperate with the Guardian *ad Litem* reasonable requests for payment.

☒ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ 1,500 shall be paid to the Guardian *ad Litem* by no later than 2/24/17 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.

☐ Other Payment Orders: ______

5. Other provisions: ______

Case Name: In the Matter of Cheryl Yiatras and ..ark Yiatras
Case Number: 659-2016-DM-00322
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

7. Preliminary Report to be filed by: N/A

8. Final Report to be filed by: May 1, 2017

**Recommended:**

Date

Signature of Marital Master

Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

Date

Signature of Judge

Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and maximum fee;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

Case Name: In the Matter of Cheryl Yiatras and ark Yiatras
Case Number: 659-2016-DM-00322
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian *ad Litem* shall be compensated at the rate of $60.00 per hour. The maximum fee (including costs) shall not exceed $1,000.00 for any case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $60.00 per hour rate and the $1,000.00 maximum fee may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

NHJB-2070-FS (11/01/2011) Page 4 of 4 TurboLaw (800) 518-8726

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit - Family Division - Nashua

Case Name: In the Matter of Stephen Loudermilk and Laura Montgomery

Case Number: 659-2015-DM-00186
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*
## (Divorce/Parenting)

Petitioner name: Stephen Loudermilk D.O.B. [redacted]

Address: 82 Martin Stream Rd Fairfield, ME 04937

Telephone: ______ E-Mail Address: ______

Respondent name: Laura A Montgomery D.O.B. [redacted]

Address: 6 Lockness Dr Nashua, NH 03062

Telephone: ______ E-Mail Address: ______

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen A. Sternenberg, Esq. Telephone: 603-641-1048

   Address: P.O. Box 2288, Concord, NH 03302

   Is appointed Guardian *ad Litem* of the child(ren):

   Name: [redacted] Date of Birth: [redacted]

   *** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:

   ☐ Decision-making responsibilities

   ☒ Residential responsibilities

   ☒ Parenting time

   ☐ Special needs of the child(ren) (specify): ______

   ☐ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☐ child(ren)

   ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

Case Name: In the Matter of Stephen Loudermilk and Laura Montgomery
Case Number: 659-2015-DM-00185
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

- ☐ Parenting skills of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☐ both parties
- ☐ Substance abuse: ☐ alcohol ☐ drugs ☐ both ☐ other ______
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of ______
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☐ Travel arrangements
- ☐ Time, place and manner of exchange for parenting time
- ☐ Assessment of bond between child and each parent and/or between siblings
- ☐ Other issues which the GAL deems relevant based upon the investigation
- ☒ Other (specify):
  Any other issues agreed to by the parties

4. The Court sets the maximum fee in this case at $3,000. The fee may only be exceeded with prior approval of the Court and notice to all parties. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows:

A. **Percentage of payment:**

- ☒ The Petitioner shall pay 100 % of the Guardian *ad Litem* fees.
- ☐ The Respondent shall pay ______ % of the Guardian *ad Litem* fees.

B. **Payment Orders:**

- ☒ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ 125.00. All parties must cooperate with the Guardian *ad Litem's* reasonable requests for payment.
- ☐ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ TBD shall be paid to the Guardian *ad Litem* by no later than 12/15/18 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.
- ☒ Other Payment Orders:
  The Responsible party and the GAL shall communicate to resolve payment issues if they arise.

NHJB-2070-F (05/31/2016)

Case Name: In the Matter of Stephen Loudermilk and Laura Montgomery
Case Number: 659-2015-DM-00165
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

5. Other provisions:

**The parties are scheduled to attend NCE on February 6, 2019, and the input of the GAL is essential to the parties preparation in advance of NCE. This matter should be handled promptly by the GAL, and the parties should make the requests of the Guardian with respect to completing questionnaires, meetings, interviews, etc. a priority.**

6. Guardian *ad Litem* Stipulations to be filed by: December 31, 2018

7. Preliminary Report to be filed by: February 1, 2019

8. Final Report, if necessary, to be filed by: February 20, 2019

**So Ordered.**

November 29, 2018
Date

Judge Julie A. Introcaso

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. GUARDIAN *AD LITEM* STIPULATION:
   In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

   a. Expenses for which the Guardian *ad Litem* will be reimbursed;

   b. Guardian *ad Litem* hourly billing rate and the maximum fee established by the court in this case;

   c. Frequency of billing, terms of payment, and payment of retainer;

   d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

   e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

   f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

   g. Whether the Guardian *ad Litem* will visit each party's home;

NHJB-2070-F (05/31/2018)

Case Name: In the Matter of Stephen Loudermilk and Laura Montgomery
Case Number: 659-2015-DM-00185
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

2. GUARDIAN *AD LITEM* FEES:
a. The Guardian *ad Litem* shall be compensated at the rate of $______ per hour. The maximum fee set by the court (including costs) shall not exceed $________ for this case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $______ per hour rate and the maximum fee set by the court may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:
The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and, unless otherwise ordered, on receipt of payment of the retainer in full, and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem* 's work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:
Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.

