STATE OF NEW HAMPSHIRE
JUDICIAL CONDUCT COMMITTEE

JC-19-050-C and JC-20-010-C

In RE: Julie Introcaso

## SUMMARY REPORT OF PROCEEDINGS, FINDINGS AND RECOMMENDATIONS PURSUANT TO SUPREME COURT RULE 40(12)(d)

NOW COMES, the Judicial Conduct Committee and offers the following *Summary Report of Proceedings, Findings and Recommendations* pursuant to Supreme Court Rule 40(12)(d) as follows:

New Hampshire Supreme Court Rule 40(12)(d), *Dispositions Following Hearing*, provides in relevant part that:

> *Violation Warranting Formal Discipline.* If the Committee determines, by the affirmative vote of at least seven of its members, that the judge complained against has violated the Code of Judicial Conduct and that the violation is of a serious nature so as to warrant formal disciplinary action by the Supreme Court, the Committee shall prepare a summary report of the proceeding and of its findings which shall be filed in the public docket of the Committee. Such report shall include the recommendations of the Committee (if any) concerning the sanctions to be imposed. Any member who dissents from the determination of the Committee may prepare a minority opinion which shall be appended to the report of the Committee. A copy of the decision shall be sent to the judge and Committee's Hearing Counsel, and the Committee shall also notify the Supreme Court that a decision finding serious judicial misconduct has been docketed.

On or about February 16, 2021, former Judge Julie Introcaso (Introcaso) offered, and the Committee elected, to resolve this matter by way of a *Stipulation and Agreement* thereby terminating these judicial conduct proceedings without a hearing. Ms. Introcaso entered into this *Stipulation and Agreement*, with the advice of counsel, and entered the following pleas and waivers.

Introcaso acknowledged receipt of the *Statement of Formal Charges* dated October 14, 2020.

1

Introcaso acknowledged that she understood that she had a right to a public hearing to contest the charges in the *Statement of Formal Charges* pursuant to New Hampshire Supreme Court Rule 40(9), (10) and (11) and acknowledged that she further understood that a hearing had been scheduled for February 17, 2021 on the *Statement of Formal Charges*. Introcaso signed the *Stipulation and Agreement* in lieu of this public hearing; waived her right to this public hearing under Rule 40; and agreed that the *Stipulation and Agreement* would serve as part of the official record of these proceedings.

Introcaso pleaded *nolo contendere* to the charges that she violated the following provisions of the Code of Judicial Conduct (Supreme Court Rule 38) as alleged in the *Statement of Formal Charges* as follows:

a. Julie Introcaso, in violation of Canon 1, Rule 1.1, failed to comply with the law, including the Code of Judicial Conduct.

b. Julie Introcaso, in violation of Canon 1, Rule 1.2, failed to act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

c. Julie Introcaso, in violation of Canon 1, Rule 1.2, failed to avoid impropriety and the appearance of impropriety.

d. Julie Introcaso, in violation of Canon 2, Rule 2.5(A), failed to perform judicial responsibilities competently and diligently.

e. Julie Introcaso, in violation of Canon 2, Rule 2.5(B), failed to cooperate with other judges and court officials in the administration of court business.

f. Julie Introcaso, in violation of Canon 2, Rule 2.11, failed to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.

g. Julie Introcaso, in violation of Canon 2, Rule 2.16(A), failed to cooperate with judicial disciplinary agencies.

h. Julie Introcaso, in violation of Canon 2, Rule 2.16(A), failed to cooperate and be candid with the judicial disciplinary authority.

Introcaso resigned her judicial appointment as a justice of the New Hampshire Circuit Court, effective as of February 16, 2021.

Introcaso acknowledged that she understood and has agreed that she is responsible to reimburse the Administrative Office of the Courts (AOC) for the attorney's fees and expenses which the JCC incurred in the investigation, charging, and prosecutorial stages of this case pursuant to New Hampshire Supreme Court Rule 40(13-A), *Expenses Relating to Discipline Enforcement*.

Introcaso also acknowledged that she understood that as a result of her stipulation and agreement and the terms of the executed *Stipulation and Agreement*, the Committee would enter the finding, by clear and convincing evidence, that she had violated the provisions of the Code of Judicial Conduct as stated above and that the Committee would prepare a summary report of this proceeding and of its findings and recommendations (if any) concerning the sanctions to be imposed which would be filed in the public docket of the Committee and forwarded to the New Hampshire Supreme Court as required by New Hampshire Supreme Court Rule 40(12)(d).

Introcaso further agreed to waive any rights which she had to a *de novo* hearing in connection with this matter and acknowledged that the Committee's findings and disposition would be final pursuant to New Hampshire Supreme Court Rule 40(12)(d)(1) and (2).

