1                        STATE OF NEW HAMPSHIRE

2            9TH CIRCUIT COURT - FAMILY DIVISION - NASHUA

3
    KATHERINE ALBRECHT,              ) Family Division Case No.
4                                    ) 659-2019-DV-00341
                      Plaintiff,     )
5                                    ) Nashua, New Hampshire
             vs.                     ) November 15, 2023
6                                    ) 2:32 p.m.
    DANA ALBRECHT,                   )
7                                    )
                      Defendant.     )
8    _____ )

9
                            MOTION HEARING
10            BEFORE THE HONORABLE KEVIN RAUSEO
         JUDGE OF THE CIRCUIT COURT - FAMILY DIVISION
11
    APPEARANCES:

12
    For the Plaintiff:          Michael Fontaine, Esq.
13                              WELTS WHITE FONTAINE PC
                                PO Box 507
14                              Nashua, NH 03061

15   Pro Se Defendant:          Dana Albrecht
                                (Address Unknown)
16
    Also Present:              Catherine Denny, Esq.
17                              For Judge David King
                                Linda Smith, Esq.
18                              For Kathleen Sternenberg
                                Philip Waystack, Jr., Esq.
19                              Pro Se

20   Audio Operator:            Electronically Recorded
                                **Not Monitored**
21
    TRANSCRIPTION COMPANY:      eScribers, LLC
22                              7227 N. 16th Street, Suite 207
                                Phoenix, AZ 85020
23                              (800) 257-0885
                                www.escribers.net
24
    Proceedings recorded by electronic sound recording; transcript
25   produced by court-approved transcription service.



1              (Proceedings commence at 2:32 p.m.)

2              THE COURT:  Are we on the record?

3              THE CLERK:  This is the Nashua Family Court.  Can I

4    ask who just joined the call, please?

5              THE PETITIONER:  This is Katherine (indiscernible)

6    Albrecht.

7              THE CLERK:  All right.  Thank you.

8              THE COURT:  All right.  Good afternoon, everyone.

9    This is Judge Rauseo with the 9th Circuit Family Court.  This

10   is in the matter of Katherine Albrecht v. Dana Albrecht, Case

11   Number 659-2019-DV-341.  I'm going to take attendance.  I'm

12   going to start -- I'm going to call people's names.  So I

13   heard Ms. Albrecht on the line.  Is Attorney Fontaine on the

14   line?

15             MR. FONTAINE:  Yes, Your Honor.

16             THE COURT:  Okay.  Is Mr. Dana Albrecht on the line?

17             MR. ALBRECHT:  Yes, Your Honor.  And I'm having a

18   little trouble hearing you (indiscernible).

19             THE COURT:  Okay.  I'll move a little closer to the

20   phone.  Okay?  Can you hear better now, sir?

21             MR. ALBRECHT:  Yes.

22             THE COURT:  All right.  Is Attorney Denny on the

23   line?

24             MS. DENNY:  Yes, I'm on the line.  This is Catherine

25   Denny.  I think there just is a little bit of an echo behind



1  you when you're talking.

2         THE CLERK:  Someone has it on speakerphone.

3         THE COURT:  Yeah, I think someone has it on speaker.

4  So if someone has it on speaker, please take it off speaker.

5  Oh, someone just joined.  Okay.  So Attorney Denny's on the

6  line.  Is Judge King on the line?

7         MS. DENNY:  He will not be appearing.

8         THE COURT:  Okay.  Is Attorney Creegan on the line?

9         MS. DENNY:  She will not be present either.

10        THE COURT:  Okay.  Is.  Attorney Sternenberg on the

11 line?

12        MS. SMITH:  She is not, Your Honor.  Linda Smith on

13 her behalf.  She will not be appearing.

14        THE COURT:  Okay.  And Attorney Smith, you are the

15 counsel of record for Attorney Sternenberg?

16        MS. SMITH:  I am.

17        THE COURT:  Okay.  Is Attorney Waystack on the line?

18 Attorney Waystack?  Who just joined?  Is that Attorney

19 Waystack?  Okay.

20        MS. SMITH:  Sorry.  He was on the line.

21        THE COURT:  Excuse me?

22        MS. SMITH:  He was on the line with the clerk.

23        MR. FONTAINE:  I heard him on the line.

24        MS. SMITH:  Yeah.

25        THE COURT:  Okay.  We'll wait another second, see if



1  he joins again.  Okay?

2            MR. WAYSTACK:  So this is Phil Waystack, back on

3  behalf of myself.  I listened to you, Judge, and I took it off

4  speaker and promptly disconnected the line.

5            THE COURT:  Okay.

6            MR. WAYSTACK:  Sorry to be so clumsy.

7            THE COURT:  No, no.  Attorney Waystack's on the

8  line.  Is there anyone else on the line who has not identified

9  him or herself?  All right.  So we'll proceed.

10            So I scheduled this hearing.  Let me ask Mr.

11  Albrecht as well as Attorney Fontaine.  I got a decision from

12  the New Hampshire Supreme Court today, right around 1:30ish.

13  Did both of you get that Supreme Court order?  Start first

14  with Mr. Albrecht.  Start with Mr. Albrecht first.

15            MR. ALBRECHT:  Mr. Albrecht.  You would like me to

16  proceed, Your Honor?

17            THE COURT:  Yeah.  So Mr. Albright, did you get a

18  copy of the Supreme Court decision that was issued today?

19            MR. ALBRECHT:  Yes.

20            THE COURT:  Okay.  Attorney Fontaine, did you get a

21  copy of the Supreme Court decision that was issued today?

22            MR. FONTAINE:  Yes.

23            THE COURT:  Okay.  So I've scheduled this because

24  tomorrow is scheduled for a 30 minute offer of proof hearing.

25  We got -- I received three motions to quash yesterday, or I

1    think maybe one may have been Monday.  I received one today

2    from Attorney Waystack and so I asked to address this.  I also

3    got yesterday, after around 2:30 it was time stamped, I don't

4    think I saw it until after that, witness list for Mr. Albrecht

5    for 11 witnesses.

6           So what I'm going to do is I'm going to address the

7    motions to quash first.  Once I issue a ruling on the motion

8    to quash for the particular individual and the attorneys, you

9    may stay on the line, or you may disconnect whatever you

10   choose to do.  And then I'll address the witness list as well,

11   because like I said, we have a 30 minute offer of proof

12   hearing tomorrow, and I'm not going to have time to address

13   these issues in the time allotted, so.

14          I've reviewed the four motions -- I reviewed the

15   four motions to quash.  I also reviewed Mr. Albrecht's four

16   objections.  So I don't need people to restate, unless you

17   want to, the arguments, but I've read them.  I've also

18   reviewed the Supreme Court's decision from July 14th, 2023,

19   which the mandate issued on August 16th, 2023.  I reviewed

20   again the October 20th, 2023, Supreme Court order and the one

21   that was issued about an hour ago, November 15th, 2023.

22          So I'm going to first start with the motion to quash

23   because it's the one I received first.

24          MR. ALBRECHT:  Your Honor?

25          THE COURT:  Yes?



1          MR. ALBRECHT:  (Indiscernible)

2          THE COURT:  Go ahead, Mr. Albrecht.

3          MR. ALBRECHT:  I (indiscernible) there is a fifth

4  motion to quash that's still outstanding.  It would be Ms.

5  Albrecht's ex-parte motion to quash, Number 187 from March

6  28th, 2023.  It was ordered to be scheduled for a prompt

7  hearing within five days.  It was previously scheduled for

8  March 30, '23.  On that same day, I asked for it to be

9  rescheduled and we're now seven and a half months later so

10 that fifth motion to quash is still outstanding.

