1

STATE OF NEW HAMPSHIRE

9TH CIRCUIT COURT - FAMILY DIVISION - NASHUA

KATHERINE ALBRECHT,                )
                                   ) Family Division Case No.
                Petitioner,        ) 659-2019-DV-00341
                                   )
          vs.                      ) Nashua, New Hampshire
                                   ) December 20, 2019
DANA ALBRECHT,                     ) 8:34 a.m.
                                   )
                Respondent.        )
_____       )

DOMESTIC VIOLENCE HEARING
BEFORE THE HONORABLE MARK S. DERBY
JUDGE OF THE CIRCUIT COURT - FAMILY DIVISION

APPEARANCES:

For the Petitioner:          Michael Fontaine, Esq.
                             WELTS, WHITE & FONTAINE, P.C.
                             29 Factory Street
                             PO Box 507
                             Nashua, NH 03061-0507

For the Respondent:          Joseph Caulfield, Esq.
                             CAULFIELD LAW & MEDIATION
                             OFFICE
                             126 Perham Corner Road
                             Lyndeborough, NH 03082-6522


Audio Operator:              Electronically Recorded
                             **Not Monitored**

TRANSCRIPTION COMPANY:       eScribers, LLC
                             7227 N. 16th Street, Suite 207
                             Phoenix, AZ 85020
                             (800) 257-0885
                             www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by court-approved transcription service.



71

window.

Q   You also recall the courts order in May, referencing that the court found evidence existed supporting Katherine's assertion that you did not comply with the verbal agreement reached between counsel for the December incident?

A   I don't.  May I see the order, please?

Q   Does it say that?

A   Yes.

Q   Okay.  So you're a very detailed person, wouldn't you say?

A   Sometimes.

Q   Did you read the order?

A   Some time ago.

Q   Did you find -- did you see what the judge said regarding his findings against you on that regard?

A   May I see that one more time?

MR. FONTAINE:  It's on the second page, Your Honor, that order.

A   Yes.

MR. FONTAINE:  Top of -- very top, first paragraph.

A   Yes.

BY MR. FONTAINE:

Q   Okay.  So despite the fact that your children are telling you they don't want to have contact, despite the fact that the court is saying that you violated an agreement



72

reached between counsel -- your counsel and me -- regarding your December visit, despite the fact that you were asked politely to leave the church, despite the fact that you were found to have -- strike that.  Despite all those things, you still thought it was appropriate to one, show up at the church, two, not leave the church when you were asked to leave?  You thought all that was appropriate, given the backdrop here?

A  Haven't seen my kids in 10 months, and this parenting plan isn't being followed, so I have to see my kids.

Q  So you're just going to keep insisting --

A  And I have no way to contact them, so yes.  No way to contact them.

Q   Okay.  So do you understand why Katherine, who testified to this, who's concerned for her safety regarding the fact that you showed up like this?

A  Yeah.  We've got her emergency room psych admission.  She's --

MR. FONTAINE:  Your Honor, again, here we go.

A   That's why.

THE COURT:  So one of the --

MR. FONTAINE:  I didn't ask anything about the psych admission.

A  Well, you asked if I understood.  I'm answering his question.



73

THE COURT: No, you're -- you need to ask the little bits -- answer the question that is asked. And if there's something like that that you didn't think of, that's important, your attorney will have an opportunity called redirect, to bring up those things and explore those areas, if he thinks it's necessary.

THE WITNESS: Well --

THE COURT: Attorney Fontaine -- so I am striking that last bit. Ask your question again, give an answer, and let's try it again.

A   I am sitting peacefully in a pew, if she wants to leave, she can. If she wants to sit peacefully in another pew, she can.

BY MR. FONTAINE:

Q   But you understand why she was concerned for her safety, why she was upset, why she was distraught; do you understand that?

MR. CAULFIELD: Objection to the form of the question. Why she was concerned, why she was upset, why she was distraught -- can we have separate questions?

THE COURT: I think the question can be phrased in a way that would not call for speculation as to what Dr. Albrecht was thinking.

MR. FONTAINE: Yep. Sure.

THE COURT: So I'll ask you to rephrase.



74

BY MR. FONTAINE:

Q   You understand why she would testify that she felt that she was in fear for her safety?

MR. CAULFIELD:   Objection to the form of the question.

THE COURT:   Overruled.

BY MR. FONTAINE:

Q   Do you understand?

A   She's trying to hit me with a DV, because it's all about parenting.

Q   Sir, do you understand why that would cause her to feel that way, to testify that way?   To testify that?

A   I'm a peaceful person.

MR. CAULFIELD:   Your Honor, I want to renew my objection, because he's asking two different things.   He's asking this witness to explain why his witness would testify in a certain way, and then, in the same question, he's asking this witness to testify as to why his witness would feel a certain way.   Assuming that either of those are marginally appropriate, it's a double question, and we won't know what his answer is.

