# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Hillsborough County                                    9th Circuit – Family Division – Nashua

## In the Matter of Katherine Albrecht and Dana Albrecht

### 659-2019-DV-00341

### ORDER ON POST-TRIAL MOTIONS (#28, #29)

Before the court are the defendant's two post-trial motions; (1) ex parte motion to modify (#28); and (2) motion to reconsider (#29). The court has reviewed the plaintiff's objections and all of the defendant's replications to those objections.

The ex parte motion to modify (#28) is denied for the reasons set forth in the plaintiff's objections. The court gave careful consideration to the decision to restrain the defendant from coming within 2,000 feet of the Collinsville Bible Church. The Court believes that the restriction is narrowly tailored to the unique and specific facts of this case, and is necessary to prevent future incidents of stalking by the defendant. This order is rooted in the findings of stalking and the present credible threat that the defendant poses to the plaintiff's safety, and particularly in the defendant's answers, deflections and evasive non-answers to the questioning on Pages 71-79 of the December 20, 2019 transcript. In that line of questioning, the defendant made it clear that without a specific restraining order in place, he would keep inserting himself into the plaintiff's parenting time with the children, regardless of their wishes or anything else. He believes that he did nothing wrong and gave every indication that he would do it again given the chance.

The court agrees with the plaintiff that the defendant's First Amendment argument is a wholly manufactured controversy. For starters, the court's 2,000 foot restriction is remedial in nature, only applies to the defendant and was based on the defendant's specific conduct as part of a finding of domestic violence after a trial. Beyond that, the court has carefully considered this matter and is satisfied that, in light of the defendant's testimony, there is no less restrictive means available by which to protect the plaintiff from the defendant's harassment when she visits the east coast and wants to exercise her constitutional free exercise and associational rights.

Turning to the motion to reconsider (#29), that is also denied for the reasons set forth in the plaintiff's objection. The court acknowledges that the docket in 659-2016-

DM-00288 shows that on or about June 30, 2019 the undersigned judicial officer approved the recommendation of marital Master Bruce Dalpra to deny the defendant's motion for reconsideration of a substantive May 30, 2019 order (co-signed by a different judicial officer).

More than five months later on December 9, 2019, at the beginning of the DV case, the court disclosed to the parties' counsel as they were arguing about which material from the divorce case should be reviewed as part of the DV case, that the court had no knowledge of the divorce case. The phrase "no knowledge" was shorthand for the lack of factual background that a judge would have when the judge had actually heard parts of a related case and drafted substantive orders based on those hearings. The court did not want the parties' counsel to assume that because the undersigned judicial officer's name approved recommendations on prior orders, the court had any working knowledge of the facts of the divorce case. It lacked that knowledge because anything the court would have seen in late June 2019 by reviewing and approving Master Dalpra's recommendation was long forgotten by early December.

During the domestic relations trial, both parties actually re-litigated the events on and after winter vacation 2018. The plaintiff re-litigated those matters as past incidents under RSA 173-B:1, I ("[t]he court may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the petitioner to fear for his or her safety or well-being"), and the defendant re-litigated those events in defense of his actions on November 3, 2019. The defendant argued that the plaintiff's alleged wrongful conduct and parental alienation over at least the last year left him desperate to see his children and with no alternative. Therefore, the court began the DV hearing with no knowledge of the facts of the divorce case, but by the end of the DV hearing, the parties had presented significant evidence of the events on and after winter vacation 2018, which led up to November 3, 2019. The final DV order was based only on the testimony and documents presented at the DV trial.

As to Paragraphs 6-21 and 26-29, the only incident the court considered for the purposes of finding abuse was the November 3, 2019 incident. The components of the stalking are set forth in detail in the narrative portion of the order. The discussion of the other incidents leading up to November 3, 2019 were considered pursuant to RSA 173-B:1, I as evidence in support of the second prong of the DV analysis, i.e., whether, notwithstanding the finding of an event of abuse, the defendant still posed a credible present threat to the plaintiff's safety. The court found that he did.

As to Paragraphs 34-43 of the motion for reconsideration, the facts supporting a criminal trespass finding (in addition to stalking) were set forth in the plaintiff's domestic violence petition, and the defendant unequivocally testified to the elements of the offence. The defendant testified that he refused to leave and remained in the church after multiple orders to leave communicated to him by authorized representatives of the church (Mr. Cooper, a lay leader, and Pastor Smith) and then the Dracut Police. Plaintiffs in their domestic violence petitions are not required to identify by name and citation which crimes in RSA 173-B:1 the defendant has committed. The defendant and the court discern it from the facts that the plaintiff pleads, and that is what happened here. Also, RSA 173-B:5, I states that the evidentiary standard is preponderance of the evidence, even though RSA 173-B:1 cites criminal acts as examples of domestic violence.

As to Paragraph 54 of the motion for reconsideration, the court's choice of the word "approached" referred to the defendant's reactive e-mail communication to the camp asking for a broad range of information that was disproportionate to the amount of time the children actually spent at the camp. If the record shows that the defendant did not *physically* approach the camp (there was testimony that an order in the divorce case prohibited him from doing so), the court so finds.

Finally, and turning to the broader issue of the plaintiff's fear, RSA 633:3-a, I contains both an objective standard (RSA 633:3-a, I(a)) and a subjective standard (RSA 633:3-a, I(b)). Therefore, even if a reasonable person at the church on November 3, 2019 would not have felt in fear of his or her safety, if the defendant knew that his conduct would cause the plaintiff or the children to be in fear of their safety, that is sufficient to constitute stalking. Regardless of whether or not that fear is the result of a mental health experience, the court finds that the plaintiff clearly knew that tracking of the plaintiff and the children to the church, refusing multiple lawful orders to leave, and then watching the church from the parking lot for the bulk of the day, would cause the petitioner to fear for her safety.

Motions denied.

January 27, 2020
Date

Signature of Judge

Mark S. Derby
Printed Name of Judge