# The State of New Hampshire
## Circuit Court



David D. King
*Administrative Judge*

Susan W. Ashley
*Deputy Administrative Judge*

*Senior Administrator*
Gina Belmont, Esq.

*Administrators*
Kate E. Geraci, Esq.
Paula Hurley, Esq.
Patrick W. Ryan, Esq.
Brigette Siff Holmes, Esq

February 3, 2020

Robert T. Mittelholzer, Esq.
Executive Secretary
State of New Hampshire
Judicial Conduct Committee
132 Chapel Street
Portsmouth, NH  03801

**Sent via email:  rmittelholzer@nhjcc.com**

Re:  Judge Julie Introcaso – Pending JCC Matter

Dear Attorney Mittelholzer:

I am aware of the pending JCC matter involving a complaint filed by Robin Partello, on or about September 19, 2019, having been provided a copy.  The complaint arose out of litigation in a custody matter, currently pending in the 9th Circuit Family Division in Nashua captioned In the Matter of David Campbell and Robin Partello, Case Number 659-2018-DM-00702.

Upon return from leave, Judge Introcaso requested that staff bring her this file for purposes of allowing her to review it in preparation of her answer.  In the course of providing the original file to the judge, and handling it during this time, court staff discovered two handwritten orders which had been obscured by white out tape.  As soon as these alterations were brought to my attention, I contacted Mary Ann Dempsey, General Counsel to the Judicial Branch and Supreme Court and requested that she conduct an investigation to try and determine what happened with this file, and who was responsible for the alterations.  We had the file delivered to our offices and reviewed it.  In addition to the orders which had been covered with white out tape, a number of other unusual alterations to the file were found.  These included missing original documents, insertion of photocopies of pleadings and handwritten notations on the face of original documents in the file.  Between January 15 and 21, Attorney Dempsey interviewed three members of the court staff from the Nashua Circuit Court, as well as Judge Introcaso.  Judge Susan Ashley and I were present for the interview with Judge Introcaso, as well as a second interview with Clerk Sherry Bisson.

1 Granite Place, Suite N400, Concord, New Hampshire 03301
(603) 271-6418

The relevant portions of the summaries from these interviews are attached to this letter. Based on a review of the file, and the interviews that were conducted, Attorney Dempsey concluded that the two orders that were whited out in the Campbell file were altered between January 6-9, 2020, during the time that the file was in Judge Introcaso's chambers.  She further concluded that Judge Introcaso was the only individual with any motivation to alter the file, specifically the two orders that she issued on March 12, 2019 which form, in part, the basis of Ms. Partello's JCC complaint. While Judge Introcaso admits to removing original documents from the file, inserting photocopies of certain pleadings, and making notations on the face of certain documents, she denies having whited out orders, the evidence of which is entirely circumstantial.  Given the ongoing JCC complaint regarding this matter, I deemed it my obligation to notify the JCC of the fact that these irregularities exist in the file, as well as the sequence of events as they have been determined.

Finally, I would request that you return any original documents that you have in your possession from this file.

Of course, if you have any questions, or need further clarification on any non-personnel related issues, please don't hesitate to contact me.

Very truly yours,

David D. King
Circuit Court Administrative Judge

Cc:  Judge Susan Ashley
     Mary Ann Dempsey, General Counsel

2

**CONFIDENTIAL**

**Factual Investigation**

| | |
|---|---|
| **Investigator:** | Mary Ann Dempsey |
| **Date of Report:** | January 26, 2020 |

---

**Scope of Investigation:**

The purpose of this investigation is to review the alleged alteration of a court file (*In The Matter of David Campbell and Robin Partello*, 659-2018-DM-00702) and interactions between Judge Julie Introcaso and court staff relative to the file.

**Summary of Complaint:**

On January 14, 2020, Judge James Leary, serving in the 9th Circuit Court – Nashua, reported to Administrative Circuit Court Judge David King that court staff had informed him that Judge Introcaso had questioned them about whiting out orders in the *Campbell* file. The Judicial Conduct Committee ("JCC") has a complaint pending against Judge Introcaso related to her conduct in this matter. I was asked by Judge King and Judge Ashley to meet with court staff to obtain the factual information in order to assess whether any action needed to be taken from an employment context and/or whether additional factual information needed to be provided to the JCC in connection with their investigation.

