1

STATE OF NEW HAMPSHIRE

9TH CIRCUIT COURT - FAMILY DIVISION - NASHUA

KATHERINE ALBRECHT,                    ) Family Division Case No.
                                       ) 659-2019-DV-00341
                Plaintiff,             )
                                       ) Nashua, New Hampshire
         vs.                           ) November 15, 2023
                                       ) 2:32 p.m.
DANA ALBRECHT,                         )
                                       )
                Defendant.             )
_____        )


MOTION HEARING
BEFORE THE HONORABLE KEVIN RAUSEO
JUDGE OF THE CIRCUIT COURT - FAMILY DIVISION
**AMENDED (ERRATA)**

APPEARANCES:

For the Plaintiff:            Michael Fontaine, Esq.
                              WELTS WHITE FONTAINE PC
                              PO Box 507
                              Nashua, NH 03061

Pro Se Defendant:             Dana Albrecht
                              (Address Unknown)

Also Present:                 Catherine Denny, Esq.
                              For Judge David King
                              Linda Smith, Esq.
                              For Kathleen Sternenberg
                              Philip Waystack, Jr., Esq.
                              Pro Se

Audio Operator:               Electronically Recorded
                              **Not Monitored**

TRANSCRIPTION COMPANY:        eScribers, LLC
                              7227 N. 16th Street, Suite 207
                              Phoenix, AZ 85020
                              (800) 257-0885
                              www.escribers.net

Proceedings recorded by electronic sound recording; transcript



produced by court-approved transcription service.

escribers
www.escribers.net | 800-257-0885

(Proceedings commence at 2:32 p.m.)

THE COURT:  Are we on the record?

THE CLERK:  This is the Nashua Family Court.  Can I ask who just joined the call, please?

THE PETITIONER:  This is Katherine (indiscernible) Albrecht.

THE CLERK:  All right.  Thank you.

THE COURT:  All right.  Good afternoon, everyone. This is Judge Rauseo with the 9th Circuit Family Court.  This is in the matter of Katherine Albrecht v. Dana Albrecht, Case Number 659-2019-DV-341.  I'm going to take attendance.  I'm going to start -- I'm going to call people's names.  So I heard Ms. Albrecht on the line.  Is Attorney Fontaine on the line?

MR. FONTAINE:  Yes, Your Honor.

THE COURT:  Okay.  Is Mr. Dana Albrecht on the line?

MR. ALBRECHT:  Yes, Your Honor.  And I'm having a little trouble hearing you (indiscernible).

THE COURT:  Okay.  I'll move a little closer to the phone.  Okay?  Can you hear better now, sir?

MR. ALBRECHT:  Yes.

THE COURT:  All right.  Is Attorney Denny on the line?

MS. DENNY:  Yes, I'm on the line.  This is Catherine Denny.  I think there just is a little bit of an echo behind

you when you're talking.

THE CLERK:  Someone has it on speakerphone.

THE COURT:  Yeah, I think someone has it on speaker. So if someone has it on speaker, please take it off speaker. Oh, someone just joined.  Okay.  So Attorney Denny's on the line.  Is Judge King on the line?

MS. DENNY:  He will not be appearing.

THE COURT:  Okay.  Is Attorney Creegan on the line?

MS. DENNY:  She will not be present either.

THE COURT:  Okay.  Is.  Attorney Sternenberg on the line?

MS. SMITH:  She is not, Your Honor.  Linda Smith on her behalf.  She will not be appearing.

THE COURT:  Okay.  And Attorney Smith, you are the counsel of record for Attorney Sternenberg?

MS. SMITH:  I am.

THE COURT:  Okay.  Is Attorney Waystack on the line? Attorney Waystack?  Who just joined?  Is that Attorney Waystack?  Okay.

MS. SMITH:  Sorry.  He was on the line.

THE COURT:  Excuse me?

MS. SMITH:  He was on the line with the clerk.

MR. FONTAINE:  I heard him on the line.

MS. SMITH:  Yeah.

THE COURT:  Okay.  We'll wait another second, see if



5

he joins again.  Okay?

MR. WAYSTACK:  So this is Phil Waystack, back on behalf of myself.  I listened to you, Judge, and I took it off speaker and promptly disconnected the line.

THE COURT:  Okay.

MR. WAYSTACK:  Sorry to be so clumsy.

THE COURT:  No, no.  Attorney Waystack's on the line.  Is there anyone else on the line who has not identified him or herself?  All right.  So we'll proceed.

So I scheduled this hearing.  Let me ask Mr. Albrecht as well as Attorney Fontaine.  I got a decision from the New Hampshire Supreme Court today, right around 1:30ish. Did both of you get that Supreme Court order?  Start first with Mr. Albrecht.  Start with Mr. Albrecht first.

MR. ALBRECHT:  Mr. Albrecht.  You would like me to proceed, Your Honor?

THE COURT:  Yeah.  So Mr. Albright, did you get a copy of the Supreme Court decision that was issued today?

MR. ALBRECHT:  Yes.

THE COURT:  Okay.  Attorney Fontaine, did you get a copy of the Supreme Court decision that was issued today?

MR. FONTAINE:  Yes.

THE COURT:  Okay.  So I've scheduled this because tomorrow is scheduled for a 30 minute offer of proof hearing. We got -- I received three motions to quash yesterday, or I

6

think maybe one may have been Monday.  I received one today from Attorney Waystack and so I asked to address this.  I also got yesterday, after around 2:30 it was time stamped, I don't think I saw it until after that, witness list for Mr. Albrecht for 11 witnesses.

So what I'm going to do is I'm going to address the motions to quash first.  Once I issue a ruling on the motion to quash for the particular individual and the attorneys, you may stay on the line, or you may disconnect whatever you choose to do.  And then I'll address the witness list as well, because like I said, we have a 30 minute offer of proof hearing tomorrow, and I'm not going to have time to address these issues in the time allotted, so.

I've reviewed the four motions -- I reviewed the four motions to quash.  I also reviewed Mr. Albrecht's four objections.  So I don't need people to restate, unless you want to, the arguments, but I've read them.  I've also reviewed the Supreme Court's decision from July 14th, 2023, which the mandate issued on August 16th, 2023.  I reviewed again the October 20th, 2023, Supreme Court order and the one that was issued about an hour ago, November 15th, 2023.

So I'm going to first start with the motion to quash because it's the one I received first.

MR. ALBRECHT:  Your Honor?

THE COURT:  Yes?



MR. ALBRECHT: (Indiscernible)

THE COURT: Go ahead, Mr. Albrecht.

MR. ALBRECHT: I (indiscernible) there is a fifth motion to quash that's still outstanding. It would be Ms. Albrecht's ex-parte motion to quash, Number 187 from March 28th, 2023. It was ordered to be scheduled for a prompt hearing within five days. It was previously scheduled for March 30, '23. On that same day, I asked for it to be rescheduled and we're now seven and a half months later so that fifth motion to quash is still outstanding.

And just for the record, there's a motion to strike Number 192 that's also still outstanding.

THE COURT: So right now we're addressing --

MR. ALBRECHT: (Indiscernible).

THE COURT: -- we're addressing the witness list, and the motions are last. I'll take a look at 192 --

MR. ALBRECHT: Okay.

THE COURT: -- as well.

MR. ALBRECHT: And I would respectfully ask that we address my motion in limine prior to the motions to quash.

THE COURT: The motion in limine to not take judicial notice of the federal court proceeding?

