**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

DANA ALBRECHT

v. Civil No. 23-cv-381-JL-TSM

KATHLEEN STERNENBERG, ET AL.

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION TO AMEND**

Self-represented Plaintiff Dana Albrecht brought this civil rights suit under 42 U.S.C. § 1983 asserting claims for violations of his First and Fourteenth Amendment rights against Defendants.[1] Doc. No. 1. Presently before the court is Plaintiff's motion to amend his Complaint (Doc. No. 56), to which Defendants object. Doc. Nos. 57, 58. For the reasons that follow, the court recommends that the district judge deny Plaintiff's motion to amend.

## BACKGROUND

The following facts are drawn from Plaintiff's proposed Amended Complaint. Doc. No. 55. This suit arises out of state court proceedings in the New Hampshire Circuit Court, 9th Circuit, Family Division regarding Plaintiff's divorce from his then-spouse, Katherine Albrecht, and the

[1] Defendants for whom counsel has appeared are current and former state judges David King, Mark Derby, and Julie Introcaso; former Martial Master Bruce DalPra; former guardian ad litem Kathleen Sternenberg; and the New Hampshire Judicial Branch ("NHJB") (hereinafter "original Defendants"). Plaintiff's proposed Amended Complaint (hereinafter "Amended Complaint") (Doc. No. 55) seeks to add the following individuals as Defendants: Circuit Judge Kevin Rauseo; Circuit Judge John Curran; former New Hampshire Supreme Court ("NHSC") Justice Anna Barbara Hantz Marconi; NHSC Justice Gordon MacDonald; former NHJB General Counsel Mary Ann Dempsey; former NHJB General Counsel Erin Creegan; NHJB General Counsel Jessica King; and any successors to those positions (hereinafter, "proposed amended Defendants"). The court will use the term "Defendants" to refer to counsel for the original Defendants.

custody of their shared children, as well as related domestic violence cases (hereinafter, Plaintiff's "family law matter"). In particular, Plaintiff alleges that while he was adjudicating his family law matter, several Defendants had been or were engaged in unethical behavior that amounted to a "structural due process violation" and the "destruction of the framework within which Plaintiff's case was adjudicated." Id. at ¶ 417.

***Defendants Introcaso and Sternenberg***

The first example of improper or unethical behavior that Plaintiff alleges began in October 2016, when Defendant DalPra recommended that Defendant Sternenberg be appointed as guardian ad litem ("GAL") in Plaintiff's family law matter. Id. at ¶ 72. Defendant Introcaso, a circuit court judge at the time, approved that recommendation. Id. Defendants Sternenberg and Introcaso had a history of being good friends since at least 2014 (predating Plaintiff's family law matter), including that their families would vacation together, and that they were generally close to each other's family. Id. at ¶¶ 20–23. Plaintiff did not learn about this relationship until 2020, after Defendants Sternenberg and Introcaso had been involved in Plaintiff's family law matter. Id. at ¶ 119. According to Plaintiff, Defendants Sternenberg and Introcaso were also involved in at least nine other cases together between September 2013 and December 2018, in which Defendant Introcaso appointed or approved the appointment of Defendant Sternenberg as GAL. Id. at ¶¶ 24–25.

In January 2020, NHJB initiated an ethics investigation into Defendant Introcaso and, on March 23, 2021, the New Hampshire Supreme Court ("NHSC") issued a final order concluding that Defendant Introcaso violated six provisions of the Code of Judicial Conduct. Id. at ¶¶ 41, 110–11; Doc. No. 55-35 at pgs. 2–3 (concluding that Defendant Introcaso violated the following provisions of the Code of Judicial Conduct: Canon 1, Rule 1.1; Canon 1, Rule 1.2; Canon 2, Rule

2.5(A); Canon 2, Rule 2.5(B); Canon 2, Rule 2.11; Canon 2, Rule 2.16(A)). Defendant Introcaso resigned from the bench on February 22, 2021 and pled guilty to misdemeanor offenses of tampering with public records or information and unsworn falsification on November 15, 2021. Doc. No. 55 at ¶ 113; Doc. No. 55-39 at pg. 1. On February 25, 2022, Defendant Introcaso was disbarred. Doc. No. 55 at ¶ 116; Doc. No. 55-39 at pg. 1. Plaintiff requested a deposition from the investigation into Defendant Introcaso, but Defendant Dempsey denied that request. Doc. No. 55 at ¶ 115. Plaintiff alleges that his family law matter was referenced during the Introcaso investigation. Id.

Plaintiff contends that throughout his family law matter, including during various hearings and in orders impacting the custody over his children,[2] several Defendants knew about, but did not inform Plaintiff of or intervene in the conflict of interest between Defendants Sternenberg and Introcaso. Id. at ¶ 67. Specifically, Plaintiff claims that Defendant DalPra knew of this relationship by 2014 (id.), Defendant David King by March 2018 (id. at ¶¶ 57–59), Defendant Rauseo by January 2019 (id. at ¶¶ 46, 51–53), Defendant Derby by April 2019 (id. at ¶¶ 39–40), and Defendant MacDonald by October 2020 (id. at ¶ 109). Plaintiff learned of the conflict through a

[2] Plaintiff alleges that Defendants failed to inform him of the Introcaso-Sternenberg relationship in connection with the following events in Plaintiff's family law matter: (1) the time of Defendant Sternenberg's GAL appointment (Doc. No. 55 at ¶¶ 278, 281, 284, 287, 290); (2) an August 9, 2017 hearing over which Defendant DalPra presided, where Defendant Sternenberg provided extensive testimony, and which resulted in the recommendation that Plaintiff's children move to California (id. at ¶ 73); (3) a May 9, 2019 contempt hearing regarding the Albrechts' parenting plan (id. at ¶ 76); (4) Defendant Introcaso's order dated May 30, 2019, which adopted Defendant DalPra's recommendation and would "later be used against" Plaintiff (id. at ¶ 77); (5) Defendant Derby's order dated June 30, 2019, which adopted Defendant DalPra's June 28, 2019 recommendation to deny a motion for reconsideration (id. at ¶ 78); (6) the New Hampshire Supreme Court's ("NHSC") decision to deny certiorari to review Defendant Introcaso's May 30, 2019 order and Defendant Derby's June 30, 2019 order (id. at ¶¶ 344, 346); and (7) Defendant Derby's December 20, 2019 hearing (id. at ¶¶ 348–49, 352). Plaintiff also alleges that Defendant David King failed to notify Plaintiff of the contents of an email dated February 3, 2020 that described a conflict between Defendants Sternenberg and Introcaso. Id. at ¶ 64.

Union Leader article that was published in October 23, 2020. Id. at ¶ 119. Plaintiff further claims that judges (including Defendant Curran and Defendant Rauseo) continue to use findings of fact and rulings issued while Defendants Sternenberg and Introcaso were involved in Plaintiff's family law matter to extend protective orders or as support for other orders.[3] Id. at ¶¶ 100, 102, 121–23, 133.

