**JUDICIAL CONDUCT COMMITTEE-INITIATED INQUIRY**

**CASE NO. JD-25-079-CII**

**EMERGENCY MOTION FOR PROTECTIVE ORDER AND/OR INJUNCTION**

NOW COME Chief Justice Gordon MacDonald and Associate Justices Patrick Donovan, Melissa Countway and Bryan Gould (the "Justices"), by and through counsel, and hereby respectfully request that the Judicial Conduct Committee issue a protective order, or in the alternative an injunction, prohibiting any of its members, its counsel, or any person acting on its behalf, from making any statement, public or private, to any person that could have the effect of disclosing the existence of the Rule 40(6) Committee-initiated inquiry that apparently arises from the employment circumstances of Dianne Martin with the Judicial Branch, and in support thereof states as follows:

1. By letter dated February 5, 2026, JCC Counsel Phil Waystack proposed to counsel for the Justices that the Committee issue a public statement that "the JCC has initiated an inquiry" into "this matter" and that the "[t]he basis of this inquiry is whether any of the information now in the public domain, (or other facts which are not in the public domain) violate the Code of Judicial Conduct." Exhibit 1.

**<u>The Conditions Required by Supreme Court Rule 40(3)(f)</u>**
**<u>For Making a Public Statement Are Not Met</u>**

2. The letter asserts that the JCC has authority to issue such a statement under Rule 40(3)(f).

3. This proposal is flawed for numerous reasons.

4. The express, textual preconditions for breaching the default requirement of confidentiality under Rule 40(3)(f) have not been met.

5. Rule 40(3)(f) provides that the JCC may issue a public statement to "confirm the existence of the investigation" only when: (1) the pendency of a proceeding before the committee is generally known to the public through independent sources; (2) the subject matter of the proceedings is of broad public interest or speculation; and (3) public confidence in the administration of justice may be threatened because of lack of information concerning the status of the proceedings.

6. None these conditions can be shown at present.

7. The plain text of the Rule only allows the JCC to issue a public statement to "confirm the existence" of an "investigation." But as Attorney Waystack's letter confirms, there is no "investigation" at this time, only an "inquiry."

8. Further, Attorney Waystack proposes that the JCC issue a statement precisely because its investigation is generally *not* known to the public. This is the clearest single reason that a public statement is not appropriate.

9. Moreover, it is not yet clear what the precise subject matter of the inquiry is, the identity or identities of the judge or judges whose conduct is the subject of the inquiry, or which provisions of the Code of Judicial Conduct are allegedly implicated. Without establishing those facts, it is not possible to determine whether the inquiry is a matter "of broad public interest or speculation."

10. Attorney Waystack has disclosed to two of the Justices that members of the JCC have received *ex parte* communications from unnamed individuals urging the members to commence an inquiry based on news accounts of personnel decisions made by the Supreme Court in February and March of 2025. If this is, in fact, the impetus for the JCC's inquiry, it further highlights that a public statement is not warranted.

11. Attorney Waystack's reference to activities in the legislature does not make a compelling case in support of "broad public interest." He states only that "[i]t has come to his attention" that "several members of the public" have corresponded with Rep. Robert Lynn concerning legislative oversight of the judicial branch. Correspondence by "several members of the public" with a legislative committee chair hardly constitutes "broad public interest," particularly when the subject matter of the inquiry remains unclear.

12. The fact that CACR 23 was introduced in the House does not reflect "broad public interest" either. The threshold for the introduction of legislation and proposed constitutional amendments in the New Hampshire House of Representatives is low. Any member of the General Court can introduce legislation. And unlike the United States Congress, the fact that a proposal gets a public hearing does not indicate potential support. In the General Court every bill gets a full public hearing and is brought to the floor for consideration of the full body, The mere introduction of a proposed amendment and the holding of a public hearing in no way reflects "broad public interest."

13. Nothing in the news article appended to the letter provides evidence of "broad public interest" either. The article's primary source, Dana Albrecht, is a longstanding critic of the judicial branch. Indeed, he is currently suing the judicial branch, the Chief Justice, all of the Associate Justices, as well as the governor, the speaker of the house, and a host of others, in an effort to gain access to records related to the Dianne Martin employment matter. *See, Albrecht v. MacDonald, et al.*, Hillsborough Superior Court, Southern District, Case No. 226-2025-cv-00705. While he is entitled to have his opinion and to prosecute his lawsuit, his statements reflect one man's idiosyncratic interests more than they reflect any "broad public interest."

