**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **DANA ALBRECHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 1:23-cv-00381-JL-TSM** |
| | ) | |
| | ) | |
| **KATHLEEN STERNENBERG,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

# PLAINTIFF'S MEMORANDUM OF LAW ON THE ROOKER-FELDMAN DOCTRINE, THE ELEVENTH AMENDMENT, JUDICIAL IMMUNITY, AND JUDICIAL DISQUALIFICATION

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................iv
Cases....................iv
Constitutional Provisions....................vi
Statutes....................vi
Court Rules....................vii
Exhibits....................viii
Other Authorities....................ix
PRELIMINARY STATEMENT....................10
STATEMENT OF THE CASE....................11
The Order and the statute....................11
The statute's limits in this case....................11
The November 2023 hearing....................12
The withheld deposition....................13
The pleadings and the recommendations....................14
GOVERNING STANDARDS....................14
ARGUMENT....................15
I. Rooker-Feldman bars appeals. It does not bar lawsuits.....15
A. The doctrine occupies narrow ground, and each of its elements must be present....................15
B. Three kinds of claim are outside the doctrine....................16
C. "Effectively overturn" is not the test....................17
II. Younger abstention is the exception, and nothing here calls for it....................18
III. The Eleventh Amendment permits prospective relief against state officers for a continuing or anticipated violation of federal law....................19
A. *Ex parte Young* asks whether the relief is prospective. It does not ask about the merits....................19
B. A violation that lies ahead is not a past violation........20

C. The proper defendants are the officers who can give the relief.....21

D. Whole Woman's Health and In re Justices do not make judges immune from suit.....21

IV. Judicial immunity protects the act of judging. It does not bar relief directed to administrative functions, or the declaratory relief that § 1983 presupposes.....22

A. Absolute immunity is a defense to liability for acts of adjudication.....22

B. In 1996 Congress limited injunctions against judges and left declaratory relief in place.....23

C. Assigning cases, administering protocols, and keeping records are not acts of judging.....24

D. A declaration about an identified future proceeding is not an advisory opinion.....25

V. Due process requires a real hearing, an impartial judge, and access to the evidence.....26

A. A restraint on liberty may not be renewed without a meaningful hearing.....26

B. The standard for disqualification is objective.....27

C. The record presents each recognized category.....28

D. The State may not withhold the evidence that bears on the hearing.....31

E. New Hampshire's own law demands at least as much.....32

VI. The same standard binds federal judges, and by statute more strictly.....32

A. Sections 455 and 144.....32

B. Knowledge and contacts outside the record.....33

C. Procedure and remedy.....33

CONCLUSION.....34

## TABLE OF AUTHORITIES

**Cases**

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993).....14, 24

*Barry v. Barchi*, 443 U.S. 55 (1979)....................................27

*Berger v. United States*, 255 U.S. 22 (1921)..........................34

*Bontkowski v. Smith*, 305 F.3d 757 (7th Cir. 2002)................15

*Bracy v. Gramley*, 520 U.S. 899 (1997)................................28

*Brooks v. N.H. Supreme Ct.*, 80 F.3d 633 (1st Cir. 1996)..........19

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)......28, 31

*Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989)..........................23

*Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025)....................20

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)...............17

*Dist. Att'y's Off. v. Osborne*, 557 U.S. 52 (2009)....................31

*Edelman v. Jordan*, 415 U.S. 651 (1974)...............................20

*Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996)............................33

*Ex parte Young*, 209 U.S. 123 (1908).............................19, 20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...........................................................15, 18

*FDIC v. Mallen*, 486 U.S. 230 (1988)..................................27

*Foman v. Davis*, 371 U.S. 178 (1962)..................................14

*Forrester v. White*, 484 U.S. 219 (1988)...............................24

*Gibson v. Berryhill*, 411 U.S. 564 (1973).........................19, 26

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996) 14

*Goldberg v. Kelly*, 397 U.S. 254 (1970)................................26

*Gutierrez v. Saenz*, 606 U.S. 305 (2025)...............................31

*Hafer v. Melo*, 502 U.S. 21 (1991).......................................22

*Hall v. Small Bus. Admin.*, 695 F.2d 175 (5th Cir. 1983).........33

*In re Justices of Supreme Ct. of P.R.*, 695 F.2d 17 (1st Cir. 1982) .....................................................................21

*In re Martinez-Catala*, 129 F.3d 213 (1st Cir. 1997)...............34

*In re Murchison*, 349 U.S. 133 (1955).......................27, 28, 30

*In re United States*, 666 F.2d 690 (1st Cir. 1981)...................33

*In the Matter of Tapply & Zukatis*, 162 N.H. 285 (2011).........32

*Johnson v. Mississippi*, 403 U.S. 212 (1971)........................28

*K.A. v. D.A.*, No. 2022-0284 (N.H. July 14, 2023)............12, 28

*K.A. v. D.A.*, No. 2023-0181 (N.H. Oct. 20, 2023)............12, 27

*Kentucky v. Graham*, 473 U.S. 159 (1985).......................21, 22

*Kuehl v. FDIC*, 8 F.3d 905 (1st Cir. 1993)............................15

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) .....................................................................33

*Liteky v. United States*, 510 U.S. 540 (1994)..................28, 33

*MacPherson v. Weiner*, 158 N.H. 6 (2008).......................11, 27

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).................27, 32

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..........................26

*Mayberry v. Pennsylvania*, 400 U.S. 455 (1971)...................28

*Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27 (1st Cir. 2004)....................................................................18

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).......25

*Mitchum v. Foster*, 407 U.S. 225 (1972)..............................10

*O'Shea v. Littleton*, 414 U.S. 488 (1974).........................25, 26

*Pulliam v. Allen*, 466 U.S. 522 (1984)................................23

*Reed v. Goertz*, 598 U.S. 230 (2023)..............................17, 20

*Rippo v. Baker*, 580 U.S. 285 (2017)..................................28

*Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)..........................15

