**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **DANA ALBRECHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 1:23-cv-00381-JL-TSM** |
| | ) | |
| | ) | |
| **KATHLEEN STERNENBERG, in her official capacity as a former guardian ad litem (named solely to preserve dismissed claims);** | ) | |
| | ) | |
| **BRUCE F. DALPRA, in his official capacity as a former Marital Master;** | ) | |
| | ) | |
| **JULIE A. INTROCASO, in her official capacity as a former Judge of the New Hampshire Circuit Court;** | ) | |
| | ) | |
| **MARK S. DERBY, in his official capacity as a New Hampshire judge;** | ) | |
| | ) | |
| **KEVIN P. RAUSEO, in his official capacity as a Judge of the New Hampshire Circuit Court;** | ) | |
| | ) | |
| **JOHN A. CURRAN, in his official capacity as a former Judge of the New Hampshire Circuit Court;** | ) | |
| | ) | |
| **DAVID D. KING, in his official capacity as former Administrative Judge and as a senior active status Judge of the New Hampshire Circuit Court;** | ) | |
| | ) | |
| **ELLEN V. CHRISTO, in her official capacity as Administrative Judge of the New Hampshire Circuit Court;** | ) | |

**ANNA BARBARA HANTZ MARCONI, in her official capacity as a retired Justice of the New Hampshire Supreme Court;** )

**GORDON J. MACDONALD, in his official capacity as former Chief Justice of the New Hampshire Supreme Court;** )

**MARY ANN DEMPSEY, ERIN CREEGAN, and JESSICA KING, in their official capacities as former and current General Counsel of the New Hampshire Judicial Branch;** )

**NEW HAMPSHIRE JUDICIAL BRANCH;** )

**and the successors in office of each,** )

**Defendants.** )

---

**(PROPOSED) SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF**

---

## INTRODUCTION

1. Plaintiff Dana Albrecht is restrained today by a civil domestic violence final order of protection entered in the New Hampshire Circuit Court, *Albrecht v. Albrecht*, No. 659-2019-DV-00341 (the "Order"). The Order remains in force through February 24, 2028. New Hampshire law permits it to be extended again, for up to five more years at a time, on the request of the protected party. RSA 173-B:5, VI.

2. This pleading is about the next time. It asks three things of the next state-court proceeding on the Order: a real hearing, an impartial judge, and access to sworn testimony that the State holds. A state judge could afford all three, find good cause, and extend the Order. Plaintiff does not ask this Court to review, vacate, modify, or enjoin enforcement of the Order or of any other state-court judgment.

3. The reasons are in the record. New Hampshire's statute allows a first extension of one year and promises a hearing within thirty days of any extension. In Plaintiff's case the first extension outlasted its year, and the thirty days became 265, each time on account of what the New Hampshire Supreme Court called "the unique circumstances of this case." The last hearing was thirty minutes of offers of proof, held after every subpoena Plaintiff had issued was quashed.

4. Five judicial officers who acted in Plaintiff's cases have since left the bench after a criminal conviction, an adjudicated or admitted violation of the Code of Judicial Conduct, or both:

(a) Judge Paul S. Moore, who issued the first protective order between the parties in 2016, was convicted of a crime and disbarred. Doc. 55-2; Doc. 55-7.

(b) Judge Julie A. Introcaso, who approved the appointment of the guardian ad litem and signed orders against Plaintiff, was found to have violated six provisions of the Code of Judicial Conduct, resigned, was convicted of tampering with public records, and was disbarred. Doc. 55-35; Doc. 55-39.

(c) Marital Master Bruce F. DalPra, who heard Plaintiff's parenting case, was found to have violated four provisions of the Code of Judicial Conduct at a hearing in that very case, where he said of Plaintiff's testimony, "Who gives a fuck?" Doc. 55-29 at 33; Doc. 55-41.

(d) Justice Anna Barbara Hantz Marconi, who sat on Plaintiff's appeals, was convicted of a crime committed six days before she issued an order in his appeal, and thirty-two days before she certified in that appeal that she was "not disqualified." Doc. 55-45 at 2; Doc. 55-47.

(e) Chief Justice Gordon J. MacDonald, who concurred in that certification, admitted three violations of the Code of Judicial Conduct and resigned in September 2026. Doc. 63-3.

5. Three more officers who remain on the bench entered or extended the Order, or supervised the court that did: Judge Mark S. Derby, Judge Kevin P. Rauseo, and former Administrative Judge David D. King. The New Hampshire Supreme Court held Master DalPra disqualified. No officer named in this pleading has ever recused in Plaintiff's cases.