NHJB-2070-F (05/31/2018)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: 9th Circuit - Family Division - Nashua

Case Name: In the Matter of Kseniya Ausiaikova and Brian Meckel

Case Number: 659-2018-DM-00414
(if known)

## ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM* (Divorce/Parenting)

| | |
|---|---|
| Kseniya Ausiaikova — Petitioner's Name; D.O.B. [redacted] | Brian Meckel — Respondent's Name; D.O.B. [redacted] |
| 5 Hastings Lane — Street Address | 12 Lisa Drive — Street Address |
| Nashua NH 03064 — City, State, Zip | Nashua NH 03062 — City, State, Zip |
| 617-640-4895 — Telephone; kakova83@gmail.com — E-Mail Address | 603-966-7784 — Telephone; brian.meckel@gmail.com — E-Mail Address |

The following order shall be entered:

1. The attached Standing Order Relative to Guardian *ad Litem* Appointment (hereinafter referred to as the "Standing Order") is made a part of this order.
2. Name: Kathleen Sternenberg Telephone: 601-1048
   Address: PO Box 2288 Concord, NH 03302
   is appointed Guardian *ad Litem* of the child(ren):
   [redacted] D.O.B. [redacted]
   [redacted] D.O.B. [redacted]
   ______ D.O.B. ______

   *** If you are not currently a board certified GAL you must notify the Court immediately and this order will be vacated. If at any time during appointment your certification lapses, you must notify the Court immediately and file a motion to withdraw.**

3. The Guardian *ad Litem* shall investigate the following issues and make recommendations to the court thereon:
   - ☐ Decision-making responsibilities
   - ☒ Residential responsibilities
   - ☒ Parenting time
   - ☐ Special needs of the child(ren) (specify): ______
   - ☒ Counseling for family/individual counseling for ☐ Petitioner ☐ Respondent ☒ child(ren)
   - ☐ Psychological evaluations of ☐ Petitioner ☐ Respondent ☐ child(ren)

Case Name: In the Matter of Kseniya Ausiaikova and [illegible]n Meckel
Case Number: 659-2018-DM-00414
ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

- ☒ Parenting skills of ☐ Petitioner ☐ Respondent ☒ both parties
- ☒ Appropriateness of the home environment of ☐ Petitioner ☐ Respondent ☒ both parties
- ☒ Substance abuse: ☒ alcohol ☐ drugs ☐ both ☐ other
- ☐ Violence, physical abuse, emotional abuse
- ☐ Sexual abuse of
- ☐ Supervision of parenting time
- ☐ Rights of grandparents to visit
- ☐ Influence of companions of either party on child(ren)
- ☐ Maturity of child(ren) stating a preference
- ☒ Travel arrangements
- ☒ Time, place and manner of exchange for parenting time
- ☒ Assessment of bond between child and each parent and/or between siblings
- ☒ Other issues which the GAL deems relevant based upon the investigation
- ☒ Other (specify):

Petitioner's relocation to Massachusetts with the children.

4. Payment of the costs and fees of the Guardian *ad Litem* shall be made as follows, in the first instance:

A. **Percentage of payment:**

☒ The Petitioner shall pay 50 % of the Guardian *ad Litem* fees.

☒ The Respondent shall pay 50 % of the Guardian *ad Litem* fees.

B. **Payment Orders:**

☐ Unless otherwise agreed with the Guardian *ad Litem*, the Guardian *ad Litem's* hourly rate shall be no more than $ ________. All parties must cooperate with the Guardian *ad Litem* reasonable requests for payment:

☑ Unless otherwise agreed with the Guardian *ad Litem*, a retainer of $ 1,200 – shall be paid to the Guardian *ad Litem* by no later than 1/4/2019 in the proportion set forth in the paragraph above. In the event any party's payment is not made in accordance with this Order, the other party or the GAL may request a hearing. The party not in compliance with this Order may be required to appear at the hearing, prepared to show cause why s/he should not be held in contempt of court. Unless otherwise ordered, the Guardian *ad Litem* is not required to commence an investigation until the retainer is paid in full.

☑ Other Payment Orders:
Fee shall not exceed $3000 – without prior court approval.