Introcaso acknowledged that she has had the advice of counsel in connection with the preparation and execution of the *Stipulation and Agreement* and acknowledged that she understood both the terms and effect of such *Stipulation and Agreement* and that she executed the *Stipulation and Agreement* of her own free will.

Introcaso agreed that the documents scanned to a compact disc prepared by Hearing Counsel are authentic, are what they purport to be, are relevant to the issues in this matter, and may be admitted to the record as a full exhibit.

The Committee and Introcaso agreed that upon execution of the *Stipulation and Agreement*, the Committee would enter a finding of violations of the Code of Judicial Conduct as stated therein by clear and convincing evidence, that the hearing then set for February 17, 2021 would be cancelled and that, due to the factual circumstances, the Committee would refer this matter to the New Hampshire Supreme Court for consideration of the imposition of formal discipline under Supreme Court Rule 40(12)(d).

The *Statement of Formal Charges* accuses Introcaso of multiple serious violations of the Code of Judicial Conduct that are fundamentally at odds with the impartial administration of justice. The JCC is acutely mindful of the importance of public accountability for judges who hold a special position of responsibility and trust in our constitutional system of government. The New Hampshire Supreme Court has observed that there is significant value in the airing of official misconduct in a public proceeding. "When members of the public are informed as to judicial misconduct, they are better able to recognize, report, and otherwise protect themselves against future instances of similar misconduct." *In re Thayer*, 145 N.H. 177, 181 (2000). Indeed, Part I, Article 8 of the New Hampshire Constitution enshrines this principle:

3

All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted. The public also has a right to an orderly, lawful, and accountable government.

Resolving this case by *Stipulation and Agreement*, the public is deprived of the full scope of transparency that would accompany an adversarial hearing. However, all legal settlements and plea agreements involve the balancing of competing interests. The JCC decided that conclusion of this case without a public hearing served the best interests of justice. In reaching that decision the JCC relied on two points in particular.

First, Introcaso does not contest any of the allegations, including the factual allegations, contained in the *Statement of Formal Charges*. Pursuant to the terms of the *Stipulation*, the JCC enters a finding that there is clear and convincing evidence that Introcaso violated each of the Canons of the Code of Judicial Conduct set forth in the *Statement of Formal Charges*. In the view of the JCC, this fulfilled the constitutional mandate that "all magistrates" be "at all times accountable to [the people]."

Second, and perhaps more importantly, by entering into the *Stipulation* Introcaso agreed to resign her commission as a judge effective immediately. It is the Committee's understanding that a judge may only be removed from office through impeachment in the New Hampshire Legislature or by the combined actions of the legislative and executive branches through the process of address. *See, e.g.,* N.H. Const. pt. II, arts. 17, 38, 73; *In re Mussman*, 112 N.H. 99, 100-101 (1972); *see generally In re Petition of Judicial Conduct Comm.*, 151 N.H. 123, 127 (2004). Thus, the harshest sanction the Supreme Court itself may impose is suspension without pay. *See generally Opinion of the Justices*, 140 N.H. 297, 302 (1995). Even then, it remains unclear whether the Supreme Court has "the authority to effectively remove a judge by unconditionally suspending her for an indefinite period of time." *In re Coffey's Case*, 157 N.H. 156, 188 (2008).

As a result, even if this case had resulted in findings against Introcaso on all charges after a public hearing, the JCC could not have recommended the immediate termination of Introcaso's judicial commission as a sanction to be imposed by the Supreme Court. Indeed, it may have been many months before the New Hampshire Legislature would have acted on this, had it chosen to do so. Part I, Article 38 of the New Hampshire Constitution provides: "It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." The JCC determined

4

that if Introcaso were allowed to retain her judicial commission, even while suspended, it would run counter to these important constitutional principles. Thus, the certainty that she would no longer hold a position of public trust was of paramount concern to the JCC.

This being said, the JCC is particularly troubled by certain aspects of Introcaso's misdeeds. The Committee feels some of these misdeeds must be addressed explicitly. In her formal answer to the *Partello* complaint, Introcaso claimed that her initial approval of her "longstanding friend" as a guardian *ad litem* ("GAL") was merely an oversight because she approved the marital master's recommendation "likely . . . without ever looking to see who he had appointed on page one." *See Judicial Conduct Committee's (JCC) Exhibit List* Exhibit 18. She acknowledged that "[b]asic orders" recommended by a master or referee "were usually signed without the most diligent review." *Id.* She asserted that "there simply isn't enough time [to] read every order coming out of Nashua Family Division in detail." *Id.* Throughout her answer Introcaso downplayed the significance of her approval of the recommendations made by the marital master in the case. For example, when Introcaso approved a recommendation from the marital master that Partello's failure to cooperate with the GAL may result in sanctions, Introcaso answered the complaint by writing "[t]hose are not my words and that was not my decision, it was the Master's decision recommended to me." *Id.*