11         And just for the record, there's a motion to strike

12 Number 192 that's also still outstanding.

13         THE COURT:  So right now we're addressing --

14         MR. ALBRECHT:  (Indiscernible).

15         THE COURT:  -- we're addressing the witness list,

16 and the motions are last.  I'll take a look at 192 --

17         MR. ALBRECHT:  Okay.

18         THE COURT:  -- as well.

19         MR. ALBRECHT:  And I would respectfully ask that we

20 address my motion in limine prior to the motions to quash.

21         THE COURT:  The motion in limine to not take

22 judicial notice of the federal court proceeding?

23         MR. ALBRECHT:  Well, so they've got a lot of that

24 stuff in their motions to quash.  So I would question the

25 standing of attorneys from the executive branch even to be

1    here.   This is supposed to be a civil DV proceeding between

2    two private parties.   I don't believe Your Honor would have

3    jurisdiction to do the State's bidding in this proceeding to

4    affect the outcome and any separate federal civil rights

5    matter pending federal court.   And my view would be that would

6    be a violation of Article 77 separation of powers.

7               THE COURT:   Okay.

8               MR. ALBRECHT:   So in light of that, I would

9    respectfully request you do the motion in limine first and

10   then we can proceed from there.

11              THE COURT:   Okay.   So I do find Attorney Denny has

12   standing to represent Judge King and Attorney Creegan.   And so

13   the request to find that they don't have standing is denied.

14   As for the motion in limine, I'm not taking judicial notice of

15   a court proceeding that I don't have the file for.   This is

16   not my file.   However, to the extent they're commenting on

17   litigation that exists, you know, it doesn't have much --

18              MR. ALBRECHT:   Well, I would object to that.

19              THE COURT:   -- it doesn't have --

20              MR. ALBRECHT:   I would basically object to that

21   (indiscernible) request to be stricken.

22              THE COURT:   Okay.   What's the basis for your reason

23   to object to them mentioning that there was a lawsuit filed in

24   the federal district court?

25              MR. ALBRECHT:   Because I think they're trying to use



1    this proceeding to effect that outcome --

2              THE COURT:  Okay.

3              MR. ALBRECHT:  -- and that that's completely

4    inappropriate.

5              THE COURT:  All right.  And I would agree with that,

6    Mr. Albrecht.  I'm not considering the lawsuit as a basis to

7    deny the motion to quash.  What I am doing, Mr. Albrecht, and

8    why I scheduled this hearing today, is tomorrow's hearing is

9    of limited scope.  The Supreme Court was very clear in its

10   order from July 14th, 2023, when it said the December 2019

11   order is final, underlining final, and that their decision

12   affirming it is final and they, once again, they underlined

13   final.

14             And so this is a limited scope hearing as the

15   Supreme Court found in, once again, July 14th, 2023.  The

16   issue that's before this Court tomorrow is whether there's

17   good cause to be shown.  To determine, the trial court must

18   assess whether the current conditions are such that there is

19   still concern for the safety and well-being of the Plaintiff.

20   That's from part of the order from the Supreme Court.  So

21   that's the standard we're going by tomorrow, and that's the

22   standard on determining whether the motions of quash should be

23   granted.

24             So I'm going to address now the motion to quash from

25   Attorney Sternenberg.  I've read the objection.  I've read the

1    motion.  I'm going to give you, Mr. Albrecht, an opportunity

2    to, if you want to add anything in addition to what you wrote

3    in your objection.

4            MR. ALBRECHT:  Well, as you know, Your Honor, I only

5    received notice of this hearing at 3:30 last night, and I was

6    madly drafting pleadings.  So I don't see the issue of a

7    guardian ad litem who has direct knowledge of key issues in

8    this case, you know, such as Ms. Albrecht's fighting

9    allegations.  Key issues concerning the factual record of

10   Collinsville Bible Church.  And this whole DV is about

11   parenting time to begin with.  And I think a guardian is

12   pretty relevant to that.

13           And I'd certainly like to get Ms. Sternenberg's

14   testimony on why Ms. Albrecht would fear for her safety if she

15   was in Michigan, and I go within 2000 feet of Collinsville

16   Bible Church at any time.  I think she's had extensive

17   involvement with both of us in the past as well as the

18   children.  And (indiscernible) again, my position, this is all

19   about the children.

20           THE COURT:  Okay.  You done, Mr. Albrecht?

21           MR. ALBRECHT:  I believe so.

22           THE COURT:  Okay.

23           MR. ALBRECHT:  I'm sure I'll think of something else

24   later.

25           THE COURT:  Attorney Fontaine, you haven't filed any



1     objections yet and so I'm going to give you an opportunity to

2     comment on the motion to quash Attorney Sternenberg's

3     subpoena.

4              MR. FONTAINE:   I agree with the arguments raised by

5     her attorney that I don't believe that Attorney Sternenberg

6     could provide any relevant information to the issue that you

7     will be deciding tomorrow.   And therefore, I don't think that

8     she should be required to testify.

9              THE COURT:   Okay.

10             MR. ALBRECHT:   Rebuttal, Your Honor.

11             THE COURT:   Sure, Mr. Albrecht.   Go ahead.

12             MR. ALBRECHT:   Ms. Albrecht specifically raised the

13    issue of Sternenberg as GAL in her most recent DV pleading.

14    She's repeatedly asked for her re-appointment, and she has

15    made her allegations presently (indiscernible) against all

16    evidence and testimony in the divorce case that -- that would

17    involve Ms. Sternenberg, so --

18             THE COURT:   What specifically --

19             MR. ALBRECHT:   -- I mean, unless she's willing to

20    narrow down her allegations, which is basically -- I believe

21    you've already pre-decided you accept the order.   So I'm not

22    sure what effect tomorrow would have but given we're having a

23    hearing and we're supposed to address everything in the

24    divorce case, according to Ms. Albrecht, that would include

25    Ms. Sternenberg.

1          THE COURT:  Attorney Fontaine, do you want to

2  respond to Mr. Albrecht's statement?

3          MR. FONTAINE:  Yes, sure.  Just very briefly.  My

4  understanding is that Attorney Sternenberg has had no

5  involvement since the issuance of this original domestic

6  violence order, has not had any further involvement in this

7  case since prior to that.  And therefore, I don't know that

8  she would be able to provide any relevant information on the

9  issues before the Court, which is relative to whether the

10  Court grants our request for an extension of the domestic

11  violence protective order.

12          THE COURT:  What about the -- no.  Hold on, Mr.

13  Albrecht.

14          Attorney Fontaine, what about the claim that your

15  client intends to offer evidence tomorrow regarding Ms.

16  Sternenberg's investigation, findings she made.  What's your

17  response to that?

18          MR. FONTAINE:  My client will not be presenting any

19  evidence or argument relative to Attorney Sternenberg.  I

20  don't know exactly where that's coming from.  I don't have

21  that pleading in front of me, but that is not part of any

22  presentation that that will occur tomorrow.

23          THE COURT:  Okay.  Mr. Albrecht?

24          MR. ALBRECHT:  Again, I'm not actually

25  (indiscernible) to the presentation that will occur tomorrow



1     then because it just says evidence and testimony in the

2     divorce case. And given that Your Honor has already extended

3     the hearing to a year, I would view any further presentation

4     by Ms. Albrecht as amendments that I have not been noticed on.