MR. FONTAINE:   Your Honor, if I just may point out, you gave this --

THE COURT:   I'm overruling the objection.

MR. FONTAINE:   Thank you.



75

BY MR. FONTAINE:

Q   Now can you answer the question, please?

A   I'm a peaceful person.  There's no restraining order.
If she wants to approach me, she can.  If she wants to ignore
me, she can.  If she wants to leave the church, she can.

Q   And you're just going to show up wherever you feel
like it?  Is that your feeling?  That you can just show up
wherever you feel like it, interject yourself in her life and
in the children's life whenever you feel like it?  Isn't that
your feeling, that you can do that?

MR. CAULFIELD:  Objection to the form of the
question.

THE COURT:  Overruled.  You can answer the question.

A   I think if my children are eight miles from my house,
when they normally live three thousand miles away, that's
appropriate.

Q   Even when it's not your parenting time?

A   Especially if it's my adult son.

Q   Did your adult --

A   Oh, and I have no way to contact my children.

Q   So let me ask you, when was the last time that you
visited with your adult son, C█████?

A   At Christmas.

Q   Of 2018, correct?

A   Yes.



76

Q  Your son has also refused, based upon the incident in December, to visit with you, hasn't he?

A  I'm not aware of that.

Q  Why else wouldn't he have had contact with you since that incident?

A  He's had plenty of contact.

MR. CAULFIELD:  Objection to the form of the question.

THE COURT:  Overruled.  Answer the question.

A  You asked about visit, he's had plenty of contact.  In fact, I talked to him a couple of days ago.

Q  I said visits, sir.

A  I haven't asked him to.

MR. FONTAINE:  Again, Your Honor, he interjects constantly what he wants to say.  His attorney -- he's leading his attorney to tell him what to --

THE COURT:  No.  No.  No.

MR. FONTAINE:  -- cross-examine him on.

A  No.  Are we talking about visit or talk?

THE COURT:  Everybody stop talking.

You're going to answer the question that is asked.  Now, I'm sure your brain is moving ahead and thinking the next step ahead and providing an explanation and trying to draw conclusions.  But it's my job to draw the conclusions from the facts.  Okay?

77

THE WITNESS:  Okay.

THE COURT:  So just answer the questions.  And if there's something that your attorney feels important enough -- if your attorney thinks I'm not getting it, he can ask you questions on redirect.

Go ahead.

THE WITNESS:  Okay.

BY MR. FONTAINE:

Q   Answer the question.

A   Repeat the question, please.

THE COURT:  I think it was about physical visitation with C███ since --

MR. FONTAINE:  Yes.  Thank you.

THE COURT:  -- December.

BY MR. FONTAINE:

Q   Have you had any physical visitation with C███ since the December 2018 parenting time?

A   No.

Q   Have you had any contact with your girls, at all, the two minor children, since the December incident?

A   No.

Q   Have you ever called your children, written to them, sent them a letter, done anything to apologize for the incident on November 3rd?

A   I have no way to contact them.



Q   You can't send them a letter in the mail?   You know their address, right?

A   Is it 730 West Alegria or 2610 Deodar Circle?

Q   Sir, could you have sent a letter to both, if you cared?

A   I sent birthday cards and gifts.

Q   Okay.   But you've never apologized for the incident that you created on November 3rd, did you?

MR. CAULFIELD:   Objection.   "Incident you created".

THE COURT:   Yeah.   I think that that's inserting --

MR. FONTAINE:   Okay.

THE COURT:   -- enough little commentary there.   Just rephrase.

MR. FONTAINE:   All right.   I'll rephrase it.   I'll rephrase it.

BY MR. FONTAINE:

Q   You never apologized or contacted your children regarding what happened on November 3rd, did you?

A   No.

Q   Cause you --

A   I don't think I need to.

Q   Okay.   Did you ever contact Katherine to discuss what had happened on November 3rd?

A   Katherine refuses to communicate with me, except through counsel.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

79

Q   Did you ever try to contact her through my office, then?

A   I've tried to contact her through your office many times.

Q   Okay.  Have you ever contacted her regarding the November 3rd incident and what happened?

A   The November 3rd incident at Collinsville?

Q   Yes.  You -- are you --

A   I -- we just switched gears from Christmas to November, I'm just making sure I understand the question.

THE COURT:  He has shifted gears, and he's asking you if, using the mechanism that Katherine set out, which is you communicate through counsel -- have you reached out to his office to talk about, confront, or apologize for what happened on the 3rd of November?

A   Not to discuss the 3rd.

Q   You don't think you did anything wrong on the 3rd, do you?

A   No, I don't, sir.

Q   All right.  Let's talk about the Christmas incident in more detail.  Do you -- you don't dispute, do you, that there was an agreement reached between your attorney, on your behalf, and Katherine's attorney, on her behalf, that you would have parenting time in Christmas break of 2018, from December 23rd to December 28th, do you?