On January 14, 2020, Judge King asked Clerk Sherry Bisson to please transport the hard copy *Campbell* file (2 volumes) from Nashua to the Administrative Office of the Courts ("AOC") as part of the investigation. Both files are presently in my office.

**Interview of Sherry Bisson:**

On January 15, 2020, I met with Sherry at the AOC. Sherry Bisson is Clerk of Court and has worked with the Judicial Branch for over 23 years. Sherry reported that there was an interaction between Julie Lodes and Judge Julie Introcaso last Thursday (1/9/2020) relative to the *Campbell* file. Sherry was not in the Nashua court that day as she was attending an all-day clerk's meeting at the AOC. Julie Lodes does not work on Fridays and, on Monday (1/13/2020), Sherry and Julie Lodes did not have a chance to discuss the matter. On Tuesday, January 14th, Sherry saw Julie Lodes waiting in Judge Chabot's office. Julie was waiting to meet with Judge Leary whose door was shut. Sherry saw that Julie looked very upset. Julie told her that she had not slept all weekend and Sherry was concerned enough to almost send Julie home. Sherry asked if she could help Julie and Julie did not want to discuss it with her so Sherry respected her wishes.

Sherry learned later in the day from Judge Leary that, on January 9, 2020, Judge Introcaso had discussions with both Julie Lodes, a 30 year court employee, and Nancy Dabalis, a 29 year court employee, as to whether either of these employees whited out two orders in the *Campbell* file. Sherry met with Julie and Nancy on January 14, 2020 and learned that Julie Lodes informed Judge Introcaso that she had not whited out the orders and Julie Lodes asked the judge whether she had done it herself. Sherry also learned that Nancy told Judge Introcaso that she had not done it and that none of the staff in the clerk's office would white out a judge's order. Sherry then learned that the orders were related to the *Campbell* file and, the orders in question, were related to a discussion Sherry had with Judge Introcaso earlier in the week.

On Monday, January 6, 2020, Judge Ashley contacted Sherry Bisson to request that Judge Introcaso be provided writing time during the week. Sherry Bisson met with Judge Introcaso that day to let her know that, unintentionally, her docket was clear for Thursday and Friday of the week so those could be writing days. Judge Introcaso thanked her and told her that it allowed her time to prepare an answer to the JCC complaint filed against her by Robin Partello in the *Campbell* matter. Judge Introcaso told Sherry that she signed off on some of Master DalPra's Orders in the case and issued some orders on non-substantive matters. She told

Sherry one matter involved whether Ms. Partello could pay the GAL by Apple Pay and Judge Introcaso then showed Sherry her handwritten order ("Apple Pay Order") in the *Campbell* file denying the request. Sherry has a clear memory of seeing the handwritten order, on Pleading #35, that states:

> 3/12/19 –
>
>> Legal fees / GAL fees to be paid in cash, by money order or bank check, ONLY.
>> So Ordered.
>>
>> [signature]
>> Julie A. Introcaso

When Sherry met with Julie Lodes and Nancy Dabalis on January 14, 2020, she realized that one of the orders that Judge Introcaso asked about being whited out was the "Apple Pay Order." Sherry realized that this meant that between January 6th (Monday) and January 9th (Thursday) someone altered the *Campbell* file and whited out that order. She also learned that a second order was whited out. The second order was with respect to the GAL's Motion to Exceed Fee Cap and was a handwritten order on Pleading #34, that states:

> Motion       Granted/~~Denied~~
>
> 3-12-19_____
> Date
>
> [Signature]_____
> Judge Julie A. Introcaso
>
>> over the
>> Respondent's objection at
>> #36

Sherry informed me that the file[1] would have been in Judge Introcaso's chambers from January 6-January 9, 2020. The Court does not have a sheet that keeps track of where the files are physically located but, the Case Summary Sheet indicates that the last action in the file took place on December 9, 2010.

Following her meeting with Julie and Nancy, Sherry met with Judge Leary the same day (January 14th). Judge Leary was aware of the matter because he met with Julie but he did not understand the full implications of the whited out documents. Sherry explained to Judge Leary that she actually saw the text of one of the whited out orders on Monday (January 6th) so this meant the action was taken recently (January 6-9) and not in March 2019 when the orders were issued. Judge Leary contacted Judge King and Sherry was present for the phone conversation where all of this information was relayed.