MR. ALBRECHT: Well, so they've got a lot of that stuff in their motions to quash. So I would question the standing of attorneys from the executive branch even to be

8

here.  This is supposed to be a civil DV proceeding between two private parties.  I don't believe Your Honor would have jurisdiction to do the State's bidding in this proceeding to affect the outcome and any separate federal civil rights matter pending federal court.  And my view would be that would be a violation of Article 77 separation of powers.

THE COURT:  Okay.

MR. ALBRECHT:  So in light of that, I would respectfully request you do the motion in limine first and then we can proceed from there.

THE COURT:  Okay.  So I do find Attorney Denny has standing to represent Judge King and Attorney Creegan.  And so the request to find that they don't have standing is denied.  As for the motion in limine, I'm not taking judicial notice of a court proceeding that I don't have the file for.  This is not my file.  However, to the extent they're commenting on litigation that exists, you know, it doesn't have much --

MR. ALBRECHT:  Well, I would object to that.

THE COURT:  -- it doesn't have --

MR. ALBRECHT:  I would basically object to that (indiscernible) request to be stricken.

THE COURT:  Okay.  What's the basis for your reason to object to them mentioning that there was a lawsuit filed in the federal district court?

MR. ALBRECHT:  Because I think they're trying to use



9

this proceeding to effect that outcome --

THE COURT:  Okay.

MR. ALBRECHT:  -- and that that's completely inappropriate.

THE COURT:  All right.  And I would agree with that, Mr. Albrecht.  I'm not considering the lawsuit as a basis to deny the motion to quash.  What I am doing, Mr. Albrecht, and why I scheduled this hearing today, is tomorrow's hearing is of limited scope.  The Supreme Court was very clear in its order from July 14th, 2023, when it said the December 2019 order is final, underlining final, and that their decision affirming it is final and they, once again, they underlined final.

And so this is a limited scope hearing as the Supreme Court found in, once again, July 14th, 2023.  The issue that's before this Court tomorrow is whether there's good cause to be shown.  To determine, the trial court must assess whether the current conditions are such that there is still concern for the safety and well-being of the Plaintiff.  That's from part of the order from the Supreme Court.  So that's the standard we're going by tomorrow, and that's the standard on determining whether the motions of quash should be granted.

So I'm going to address now the motion to quash from Attorney Sternenberg.  I've read the objection.  I've read the


www.escribers.net | 800-257-0885

10

motion.  I'm going to give you, Mr. Albrecht, an opportunity to, if you want to add anything in addition to what you wrote in your objection.

MR. ALBRECHT:  Well, as you know, Your Honor, I only received notice of this hearing at 3:30 last night, and I was madly drafting pleadings.  So I don't see the issue of a guardian ad litem who has direct knowledge of key issues in this case, you know, such as Ms. Albrecht's fighting allegations.  Key issues concerning the factual record of Collinsville Bible Church.  And this whole DV is about parenting time to begin with.  And I think a guardian is pretty relevant to that.

And I'd certainly like to get Ms. Sternenberg's testimony on why Ms. Albrecht would fear for her safety if she was in Michigan, and I go within 2000 feet of Collinsville Bible Church at any time.  I think she's had extensive involvement with both of us in the past as well as the children.  And (indiscernible) again, my position, this is all about the children.

THE COURT:  Okay.  You done, Mr. Albrecht?

MR. ALBRECHT:  I believe so.

THE COURT:  Okay.

MR. ALBRECHT:  I'm sure I'll think of something else later.

THE COURT:  Attorney Fontaine, you haven't filed any



11

objections yet and so I'm going to give you an opportunity to comment on the motion to quash Attorney Sternenberg's subpoena.

MR. FONTAINE:  I agree with the arguments raised by her attorney that I don't believe that Attorney Sternenberg could provide any relevant information to the issue that you will be deciding tomorrow.  And therefore, I don't think that she should be required to testify.

THE COURT:  Okay.

MR. ALBRECHT:  Rebuttal, Your Honor.

THE COURT:  Sure, Mr. Albrecht.  Go ahead.

MR. ALBRECHT:  Ms. Albrecht specifically raised the issue of Sternenberg as GAL in her most recent DV pleading.  She's repeatedly asked for her re-appointment, and she has made her allegations presently (indiscernible) against all evidence and testimony in the divorce case that -- that would involve Ms. Sternenberg, so --

THE COURT:  What specifically --

MR. ALBRECHT:  -- I mean, unless she's willing to narrow down her allegations, which is basically -- I believe you've already pre-decided you accept the order.  So I'm not sure what effect tomorrow would have but given we're having a hearing and we're supposed to address everything in the divorce case, according to Ms. Albrecht, that would include Ms. Sternenberg.

12

THE COURT:  Attorney Fontaine, do you want to respond to Mr. Albrecht's statement?

MR. FONTAINE:  Yes, sure.  Just very briefly.  My understanding is that Attorney Sternenberg has had no involvement since the issuance of this original domestic violence order, has not had any further involvement in this case since prior to that.  And therefore, I don't know that she would be able to provide any relevant information on the issues before the Court, which is relative to whether the Court grants our request for an extension of the domestic violence protective order.

THE COURT:  What about the -- no.  Hold on, Mr. Albrecht.

Attorney Fontaine, what about the claim that your client intends to offer evidence tomorrow regarding Ms. Sternenberg's investigation, findings she made.  What's your response to that?

MR. FONTAINE:  My client will not be presenting any evidence or argument relative to Attorney Sternenberg.  I don't know exactly where that's coming from.  I don't have that pleading in front of me, but that is not part of any presentation that that will occur tomorrow.

THE COURT:  Okay.  Mr. Albrecht?

MR. ALBRECHT:  Again, I'm not actually (indiscernible) to the presentation that will occur tomorrow

13

then because it just says evidence and testimony in the divorce case. And given that Your Honor has already extended the hearing to a year, I would view any further presentation by Ms. Albrecht as amendments that I have not been noticed on.

THE COURT: All right. So I'm granting the motion to quash for Attorney Sternenberg, she has not been involved in this case for years. Mr. Albrecht --

MR. ALBRECHT: I (indiscernible) disagree, Your Honor.

THE COURT: Mr. Albrecht -- Mr. Albrecht --

MR. ALBRECHT: She precedes the mandate.

THE COURT: Mr. Albrecht, hold on, please. This is not -- this is your opportunity to listen, and then you can speak, okay, sir?

MR. ALBRECHT: All right.

THE COURT: So I agree that Attorney Sternenberg does not have any information to determine the, that which is what I'm required to find, any reliable evidence as to the current conditions of such that the Plaintiff's safety and well-being may be a concern. So I'm granting the motion to quash, however, any attempt to bring in evidence regarding the divorce or the GALs investigation will be stricken and will not be allowed in, with the exception that the Court can consider, under Supreme Court precedent, the findings by Judge Derby that were issued in the initial order. And so to that

extent, both parties may comment on that.

So now I'll let you be heard, Mr. -- hold on.  I'm going to let you be heard, Mr. Albrecht.

MR. ALBRECHT:  Okay.

THE COURT:  I'm going to let you be heard on my ruling.

MR. ALBRECHT:  So Your Honor, in the first instance, Ms. Sternenberg is involved in this case as recently as September 1st, 2023, when she was served with a mandate from the Supreme Court.  In the second instance, the conditions involve whether they are the same now as they were then back in the past.  And while Ms. Sternenberg may not be able to testify to what they are now, she can certainly testify to what they were then.

THE COURT:  So as I indicated, Mr. Albrecht, reading from the Supreme Court's July 14th, 2023, order, where it says,  "to determine good cause, the trial courts must assess whether the current conditions are such that there is still concern for the safety and well-being of the Plaintiff."  So that's the standard that I'll be operating under in determining whether we're going to extend this order.