***Defendant DalPra***

The next example of misconduct that Plaintiff provides occurred on November 6, 2020, when Defendant DalPra (a New Hampshire Circuit Court judge at the time) engaged in improper behavior during a hearing on motions in Plaintiff's family law matter. Id. at ¶¶ 82–91. In that hearing, Defendant DalPra used expletives, referred to Plaintiff's children as "morons," excused himself to use the bathroom in the middle of the hearing, laughed at inappropriate moments, mocked Plaintiff, and discussed sporting events during testimony. Id. at ¶¶ 83–88; see Doc. No. 55-29 at pg. 80:19–20. On November 13, 2020, Defendant David King, who was the Chief Administrative Judge of the New Hampshire Circuit Court, emailed Defendant DalPra regarding the November 6 hearing and stated that Defendant DalPra's comments during that proceeding did "not demonstrate the patience or dignity expected of judicial officers under Rule 2.8[]" of New Hampshire's Code of Judicial Conduct. Doc. No. 55-30 at pg. 1.

[3] For instance, Plaintiff claims that he attempted to present evidence at a November 15, 2023 hearing about the "the tainted record" that gave rise to the first protective order against him, including evidence from the Introcaso-Sternenberg conflict, but that Defendant Rauseo excluded all evidence of the misconduct and quashed the subpoenas Plaintiff served on prospective witnesses. Doc. No. 55 at ¶¶ 133–34. Plaintiff raised the issue that Defendant Rauseo himself had a conflict with Plaintiff's case because Defendant Rauseo "had represented a party before Judge Introcaso with Sternenberg at GAL, [and] had witnessed the fee arrangement[,]" but Defendant Rauseo dismissed Plaintiff's concern as irrelevant. Id. at ¶ 145.

By August 2022, the Judicial Conduct Committee ("JCC") initiated an investigation into Defendant DalPra. See Doc. Nos. 55-40, 55-41. On August 26, 2022, Defendant David King was deposed as part of that investigation, during which he described Defendant DalPra's behavior in the context of Plaintiff's family law matter. Doc. No. 55 at ¶¶ 106–07; Doc. No. 55-40 at pg. 6:13–16. On November 10, 2022, the NHSC issued its final order in Defendant DalPra's investigation, concluding that he violated several provisions of the Code of Judicial Conduct. Doc. No. 55 at ¶ 118; Doc. No. 55-41 at pgs. 1–2 (concluding that Defendant DalPra violated the following provisions of the Code of Judicial Conduct: Canon 1, Rule 1.2; Rule 2.11; Canon 2, Rule 2.16(A); Canon 2, Rule 2.8(B)). Defendant DalPra retired before the NHSC issued its final ruling on the investigation. Doc. No. 55-41at pg. 1.

***Defendants MacDonald and Hantz Marconi***

Plaintiff also asserts that the appellate process with the NHSC was "compromised" when Plaintiff appealed several rulings in his family law matter and during the NHSC's involvement in reviewing the judicial ethics of Defendants Introcaso and DalPra. Doc. No. 55 at ¶¶ 158, 245, 257, 259. Specifically, Plaintiff claims that the actions of Defendants Justice Hantz Marconi and Chief Justice MacDonald compromised his appellate process. Id. at ¶ 245.

Defendant Hantz Marconi was placed on administrative leave on July 25, 2024 for meeting with then Governor Sununu on June 6, 2024 "to secure a governmental privilege and/or advantage for her which she was not otherwise entitled regarding an investigation into [her husband] Geno Marconi." Id. at ¶¶ 170–72. Defendant Hantz Marconi eventually pled no contest to criminal solicitation for her meeting with Sununu. Id. at ¶¶ 171–72. Between the meeting with Sununu and being placed on administrative leave, Defendant Hantz Marconi participated in decisions pertaining to Plaintiff's family law matter. Id. at ¶¶ 150–52. Defendant Hantz Marconi was also

involved in Defendant Introcaso's and Defendant DalPra's judicial investigations in 2021 and 2022. Id. at ¶¶ 154–56.

Plaintiff alleges that Defendant MacDonald knew of Defendant Introcaso's and Defendant DalPra's misconduct in either his capacity as New Hampshire's Attorney General or the Chief Justice of the NHSC. Id. at ¶¶ 157, 169. Plaintiff also alleges that as Chief Justice, Defendant MacDonald knew of the grand jury subpoenas against Defendant Hantz Marconi in May 2024, but concurred in a ruling that was part of Plaintiff's family law matter on June 8, 2024, which stated that Defendant Hantz Marconi "reviewed th[e] matter and . . . determined that she is not disqualified." Id. at ¶¶ 163, 169. Plaintiff sought clarification of Defendant Hantz Marconi's June 2024 certification, which the NHSC denied. Id. at ¶ 164. Defendant MacDonald concurred in the decision to deny that motion. Id. at ¶ 169. According to Plaintiff, Defendant MacDonald's "overlapping roles" as Chief Justice and former Attorney General are "pervasive" (id. at ¶ 259) and that he ultimately failed to ensure that "Plaintiff's appeal was adjudicated by an impartial tribunal." Id. at ¶ 410.

***Judge Derby***

The final instance of misconduct that Plaintiff alleges occurred on December 6, 2025. According to Plaintiff, Defendant Derby attended the same church service that Plaintiff attended in Kingston, New Hampshire. At that time, Plaintiff was still subject to a protective order that Defendant Derby issued, which stated that Plaintiff could not come within 2,000 feet of a separate church — Collinsville Bible Church in Dracut, Massachusetts. Id. at ¶ 182–83, 185. Plaintiff did not know that Defendant Derby would attend the December 2025 church service. Id. at ¶ 184. Plaintiff claims that Defendant Derby, in his individual capacity, violated Plaintiff's First and Fourteenth Amendment rights by attending the church service.

***Harm Alleged***

With the exception of Defendant Derby, Plaintiff sued all Defendants in the Amended Complaint in their official capacities, and alleges they violated his right to due process based on their respective participation in proceedings that were tainted by the "undisclosed Introcaso-Sternenberg conflict, . . . findings of fact from a hearing at which the presiding judicial officer committed proven misconduct, extensions signed without hearings by judges relying on a record they knew or should have known was tainted, and appellate review conducted by a panel that included a convicted justice." Id. at ¶ 187. Those tainted proceedings, Plaintiff alleges, gave rise to the protective order that is still in effect against him and will remain in effect until 2028. Id.