14. Finally, there is no reason to believe that the news reports about the Dianne Martin employment matter threaten "public confidence in the administration of justice." Questions about how the branch handles the employment and compensation of staff are unrelated to the core judicial function of deciding cases and providing impartial justice to litigants before the courts of the judicial branch.

15. Moreover, revealing the existence of an ongoing, committee-initiated inquiry is more likely to erode public confidence in the administration of justice during the inquiry than to enhance it.

16. Revealing the existence of an active inquiry by the JCC will stand only to create a sense of impending drama as the public waits for the conclusion of the investigation to be announced. Knowledge of the pendency of an investigation that would threaten public confidence in the administration of justice because it calls into question any action or decision that the Supreme Court might take while the investigation proceeds. And that cost will be incurred even if the JCC determines, as expected, that no judicial misconduct occurred.

17. Attorney Waystack's proposal that the JCC make a public statement appears primarily designed to address the short-term public confidence in the *JCC* rather than in the administration of justice as a whole. It also seems to evince an intent to protect the JCC's reputation against unidentified allegations at the expense of the reputations of the Justices of the Supreme Court, in violation of the express confidentiality requirements of the rules.

**<u>Ongoing Confidentiality and Privacy Concerns</u>**

18. Rule 40 is replete with guarantees that the proceedings of the JCC are confidential and that the privacy and reputational interests of judges subject to its inquiries and investigations are protected.

19. Since the earliest stages of this inquiry, the Justices have had valid concerns about whether the strict confidentiality required by the rules has been observed. The February 5th correspondence and the public statement proposal further underscore their well-founded concerns.

20. Attorney Waystack interviewed Justices Donovan and Countway in a jury deliberation room in the United States District Court building. Members of the public do not ordinarily have access to that part of the federal courthouse, and it is only reasonable to assume that in order gain that access, statements were likely made to someone in the federal court. It would be pure speculation to guess exactly what was said and exactly to whom, but the extraordinary nature of the access provided reasonably raises concern about whether confidentiality has already been compromised.

21. Attorney Waystack's statements in the February 5th letter likewise raise additional questions. He writes that "[i]t has come to his attention" that Rep. Lynn has received correspondence from "several members of the public." Has Attorney Waystack engaged in conversations about this matter with a member of the legislature? Rep. Lynn, a former Chief Justice of the Supreme Court, is likely aware that Attorney Waystack has a longstanding relationship with the JCC. Was the existence of the inquiry revealed to Rep. Lynn as part of any communication between the two? Would the very act of asking Rep. Lynn questions about his communications with members of the public suggest the existence of the inquiry to him?

22. Attorney Waystack's proposal that the Justices appoint an alternate panel would also compromise confidentiality. While the Justices recognize that they cannot sit in judgment of their own cause and that such an appointment may eventually be necessary, it is clearly premature at this time.

23. The letter suggests that the JCC wishes to "consult" with an alternative panel of the Supreme Court about issuing a statement to the public. It is the JCC's responsibility, however, to rule on the applicability of Rule 40(3)(f). The JCC cannot "consult" with the Supreme Court on how it should rule because appeals of JCC decisions are made to the Supreme Court, and the Court cannot review a decision on which it has "consulted."

24. It is against this backdrop that the suggestion of a public statement is being presented, and it does not inspire confidence that Rule 40(3)'s restrictions on disclosure will be observed going forward.

**Conclusion**

25. The Justices have repeatedly urged Attorney Waystack to present a proposed protective order to the JCC that will allow them to disclose additional confidential and privileged records relating to the Dianne Martin complex employment matter. They have done so with great confidence that full disclosure of the existing record will lead the Committee to reach the same conclusion as the Attorney General's Office: No further action is warranted.

26. The proposal that the JCC issue a public statement announcing its inquiry before it has even considered readily available evidence would violate the JCC rules and the privacy rights of the Justices, would encourage speculation, and would ultimately undermine confidence in the judiciary.

WHEREFORE, the JUSTICES respectfully request that the JCC:

A. Issue a Protective Order prohibiting disclosure or dissemination of any information regarding the existence of the JCC inquiry or any other violation of the confidentiality requirements of the rules; or in the alternative

B. Enjoin publication of any public statement under Rule 40(3)(f).

Respectfully Submitted,

Chief Justice Gordon MacDonald, Justice Patrick Donovan, Justice Melissa Countway, and Justice Bryan Gould,

By their attorneys,
Lehmann Major List, PLLC

February 9, 2026

Richard J. Lehmann (Bar No. 9339)
6 Garvins Falls Road
Concord, N.H. 03301
(603) 731-5435
rick@nhlawyer.com