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015). .19

*Skinner v. Switzer*, 562 U.S. 521 (2011)...............................17

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)..............19

*Steffel v. Thompson*, 415 U.S. 452 (1974)........................18, 26

*Stump v. Sparkman*, 435 U.S. 349 (1978)............................22

*Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980).........................................................22, 24

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........26

*T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026). .16, 17

*U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015).............................................................14

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002).............................................................20

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972)................28

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)..........21

*Williams v. Pennsylvania*, 579 U.S. 1 (2016)...................28, 30

*Wooley v. Maynard*, 430 U.S. 705 (1977)............................18

*Younger v. Harris*, 401 U.S. 37 (1971)................................18

*Zenon v. Guzman*, 924 F.3d 611 (1st Cir. 2019)...............22, 23

**Constitutional Provisions**

N.H. Const. pt. I, art. 35 (impartial judges)..........................32

U.S. Const. amend. V...................................................32

U.S. Const. amend. XI..................................................10

U.S. Const. art. III......................................................22

**Statutes**

Bias or prejudice of judge..............................................32

Civil action for deprivation of rights (as amended by the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853)....................................10, 23

Declaratory Judgment Act – creation of remedy....................25

Disqualification of justice, judge, or magistrate judge.......32, 34

District judges – designation and assignment within the circuit ....................................................................34

N.H. Rev. Stat. Ann. § 173-B:5 – Protection of Persons from Domestic Violence; Relief (paragraph VI: duration, extension, hearing on extension; paragraph VII: required statement on arrest and imprisonment)..................................11, 16, 27

N.H. Rev. Stat. Ann. § 490-F:2 – Circuit Court; transfer of cases among court locations in the discretion of the administrative judge...........................................................21, 24

N.H. Rev. Stat. Ann. § 490:3 – Supreme Court; Disqualification; Temporary Justices..................................................32

State courts; certiorari..................................................15

**Court Rules**

Federal Rules of Civil Procedure, Rule 8(a) – Claim for Relief. .14

Federal Rules of Civil Procedure, Rule 15(a)(2) – Amendments Before Trial; Other Amendments..................................14

Federal Rules of Civil Procedure, Rule 15(d) – Supplemental Pleadings...........................................................14

Federal Rules of Civil Procedure, Rule 25(d) – Public Officers; Death or Separation from Office..................................21

Federal Rules of Civil Procedure, Rule 54(c) – Demand for Judgment; Relief to Be Granted..................................15

New Hampshire Code of Judicial Conduct (N.H. Sup. Ct. R. 38), Canon 2, Rule 2.11 – Disqualification.............................21

**Exhibits**

1/27/2020 Derby Order on Post-Trial Motions....................30

2/3/2020 Email from Administrative Judge King, with Dempsey investigation report....................30

2/9/2026 Justices' Emergency Motion for Protective Order, JCC No. JD-25-079-CII....................19, 31

2/24/2023 Rauseo Order on Further Extension, with request for extension....................11, 12, 24

2/25/2019 Order in Ausiaikova v. Meckel, with GAL Motion for Instruction....................29

3/15/2019 Introcaso recusal order in Campbell v. Partello.......29

3/23/2021 N.H. Supreme Court order, In re Introcaso...........29

3/30/2018 Email chain, Judge Introcaso to Administrative Judge King....................29, 30

4/1/2026 Proposed Amended Complaint.....11, 13, 14, 21, 29–31

4/2/2026 Plaintiff's Motion for Leave to Amend..................14

4/23/2019 Introcaso order in Loudermilk v. Montgomery on guardian ad litem's motion to exceed fee cap....................29

4/26/2019 Derby Order in Campbell v. Partello regarding Kathleen Sternenberg....................30

5/28/2021 Email of General Counsel Dempsey denying request for deposition transcripts....................14, 21, 24

5/30/2019 Order in the parenting case (DalPra recommendation; Introcaso approval)....................29

6/3/2019 Hearing transcript, Loudermilk v. Montgomery (Introcaso, J.)....................29

6/12/2024 N.H. Supreme Court single-justice order, No. 2023-0181....................31

6/30/2019 Order (DalPra recommendation; Derby approval)....30

7/8/2024 N.H. Supreme Court panel order, No. 2023-0181 19, 31

7/23/2019 Loudermilk v. Montgomery, No. 659-2015-DM-00185 ........................................................................29

8/4/2023 Complaint.................................................11, 14

8/26/2022 Deposition of Administrative Judge King (redacted excerpt)..................................................13, 14, 21, 30

8/28/2026 Report and Recommendation on Defendants' Motions to Dismiss (Saint-Marc, M.J.)....................10, 14, 20, 22, 25

8/28/2026 Report and Recommendation on Plaintiff's Motion to Amend (Saint-Marc, M.J.).............10, 14, 15, 17, 18, 20–25

9/18/2026 N.H. Supreme Court order, Nos. JD-2026-0001 and JD-2026-0003 (filings made public)..............................32

9/21/2026 N.H. Supreme Court order, Nos. JD-2026-0001 and JD-2026-0003 (stay and redaction denied)........................32

10/7/2025 Conviction of Anna Barbara Hantz Marconi..........31

10/26/2020 Correspondence of General Counsel Dempsey regarding Judge Derby...............................................30

11/10/2022 N.H. Supreme Court order, In re DalPra, with invoices........................................................................29

11/13/2020 Email, Administrative Judge King to Master DalPra ........................................................................30

11/13/2023 Letter from N.H. Judicial Branch General Counsel Erin Creegan (Exhibit 13 to Doc. 36)..............................13

11/15/2023 Motions hearing transcript (Rauseo). .12, 13, 17, 19, 27, 29

12/16/2021 N.H. Supreme Court order, No. 2021-0192 (Exhibit 12 to Doc. 36)...........................................12, 19, 27, 28

12/20/2019 Excerpt from domestic violence hearing (Derby)...30

12/21/2020 Curran Order (extension of protective order)........11

**Other Authorities**

N.H. Judicial Branch, Domestic Violence Protocols, ch. 9...13, 24

## PRELIMINARY STATEMENT

Three doctrines are said to end this case before it begins: *Rooker-Feldman*, the Eleventh Amendment, and judicial immunity. Doc. 60 at 13–27; Doc. 61 at 5–9. Each is real. Each has limits. This memorandum marks them.