6. This action is brought under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment. This pleading replaces the original Complaint (Doc. 1) and the proposed Amended Complaint (Doc. 55), and supplements them under Fed. R. Civ. P. 15(d) with events through September 2026. It reduces forty-five counts to three. It seeks no damages, and every Defendant is sued in an official capacity only. It states every allegation on which it relies; record citations in the form "Doc. 55-23" are to exhibits already on this Court's docket. The legal grounds for each Count are set out in Plaintiff's Memorandum of Law (Doc. 69) ("Mem."), which is cited below by Part.

## PARTIES

7. Plaintiff Dana Albrecht resides in Nashua, New Hampshire. He is the defendant in *Albrecht v. Albrecht*, No. 659-2019-DV-00341 (N.H. Cir. Ct., 9th Cir. – Fam. Div. – Nashua) (the "DV Case"), and was a party to *In the Matter of Dana Albrecht and Katherine Albrecht*, No. 659-2016-DM-00288 (the "Parenting Case").

8. Defendant Kathleen Sternenberg was the court-appointed guardian ad litem in the Parenting Case. The Court dismissed the claims against her on the ground of quasi-judicial immunity (Doc. 23; Doc. 37). **She is named solely to preserve those claims for appeal.** No new claim is asserted against her.

9. Defendant Bruce F. DalPra is a retired Marital Master who presided in the Parenting Case.

10. Defendant Julie A. Introcaso is a former Judge of the Circuit Court who approved Master DalPra's recommendations in the Parenting Case.

11. Defendant Mark S. Derby entered the Order on December 30, 2019. On information and belief he remains a Judge of the Circuit Court.

12. Defendant Kevin P. Rauseo is a Judge of the Circuit Court sitting in the 9th Circuit, Family Division, Nashua. He extended the Order in February 2022 and February 2023 and presided over the most recent hearing in the DV Case.

13. Defendant John A. Curran is a former Judge of the Circuit Court who extended the Order on December 21, 2020.

14. Defendant David D. King was Administrative Judge of the Circuit Court from 2017 until July 1, 2024. On information and belief he continues to sit as a senior active status judge of that court, subject to assignment.

15. Defendant Ellen V. Christo is the Administrative Judge of the Circuit Court. She succeeded Judge King in that office on July 1, 2024, and is his successor for purposes of Fed. R. Civ. P. 25(d). The reassignment of cases within the Circuit Court, as justice or efficiency requires, lies in the discretion of the Administrative Judge. RSA 490-F:2. On information and belief she administers the protocols and forms that the Circuit Court uses in domestic violence cases. She is sued for her administrative acts only.

16. Defendant Anna Barbara Hantz Marconi was a Justice of the New Hampshire Supreme Court until she retired on February 12, 2026.

17. Defendant Gordon J. MacDonald was Attorney General of New Hampshire from 2017 to 2021 and Chief Justice of the New Hampshire Supreme Court from 2021 until he resigned in September 2026.

18. Defendants Mary Ann Dempsey, Erin Creegan, and Jessica King are, in succession, the former and current General Counsel of the New Hampshire Judicial Branch. Prospective relief is sought from the current holder of that office.

19. Defendant New Hampshire Judicial Branch ("NHJB") comprises the courts of the State of New Hampshire and is the entity through which the other Defendants act. It has been a party since the original Complaint. The

prospective relief requested in Counts One through Three is sought from the officers named in those Counts.

20. Each individual Defendant is sued in his or her official capacity only, together with his or her successors in office. Each acted and will act under color of state law.

21. "Next Proceeding" means the next proceeding in the DV Case to decide whether the Order shall be extended, modified, or terminated. "Challenged Officers" means Defendants Rauseo, Derby, and David D. King, each a judicial officer of the Circuit Court who can be assigned to it.

## JURISDICTION AND VENUE

22. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Declaratory and further relief are authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202. Venue is proper under 28 U.S.C. § 1391.

## FACTS

### *A. The Order That Restrains Plaintiff Today*

23. On December 30, 2019, after a hearing on December 20, 2019, Judge Derby entered the Order against Plaintiff. It was not based on any act of physical violence. Plaintiff was not arrested or charged with any crime. The case arose from allegations that included his attendance at a church.

24. The Order bars Plaintiff from coming within 2,000 feet of Collinsville Bible Church in Dracut, Massachusetts. Doc. 55-23. The protected party, Plaintiff's former spouse, now lives in Michigan. Doc. 55-42.

25. In denying reconsideration, Judge Derby wrote that the Order "is rooted in the findings of stalking and the present credible threat that the defendant poses to the plaintiff's safety, and particularly in the defendant's answers, deflections and evasive non-answers to the questioning on Pages 71-79 of the December 20, 2019 transcript." Doc. 55-23 at 1.