5. Other provisions:
OSE: 3/7/19 8:30AM; PTC 3/29/19 9:00AM

6. Guardian *ad Litem* Stipulations to be filed by: 1/15/19

Case Name: ( ,ne Matter of Kseniya Ausiaikova and ( n Meckel
Case Number: 659-2018-DM-00414

ORDER ON APPOINTMENT OF GUARDIAN *AD LITEM*

7. Preliminary Report to be filed by: 3/1/19

8. Final Report to be filed by: TBD

**Recommended:**

12/6/18
Date

Signature of Marital Master

BRUCE F. DALPRA
MARITAL MASTER
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

12/12/18
Date

Signature of Judge

Julie A. Introcaso
Printed Name of Judge

**STANDING ORDER RELATIVE TO GUARDIAN *AD LITEM* APPOINTMENT**

This order applies to all Guardian *ad Litem* appointments unless its terms are altered by an order entered in a specific case. Any changes in the order or the stipulations must be in writing and filed with the court.

1. <u>GUARDIAN *AD LITEM* STIPULATION:</u>

In every case in which a Guardian *ad Litem* is appointed, the parties and the Guardian shall file a stipulation as to the following issues:

a. Expenses for which the Guardian *ad Litem* will be reimbursed;

b. Guardian *ad Litem* hourly billing rate and maximum fee;

c. Frequency of billing, terms of payment, and payment of retainer;

d. The names of the individuals requested to be interviewed by the Guardian *ad Litem*, including names, addresses, telephone numbers and relationship to party or child, listed in order of importance. The Guardian *ad Litem* shall have the discretion to decide which individuals to interview;

e. Manner in which the Guardian *ad Litem* will communicate with each party's references (e.g., office conference, telephone call, letter);

f. Action(s) the Guardian *ad Litem* will take if unable to contact a reference;

g. Whether the Guardian *ad Litem* will visit each party's home;

h. Whether conversations between the Guardian *ad Litem* and the children will be confidential;

i. Other orders necessary to protect confidentiality; and

j. Dates by which parties will execute authorizations for reports. Specify records to be requested.

If this stipulation is not filed by the date set forth in the Order on Appointment of Guardian *ad Litem*, the court shall schedule an immediate enforcement hearing at the request of the Guardian *ad Litem* or either party.

2. GUARDIAN *AD LITEM* FEES:

a. The Guardian *ad Litem* shall be compensated at the rate of $60.00 per hour. The maximum fee (including costs) shall not exceed $1,000.00 for any case, and shall include attendance at hearings.

b. Parties, counsel and the GAL shall be aware of the GAL fees and costs and shall take reasonable action to contain those fees and costs. Maximum limits will be strictly enforced.

c. The maximum fee shall not be exceeded without prior approval of the court after hearing with the parties and the Guardian *ad Litem* present. Any request to exceed the maximum shall be filed with the court in writing and shall set forth in detail the reasons for the request and the amount by which the maximum is to be exceeded.

d. When the parties are paying the cost of the GAL, the $60.00 per hour rate and the $1,000.00 maximum fee may be waived upon written agreement of the parties and counsel which shall be filed with the court and subject to court approval. The agreement shall set forth the hourly rate and the maximum fee agreed to by the parties.

e. If counseling, therapy or evaluations are recommended by the GAL, no expenses for those may be incurred without the prior approval of the court after hearing. Notwithstanding the above, the court may enter orders upon motion of either party, or *sua sponte*, to authorize specific additional services with appropriate limits on payment.

3. COMMENCEMENT, SUSPENSION AND RESUMPTION OF WORK:

The Guardian *ad Litem* shall commence an investigation on receipt of the Order of Appointment and shall diligently investigate the case, and prepare a report. If the parties agree to suspend the investigation and preparation of a report for any reason, they shall immediately seek the assent of the Guardian *ad Litem* to such suspension and file with the Court a written agreement to suspend the Guardian *ad Litem*'s work. This agreement shall be signed by all parties, including the Guardian *ad Litem* who shall suspend work on the case on receipt of notice that the Court has approved the agreement.

A party desiring that the Guardian *ad Litem* resume work on the case shall immediately file an appropriate motion and shall send a copy of the motion to the Guardian *ad Litem* who shall resume work in that case only on receipt of the court's notice that the motion has been granted.

4. PLEADINGS AND STIPULATIONS:

Each party shall certify on every pleading that s/he has mailed or delivered a copy of the pleading to the Guardian *ad Litem*.

The parties may agree on any issue concerning the child(ren) or incapacitated adult, and shall certify that s/he has mailed or delivered a copy of the written agreement to the Guardian *ad Litem*. The Guardian *ad Litem* may sign the agreement or file an objection, if appropriate, within ten days from the date of mailing or delivery.