Introcaso's response betrays a fundamental misunderstanding about the roles and responsibilities of a judge in approving recommendations of a marital master or referee. The New Hampshire Supreme Court has observed that marital masters do not exercise any independent judicial authority. Rather, the Court observed that the "final authority may be exercised only by an officer appointed in accordance with the State Constitution and invested with the constitutional incidents of judicial office." *Opinion of the Justices*, 128 N.H. 17, 19 (1986). The United States Court of Appeals for the First Circuit has rejected the notion that "reports of marital masters are not subject to any significant judicial review, but rather are routinely rubber stamped by the judge without reviewing the record." *Witte v. Justices of New Hampshire Superior Court*, 831 F.2d 362, 363 n.2 (1st Cir. 1987). Introcaso's cavalier attitude toward her constitutional responsibility was deeply disturbing and undermines the public confidence in the judicial process where masters and referees are involved.

Introcaso's lack of candor and cooperation with the JCC is also profoundly troubling. In her further answer to the *Partello* complaint, Introcaso minimized her relationship with Kathleen Sternenberg and asserted that "Attorney Sternenberg has served as a GAL in one, perhaps two cases of my own, only after the parties have requested her appointment and I made full disclosures on the record." *JCC Ex.* 18. In her formal *Answer and Defenses to Statement of Formal Charges Pursuant to New Hampshire Supreme Court Rule 40(9) and Request for a Hearing* (hereinafter "*Answer and Defenses*"), Introcaso asserted that her misconduct "is isolated to one case" and "[t]he alleged misconduct did not involve a pattern of misconduct and did not

5

occur over a significant period of time." *JCC Ex.* 22 ¶¶ 72, 73. The exhibits submitted by the JCC hearing counsel and stipulated to by Introcaso now show that between 2013 and 2018 Introcaso appointed (or approved marital master recommendations to appoint) Sternenberg in at least eight cases prior to the *Partello* matter. *JCC Ex.* 37.

More troubling, however, is Introcaso's dishonesty with respect to the alteration of the so-called "Apple Pay Order" and the "Fee Cap Order." *See Statement of Formal Charges* ¶¶ 12-13. When Introcaso submitted her Answer to the *Partello* complaint to the JCC on January 10, 2020, Introcaso knew full well that white out had been applied to these two Orders in the original court file. She made no mention of this alteration of the file in her January 10 Response to the *Partello* Complaint. When the JCC initiated an inquiry into the alteration of the court file, Introcaso answered by stating unequivocally, "I did not apply white out correction tape to cover up or obscure two court orders that I had issued on March 12, 2019." *JCC Ex.* 20 at 1. She went on to state, "I did not know how or when the March 12 Orders became obscured by white out correction tape." *Id.* Further, she asserted, "But I reiterate that I had nothing to do with my March 12 Orders being whited-out or obscured." *Id.* at 2. In the *Statement of Formal* Charges the JCC alleged that "[t]here is no evidence that anyone other than Judge Introcaso had whited out the Apple Pay or Fee Cap Order." *See Statement of Formal Charges* ¶ 44(e). In her *Answer and Defenses*, Introcaso denied that allegation. *Answer and Defenses* ¶44.

Only on the eve of the evidentiary hearing did Introcaso finally enter into a Stipulation that "she does not contest and thus pleads nolo contendere to the allegations in the [*Statement of Formal Charges*]." *Stipulation and Agreement* ¶ 1. Despite Introcaso's early unequivocal denials, she does not now contest that the evidence outlined in and supporting the *Statement of Formal Charges* established by clear and convincing evidence that she was responsible for applying white out to the original Apple Pay Order and Fee Cap Order. *Id.* ¶¶ 4(g), (h), 6. Rather than accepting responsibility for her actions, Introcaso had instead consistently cast blame for the altered file on two wholly-innocent, long-time, dedicated court employees.

By highlighting these aspects of the case, the JCC does not mean to downplay Introcaso's other serious violations of the Canons of Judicial Conduct as set forth in the *Statement of Formal Charges*.

In spite of Introcaso's numerous acts of malfeasance, the JCC feels that it has protected the public to the maximum extent of its ability by entering into the *Stipulation and Agreement*, which secured the immediate removal of Introcaso from office. With her acknowledgment of wrong-doing, the Committee further believes she is being held accountable to the public.

Introcaso has removed herself from judicial office by resigning on or about February 16, 2021 and has agreed to reimburse the Administrative Office of the Courts (AOC) for the

attorney's fees and expenses which the JCC incurred in the investigation, charging, and prosecutorial stages of this case pursuant to New Hampshire Supreme Court Rule 40 (13-A), *Expenses Relating to Discipline Enforcement*. The Committee accordingly makes no additional recommendations to the Supreme Court with respect to sanctions.

The Judicial Conduct Committee, by

*[signature]*
Mary E. Collins, Chair

Date: February 19, 2021