5     THE COURT: All right. So I'm granting the motion

6     to quash for Attorney Sternenberg, she has not been involved

7     in this case for years. Mr. Albrecht --

8     MR. ALBRECHT: I (indiscernible) disagree, Your

9     Honor.

10     THE COURT: Mr. Albrecht -- Mr. Albrecht --

11     MR. ALBRECHT: She precedes the mandate.

12     THE COURT: Mr. Albrecht, hold on, please. This is

13     not -- this is your opportunity to listen, and then you can

14     speak, okay, sir?

15     MR. ALBRECHT: All right.

16     THE COURT: So I agree that Attorney Sternenberg

17     does not have any information to determine the, that which is

18     what I'm required to find, any reliable evidence as to the

19     current conditions of such that the Plaintiff's safety and

20     well-being may be a concern. So I'm granting the motion to

21     quash, however, any attempt to bring in evidence regarding the

22     divorce or the GALs investigation will be stricken and will

23     not be allowed in, with the exception that the Court can

24     consider, under Supreme Court precedent, the findings by Judge

25     Derby that were issued in the initial order. And so to that

1  extent, both parties may comment on that.

2  So now I'll let you be heard, Mr. -- hold on.  I'm

3  going to let you be heard, Mr. Albrecht.

4  MR. ALBRECHT:  Okay.

5  THE COURT:  I'm going to let you be heard on my

6  ruling.

7  MR. ALBRECHT:  So Your Honor, in the first instance,

8  Ms. Sternenberg is involved in this case as recently as

9  September 1st, 2023, when she was served with a mandate from

10  the Supreme Court.  In the second instance, the conditions

11  involve whether they are the same now as they were then back

12  in the past.  And while Ms. Sternenberg may not be able to

13  testify to what they are now, she can certainly testify to

14  what they were then.

15  THE COURT:  So as I indicated, Mr. Albrecht, reading

16  from the Supreme Court's July 14th, 2023, order, where it

17  says,  "to determine good cause, the trial courts must assess

18  whether the current conditions are such that there is still

19  concern for the safety and well-being of the Plaintiff."  So

20  that's the standard that I'll be operating under in

21  determining whether we're going to extend this order.

22  And so I'm going to take the I can consider by

23  Supreme Court precedent the factual findings made in the

24  initial case as well as the extension, because those are

25  findings in our final as the Supreme Court has stated in the

1   same decision from July 14, 2023.  And so I'm going to grant

2   the motion to quash Attorney Sternenberg's subpoena.  All

3   right.

4               Yeah, go ahead, Mr. Albrecht.

5               MR. ALBRECHT:  Yes, Your Honor.  You've already

6   decided to extend the order, and I'd like to know what your

7   jurisdiction was to do that.

8               THE COURT:  Mr. Albrecht, I've made a ruling

9   regarding a motion to quash.  I have not decide -- I decided

10  the extension based on the pleadings and the objection that

11  was filed back in February.  What happens tomorrow has not

12  been determined yet.  So my jurisdiction is under 173(B) and

13  my jurisdiction is under the Supreme Court's recent orders,

14  both in October as well as today, which gave this trial court

15  the ability to schedule -- "the trial court's decision in any

16  other proceeding the trial court deems necessary to resolve

17  the issues before it."

18              So the Supreme Court has given this Court the

19  authority to make these decisions within 30 days of October

20  20th, 2023.  That is not a suggestion.  A Supreme Court order

21  is a mandate.  And this trial court, being a court of inferior

22  jurisdiction, is required to comply with the Supreme Court's

23  orders.  And that's what I'm doing.  So my ruling on Attorney

24  Sternenberg's remains the same.  All right.

25              Next issue is on the motion to quash Judge King's



1  subpoena.  So once again, Mr. Albrecht, I've reviewed both the

2  motion and the objection.  Do you want to add any additional

3  comment to your objection, sir?

4           MR. ALBRECHT:  So whether I'm receiving a fair trial

5  is always relevant.  Judge King's deposition is directly

6  relevant to whether I'm receiving a fair trial.  His

7  deposition discusses my case.  His deposition, one moment, or

8  the piece of it that I have, because he only has his excerpt.

9  One moment, Your Honor.

10          THE COURT:  Sure.  Take your time, sir.

11          MR. ALBRECHT:  Okay.  So at page 26, lines 12 to 16,

12  Judge King was asked, question, "Did you tell the Judicial

13  Conduct Committee?"  He replied, "Did I tell the judicial

14  Conduct Committee what?"  He answered about what we'd found

15  regarding the transcript in the Albrecht case.  And he replied

16  that, yes.  You know, he certainly has personal knowledge of

17  the case.  That's certainly clear from the deposition.

18          If you look at the exhibits and my requests for

19  findings that I submitted for this hearing, you will note --

20  hang on.  Let me find the exhibit list.  So Judge King's

21  testimony would be directly relevant to just about everything

22  in the exhibit list you received today.  It would be relevant

23  to the 11/12/2020 email exchange between eScribers and the New

24  Hampshire Judicial Branch.  Maybe not directly relevant to the

25  email eScribers wrote me, but his testimony on the November

1    13th, 2020, email that Judge King wrote to Master DalPra is

2    directly relevant.  It discusses -- the email is directly

3    about evidence in my case.

4            The fact that Judge King was aware that the Judicial

5    Conduct Committee dismissed Mr. DalPra's complaint on February

6    16th, 2021, is directly relevant to this case and whether I'm

7    receiving a fair hearing.  When you look at the December 1st,

8    2021st New Hampshire Supreme Court invoice, with the first

9    version of that, it's inaccurate because of Judge King.  When

10   you go to the December 10th, 2021, New Hampshire Supreme Court

11   order, that order discusses the transcripts being accurate.

12           When you go to 12/15/2021, the Supreme -- there's a

13   Supreme Court invoice to purchase a second transcript.  The

14   police report, Exhibit 8, discusses that there's a --

15   according to eScribers, New Hampshire Judicial Branch policy

16   that you leave that out and I think Judge King should testify

17   as to the accuracy of that.

18           You've got a whole investigation from a public

19   integrity unit as Exhibit 9 4/22/2022, they went down a rabbit

20   hole because they didn't have access to Judge King's email or

21   deposition.  I think Judge King should testify about why

22   that's the case.

23           You've got the deposition itself, which we only have

24   a partial or redacted copy of, (indiscernible) is about my

25   case, how can I have any semblance of due process if I don't

1   see the whole thing?

2          You've got, finally, after that, after the Supreme

3   Court has already issued prior orders in this appeal, they

4   found that Master DalPra committed judicial misconduct.  But

5   that was long after prior orders that even Judge Derby based

6   his first order on.  And that was the order of events here is

7   significant.  And it's not until December 20th, 2022, over two

8   years later, and that's Exhibit 12 that I give you today, that

9   we even have a complete 11/6/2020 transcript.

10          And Judge Curran based the first one year extension

11  off of what happened on 11/6/2020.  And if we don't have an

12  accurate version of that until 2022 then how could even Judge

13  King's first one year extension have merit?  He based it on

14  inaccurate information.  Two years later, we have accurate

15  information and Judge King should testify about that.

16          His email discusses specifically -- he wrote an

17  email on November 13th, 2020, seven days after the hearing

18  that's just come to light.  He writes, Bruce, I'm sorry to

19  have to be writing this email.  He discusses on November 6th,

20  2020, you had what I believe was a telephonic hearing in what

21  was obviously a very difficult matter, Albrecht and Albrecht.