---

[1] In speaking with all witnesses, it appears that Judge Introcaso had Volume 1 of the *Campbell* file, which had the relevant pleadings to the JCC Complaint, and not Volume 2 with the most recent pleadings.

**Interview of Julie Lodes and Nancy Dabalis:**

I met with Julie and Nancy together on January 15, 2020 for approximately 2 hours. Julie was very nervous and wanted Nancy with her for support. I explained to both individuals that I simply wanted to know the facts they each had relative to recent communications about the *Campbell* file. It was my job to then discuss those facts with Judge King and Judge Ashley. They were both very upset and informed me multiple times that they did not want to get Judge Introcaso in trouble.

On January 2, 2020 (Thursday), Judge Introcaso asked Julie Lodes to bring the *Campbell* file to her chambers. Judge Introcaso had told both Julie and Nancy at some point that there was a pending JCC complaint so Julie knew this was the purpose of Judge Introcaso needing the file. When Julie brought Judge Introcaso the file Julie told Judge Introcaso that she was present for a hearing on October 30th before Judge Derby in the case and Robin Partello made a number of accusations against Judge Introcaso.[2] Judge Introcaso asked Julie Lodes to get her a copy of the tape from that hearing and Julie Lodes did so.

On January 9, 2020, Julie Lodes went to Judge Introcaso's chambers where Judge Introcaso was working on her answer to the JCC complaint. She asked Julie Lodes to make copies of certain pleadings in the *Campbell* file and to stamp "ORIGINAL" on some pleadings that Judge Introcaso took out of the file to presumably send to the JCC and replace with a copy that was to be "COPY" with the handwritten notation "1-9-2020 originals have been submitted @ JCC, JDL." Judge Introcaso also had her stamp "ORIGINAL" on some pleadings that stayed in the file. Julie stated that she felt very uncomfortable being asked to do this project related to the JCC complaint but did as the Judge asked.

Before Julie Lodes did the actual stamping of the documents, Judge Introcaso showed her the 3 page, white-lined order dated March 15, 2019 and said to Julie, "now I know what this Order is all about." Judge Introcaso then said to Julie "Oh my God, did you do this to protect me" and pointed to an order that was whited out in the file. Julie Lodes immediately told her that did not and asked whether Robin Partello could have looked at the file and done it. Julie Lodes went to the Clerk's office and retrieved the sign-out sheets for files going back to approximately 2014. She showed Judge Introcaso that Robin Partello had not asked to see the file and Judge Introcaso told Julie Lodes that the sign-out sheets were not all there. Julie Lodes told me that they were all there. Julie Lodes then asked Judge Introcaso: "Judge, do you think you could have done this?" Judge Introcaso did not provide any response. Julie Lodes stated that Judge Introcaso was not angry during the exchange but rather seemed shocked that someone altered the file. Julie Lodes pointed out to Judge Introcaso that the text of handwritten orders were also part of the clerk's notices that were sent out to the parties. Judge Introcaso then told Julie Lodes she would need Julie to complete an affidavit about the file and Julie Lodes did not respond as she did not think this was proper. Julie Lodes then stamped the pleadings as Judge Introcaso instructed her.

Julie Lodes explained that Judge Introcaso would white out orders regularly as those two orders had been and none of the court staff would ever white out an order. Julie Lodes told me she knew based on working with Judge Introcaso that Judge Introcaso had whited out the orders and thought she had forgot that she had done so.

When Julie Lodes learned on January 14th that the white out did not exist in the file earlier in the week, she believed that Judge Introcaso was not being honest when she asked Julie if she had done it and that Judge Introcaso was "trying to cover her rear-end." Julie states that she cares very much about Judge Introcaso but she has questioned for months whether she is capable of doing her job any longer.

Nancy Dabalis told me that, on January 9th, she received a voicemail from Judge Introcaso for Nancy to please go to her chambers. Nancy said she went up between 12 and 12:30 because she brought her lunch with her. Judge Introcaso showed Nancy one of the whited out orders in the *Campbell* filed and said "did you do this?"

---

[2] Julie Lodes was so concerned about the accusations related to Judge Introcaso's conflicts with the GAL and others in the case that she spoke with Judge Leary immediately following the October 30th hearing to report it.

Nancy told her of course not. Nancy told me in 29 years she has never whited out an order. Judge Introcaso then asked whether another staff member could have done so and Nancy told her "none of the girls would have done it."