And so I'm going to take the I can consider by Supreme Court precedent the factual findings made in the initial case as well as the extension, because those are findings in our final as the Supreme Court has stated in the

15

same decision from July 14, 2023. And so I'm going to grant the motion to quash Attorney Sternenberg's subpoena. All right.

Yeah, go ahead, Mr. Albrecht.

MR. ALBRECHT: Yes, Your Honor. You've already decided to extend the order, and I'd like to know what your jurisdiction was to do that.

THE COURT: Mr. Albrecht, I've made a ruling regarding a motion to quash. I have not decide -- I decided the extension based on the pleadings and the objection that was filed back in February. What happens tomorrow has not been determined yet. So my jurisdiction is under 173(B) and my jurisdiction is under the Supreme Court's recent orders, both in October as well as today, which gave this trial court the ability to schedule -- "the trial court's decision in any other proceeding the trial court deems necessary to resolve the issues before it."

So the Supreme Court has given this Court the authority to make these decisions within 30 days of October 20th, 2023. That is not a suggestion. A Supreme Court order is a mandate. And this trial court, being a court of inferior jurisdiction, is required to comply with the Supreme Court's orders. And that's what I'm doing. So my ruling on Attorney Sternenberg's remains the same. All right.

Next issue is on the motion to quash Judge King's


www.escribers.net | 800-257-0885

16

subpoena.  So once again, Mr. Albrecht, I've reviewed both the motion and the objection.  Do you want to add any additional comment to your objection, sir?

MR. ALBRECHT:  So whether I'm receiving a fair trial is always relevant.  Judge King's deposition is directly relevant to whether I'm receiving a fair trial.  His deposition discusses my case.  His deposition, one moment, or the piece of it that I have, because he only has his excerpt.  One moment, Your Honor.

THE COURT:  Sure.  Take your time, sir.

MR. ALBRECHT:  Okay.  So at page 26, lines 12 to 16, Judge King was asked, question, "Did you tell the Judicial Conduct Committee?"  He replied, "Did I tell the judicial Conduct Committee what?"  He answered about what we'd found regarding the transcript in the Albrecht case.  And he replied that, yes.  You know, he certainly has personal knowledge of the case.  That's certainly clear from the deposition.

If you look at the exhibits and my requests for findings that I submitted for this hearing, you will note -- hang on.  Let me find the exhibit list.  So Judge King's testimony would be directly relevant to just about everything in the exhibit list you received today.  It would be relevant to the 11/12/2020 email exchange between eScribers and the New Hampshire Judicial Branch.  Maybe not directly relevant to the email eScribers wrote me, but his testimony on the November

13th, 2020, email that Judge King wrote to Master DalPra is directly relevant. It discusses -- the email is directly about evidence in my case.

The fact that Judge King was aware that the Judicial Conduct Committee dismissed Mr. DalPra's complaint on February 16th, 2021, is directly relevant to this case and whether I'm receiving a fair hearing. When you look at the December 1st, 2021st New Hampshire Supreme Court invoice, with the first version of that, it's inaccurate because of Judge King. When you go to the December 10th, 2021, New Hampshire Supreme Court order, that order discusses the transcripts being accurate.

When you go to 12/15/2021, the Supreme -- there's a Supreme Court invoice to purchase a second transcript. The police report, Exhibit 8, discusses that there's a -- according to eScribers, New Hampshire Judicial Branch policy that you leave that out and I think Judge King should testify as to the accuracy of that.

You've got a whole investigation from a public integrity unit as Exhibit 9 4/22/2022, they went down a rabbit hole because they didn't have access to Judge King's email or deposition. I think Judge King should testify about why that's the case.

You've got the deposition itself, which we only have a partial or redacted copy of, (indiscernible) is about my case, how can I have any semblance of due process if I don't

see the whole thing?

You've got, finally, after that, after the Supreme Court has already issued prior orders in this appeal, they found that Master DalPra committed judicial misconduct. But that was long after prior orders that even Judge Derby based his first order on. And that was the order of events here is significant. And it's not until December 20th, 2022, over two years later, and that's Exhibit 12 that I give you today, that we even have a complete 11/6/2020 transcript.

And Judge Curran based the first one year extension off of what happened on 11/6/2020. And if we don't have an accurate version of that until 2022 then how could even Judge King's first one year extension have merit? He based it on inaccurate information. Two years later, we have accurate information and Judge King should testify about that.

His email discusses specifically -- he wrote an email on November 13th, 2020, seven days after the hearing that's just come to light. He writes, Bruce, I'm sorry to have to be writing this email. He discusses on November 6th, 2020, you had what I believe was a telephonic hearing in what was obviously a very difficult matter, Albrecht and Albrecht.

So when I go to Judge King's motion to quash, you look at some of the claims here. The documents requested are not relevant to any claims or defenses. Well, the Supreme Court said they were highly relevant in its December 10th,

escribers

www.escribers.net | 800-257-0885

19

2021 order.

In terms of time, we're seven and a half months out from when RSA 173 says we're supposed to have a hearing. And in terms of in a reasonably short period of time, I did it as quickly as I could. I mean, I'm certainly not the reason we're holding a hearing seven and a half months after you already decided to grant Ms. Albrecht's one year extension and it was supposed to be held within 30 days.

So I think her argument in paragraph 3 is not merit, has no merit, 2 or 3, it has no merit. Again, (indiscernible) that they're not relevant, they're directly relevant. They're about this case. The, I think, (indiscernible) paragraph 5, that Judge King has no personal knowledge of any claim or defense by either party in this matter is ludicrous when he's writing emails about it that -- not only was he writing emails about it, they're very substantive. They're not even administrative in nature. They substantially have affected the adjudication of this case. Their court -- excuse me, adjudicatory in nature under Article 8 of the State Constitution.

I'll admit, at paragraph 6, supervising caseload management, I'd like to ask Judge King why, if he supervises caseload management, why we're having a hearing seven and a half months later when the statute says 30 days. It's his job to supervise caseload management; he should speak to that.

20

And implementing established policies and orders.  I mean, I think Judge King needs to testify about, again, why we're having an October -- as far as hearing is seven and a half months later.  Isn't he in charge of that?

The claim in paragraph 5, and the subject matter of that deposition, does not relate to pending (indiscernible) here.  It directly does.  There's a pending claim or defense that I'm not receiving a fair trial under Part 1, Article 38, and I'm not receiving a fair trial under the 14th Amendment. The case law for that, I would cite, for the State would be (indiscernible).  For federal would be State v. (Indiscernible).

And again, I would remind the Court that the federal due process requirements are an objective standard of whether under a realistic appraisal of psychological tenets using human weaknesses.  The issues of such a risk of -- a risk, that this is a risk, of bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.  Judge King needs to testify as to whether that's happening here.  It's not.  My position is it's not and his testimony is critical to address that issue. Again, I would ask that paragraph 9 essentially be stricken as irrelevant.  And that's my commentary on his motion to quash.

THE COURT:  Thank you, Mr. Albrecht.

Attorney Fontaine, do you have anything you want to



21

say, sir?

MR. FONTAINE:  The same position I took with regards to the other one.  That any potential testimony of Judge King or -- is not relevant to the very limited issue that you are deciding on remand tomorrow.

THE COURT:  Okay.

Attorney Denny, do you have anything you want to add to your motion to quash?