***Procedural History***

After Plaintiff filed his initial Complaint (Doc. No. 1), Defendants Sternenberg, Introcaso, DalPra, Derby, David King, and the NHJB moved to dismiss the claims against them (Doc. Nos. 5, 18–20). The court granted Defendant Sternenberg's motion to dismiss. Doc. No. 23 (Report and Recommendation ("Sternenberg R&R")); Doc. No. 37 (Order approving Sternenberg R&R). On March 2, 2024, Plaintiff filed an interlocutory appeal of that decision to the First Circuit Court of Appeals. Doc. No. 41. On August 12, 2024, this court stayed the case pending resolution of the interlocutory appeal. Given the pending appeal, the court denied the motions without prejudice.[4]

On August 11, 2025, the First Circuit dismissed Plaintiff's appeal (Doc. No. 44) and, on September 3, 2025, issued a formal mandate. Doc. No. 45. Thereafter, the court lifted the stay

[4] The district judge denied the remaining motions to dismiss for "docket management purposes only" and "without prejudice to the defendants' ability to reinstate those motions . . . after the stay is lifted upon the Court of Appeals' ruling on the interlocutory appeal." Endorsed Order, Aug. 12, 2024 (Laplante, J.).

and Defendants' counsel filed notices reinstating their motions to dismiss. Endorsed Order, Oct. 14, 2025 (Saint-Marc, J.); Doc. Nos. 46–48 (reinstating Defendants' Doc. Nos. 18–20). On November 4, 2025, the court reinstated the motions to dismiss and objections thereto (Doc. Nos. 25–27) Endorsed Order, Nov. 4, 2025 (Saint-Marc, J.).

Plaintiff filed a motion, in which he asked for partial vacatur and clarification of the court's November 4, 2025 Endorsed Order. Doc. No. 49. The court granted Plaintiff's motion to the extent he requested clarification regarding Defendant Sternenberg's dismissal, but denied his requests to vacate part of the November 4, 2025 Endorsed Order, confirm that he may amend his complaint pursuant to Federal Rule of Civil Procedure 12(a)(1)(B), and stay any reply deadlines until he could file an amended complaint. Id. at pg. 2. However, in light of Plaintiff's pro se status, the court gave Plaintiff until December 31, 2025 to supplement his objections to Defendants' motions to dismiss. Id. at pg. 3. The court further instructed Plaintiff that he could not file an amended complaint as of right under Rule 15(a)(1)(B), but could amend with the written consent of the remaining Defendants or by leave of the court pursuant to Rule 15(a)(2). Id. at pg. 4.

Plaintiff filed a motion to amend his Complaint (Doc. No. 56) and an Amended Complaint (Doc. No. 55), in which he re-alleged his claims against the original Defendants (Sternenberg, DalPra, Introcaso, David King, Derby, and the NHJB). Compare Doc. No. 1 at ¶¶ 83–206, with Doc. No. 55 at ¶¶ 274–394. Plaintiff also added claims against new Defendants (Rauseo, Curran, Hantz Marconi, MacDonald, Dempsey, Creegan, and Jessica King) in their official capacities as current or former state court judges or employees of the NHJB. Additionally, Plaintiff added an individual capacity claim against Defendant Derby. Finally, he added facts regarding the newly-

added claims along with requests for relief. Defendants object to Plaintiff's motion to amend. Doc. Nos. 57, 58. The court will first address Plaintiff's motion to amend.

## LEGAL STANDARD

A plaintiff must seek leave of court to amend his complaint.[5] Fed. R. Civ. P. 15(a)(2). In general, leave to amend should be freely given "when justice so requires." Id. However, motions to amend will not be granted if there has been undue delay, bad faith, or undue prejudice to the opposing party, or if the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment is futile if it fails to state a cause of action. Rife v. One W. Bank, 873 F.3d 17, 21 (1st Cir. 2017).

## DISCUSSION

Plaintiff moves to amend his Complaint to add new defendants, supplement the factual record, and "restructure[] the relief sought" to address deficiencies identified in the Sternenberg R&R. Doc. No. 56 at ¶ 3. Defendants object on several grounds. Defendants DalPra, David King,

[5] A plaintiff can also amend as of right — without leave of court — within 21 days after the defendant files a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Plaintiff filed his motion to amend more than 21 days after Defendants filed their motions to dismiss. Accordingly, he cannot amend his complaint as of right and the court will consider his motion to amend pursuant to Fed. R. Civ. P. 15(a). In addition, Plaintiff's attempt to amend his Complaint pursuant to Fed. R. Civ. P 15(d) and 20(a)(2) does not change the court's conclusion that amendment is not warranted. Doc. No. 56 at ¶ 1. First, in considering whether supplementation of facts is appropriate under Rule 15(d), the court "must weigh the totality of the circumstances, including considering the potential futility of supplementation[.]" Doe v. Noem, No. 1:25-CV-10495-IT, 2026 WL 686483, at *4 (D. Mass. Mar. 11, 2026) (internal quotation marks omitted) (quoting U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015)). Second, Rule 20(a)(2) requires that a "right to relief be asserted against each defendant in order to allow their joinder." Charles A. Wright, Arthur R. Miller, Mary K. Kane, & Howard M. Erichson, 7 Fed. Prac. & Proc. § 1657 (3d ed. April 2026 update). For the reasons stated in this R&R, Plaintiff has not shown that adding new facts and parties save his Complaint from being futile. Accordingly, the court will not separately analyze Plaintiff's request to amend his Complaint pursuant to Fed. R. Civ. P 15(d) and 20(a)(2).

Derby, Introcaso, and the NHJB argue that Plaintiff fails to articulate extraordinary circumstances for his delayed filings; his Amended Complaint violates Fed. R. Civ. P. 8(a); and amendment would be futile because Plaintiff's Amended Complaint contains the same defects as his Complaint. Doc. No. 58; see Doc. Nos. 18–20. Defendant Sternenberg filed a separate objection to Plaintiff's motion to amend, asserting that Plaintiff does not add any new claims against her and that this court has already dismissed those claims, so Plaintiff's amendment would be futile. Doc. No. 57.

## I. Rule 8(a)

As an initial matter, the court agrees with Defendants DalPra, David King, Derby, Introcaso, and the NHJB that Plaintiff's amendment fails to comply with Federal Rule of Civil Procedure 8(a). Under that Rule, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). It must also afford defendants a "meaningful opportunity to mount a defense[.]" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotation marks omitted) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). "[C]omplaints that are 'unnecessarily lengthy, repetitive, convoluted, or otherwise difficult to comprehend may be dismissed.'" Currier v. Town of Gilmanton, No. 18-cv-1204-LM, 2019 WL 3779580, at *2 (D.N.H. Aug. 12, 2019) (quoting Chalifoux v. Chalifoux, No. 14-CV-136-SM, 2014 WL 1681626, at *1 (D.N.H. Apr. 25, 2014)).

Here, Plaintiff's Amended Complaint is 159 pages (and 421 paragraphs) in length and appends 48 exhibits. When compared to his Complaint, which was 30 pages and 206 paragraphs in length, his Amended Complaint extends far beyond a short and plain statement. Compare Doc.