*Rooker-Feldman* stops a district court from hearing an appeal from a state judgment. It does not stop a district court from hearing a lawsuit because a state court appears somewhere in the story. The Supreme Court said so again five months ago. The Eleventh Amendment forbids a federal court to make a State answer for the past. It has never forbidden a federal court to tell a state officer what the Constitution requires of him tomorrow. Judicial immunity protects the act of judging. It does not turn a lawyer's file drawer into a courtroom, or a printed form into a judgment.

Plaintiff is restrained by a protective order that cannot outlast its expiration date by a day unless a judge acts. Three questions about that next act lie beyond the reach of all three doctrines: by what process, before whom, and on what evidence. A state judge could answer each as the Constitution requires, find good cause, and extend the order. Every existing judgment would keep its force. None of these questions, then, asks this Court to undo anything a state court has done. Each is the kind of question that § 1983 was written to let a federal court answer. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).

The memorandum then states the law beneath every claim in the case: when the Constitution and the statutes forbid a judge to sit. It rests on legal authority and on documents already on this

Court's docket.[1] Its attention to the claims that look forward waives no claim and no argument made in Doc. 1 or Doc. 55.

## STATEMENT OF THE CASE

***The Order and the statute***

Plaintiff is subject to a civil domestic violence order of protection entered by the New Hampshire Circuit Court on December 30, 2019 in *Albrecht v. Albrecht*, No. 659-2019-DV-00341 (the "Order"). Doc. 55-42 at 1; Doc. 55 ¶¶ 6, 92–94. The proceeding began with allegations about Plaintiff's attendance at a church. It involved no allegation of physical violence, no arrest, and no criminal charge. Doc. 55 ¶ 103.

New Hampshire law sets three limits on such an order. It runs for a fixed period of not more than one year. It may be extended, on a showing of good cause, for one year after the expiration of the first order, and only thereafter for up to five years at a time. And the defendant has a right to a hearing within thirty days of an extension. RSA 173-B:5, VI. A violation results in arrest. RSA 173-B:5, VII. In deciding whether good cause exists, the court must review the circumstances that gave rise to the original order. *MacPherson v. Weiner*, 158 N.H. 6, 10 (2008).

***The statute's limits in this case***

The first extension came on December 21, 2020, on the protected party's representations and without a hearing. Doc. 55-31; Doc. 55 ¶ 104. The hearing that followed was held before Marital Master DalPra. On December 16, 2021 the New Hampshire

1 Record citations are to the docket of this action; "Doc. 55-6" is the sixth attachment to Doc. 55.

Supreme Court held that "it was error for the judicial officer to have presided over the hearing in this case," vacated the trial court's orders, and remanded for a new hearing before a different officer. It then added: "in light of the unique circumstances of this case, the protective order shall remain in place pending the outcome of the new hearing." Doc. 36-12 at 4. The sentence cites no statute. The one year that the statute allows a first extension ended two weeks later, and the Order stayed in force on the strength of that sentence. In February 2022 Judge Rauseo extended it for another year, at a hearing that, in the Supreme Court's later words, "under the unique circumstances of the case … was effectively the hearing on the first extension request." *K.A. v. D.A.*, No. 2022-0284 (N.H. July 14, 2023).

On February 24, 2023 Judge Rauseo extended the Order again, on a printed form reciting that "[t]he Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order." Doc. 55-42 at 1. The statutory hearing was set, Plaintiff appealed the day before it, and the trial court cancelled it. Seven months later the Supreme Court remanded, again "[u]nder the unique circumstances of this case," and directed that the "30-day deadline in RSA 173-B:5, VI shall run from the date of this order." *K.A. v. D.A.*, No. 2023-0181 (N.H. Oct. 20, 2023). The hearing took place on November 16, 2023, 265 days after the extension it was to test.

***The November 2023 hearing***

The hearing was set for thirty minutes, on offers of proof. Doc. 55-43 at 5. The day before, the court heard motions to quash. It read the governing standard aloud: "the trial court must review the circumstances giving rise to the original protective order."

Doc. 55-43 at 30. It then quashed or struck all ten of Plaintiff's subpoenas because "the standard tomorrow is limited to whether there's currently good cause." Doc. 55-43 at 41; Doc. 55 ¶ 134. One witness was the Circuit Court's Administrative Judge, for whom the Attorney General's Office appeared. Doc. 55-43 at 3–4, 21. When Plaintiff said that the court had already found good cause in February, the court answered: "And it was based on the pleadings, sir." It had acted, it said, "consistent with the protocols," and "[t]hat's what all judges do." Doc. 55-43 at 42.

The protocols are written. Two days before that hearing the Judicial Branch's General Counsel wrote to Plaintiff that "the protocols on which judges are trained" are published on the Branch's website. Doc. 36-13 at 2. Protocol 9-11 directs that when the court finds good cause on the plaintiff's motion it grants the extension without a hearing, and that a hearing follows only if the defendant objects. Protocol 9-11. The Order now runs to February 24, 2028. Doc. 55 ¶¶ 126, 187.