26. The questioning on those pages concerned a May 30, 2019 order in the Parenting Case. Plaintiff's "evasive non-answers" included: "I don't. May I see the order, please?" and "May I see that one more time?" Doc. 55-21 at 71. As set out below, that order was signed by a judge who had disqualified herself from a related matter seventy-six days earlier, and Judge Derby had himself approved the denial of reconsideration of it.

27. The Order has been extended on every occasion on which it was due to expire, as described in Section F. It now runs through February 24, 2028.

28. The requests for extension alleged no new act of violence. The February 2023 request relied on conduct said to be "well-documented with this Court not only in this matter, but also in numerous pleadings filed and in the testimony of Ms. Minges and her witnesses at multiple hearings" in the Parenting Case, and, as the only conduct since the last extension, on Plaintiff's "filing of pleadings." Doc. 55-42 at 2.

29. Violation of the Order is punishable by arrest. RSA 173-B:5, VII.

### *B. The Guardian ad Litem and the Judge Who Appointed Her*

30. On October 13, 2016, on Master DalPra's recommendation, Judge Introcaso approved the appointment of Kathleen Sternenberg as guardian ad litem in the Parenting Case. Doc. 55-3.

31. Judge Introcaso and Ms. Sternenberg were close friends. In Judge Introcaso's own words to Administrative Judge King on March 30, 2018, Ms. Sternenberg "is one of four people on my 'conflicts' list. That is, we have been friends and colleagues for many years." Doc. 55-6. No one disclosed the relationship to Plaintiff. He learned of it from a newspaper on October 23, 2020.

32. Asked under oath about the appointment in Plaintiff's case, Judge Introcaso testified:

> Q. Is this a case where, because you respected Master DalPra and he usually made good judgments, you just looked at it quick and signed it?
>
> A. Absolutely.

Doc. 55-33 at 165–66. She later wrote to Plaintiff: "I have no recollection of you personally, any facts of your case, or having co-signed many orders." Doc. 55-38.

33. On August 9, 2017, Ms. Sternenberg testified in the Parenting Case as a witness for Plaintiff's former spouse. Doc. 55-4 at 348. Before she began, Master DalPra said: "I've read the report. I don't want to hear it in conversation form at this point." *Id.* She urged that Plaintiff's children be moved from New Hampshire to California: "I couldn't be any stronger in my recommendation that this happen right away." Doc. 55-4 at 353. Asked on cross-examination how the move would end the parents' conflict, she answered: "I don't know that it will." Doc. 55-4 at 377. Asked whether her opinion would change if the accusation against Plaintiff proved to be "a fantasy" or "maliciousness," she answered: "It won't change my recommendations to this Court." Doc. 55-4 at 386.

34. On September 1, 2017, the court ordered that Plaintiff's former spouse "shall be entitled to relocate with the children to CA as soon as she is able to arrange for same," with no stay pending appeal. Doc. 55-5. In the following year and a half Plaintiff had thirty-eight days with his daughters. Doc. 55-15.

35. On March 15, 2019, in another case, Judge Introcaso disclosed her "conflict with the Court-appointed GAL," Ms. Sternenberg, and wrote: "The Court does not believe this conflict, under the circumstances as stated above, is one which can be waived." Doc. 55-9.

36. Seventy-six days later, on May 30, 2019, Judge Introcaso signed a substantive order against Plaintiff in the Parenting Case, on Master DalPra's recommendation, without disclosing the conflict she had called unwaivable. Doc. 55-12.

37. That order was not an isolated lapse. After March 15, 2019, Judge Introcaso continued to sit in cases in which Ms. Sternenberg served as guardian ad litem:

(a) On April 23, 2019, in *Loudermilk v. Montgomery*, she granted Ms. Sternenberg's motion to exceed the cap on her own fees. Doc. 55-10.

(b) On June 3, 2019, in the same case, she presided over a hearing at which Ms. Sternenberg appeared and spoke as guardian ad litem. Doc. 55-14.

(c) On July 23, 2019, she did so again. Doc. 55-16.

(d) On August 30, 2019, in a related case, she presided over a hearing at which she drew on Ms. Sternenberg's report. Doc. 55-17.

38. A lawyer from the law firm to which Judge Rauseo then belonged appeared for a party at the June 3 and July 23 hearings. Doc. 55-14; Doc. 55-16.

39. Plaintiff, through counsel, moved for reconsideration in a thirteen-page motion. Master DalPra's recommendation was one word: "Denied." Judge Derby approved it on June 30, 2019. Doc. 55-15.

40. On March 23, 2021, the New Hampshire Supreme Court found that Judge Introcaso had violated six provisions of the Code of Judicial Conduct, including Rule 2.11, which requires a judge to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Doc. 55-35. She resigned, was convicted of tampering with public records and unsworn falsification, and was disbarred on February 25, 2022. Doc. 55-39.