22          So when I go to Judge King's motion to quash, you

23  look at some of the claims here.  The documents requested are

24  not relevant to any claims or defenses.  Well, the Supreme

25  Court said they were highly relevant in its December 10th,

1    2021 order.

2           In terms of time, we're seven and a half months out

3    from when RSA 173 says we're supposed to have a hearing.  And

4    in terms of in a reasonably short period of time, I did it as

5    quickly as I could.  I mean, I'm certainly not the reason

6    we're holding a hearing seven and a half months after you

7    already decided to grant Ms. Albrecht's one year extension and

8    it was supposed to be held within 30 days.

9           So I think her argument in paragraph 3 is not merit,

10   has no merit, 2 or 3, it has no merit.  Again, (indiscernible)

11   that they're not relevant, they're directly relevant.  They're

12   about this case.  The, I think, (indiscernible) paragraph 5,

13   that Judge King has no personal knowledge of any claim or

14   defense by either party in this matter is ludicrous when he's

15   writing emails about it that -- not only was he writing emails

16   about it, they're very substantive.  They're not even

17   administrative in nature.  They substantially have affected

18   the adjudication of this case.  Their court -- excuse me,

19   adjudicatory in nature under Article 8 of the State

20   Constitution.

21          I'll admit, at paragraph 6, supervising caseload

22   management, I'd like to ask Judge King why, if he supervises

23   caseload management, why we're having a hearing seven and a

24   half months later when the statute says 30 days.  It's his job

25   to supervise caseload management; he should speak to that.

1    And implementing established policies and orders.  I mean, I

2    think Judge King needs to testify about, again, why we're

3    having an October -- as far as hearing is seven and a half

4    months later.  Isn't he in charge of that?

5            The claim in paragraph 5, and the subject matter of

6    that deposition, does not relate to pending (indiscernible)

7    here.  It directly does.  There's a pending claim or defense

8    that I'm not receiving a fair trial under Part 1, Article 38,

9    and I'm not receiving a fair trial under the 14th Amendment.

10   The case law for that, I would cite, for the State would be

11   (indiscernible).  For federal would be State v.

12   (Indiscernible).

13           And again, I would remind the Court that the federal

14   due process requirements are an objective standard of whether

15   under a realistic appraisal of psychological tenets using

16   human weaknesses.  The issues of such a risk of -- a risk,

17   that this is a risk, of bias or prejudgment that the practice

18   must be forbidden if the guarantee of due process is to be

19   adequately implemented.  Judge King needs to testify as to

20   whether that's happening here.  It's not.  My position is it's

21   not and his testimony is critical to address that issue.

22   Again, I would ask that paragraph 9 essentially be stricken as

23   irrelevant.  And that's my commentary on his motion to quash.

24           THE COURT:  Thank you, Mr. Albrecht.

25           Attorney Fontaine, do you have anything you want to

1   say, sir?

2           MR. FONTAINE:  The same position I took with regards

3   to the other one.  That any potential testimony of Judge King

4   or -- is not relevant to the very limited issue that you are

5   deciding on remand tomorrow.

6           THE COURT:  Okay.

7           Attorney Denny, do you have anything you want to add

8   to your motion to quash?

9           MS. DENNY:  Only that I appreciate that you

10  explained the limited scope hearing tomorrow and that I think

11  it just further clarifies that Judge King's, or the

12  information that Mr. Albrecht is seeking, doesn't have any

13  relevance to the limited scope that's going to be raised

14  tomorrow.

15          MR. ALBRECHT:  Is Attorney Denny, excuse me if I'm

16  out of order, aware of the Supreme Court order that came in

17  that is asking for a fully developed factual record?  I think

18  this is critical to the Supreme Court's request for a fully

19  developed factual record.

20          THE COURT:  I don't agree, Mr. Albrecht.  Given what

21  the scope of tomorrow's hearing on, Judge King does not have

22  any evidence regarding the nature of whether there is a

23  current need for an extension or a restraining order.  The

24  testimony you talk about were regarding of marital orders that

25  were vacated by the Supreme Court, or actually, by myself,

1    actually.  The Supreme Court vacated the DV order, and so we

2    had a hearing in February of 2022.  I issued an 11-page

3    decision after that order, then issued a multi-page motion to

4    reconsider.  That has been affirmed by the Supreme Court.  And

5    so Judge King has no offer to that.

6           With respect to the hearing being delayed, Mr.

7    Albrecht, I direct your attention to the October 20th, 2023,

8    order from our New Hampshire Supreme Court, and I'm quoting,

9    all the trial court -- "Although the trial court scheduled a

10   hearing as provided under the statute, the Defendant filed his

11   notice of appeal the day before the hearing.  The trial court

12   understandably interpreted the Defendant's appeal to divest it

13   of continuing jurisdiction, prompting the Court to cancel the

14   hearing."

15          Judge King has nothing to offer regarding that, as

16   the Supreme Court has already weighed in on that issue.  So

17   the motion to quash Judge King's subpoena is granted.  He does

18   not need to appear tomorrow.

19          We'll next address the motion to quash Attorney

20   Creegan.  Mr. Albrecht, what do you want to be heard on that,

21   other than your objection, sir, which I do have right in front

22   of me?

23       (Pause)

24          THE COURT:  Mr. Albrecht?

25          MR. ALBRECHT:  Yes.



1              THE COURT:  Do you have anything to offer?

2              MR. ALBRECHT:  Oh, you were waiting on me.

3              THE COURT:  Yes.

4              MR. ALBRECHT:  I'm sorry.  I didn't realize that.

5    So again, getting back to the key issues of whether

6    (indiscernible) the trial.  Your Honor received a motion to

7    take judicial notice of a Fifth Circuit Court of opinion and

8    lead relevant case law.  Rules for judicial notice are

9    "shall".  I construe "shall" as mandatory.  Can you let me

10   know if you've reviewed that case and the relevant law review

11   articles?

12             THE COURT:  I have not, sir.

13             MR. ALBRECHT:  So when did I file that?  So not only

14   did Ms. Albrecht not object --

15             THE COURT:  So no --

16             MR. ALBRECHT:  One moment.

17             THE COURT:  No.  Mr. Albrecht, I want you to address

18   the objection to the motion to quash from Attorney Creegan.

19             MR. ALBRECHT:  This is directly relevant because I

20   cite back to case law.  Yes.  So Index 222, 1024, 2023.  This

21   is directly relevant if Your Honor has not yet reviewed that.

22   And Attorney Fontaine didn't even object.  And it's been on

23   your desk how long now?  And that's directly relevant to

24   Attorney Creegan's motion to quash in my objection.  So I

25   don't believe Your Honor is prepared to address that today.

1              MR. FONTAINE:  Judge, this is Mike Fontaine.  I

2    would like a clarification from Mr. Albrecht as to what index

3    number he's referencing again?

4              THE COURT:  222.

5              MR. ALBRECHT:  One moment.  I have it up here.

6    Index number 222.

7              THE COURT:  So I disagree with your --

8              MR. FONTAINE:  Thank you.

9              THE COURT:  -- I disagree with your opinion, Mr.

10   Albrecht.  Please proceed.

11             MR. ALBRECHT:  One moment, Your Honor.

12             THE COURT:  Yes.  You may take a moment, sir.

13             MR. ALBRECHT:  So omitting some internal citations,

14   the Fifth Circuit has recently observed many divorce lawyers

15   routinely recommend to pursue the civil protector or

16   protection orders for clients in divorce proceedings as a

17   tactical leverage device.  Civil protective orders are

18   deployed is, quote, "an affirmative element of divorce

19   strategy.  That's because civil protective orders can help a

20   party in a divorce proceeding to secure favorable ruling on

21   critical issues such as marital and child support, exclusion

22   from marital residence, and property disposition.  Protective

23   orders can also be a powerful strategic tool in custody

24   disputes.  This makes civil protective orders a tempting

25   target for abuse.