**Email Provided by Sherry Bisson:**

On January 9, 2020, Judge Introcaso emailed six court employees in Nashua about the *Campbell* file, and copying the Clerk, Deputy Clerk, and 2 judges and a marital master, stating as follows:

> Good Morning folks,
>
> I know some of you may recognize this case, it is unresolved and consists of two jackets of pleadings. I also learned that Ms. Partello has come to the counter at times for various reasons. If you have had any contact with this file, could you please contact me TODAY at ext. 0930. I have a few questions about this file.
>
> Thanks.

The email was marked as high importance. The email was sent at 10:12 am which I believe to be after the meeting that Julie Lodes had with Judge Introcaso that day but before the meeting with Nancy Dabalis.

**Interview of Judge Julie Introcaso:**

On January 21, 2020, I interviewed Judge Introcaso as the AOC for approximately 2 hours. Judge David King and Judge Susan Ashley were present for the interview. On January 15, 2020, Judge King emailed Judge Introcaso requesting that she attend a meeting at the AOC on Monday, July 21st. Judge Introcaso was on a scheduled trip from Thursday to Sunday so, on Monday July 20, 2020, Judge King texted Judge Introcaso to confirm that she would attend. Judge Introcaso confirmed that she would. Judge King started the meeting by explaining that we had received a report of irregularities in the *Campbell* file and wanted to discuss it with her. I then told her that I had been asked to investigate the matter and conduct witness interviews. Since the file was in her office and was the subject of a JCC complaint, I had questions to ask her. I explained, however, that before I did so I needed to advise her that it had come to my attention that the potential alteration of a public file could implicate criminal statutes, including statutes related to public officials. Therefore, I wanted to advise Judge Introcaso that she had a right not to incriminate herself so her participation in the meeting was voluntary. If she chose not to do participate, no discipline would be imposed by the New Hampshire Judicial Branch based on that decision. Judge Introcaso quickly told me that she had no problem answering questions. She also mentioned that she did not think this was the purpose of the meeting and referenced a new JCC matter that we discussed later in the meeting.

I began by confirming that Judge Introcaso returned from medical leave on December 16, 2019. She informed me that, while on leave, she received the JCC complaint filed by Robin Partello. She contacted Bob Mittelholzer at the JCC and requested an extension because of her leave. Judge Introcaso said she had until January 16th or January 19th to file an answer. Judge Introcaso stated that she began working on an answer while on medical leave to "practice" writing orders in anticipation of her return to work. At that time, Judge Introcaso questioned how Robin Partello knew the factual information about Judge Introcaso set forth in the JCC complaint. Judge Introcaso had forgotten that she had issued a 3 page written order in March 2019 setting forth the facts of Judge Introcaso's personal relationship with the GAL. Judge Introcaso indicated that she thought to herself that she would not have given such detail to Judge Derby when transferring the file.

Judge Introcaso would often divert the discussion from the status of the *Campbell* file to the nature of the JCC complaint against her. She stated that the *Campbell* file was put in her signing pile and when she cosigned on Master DalPra's orders. She is not sure that she even fully reviewed the documents to know that GAL Sternenberg was involved. She stated that she signed the two March orders she issued on her own at the

signing box. After Master DalPra was assigned to another court, Judge Introcaso said she had to do all the signing and the staff kept putting this file in her pile. She said after she issued those orders she scheduled a status conference with the intent to put her conflict on the record and see if the parties would waive the conflict on the orders she had already issued. She acknowledged that in her 3 page written order she considered the conflict un-waivable. She stated that she wrote her initials on the file cover to indicate her conflict and that the file should not come to her in the future. She stated that the orders in question at the JCC are "routine, not substantive." I asked why she called them substantive in her 3 page order and she said she should not have written that.

Judge Introcaso stated that she requested that Julie Lodes bring her the *Campbell* file shortly upon her return in December but Julie Lodes did not bring it to her until January 2, 2020. Julie Lodes told her on that day that she was present for the court hearing where Ms. Partello made a number of complaints against Judge Introcaso including discussions of the GAL discussing finances with Judge Introcaso and an alleged family connection between Judge Introcaso (maiden name Johnson) and a Dr. Johnson who was part of case. Julie Lodes got Judge Introcaso a copy of the hearing but Judge Introcaso said she never listened to it.