MS. DENNY:  Only that I appreciate that you explained the limited scope hearing tomorrow and that I think it just further clarifies that Judge King's, or the information that Mr. Albrecht is seeking, doesn't have any relevance to the limited scope that's going to be raised tomorrow.

MR. ALBRECHT:  Is Attorney Denny, excuse me if I'm out of order, aware of the Supreme Court order that came in that is asking for a fully developed factual record?  I think this is critical to the Supreme Court's request for a fully developed factual record.

THE COURT:  I don't agree, Mr. Albrecht.  Given what the scope of tomorrow's hearing on, Judge King does not have any evidence regarding the nature of whether there is a current need for an extension or a restraining order.  The testimony you talk about were regarding of marital orders that were vacated by the Supreme Court, or actually, by myself,

actually. The Supreme Court vacated the DV order, and so we had a hearing in February of 2022. I issued an 11-page decision after that order, then issued a multi-page motion to reconsider. That has been affirmed by the Supreme Court. And so Judge King has no offer to that.

With respect to the hearing being delayed, Mr. Albrecht, I direct your attention to the October 20th, 2023, order from our New Hampshire Supreme Court, and I'm quoting, all the trial court -- "Although the trial court scheduled a hearing as provided under the statute, the Defendant filed his notice of appeal the day before the hearing. The trial court understandably interpreted the Defendant's appeal to divest it of continuing jurisdiction, prompting the Court to cancel the hearing."

Judge King has nothing to offer regarding that, as the Supreme Court has already weighed in on that issue. So the motion to quash Judge King's subpoena is granted. He does not need to appear tomorrow.

We'll next address the motion to quash Attorney Creegan. Mr. Albrecht, what do you want to be heard on that, other than your objection, sir, which I do have right in front of me?

(Pause)

THE COURT: Mr. Albrecht?

MR. ALBRECHT: Yes.



23

THE COURT:  Do you have anything to offer?

MR. ALBRECHT:  Oh, you were waiting on me.

THE COURT:  Yes.

MR. ALBRECHT:  I'm sorry.  I didn't realize that. So again, getting back to the key issues of whether (indiscernible) the trial.  Your Honor received a motion to take judicial notice of a Fifth Circuit Court of opinion and lead relevant case law.  Rules for judicial notice are "shall".  I construe "shall" as mandatory.  Can you let me know if you've reviewed that case and the relevant law review articles?

THE COURT:  I have not, sir.

MR. ALBRECHT:  So when did I file that?  So not only did Ms. Albrecht not object --

THE COURT:  So no --

MR. ALBRECHT:  One moment.

THE COURT:  No.  Mr. Albrecht, I want you to address the objection to the motion to quash from Attorney Creegan.

MR. ALBRECHT:  This is directly relevant because I cite back to case law.  Yes.  So Index 222, 1024, 2023.  This is directly relevant if Your Honor has not yet reviewed that. And Attorney Fontaine didn't even object.  And it's been on your desk how long now?  And that's directly relevant to Attorney Creegan's motion to quash in my objection.  So I don't believe Your Honor is prepared to address that today.

24

MR. FONTAINE: Judge, this is Mike Fontaine. I would like a clarification from Mr. Albrecht as to what index number he's referencing again?

THE COURT: 222.

MR. ALBRECHT: One moment. I have it up here. Index number 222.

THE COURT: So I disagree with your --

MR. FONTAINE: Thank you.

THE COURT: -- I disagree with your opinion, Mr. Albrecht. Please proceed.

MR. ALBRECHT: One moment, Your Honor.

THE COURT: Yes. You may take a moment, sir.

MR. ALBRECHT: So omitting some internal citations, the Fifth Circuit has recently observed many divorce lawyers routinely recommend to pursue the civil protector or protection orders for clients in divorce proceedings as a tactical leverage device. Civil protective orders are deployed is, quote, "an affirmative element of divorce strategy. That's because civil protective orders can help a party in a divorce proceeding to secure favorable ruling on critical issues such as marital and child support, exclusion from marital residence, and property disposition. Protective orders can also be a powerful strategic tool in custody disputes. This makes civil protective orders a tempting target for abuse.

"Judges have expressed concern with the serious policy implications of permitting allegations of domestic violence to be used in divorce proceedings, citing no -- citing another case, noting the growing trend to use protection orders as tactical weapons in divorce cases and for good reasons.  Not all parties to a divorce are about using protective orders, not for their intended purpose, but solely to gain advantage in a dissolution.

"Anyone who is willing to commit perjury and spend months or even years planning to file a domestic violence complaint in an opportune moment in order to gain the upper hand in the divorce proceedings.  So a plaintiff willing to exaggerate past incidents or even commit perjury and have access to a responsive support group, a sympathetic court, and eliminating immediate relief."  Your Honor, can you --

"Moreover, these concerns are exacerbated by the fact that judges are too often ill-equipped to prevent abuse. Family Court judges may face enormous pressure to grant civil protective orders and no incentive to deny them.  For example, family court judges may receive mandatory training, which they warrant about the unfavorable (indiscernible) results, if they deny requests for civil protective orders."

As one judge has noted in newspaper headlines be death to a municipal court judge's career.  So the prospect of an unfavorable newspaper headline is a frightening one.  To

26

quote another judge, "Your job is not to become concerned about all the Constitutional rights of the defendant they're violating if you grant a restraining order.  Throw them out in the street, give him the clothes on his back, and tell him deal with it."  Yet another judge said, "If there is any doubt in your mind about what to do, you should issue the restraining order."

So what's key here, Your Honor, is you already decided to issue the restraining order.  You already did.  And I'm not sure what the burden is to undo that.  I'd be (indiscernible) to say that if there's -- if you have any doubt, you have to issue it.  It's a complete reversal of innocent proven guilty.  That's not a fair trial in a civil proceeding.

What's other key here is training.  What's been subpoenaed from the officer of the courts.  And it would be, again, my position these are also government records under Part 1, Article 8, as they directly relate to adjudication of cases is I need to see if you even have any confidence in the future here at all that I'm receiving anything close to a fair trial given you've already pre-decided to extend the order. And if you could explain what good -- what does good cause mean, Your Honor?  What's standard for good cause?

THE COURT:  So Mr. Albrecht, I direct your attention once again to the Supreme Court of New Hampshire, which issued

27

an order affirming my extension that I issued on February 25th, 2023 -- 2, sorry '22.  The first page of that, sir, the Supreme Court did a whole paragraph as to what standard the court is bound by so.  And they issued that and then they said that decision mandate back in August 16th.

Mr. Albrecht, you should also note, sir, that the rule of evidence that you cite, you only cited a portion of it, sir.  So I want to direct your attention to the entire rule.  So when it comes to judicial notice of law, sir, it says the court may take judicial notice of law, including decisional, Constitutional, and public statutory law.  It only says when mandatory shall the court take judicial notice.  But you haven't indicated, sir, that it's mandatory for me to take judicial notice of the case from the Fifth Circuit, which is not binding precedent on the New Hampshire state court.

And our First Circuit decision, unless it's on federal Constitutional matters, what may be binding on a state court as well, so you're directed to the Supreme Court's decision on July 14th, 2023, as your guidance that you need as to what good cause means.  Okay, Mr. Albrecht?

MR. ALBRECHT:  Could you repeat the last sentence?

THE COURT:  So you're directed to look at, sir, July 14th, 2023, Supreme Court decision in your -- in this case --

MR. ALBRECHT:  Okay.  One moment.  Let me find that, Your Honor.



28

THE COURT: Sure.

MR. ALBRECHT: What docket is that? Appellant docket?