No. 1, with Doc. No. 55; see, e.g., Wade v. Tri-Wire Eng'g Sols., Inc., No. CV 20-10523-LTS, 2021 WL 847989, at *1 (D. Mass. Mar. 5, 2021) (82 pages likely failed to comply with Rule 8(a)); Fusco v. Rogers, 18-cv-290-JAW, 2019 WL 1387686, at *3 (D. Me. Mar. 27, 2019) (85 pages that included "immaterial and confusing information" failed to comply with Rule 8(a)). In addition, as Defendants DalPra, David King, Derby, Introcaso, and the NHJB assert, the court already warned Albrecht about the length of his complaint in another case, noting that his "amended complaint includes seventeen counts and 388 paragraphs over 69 pages in clear violation of Federal Rule of Civil Procedure 8(a)." Albrecht v. Judge, N.H. Cir. Ct., No. 25-CV-93-SM, 2025 WL 2300513, at *1 (D.N.H. Aug. 8, 2025).

Accordingly, the district judge should conclude that Plaintiff's 159-page Amended Complaint violates Rule 8(a) for being unnecessarily lengthy and deny Plaintiff's motion to amend on that basis alone.[6] However, as described below, the district judge could also deny Plaintiff's motion to amend for the alternative reason that amendment would be futile.

## II. Futility — Defendant Sternenberg

Defendant Sternenberg argues that Plaintiff's motion to amend to add claims against her should be denied as futile because Plaintiff seeks to add the same claims that this court already dismissed. Where a defendant objects to plaintiff's motion to amend a complaint on futility

[6] Although, for the reasons stated in this R&R, the court need not address Defendants DalPra, David King, Derby, Introcaso, and the NHJB's argument that Plaintiff's motion to amend was untimely in order to recommend that the district judge deny Plaintiff's motion (see Doc. No. 58 at pgs. 4–5), the court notes that that argument is unpersuasive. The court granted Plaintiff until April 1, 2026 to file a motion to amend. Endorsed Order, March 27, 2026. Plaintiff filed his Amended Complaint on April 1, 2026, but filed his motion to amend one day later, on April 2, 2026. The court declines to recommend that Plaintiff's motion to amend should be denied for filing one day beyond the court's deadline where Plaintiff is a pro se litigant and timely filed his proposed Amended Complaint.

grounds, "the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). Under that standard, the court must determine whether the allegations in the amended complaint support the claims therein. Id.

Plaintiff brings eight claims against Defendant Sternenberg in his Amended Complaint (Claims 1, 2, 7, 8, 11, 12, 40, and 45). As to seven of those claims (Claims 1, 2, 7, 8, 11, 12, and 40), Plaintiff admits that they are "restated from the original Complaint filed August 4, 2023, solely for purposes of preservation." Doc. No. 55 at pg. 130. The court dismissed those claims as being barred by quasi-judicial immunity. Doc. No. 23 at pgs. 4–10; Doc. No. 37. Plaintiff appealed that decision (Doc. No. 41), and the First Circuit dismissed that appeal (Doc. No. 44). Because Plaintiff has not changed those claims that were already dismissed, Plaintiff's amendment request is futile and should be denied. See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001) (courts deny motions to amend where an amended complaint "would be futile or would serve no legitimate purpose[]" (internal quotation marks and citation omitted)).

The district court should also deny Plaintiff's motion to amend as to his eighth claim against Defendant Sternenberg (Claim 45), in which Plaintiff alleges that Defendant Sternenberg, along with every other Defendant, "collectively deprived Plaintiff of the constitutional right to a fundamentally fair proceeding before an impartial tribunal, in violation of the Due Process Clause of the Fourteenth Amendment[.]" Doc. No. 55 at ¶ 419. Although Claim 45 was not in Plaintiff's Complaint, it would be futile to allow Plaintiff to add that claim to his lawsuit because it is based on allegations that the court already found do not give rise to a claim for relief. Plaintiff alleges that Defendant Sternenberg is culpable for the collective deprivation of Plaintiff's Due Process rights based on "the undisclosed conflict between [her and] Defendant[] Introcaso[.]" Id. at ¶ 418.

The court already concluded that Defendant Sternenberg is entitled to absolute quasi-judicial immunity as to Plaintiff's claims that Defendant Sternenberg failed to disclose her conflict of interest with Defendant Introcaso. See Doc. No. 23. Consequently, Plaintiff's motion to amend to add another claim regarding Defendant Sternenberg's failure to disclose her conflict of interest would be futile.[7] See Hatch, 274 F.3d at 19.

For these reasons, the district judge should deny Plaintiff's motion to amend his Complaint to add claims against Defendant Sternenberg.

### III. Futility — Defendants DalPra, David King, Derby, Introcaso, and the NHJB

Defendants DalPra, David King, Derby, Introcaso, and the NHJB argue that Plaintiff's motion to amend should be denied as futile as to them, citing the arguments they made in their respective motions to dismiss under Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6). Doc. Nos. 18–20, 58. Specifically, Defendants maintain that dismissal is proper on the grounds of immunity, the Eleventh Amendment, and the Rooker-Feldman doctrine. Plaintiff counters that because his Amended Complaint sufficiently addresses pleading deficiencies identified in the Sternenberg R&R, it is not futile. Doc. No. 56 at ¶¶ 14–15. In particular, Plaintiff states that his Amended Complaint adds new Defendants and claims; supplements his Complaint with facts that have occurred since filing; and restructures the relief sought to include prospective declaratory and injunctive that is not barred by Eleventh Amendment sovereign immunity. Id. at ¶ 8. For the reasons that follow, the district judge should deny Plaintiff's motion to amend as futile because (1) the court lacks jurisdiction to hear the majority of Plaintiff's claims under the Rooker-Feldman or

[7] In addition, as discussed below in Section D, the district court should deny Plaintiff's motion to amend to add claims against Defendant Sternenberg because the court lacks jurisdiction to hear those claims under the Rooker-Feldman or Younger doctrines.

Younger doctrines; (2) sovereign immunity bars his official-capacity claims against the State and its agencies; (3) judicial or quasi-judicial immunity bar his official-capacity claims against judicial actors; and (4) Plaintiff failed to state an individual capacity claim against Defendant Derby.

## IV. Rooker-Feldman and Younger Doctrines

Most of the relief Plaintiff seeks in his Amended Complaint challenges or seeks to enjoin the enforcement of orders in his family law matter (see Doc. No. 55 at pgs. 155–59 (Prayers A–G, J–L)), all of which is barred by the Rooker-Feldman or Younger doctrines for lack of jurisdiction.[8] Fed. R. Civ. P. 12(b)(1). Specifically, Plaintiff asks that the court declare that the findings of fact and orders in his state court case are "tainted by undisclosed judicial conflicts and misconduct" (Prayer B), and that enforcement of those findings of fact and orders — as well as the "cumulative effect of the individual acts of concealment, conflict, and due process deprivation" — violates the Fourteenth Amendment's Due Process Clause (Prayers A–E); enjoin Defendants from enforcing or relying upon orders in his family law matter, including a Final Protective Order in a domestic violence case ("DV Final Protective Order") against Plaintiff, or any future order that relies on those orders until an impartial tribunal issues new findings (Prayers F and G); enjoin Defendants from conducting any future proceedings that would affect his parental rights or his DV Final Protective Order unless the judicial officer assigned to his case is unconnected to the claims in Plaintiff's Amended Complaint (Prayer J); order the expungement or vacatur of two NHSC decisions that involved Defendant Hantz Marconi (Prayer K); and order the NHJB to correct the docket in Plaintiff's state court case to reflect that proceedings were conducted by Defendant

[8] See Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Younger v. Harris, 401 U.S. 37 (1971).