***The withheld deposition***

One subpoena sought the complete transcript of a deposition of the Administrative Judge, David King, taken on August 26, 2022 in the disciplinary proceeding against Master DalPra. Judge King testified there about the hearing in Plaintiff's own case. Doc. 55-40 at 26; Doc. 55 ¶¶ 106–08. Counsel to the Judicial Conduct Committee told the court that the rest of the deposition was "totally redacted" and is "not in the public domain at all," and the subpoena was quashed. Doc. 55-43 at 33, 36. The Judicial Branch's General Counsel attended that deposition as counsel for the witness, and by that office's own account the Judicial Branch holds such transcripts "by virtue of its employees testifying

under subpoena." Doc. 55-40 at ECF p. 2; Doc. 55-36 at 1. The complete transcript has never been produced. Doc. 55 ¶¶ 188, 404.

***The pleadings and the recommendations***

Plaintiff sued on August 4, 2023. Doc. 1. On April 1, 2026 he filed a proposed amended complaint, and the next day he moved for leave to amend. Doc. 55; Doc. 56. On August 28, 2026 the Magistrate Judge recommended that leave be denied, under Fed. R. Civ. P. 8(a) and in the alternative as futile, and that the motions to dismiss the original complaint be granted. Doc. 60; Doc. 61.

## GOVERNING STANDARDS

Leave to amend is freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). It may be denied as futile only if the proposed pleading, taken as true, fails to state a claim. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). A party may also plead events that happened after the pleading to be supplemented. Such requests are treated liberally, and supplementation may cure a defect in the original pleading. Fed. R. Civ. P. 15(d); *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4–7 (1st Cir. 2015). The official who claims an absolute immunity bears the burden of showing that the function in question warrants it, and the defendants first named in Doc. 55, who have not been served, have claimed none. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 & n.4 (1993); Doc. 60 at 23 n.15.

Rule 8 asks for fair notice: who is sued, for what, and for which relief. A pleading that is too long is cured by a shorter one, and in *Kuehl v. FDIC*, 8 F.3d 905, 906–09 (1st Cir. 1993), dismissal for prolixity followed an order to replead that went unheeded. Doc. 60 at 10–11. And a demand for relief is not the claim. A court grants the relief to which a party is entitled even if the pleading asked for something else, so a prayer drawn too broadly is a reason to tailor the relief and not a reason to hold the claim futile. Fed. R. Civ. P. 54(c); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

## ARGUMENT

### I. Rooker-Feldman bars appeals. It does not bar lawsuits.

#### A. The doctrine occupies narrow ground, and each of its elements must be present.

Congress gave the Supreme Court, and no other federal court, appellate jurisdiction over state-court judgments. 28 U.S.C. § 1257. A district court therefore may not entertain what is in substance an appeal from a state judgment. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923). That is the whole of the doctrine.

The Supreme Court has confined it accordingly. It applies only where four things are true: the federal plaintiff lost in state court; he complains of an injury caused by the state-court judgment; that judgment was rendered before the federal suit began; and he invites the district court's review and rejection of it. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A plaintiff who presents an independent claim is

within the district court's jurisdiction even if the claim denies a legal conclusion the state court reached. Whether he may relitigate that conclusion is a question of preclusion, not of power. *Id.* at 293.

Last Term the Court applied the doctrine to a plaintiff who asked a district court to declare a state consent order void and to enjoin its enforcement, and it said that its decision "neither expands nor constrains" the doctrine. *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026), slip op. at 8, 18.[2] The Court listed what the doctrine does not bar: suits by nonparties to the state judgment, parallel litigation, and a challenge to a statute or rule that governed a state-court decision, as distinct from a challenge to the decision. *Id.*, slip op. at 7 n.4. Most telling, the Court observed that a second federal action by the same plaintiff, against the same parties and on the same facts, did not implicate the doctrine at all, because that action did not seek review and rejection of the state order. *Id.*, slip op. at 16–17 n.10. Same parties, same facts, different relief: no bar.

### B. Three kinds of claim are outside the doctrine.

(a) *A claim directed to a proceeding that has not yet occurred.* An injury that will be inflicted, if at all, by a future adjudication is not caused by any existing judgment, and a judgment not yet rendered cannot have been rendered before the federal suit began. A protective order under RSA 173-B:5 expires on a fixed date, and only a new judicial act, on a new request and a new showing of good cause, can continue it. Who may decide

2 *T.M.* was decided on June 18, 2026. The citation to the Supreme Court Reporter is the one given in Doc. 60, and pin citations are to the slip opinion.

that request, and by what process, are questions about a decision no court has yet made.

(b) *A challenge to a rule or standing practice.* *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983), drew this line itself. The district court there could not review the denial of the applicants' waiver petitions, but it could hear their challenge to the bar admission rule. *Id.* at 482–86; *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). A practice that "all judges" follow, printed on a form, is a rule in everything but name. Doc. 55-43 at 42.

(c) *A claim against an officer for access to evidence.* *Skinner* and *Reed v. Goertz*, 598 U.S. 230 (2023), were brought by litigants who had lost in state court and then sued a state officer for access to evidence in the State's possession. The doctrine barred neither suit. *Reed*, 598 U.S. at 235.

The test is simple. Could this Court grant the relief and leave every state-court judgment standing, valid, and enforceable? For a claim to a hearing before the next extension, to an impartial judge at that hearing, or to the deposition, the answer is yes. A state judge could afford all three, find good cause, and extend the Order.

### C. "Effectively overturn" is not the test.

The recommendation reasons that the relief sought would "effectively, if not literally, overturn" the state court's orders, and it gives that one answer to ten prayers together. Doc. 60 at 14–17. It looks to what each claim complains of and what relief it seeks, as *T.M.* shows. And as to a claim about the next proceeding, or about a standing practice, the recommendation

never identifies the judgment that this Court would review and reject. There is none.

Nor is "effectively overturn" a substitute for the four elements. The phrase comes from *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 (1st Cir. 2004), decided a year before *Exxon Mobil* Since then the question has not been whether a federal claim overlaps with, or even contradicts, what a state court decided. It is whether the plaintiff asks the district court to review and reject a judgment. 544 U.S. at 291–93.