### *C. The November 6, 2020 Hearing*

41. On November 6, 2020, Master DalPra presided over a hearing in the Parenting Case. The official transcript records the following, each attributed to "THE COURT":

(a) While Plaintiff testified about his children's holidays: "Who gives a fuck?" Doc. 55-29 at 33.

(b) When a witness was asked whether Plaintiff's children make "wise, mature decisions": "Of course not; they're a bunch of morons." Doc. 55-29 at 80.

(c) When Plaintiff testified that he feared his son was mentally ill, laughter, and then: "Hopeless. Heartless." Doc. 55-29 at 67.

(d) During Plaintiff's testimony: "Put him on mute." Doc. 55-29 at 62.

(e) During examination: "And while you're looking through that, I'm gonna go pee. Can you imagine if this was in person?" Doc. 55-29 at 65.

42. On November 10, 2022, the New Hampshire Supreme Court approved findings, by clear and convincing evidence, that Master DalPra violated four provisions of the Code of Judicial Conduct, including Rules 2.8(B) and 2.11. Doc. 55-41. The record of that proceeding identifies the matter as "In the Matter of Dana Albrecht and Katherine Albrecht." Doc. 55-41 at 9.

### *D. What the Administrative Judge Knew*

43. Administrative Judge King was told of the Introcaso-Sternenberg relationship in writing on March 30, 2018. Doc. 55-6. He did not disclose it to Plaintiff.

44. On November 13, 2020, one week after the hearing described above, Judge King wrote to Master DalPra about it. He wrote that "it isn't clear whether your comments indicate a bias against one of the parties or are just comments made in frustration," and that they "do not demonstrate the patience or dignity expected of judicial officers under Rule 2.8." Doc. 55-30.

45. Judge King did not notify Plaintiff, the other party, or the judges presiding in Plaintiff's cases. Thirty-eight days later, on December 21, 2020, Judge Curran extended the Order on a request that relied on the record of the Parenting Case. Doc. 55-31.

46. Judge King was deposed on August 26, 2022 in the disciplinary proceeding against Master DalPra, No. JC-21-072-C (the "King Deposition"). In the excerpt that is public, he testified about his response to the hearing in Plaintiff's case. Doc. 55-40. The rest has never been released.

### *E. The Judge Who Entered the Order*

47. By April 26, 2019, Judge Derby knew of Judge Introcaso's conflict with Ms. Sternenberg: on that date he ruled on a motion to remove Ms. Sternenberg as guardian ad litem in the very case from which Judge Introcaso had recused. Doc. 55-11. According to Judge Introcaso's account in the Judicial Branch's own investigation report, Judge Derby told her that he had "tried to help Judge Introcaso out by reviewing all of her motions de novo." Doc. 55-24 at 5.

48. Two months later Judge Derby approved the denial of reconsideration of Judge Introcaso's May 30, 2019 order in Plaintiff's case, and six months

after that he presided over the DV Case, where Plaintiff was cross-examined about that same order. Judge Derby disclosed nothing.

49. In January 2020, the month in which he ruled on Plaintiff's post-trial motions, Judge Derby was interviewed by the Judicial Branch's General Counsel in her investigation of Judge Introcaso. He was later deposed. Doc. 55-32. On October 26, 2020, he called the General Counsel "to reiterate that he could not say with 100% certainty that he did not white out" two of the orders at the center of that investigation. The investigator concluded that he had not. Doc. 55-28 at 1–2. He was a witness in that investigation, and he disclosed none of this to Plaintiff.

***F. The Extensions***

50. *The statute.* A protective order runs for a fixed period of not more than one year. It may be extended on a showing of good cause for one year after the expiration of the first order, and only thereafter for up to five years at a time. The defendant has a right to a hearing within thirty days of any extension. RSA 173-B:5, VI. A court deciding whether to extend must review the circumstances that gave rise to the original order. *MacPherson v. Weiner*, 158 N.H. 6, 10 (2008).

51. *The first extension.* On December 21, 2020, Judge Curran extended the Order on the protected party's written representations, without a prior hearing. Doc. 55-31. The hearing that followed was held before Master DalPra.

52. On December 16, 2021, the New Hampshire Supreme Court held that "it was error for the judicial officer to have presided over the hearing in this case," vacated the trial court's orders, and remanded for a new hearing before a different judicial officer. It then ordered: "in light of the unique circumstances of this case, the protective order shall remain in place pending the outcome of the new hearing." Doc. 36-12 at 4. The order cites no statute for that sentence. Chief Justice MacDonald and Justices Hicks, Bassett, Hantz Marconi, and Donovan concurred. *Id.*

53. The year that the statute allows a first extension ended in December 2021. The Order stayed in force. In February 2022, Judge Rauseo held the new hearing and extended the Order for another year.