1    "Judges have expressed concern with the serious

2    policy implications of permitting allegations of domestic

3    violence to be used in divorce proceedings, citing no --

4    citing another case, noting the growing trend to use

5    protection orders as tactical weapons in divorce cases and for

6    good reasons.  Not all parties to a divorce are about using

7    protective orders, not for their intended purpose, but solely

8    to gain advantage in a dissolution.

9          "Anyone who is willing to commit perjury and spend

10   months or even years planning to file a domestic violence

11   complaint in an opportune moment in order to gain the upper

12   hand in the divorce proceedings.  So a plaintiff willing to

13   exaggerate past incidents or even commit perjury and have

14   access to a responsive support group, a sympathetic court, and

15   eliminating immediate relief."  Your Honor, can you --

16         "Moreover, these concerns are exacerbated by the

17   fact that judges are too often ill-equipped to prevent abuse.

18   Family Court judges may face enormous pressure to grant civil

19   protective orders and no incentive to deny them.  For example,

20   family court judges may receive mandatory training, which they

21   warrant about the unfavorable (indiscernible) results, if they

22   deny requests for civil protective orders."

23         As one judge has noted in newspaper headlines be

24   death to a municipal court judge's career.  So the prospect of

25   an unfavorable newspaper headline is a frightening one.  To

www.escribers.net | 800-257-0885

1   quote another judge, "Your job is not to become concerned

2   about all the Constitutional rights of the defendant they're

3   violating if you grant a restraining order.  Throw them out in

4   the street, give him the clothes on his back, and tell him

5   deal with it."  Yet another judge said, "If there is any doubt

6   in your mind about what to do, you should issue the

7   restraining order."

8           So what's key here, Your Honor, is you already

9   decided to issue the restraining order.  You already did.  And

10  I'm not sure what the burden is to undo that.  I'd be

11  (indiscernible) to say that if there's -- if you have any

12  doubt, you have to issue it.  It's a complete reversal of

13  innocent proven guilty.  That's not a fair trial in a civil

14  proceeding.

15          What's other key here is training.  What's been

16  subpoenaed from the officer of the courts.  And it would be,

17  again, my position these are also government records under

18  Part 1, Article 8, as they directly relate to adjudication of

19  cases is I need to see if you even have any confidence in the

20  future here at all that I'm receiving anything close to a fair

21  trial given you've already pre-decided to extend the order.

22  And if you could explain what good -- what does good cause

23  mean, Your Honor?  What's standard for good cause?

24          THE COURT:  So Mr. Albrecht, I direct your attention

25  once again to the Supreme Court of New Hampshire, which issued

1    an order affirming my extension that I issued on February

2    25th, 2023 -- 2, sorry '22.  The first page of that, sir, the

3    Supreme Court did a whole paragraph as to what standard the

4    court is bound by so.  And they issued that and then they said

5    that decision mandate back in August 16th.

6              Mr. Albrecht, you should also note, sir, that the

7    rule of evidence that you cite, you only cited a portion of

8    it, sir.  So I want to direct your attention to the entire

9    rule.  So when it comes to judicial notice of law, sir, it

10   says the court may take judicial notice of law, including

11   decisional, Constitutional, and public statutory law.  It only

12   says when mandatory shall the court take judicial notice.  But

13   you haven't indicated, sir, that it's mandatory for me to take

14   judicial notice of the case from the Fifth Circuit, which is

15   not binding precedent on the New Hampshire state court.

16             And our First Circuit decision, unless it's on

17   federal Constitutional matters, what may be binding on a state

18   court as well, so you're directed to the Supreme Court's

19   decision on July 14th, 2023, as your guidance that you need as

20   to what good cause means.  Okay, Mr. Albrecht?

21             MR. ALBRECHT:  Could you repeat the last sentence?

22             THE COURT:  So you're directed to look at, sir, July

23   14th, 2023, Supreme Court decision in your -- in this case --

24             MR. ALBRECHT:  Okay.  One moment.  Let me find that,

25   Your Honor.



1          THE COURT:  Sure.

2          MR. ALBRECHT:  What docket is that?  Appellant

3     docket?

4          THE COURT:  I don't know, Mr. Albrecht.  It's the

5     July -- it's a July 20th -- July 14th, 2023, order.  It's

6     222 -- 20220284.  So --

7          MR. ALBRECHT:  Okay.

8          THE COURT:  I'm going to -- I'm going to hear --

9     hold on.  First, I'm going to hear -- while you read that,

10    sir, I'm going to hear from Attorney Fontaine, then Attorney

11    Denny.

12          Attorney Fontaine?

13          MR. FONTAINE:  Thank you.  Once again, Judge, same

14    position.  The testimony of Ms. Creegan has no relevance to

15    the very limited issue that you are deciding tomorrow in the

16    hearing scheduled for tomorrow.  And therefore, I don't

17    believe that her testimony should be required.

18          THE COURT:  Attorney Denny?

19          MS. DENNY:  Yes.  Just that Mr. Albrecht hasn't

20    provided any more justification for why those materials are

21    relevant to the hearing tomorrow.  And the (indiscernible)

22    case really doesn't support what he is hoping that it will.

23    It doesn't -- it's completely irrelevant to the situation.

24          THE COURT:  Mr. Albrecht, do you have anything else

25    to add on the motion to quash the subpoena for Attorney

1   Creegan?

2           MR. ALBRECHT:  Your Honor, whether I'm receiving a

3   fair trial under Article 35, whether I'm receiving equal

4   protection under Article 10 and the State Constitution, and

5   whether I receiving equal protection and due process under the

6   14th Amendment of the U.S. Constitution is always relevant.

7           THE COURT:  Anything else, Mr. Albrecht?

8           MR. ALBRECHT:  I would like to make an oral motion

9   for instruction from you what constitutes good cause because I

10  don't know what that means when you've already decided against

11  me.

12          THE COURT:  Mr. Albrecht, good --

13          MR. ALBRECHT:  So I'd like to know what is properly

14  before the Court tomorrow?

15          THE COURT:  So what's proper before the Court is --

16          MR. ALBRECHT:  And when you say narrow, what

17  pleadings?

18          THE COURT:  So Mr. Albrecht, good cause is defined

19  in the Supreme Court order that I told you about, sir.  So you

20  can read that to determine what good cause is.  Consistent

21  with the --

22          MR. ALBRECHT:  Can you direct me to the case --

23          THE COURT:  -- hold on Mr. Albrecht.

24          MR. ALBRECHT:  -- correct case where it says, "good

25  cause"?



1          THE COURT:  I'll read it to you.  "To determine

2   whether good cause exists, the trial court must assess whether

3   the current conditions are such that there is still concern

4   for the safety and well-being of the plaintiff."  They cite

5   MacPherson v. Weiner.  "In its assessment, the trial court

6   must review the circumstances giving rise to the original

7   protective order and any violation of the order.  The trial

8   court should also take into --"

9          MR. ALBRECHT:  Well, the circumstances of the -- I'm

10  sorry, Your Honor.