On January 6, 2020, Judge Introcaso recalled a discussion with Sherry Bisson about having writing days that week but she did not recall any conversation with Sherry about the *Campbell* file and said it is "absolutely not true" that she showed Sherry any documents in the *Campbell* file.[3]

Judge Introcaso informed me that she thinks the file would have stayed in her office from January 2, 2020 until January 10, 2020 when she completed her answer. She began working on the answer on January 9, 2020. She said she started looking through the file and saw the whited out orders. She says she asked Julie Lodes who whited them out and told her that it makes Judge Introcaso "look pretty bad" because they are two of the orders at issue in the JCC. Judge Introcaso said that from approximately 8:30 – 11:00 am that day she tried to figure out who whited out the orders which included asking Julie Lodes, Nancy Dabalis, and sending an email to the marital staff. She stated that, by 11 am, she decided she did not have time to deal with the file issue any longer. She states that she did talk with Judge Derby[4] that morning. Judge Derby told her that he had a status conference and tried to help Judge Introcaso out by reviewing all of her motions de novo and determining that he would have reached the same result. Judge Introcaso stated that when she looked for Judge Derby's Order in the file is when she found her 3 page written order[5] and understood how Robin Partello had all the factual information about Judge Introcaso. Judge Introcaso stated that the March 15th order was not intended to vacate any of her prior orders (including the 2 orders on March 12th). She said the March 15th order was to make clear to staff not to give her the file in the future and to schedule a status conference for the parties to waive the conflict.

When Judge Introcaso spoke with Julie Lodes on January 9th, Julie Lodes asked whether Robin Partello could have done it. Julie Lodes got the sign out sheets for marital files to know Judge Introcaso. Judge Introcaso said that the sign out sheets were "very incomplete" and had gaps of time that equated to months missing. She also said she had to send Julie Lodes down 2-3 times to get all the sheets. Judge Introcaso said she asked Nancy Dabalis, who sent out the notices of decision, why someone would have whited out the orders and Nancy said she did not know. Judge Introcaso claimed that she asked Nancy to bring the file issues to Sherry's attention.

---

[3] Judge Introcaso made some definitive statements that she never talked with Sherry about the file and questioned how Sherry would know about the JCC complaint. She then backed off and in a phone call on January 21st she told me she probably showed Sherry the Orders from the JCC complaint but never the orders in the file itself.

[4] Judge Introcaso thought they communicated by email but after searching for emails unsuccessfully, she remembered they spoke by phone.

[5] Judge Introcaso called it a written letter multiple times during the interview but I confirmed that she is referring to her March 15th handwritten order.

Judge Introcaso said that her reference to Robin Partello coming into the court often in her email is because of reports from court staff that Ms. Partello comes in and complains.[6]  She discussed her request to have Julie Lodes stamp some pleadings "original" and others "copy" and to make notes on the pleadings.  Judge Introcaso said she was trying to make clear that this was the condition of the file and how it came to her on January 2, 2020.  She said the alterations to the file concerned her greatly and made her look bad.  She stated that she did not view the statement "original sent to JCC . . . ." as a notation for the public.  She stated that with her background with the Professional Conduct Committee she knew the importance of a file in connection with a complaint so she wanted to document where the originals were.  The notations she made on the clerk's notices were because Judge Introcaso was going to attach them as exhibits to her JCC answer.  She decided not to include them and marked "STRICKEN" on the documents.  She acknowledged that she may have put a copy of the whited out order in the file regarding exceeding the fee cap since the original had been whited out.  She also said she probably screwed up the order of the file when putting it back together.  Judge Introcaso said she understands that she "muckied up the file" but she did not make misrepresentations and she did not white out the orders.  She said she was not stupid enough to do so.

Judge Introcaso completed her answer on January 9, 2020.  She proofread it and, on January 10, 2020 she had a court staff member (Sue) from Probate attest her signature on the answer.  On January 10th she spoke with Judge Leary about finishing her answer but did not recall discussing the alterations to the file.

When I explained to Judge Introcaso that Sherry Bisson recalled a conversation about the file on January 6th and seeing the documents, Judge Introcaso stated that "the clerk makes me look evil" and she feel like she is working for the enemy.