THE COURT: I don't know, Mr. Albrecht. It's the July -- it's a July 20th -- July 14th, 2023, order. It's 222 -- 20220284. So --

MR. ALBRECHT: Okay.

THE COURT: I'm going to -- I'm going to hear -- hold on. First, I'm going to hear -- while you read that, sir, I'm going to hear from Attorney Fontaine, then Attorney Denny.

Attorney Fontaine?

MR. FONTAINE: Thank you. Once again, Judge, same position. The testimony of Ms. Creegan has no relevance to the very limited issue that you are deciding tomorrow in the hearing scheduled for tomorrow. And therefore, I don't believe that her testimony should be required.

THE COURT: Attorney Denny?

MS. DENNY: Yes. Just that Mr. Albrecht hasn't provided any more justification for why those materials are relevant to the hearing tomorrow. And the (indiscernible) case really doesn't support what he is hoping that it will. It doesn't -- it's completely irrelevant to the situation.

THE COURT: Mr. Albrecht, do you have anything else to add on the motion to quash the subpoena for Attorney

Creegan?

MR. ALBRECHT:  Your Honor, whether I'm receiving a fair trial under Article 35, whether I'm receiving equal protection under Article 10 and the State Constitution, and whether I receiving equal protection and due process under the 14th Amendment of the U.S. Constitution is always relevant.

THE COURT:  Anything else, Mr. Albrecht?

MR. ALBRECHT:  I would like to make an oral motion for instruction from you what constitutes good cause because I don't know what that means when you've already decided against me.

THE COURT:  Mr. Albrecht, good --

MR. ALBRECHT:  So I'd like to know what is properly before the Court tomorrow?

THE COURT:  So what's proper before the Court is --

MR. ALBRECHT:  And when you say narrow, what pleadings?

THE COURT:  So Mr. Albrecht, good cause is defined in the Supreme Court order that I told you about, sir.  So you can read that to determine what good cause is.  Consistent with the --

MR. ALBRECHT:  Can you direct me to the case --

THE COURT:  -- hold on Mr. Albrecht.

MR. ALBRECHT:  -- correct case where it says, "good cause"?



30

THE COURT:  I'll read it to you.  "To determine whether good cause exists, the trial court must assess whether the current conditions are such that there is still concern for the safety and well-being of the plaintiff."  They cite MacPherson v. Weiner.  "In its assessment, the trial court must review the circumstances giving rise to the original protective order and any violation of the order.  The trial court should also take into --"

MR. ALBRECHT:  Well, the circumstances of the -- I'm sorry, Your Honor.

THE COURT:  You cut me off, Mr. Albrecht.

MR. ALBRECHT:  But the circumstances --

THE COURT:  Hold on, Mr. Albrecht.

MR. ALBRECHT:  -- gave rise.

THE COURT:  Hold on, Mr. -- Mr. Albrecht, I gave you the courtesy of speaking without cutting me off.  Please do the same thing, sir.  Okay?  Thank you.  "The trial court should also take into account any present and reasonable fear by the plaintiff, whether the trial court determines that the circumstances are such that without a protective order, the plaintiffs safety and well-being would be in jeopardy, good cause warrants an extension."  That's from a decision in this case affirming the extension that I issued in February of 2022.  That's the standard we're going by for tomorrow, Mr. Albrecht.

31

MR. ALBRECHT:  So what's the standard for her having any cause to fear for her physical safety?

THE COURT:  Okay.

MR. ALBRECHT:  What are the objective standards for that?

THE COURT:  Okay.  Well, sir, you can read the language what the Supreme Court wrote.  You want any further guidance; you can hire a lawyer.  I probably won't find one by tomorrow, sir, but I'm not going to explain what each word means to you, sir.  That's not my responsibility.  My responsibility is to follow the law directed by the Supreme Court.  And I will take into consideration any present and reasonable fear by the Plaintiff.  That's an objective person standard.

MR. ALBRECHT:  Okay.

THE COURT:  All right.  So I'm going to grant the motion to quash Attorney Creegan's subpoena.  She doesn't need to appear tomorrow.  The last one is Attorney Waystack's motion to quash.

Attorney Waystack, you were patient, sir.  So do you want to offer anything on your motion?

MR. WAYSTACK:  Sure.  Just a couple things, Judge. I have read Mr. Albrecht's response.  I just want to call two things to your attention.  In paragraph 4, Mr. Albrecht has stated that I have personal knowledge about the facts of his

32

case, and he includes a give-and-take a bit, question and answer, on the Judge Introcaso, former Judge Introcaso case. In that case, Your Honor, I was retained by the Judicial Conduct Committee to prosecute, and Mr. Albrecht's case was one of seven cases wherein Judge Introcaso appointed Kathleen Sternenberg as a guardian. The issue there was that Kathleen Sternenberg was on Judge Introcaso's recusal list.

I learned nothing about the facts of Mr. Albrecht's case. I've never met Mr. Albrecht. I've never spoken with Mr. Albrecht, nor Ms. Albrecht, for that matter. And so the reference in paragraph 4 of Mr. Albrecht's response really does not shed any light on the issue.

More importantly, in the response in paragraph 5 of Mr. Albrecht's response, he says I have personal knowledge of his case through Judge King's deposition, and he mentioned it earlier, page 26, lines 12 through 16. He lays it out in the paragraph. Those are not my questions and answers. Those are the questions posed by the attorney for former Master Bruce DalPra. And so he's attributing something to me that I didn't say.

But the simple fact of the matter is I also prosecuted the former Master DalPra. Again, I didn't get into any of the facts in Mr. Albrecht's case. More importantly, my understanding, based on the caption of this case, Judge, is that it's a continuation of a domestic violence order. I know

absolutely zilch about that.  And so the final thing I'll say is, so I would as much as I'd like to go down and hear you handle this case, Judge, I really -- I don't think I should appear tomorrow.

And moreover, and importantly, this subpoena to me was a subpoena duces tecum.  And I have no intention, unless you order otherwise, of turning over the deposition of Judge King at the DalPra judicial conduct hearing matter or deposition.  That -- there was about two or three sentences of that that were going to be used at the judicial conduct hearing in Judge DalPra.  The rest of the deposition, it was totally redacted, that deposition is not in the public domain at all.  And I see absolutely no reason that I should be even be required to appear or to produce the King deposition, which was on wholly unrelated matters in order for Mr. Albrecht to use it at his domestic violence hearing tomorrow.

THE COURT:  Okay.  Mr. Albrecht?

MR. ALBRECHT:  So if I can tease apart a couple of different things that Mr. Waystack said.  First, a correction, and I don't think he'll disagree with me.  I think it was actually either nine or eight, nine or ten cases, depending on how you count.  So just to kind of run through those to be specific.  The first is Merrifield v. Cox, 657-2011-DM-00565 and Sobell v. Sobell, 659-2013-DM-00848, Crawford v Crawford, 226-2008-DM-00525, Covart v. Covart, 659-2015-DM-00463.  Then

34

Albrecht v. Albrecht, 659-2016-DM-00288.  Yaitras v. Yaitras, 659-2016-DM-00332, Campbell v. Partello, 659-2018-DM-00702. Then the next one or two related cases Loudermilk v. Montgomery.  Morell v. Montgomery, it's the same.  Montgomery, 659-2015-DM-00185, 659-2019-DM-00383.  And last, but not least, Ausiaikova v. Meckel, 659-2019-DM-00414.  Appeal on that is 2020-0160.