Introcaso who had undisclosed conflicts of interest and by Defendant DalPra who engaged in judicial misconduct (Prayer L).

By challenging the validity of orders in his state court case, Prayers A–G, J–L of Plaintiff's Amended Complaint, and the claims associated with those prayers for relief,[9] raise questions of subject matter jurisdiction that this court is obliged to consider and resolve sua sponte.[10] See United States v. University of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction. They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects.").

Both the Rooker-Feldman and Younger doctrines serve to keep the federal courts out of matters that fall within the exclusive jurisdiction of state courts. Tyler v. Supreme Jud. Ct., 914 F.3d 47, 50 (1st Cir. 2019) (under the Rooker-Feldman doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments[]" (internal quotation marks and citation omitted)); Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007) ("The Younger doctrine . . . instructs federal courts not to interfere with ongoing state-court litigation[.]" (internal quotation marks and citation omitted)). Which doctrine applies in a given case depends on whether state proceedings have concluded.

---

[9] The claims associated with Prayers A–G, J–L of Plaintiff's Amended Complaint are those in which Plaintiff claims his due process rights under the Fourteenth Amendment were violated by judicial misconduct and/or the failure to intervene in that misconduct (Claims 1–34; 40–41, 43, and 45).

[10] Because the court cannot act in the absence of subject matter jurisdiction, the court must consider the claims Plaintiff brought against proposed amended Defendants under the Rooker-Feldman or Younger doctrines. University of Mass., Worcester, 812 F.3d at 44.

As explained below, it is evident that Claims 1–34; 40–41, 43, and 45 of Plaintiff's Amended Complaint are barred either by the Rooker-Feldman or the Younger doctrine. Plaintiff is either impermissibly asking the Court to review state court orders issued in his family law matter or to enjoin judges and the NHJB from enforcing or further extending orders made in that case, including orders regarding Plaintiff's parental rights or a domestic violence protective order issued against him.[11] See Brochu v. Foley, No. 21-CV-384-JD, 2021 WL 2109659, at *4 (D.N.H. May 25, 2021) ("This court lacks jurisdiction under the Rooker-Feldman doctrine to consider [Plaintiff's custody] claims. If that doctrine does not apply here, the court would abstain from considering [the] claims under Younger.").

A. Rooker-Feldman Doctrine

The United States Supreme Court has exclusive jurisdiction over appeals from final state-court judgments. 28 U.S.C. § 1257. For that reason, under the Rooker-Feldman doctrine, this court, like all lower federal courts, lacks jurisdiction to consider claims brought by "state-court losers" that challenge "state-court judgments" that were entered before the federal case began. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); accord T. M. v. Univ. of Maryland Med. Sys. Corp., 146 S. Ct. 1739, 1744 (2026); see also Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F. 3d 61, 64-65 (1st Cir. 2018). The doctrine applies when the plaintiff seeks relief from an injury caused by a state court judgment but does not apply when the plaintiff alleges a different injury that is separate from the injury caused by a state court judgment. Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps., 471 F.3d 220, 222–23 (1st Cir. 2006).

[11] Younger abstention applies where a state court case is ongoing. See Hicks v. Miranda, 422 U.S. 332, 349 (1975). Here, it is unclear whether or to what extent Plaintiff's family law matter is ongoing. However, assuming that it is, any interference with his state court proceedings is inappropriate for the reasons stated in this decision.

Ultimately, the Rooker-Feldman doctrine deprives this court of jurisdiction if the relief the plaintiff seeks would effectively overturn the state court judgment. Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 33 (1st Cir. 2004); T. M., 146 S. Ct. at 1746–47.

In this case, Plaintiff alleges the findings of fact and orders in his family law matter, which involve his parenting rights and domestic violence matters, are tainted by judicial misconduct that were not disclosed to him, in violation of his due process rights. His requests for relief as to those claims ask the court to enjoin present and future state court orders that, he alleges, are tainted by the judicial misconduct; declare that enforcement of those orders violates his rights; and expunge or correct certain orders to reflect past judicial misconduct. Doc. No. 55 at pgs. 155–59 (Prayers A–G, J–L).

Adjudicating those claims would require the court to determine whether the state court's orders were improper, and the relief he seeks would effectively, if not literally, overturn those orders. The Rooker-Feldman doctrine therefore deprives this court of jurisdiction to review the state court orders and to grant the relief Plaintiff requests. See, e.g., Harris v. Amy Lowell Apartments, No. CA 14-12640-PBS, 2014 WL 3359429, at *1 (D. Mass. July 8, 2014) (court lacked jurisdiction to adjudicate plaintiff's complaint challenging integrity of state court proceedings under Rooker-Feldman); T. M., 146 S. Ct. at 1747 ("Federal district courts . . . are empowered to exercise [only] original, not appellate, jurisdiction." (alteration in original) (internal quotation marks and citation omitted)).

### B. Younger Abstention

Plaintiff also asks this court to enjoin any future action by state courts, which implicates the Younger abstention doctrine. Under that doctrine, federal courts will abstain from hearing cases "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2)

that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi, 489 F.3d at 34–35; see also Sirva Relocation, LLC v. Richie, 794 F.3d 185, 196 (1st Cir. 2015). The Younger abstention doctrine applies when a federal court plaintiff seeks an injunction to coerce a state court to act in accordance with his direction. Rossi, 489 F.3d at 34.

Plaintiff asks this court to grant him injunctive relief that would directly interfere with any ongoing state court proceedings by, at a minimum, precluding enforcement of the state court's orders. States have important interests in enforcing the orders of their courts. Sirva Relocation, 794 F.3d at 192. Further, there can be no question that issues of parental rights and protective orders implicate important state interests. See Nicolosi v. New Hampshire Supreme Court, No. 19-cv-1142-PB, 2019 WL 7039620, at *4 (D.N.H. Nov. 13, 2019), R&R adopted, No. 19-CV-1142-PB, 2019 WL 7037666 (D.N.H. Dec. 19, 2019); Liviz v. Supreme Jud. Ct. of Massachusetts, No. CV 17-12345, 2018 WL 1697125, at *2 (D. Mass. Apr. 6, 2018) ("[C]are and protection proceedings clearly implicate important state interests."), aff'd, No. 18-1340, 2018 WL 4998135 (1st Cir. Oct. 2, 2018). Finally, there is no indication that Plaintiff lacked the opportunity to raise his constitutional violation claims on appeal in state court.[12] Therefore, to the extent Plaintiff attempts to enjoin ongoing state proceedings, the court should abstain from considering his claims.