Whether an earlier state ruling has preclusive effect on a later question is a defense to be pleaded and proved, not a limit on this Court's power. *Exxon Mobil*, 544 U.S. at 293.

**II. Younger abstention is the exception, and nothing here calls for it.**

The recommendation invokes *Younger v. Harris*, 401 U.S. 37 (1971), in the alternative, on an assumption: it is "unclear whether or to what extent" the state matter is ongoing, but "assuming that it is," the Court should abstain. Doc. 60 at 16 n.11. Abstention cannot rest on an assumption.

It requires, first, a state proceeding with which the federal court would interfere. A claim directed to a proceeding that has not begun interferes with none, and a plaintiff whose requested relief is "wholly prospective" is not met by *Younger* at all. *Wooley v. Maynard*, 430 U.S. 705, 711 (1977); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

It requires, next, a proceeding of one of three kinds: a criminal prosecution, a civil enforcement proceeding, or a civil proceeding involving orders "uniquely in furtherance of the state courts'

ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013); *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192–93 (1st Cir. 2015). A proceeding to renew a protective order is civil and is begun by a private party. The State prosecutes nothing and enforces nothing in it.

And it presupposes a competent state tribunal. Abstention does not apply where the tribunal is "incompetent by reason of bias." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). That exception is unavailable to a litigant who has bypassed the State's procedures for recusal and offers only a general charge of institutional bias. *Brooks v. N.H. Supreme Ct.*, 80 F.3d 633, 639–40 (1st Cir. 1996). This record is the opposite on both counts. Plaintiff asked. When he prevailed, on Master DalPra, the restraint continued anyway. Doc. 36-12 at 4. When he raised the trial judge's connection in 2023, the trial judge ruled on it himself, and when he asked about one justice's participation in 2024, that justice determined for herself that she could sit. Doc. 55-43 at 41; Doc. 55-45 at 2. As for an appeal: three of the justices who would hear one have told the Judicial Conduct Committee, in writing and through counsel, that Plaintiff is "a longstanding critic of the judicial branch" who is suing them. Doc. 63-1 at 3.

## III. The Eleventh Amendment permits prospective relief against state officers for a continuing or anticipated violation of federal law.

### A. Ex parte Young asks whether the relief is prospective. It does not ask about the merits.

A suit against a state officer to prevent a continuing or threatened violation of federal law is not a suit against the State. *Ex parte Young*, 209 U.S. 123, 155–60 (1908). A court conducts

a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The inquiry does not include an analysis of the merits. *Id.* at 646. What the Amendment bars is an order to pay money from the state treasury for a past breach. *Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974).

### B. A violation that lies ahead is not a past violation.

The recommendations treat the claim for the King deposition as a complaint about an earlier refusal, and they rely on *Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025), for the proposition that a continued withholding is a past violation with lingering effects. Doc. 60 at 22; Doc. 61 at 6. That reasoning fails at four points.

*A claim about a future adjudication concerns an anticipated violation.* *Ex parte Young* was itself a suit to prevent threatened future action, and *Cotto* recognizes the category: the exception applies where the plaintiff alleges an anticipated violation of federal law and sues officials with authority to prevent it. 126 F.4th at 768 n.3. A restraint that expires on a date certain, that only a new judicial act can continue, and that has been continued on every earlier occasion presents exactly that case.

*A claim for access to evidence has the structure of Reed and Skinner.* In each, a state officer had already refused the plaintiff access to evidence, and in *Reed* the Court held in terms that *Young* allows the suit. 598 U.S. at 234. If a past refusal coupled with continuing possession made a claim retrospective, *Reed* could not have been decided as it was.

*Cotto is a forfeiture case.* The plaintiffs sought the return of property forfeited in completed proceedings, and their claims rested on the Commonwealth's past actions. 126 F.4th at 769–70. A transcript is not money, and the proceeding at which this one is material has not happened yet.

*Confidentiality is a merits point.* The *Young* inquiry does not include the merits, and on the merits a rule of confidentiality is an interest to be weighed, not a bar. Doc. 60 at 22–23 n.14; Part V.D.

### C. The proper defendants are the officers who can give the relief.

*Young* requires that the officer have "some connection with the enforcement of the act." 209 U.S. at 157. The reassignment of cases within the Circuit Court, as justice or efficiency requires, lies in the discretion of its Administrative Judge. RSA 490-F:2. Each judge controls his or her own participation in a case and is bound to withdraw when disqualified. N.H. Code of Jud. Conduct R. 2.11. The General Counsel's office holds the transcript. Doc. 55-40 at ECF p. 2; Doc. 55-36 at 1; Doc. 55 ¶¶ 402–04. And an official-capacity claim runs against the office, so that a successor is substituted automatically. Fed. R. Civ. P. 25(d); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

### D. Whole Woman's Health and In re Justices do not make judges immune from suit.

*Young* does not normally permit an injunction against state-court judges, who ordinarily resolve disputes between others and do not enforce state law. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39–40 (2021); *In re Justices of Supreme Ct. of P.R.*, 695 F.2d 17, 21–22 (1st Cir. 1982). The justices in *In re Justices* were

improper defendants because, the court agreed, their only function concerning the statutes under challenge was to act as "neutral adjudicators rather than as administrators, enforcers, or advocates." 695 F.2d at 21. Both decisions therefore preserve suits against judges who act in another capacity. *Id.* at 23–25; *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734–37 (1980); *Zenon v. Guzman*, 924 F.3d 611, 617 & n.11 (1st Cir. 2019).

The neutral-adjudicator rule is, moreover, a rule about challenges to statutes. A litigant who attacks a statute has no quarrel with the judge who will apply it. A litigant who alleges that a particular judge has a personal, disqualifying interest in his case has no quarrel with anyone else. On that claim the judge is no neutral arbiter of someone else's dispute. His own participation is the act complained of, and that is adversity enough for Article III.

## IV. Judicial immunity protects the act of judging. It does not bar relief directed to administrative functions, or the declaratory relief that § 1983 presupposes.