54. Judge Rauseo was not a stranger to these matters. Before taking the bench he represented a party in *Ausiaikova v. Meckel*, another case before Judge Introcaso in which Ms. Sternenberg served as guardian ad litem. According to Ms. Sternenberg's own filing in that case, he stated on January 28, 2019 that she was "no longer impartial." Doc. 55-8. His firm appeared in *Loudermilk v. Montgomery* as described in Section B.

55. *The 2023 extension.* On February 24, 2023, Judge Rauseo extended the Order again, on a printed Judicial Branch form (NHJB-2100-DFS) reciting that "[t]he Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order." The form provides for a hearing afterward, and only if the defendant objects within ten days. Doc. 55-42 at 1.

56. Plaintiff objected. The statutory hearing was scheduled, Plaintiff appealed the day before it, and the trial court cancelled it. On October 20, 2023, the New Hampshire Supreme Court remanded "[u]nder the unique circumstances of this case" and directed that the "30-day deadline in RSA 173-B:5, VI shall run from the date of this order." *K.A. v. D.A.*, No. 2023-0181 (N.H. Oct. 20, 2023). The hearing was held on November 16, 2023, 265 days after the extension it was to test.

57. *The written protocol.* The sequence is prescribed in writing. Protocol 9-11 of the Judicial Branch's Domestic Violence Protocols directs that when the court finds good cause on the plaintiff's motion it grants the extension without a hearing, and that a hearing is held only if the defendant objects. Protocol 9-11. On November 13, 2023, the Judicial Branch's General Counsel wrote to Plaintiff that "the protocols on which judges are trained" are published on the Branch's website. Doc. 36-13 at 2.

58. *The November 2023 hearing.* On November 15, 2023, Judge Rauseo heard motions to quash. He read the governing standard aloud: "the trial court must review the circumstances giving rise to the original protective order." Doc. 55-43 at 30.

59. He then quashed or struck every subpoena Plaintiff had issued, nine for witnesses and one for documents, ruling that "the standard tomorrow is limited to whether there's currently good cause." Doc. 55-43 at 13–45. The witnesses included Judge King, the General Counsel of the Judicial Branch,

and Ms. Sternenberg. Counsel from the Attorney General's Office appeared in this private civil case to oppose the subpoenas to Judge King and the General Counsel, announcing of Judge King: "He will not be appearing." Doc. 55-43 at 4.

60. *The excluded proof.* The request to extend had relied on conduct said to be "well-documented" in the record of the Parenting Case. Doc. 55-42 at 2. Plaintiff offered Judge King's testimony on whether the proceedings that produced that record were fair. Judge King had written to the officer who conducted them that it was not clear "whether your comments indicate a bias against one of the parties." Doc. 55-30. Judge Rauseo excluded the testimony on the ground that Judge King had no "evidence regarding the nature of whether there is a current need for an extension." Doc. 55-43 at 21.

61. The subpoena for documents sought the complete King Deposition from counsel to the Judicial Conduct Committee. Plaintiff asked: "how can I have any semblance of due process if I don't see the whole thing?" Doc. 55-43 at 17–18. Counsel answered that the rest of the deposition was "totally redacted" and is "not in the public domain at all." Doc. 55-43 at 33. The subpoena was quashed. Doc. 55-43 at 36.

62. When Plaintiff raised Judge Rauseo's own connection to the Introcaso-Sternenberg cases and sought the testimony of a lawyer from Judge Rauseo's former firm, Judge Rauseo struck that subpoena as "not relevant" and continued to preside. Doc. 55-43 at 41.

63. The following exchange then took place:

> MR. ALBRECHT: You have already decided there's good cause, and I need to know why, Your Honor.
>
> THE COURT: So Mr. Albrecht –
>
> MR. ALBRECHT: Back in February, you decided there was good cause.
>
> THE COURT: And it was based on the pleadings, sir.

Doc. 55-43 at 42. Judge Rauseo added that he had acted "consistent with the protocols," and that "[t]hat's what all judges do." *Id.*

64. The hearing on November 16, 2023 was scheduled as a thirty-minute hearing on offers of proof. Doc. 55-43 at 5. Plaintiff defended the extension of a restraint on his liberty without a single witness or document bearing on the circumstances that gave rise to the Order. Judge Rauseo thereafter continued the Order.