11          THE COURT:  You cut me off, Mr. Albrecht.

12          MR. ALBRECHT:  But the circumstances --

13          THE COURT:  Hold on, Mr. Albrecht.

14          MR. ALBRECHT:  -- gave rise.

15          THE COURT:  Hold on, Mr. -- Mr. Albrecht, I gave you

16  the courtesy of speaking without cutting me off.  Please do

17  the same thing, sir.  Okay?  Thank you.  "The trial court

18  should also take into account any present and reasonable fear

19  by the plaintiff, whether the trial court determines that the

20  circumstances are such that without a protective order, the

21  plaintiffs safety and well-being would be in jeopardy, good

22  cause warrants an extension."  That's from a decision in this

23  case affirming the extension that I issued in February of

24  2022.  That's the standard we're going by for tomorrow, Mr.

25  Albrecht.

1          MR. ALBRECHT:  So what's the standard for her having

2   any cause to fear for her physical safety?

3          THE COURT:  Okay.

4          MR. ALBRECHT:  What are the objective standards for

5   that?

6          THE COURT:  Okay.  Well, sir, you can read the

7   language what the Supreme Court wrote.  You want any further

8   guidance; you can hire a lawyer.  I probably won't find one by

9   tomorrow, sir, but I'm not going to explain what each word

10  means to you, sir.  That's not my responsibility.  My

11  responsibility is to follow the law directed by the Supreme

12  Court.  And I will take into consideration any present and

13  reasonable fear by the Plaintiff.  That's an objective person

14  standard.

15          MR. ALBRECHT:  Okay.

16          THE COURT:  All right.  So I'm going to grant the

17  motion to quash Attorney Creegan's subpoena.  She doesn't need

18  to appear tomorrow.  The last one is Attorney Waystack's

19  motion to quash.

20          Attorney Waystack, you were patient, sir.  So do you

21  want to offer anything on your motion?

22          MR. WAYSTACK:  Sure.  Just a couple things, Judge.

23  I have read Mr. Albrecht's response.  I just want to call two

24  things to your attention.  In paragraph 4, Mr. Albrecht has

25  stated that I have personal knowledge about the facts of his

1   case, and he includes a give-and-take a bit, question and

2   answer, on the Judge Introcaso, former Judge Introcaso case.

3   In that case, Your Honor, I was retained by the Judicial

4   Conduct Committee to prosecute, and Mr. Albrecht's case was

5   one of seven cases wherein Judge Introcaso appointed Kathleen

6   Sternenberg as a guardian.  The issue there was that Kathleen

7   Sternenberg was on Judge Introcaso's recusal list.

8           I learned nothing about the facts of Mr. Albrecht's

9   case.  I've never met Mr. Albrecht.  I've never spoken with

10  Mr. Albrecht, nor Ms. Albrecht, for that matter.  And so the

11  reference in paragraph 4 of Mr. Albrecht's response really

12  does not shed any light on the issue.

13          More importantly, in the response in paragraph 5 of

14  Mr. Albrecht's response, he says I have personal knowledge of

15  his case through Judge King's deposition, and he mentioned it

16  earlier, page 26, lines 12 through 16.  He lays it out in the

17  paragraph.  Those are not my questions and answers.  Those are

18  the questions posed by the attorney for former Master Bruce

19  DalPra.  And so he's attributing something to me that I didn't

20  say.

21          But the simple fact of the matter is I also

22  prosecuted the former Master DalPra.  Again, I didn't get into

23  any of the facts in Mr. Albrecht's case.  More importantly, my

24  understanding, based on the caption of this case, Judge, is

25  that it's a continuation of a domestic violence order.  I know

1  absolutely zilch about that.  And so the final thing I'll say

2  is, so I would as much as I'd like to go down and hear you

3  handle this case, Judge, I really -- I don't think I should

4  appear tomorrow.

5          And moreover, and importantly, this subpoena to me

6  was a subpoena duces tecum.  And I have no intention, unless

7  you order otherwise, of turning over the deposition of Judge

8  King at the DalPra judicial conduct hearing matter or

9  deposition.  That -- there was about two or three sentences of

10  that that were going to be used at the judicial conduct

11  hearing in Judge DalPra.  The rest of the deposition, it was

12  totally redacted, that deposition is not in the public domain

13  at all.  And I see absolutely no reason that I should be even

14  be required to appear or to produce the King deposition, which

15  was on wholly unrelated matters in order for Mr. Albrecht to

16  use it at his domestic violence hearing tomorrow.

17          THE COURT:  Okay.  Mr. Albrecht?

18          MR. ALBRECHT:  So if I can tease apart a couple of

19  different things that Mr. Waystack said.  First, a correction,

20  and I don't think he'll disagree with me.  I think it was

21  actually either nine or eight, nine or ten cases, depending on

22  how you count.  So just to kind of run through those to be

23  specific.  The first is Merrifield v. Cox, 657-2011-DM-00565

24  and Sobell v. Sobell, 659-2013-DM-00848, Crawford v Crawford,

25  226-2008-DM-00525, Covart v. Covart, 659-2015-DM-00463.  Then

1   Albrecht v. Albrecht, 659-2016-DM-00288.  Yaitras v. Yaitras,

2   659-2016-DM-00332, Campbell v. Partello, 659-2018-DM-00702.

3   Then the next one or two related cases Loudermilk v.

4   Montgomery.  Morell v. Montgomery, it's the same.  Montgomery,

5   659-2015-DM-00185, 659-2019-DM-00383.  And last, but not

6   least, Ausiaikova v. Meckel, 659-2019-DM-00414.  Appeal on

7   that is 2020-0160.

8          I do have some concerns there, particularly February

9   19th you've got trial orders where Hamblett & Kerrigan is

10  fully aware of the conflict and Julie Introcaso is approving

11  the fee increases.  And (indiscernible) v. Master DalPra and

12  yourself are all aware this is going on even -- and I believe

13  you also served as counsel for, or happened to encounter it

14  also, in Loudermilk in Montgomery.

15         So I also have to question, now that she's no longer

16  paying you, why she's getting the pro se treatment in the

17  recent hearings where she's appeared before you.  And I would

18  ask you to take judicial notice of hearings.  And this is

19  about equal rights and equal protection and equal access for

20  pro se litigants.  And I just want to make sure that we're

21  both getting treated the same, given that I was never your

22  client before appearing before you and she was your client

23  before, and now she's appearing before you.  And I just want

24  to make sure we're getting the same treatment.  If you give me

25  a moment, I can get the dates of those hearings.

1           THE COURT:  That's not relevant, Mr. -- Mr.

2    Albrecht, that's not relevant to this case, sir.  Do you have

3    anything you want to add regarding Attorney Waystack?

4           MR. ALBRECHT:  I would respect -- well, he said

5    there were seven, and I said there were nine or ten based on

6    how we're counting.  I'm hoping that there'll be something we

7    can reach an agreement on, but on that.  And then, I think the

8    crux of the matter here though, as I put in his -- in my

9    objection.  I certainly don't require his physical appearance.

10   I'd be more than happy to have him appear remotely.  But I

11   think the crux of the matter is the subpoena duces tecum.

12   He's got the complete, unredacted deposition.  The deposition

13   is about my case.  It's specifically about my case.  It's

14   specifically about how Judge King handled my case.  If you're

15   denying me access to how Judge King handled my case, that

16   strikes to the heart of the matter of whether I'm receiving a

17   fair trial under either Article 35 of the State Constitution

18   or Article 14 of the U.S. Constitution.  And again, strikes to

19   the heart to the respective standards for those in Tapply v.

20   Zukatis and Caperton v. AT Massey Coal, and whether I'm

21   getting a fair trial, sir, is always relevant.