**Follow-up Meeting with Sherry Bisson on January 21, 2020:**

Following the meeting with Judge Introcaso, where she denied adamantly showing Sherry the pleadings in the file that were later whited out, I met a second time with Sherry Bisson.  Judge King and Judge Ashley attended that meeting.  I showed Sherry the copy of those pleadings from the JCC packet and asked if it was possible that she saw those copies and not the originals in the file on January 6th.  Sherry reiterated that she only saw the Apple Pay Order and she was clear that Judge Introcaso took her over to her table where the file was located and opened the file and showed her the Apple Pay Order.  She remembered that it was the original hand-written order in the file.  She told us again about her 10-15 minute conversation with Judge Introcaso and Sherry's subsequent conversations with court staff and Judge Leary about the matter.

**Judge Introcaso's Draft Response and Final Response to JCC:**

Following our meeting, Judge Introcaso sent me a copy of communications she had with Bob Mittelholzer on December 12, 2019.  The email explained that she was on leave and needed an extension to file her answer but it also included a draft answer.  The draft answer references the two March orders with an explanation of why she ruled on them.

In her Final Answer she also references the two orders as well has her 3 page written order setting forth the conflict.  Judge Introcaso told us that, when she continued to work on her answer on January 9th, she spent a whole page setting forth the issue of the whited out orders in the file but deleted it entirely and made no reference in her answer because she said it was not what the JCC was interested in.

**Investigator's Impressions:**

Based on my interviews with the above individuals, I do not find Judge Introcaso credible with respect to the alterations to the file.  Judge Introcaso has a different perspective on interactions with Sherry, Julie and Nancy to some degree.  When provided some facts that contradict her account, she quickly changed her account to

---

[6]  Sherry Bisson agreed that this file is well known by the staff because Ms. Partello and her interactions with court staff.

provide a justification. For example, she was defensive about why Sherry Bisson would even know about the JCC matter and denied a conversation about the case but when I expressed that Sherry had a 10-15 minute conversation with her where Judge Introcaso showed her the Apple Pay Order, the judge altered her memory to be that they may have discussed it and she may have shown her the JCC packet but not the file and not the original order in the file.

I do not have a rational reason for why anyone, including Judge Introcaso, would white out two orders that are set forth in the text of the clerk's notices. I also acknowledge that Judge Introcaso's draft answer in December acknowledges the existence of those orders. I believe that Sherri Bisson was shown the handwritten Apple Pay Orders in the file on January 6th by Judge Introcaso. Sherry's description of the file being opened and pages flipped to get to the order is credible. Judge Introcaso does not recall what Sherry has described as a 10-15 minutes conversation about Judge Introcaso's defense to the JCC. It is identical to the defense Judge Introcaso provided us at the meeting. I know that Judge Introcaso believes that Sherry is out to get her but I do not form the same impression. I believe they have probably had issues working together because Judge Introcaso was a clerk and I suspect has difficulty not sharing her opinions about the scheduling of the court but I have had the opportunity to work closely with Sherry on a few matters in Nashua and I believe she is a consummate professional. In meeting with her on this matter, she expressed no ill will, or even frustration with Judge Introcaso, and offered no opinion on whether Judge Introcaso altered the file. She told me the facts in a straightforward manner. She stated that it has been a "honeymoon" period since Judge Introcaso has been back and interactions with Sherry and the judge have been cordial.

It is my opinion that the two orders in the *Campbell* file were whited out between the period of January 6-9, 2020. This was when the file was in Judge Introcaso's chambers. It is also my opinion that Judge Introcaso is the only person with any motivation to alter the file. I believe that Judge Introcaso is dealing with difficult medical issues and may not have altered the file with a clear state of mind. She did not remember writing a very detailed 3 page handwritten order in a contentious case where everyone knows the parties. I believe it is possible that she intended that order to vacate the decisions she made in March and, upon reviewing the file in January 2020, realized the orders were not vacated and tried to white them out. She would only have done so if she did not realize that Ms. Partello included a copy of the orders with her JCC complaint and/or remember the text of those orders would be on the Clerk's Notices (as Julie Lodes told her). I cannot state for certain that this what happened but I do question Judge Introcaso's memory and credibility based on the stress of responding to a JCC complaint right back from leave and due to her ongoing medical issues.

**Recommendations:**

I believe the next step is for Judge King to provide this additional information to the JCC for its consideration.

---

Respectfully Submitted,

Mary Ann Dempsey
General Counsel