I do have some concerns there, particularly February 19th you've got trial orders where Hamblett & Kerrigan is fully aware of the conflict and Julie Introcaso is approving the fee increases.  And (indiscernible) v. Master DalPra and yourself are all aware this is going on even -- and I believe you also served as counsel for, or happened to encounter it also, in Loudermilk in Montgomery.

So I also have to question, now that she's no longer paying you, why she's getting the pro se treatment in the recent hearings where she's appeared before you.  And I would ask you to take judicial notice of hearings.  And this is about equal rights and equal protection and equal access for pro se litigants.  And I just want to make sure that we're both getting treated the same, given that I was never your client before appearing before you and she was your client before, and now she's appearing before you.  And I just want to make sure we're getting the same treatment.  If you give me a moment, I can get the dates of those hearings.

35

THE COURT: That's not relevant, Mr. -- Mr. Albrecht, that's not relevant to this case, sir. Do you have anything you want to add regarding Attorney Waystack?

MR. ALBRECHT: I would respect -- well, he said there were seven, and I said there were nine or ten based on how we're counting. I'm hoping that there'll be something we can reach an agreement on, but on that. And then, I think the crux of the matter here though, as I put in his -- in my objection. I certainly don't require his physical appearance. I'd be more than happy to have him appear remotely. But I think the crux of the matter is the subpoena duces tecum. He's got the complete, unredacted deposition. The deposition is about my case. It's specifically about my case. It's specifically about how Judge King handled my case. If you're denying me access to how Judge King handled my case, that strikes to the heart of the matter of whether I'm receiving a fair trial under either Article 35 of the State Constitution or Article 14 of the U.S. Constitution. And again, strikes to the heart to the respective standards for those in Tapply v. Zukatis and Caperton v. AT Massey Coal, and whether I'm getting a fair trial, sir, is always relevant.

THE COURT: Anything else, Mr. Albrecht?

MR. ALBRECHT: I'd just like to hear if Mr. -- on the narrow issue of whether there's seven or nine if Mr. Waystack will go with my view on that because I completely



36

don't -- disagree.  And if Mr. Waystack also, sort of, with -- we just agree to disagree that the crux of the matter of the subpoena is the duces tecum second part, because if he were to email me a PDF, then -- I think he's familiar with this, he may not have done the questioning, but he certainly -- he was there when it was taken for the whole thing.  Would that be correct, Mr. Waystack?

MR. WAYSTACK:  I'm not going to respond directly to your questions, Mr. Albrecht, unless the Judge orders me to do so.

THE COURT:  No.

MR. WAYSTACK:  This is a hearing before the Court. This is not a interrogatory between you and me.

THE COURT:  I agree with Attorney Waystack, so no, Mr. Albrecht.  This is your turn to listen, sir.  You've been given extensive amount of time to lay forth your position. I'm granting the motion to quash the subpoena duces tecum. Attorney Waystack does not need to appear tomorrow or provide any documents.  The limited scope of tomorrow's hearing is whether there's current -- whether there's good cause to extend the restraining order.  Mr. Waystack, based on your proffer, has no reliable evidence that's going to go to that. And so the motion to quash is granted.  Thank you, Mr. Waystack -- Attorney Waystack.

MR. WAYSTACK:  Thank you, Your Honor.



37

THE COURT: All right. Attorney Fontaine, you had the issue with one of your employees, sir?

MR. FONTAINE: Yes.

THE COURT: You want to be heard on that?

MR. FONTAINE: Judge, just -- yes, please. If I could be heard briefly. We filed an ex parte motion to quash prior to the originally scheduled hearing. That was to be addressed at the hearing, or as I recall, the order. The Supreme Court's order that was issued remanding this matter to you occurred, I think, at this point over 20 days ago. Mr. Albrecht has never filed an objection to that motion. I think the reasons outlined in my motion support your quashing the subpoena of my employee Wendy Borrun as specifically there's been no objection filed by --

THE COURT: Okay. All right.

MR. ALBRECHT: I disagree, Your Honor.

THE COURT: Yes.

MR. ALBRECHT: I can find the docket if you want.

THE COURT: Yes. Go ahead, sir.

MR. ALBRECHT: I filed an objection Index 186, and you ordered that the case should be scheduled for a prompt hearing with Petitioner and Respondent present on the hearing on the ex-parte motion and any orders issued. It's scheduled for March 30th, 2023, at 11:30. You have the motion and the objections.



38

MR. FONTAINE:  I've never seen that objection.

MR. ALBRECHT:  Seven and a half months later on an ex parte.

THE COURT:  Okay.  Sir, do you want to be heard on the motion to quash Attorney, sorry, Ms. Wendy Borrun's subpoena.  Mr. Albrecht?

MR. ALBRECHT:  Is Attorney Fontaine willing to have Ms. Borrun appear as a witness?

MR. FONTAINE:  No.  I stated my objection.  I have stated in my motion to quash my reasoning for not having her appear.

MR. ALBRECHT:  Well, if you give me just a moment, let me find my objection.  That will be just this one minute.

(Pause)

THE COURT:  Mr. Albrecht, you have thirty seconds, sir.

MR. ALBRECHT:  Yes, I -- just a moment.  It's almost -- wrong year.  I don't have it.  I would need to spend a little time.  But it concerns that the -- in Ms. Albrecht's original entire petition, docket number 1 was essentially filled out by Wendy Borrun.  It's in her handwriting.  It's not even in Ms. Albrecht's handwriting.  And the protocols are that Ms. Albrecht is supposed to be present in court to do that.  And she wasn't.

And so starting at docket one, I would issue an


www.escribers.net | 800-257-0885

offer of proof if Ms. Borrun would testify that that was her handwriting on the petition. And if she wants to dispute that, so great. But my offer of proof is Ms. Borrun would testify that she filled out that -- the entire petition was filled out in her handwriting for Ms. Albrecht and if it was, Ms. Albrecht wasn't -- Ms. Albrecht didn't even --

THE COURT: Attorney --

MR. ALBRECHT: -- I don't think that's what the form says you're supposed to do.

THE COURT: So you're saying that -- you're saying that the initial petition in 2019 was in Ms. Borrun's handwriting?

MR. ALBRECHT: Correct.

THE COURT: Okay.

Attorney Fontaine?

MR. FONTAINE: Sure. Judge, that's no different than someone typing something at someone's office. That's a form document. That's not a document that can be put into word processing. And so the document itself was completed by a paralegal. That document was signed under oath by Ms. Albrecht, who is on this call and could attest to the fact that that -- those statements contained in there were statements that she was making and that simply were written down onto a form document by Ms. Borrun that, again, she could easily testify to that right now.

40

THE COURT:  Yeah, no need to that, because I'm going to direct both parties attention to the July 14th, 2023, decision from the New Hampshire Supreme Court when it said the December 2019 order is final, which is underlined.  That's emphasis included.  And that similarly underlined "our order upholding the initial protective order is also final", which is underlined, so based on that, I'm granting your motion to quash Ms. Borrun's subpoena.  She doesn't need to appear tomorrow.

The next one we're going to address is Ms. Introcaso.  Mr. Albrecht, can you give me a proffer as to what you intend Ms. Introcaso's testimony to be tomorrow?

MR. ALBRECHT:  I -- she hasn't received service, so I don't anticipate she would show.

THE COURT:  Okay.  All right.  So no need to address that.

MR. ALBRECHT:  I can give you -- I can give you a proffer from her deposition --

THE COURT:  No.

MR. ALBRECHT:  -- that she was aware of the conflicts of Bruce -- between Ms. Sternenberg and Bruce DalPra since 2014 and failed to disclose it.