[12] Rather, Plaintiff already used the state court to raise issues of constitutional violations in a number of cases and also challenged his final parenting plan order. Doc. No. 58 at pg. 2 n.1 (citing decisions on filings made by Plaintiff in various state court cases); see Doc. No. 55-12. For the reasons stated above, Plaintiff cannot turn to this court simply because he lost in state court. Exxon Mobil Corp., 544 U.S. at 284.

Accordingly, the district judge should deny Plaintiff's motion to amend as to Claims 1–34; 40–41, 43, and 45 on the grounds that those claims are futile under the Rooker-Feldman or Younger doctrines.

Plaintiff's remaining claims are against the NHJB, attorneys in the NHJB's Office of General Counsel, and Defendant David King (in their official capacities); as well as against Defendant Derby (in his individual capacity). The court will address Plaintiff's claims against the NHJB, attorneys in the NHJB's Office of General Counsel, and Defendant David King before turning to his individual capacity claim against Defendant Derby.

## V. Sovereign Immunity

As to his claims against the NHJB,[13] attorneys in the NHJB's Office of General Counsel, and Defendant David King (Claims 35–37, 39, 42), Plaintiff asserts that Defendants, acting in their official capacities, violated his due process rights by not producing deposition transcripts or otherwise informing Plaintiff about what was said related to the investigations of Defendants Introcaso and DalPra. Plaintiff seeks injunctive relief as to those claims, asking that the court order the NHJB to produce the unredacted deposition of Defendant David King from August 26, 2022. Doc. No. 55 at ¶¶ 384, 389, 401; id. at pg. 157 (Prayer H).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

[13] Although the court addresses whether Plaintiff's claims against the NHJB should be dismissed, the court also notes that a claim against the NHJB would be improper in this instance because "[t]he New Hampshire Judicial Branch, as an agency of the State, . . . does not constitute a 'person' for purposes of a claim under 42 U.S.C. § 1983." Lewis v. Hynes Grp., No. 21-CV-597-LM, 2022 WL 579237, at *5 n.4 (D.N.H. Feb. 16, 2022) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989), and Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002)).

Const. amend. XI. "Long interpreted as an affirmation of state sovereign immunity, the Amendment (despite its literal text) also bars a citizen from bringing a federal court action against his or her own State, including instrumentalities of the state, such as state agencies." Lewis, 2022 WL 579237, at *4 (citing Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015)). State sovereign immunity applies to the NHJB and its employees (including its Office of General Counsel) and Defendant David King in his role as Administrative Judge of the New Hampshire Circuit Court. Id.; see Dongon v. Banar, 363 Fed. App'x 153, 156 (3d Cir. 2010) (state courts and its employees are considered "arms" of the state and entitled to immunity under the Eleventh Amendment).

However, the Supreme Court has created a narrow exception to Eleventh Amendment immunity, allowing "suits for prospective injunctive relief against state officials acting in violation of federal law." Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex parte Young, 209 U.S. 123 (1908)). The Ex parte Young exception to the Eleventh Amendment is intended "to prevent continuing violations of federal law, but not to remedy past violations." Greenless v. Almond, 277 F.3d 601, 607 (1st Cir. 2002) (citing Edelman v. Jordan, 415 U.S. 651 (1974)); accord Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 36 (1st Cir. 2026). Therefore, a plaintiff alleging a violation of federal law "may obtain prospective, but not retrospective, relief." Greenless, 277 F.3d at 607.

Defendants contend that the Eleventh Amendment bars Plaintiff's request for retrospective relief. Doc. No. 20-1 at ¶¶ 20–21; Doc. No. 58 at pgs. 6–8. Plaintiff asserts that the relief he seeks in his Amended Complaint is for ongoing violations, including "the ongoing withholding of the King deposition." Doc. No. 56 at pg. 6. However, even though Plaintiff claims that the relief he seeks is prospective, it is actually retrospective in nature.

To determine whether relief is prospective or retrospective, a court should "conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 636, 645 (2002) (internal quotation marks and citation omitted). When conducting this inquiry, courts focus on the "effect of the relief sought" and when plaintiff's injury occurred, not on the label given to the relief requested. Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 256 (2011) (internal quotation marks and citation omitted); Edelman v. Jordan, 415 U.S. 651, 666–67 (1974); Papasan v. Allain, 478 U.S. 265, 278, 282 (1986).

"Courts have found retrospective relief to include injunctions designed to compensate injury or replicate a damages award, and injunctions that involve adjudicating the legality of a state official's past actions[.]" Bonilla v. Semple, No. 3:15-CV-1614 (VAB), 2016 WL 4582038, at *3 (D. Conn. Sept. 1, 2016) (internal citations omitted) (citing Edelman, 415 U.S. at 664–69, which barred an order compelling retroactive payment of benefits pursuant to the Eleventh Amendment, and Papasan, 478 U.S. at 277–78, which stated that "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . ."). In contrast, courts "have found prospective those injunctions designed to remedy ongoing violations of federal law . . . ." Bonilla, 2016 WL 4582038, at *3 (citing Verizon Md., Inc., 535 U.S. at 646 for the proposition that relief is prospective if a court does not "impose upon the State a monetary loss resulting from a past breach of a legal duty . . ."). Stated another way, the Young exception only applies where a plaintiff requests to stop ongoing "violation[s] of federal law[,]" and not to allegations that are solely based on ongoing harm. Green v. Mansour, 474 U.S. 64, 67–68 (1985); see T.W. v. N.Y. State Bd. of L. Exam'rs, 110 F.4th 71, 94 (2d Cir. 2024), cert. denied, 145 S. Ct. 2700 (2025) (request that state

board of bar examiners stop maintaining and reporting plaintiff's examination results to "alleviate the ongoing repercussions of the discriminatory test administration that continue to hamper Plaintiff's search for employment" did not fall within Young exception).

Here, Plaintiff characterizes his harm and the constitutional violation as ongoing in that he does not have the King deposition transcripts, which were previously denied. Doc. No. 56 at ¶¶ 11, 14. That characterization is incorrect. Plaintiff seeks relief for a past harm (Defendants' refusal to provide transcripts), which may carry with it a "continuing liability . . . , but there is no ongoing violation[.]" Cotto v. Campbell, 126 F.4th 761, 769–70 (1st Cir. 2025) (continued withholding of forfeited property, even assuming that violated federal law, "would be a past violation, not an ongoing one[]"), cert. denied, 146 S. Ct. 1491 (2026); see Papasan, 478 U.S. at 282 (1986) (no immunity under the Eleventh Amendment where "the essence of the equal protection allegation is the present disparity in the distribution of the benefits of state-held assets and not the past actions of the State[]"). "[W]ithout an ongoing violation and future misconduct to enjoin, there is no prospective relief[.]" Cotto, 126 F.4th 761, 768; see Distefano v. Cornelius, 822 F. Supp. 3d 208, 220 (D. Mass. 2026) (citing Marino v. Gammel, 191 F. Supp. 2d 243, 254 (D. Mass. 2002) (Eleventh Amendment barred plaintiff's request that federal court compel the expungement or sealing of state custody proceedings, which request was "injunctive and prospective[,] however it purely functions to remedy a past violation").