### A. Absolute immunity is a defense to liability for acts of adjudication.

Judicial immunity protects judges from liability for their judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). It is a personal defense, and personal immunities are unavailable in an official-capacity suit, which is a suit against the office. *Graham*, 473 U.S. at 166–67; *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The recommendations nonetheless hold official-capacity claims barred by "absolute immunity from civil liability." Doc. 60 at 23; Doc. 61 at 7–9. The decisions behind that formulation are damages

cases. *Cok v. Cosentino*, 876 F.2d 1, 2–3 (1st Cir. 1989). And the Supreme Court has held that judicial immunity is no bar to prospective relief against a judicial officer acting in a judicial capacity. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984).

*Zenon* is the decision in this Circuit closest to the other side. The plaintiff sought a declaration that a protective order already issued by a state judge was unconstitutional, and the First Circuit held the claim barred. 924 F.3d at 616–21. But *Zenon* distinguishes the judge who acts as an administrator, *id.* at 617 & n.11, and it did not concern a declaration of rights in a proceeding that has not yet occurred.

### B. In 1996 Congress limited injunctions against judges and left declaratory relief in place.

Congress answered *Pulliam* in the Federal Courts Improvement Act of 1996. In an action against a judicial officer for an act taken in a judicial capacity, an injunction may not issue "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The amendment makes a declaratory decree the precondition of an injunction. It does not forbid the decree. It presupposes that actions against judges exist and that declaratory decrees issue in them, and a reading of the Eleventh Amendment or of judicial immunity under which no such action could be brought would leave the clause with nothing to regulate. The recommendation observes that Plaintiff alleged no violation of a declaratory decree. Doc. 60 at 26. That answers a request for an injunction. It does not answer a request for the decree.

### C. Assigning cases, administering protocols, and keeping records are not acts of judging.

Immunity attaches to functions, not to titles. *Forrester v. White*, 484 U.S. 219, 227–29 (1988). A judicial act is the resolution of a dispute between parties who have invoked the court's jurisdiction. Administrative, legislative, and executive acts are not judicial merely because a judge performs them. *Id.* at 229–30.

*Records.* The recommendation describes "declining to provide transcripts of judicial investigations" as a judicial act, and it extends the judge's immunity to "state judicial branch employees" generally. Doc. 60 at 24–25. The General Counsel is not a judge and decides no cases. By its own account the office holds the transcripts as the employer of witnesses who testified under subpoena, not as a tribunal. Doc. 55-36 at 1. The Supreme Court has refused absolute immunity even to the court reporter, who is indispensable to the judicial process, because making and keeping a transcript is not the exercise of judgment. *Antoine*, 508 U.S. at 435–37.

*Protocols and forms.* A written protocol applied in every case of its kind is a rule, and administering it is not the decision of a dispute. A court that promulgates a rule acts as a legislature; a court that enforces one acts as an enforcer, and in that capacity it may be sued for declaratory and injunctive relief. *Consumers Union*, 446 U.S. at 731–37. Protocol 9-11 and the printed form are such a rule. Protocol 9-11; Doc. 55-42 at 1.

*Assignment.* The power to say which judge will hear a case belongs to the administration of a court, not to the decision of a case. New Hampshire places it in an administrative officer and measures it by "justice or efficiency." RSA 490-F:2. An

injunction directed to that power is therefore not limited by the 1996 amendment. If assignment were held to be judicial, the amendment would decide only the order of remedies: declaration first.

### D. A declaration about an identified future proceeding is not an advisory opinion.

The recommendations conclude that a statement that a state judge's past actions violated federal law is an advisory opinion. Doc. 60 at 26; Doc. 61 at 8–9. A declaration of what the Constitution requires at a proceeding still to come is something else. A declaratory judgment is proper where there is a substantial controversy between parties with adverse legal interests, of sufficient immediacy and reality. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); 28 U.S.C. § 2201. And the past is not irrelevant to such a claim: past wrongs are evidence of whether there is a real and immediate threat of repeated injury. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

*O'Shea* is the strongest authority on the other side. The plaintiffs there sought to enjoin state judges' future bail and sentencing practices. The Court held the controversy too speculative, because the plaintiffs would be affected only if they were arrested and charged in the future, and the relief improper because it would require "an ongoing federal audit of state criminal proceedings." *Id.* at 495–97, 500. Three things separate this case from that one.

(a) *Plaintiff's exposure does not depend on his own future conduct.* He need not break a law to come before these courts again. He is restrained now, under an order that

ends on a known date unless a judge acts. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

(b) *The relief concerns one identified proceeding, and a declaration comes first.* It requires no federal court to monitor a state court's docket, and it is the milder remedy. *Steffel*, 415 U.S. at 466–67.

(c) *The other remedies are inadequate here.* *O'Shea* pointed to substitution of the judge and to appeal. 414 U.S. at 502. Where the challenge is to the impartiality of the officers who would decide that motion and hear that appeal, those remedies are the problem and not the answer. *Gibson*, 411 U.S. at 577.

## V. Due process requires a real hearing, an impartial judge, and access to the evidence.

### A. A restraint on liberty may not be renewed without a meaningful hearing.

Due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). What process is due depends on the private interest, the risk of error under the procedure used, and the government's interest. *Id.* at 335. Where a decision turns on questions of fact, the opportunity to be heard includes the opportunity to confront and cross-examine adverse witnesses. *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

The private interest here is a restraint on liberty enforced by arrest. The government's interest is measured by its own statute. The legislature has said what the State needs: one year for a first extension, and a hearing within thirty days of any extension.