### *G. The Appeal*

65. Plaintiff appealed to the New Hampshire Supreme Court, No. 2023-0181.

66. On June 6, 2024, Justice Hantz Marconi solicited the Governor "to secure a governmental privilege and/or advantage for her to which she was not otherwise entitled regarding an investigation into" her husband. Doc. 55-47. She was convicted of that offense, on a plea of no contest, on October 7, 2025. *Id.* The investigation was conducted by the Attorney General's Office, which had appeared in the DV Case to oppose Plaintiff's subpoenas.

67. On June 7, 2024, Plaintiff filed documents in his appeal. On June 12, 2024, six days after her offense, Justice Hantz Marconi, acting alone, ordered that the clerk "shall not docket" them. Doc. 55-44.

68. Plaintiff moved for clarification of her participation. On July 8, 2024, thirty-two days after her offense, the court denied the motion in these words: "Justice Hantz Marconi has reviewed this matter and has determined that she is not disqualified." Doc. 55-45 at 2.

69. Chief Justice MacDonald concurred in the July 8, 2024 order. He later told investigators that Justice Hantz Marconi had informed him of grand jury subpoenas in the investigation "at some point during the month of May" 2024. Doc. 55-46 at 16. As Attorney General in October 2020, he had received the referral concerning Judge Introcaso. Doc. 55-26. He had also concurred in the 2022 order finding misconduct by Master DalPra in Plaintiff's case. Doc. 55-41.

70. Justice Hantz Marconi was placed on administrative leave seventeen days after the July 8, 2024 order.

71. The New Hampshire Supreme Court disposed of the appeal by order of October 1, 2024. Nothing is pending in that docket.

### *H. Events Since the First Proposed Amended Complaint*

72. On February 9, 2026, Chief Justice MacDonald and Associate Justices Donovan, Countway, and Gould, through counsel, filed a motion with the Judicial Conduct Committee that identified Plaintiff by name, described him as "a longstanding critic of the judicial branch," and characterized his statements as reflecting "one man's idiosyncratic interests." Doc. 63-1 at 3. On information and belief, those three Associate Justices remain on the court that would hear any appeal in the DV Case.

73. On August 19, 2026, Chief Justice MacDonald, through counsel, opposed Plaintiff's petition for access to the record of the disciplinary proceeding against him. Doc. 63-2.

74. On September 15, 2026, a substitute panel of the New Hampshire Supreme Court approved a stipulation in which Chief Justice MacDonald admitted violating Canon 1, Rule 1.2 (failing "to act in a manner that promotes public confidence in the impartiality of the judiciary") and Canon 2, Rules 2.5(A) and 2.13(A), and, because he had resigned as a judge, imposed no further discipline. Doc. 63-3 at 1–2. The admitted violations concerned an administrative appointment, not Plaintiff's case.

75. On September 18, 2026, the same panel ordered the filings in the related access proceedings made public, and on September 21, 2026 it denied motions to redact or to stay that release. Doc. 63-4; Doc. 63-8. The confidentiality of Judicial Conduct Committee records under N.H. Sup. Ct. R. 40 is therefore not absolute.

### *I. The King Deposition Remains Withheld*

76. The Judicial Branch holds copies of deposition transcripts in Judicial Conduct Committee matters "by virtue of its employees testifying under subpoena." Doc. 55-36. Its General Counsel attended the King Deposition as counsel for the witness. Doc. 55-40. On information and belief, the General Counsel's office holds the complete transcript.

77. Plaintiff has asked the General Counsel's office for the complete King Deposition on more than one occasion. Each request was refused. His subpoena for it to counsel for the Judicial Conduct Committee was quashed,

and his subpoenas for the testimony of Judge King and of the General Counsel were quashed with it, as described in Section F.

78. Plaintiff has no other means of obtaining the King Deposition for use at the Next Proceeding.

### *J. The Next Proceeding*

79. The Order restrains Plaintiff's liberty today and exposes him to arrest. It has done so for nearly seven years.

80. A further proceeding on the Order is not hypothetical. The Order expires on February 24, 2028 unless extended. The protected party has requested, and the Circuit Court has granted, an extension on every occasion on which the Order was due to expire.

81. Absent relief, the Next Proceeding will be conducted under Protocol 9-11 as the last one was. The Order will be extended on the protected party's written representations before Plaintiff is heard, and the hearing that follows will exclude evidence of the circumstances that gave rise to the Order.

82. Absent relief, the Next Proceeding will be heard in the 9th Circuit, Family Division, Nashua, where Judge Rauseo sits and has presided over the last two extension proceedings. Nothing bars the assignment of any Challenged Officer to it. Judge Rauseo declined to step aside when asked.

83. No motion, hearing, or appeal concerning the Order is pending in any New Hampshire court.

84. Plaintiff has no adequate remedy at law. A motion to recuse is decided by the officer whose impartiality is challenged. When Plaintiff prevailed on such a claim once, in 2021, the Order was kept in force anyway. And an appeal lies to the court described in Sections G and H.