22          THE COURT:  Anything else, Mr. Albrecht?

23          MR. ALBRECHT:  I'd just like to hear if Mr. -- on

24   the narrow issue of whether there's seven or nine if Mr.

25   Waystack will go with my view on that because I completely

1   don't -- disagree.  And if Mr. Waystack also, sort of, with --

2   we just agree to disagree that the crux of the matter of the

3   subpoena is the duces tecum second part, because if he were to

4   email me a PDF, then -- I think he's familiar with this, he

5   may not have done the questioning, but he certainly -- he was

6   there when it was taken for the whole thing.  Would that be

7   correct, Mr. Waystack?

8           MR. WAYSTACK:  I'm not going to respond directly to

9   your questions, Mr. Albrecht, unless the Judge orders me to do

10  so.

11          THE COURT:  No.

12          MR. WAYSTACK:  This is a hearing before the Court.

13  This is not a interrogatory between you and me.

14          THE COURT:  I agree with Attorney Waystack, so no,

15  Mr. Albrecht.  This is your turn to listen, sir.  You've been

16  given extensive amount of time to lay forth your position.

17  I'm granting the motion to quash the subpoena duces tecum.

18  Attorney Waystack does not need to appear tomorrow or provide

19  any documents.  The limited scope of tomorrow's hearing is

20  whether there's current -- whether there's good cause to

21  extend the restraining order.  Mr. Waystack, based on your

22  proffer, has no reliable evidence that's going to go to that.

23  And so the motion to quash is granted.  Thank you, Mr.

24  Waystack -- Attorney Waystack.

25          MR. WAYSTACK:  Thank you, Your Honor.



1            THE COURT:  All right.  Attorney Fontaine, you had

2    the issue with one of your employees, sir?

3            MR. FONTAINE:  Yes.

4            THE COURT:  You want to be heard on that?

5            MR. FONTAINE:  Judge, just -- yes, please.  If I

6    could be heard briefly.  We filed an ex parte motion to quash

7    prior to the originally scheduled hearing.  That was to be

8    addressed at the hearing, or as I recall, the order.  The

9    Supreme Court's order that was issued remanding this matter to

10   you occurred, I think, at this point over 20 days ago.  Mr.

11   Albrecht has never filed an objection to that motion.  I think

12   the reasons outlined in my motion support your quashing the

13   subpoena of my employee Wendy Borrun as specifically there's

14   been no objection filed by --

15           THE COURT:  Okay.  All right.

16           MR. ALBRECHT:  I disagree, Your Honor.

17           THE COURT:  Yes.

18           MR. ALBRECHT:  I can find the docket if you want.

19           THE COURT:  Yes.  Go ahead, sir.

20           MR. ALBRECHT:  I filed an objection Index 186, and

21   you ordered that the case should be scheduled for a prompt

22   hearing with Petitioner and Respondent present on the hearing

23   on the ex-parte motion and any orders issued.  It's scheduled

24   for March 30th, 2023, at 11:30.  You have the motion and the

25   objections.

1                MR. FONTAINE:  I've never seen that objection.

2                MR. ALBRECHT:  Seven and a half months later on an

3     ex parte.

4                THE COURT:  Okay.  Sir, do you want to be heard on

5     the motion to quash Attorney, sorry, Ms. Wendy Borrun's

6     subpoena.  Mr. Albrecht?

7                MR. ALBRECHT:  Is Attorney Fontaine willing to have

8     Ms. Borrun appear as a witness?

9                MR. FONTAINE:  No.  I stated my objection.  I have

10    stated in my motion to quash my reasoning for not having her

11    appear.

12               MR. ALBRECHT:  Well, if you give me just a moment,

13    let me find my objection.  That will be just this one minute.

14         (Pause)

15               THE COURT:  Mr. Albrecht, you have thirty seconds,

16    sir.

17               MR. ALBRECHT:  Yes, I -- just a moment.  It's

18    almost -- wrong year.  I don't have it.  I would need to spend

19    a little time.  But it concerns that the -- in Ms. Albrecht's

20    original entire petition, docket number 1 was essentially

21    filled out by Wendy Borrun.  It's in her handwriting.  It's

22    not even in Ms. Albrecht's handwriting.  And the protocols are

23    that Ms. Albrecht is supposed to be present in court to do

24    that.  And she wasn't.

25               And so starting at docket one, I would issue an



1  offer of proof if Ms. Borrun would testify that that was her

2  handwriting on the petition.  And if she wants to dispute

3  that, so great.  But my offer of proof is Ms. Borrun would

4  testify that she filled out that -- the entire petition was

5  filled out in her handwriting for Ms. Albrecht and if it was,

6  Ms. Albrecht wasn't -- Ms. Albrecht didn't even --

7            THE COURT:  Attorney --

8            MR. ALBRECHT:  -- I don't think that's what the form

9  says you're supposed to do.

10            THE COURT:  So you're saying that -- you're saying

11  that the initial petition in 2019 was in Ms. Borrun's

12  handwriting?

13            MR. ALBRECHT:  Correct.

14            THE COURT:  Okay.

15            Attorney Fontaine?

16            MR. FONTAINE:  Sure.  Judge, that's no different

17  than someone typing something at someone's office.  That's a

18  form document.  That's not a document that can be put into

19  word processing.  And so the document itself was completed by

20  a paralegal.  That document was signed under oath by Ms.

21  Albrecht, who is on this call and could attest to the fact

22  that that -- those statements contained in there were

23  statements that she was making and that simply were written

24  down onto a form document by Ms. Borrun that, again, she could

25  easily testify to that right now.

1          THE COURT:  Yeah, no need to that, because I'm going

2     to direct both parties attention to the July 14th, 2023,

3     decision from the New Hampshire Supreme Court when it said the

4     December 2019 order is final, which is underlined.  That's

5     emphasis included.  And that similarly underlined "our order

6     upholding the initial protective order is also final", which

7     is underlined, so based on that, I'm granting your motion to

8     quash Ms. Borrun's subpoena.  She doesn't need to appear

9     tomorrow.

10          The next one we're going to address is Ms.

11    Introcaso.  Mr. Albrecht, can you give me a proffer as to what

12    you intend Ms. Introcaso's testimony to be tomorrow?

13          MR. ALBRECHT:  I -- she hasn't received service, so

14    I don't anticipate she would show.

15          THE COURT:  Okay.  All right.  So no need to address

16    that.

17          MR. ALBRECHT:  I can give you -- I can give you a

18    proffer from her deposition --

19          THE COURT:  No.

20          MR. ALBRECHT:  -- that she was aware of the

21    conflicts of Bruce -- between Ms. Sternenberg and Bruce DalPra

22    since 2014 and failed to disclose it.

23          THE COURT:  Okay.  So --

24          MR. ALBRECHT:  And Master DalPra failed to disclose

25    it in 2014 also.



1           THE COURT:  Okay.

2           MR. ALBRECHT:  It's right in her deposition.

3           THE COURT:  Well, if she is served, I'm going to

4    quash her subpoena, because once again, as my rulings

5    throughout this hearing has noted, the standard tomorrow is

6    limited to whether there's currently good cause.  So that's to

7    be quashed.  Attorney Piela, what's proffer as to his

8    testimony tomorrow?

9           MR. ALBRECHT:  His testimony would be your role in

10   the task, Your Honor's role in the "cash for kids" scheme and

11   knowledge of Ms. Introcaso's, sort of, improper fee increases

12   on Kathleen Sternenberg's orders that Your Honor was fully

13   aware of that tax attorney Rauseo while the two of you were

14   working as Hamblett & Kerrigan.  And that Hamblett & Kerrigan

15   profited while representing Laura Montgomery was paying you

16   back then to appear with Ms. Introcaso, excuse me, with

17   Kathleen Sternenberg in front of Ms. Introcaso.  And these

18   days, now that she's kind of been no strife on that, she's

19   just appearing in front of you pro se in her current case.