THE COURT:  Okay.  So --

MR. ALBRECHT:  And Master DalPra failed to disclose it in 2014 also.



41

THE COURT: Okay.

MR. ALBRECHT: It's right in her deposition.

THE COURT: Well, if she is served, I'm going to quash her subpoena, because once again, as my rulings throughout this hearing has noted, the standard tomorrow is limited to whether there's currently good cause. So that's to be quashed. Attorney Piela, what's proffer as to his testimony tomorrow?

MR. ALBRECHT: His testimony would be your role in the task, Your Honor's role in the "cash for kids" scheme and knowledge of Ms. Introcaso's, sort of, improper fee increases on Kathleen Sternenberg's orders that Your Honor was fully aware of that tax attorney Rauseo while the two of you were working as Hamblett & Kerrigan. And that Hamblett & Kerrigan profited while representing Laura Montgomery was paying you back then to appear with Ms. Introcaso, excuse me, with Kathleen Sternenberg in front of Ms. Introcaso. And these days, now that she's kind of been no strife on that, she's just appearing in front of you pro se in her current case.

THE COURT: Attorney Fontaine, do you have any comment?

MR. FONTAINE: No.

THE COURT: Okay. So I'm striking Attorney Piela's subpoena as well. That is not relevant to the issue that we're appearing to tomorrow. What we're dealing with tomorrow

42

is whether there's good cause in this case for the restraining order to be extended.  Next one is Ms. --

MR. ALBRECHT:  You have already decided there's good cause, and I need to know why, Your Honor.

THE COURT:  So Mr. Albrecht --

MR. ALBRECHT:  Back in February, you decided there was good cause.

THE COURT:  And it was based on the pleadings, sir.

MR. ALBRECHT:  Then why are we having a hearing tomorrow?

THE COURT:  Well --

MR. ALBRECHT:  If you've already decided the issue?

THE COURT:  I decided the issue back in February as consistent with the protocols, Mr. Albrecht.  That's consistent.  That's what all judges do.  I scheduled for a hearing.  You filed an appeal.  The Supreme Court indicated in its April 2022 order, the court understands why the hearing was continued, so Supreme Court ordered it to be done within 30 days, a mandate that I am going to follow, and we'll proceed tomorrow.

So there are two more witnesses listed.  Could you give me a proffer regarding the testimony of Ms. Vivian Girard, please?

MR. ALBRECHT:  Ms. Vivian Girard would testify that I have scrupulously obeyed this order, that it's been in

effect since 2019. And even though Ms. Albrecht is a -- well, Ms. Albrecht bought her home in Michigan in October '15 and according to prior testimony went out sometime in October and didn't return. Then at the telephonic hearing, she testified she lives in California. But whether it's California or Michigan, the order is that a prior case law, this is apparently the least restrictive means possible to protect Ms. Albrecht is for me to stay 2000 feet away from Collinsville Bible Church in Massachusetts. So I guess that's super scary to her.

But I'm allowed within 1000 feet of her person and apparently, I failed to appear in a Michigan court. You will sua sponte accuse me of violating the order, but Ms. Girard would certainly testify that I have scrupulously obeyed it with the regard of the church by not even being able to attend a funeral for a close relative of hers that was within the 2000 feet buffer zone in Massachusetts, that this -- the New Hampshire Judicial Branch is sort of declared as the least restrictive means possible to protect Ms. Albrecht.

THE COURT: Attorney Fontaine?

MR. FONTAINE: Judge, I guess with regards to his proffer there, obviously Ms. Girard could not possibly testify that Mr. Albrecht was in compliance with this order at all times. And in fact, there'll be specific evidence presented tomorrow as to the basis for my client's continued concern for

44

her safety.  And --

MR. ALBRECHT:  I haven't been noticed of that, So I would ask for a continuance.

THE COURT:  I haven't --

MR. ALBRECHT:  He hasn't provided it to me within ten days of the hearing.  I object.  I would like it stricken.

THE COURT:  Okay.  Mr. Albrecht, this is a response to the proffer.  It's not being considered for tomorrow's hearing.  You can address the issue of any evidence tomorrow.  Okay, sir?

So with respect to the proffer made by Mr. Abrecht, Attorney Fontaine, do you have anything else?

MR. FONTAINE:  No, Judge.  I'll leave the issue up to you to decide.

THE COURT:  Okay.  The issue of Ms. Girard's testimony is, once again, addressed in the Supreme Court order.  The trial court, Rauseo J. erred by preventing -- oh, sorry, that's (indiscernible) -- that the trial court, Rauseo J. erred by preventing the defendant from calling a particular witness to testify as to the defendant's compliance with the protective order on a particular occasion.  We disagree.  I don't -- Ms. Girard does not have, based on the proffer, sufficient evidence for the Court to consider, and in light of the Court's prior ruling back in February of 2022.  So she will be excluded from providing any offers of proof in that

regard.

The last one is Mr. David Smith.  Mr. Albrecht, can you make a proffer regarding Mr. David Smith's testimony?

MR. ALBRECHT:  Ms. Albrecht has previously testified under oath that she has never filed a false police report. Mr. David Smith would be there to admit numerous pieces of evidence that she had filed any number of false police reports, and the purpose is to impeach Ms. Albrecht's prior testimony.

THE COURT:  Mr. Fontaine?  Attorney Fontaine?

MR. FONTAINE:  This is not at all relevant to the limited issue before the Court tomorrow.  And therefore --

MR. ALBRECHT:  (Indiscernible)  Yeah.

THE COURT:  Yeah.  Mr. Albrecht, is this the same gentleman that testified back in 2022?

MR. ALBRECHT:  Yes.

THE COURT:  Okay.  So I already heard his testimony and made findings.  And like, once again, I'm referring back to this, the July 14th, 2023 court order regarding res judicata.  So the issue of the first extension, including Mr. Smith's testimony, was considered by the Court.  The Court issued an 11-page decision and a multi-page order on a reconsideration, and that was affirmed.  So Mr. Smith's not going to be allowed to express the same evidence that's already been considered by the Court (indiscernible).

46

MR. ALBRECHT:  He can testify to different police reports or other testimony that he didn't previously provide.

THE COURT:  Yeah.  So Mr. Albrecht, unless there's been a conviction --

MR. ALBRECHT:  Same with Ms. Girard.  Ms. Girard has never provided testimony.

THE COURT:  So Mr. Albrecht, this is not a hearing within a hearing.  You want the Court to find that she filed a false police report without a conviction that she filed a false police report.  This is a limited scope hearing.  And when -- you're not going to have the time to develop or for the Court to actually make a decision as to whether someone committed a crime by filing a false police report, that's the wrong forum.  If there was a conviction for filing a false police report, well, that would go to credibility.  But you don't get the opportunity to try to prove it yourself.  That's not an issue of credibility.  So Mr. Smith won't be allowed to offer any testimony as well.

So we'll adjourn for today.  We'll start at 8:30, sorry, 10:30 sharp, tomorrow for the hearing.  Thank you, everybody.

MR. FONTAINE:  Thank you, Your Honor.

(Proceedings concluded at 3:53 p.m.)

CERTIFICATE

I, Kelly Borngen, a court-approved proofreader, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my professional skills and abilities.