Accordingly, the district judge should deny Plaintiff's motion to amend as to Claims 35–37, 39, 42 against the NHJB, attorneys in the NHJB's Office of General Counsel, and Defendant David King for being barred by the Eleventh Amendment.[14]

[14] In addition, as Defendants assert, the Judicial Conduct Committee's investigations are confidential. Doc. No. 20-1 at pg. 9; see NH Sup. Ct. R. 40(3) ("[A]ll proceedings and all

## VI. Judicial or Quasi-Judicial Immunity

Alternatively, the district judge could also deny Plaintiff's motion to amend as to Plaintiff's official-capacity claims against Defendants David King, Derby, Introcaso, DalPra, Sternenberg, Rauseo, Curran, Hantz Marconi, MacDonald, Dempsey, Creegan, and Jessica King (Claims 1–22, 25–28, 31–34, 37, 39–43, 45) for being barred by judicial or quasi-judicial immunity, which provide judges and "non-judicial persons fulfilling quasi-judicial functions" with "absolute immunity from civil liability for any normal and routine judicial act."[15] Cok v. Cosentino, 876 F.2d 1, 2–3 (1st Cir. 1989); see Suny v. KCP Advisory Grp. LLC, 152 F.4th 25, 29 (1st Cir. 2025); Coggeshall v. Mass. Bd. of Registration of Psych., 604 F.3d 658, 662 (1st Cir. 2010).

---

information, communications, materials, papers, files, and transcripts, written or oral, received or developed by the committee in the course of its work, shall be confidential."). Plaintiff has not shown he has a right to those records.

[15] The proposed amended Defendants have not been served and, therefore, have not argued that amendment as to them would be futile. For purposes of a motion to amend on futility grounds, the court "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman, 90 F.3d at 623. Generally, "[s]ua sponte dismissals [under Rule 12(b)(6)] are strong medicine, and should be dispensed sparingly." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting Gonzalez–Gonzalez v. United States, 257 F.3d 31, 33 (1st Cir.2001)). However, "in limited circumstances, sua sponte dismissals . . . under Rule 12(b)(6) . . . are appropriate[.]" Id. (second alteration in original) (quoting Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 13–14 (1st Cir.1998)). Those circumstances include when "parties have been afforded notice and an opportunity to amend the complaint or otherwise respond[,]" or when "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile[.]" Id. (internal quotation marks and citations omitted). Here, not only is it clear that Plaintiff cannot prevail on his claims against proposed amended Defendants because those claims are barred by absolute judicial immunity, Plaintiff was on notice of the judicial immunity defense to his motion to amend and acknowledged that his Amended Complaint "add[ed] claims against defendants not entitled to judicial immunity[.]" Doc. No. 56 at ¶ 14. Therefore, even without argument from proposed amended Defendants, the court recommends that the district judge deny Plaintiff's motion to amend as to Plaintiff's claims against those Defendants as being barred by judicial immunity. For reasons already stated, the court could also deny Plaintiff's motion to amend to add proposed amended Defendants because Plaintiff's claims against them are barred by the Rooker-Feldman or Younger doctrines.

As described above, Plaintiff's official-capacity claims concern Defendants' alleged due process violations in their capacity as state judges (Claims 5–6, 17–18, 21–22, 25–28, 33–34, 37, 39, 41, 43); GAL (Claims 1–2, 7–8, 11–12, 40); marital master (Claims 3–4, 9–10, 13–16, 19–20, 31–32); the NHJB's General Counsel (Claim 42); and against all Defendants (current or former judges or employees of the NHJB) for a cumulative failure of the New Hampshire judicial system (Claim 45).

Plaintiff asserts that judicial immunity does not cover actions taken outside the scope of a judge's actions, including misconduct, ethics violations, or decisions made beyond their legal authority (Doc. No. 25 at ¶ 4; Doc. No. 26 at ¶ 10; Doc. No. 27-1 at p. 19) and that he amended his Complaint to add claims against Defendants who are not entitled to judicial immunity (including the NHJB General Counsel), as well as prospective injunctive relief. Doc. No. 56 at ¶ 8, 14. However, contrary to Plaintiff's assertions, Defendants are immune in this case.

First, judicial immunity extends to the roles in which Defendants acted, including state court judges, GALs, martial masters, as well as state judicial branch employees.[16] See Cok, 876 F.2d at 2–3 (judicial immunity applies to those "closely associated with the judicial process," including GALs); Turgeon v. Brock, No. 94–cv–569–SD, 1994 WL 529919, *2 (D.N.H. Sept. 29, 1994) (applying judicial immunity to marital master in New Hampshire); see Powell v.

[16] The NHJB asserts that amendment would be futile as to claims against the NHJB because it is entitled to judicial immunity. Doc. No. 58 at pg. 7. To the extent Plaintiff seeks to add claims against the NHJB for actions it made as a court, the court generally agrees that state courts (i.e., the NHSC) are entitled to judicial immunity. See Toro v. Rhode Island, No. C.A.08-064S, 2008 WL 2973035, at *3 (D.R.I. Aug. 1, 2008) ("For the purposes of judicial immunity, courts and judges have been treated as synonymous." (citations omitted)), R&R adopted, No. C.A.08-64S, 2008 WL 4361240 (D.R.I. Sept. 16, 2008). Nevertheless, the district judge need not decide the extent to which the NHJB, as an arm of the state, is entitled to judicial immunity because the claims against it (Claims 23–24, 29–30, 35–36) are barred by sovereign immunity and, as a state agency, it does not constitute a "person" for purposes of a claim under 42 U.S.C. § 1983. See Will, 491 U.S. at 71; Brown, 291 F.3d at 92.

Commonwealth of Massachusetts, No. 16-CV-30004-MGM, 2016 WL 7115887, at *8 (D. Mass. Sept. 20, 2016) ("[A]s arms of the Supreme Judicial Court, the [Board of Bar Overseers], the [Office of Bar Counsel], and bar counsel are clothed with the immunity of the court for their official actions[.]"), R&R adopted, No. CV 16-30004-MGM, 2016 WL 7118260 (D. Mass. Dec. 6, 2016); Kulmann v. Biolo, No. 3:24-CV-01077-MPS, 2024 WL 3988255, at *5 (D. Conn. Aug. 29, 2024) ("Judicial immunity extends beyond judges to also generally preclude claims against judicial branch employees.").