RSA 173-B:5, VI. The State can claim no interest in more than its statute asks. Yet in this case each limit has given way, each time to "the unique circumstances of this case." The first extension outlasted its year, and the thirty days became 265. Doc. 36-12 at 4; *K.A. v. D.A.*, No. 2023-0181. Under a protocol that extends first and hears later, the restraint continues for as long as "later" takes, and any step the restrained party takes to challenge the paper extension postpones the hearing that was to test it. The date of an extension is fixed a year or more ahead, so nothing requires that order of events. And when a State does act first, the hearing that follows must be prompt and real. *FDIC v. Mallen*, 486 U.S. 230, 242 (1988); *Barry v. Barchi*, 443 U.S. 55, 66 (1979).

The hearing must also reach what state law makes material. New Hampshire directs the court to review the circumstances that gave rise to the original order. *MacPherson*, 158 N.H. at 10. The trial court read that standard aloud, and then excluded every witness and document directed to those circumstances on the ground that only current good cause was at issue. Doc. 55-43 at 30, 41. A hearing that shuts out what the governing standard requires the court to review is a hearing in form only. A state judge can hold the hearing the Constitution requires, hear the evidence, and extend the Order.

### B. The standard for disqualification is objective.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). The requirement applies in civil cases as in criminal ones. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). It does not depend on proof that a judge was biased in fact. Recusal is required when,

viewed objectively, the probability of actual bias is too high to be constitutionally tolerable. Rippo v. Baker, 580 U.S. 285, 287 (2017); Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881–87 (2009). And a litigant is entitled to "a neutral and detached judge in the first instance." Later review does not cure the defect. Ward v. Village of Monroeville, 409 U.S. 57, 61–62 (1972).

The Supreme Court has found that standard met in three recurring circumstances. A judge may not decide a matter in which he earlier acted as accuser, investigator, or advocate, or of which he carries personal knowledge acquired outside the record. In re Murchison, 349 U.S. at 137–39; Williams v. Pennsylvania, 579 U.S. 1, 8 (2016). A judge who has become personally embroiled with a litigant, or has been his adversary in litigation, may not sit in judgment on him. Mayberry v. Pennsylvania, 400 U.S. 455, 465–66 (1971); Johnson v. Mississippi, 403 U.S. 212, 215–16 (1971). And a judge may not sit where he has reason to rule in a way that deflects scrutiny from his own conduct. Rippo, 580 U.S. at 285–87; Bracy v. Gramley, 520 U.S. 899, 904–05 (1997). Adverse rulings alone will rarely establish a disqualifying bias. Liteky v. United States, 510 U.S. 540, 555 (1994). Plaintiff rests on what these officers did before they ruled, and on what they said about it afterward.

### C. The record presents each recognized category.

The New Hampshire Supreme Court has addressed impartiality in Plaintiff's cases twice. In December 2021 it held Master DalPra disqualified. Doc. 36-12 at 4. In July 2023 it rejected challenges to Judges Derby and Rauseo on the record then before it. K.A. v. D.A., No. 2022-0284. Whatever effect that ruling has is a question of preclusion. It did not decide who may sit at a

proceeding that has not occurred, and it could not weigh what came afterward.

(a) *The record was made before disqualified officers.* Judge Introcaso approved the appointment, in Plaintiff's parenting case, of a guardian ad litem who was by her own account "one of four people on my 'conflicts' list." Doc. 55-6 at 2; Doc. 55 ¶¶ 20–22, 72. On March 15, 2019 she wrote in another case that the conflict was not one that could be waived. Doc. 55-9 at 3. She kept sitting with the same guardian all the same: she granted the guardian's fee motion in April, heard her in open court in June and again in July, and in May signed the order in Plaintiff's own case on which the Order was later rested. Doc. 55-10; Doc. 55-14; Doc. 55-16; Doc. 55-12. The New Hampshire Supreme Court found that she had violated six provisions of the Code of Judicial Conduct, including the disqualification rule, and that Master DalPra had violated four, again including that rule, at a hearing in Plaintiff's own case. Doc. 55-35 at 2–3; Doc. 55-41 at 1–2, 9.

(b) *Judge Rauseo*, before he took the bench, represented a party in another case before Judge Introcaso in which the same guardian ad litem served, and he took the position that the guardian was "no longer impartial." Doc. 55-8 at 2. A lawyer from his firm appeared at the June and July 2019 hearings. Doc. 55-14; Doc. 55-16; Doc. 55 ¶¶ 45, 49. As a judge he extended the Order, and in November 2023, when Plaintiff proffered that lawyer as a witness, he struck the subpoena as "not relevant." Doc. 55-43 at 41; Doc. 55 ¶¶ 140, 145. A judge who rules on the relevance

of his own connection to a case is the judge of his own cause, and what he learned as counsel he learned outside this record. *In re Murchison*, 349 U.S. at 136, 138.

(c) *Administrative Judge King* was told of the Introcaso relationship in writing in March 2018. He wrote to Master DalPra that his comments at the hearing in Plaintiff's case "do not demonstrate the patience or dignity expected of judicial officers." And he is the witness whose testimony about that hearing is withheld. Doc. 55-6 at 2; Doc. 55-30 at 1; Doc. 55-40 at 26. A witness to disputed facts may not be the judge of them. *In re Murchison*, 349 U.S. at 138.

(d) *Judge Derby* entered the Order. He rested it on Plaintiff's "answers, deflections and evasive non-answers" to questioning about the May 2019 order that Judge Introcaso had signed. Doc. 55-23 at 1; Doc. 55-21 at 71. He did so after reading her recusal order, ruling on the removal of the same guardian ad litem, and himself approving the denial of reconsideration of the May order. Doc. 55-11; Doc. 55-15; Doc. 55 ¶¶ 39–40, 78, 92–95. He was then a witness in the investigation of her orders. He told the investigator that he "could not say with 100% certainty that he did not white out" two of them; the investigator concluded that he had not. Doc. 55-28 at 1–2; Doc. 55-24 at 5. At the next hearing the court must review the Order he entered. A judge may not decide a matter in which he played an earlier role. *Williams*, 579 U.S. at 8.