## <u>THE RELIEF SOUGHT IS PROSPECTIVE</u>

85. *No review of any state-court judgment.* Counts One through Three complain of no injury caused by a state-court judgment, and they ask this Court to review and reject none. The Order will remain in force, and enforceable, whatever this Court decides. The relief requested operates only on a

proceeding that has not yet occurred, on a written practice, and on an officer's custody of evidence. Mem. Part I.

86. *No interference with a pending proceeding.* No state proceeding concerning the Order is pending, and a private party's civil request to renew a protective order is not among the proceedings to which abstention is confined. Mem. Part II.

87. *A continuing and anticipated violation.* Defendants today hold Plaintiff subject to a practice that renews the Order before he is heard and then excludes his evidence, to adjudication by officers who took part in the events under review, and to the withholding of evidence in their possession. The relief sought is prospective, runs against the officers who can give it, and reaches no state funds. Mem. Part III.

88. *Declaratory relief first.* As to any act taken in a judicial capacity, Plaintiff seeks a declaration, and seeks an injunction only if "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The reassignment of cases, the administration of protocols and forms, and the custody of records are administrative acts. Mem. Part IV.

89. *A concrete controversy.* The declarations sought concern Plaintiff's rights in one identified proceeding, between identified parties, that state law requires to occur if the Order is to continue. Mem. Part IV.D.

**COUNT ONE**

***Fourteenth Amendment – Right to a Meaningful Hearing Before the Order Is Extended Again***

***(Against Defendants Christo and Rauseo)***

90. Plaintiff incorporates the preceding paragraphs.

91. The Order restrains Plaintiff's liberty. Before the State renews that restraint, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner, including the opportunity to present witnesses and to confront the witnesses against him. Mem. Part V.A.

92. The practice that will govern the Next Proceeding is written in Protocol 9-11 and printed on form NHJB-2100-DFS: the extension is granted on the protected party's written representations, and a hearing follows only on the defendant's objection. Judge Rauseo described that course as "the protocols" and as "what all judges do." Doc. 55-43 at 42.

93. As applied to Plaintiff, the hearing that follows shuts out what New Hampshire law makes material. The court that read aloud its duty to review the circumstances giving rise to the Order quashed every subpoena directed to those circumstances, and confined the hearing to thirty minutes of offers of proof.

94. The State's own statute shows that it has no interest in this course. The legislature allowed one year for a first extension and promised a hearing within thirty days. In Plaintiff's case the first extension outlasted its year, and the thirty days became 265.

95. The risk of erroneous deprivation under that practice is high. The burden of hearing a restrained party before renewing the restraint is slight, because the date of any renewal is known a year or more ahead.

96. This Count challenges the practice as it will be applied at the Next Proceeding. It does not ask that any past extension be set aside. A state judge could afford the hearing described in the prayers below, find good cause, and extend the Order. Mem. Part I.B; Mem. Part IV.C.

97. Plaintiff is entitled to the declaratory and injunctive relief specified below.

**COUNT TWO**

***Fourteenth Amendment – Right to an Impartial Tribunal at the Next Proceeding***

***(Against Defendants Christo, Rauseo, Derby, and David D. King)***

98. Plaintiff incorporates the preceding paragraphs.

99. Due process forbids adjudication by a judge when, viewed objectively, the probability of actual bias is too high to be constitutionally tolerable. That standard is met where the judge played an earlier role in the same controversy

or carries knowledge of it acquired outside the record, and where the judge has a personal stake in whether his own conduct is examined. Mem. Part V.B.

100. Each Challenged Officer stands in at least one of those positions. Mem. Part V.C.

(a) Judge Rauseo had, by the guardian ad litem's own account, called her "no longer impartial" when he was counsel in another case before Judge Introcaso. His firm appeared at two of her post-recusal hearings. And in November 2023, as the presiding judge, he ruled that his own connection was "not relevant."

(b) Judge King was told of the conflict in 2018 and of Master DalPra's conduct in 2020, disclosed neither, and is the witness whose testimony about Plaintiff's case is withheld.

(c) Judge Derby knew of the Introcaso-Sternenberg conflict, approved the denial of reconsideration of the order Judge Introcaso signed in Plaintiff's case, rested the Order on Plaintiff's answers about that order, and was a witness in the investigation of Judge Introcaso.

101. The record on which the Order rests was made before Judge Introcaso and Master DalPra, each of whom the New Hampshire Supreme Court found to have violated the rule requiring disqualification. The Next Proceeding must review the circumstances that gave rise to the Order. Each Challenged Officer would therefore sit in judgment on events in which he took part or of which he is a witness.