20          THE COURT:  Attorney Fontaine, do you have any

21   comment?

22          MR. FONTAINE:  No.

23          THE COURT:  Okay.  So I'm striking Attorney Piela's

24   subpoena as well.  That is not relevant to the issue that

25   we're appearing to tomorrow.  What we're dealing with tomorrow

1    is whether there's good cause in this case for the restraining

2    order to be extended.  Next one is Ms. --

3              MR. ALBRECHT:  You have already decided there's good

4    cause, and I need to know why, Your Honor.

5              THE COURT:  So Mr. Albrecht --

6              MR. ALBRECHT:  Back in February, you decided there

7    was good cause.

8              THE COURT:  And it was based on the pleadings, sir.

9              MR. ALBRECHT:  Then why are we having a hearing

10   tomorrow?

11             THE COURT:  Well --

12             MR. ALBRECHT:  If you've already decided the issue?

13             THE COURT:  I decided the issue back in February as

14   consistent with the protocols, Mr. Albrecht.  That's

15   consistent.  That's what all judges do.  I scheduled for a

16   hearing.  You filed an appeal.  The Supreme Court indicated in

17   its April 2022 order, the court understands why the hearing

18   was continued, so Supreme Court ordered it to be done within

19   30 days, a mandate that I am going to follow, and we'll

20   proceed tomorrow.

21             So there are two more witnesses listed.  Could you

22   give me a proffer regarding the testimony of Ms. Vivian

23   Girard, please?

24             MR. ALBRECHT:  Ms. Vivian Girard would testify that

25   I have scrupulously obeyed this order, that it's been in

1   effect since 2019.  And even though Ms. Albrecht is a -- well,

2   Ms. Albrecht bought her home in Michigan in October '15 and

3   according to prior testimony went out sometime in October and

4   didn't return.  Then at the telephonic hearing, she testified

5   she lives in California.  But whether it's California or

6   Michigan, the order is that a prior case law, this is

7   apparently the least restrictive means possible to protect Ms.

8   Albrecht is for me to stay 2000 feet away from Collinsville

9   Bible Church in Massachusetts.  So I guess that's super scary

10  to her.

11          But I'm allowed within 1000 feet of her person and

12  apparently, I failed to appear in a Michigan court.  You will

13  sua sponte accuse me of violating the order, but Ms. Girard

14  would certainly testify that I have scrupulously obeyed it

15  with the regard of the church by not even being able to attend

16  a funeral for a close relative of hers that was within the

17  2000 feet buffer zone in Massachusetts, that this -- the New

18  Hampshire Judicial Branch is sort of declared as the least

19  restrictive means possible to protect Ms. Albrecht.

20          THE COURT:  Attorney Fontaine?

21          MR. FONTAINE:  Judge, I guess with regards to his

22  proffer there, obviously Ms. Girard could not possibly testify

23  that Mr. Albrecht was in compliance with this order at all

24  times.  And in fact, there'll be specific evidence presented

25  tomorrow as to the basis for my client's continued concern for

43

1   her safety.  And --

2           MR. ALBRECHT:  I haven't been noticed of that, So I

3   would ask for a continuance.

4           THE COURT:  I haven't --

5           MR. ALBRECHT:  He hasn't provided it to me within

6   ten days of the hearing.  I object.  I would like it stricken.

7           THE COURT:  Okay.  Mr. Albrecht, this is a response

8   to the proffer.  It's not being considered for tomorrow's

9   hearing.  You can address the issue of any evidence tomorrow.

10  Okay, sir?

11          So with respect to the proffer made by Mr. Abrecht,

12  Attorney Fontaine, do you have anything else?

13          MR. FONTAINE:  No, Judge.  I'll leave the issue up

14  to you to decide.

15          THE COURT:  Okay.  The issue of Ms. Girard's

16  testimony is, once again, addressed in the Supreme Court

17  order.  The trial court, Rauseo J. erred by preventing -- oh,

18  sorry, that's (indiscernible) -- that the trial court, Rauseo

19  J. erred by preventing the defendant from calling a particular

20  witness to testify as to the defendant's compliance with the

21  protective order on a particular occasion.  We disagree.  I

22  don't -- Ms. Girard does not have, based on the proffer,

23  sufficient evidence for the Court to consider, and in light of

24  the Court's prior ruling back in February of 2022.  So she

25  will be excluded from providing any offers of proof in that

1  regard.

2         The last one is Mr. David Smith.  Mr. Albrecht, can

3  you make a proffer regarding Mr. David Smith's testimony?

4         MR. ALBRECHT:  Ms. Albrecht has previously testified

5  under oath that she has never filed a false police report.

6  Mr. David Smith would be there to admit numerous pieces of

7  evidence that she had filed any number of false police

8  reports, and the purpose is to impeach Ms. Albrecht's prior

9  testimony.

10         THE COURT:  Mr. Fontaine?  Attorney Fontaine?

11         MR. FONTAINE:  This is not at all relevant to the

12  limited issue before the Court tomorrow.  And therefore --

13         MR. ALBRECHT:  (Indiscernible)  Yeah.

14         THE COURT:  Yeah.  Mr. Albrecht, is this the same

15  gentleman that testified back in 2022?

16         MR. ALBRECHT:  Yes.

17         THE COURT:  Okay.  So I already heard his testimony

18  and made findings.  And like, once again, I'm referring back

19  to this, the July 14th, 2023 court order regarding res

20  judicata.  So the issue of the first extension, including Mr.

21  Smith's testimony, was considered by the Court.  The Court

22  issued an 11-page decision and a multi-page order on a

23  reconsideration, and that was affirmed.  So Mr. Smith's not

24  going to be allowed to express the same evidence that's

25  already been considered by the Court (indiscernible).

1           MR. ALBRECHT:  He can testify to different police

2    reports or other testimony that he didn't previously provide.

3           THE COURT:  Yeah.  So Mr. Albrecht, unless there's

4    been a conviction --

5           MR. ALBRECHT:  Same with Ms. Girard.  Ms. Girard has

6    never provided testimony.

7           THE COURT:  So Mr. Albrecht, this is not a hearing

8    within a hearing.  You want the Court to find that she filed a

9    false police report without a conviction that she filed a

10   false police report.  This is a limited scope hearing.  And

11   when -- you're not going to have the time to develop or for

12   the Court to actually make a decision as to whether someone

13   committed a crime by filing a false police report, that's the

14   wrong forum.  If there was a conviction for filing a false

15   police report, well, that would go to credibility.  But you

16   don't get the opportunity to try to prove it yourself.  That's

17   not an issue of credibility.  So Mr. Smith won't be allowed to

18   offer any testimony as well.

19           So we'll adjourn for today.  We'll start at 8:30,

20   sorry, 10:30 sharp, tomorrow for the hearing.  Thank you,

21   everybody.

22           MR. FONTAINE:  Thank you, Your Honor.

23       (Proceedings concluded at 3:53 p.m.)

24

25



## CERTIFICATE

I, Kelly Borngen, a court-approved proofreader, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my professional skills and abilities.

# Kelly Borngen

Digitally signed by Kelly Borngen
Date: 2023.11.20 09:04:49 -06'00'

KELLY BORNGEN, CDLT-290                    November 19, 2023
Transcriptionist/Proofreader