KELLY BORNGEN, CDLT-290                    November 19, 2023
Transcriptionist/Proofreader

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht     Case number: 659-2019-DV-00341     Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 2 | 5 | Katherine (indiscernible) | Katherine Minges | LB |
| | 2 | 17 | you (indiscernible). | you. Please forgive me. | LB |
| | 3 | 1 | you're talking | you're speaking | LB |
| | 4 | 17 | Mr. Albright | Mr. Albrecht | LB |
| | 6 | 1 | (Indiscernible) | Excuse me. | LB |
| | 6 | 3 | I (indiscernible) | I understand | LB |
| | 6 | 9 | seven and a half months later | seven-and-a-half months out later | LB |
| | 7 | 6 | Article 77 | Article 37 | LB |
| | 7 | 21 | (indiscernible) request | commentary, and request | LB |
| | 8 | 1 | to effect | to affect | Correct as is - affect is incorrect - LB |
| | 8 | 22 | motions of quash | motions of quash [sic] | motion to quash - LB |
| | 9 | 8 | Ms. Albrecht's fighting | Ms. Albrecht's spying | LB |
| | 9 | 18 | And (indiscernible) again, | And once again, | "once" is not said; remove (indiscernible) - LB |
| | 10 | 15 | presently (indiscernible) | presently so vague | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht     Email: dana.albrecht@hushmail.com   Phone: 603-809-1097     Date: _____

eScribers, LLC   *   7227 N. 16th Street, Ste 207   Phoenix - AZ - 85020   *   (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**:  Please use the form below to detail requested changes, additions, or deletions.  You must provide your name and contact email address and phone number when submitting this request.

Case name: _Katherine Albrecht v. Dana Albrecht_    Case number: _659-2019-DV-00341_    Hearing Date: _11/15/2023_

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 10 | 21 | you accept | you're extending | to accept - LB |
| | 11 | 25 | (indiscernible) to the presentation | noticed to the presentation | noticed of the presentation - LB |
| | 12 | 8 | I (indiscernible) disagree | I respectfully disagree | LB |
| | 14 | 12 | 173(B) | 173-B | LB |
| | 15 | 13 | judicial | Judicial | LB |
| | 15 | 14 | answered about what we'd found | answered, "About what [he] had found | Quotations correct; "we'd" not "had" - LB |
| | 15 | 15 | regarding the transcript in the Albrecht case. | regarding the transcript in the Albrecht case." | LB |
| | 15 | 16 | that, yes. | to that, "yes." | LB |
| | 16 | 5 | Mr. DalPra's | Master DalPra's | LB |
| | 16 | 11 | being accurate | being inaccurate | LB |
| | 16 | 18-19 | public integrity unit | Public Integrity Unit | LB |
| | 16 | 24 | (indiscernible) is | How can? -- It's | How can -- it's - LB |
| | 18 | 4 | a reasonably | an unreasonably | SEE NOTE BELOW |
| | 18 | 10 | Again, (indiscernible) | Again, 4 | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: _Dana Albrecht_    Email: _dana.albrecht@hushmail.com_    Phone: _603-809-1097_    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: _Katherine Albrecht v. Dana Albrecht_   Case number: _659-2019-DV-00341_   Hearing Date: **11/15/2023**

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 18 | 12 | (indiscernible) paragraph 5 | the claim in paragraph 5 | LB |
| | 18 | 18 | Their court | They're court | LB |
| | 19 | 6 | pending (indiscernible) | pending claims or defenses | LB |
| | 19 | 5 | paragraph 5 | paragraph 7 | LB |
| | 19 | 8 | Part 1, Article 38 | Part I, Article 38 [sic - Article 35] | LB |
| | 19 | 11 | (indiscernible). | Tapply v. Zukatis. | LB |
| | 19 | 11-12 | State v. (Indiscernible). | Caperton v. AT Massey Coal Co. | AT Massey v. Coal (sic) - LB |
| | 19 | 15 | psychological tenets using | psychological tendencies and | LB |
| | 19 | 16 | human weaknessses. The | human weaknesses, the | LB |
| | 22 | 6 | (indiscernible) the trial. | I'm receiving a fair trial. | LB |
| | 22 | 8 | lead | the | read - LB |
| | 22 | 20 | Index 222, 1024, 2023. | Index 222 [filed] 10/24/2023 | LB |
| | 23 | 14 | observed many | observed, "Many | LB |
| | 23 | 17 | civil protector or | civil | civil protector or -- - LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: _Dana Albrecht_   Email: _dana.albrecht@hushmail.com_   Phone: _603-809-1097_   Date: _____

eScribers, LLC   *   7227 N. 16th Street, Ste 207   Phoenix - AZ - 85020   *   (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 23 | 18 | deployed is | deployed as | Correct as is - LB |
| | 23 | 20 | favorable ruling | favorable rulings | LB |
| | 24 | 3 | no -- | note -- | Correct as is - LB |
| | 24 | 12 | the divorce proceedings | a divorce proceeding | Correct as is - LB |
| | 24 | 15 | eliminating immediate | a litany of immediate | LB |
| | 24 | 20 | which they | in which they're | LB |
| | 24 | 21 | warrant about | warned about | LB |
| | 24 | 21 | unfavorable (indiscernible) results | unfavorable publicity that could result | LB |
| | 24 | 23 | noted in newspaper | noted, "a newspaper | LB |
| | 24 | 23 | headlines be | headline can be | LB |
| | 25 | 2 | they're | you're | LB |
| | 25 | 5 | deal with it | "see ya' around" | LB |
| | 25 | 10 | I'd be | I'd read | I bring - LB |
| | 25 | 11 | (indiscernible) | Rahimi | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 25 | 13 | innocent proven | innocent until proven | innocent proven guilty (sic) - LB |
| | 25 | 15 | What's other key | What's also key | Correct as is - LB |
| | 25 | 16 | officer of | office of | LB |
| | 25 | 19 | cases is | cases. | cases, is - LB |
| | 25 | 19 | if you even have | to even have | Correct as is - LB |
| | 25 | 20 | future | judiciary | LB |
| | 27 | 21 | (indiscernible) | Rahimi | LB |
| | 28 | 4 | Article 10 and the State Constitution | Article 10 of the State Constitution | LB |
| | 28 | 5 | whether I | whether I'm | LB |
| | 33 | 2 | 659-2016-DM-00332 | 659-2016-DM-00322 | LB |
| | 33 | 11 | (indiscernible) v. Master DalPra | Mark Derby, Master DalPra | LB |
| | 33 | 14 | Loudermilk in Montgomery | Loudermilk v. Montgomery | Correct as is - LB |
| | 33 | 18 | judicial notice of hearings | judicial notice of those hearings | LB |
| | 34 | 18 | Article 14 | Article 14 [sic - Fourteenth Amendment] | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht   Case number: 659-2019-DV-00341   Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 36 | 18 | the docket | the docket number | LB |
| | 36 | 20 | objection Index 186 | objection. It's Index 186 | LB |
| | 40 | 10 | the task | the cash | LB |
| | 40 | 13 | that tax attorney | that, as attorney | LB |
| | 40 | 18 | been no strife | been milked dry | LB |
| | 42 | 2 | October '15 | on October 15th | LB |
| | 42 | 6 | that a prior case law | that per prior case law | Correct as is - LB |
| | 42 | 12 | I failed to appear | I am compelled to appear | LB |
| | 44 | 11 | Mr. Abrecht | Mr. Albrecht | LB |
| | 44 | 13 | (Indiscernible) Yeah. | Credibility is always relevant. | LB |
| | | | | | |
| | | | | | |
| NOTE | 18 | 4 | And in terms of in a reasonably short period of time, I did it as quickly as I could. | And in terms of -- in a reasonably short period of time. I did it as quickly as I could. | LB |
| | | | | | |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht   Email: dana.albrecht@hushmail.com   Phone: 603-809-1097   Date: _____

1 | P a g e