Second, Plaintiff's claims against Defendants as judicial actors concern their judicial acts, or actions that pertain to the "adjudication of disputes between parties[,]" taken by Defendants, namely: issuing orders, concurring in orders, and making recommendations; behavior during court proceedings; and declining to provide transcripts of judicial investigations. Nystedt v. Nigro, 700 F.3d 25, 31 (1st Cir. 2012); Goldstein v. Galvin, 719 F.3d 16, 25 (1st Cir. 2013) ("Judicial acts are those that are intimately associated with the judicial function." (internal quotation marks and citations omitted)); M.L.-S.F. v. Budd, No. 21-CV-10078-DJC, 2021 WL 3861167, at *6 (D. Mass. Aug. 30, 2021) ("[S]tate officials performing prosecutorial functions—including their decisions to initiate administrative proceedings aimed at legal sanctions—are entitled to absolute immunity as well." (internal quotation marks and citations omitted)); see, e.g., Brown v. Maine, No. 11-CV-426-JD, 2012 WL 5463087, at *5 (D. Me. Nov. 7, 2012), aff'd, (May 8, 2013) ("Actions by a judge in reviewing and deciding issues pertaining to judicial conduct complaints and participation in the Judicial Council are taken in her capacity as a judge and are within the judicial function protected by absolute judicial immunity.").

Plaintiff's claim that Defendants are not entitled to judicial or quasi-judicial immunity because they engaged in misconduct does not strip Defendants of their immunity. "[A]llegations

of malice, or bad faith or, . . . a claim of conspiracy will not defeat the protection of derivative absolute immunity . . . ." Cok, 876 F.2d at 3; Nystedt, 700 F.3d at 31 ("The fact that a court-appointed discovery master performs a judicial function in an imperfect (or even unethical) way does not, by itself, dissolve his quasi-judicial immunity." (citation omitted)).

Finally, the relief Plaintiff seeks does not change that Defendants are entitled to immunity. As this court already informed Plaintiff, "the Supreme Court has long held that judicial immunity (and by extension, quasi-judicial immunity) applies in actions under § 1983[,]" including requests for injunctive relief, so long as the judge did not violate a declaratory decree and declaratory relief was available. Albrecht v. Sternenberg, No. 23-CV-381-JL-TSM, 2023 WL 9500621, at *4 & n.4 (D.N.H. Dec. 11, 2023) (citing Stump v. Sparkman, 435 U.S. 349, 355–56 (1978), 42 U.S.C. § 1983, and Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000)), R&R approved, No. 23-CV-381-JL-TSM, 2024 WL 385363 (D.N.H. Feb. 1, 2024). Plaintiff makes no allegation that any Defendant violated a declaratory decree or that declaratory relief was unavailable. Accordingly, his requests for injunctive relief are barred by judicial immunity.

To the extent Plaintiff maintains that judicial immunity is inappropriate because he seeks declaratory relief, that argument is similarly unpersuasive. As this court already explained, a statement that a state judge's prior actions violated federal law does not "satisfy the definition of 'declaratory judgment[]'" and would "typically be an impermissible advisory opinion." See id. (quoting Justice Network Inc. v. Craighead Cnty., 931 F.3d 753, 763 (8th Cir. 2019)) (citing ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013)). For the reasons already stated regarding sovereign immunity, Plaintiff's Amended Complaint seeks relief for past violations, not relief for ongoing harms. Accordingly, he seeks an impermissible advisory opinion that cannot be brought against Defendants.

For these reasons, the district court should deny Plaintiff's motion to amend as being futile and dismiss his official-capacity claims against Defendants David King, Derby, Introcaso, DalPra, Sternenberg, Rauseo, Curran, Hantz Marconi, MacDonald, Dempsey, Creegan, and Jessica King (Claims 1–22, 25–28, 31–34, 37, 39–43, 45).

## VII. Individual Capacity Claim Against Defendant Derby

Defendants object to Plaintiff's addition of a § 1983 claim against Defendant Derby in his individual capacity (Claim 44) for "appear[ing] at the same religious service" and sitting "in the same row as Plaintiff" on December 7, 2025. Doc. No. 55 at ¶¶ 412–13; see Doc. No. 58 at pgs. 7–8 (Defendant Derby's objection to Plaintiff's motion to amend). Defendants assert that Plaintiff is only adding this claim in an attempt to "circumvent judicial immunity" and that "[n]othing prohibited Judge Derby from attending this church." Doc. No. 58 at pg. 7. Plaintiff does not appear to contest that he only added the claim to avoid judicial immunity. In his motion to amend, Plaintiff states that his Amended Complaint addresses deficiencies identified in the Sternenberg R&R, including the addition of an individual capacity claim against Defendant Derby that is not entitled to judicial immunity. Doc. No. 56 at ¶ 14.

The court agrees with Defendants that amendment would be futile as to Plaintiff's claim against Defendant Derby. Nothing in Plaintiff's new claim against Defendant Derby would give rise to his liability under § 1983. "To plead a plausible § 1983 claim, the plaintiff must allege that the defendant acted under color of state law and that the defendant's conduct violated a protected right." Pike v. Budd, 133 F.4th 74, 83 (1st Cir. 2025). Here, Plaintiff makes no allegation that Defendant Derby acted under color of law when he attended a church service that Plaintiff also attended. "The traditional definition of acting under color of state law requires that the defendant in a [§] 1983 action have exercised power possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law." Id. (alteration in original) (internal quotation marks omitted) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)). "[T]he primary focus of the color of law analysis must be on the conduct of the [official]." Id. (alteration in original) (internal quotation marks and citation omitted). "The official's conduct must occur in the course of performing an actual or apparent duty of his office or the conduct is such that the [official] could not have behaved in that way but for the authority of his office." Id. (alteration in original) (internal quotation marks and citation omitted).

The only connection Plaintiff attempts to draw between Defendant Derby's attendance at the December 2025 religious service and Derby's actions "under color of law" is that, in December 2025, Plaintiff was still subject to a protective order Defendant Derby issued in January 2020. That connection is insufficient to show that Defendant Derby acted with any indicia of state authority at the December 2025 religious service. In fact, Plaintiff makes no allegation that Defendant Derby performed any action with respect to the Plaintiff at that time, let alone any action that could be construed as an action under state authority. Rather, Plaintiff states that "Church attendance is not a judicial act[]" and that Defendant Derby's attendance at the service was "voluntary[.]" Doc. No. 55 at ¶ 414. There is no indication that Defendant Derby interacted with Plaintiff at that religious service or performed any action under the color of state law that would give rise to a § 1983 claim. Merely attending a religious service that Plaintiff also attended, without more, is not actionable under § 1983. Martinez v. Colon, 54 F.3d 980, 986–87 (1st Cir. 1995) (private action "outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law[]").

Therefore, the district judge should deny Plaintiff's motion to amend to add an individual capacity claim against Defendant Derby as amendment would be futile for failure to state a claim.

**CONCLUSION**

For the reasons stated above, the district judge should deny Plaintiff's motion to amend (Doc. No. 56) in which he seeks to add Defendants and claims, under Fed. R. Civ. P. 8 or because amendment would be futile as to all added Defendants and claims. See Abraham v. Woods Hole Ocean. Inst., 553 F.3d 114, 117 (1st Cir. 2009) ("[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." (alteration in original) (internal quotation marks and citations omitted)).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

______________________________
Talesha L. Saint-Marc
United States Magistrate Judge

August 28, 2026

cc: Dana Albrecht, pro se
Counsel of Record