(e) *The appellate court.* Justice Hantz Marconi issued a single-justice order in Plaintiff's appeal six days after

> committing the offense of which she was later convicted, which concerned an investigation by the Attorney General's Office. Doc. 55-44; Doc. 55-47 at 1, 5. Chief Justice MacDonald concurred in the order announcing that she "has reviewed this matter and has determined that she is not disqualified." Doc. 55-45 at 2–3. In February 2026 he and three Associate Justices filed a motion that describes Plaintiff by name as "a longstanding critic of the judicial branch" who is suing them. Doc. 63-1 at 3. These facts bear on the adequacy of review in the state courts.

No officer recused in Plaintiff's cases. Doc. 55 ¶ 189. An objective test cannot be satisfied by the challenged judge's own say-so. *Caperton*, 556 U.S. at 883–86. Yet the trial judge ruled on his own connection, and the justice's participation was settled by her own determination, announced by a court on which she sat, thirty-two days after the conduct for which she was later convicted. Doc. 55-45 at 2; Doc. 55-47 at 1. That is why a federal declaration is needed before the next proceeding and not after it.

### D. The State may not withhold the evidence that bears on the hearing.

A State that renews a restraint by reviewing the circumstances that gave rise to it may not hold sworn testimony about those circumstances and offer the restrained party no means of obtaining it. That is a procedural due process claim, and a declaration against the officer who withholds the evidence redresses it. *Dist. Att'y's Off. v. Osborne*, 557 U.S. 52, 67–69 (2009); *Gutierrez v. Saenz*, 606 U.S. 305 (2025). A rule of confidentiality is an interest to be accommodated, by review in

chambers and a protective order. The State's own highest court has shown that the confidentiality of such materials is not absolute. Doc. 63-4; Doc. 63-8.

### E. New Hampshire's own law demands at least as much.

New Hampshire guarantees every citizen judges "as impartial as the lot of humanity will admit," and its courts enforce the guarantee by an objective test. N.H. Const. pt. I, art. 35; *In the Matter of Tapply & Zukatis*, 162 N.H. 285, 296–97, 302 (2011). For its highest court the legislature has gone further: a temporary justice may not be assigned to a case on which the justice previously sat. RSA 490:3, III. A State with these rules has no legitimate interest in assigning a proceeding to an officer whom its own standards would disqualify.

## VI. The same standard binds federal judges, and by statute more strictly.

### A. Sections 455 and 144.

The objective standard is not peculiar to state courts. The Fifth Amendment imposes on federal adjudicators the neutrality that the Fourteenth imposes on state ones. *Marshall*, 446 U.S. at 242. A justice, judge, or magistrate judge of the United States must disqualify himself in any proceeding in which his "impartiality might reasonably be questioned," and in enumerated circumstances that cannot be waived, among them personal bias and personal knowledge of disputed evidentiary facts concerning the proceeding. 28 U.S.C. § 455(a), (b)(1), (e). A separate statute provides for disqualification on a party's timely and sufficient affidavit of personal bias or prejudice. 28 U.S.C. § 144.

Under § 455(a), what matters is not the reality of bias but its appearance, and the duty does not depend on the judge's awareness of the disqualifying fact. *Liteky*, 510 U.S. at 548; *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–61 (1988). The question is whether a reasonable person, knowing all the circumstances, would have a factual basis to doubt the judge's impartiality. *In re United States*, 666 F.2d 690, 694–95 (1st Cir. 1981).

**B. Knowledge and contacts outside the record.**

The statute distinguishes what a judge learns in a case from what reaches him otherwise. Information acquired in a judicial capacity enters the record, where the adversary process can test it. What reaches a judge in other ways "can be neither accurately stated nor fully tested," and it is the "personal knowledge" of which § 455(b)(1) speaks. *Edgar v. K.L.*, 93 F.3d 256, 258–59 (7th Cir. 1996) (per curiam) (off-the-record briefing of the judge required disqualification, whatever the parties had agreed). The Code of Conduct for United States Judges states the corresponding rules: a judge should not permit or consider communications about a pending or impending matter outside the presence of the parties, Canon 3(A)(4), or permit others to convey the impression that they are in a special position to influence the judge, Canon 2(B). The standard extends to those who serve the court, so that the conduct or connections of a court's staff may require the judge's recusal. *Hall v. Small Bus. Admin.*, 695 F.2d 175, 176–80 (5th Cir. 1983).

**C. Procedure and remedy.**

First, on a § 144 affidavit the judge passes on its legal sufficiency and not on the truth of what it states; the facts sworn to are

taken as true. *Berger v. United States*, 255 U.S. 22, 33–36 (1921); *In re Martinez-Catala*, 129 F.3d 213, 218 (1st Cir. 1997). Second, § 455 is not limited to facts alleged in an affidavit, *id.* at 220, and an appearance ground may be waived only after "a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). The statute thus contemplates that the court will put the facts bearing on disqualification on the record. Third, the remedy is prospective and limited: another judge hears the matter. Where a ground reaches more than one judge of a district, a judge may be designated from elsewhere in the circuit. 28 U.S.C. § 292(b).

What Plaintiff asks of New Hampshire is what federal law already asks of every federal judge. This memorandum makes no request under § 455 or § 144, and it asserts no fact about any judge of this Court. Any such request would be made by motion, on facts stated in that motion.

## CONCLUSION

A claim to a hearing before the next extension, to an impartial judge, and to the evidence the State holds is not an appeal from a state judgment, a claim against the State for the past, or a claim against a judge for judging. It asks what the Constitution requires of identified officers at an identified proceeding, and § 1983 exists to let a federal court say. A pleading that states such claims, shortly and plainly, is not futile.

Respectfully submitted,

DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

Dated: November 19, 2026

**CERTIFICATE OF SERVICE**

I, Dana Albrecht, certify that on November 19, 2026, I filed this Memorandum of Law through the Court's CM/ECF system, which serves all counsel of record.

DANA ALBRECHT