102. The New Hampshire Supreme Court's order of July 14, 2023 rejected challenges to Judges Derby and Rauseo on the record then before it. It did not decide who may sit at the Next Proceeding. It preceded Judge Rauseo's ruling on his own connection, the events described in Sections G and H, and the records placed on this docket in 2026.

103. Defendant Christo holds the power to reassign the DV Case and has not excluded any Challenged Officer from it.

104. New Hampshire already forbids a temporary justice of its Supreme Court to sit on a case on which the justice previously sat. RSA 490:3, III. The relief sought here asks no more of the Circuit Court. Mem. Part V.E.

105. Plaintiff is entitled to the declaratory and injunctive relief specified below.

**COUNT THREE**

***Fourteenth Amendment – Access to the King Deposition for Use at the Next Proceeding***

***(Against Defendant Jessica King, as General Counsel, and her successors in office)***

106. Plaintiff incorporates the preceding paragraphs.

107. The King Deposition is sworn testimony by the supervising judge about judicial misconduct committed in Plaintiff's own case. It is material to the Next Proceeding, because the record of that case is the stated basis for each extension and New Hampshire law requires the court to review it.

108. The General Counsel withholds the King Deposition and, absent relief, will continue to withhold it through the Next Proceeding. Keeping a transcript is not an act of judging, and the General Counsel is not a judge. Mem. Part IV.C.

109. This Count does not seek redress for a past refusal. It seeks to prevent a meaningful hearing from being denied at the Next Proceeding. Any legitimate interest in confidentiality can be met by review in chambers and a protective order. Mem. Part III.B; Mem. Part V.D.

110. Plaintiff is entitled to the declaratory and injunctive relief specified below.

**RESERVATION OF CLAIMS**

111. The Court dismissed Plaintiff's claims against Defendant Sternenberg on the ground of quasi-judicial immunity (Doc. 23; Doc. 37). The Magistrate Judge has recommended that the remaining claims in the original Complaint be dismissed and that leave to file the proposed Amended Complaint be denied (Doc. 60; Doc. 61).

112. Plaintiff does not abandon those claims. They are not restated as counts here because the Court has ruled on them or has been asked to, and Plaintiff preserves each of them, and each of his objections to those rulings, for

review. The Defendants against whom no Count above is directed remain parties for that purpose.

113. Counts One through Three do not depend on any claim so reserved.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

### *The Hearing*

A) Declare that the Due Process Clause of the Fourteenth Amendment entitles Plaintiff, before the Order is extended beyond February 24, 2028, or, if the Order is first extended on written representations, within the thirty days that RSA 173-B:5, VI provides, to an evidentiary hearing at which he may contest good cause as New Hampshire law defines it, including the circumstances that gave rise to the Order; may testify and present witnesses and documents on any disputed fact material to that question; and may cross-examine the witnesses against him. The state court retains its authority to exclude cumulative proof and to decide whether the Order shall continue;

B) Should any judicial Defendant violate the declaration in paragraph A, or should declaratory relief be unavailable, enjoin that Defendant from extending the Order without such a hearing;

### *The Tribunal*

C) Declare that the Due Process Clause prohibits each Challenged Officer from presiding over or deciding the Next Proceeding;

D) Enjoin Defendant Christo, and her successors in office, from assigning the Next Proceeding to a Challenged Officer, and from permitting it to remain assigned to one; or, should the Court hold that reassignment is an act taken in a judicial capacity, declare that the Due Process Clause forbids such an assignment and enjoin it if that declaration is violated or declaratory relief is unavailable;

E) Should any Challenged Officer violate the declaration in paragraph C, or should declaratory relief be unavailable, enjoin that Defendant from presiding over or deciding the Next Proceeding;

***The King Deposition***

F) Declare that withholding from Plaintiff the portions of the King Deposition that concern his cases, for use at the Next Proceeding, violates the Due Process Clause;

G) Order Defendant Jessica King, and her successors in office, to submit to this Court for review in chambers the complete transcript of the August 26, 2022 deposition of David D. King in No. JC-21-072-C, and to produce to Plaintiff, under such protective order as the Court finds appropriate, the portions the Court finds material to the Next Proceeding;

H) Declare that the confidentiality provisions of N.H. Sup. Ct. R. 40 do not, of themselves, bar that production or justify quashing a subpoena for those portions at the Next Proceeding;

***Further Relief***

I) Grant such further necessary or proper relief as 28 U.S.C. § 2202 allows;

J) Award Plaintiff his costs; and

K) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

Dated: November 19, 2026

**CERTIFICATE OF SERVICE**

I, Dana Albrecht, certify that on November 19, 2026, a copy of this proposed Second Amended and Supplemental Complaint was served on all parties of record via the CM/ECF system.

DANA ALBRECHT